# ORIGINAL



## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACK MARRONE, Husband, KAREN MARRONE, Wife, Both Individually and in Their Capacity as Parents and Guardians for VIDA MARRONE, a Minor,<br><br>Plaintiff(s)<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY, LINDA W. EDELMAN, FRED SCHAFER, MT. GRETNA REALTY, and HOUSE MASTERS,<br><br>Defendant(s) | CIVIL ACTION<br><br>No. 1:CV-01-0773<br><br>**HON. YVETTE KANE**<br><br>**FILED<br>HARRISBURG**<br><br>MAR 2 2 2002<br><br>MARY E. D'ANDREA, CLERK<br>Per_____<br>DEPUTY CLERK |

## HOMESIDE'S MEMORANDUM OF LAW IN SUPPORT
## OF ITS MOTION TO INTERVENE

Proposed Intervenor, HomeSide Lending, Inc. (hereinafter "HomeSide " or "Intervenor"), hereby incorporates by reference the facts contained in the foregoing Motion to Intervene as though set forth more fully at length herein.  As the mortgagee of the real estate which is allegedly contaminated with mold, HomeSide seeks to intervene in the instant litigation so that it can be permitted to make the necessary repairs in order to make the property habitable and saleable.  Since this contemplated action on the part of HomeSide may result in the destruction of evidence which the parties to the instant litigation have an interest in preserving, HomeSide would like to perform this work with the knowledge and approval of all concerned.

HomeSide has a substantial financial interest in the outcome of the case *sub judice*. As of April 10, 2001, when it filed its Mortgage Foreclosure Complaint, it sustained financial

523265.1

harm totalling $178,393.38. Continuing unpaid interest charges alone amount to $33.56 per day. It is for this reason that HomeSide seeks declaration that before the Marrones are paid for their personal injuries, the unpaid balance of the mortgage (together with costs and interest) should be paid first.

In *Cloverland-Green Spring Dairies, Inc. v. Pennsylvania Milk Marketing Board*, 138 F. Supp. 2d 593, 601 (M.D. Pa.), the court set forth the conditions a proposed intervenor, pursuant to F.R.C.P. 24(a)(2), [1] must meet before permission to intervene will be granted by the court:

> A party seeking to intervene as of right pursuant to Rule 24(a)(2) is entitled to do so if four conditions are met: (1) the motion is timely; (2) the applicant has an interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect its interest; and (4) the applicant's interests are inadequately represented by the existing parties to the litigation. *Kleissler v. United States Forest Service*, 157 F.3d 964, 969 (3d Cir. 1998).[2]

---

[1]    F.R.C.P. 24(a)(2) which provides for intervention as of right states, in relevant part:

> Upon timely application, anyone shall be permitted to intervene in an action (2) when the applicant claims an interest relating to the property or the transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

[2]    When considering a Rule 24 intervention, said rule ". . . should be construed broadly in favor of potential intervenors . . ." *Stupak-Turall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000), and all doubts are resolved in favor of the proposed intervenor. *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999).

A case that thoroughly discussed a Rule 24(a)(2) intervention and which has some elements similar to the instant case is *Mountain Top Condominium Association v. Dave Stabbert Master Builder, Inc.*, 72 F.2d 361 (3d Cir. 1995). In *Mountain Top, supra*, the proposed intervenors were condominium owners who owned property in the U.S. Virgin Islands that was severely destroyed by Hurricane Hugo. Their condominium association was involved in litigation with a contractor who the association hired to do repairs to the condominiums caused by the hurricane. The association also obtained insurance proceeds to pay for the damaged structures and placed a portion of these funds into an escrow account. The proposed intervenors (the Seipels) disputed the allocation of these funds.

The District Court denied the Seipels' Motion to Intervene because it found that they did not have a sufficient interest in the litigation and thus had failed to satisfy subsection (2) of Rule 24(a). The Third Circuit reversed and engaged in a thoughtful analysis of Rule 24(a)(2).

On the issue of timeliness, the court observed:

> [s]ince in situations in which intervention is of right the would-be intervenor may be seriously harmed if he is not permitted to dismiss a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive. (Citation omitted).

> \*     \*     \*

> The timeliness of a motion to intervene is "determined from all the circumstances and, in the first instance, by the [trial] court in the exercise of its sound discretion (citation omitted). To determine whether the intervention motion is timely, we have listed three factors for courts to consider: (1) the stage of the

-3-

proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay.[3]

In the case at bar, the disposition of this matter was continued because of the need for the Marrones to obtain new counsel. Counsel for HomeSide was in contact with prior counsel for plaintiffs and did not intervene earlier because a change of counsel was imminent and it would be unfair to seek intervention when the plaintiffs were temporarily unrepresented by counsel. There will be no prejudice to the parties herein since the matter is almost nine (9) months from trial and three (3) months from the close of discovery. The delay in filing the instant Motion is minimal at best and would not cause any undue burden or expense. Given the liberal interpretation of Rule 24, HomeSide submits that its intervention is timely.

As the mortgagee of the subject property, HomeSide has a significant interest in the property involved in this litigation. In quoting from a learned treatise on Federal Civil Procedure,[4] the court in *Mountain Top* stated:

> Interests in property are the most elementary type of right that Rule 24(a) is designed to protect, and many of these cases in which a sufficient interest has been found under amended Rule 24(a)(2) have been cases in which there is a readily identifiable interest in land, funds, or some other form of property.[5]

HomeSide contends that as of April, 2001, it was owed in excess of $178,000. If the Marrones' claims against the defendants herein are correct, HomeSide suffered a serious

---

[3] 72 F.3d 369.

[4] Volume 7C, Wright, Miller & Kane, Federal Practice & Procedure, § 1908 at 272-274 (1986).

[5] 72 F.3d 367. *See also* cases collected at 72 F.3d 366-367.

-4-

financial loss for which it should be permitted access to this action to redress. In this regard, HomeSide also meets the third requirement of Rule 24(a)(2) since the disposition of this action may impair or impede HomeSide's financial interest since the Marrones may secure some type of recovery and not compensate HomeSide for the financial losses it incurred in the subject property.

HomeSide meets the fourth requirement of Rule 24(a)(2) since its interests may not be adequately represented by existing parties. Certainly the defendants in the instant case are adverse to HomeSide and have no interest or incentive to protect Intervenor's interest. While the Marrones and HomeSide have similar interests, e.g., financial interests, it appears from the plaintiffs' Complaint that a substantial portion of their claim is for personal injuries. (*See* ¶¶ 34-36 of the Marrones' Complaint). Moreover, plaintiffs have sued certain defendants for non-personal injury claims which have no bearing upon their failure to pay their mortgage such as a bad faith claim against defendant, Allstate (*see* Count I of plaintiffs' Complaint), a misrepresentation claim against defendant, Edelman (*see* Count III of plaintiffs' Complaint), and an Unfair Trade Practice and Consumer Protection claim against defendants, Schafer and Mt. Gretna Realty (*see* Count II of plaintiffs' Complaint). Accordingly, HomeSide's financial interests will not be adequately protected by any party in this litigation and this Court should grant its Motion to Intervene as of right pursuant to F.R.C.P. 24(a).

In the alternative, HomeSide seeks intervention in the case at bar pursuant to F.R.C.P. 24(b) which states, in relevant part:

> Upon timely application, anyone may be permitted to intervene in an action (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will

unduly delay or prejudice the adjudication of the rights
of the original parties.

A leading commentator to the Federal Rules of Civil Procedure[6] has interpreted

24(b) as follows:

> The rule does not specify any particular interest that
> will suffice for permissive intervention and, as the
> Supreme Court has said, it "plainly dispenses with any
> requirement that the intervenor shall have a direct
> personal or pecuniary interest in the subject of the
> litigation."[7]

*    *    *

> Permissive intervention may be permitted when the
> intervenor has an economic interest in the outcome of
> the suit.

As stated above, HomeSide has a clear and definite interest in the subject property.  Furthermore,

factual issues related to HomeSide's claim are directly intertwined with the Marrones' claims

against defendants herein.  Moreover, as noted with respect to F.R.C.P. 24(a), HomeSide's

Motion to Intervene is timely.  When exercising its discretion under F.R.C.P. 24(b), the principal

consideration is whether the intervention will unduly delay or prejudice the adjudication of the

rights of the original parties.  The completion of discovery is three (3) months away and the trial

date is approximately nine (9) months away.  Because of the substitution of counsel for the

Marrones, the disposition of this case has been delayed so that HomeSide's proposed intervention

at this point will not cause any undue delay (or any delay at all) and will not prejudice the parties

---

[6]    Vol. 7C, Wright, Miller & Kane, <u>Federal Practice & Procedure</u>, § 1911 at 356-357
(1986).

[7]    Citing *SEC v. U.S. Realty & Improvement Co.*, 60 S. Ct. 1044, 1055, 310 U.S. 434, 459,
84 L.Ed. 1293 (1940).

herein. Consequently, in the alternative, this Honorable Court should grant HomeSide's Motion

to Intervene pursuant to F.R.C.P. 24(b).[8]

Respectfully submitted,

HARVEY, PENNINGTON, CABOT,
GRIFFITH & RENNEISEN, LTD.

BY: _____
JOEL D. GUSKY, ESQ.
I.D. No.: 22666
Eleven Penn Center
1835 Market Street, 29th Floor
Philadelphia, PA 19103
(215) 563-4470

Attorneys for Proposed Intervenor,
HomeSide Lending, Inc.

---

[8]   Without prejudice to the arguments contained herein, HomeSide submits that if the Court denies its Motion to Intervene entirely, that it nevertheless be permitted to participate in any final settlement of this action so that its interests are protected. As stated by the Third Circuit in *Harris v. Pernsley*, 820 F.2d 592, 603 (3d Cir. 1987):

> Indeed, permitting persons to appear in court, either as friends of
> this court or as intervenors for a limited purpose, may be advisable
> where third parties can contribute to the court's understanding of
> the consequences of the settlement proposed by the parties.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion to Intervene of HomeSide Lending, Inc. was sent to all counsel listed below on the date set forth below, via first class mail, postage prepaid:

Gianni Floro, Esquire
TARASI, TARASI & FISHMAN, P.C.
510 Third Avenue
Pittsburgh, PA 15219-2191

James G. Nealon, III, Esquire
NEALON & GROVER
2411 North Front Street
Harrisburg, PA 17110

John Flounlacker, Esquire
THOMAS, THOMAS & WAFER
305 N. Front Street
P.O. Box 999
Harrisburg, PA 17101

Edward Monsky, Esquie
FINE, WYATT & CAREY, P.C.
25 Spruce Street
Scranton, PA 18503

Robert E. Kelly, Jr., Esquire
DUANE, MORRIS & HECKSCHER
305 N. Front Street, 5th Floor
P.O. Box 1003
Harrisburg, PA 17108-1003


HARVEY, PENNINGTON, CABOT, GRIFFITH & RENNEISEN, LTD.

BY: _____

JOEL D. GUSKY, ESQUIRE
I.D. No.: 22666
Eleven Penn Center
1835 Market Street, 29th Floor
Philadelphia, PA 19103
(215) 563-4470

Attorneys for Proposed Intervenor,
HomeSide Lending, Inc.

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

HomeSide Lending, Inc.
8120 Nation's Way
Building 100
Jacksonville, FL 32256

      v.

Jack Marrone and Karen Marrone, h/w
11673 Highway PP
Dixon, MO 65459

Allstate Insurance Company
Allstate Plaza
2775 Sanders Road
Northbrook, IL 60062

Linda W. Edleman
82 Norway Lane
Lebanon, PA 17042

Fred Schafer
83 Columbia Avenue
Mt. Gretna, PA 17064

Mt. Gretna Realty
83 Columbia Avenue
Mt. Gretna, PA 17064

House Masters
203 West Caracas Avenue
Hershey, PA 17033

522754.1

## DECLARATORY JUDGMENT COMPLAINT

Plaintiff, HomeSide Lending, Inc. (hereinafter "HomeSide"), by its attorneys, Harvey, Pennington, Cabot, Griffith, & Renneisen, Ltd., hereby asserts a cause of action against defendants herein and avers the following:

### PARTIES

1.      Plaintiff, HomeSide, is a Florida corporation with its principal place of business located at 8120 Nations Way, Building 100, Jacksonville, Florida.

2.      Defendants, Jack Marrone and Karen Marrone (hereinafter "the Marrones"), are adult individuals (husband and wife) and reside at 11673 Highway PP, Dixon, Missouri.

3.      Defendant, Allstate Insurance Company (hereinafter "Allstate"), is a Delaware corporation with its principal place of business located at 2775 Sanders Road, Northbrook, Illinois.  At all times relevant herein, Allstate provided homeowners' insurance for a property located at 354 Timber Road, Mt. Gretna, Pennsylvania.

4.      Defendant, Linda M. Edelman (hereinafter "Edelman"), is an adult individual who resides at 82 Norway Lane, Lebanon, Pennsylvania.  Defendant, Edelman, owned 354 Timber Road prior to the Marrones.

5.      Defendant, Fred Schafer (hereinafter "Schafer"), is an adult individual with an office at 83 Columbia Avenue, Mt. Gretna, Pennsylvania.  Schafer was Edelman's real estate agent for the sale of 354 Timber Road to the Marrones and at all times relevant herein, was an agent, servant and/or employee of co-defendants, Mt. Gretna Realty.

6.     Upon information and belief, defendant, Mt. Gretna Realty (hereinafter "Mt. Gretna"), is a Pennsylvania corporation with its principal place of business located at 83 Columbia Avenue, Mt. Gretna, Pennsylvania.

7.     Upon information and belief, defendant, House Masters, is an independently owned franchise and a Pennsylvania corporation with its principal place of business located at 203 West Caracas Avenue, Hershey, Pennsylvania.

## TYPE OF ACTION AND JURISDICTION

8.     This is an action for a declaratory judgment pursuant to 28 U.S.C. §2201 and 28 U.S.C. §2202 for the purpose of determining a question of actual controversy between the parties herein.

9.     Jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. §1332. The matter in controversy, exclusive of interests and costs, exceeds $75,000.00.

10.     Venue is proper pursuant to 28 U.S.C. §1391 and this matter is related to Marrone v. Allstate Insurance Company, U.S.D.C. M.D. Pa. 1:CV-01-0773 which is currently pending in this Court.

## FACTUAL BACKGROUND

11.     On or about April 10, 2001, HomeSide filed a Complaint in Mortgage Foreclosure against the Marrones in the Court of Common Pleas, Lebanon County, Pennsylvania, No. 2001-00468, seeking to obtain in rem judgment for a property located at 354 Timber Road, Mt. Gretna, Pennsylvania. On August 31, 1999, the Marrones executed a Note and Mortgage to the original mortgagee, Equity One, Incorporated, for the amount of $165,000.00. Subsequently, the original Mortgage was assigned to HomeSide and the Assignment was recorded in Book 928,

Page 431, on December 6, 1999.  From November 1, 2000 to the present, the Marrones have

failed to pay their mortgage payments.  Attached hereto, made a part hereof, and marked Exhibit

"A" is a true and correct copy of HomeSide's Mortgage Foreclosure Complaint.

12.     As of the date HomeSide's Foreclosure Action was filed, the unpaid

principal balance of the mortgage totaled $163,346.92 and interest, accumulated late charges,

escrow credit, and attorneys' fees increased the amount owed HomeSide to $178,393.38.

Interest charges alone are increasing at the rate of $33.56/day (See HomeSide's Mortgage

Complaint, ¶ 7).

13.     On or about May 3, 2001, the Marrones filed a civil action described in

paragraph ten (10) herein against Allstate, Edelman, Schafer, Mt. Gretna Realty, and House

Masters.  Attached hereto, made a part hereof, and marked Exhibit "B" is a true and correct copy

of the Marrone's federal court Complaint.

14.     The Marrones' Complaint alleged, *inter alia*, personal injuries as a result of

mold contamination.  (*See* Marrones' Complaint, ¶21, 34-36).  Furthermore, the Marrones alleged

that the house at 354 Timber Road is still standing vacant and unsalable (¶ 39), and because the

toxic levels of mold were unsafe, they were forced to vacate the premises (¶ 33).

15.     When the Marrones left 354 Timber Road, they stopped making mortgage

payments to HomeSide.

16.     In order to protect their interest in the property in question, HomeSide needs

to gain access to the aforesaid residence to make necessary repairs so that the property is

inhabitable and therefore, salable.

17.    HomeSide has sustained serious financial harm by virtue of the Marrone's failure  to make their mortgage payments and the resulting default of their mortgage payments.

**WHEREFORE,** for good cause shown, Plaintiff, HomeSide Lending, Inc., respectfully requests this Honorable Court to enter judgment in its favor as follows:

a.    declare that it may enter the property located at 354 Timber Road, Mt. Gretna, Pennsylvania, so that HomeSide may make the necessary repairs to sell the subject property;

b.    declare that before the Marrones receive any proceeds from their federal court action by way of settlement or a judgment that HomeSide be paid in full for all damages it incurred as a result of the Marrones' default on their mortgage;

c.    award legal fees and costs to HomeSide for expenses incurred in bringing this action; and,

d.    grant such other relief at law or equity which Court deems just.

Respectfully submitted,

HARVEY, PENNINGTON, CABOT,
GRIFFITH & RENNEISEN, LTD.

BY: _____
JOEL D. GUSKY, ESQ.
I.D. No.: 22666
Eleven Penn Center
1835 Market Street, 29th Floor
Philadelphia, PA 19103
(215) 563-4470

Attorneys for Proposed Intervenor,
HomeSide Lending, Inc.

522754.1                                          -4-

# EXHIBIT B

HOMESIDE LENDING, INC,                    : IN THE COURT OF COMMON PLEAS
                              Plaintiff   : LEBANON COUNTY, PENNSYLVANIA
                                          :
            vs.                           : CIVIL ACTION - LAW
                                          :
KAREN A. MARRONE AND                      : ACTION OF MORTGAGE FORECLOSURE
JACK P. MARRONE,                          :
                              Defendants  :
                                          :

## COMPLAINT IN MORTGAGE FORECLOSURE

1. Plaintiff, HOMESIDE LENDING, INC., is a Corporation, with an address of 8120 NATIONS WAY, BUILDING 100, JACKSONVILLE, FLORIDA 32256.

2. Defendant, KAREN A. MARRONE, is an adult individual, whose last known address is 11673 HIGHWAY PP, DIXON, MISSOURI 65459.  Defendant, JACK P. MARRONE, is an adult individual, whose last known address is 11673 HIGHWAY PP, DIXON, MISSOURI 65459.

3. On or about, August 31, 1999, the said Defendants executed and delivered a Mortgage Note in the sum of $165,000.00 payable to EQUITY ONE, INCORPORATED.  The said Note is not accessible to Plaintiff and is believed to have been lost.  In further answer thereto, a copy is believed to be in the possession of Defendants.
Plaintiff also avers that the within Mortgage foreclosure complaint is based upon the Mortgage and that the attachment of a copy of the Note is unnecessary pursuant to Rules 1019(h) and 1141(a) of the Pennsylvania Rules of Civil Procedure.

4. Contemporaneously with and at the time of the execution of the aforesaid Mortgage Note, in order to secure payment of the same, Defendants made, executed, and delivered to original Mortgagee, a certain real estate Mortgage which is recorded in the Recorder of Deeds Office of the within County and Commonwealth in Mortgage Book 916, Page 820 conveying to original Mortgagee the subject premises. The Mortgage was subsequently assigned to HOMESIDE LENDING, INC. and recorded in the aforesaid County in Mortgage Book 928, Page 431 on December 6, 1999.  The Said Mortgage and Assignment are incorporated herein by reference.

5.  The land subject to the Mortgage is: 354 TIMBER ROAD, MT. GRETNA, PENNSYLVANIA 17064 and is more particularly described in Exhibit "A" attached hereto.

6.  The said Defendants are the real owners of the property.

7.  The Mortgage is in default due to the fact that Mortgagors have failed to pay the installment due on November 1, 2000 and all subsequent installments thereon, and the following amounts are due on the Mortgage:

| | |
|---|---:|
| UNPAID PRINCIPAL BALANCE | $163,346.92 |
| Interest at $33.56 per day<br>From 10/01/2000 To 05/01/2001<br>( based on contract rate of 7.500%) | $7,114.72 |
| Accumulated Late Charges | $276.45 |
| Late Charges at $55.29<br>Per month for 7 months | $387.02 |
| Escrow Credit | $899.08 |
| Attorney's Fee at 5% of Principal Balance | $8,167.35 |
| | $178,393.38 |

**Together with interest at the per diem rate noted above after May 1, 2001 and other charges and costs to date of Sheriff's Sale.

The attorney's fees set forth above are in conformity with the Mortgage documents and Pennsylvania law, and will be collected in the event of a third party purchaser at Sheriff's Sale. If the Mortgage is reinstated prior to the sale, reasonable attorney's fees will be charged that are actually incurred by Plaintiff.

8.  No judgement has been entered upon said Mortgage in any jurisdiction.

9.  Notice of intention to foreclose and accelerate the loan balance pursuant to Pennsylvania Act No. 6 of 1974 is not required in that the original principal balance exceeds $50,000.00.

10. Defendants are not members of the Armed Forces of the United States of America, nor engaged in any way which would bring them within the Soldiers and Sailors Relief Act of 1940, as amended.

11. Plaintiff has complied with the procedures required by Pennsylvania Act 91 of 1983 (Homeowners' Emergency Mortgage Assistance Payments Program) and Defendants have either failed to meet the time limitations as set forth therein or have been determined by the Housing Finance Agency not to qualify for assistance.

**WHEREFORE,** Plaintiff demands judgment in mortgage foreclosure **"IN REM"** for the aforementioned total amount due together with interest at the rate of 7.500% ($33.56 per diem), together with other charges and costs including escrow advances incidental thereto to the date of Sheriff's Sale and for foreclosure and sale of the property within described.

By:_____

**PURCELL, KRUG & HALLER**
Leon P. Haller, Esquire
Attorney for Plaintiff
I.D. # 15700
1719 N. Front Street
Harrisburg, PA 17102
(717-234-4178)

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACK MARRONE, husband, KAREN          :
MARRONE, wife, both individually and  :     **1 : CV-01-0773**
in their capacity as parents and guardians  :
for VIDA MARRONE, a minor,            :     Civil Action No.
          Plaintiffs  :
                          :     **FILED**
                          :     **SCRANTON**
    vs.                    :
                          :     MAY - 3 2001
ALLSTATE INSURANCE COMPANY,           :
LINDA M. EDLEMAN, FRED SCHAFER,       :     PER _____
MT. GRETNA REALTY, and                :           DEPUTY CLERK
HOUSE MASTERS                         :     JURY TRIAL DEMANDED
          Defendants  :

## COMPLAINT

AND NOW COMES, the Plaintiffs, by and through their counsel, Stevens & Johnson, and

for their Complaint states and alleges the following:

## JURISDICTION

1.    Plaintiffs seek jurisdiction of this Court under Diversity of Citizenship pursuant to 28

U.S.C. § 1332. Plaintiffs are citizens of the State of Missouri. Defendant Allstate Insurance

Company, is duly incorporated in the State of Delaware, with its corporate headquarters located in

Illinois. Defendant Linda M. Edleman is a citizen of Pennsylvania, Defendant Mt. Gretna Realty is located in Pennsylvania, Defendant Housemasters is an independently owned franchise located in Pennsylvania. The matter in controversy exceeds, exclusive of interests and costs, the sum specified by 28 U.S.C. § 1332.

**PARTIES**

2.    Plaintiffs, Jack Marrone and Karen Marrone, are both adults, who are husband and wife, and reside at 11673 Highway PP, Dixon, Missouri. They are the natural guardians of Vida Marrone, their daughter.

3.    Plaintiff, Vida Marrone, is a sixteen (16) year old minor, and daughter of Jack and Karen Marrone and resides with her parents at 11673 Highway PP, Dixon, Missouri.

4.    Defendant, Allstate Insurance Company is a corporation, duly incorporated in the State of Delaware, with its corporate headquarters located at Allstate Plaza, 2775 Sanders Road, Northbrook, Illinois.

5.    Defendant Linda M. Edleman is an adult woman residing at 82 Norway Lane, Lebanon, Lebanon County, Pennsylvania.

6.    Defendant Fred Schafer was Defendant Edleman's real estate agent and is located at 83 Columbia Avenue, Mt. Gretna, Lebanon County, Pennsylvania.

7.    Defendant Mt. Gretna Realty is located at 83 Columbia Avenue, Mt. Gretna, Lebanon County, Pennsylvania.

8.    Defendant HouseMasters is an independently owned franchise, located at 203, West Caracas Avenue, Hershey, Dauphin County, Pennsylvania.

2

9.  At all relative times hereto, Defendants Allstate, Mt. Gretna Realty, and HouseMasters, were acting through their respective agents, servants, employees, and ostensible agents who were acting within the course and scope of their employment with the above listed Defendants and under the exclusive control of said Defendants.

## BACKGROUND

10.  On or about June of 1999, the Plaintiffs came to Pennsylvania to look for a home.

11.  On or about July of 1999, the Plaintiffs found the home at issue, located at 354 Kimber Road, Mt. Gretna, Lebanon County, Pennsylvania, owned at that time by Defendant Linda M. Edleman.

12.  Mt. Gretna Realty, at all relevant times, acted as the agent of the seller, Linda M. Edleman, in the sale of the property at issue, and as such knew, or should have known, due to previous experience in the sale of homes in the neighborhood, of the potential for water/dampness and mold problems with the house at issue.

13.  On or about July 30, 1999, the Plaintiffs hired Defendant HouseMasters, to inspect said home, who did so through their agent, servant, employee, or ostensible agent.

14.  Said inspection was for any problems associated with the purchase of a dwelling.

15.  Said inspection noted water stains in the basement and without further inspection HouseMasters recommended to "slope soil away from house; keep down spouts clean and flowing, or consider extending spouts onto surface."

16.  Plaintiffs, relying on said report, complied fully with said recommendation.

17.  Defendant Allstate issued an insurance policy covering the property at issue which

3

became effective August 25, 1999.

18.    Prior to completing the purchase, Defendant Edleman, pursuant to 68 P.S. §1024, provided a Seller's Property Disclosure Statement specifically denying any basement dampness/water problems or leakage problems.

19.    On or about August 31, 1999, Plaintiffs completed the purchase of said home and the Plaintiffs immediately took possession and occupied said property relying on the representations of all of the Defendants except Defendant Allstate.

20.    All of the contracts referred to in this suit have in addition to the other terms, the implied covenant of "good faith."

21.    On or about July of 2000, the Plaintiffs went away on vacation, and returned one (1) week later to find the basement covered in mold. Said mold covered the walls, ceiling, floor, and furniture. This was the first time that the Plaintiffs had any notice of this problem.

22.    Plaintiffs immediately contacted Defendant Allstate and filed an insurance claim.

23.    Defendant Allstate's agent, servant, employee, or ostensible agent, at all times acting in the course and scope of his employment, performed only a cursory and superficial inspection, and in a letter dated August 10, 2000, denied coverage claiming said damage was the result of a "preexisting condition" and therefore not covered by Plaintiffs' policy.

24.    The cause of the "so called" preexisting condition was not stated.

25.    There was also no statement that Plaintiffs should have somehow been aware of the condition.

26.    Despite Defendant Allstate's involvement in similar litigation concerning the health

4

hazards posed by mold, at no time did Defendant Allstate, or its agents, servants, employees, or ostensible agents, who now had actual knowledge of the mold problem, inform or otherwise make known to the Plaintiffs the possibility of potential health problems related to the growth of mold, or other organic toxins.

27.    Plaintiffs, being unaware of the potential catastrophic dangers created by mold remained in the home.

28.    As between Plaintiffs and Defendant Allstate, an unknown condition, does not meet the test of a preexisting condition; or in the alternative, the test for preexisting condition in this policy is either ambiguous or unenforceable.

29.    On or about August 28, 2000, the Plaintiffs had their home inspected by Advanced Applied Sciences, Inc., whose corporate headquarters is located at 4400 Linglestown Road, Harrisburg, Pennsylvania.

30.    Said inspection consisted of a bioaerosol survey.

31.    On or about September 29, 2000, as a result of a telephone conversation with Advanced Applied Sciences, Inc., the Plaintiffs learned the results of the aforementioned testing.

32.    Plaintiffs learned that there was a finding of "fungal contaminations in the house" consisting of, but not limited to, Aspergillus, Stachybotrys, Penicillium, Alternaria, Chrysosporium, Epicoccum, and Cladosporium, said inspection also revealed a relative humidity level in    the basement 21% higher than that found outside the house.

33.    Having learned that the toxic levels in the house were unsafe, the Plaintiffs, as a result, were forced to vacate the premises.

34.   As a direct and proximate result of exposure to said fungal toxins, Plaintiff, Jack Marrone has suffered and will continue to suffer from among other things:

(a)   memory loss

(b)   mood swings

(c)   depression

(d)   severe fatigue

(e)   sexual dysfunction

35.   As a direct and proximate result of exposure to said fungal toxins, Plaintiff, Karen Marrone has suffered and will continue to suffer from among other things:

(a)   hair loss

(b)   abdominal cramping

(c)   diarrhea

(d)   sinusitis

(e)   phlegm and coughing

(f)   fever

(g)   dry and itching skin

(h)   loss of concentration

(i)   loss of cognitive functions

(j)   severe fatigue

(k)   severe loss of voice

36.   As a direct and proximate result of exposure to said fungal toxins, Plaintiff, Vida

Marrone has suffered and will continue to suffer from among other things:

    (a)    hair loss

    (b)    sinusitis

    (c)    continuous headaches

    (d)    diarrhea

    (e)    cramping

    (f)    severe fatigue

37.    As a direct and proximate result of exposure to said fungal toxins, the Plaintiffs have suffered and will continue to suffer embarrassment, humiliation, and psychological trauma.

38.    As a direct and proximate result of said fungal toxins, the Plaintiffs have suffered financial damages, including but not limited to, the economic loss of their home.

39.    To this date, the house at 354 Kimber Road is still standing, vacant and unsalable.

40.    At all times material hereto, the Plaintiffs have met all of their obligations acquired under all contracts mentioned below.

41.    Plaintiffs now bring this action for damages caused by the Defendants bad faith, breach of contract, misrepresentations, negligence, and violations of statutes.

## COUNT I

### PLAINTIFFS v. ALLSTATE INSURANCE COMPANY
### BAD FAITH

42.    The Plaintiffs hereby incorporate paragraphs 1 through 41 of their complaint, inclusive, as though the same were set forth herein at length.

43.     Defendant Allstate Insurance Company failed to handle the Plaintiffs' claims in a reasonable manner by failing to perform a complete and detailed investigation as to the cause of said fungal toxins.

44.     Defendant Allstate Insurance Company violated the provisions of 42 Pa. C.S.A. §8371; the Unfair Insurance Practices Act, 40 P.S. § 1171.1 et al., and the Unfair Claims Settlement Practices, Title 31, Subsection 146.1 et al.

45.     An action for bad faith may arise from an insurer's inadequate investigations. *O'Donnell v. Allstate Insurance Co.*, 734 A.2d 901 (Pa. Super. 1999).

46.     Defendant Allstate Insurance Company also acted in bad faith by failing to inform the Plaintiffs of possible health risks associated with exposure to fungal toxins, which the Defendant was or should have been aware of from such claims which were known to Defendant Allstate previously.

47.     In addition to all other monetary demands heretofore made, in order to punish Defendant Allstate Insurance Company for their bad faith and to deter other insurers from engaging in similar activities, and to compensate Plaintiffs for the complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars together with attorneys' fees, interests, costs, and punitive damages in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant Allstate Insurance Company for payment in excess of One Hundred Thousand ($100,000.00) Dollars, plus

8

attorneys' fees, costs, and punitive damages in excess of One Hundred Thousand ($100,000.00) Dollars.

**COUNT II**

**THE PLAINTIFFS v. ALLSTATE INSURANCE COMPANY
BREACH OF CONTRACT**

48.     The Plaintiffs hereby incorporate paragraphs 1 through 47 of their Complaint, inclusive, as though the same were set forth herein at length.

49.     The Plaintiffs, Jack and Karen Morrone, contracted with Defendant Allstate Insurance Company to provide homeowners insurance coverage for the Plaintiffs' property which included an express or implied requirement for Defendant Allstate to fairly, in good faith, and with the exercise of reasonable care, without bad faith, to adjust covered claims by Plaintiffs.

50.     Defendant Allstate, through its agents, representatives, and employees breached the contract by performing the most simple of inspections, then coming to the immediate determination that the mold infestation of the house at issue was a pre-existing condition, despite the fact that there was nothing which would indicate that Plaintiffs were aware of any alleged preexisting problem.

51.     Defendant Allstate failed to properly evaluate and pay Plaintiffs' claim within a reasonable period of time, which constituted a breach of its contract with the Plaintiffs, to properly adjust claims by the Plaintiffs.

52.     Defendant Allstate also failed to warn the Plaintiffs of the potential danger associated with mold.

53.     Defendant Allstate failed to properly apply the terms and conditions of the policy.

54.    As a direct and proximate result of Defendant Allstate's breach of contract, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant Allstate Insurance Company for payment in excess of One Hundred Thousand ($100,000.00) Dollars.

## COUNT III

## PLAINTIFFS v. LINDA M. EDLEMAN
## MISREPRESENTATION

55.    The Plaintiffs hereby incorporate paragraphs 1 through 41 of their Complaint, inclusive, as though the same were set forth herein at length.

56.    Defendant Edleman had a duty to disclose all material defects relating to the property at issue, pursuant to the Real Estate Seller Disclosure Act (68 P.S. § 1021 et seq.).

57.    In the Seller's Property Disclosure Statement, required pursuant to 68 P.S. § 1024, Defendant Edleman intentionally misrepresented the conditions associated with the property at issue when she indicated that there was no basement dampness/water problems or leakage problems.

58.    Defendant Edleman knew, or should have known, that said basement was prone to dampness and water problems and disclosed same as required by law.

59.    At all times material hereto, the Plaintiffs relied upon the misrepresentations of Defendant Edleman.

60.   These undisclosed problems lead to the formation of the mold in July of 2000.

61.   As a direct and proximate result of Defendant Edleman's failure to disclose said information, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, as set forth supra., and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant Edleman for payment in excess of One Hundred Thousand ($100,000.00) Dollars, Plaintiffs also request Rescission of the subject transaction for the sale of the property at issue and complete restitution together with a judgment ordering other incidental and consequential costs, prejudgment interest, attorneys' fees, and cost of suit.

## COUNT IV

### PLAINTIFFS v LINDA M. EDLEMAN
### NEGLIGENCE

62.   The Plaintiffs incorporate paragraphs 1 through 41 and 55 through 61 of their Complaint, inclusive, as though the same were set forth herein at length.

63.   Defendant Edleman had a legally imposed duty to disclose all known defects to the property at issue prior to settlement.

64.   Defendant Edleman knew or should have known of said defects to the property, in the form of dampness/water leakage in the basement.

11

65. Defendant Edleman negligently breached this duty when she failed to disclose said information as was required by law.

66. These undisclosed problems lead to the formation of the mold in July of 2000.

67. As a direct and proximate result of Defendant Edleman's failure to disclose said information, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant Edleman for payment in excess of One Hundred Thousand ($100,000.00) Dollars, Plaintiffs also request Recision of the subject transaction for the sale of the property at issue and complete restitution together with a judgment ordering other incidental and consequential costs, prejudgment interest, attorneys' fees, and cost of suit.

## COUNT V

### PLAINTIFFS v. LINDA M. EDLEMAN
### BREACH OF CONTRACT

68. The Plaintiffs hereby incorporate paragraphs 1 through 41 and 55 through 67 of their Complaint, inclusive, as though the same were set forth herein at length.

69. The Plaintiffs, Jack and Karen Marrone, contracted with Defendant Edleman for the purchase of her house.

12

70.    When Defendant Edleman agreed to said contract, she made express or implied warranties concerning the condition of said house.

71.    Defendant Edleman breached her contract with the Plaintiffs by failing to disclose relevant information concerning the condition of the basement prior to the sales transaction.

72.    These undisclosed problems lead to the formation of the mold in July of 2000.

73.    As a direct and proximate result of Defendant Edleman's breach of contract, the Plaintiffs, Jack and Karen Marrone, have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone and Karen Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant Edleman for payment in excess of One Hundred Thousand ($100,000.00) Dollars, Plaintiffs also request Recision of the subject transaction for the sale of the property at issue and complete restitution together with a judgment ordering other incidental and consequential costs, prejudgment interest, attorneys' fees, and cost of suit.

## COUNT VI

### PLAINTIFFS v. FRED SCHAFER AND MT. GRETNA REALTY
### MISREPRESENTATION

74.    The Plaintiffs incorporate paragraphs 1 through 41 of their Complaint, inclusive. as though the same were set forth herein at length.

13

75.    Defendants Fred Schafer and Mt. Gretna Realty were at all relevant times the agent, servant, employee, or ostensible agent of Defendant Linda M. Edleman, and acted through its agents, servants, employees, and ostensible agents.

76.    Defendants Fred Schafer and Mt. Gretna Realty were, and have been an agent for, other homes in the area and as such, due to their experience and expertise, knew or should have know that the property in question, and the area was prone to said dampness/water problems.

77.    Defendants Fred Schafer and Mt. Gretna Realty had a duty to disclose, as well as a duty to make sure that the seller, their principle, disclosed all known defects in the property at issue prior to sale.

78.    Defendants Fred Schafer and Mt. Gretna Realty breached that duty by failing to disclose, and acted in concert with Defendant Edleman to not reveal said known defects relating to dampness/water.

79.    These undisclosed problems lead to the formation of the mold in July of 2000.

80.    As a direct and proximate result of Defendants Fred Schafer and Mt. Gretna Realtys' failure to disclose said information, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendants Fred Schafer and Mt. Gretna Realty for payment in excess of One Hundred Thousand ($100,000.00) Dollars,

Plaintiffs, Jack and Karen Marrone, also request Recision of the subject transaction for the sale of the property at issue and complete restitution together with a judgment ordering other incidental and consequential costs, prejudgment interest, attorneys' fees, and cost of suit.

## COUNT VII

## PLAINTIFFS v. FRED SCHAFER AND MT. GRETNA REALTY
## UNFAIR TRADE PRACTICE AND CONSUMER PROTECTION LAW (UTPCPL)

81.    The Plaintiffs incorporate paragraphs 1 through 41 and 74 through 80 of their Complaint, inclusive, as though the same were set forth herein at length.

82.    In view of the foregoing, the Plaintiffs believe and therefore aver that the Defendants, Fred Schafer and Mt. Gretna Realty, have engaged in unfair and/or deceptive acts or practices as contemplated by the Pennsylvania Unfair Trade Practice and Consumer Protection Law (hereinafter sometimes referred to as "UTPCPL") which include but are not limited to the following:

(a)    Using deceptive representations in connection of the condition of the aforesaid sale of subject property;

(b)    In representing that said property was not defective when they knew, or should have known, it was not;

(c)    Engaging in fraudulent conduct which created a likelihood of confusion and/or misunderstanding in the Plaintiffs' purchase, ownership, and maintenance of the subject property;

(d)    Defendants engaged in the foregoing conduct for the sole purpose of concealing the seriousness and gravity of the defective conditions of said property and thus preventing any further action to rectify the serious and defective condition of the subject property which was

15

reckless, malicious, and in gross disregard of the Plaintiffs' rights.

83.    As a direct and proximate cause of the Defendants' violation of the UTPCPL, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars, and are entitled to treble damages and attorneys' fees.

WHEREFORE, Plaintiffs, Jack Marrone, Karen Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against the Defendants Fred Schafer and Mt. Gretna Realty, in excess of One Hundred Thousand ($100,000.00) Dollars, costs, treble damages, and punitive damages.

## COUNT VIII

### PLAINTIFFS v. HOUSEMASTERS
### NEGLIGENCE

84.    The Plaintiffs hereby incorporate paragraphs 1 through 41 of their Complaint, inclusive, as though the same were set forth herein at length.

85.    At all relative times hereto, Defendant HouseMasters acted through its agents, employees, servants, and ostensible agents, including but not limited to, Chuck Berthound, the HouseMasters inspector who inspected the Plaintiffs home.

86.    Due to concerns of the Plaintiffs regarding water spots in the basement, they contracted with and hired HouseMasters to perform an inspection of what became the fungal toxin infested house prior to their purchasing the same.

16

87.    On or about July 30, 1999, Defendant HouseMasters performed an inspection of the home.

88.    The HouseMasters report noted water stains in the basement, and recommended sloping the soil away from the house, keeping the down spouts clean, or to consider extending the spouts onto the surface.

89.    Defendant HouseMasters, through its agent Mr. Berthound, was and is a professional house inspection company and therefore holds itself out as expert in said field.

90.    Defendant HouseMasters, while noting the water stains, did not identify the source of said stains, nor did they recommend further investigation, nor did they refer the Plaintiffs to other professionals who may have been of assistance.

91.    In reliance of the HouseMasters report, which was void of any warnings of potential problems, the Plaintiffs purchased the house at issue.

92.    Defendant HouseMasters had a duty to inspect said home for defects and to then notify the potential purchasers of said defects.

93.    As a direct and proximate result of Defendant HouseMasters's failure to disclose said information, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant

HouseMasters for payment in excess of One Hundred Thousand ($100,000.00) Dollars, interest, and costs of this suit.

## COUNT IX

### PLAINTIFFS v. HOUSEMASTERS
### MISREPRESENTATION

94.    The Plaintiffs hereby incorporate Paragraphs 1 through 41 and 84 through 93 of their Complaint, inclusive, as though the same were set forth herein at length.

95.    Defendant HouseMasters misrepresented the conditions of the house at issue to the Plaintiffs when it failed to inform them of the source of the water damage and/or of any current or potential problems related to water damage.

96.    The Plaintiffs' justifiably relying on said information purchased the house at issue.

97.    As a direct and proximate result of Defendant HouseMasters's failure to disclose said information, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant HouseMasters for payment in excess of One Hundred Thousand ($100,000.00) Dollars.

## COUNT X

### PLAINTIFFS v. HOUSEMASTERS
### BREACH OF CONTRACT

18

98.    The Plaintiffs hereby incorporate paragraphs 1 through 41 and 84 through 97 of their Complaint, inclusive, as though the same were set forth herein at length.

99.    The Plaintiffs, Jack and Karen Marrone, contracted with HouseMasters to perform an inspection of the property at issue, in order to determine any defects or potentially hazardous conditions on the property prior to the Plaintiffs purchasing the same.

100.    The Plaintiffs specifically contracted with HouseMasters regarding potential water/dampness problems with the house.

101.    HouseMasters, while noting water damage, failed to identify the source of said damage, the severity of said source, nor did they identify or notify the Plaintiffs regarding any potential health problems pertaining to said water/dampness prior to the purchase of what became the fungal toxin infested home.

102.    As experts in the field of home inspection, HouseMasters knew, or should have known, that fungal growth was a potential result of said water/dampness.

103.    As experts in the field of home inspection, HouseMasters knew, or should have known, that said fungal growth was potentially toxic and harmful to human health.

104.    Despite their contractual arrangement with the Plaintiffs to inform them of potential hazards associated with their prospective home, Defendant HouseMasters at no time informed them of any potential fungus or potential harm which could result therefrom.

105.    As a direct and proximate result of Defendant HouseMasters breach of contract with the Plaintiffs, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs,

19

individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone and Karen Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against the Defendant HouseMasters in excess of One Hundred Thousand ($100,000.00) Dollars.

## COUNT XI

### PLAINTIFFS v. HOUSEMASTERS
### UNFAIR TRADE PRACTICE AND CONSUMER PROTECTION LAW (UTPCPL)

106.    The Plaintiffs incorporate paragraphs 1 through 41 and 84 through 105 of their Complaint, inclusive, as though the same were set forth herein at length.

107.    In view of the foregoing, the Plaintiffs believe and therefore aver that the Defendant, HouseMasters, has engaged in unfair and/or deceptive acts or practices as contemplated by the Pennsylvania Unfair Trade Practice and Consumer Protection Law (hereinafter sometimes referred to as "UTPCPL") which include but are not limited to the following:

(a)    Using deceptive representations in connection of the condition of the aforesaid sale of subject property;

(b)    In representing that said property was not defective when they knew, or should have known, it was not;

(c)    Engaging in fraudulent conduct which created a likelihood of confusion and/or misunderstanding in the Plaintiffs' purchase, ownership, and maintenance of the subject property;

(d)    Fraudulently representing to Plaintiffs that suggested repairs regarding property

at issue would mitigate and/or prevent said leakage and/or other defects or damage which occurred.

(e)    Defendant engaged in the foregoing conduct for the sole purpose of concealing the seriousness and gravity of the defective conditions of said property and thus preventing any further action to rectify the serious and defective condition of the subject property which was reckless, malicious, and in gross disregard of the Plaintiffs' rights.

108.    As a direct and proximate cause of the Defendant's violation of the UTPCPL, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars, and are entitled to treble damages and attorneys' fees.

WHEREFORE, Plaintiffs, Jack Marrone, Karen Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against the Defendant HouseMasters, in excess of One Hundred Thousand ($100,000.00) Dollars, costs, treble damages, punitive damages, and attorneys' fees.

STEVENS & JOHNSON

By: _____

Timothy T. Stevens, Esquire
I.D. No. 60247
Richard F. Stevens, Esquire
I.D. No: 08073
Attorneys for the Plaintiffs,
Jack Marrone, Karen Marrone, and
Vida Marrone

740 Hamilton Mall
Allentown, Pennsylvania 18101
(610) 439-1451

21