

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACK MARRONE, husband, KAREN MARRONE, wife, both individually and in their capacity as parents and guardians for VIDA MARRONE, a minor, Plaintiffs, | NO.: 1:CV-01-0773 |
| v. | (THE HONORABLE JUDGE KANE) |
| ALLSTATE INSURANCE COMPANY, LINDA M. EDLEMAN, FRED SHAFER, MT. GRETNA REALTY, and HOUSE MASTERS, Defendants. | JURY TRIAL DEMANDED |

FILED
HARRISBURG, PA
OCT 18 2002
MARY E. D'ANDREA, CLERK
Deputy Clerk

## BRIEF OF DEFENDANT, ALLSTATE INSURANCE COMPANY, IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

I.   **Background.**

On or about May 3, 2001, Plaintiffs (Jack, Karen and Vida Marrone) commenced this civil action by filing a Complaint. On or about September 26, 2001, Plaintiffs filed a motion to file an amended Complaint to include an additional plaintiff, Matthew Marrone. Said motion to amend the Complaint was granted by this Honorable Court on October 19, 2001.

The underlying facts giving rise to this cause of action arise from certain injuries allegedly suffered by the Plaintiffs as a result of an alleged mold infestation occurring in or about July 2000, within the plaintiffs' residence located at 354 Timber Road, Mt. Gretna, Lebanon County, Pennsylvania.

1

On August 31, 1999, Plaintiffs, Jack and Karen Marrone, husband and wife, took possession of 354 Timber Road after settlement on the same date. The Marrones lived at the property in question with their children, Plaintiff's Vida and Matthew Marrone. Prior to settlement on the property, on August 25, 1999, Plaintiff Karen Marrone applied for a homeowners policy with Defendant, Allstate Insurance Company (hereinafter "Allstate"). Pursuant to Ms. Marrone's application for Homeowners Insurance, Allstate issued its Deluxe Plus Homeowners Policy (hereinafter "Homeowners Policy"). The Homeowners Policy was effective from 12:01 a.m. on August 25, 1999 to August 25, 2000. It is undisputed that the Homeowners Policy was in effect during all relevant times pertaining to the within action.

Plaintiffs, who then resided at 354 Timber Lane, took a one-week vacation in July 2000. Upon returning from vacation, the Plaintiffs allegedly discovered mold had infiltrated their basement. Allstate concedes that Plaintiff's filed a claim with Allstate under the Homeowner Policy to file a claim because of this mold problem. On August 10, 2000, Allstate denied coverage for Plaintiffs' claim under the Homeowners Policy citing the specific policy language.

II.  **Question Presented.**

WHETHER ALLSTATE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE OF THE MOLD EXCLUSION IN THE APPLICABLE ALLSTATE HOMEOWNERS POLICY?

**(Suggested answer in the AFFIRMATIVE.)**

III. **Argument**.

A. **Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.C.P. 56(c). It is not the responsibility of the trial court to resolve disputed issues of fact, but to determine whether there are any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). For a dispute to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248. If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

B. **Policy Language at Issue.**

The Allstate Policy at issue provides for certain losses to the Plaintiff's residence and other structures as follows:

> We will cover sudden and accidental direct physical loss to property described in Coverage A—Dwelling Protection and Coverage B—Other Structures Protection **except as limited or excluded in this policy**.

*See* Homeowners Policy at 6 (emphasis added).

Furthermore, the Homeowners Policy specifically excludes losses consisting of or caused by mold:

> In addition, [Allstate does] not cover loss consisting of or caused by any of the following:
> 13. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
>     b) mechanical breakdown;
>     c) growth of trees, shrubs, plants or lawns whether or not such growth is about or below the ground;
>     d) rust or other corrosion, **mold**, wet or dry rot;
>     e) smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations;
>     f) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
>     g) insects, rodents, birds, or domestic animals. We do not cover the breakage of glass or safety glazing materials caused by birds; or
>     h) seizure by government authority.

*Id.* at 7 (emphasis added).

### C. Law

An insurance policy is a contract. The standard of review for such a contract has been previously determined.

> The standards to be applied in reviewing such a contract are well settled. First, the words included in the instrument must be given their ordinary meaning. Second, ambiguous terms in an insurance policy should be construed against the insurer. Third, a term is ambiguous only "if reasonably intelligent men on considering it in the context of the entire policy would honestly differ as to its meaning." Fourth, the parties true intent must be determined not only from the language but from all the surrounding circumstances.

*United Services Auto. Ass'n v. Elitzky*, 517 A.2d 982, 986 (Pa.Super. 1986) (citations omitted) (quoting *Erie Ins. Exchange v. Transamerica Ins. Co.*, 507 A.2d 389, (Pa.Super. 1984)).

### D. Analysis

Given the foregoing strictures that confine this analysis, Allstate has no duty to provide coverage because any losses consisting of or caused by mold, when read in light of the plain and clear meaning of the above-quoted Homeowners Policy, are excluded from coverage. Furthermore, nothing in the Homeowners Policy is ambiguous nor is there a question of intent of the policy. The Homeowners Policy specifically affords coverage unless there is a specific exclusion. Here, there is a specific mold exclusion. Allstate Policy at 7 (*See* "Losses We Do Not Cover Under Coverages A and B" on page 7, at number 13.d). By Plaintiffs' own admissions, the only alleged cause of their injuries is the presence of mold at their 354 Timber Road residence. (Karen Marrone N.T. at 16-17; Jack Marrone N.T. at 23). Allstate contends the mold infestation is not covered because of the specific and unambiguous exclusion delineated in the Homeowners Policy. *See United Services Auto. Ass'n v. Elitzky, supra*. The Record is void of any evidence to the contrary and as such there is no genuine issue of material fact.

IV.   **Conclusion**.

WHEREFORE, for all of the foregoing reasons and in light of the authority cited herein, Defendant, Allstate Insurance Company, urges this Honorable Court to enter Summary Judgment in its favor and dismiss it from the within action.

NEALON & GOVER, P.C.

By: _____
James G. Nealon, III, Esquire
I.D. #46,457
2411 North Front Street
Harrisburg, PA  17110
717/232-9900

Date:  10/17/02

# CERTIFICATE OF SERVICE

AND NOW, this 18th day of October, 2002, I hereby certify that I have served the foregoing BRIEF OF DEFENDANT, ALLSTATE INSURANCE COMPANY, IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT on the following by depositing a true and correct copy of same in the United States mail, postage prepaid, addressed to:

Louis M. Tarasi, Jr.
TARASI, TARASI & FISHMAN, P.C.
510 Third Avenue
Pittsburgh, PA   15219

John Flounlacker, Esquire
THOMAS, THOMAS & HAFER, LLP
305 North Front Street
Harrisburg, PA   17101

Edward A. Monsky, Esquire
FINE, WYATT & CAREY, P.C.
425 Spruce Street
P.O. Box 590
Scranton, PA   18501-0590

Jennifer L. Murphy, Esquire
DUAN, MORRIS & HECKSHER, LLP
305 North Front Street, 5th Floor
Harrisburg, PA   17101

James G. Nealon, III, Esquire