# ● ORIGINAL ●

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACK MARRONE, KAREN MARRONE, :
both individually and in their capacity as :
parents and guardians for : CIVIL ACTION - LAW
VIDA MARRONE, a minor, and :
MATTHEW MARRONE :
                    Plaintiffs :
                               :
         v.                    : CASE NO.: 1:CV-01-0773
                               :
                               : JURY TRIAL DEMANDED
ALLSTATE INSURANCE COMPANY,    :
LINDA M. EDLEMAN, FRED SCHAFER, :
MT. GRETNA REALTY, and         : (JUDGE KANE)
HOUSEMASTER                    :
                    Defendants :

*FILED
HARRISBURG, PA
OCT 8 2002
MARY E. D'ANDREA, CLERK
Per
Deputy Clerk*

---

## **DEFENDANT HOUSEMASTER'S BRIEF IN SUPPORT**
## **OF ITS MOTION FOR SUMMARY JUDGMENT**
## **ON COUNTS VIII THROUGH XI OF THE AMENDED COMPLAINT**

Paul E. Scanlan, Esquire
Attorney ID No. 75733
Jennifer L. Murphy, Esquire
Attorney ID No. 76432
DUANE MORRIS LLP
305 North Front Street, 5th Floor
P.O. Box 1003
Harrisburg, PA 17108-1003

Attorneys for Defendant HouseMaster

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V,    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        NO GENUINE ISSUES OF MATERIAL FACT EXIST
        AND DEFENDANT HOUSEMASTER IS ENTITLED
        TO JUDGMENT AS A MATTER OF LAW . . . . . . . . . . . . . . . . . 8

        A.    Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.    Housemaster Is Entitled To Judgment As A Matter
             Of Law On Plaintiffs' Breach Of Contract Claim . . . . . . . . 9

        C.    The Court Should Grant Summary Judgment as
             to Plaintiffs' Negligence, Misrepresentation and
             UTPCPL Claims Pursuant to the "Gist of the
             Action" Test Because They Are Nothing More
             than Disguised Claims for Breach of Contract . . . . . . . . . . 15

        D.    Housemaster Is Entitled To Judgment As A
             Matter Of Law On Plaintiffs' Negligence Claim . . . . . . . . 20

        E.    HouseMaster Is Entitled To Judgment As A
             Matter Of Law On Plaintiffs' Misrepresentation Claim . . . . 25

i

F.    HouseMaster Is Entitled To Judgment As A
      Matter Of Law On Plaintiffs' Unfair
      Trade Practices And Consumer Protection
      Law Claim ..................................... 28

G.    HouseMaster Is Entitled To Judgment As A
      Matter of Law on Plaintiffs' Claims for
      Personal Injury Damages ......................... 32

VI.   CONCLUSION ......................................... 34

# TABLE OF AUTHORITIES

## CASES

*Albert v. Alter,*
252 Pa. Super. 203, 381 A.2d 459 (1977) .............................................................. 32

*Allied Fire & Safety Co., Inc. v. Dick Enter.,*
972 F. Supp. 922 (E.D. Pa. 1997) ........................................................ 15

*Bash v. Bell Tel. Co.,*
411 Pa. Super. 347, 601 A.2d 825 (1992) ................................................ 16, 17, 20

*Booze v. Allstate Ins. Co.,*
750 A.2d 877 (Pa. Super. 2000) ........................................................ 16, 29

*Bortz v. Noon,*
556 Pa. 489, 729 A.2d 555 (Pa. 1999) ........................................................ 25

*Bowser v. Lee Hospital,*
399 Pa. Super. 332, 582 Pa. Super. 369 (1990) ........................................ 22

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ........................................................................ 9

*Cipriani v. Sun Pipeline Co.,*
393 Pa. Super. 471, 574 A.2d 706 (1990) ........................................................ 22

*Clement I. Momah, M.D. v. Albert Einstein Medical Center,*
978 F.Supp. 621 (E.D. Pa. 1997) ........................................................ 10

*Closed Circuit Corp. of Am. v. Jerrold Elec. Corp.,*
426 F. Supp. 361 (E.D. Pa. 1977) ........................................................ 17

*Factory Mkt., Inc. v. Schuller Int'l, Inc.,*
987 F. Supp. 387 (E.D. Pa. 1997) ........................................................ 15, 16, 17

*Fennell v. Nationwide Mut. Fire Ins. Co.,*
412 Pa. Super. 534, 603 A.2d 1064,
app. den., 533 Pa. 600, 617 A.2d 1274 (1992) ........................................ 21

*Fenstermaker v. Bodamer,*
195 Pa. Super. 436, 171 A.2d 641 (1961) ........................................................ 33

# TABLE OF AUTHORITIES (CONT'D)

*Fireman's Ins. Co. v. DuFresne,*
676 F.2d 965 (3d Cir. 1982) ....................................................................... 9

*Hamil v. Bashline,*
481 Pa. 256, 392 A.2d 1280 (1978) .......................................................... 32

*Hammer v. Nikol,*
659 A.2d 617 (Pa. Commw. Ct. 1995) ...................................................... 29

*Horizon Unlimited, Inc. v. Silva & SNA, Inc.,*
1998 U.S. Dist. LEXIS 2223 (E.D. Pa. Feb. 27, 1998) ...................... 16, 18

*Horowitz v. Federal Kemper Life Assurance Co.,*
57 F.3d 300 (3d Cir. 1995) ....................................................................... 28

*Lattanze v. Silverstrini,*
302 Pa. Super. 217, 448 A.2d 605 (1982) ................................................ 32

*Powell v. Risser,*
375 Pa. 60, 99 A.2d 454 (1953) ................................................................ 22

*Robert Wooler Company v. Fidelity Bank,*
330 Pa. Super. 523, 479 A.2d 1027 (1984) .............................................. 22

*Schmoyer v. Mexico Forge, Inc.,*
437 Pa. Super. 159, 649 A.2d 705 (1994) ................................................ 21

*Smith v. German,*
434 Pa. 47, 51, 253 A.2d 107, 109 (1969) ............................................... 33

*Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.,*
40 F. Supp. 2d 644 (W.D. Pa. 1999) ........................................................ 15

*Tabuteau v. London G. & A., Ltd.,*
351 Pa. 183, 40 A.2d 396 (1945) .............................................................. 32

*USX Corp. v. Prime Leasing, Inc.,*
988 F.2d 433 (3d Cir. 1993) ..................................................................... 17

*Weisblatt v. Minnesota Mutual Life Ins. Co.,*
4 F. Supp.2d 371 (E.D.Pa. 1998) ............................................................. 29

## TABLE OF AUTHORITIES (CONT'D)

*Wermeling v. Shattuck*,
366 Pa. 23, 76 A.2d 406 (1950) 21

*White v. Westinghouse Elec. Co.*,
862 F.2d 56 (3d Cir. 1988) ........................................................................ 9

### STATUTES

Fed. R. Civ. P. 56(c) ................................................................................ 8

## I.  **INTRODUCTION**

Before this Court is the Motion for Summary Judgment filed by Defendant HouseMaster (hereafter "HouseMaster").  No genuine issues of material fact exist as to any of Plaintiffs' claims against HouseMaster and, thus, HouseMaster is entitled to judgment as a matter of law on Counts VIII through XI of the Amended Complaint.

First, Plaintiffs' breach of contract claim should be dismissed as Plaintiffs have not set forth evidence to prove each element of this claim. Further, even assuming *arguendo* that Plaintiffs have set forth sufficient evidence to establish a breach of contract, HouseMaster's liability under this claim is limited by the terms of the contract between the parties.

Second, Plaintiffs' negligence, misrepresentation and violation of the Unfair Trade Practices and Consumer Protection Law claims should be dismissed under the "gist of the action" doctrine, as these claims are clearly collateral to the contract between the parties and are merely restatements of the breach of contract claim.

Third, even if these claims are not collateral to the contract, they still fail as Plaintiffs have failed to set forth evidence to meet each element of these claims against HouseMaster.

-1-

## II.    **PROCEDURAL HISTORY**

In this action, Plaintiffs Jack Marrone, Karen Marrone, Matthew Marrone and Vida Marrone allege that they purchased a home which became infested with toxic mold due to undisclosed water problems with the subject property.  Plaintiffs instituted this action by filing a Complaint in this Court on May 3, 2001 against their homeowners' insurance company, Allstate Insurance Company, the seller of the subject property, Linda Edleman, the seller's real estate agent and agency, Fred Schafer and Mt. Gretna Realty, and the home inspection company, HouseMaster.

Upon receiving leave of Court, on November 2, 2001, Plaintiffs filed an Amended Complaint adding Matthew Marrone to the action as a party-Plaintiff. In their Amended Complaint, Plaintiffs allege claims of: (1) negligence; (2) misrepresentation; (3) breach of contract; and (4) violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201, et seq. ("UTPCPL"), against HouseMaster.

The pleadings in this matter are closed, documents have been exchanged, discovery has been completed, and all relevant depositions have been taken. Expert reports and supplemental reports have also been exchanged between the parties.  In particular, Plaintiffs have proffered expert reports from Robert A. Pfromm, Certified Industrial Hygienist, and Tom Moore, home inspector.  Both

experts opine that the basement of the subject home was improperly finished, thereby leading to the moisture levels required for mold growth. Notably, Plaintiffs have failed to proffer a medical expert to testify regarding their alleged personal injuries.

On October 18, 2002, HouseMaster filed a Motion for Summary Judgment. This Brief is submitted in support of that Motion.

## III.    FACTUAL BACKGROUND

On July 7, 1999, Plaintiffs entered into a sales agreement to purchase a home at 354 Timber Road, Mt. Gretna, Pennsylvania. (Jack Marrone Depo., p. 18.) The seller of the home was Linda Edleman. (Amended Complaint, ¶1.) Ms. Edleman provided Plaintiffs with her Property Disclosure Statement which specifically denied any dampness or water problems in the basement of the home. (Id., ¶19.)

Plaintiffs' real estate agent, Chip Stanilla, engaged HouseMaster to conduct a specific element inspection of the home on July 30, 1999. (Karen Marrone Depo., p. 190; Chuck Berthoud Depo., pp. 21-22; Inspection Order Agreement; Express Report, p. 1.) The inspection was to involve an assessment of the structure and foundation of the home as well as radon testing. (Id.) On July 30th, Chuck Berthoud from HouseMaster arrived at the home for the inspection. (Chuck

Berthoud Depo., pp. 32-33; Inspection Order Agreement; Express Report, p. 1.)
He was asked by Plaintiffs to include "wet basement" as part of his limited
inspection which he agreed to do. (Id.)

At the time of the inspection, Plaintiff Karen Marrone executed the
Inspection Order Agreement ("Agreement"). (Karen Marrone Depo., p. 72; Chuck
Berthoud Depo., p. 19; Inspection Order Agreement.) The Agreement sets forth
the limited scope of the inspection by HouseMaster as well as information
regarding limitations of liability and Plaintiffs' responsibility under the contract.
(Agreement, ¶¶ 1, 4 and 10). The Agreement also explicitly states that the
inspection does not include an environmental evaluation, including the detection,
identification or disclosure of any health or environmental concerns in the home.
(Id., ¶5.)

Mr. Berthoud was accompanied on his visual inspection of the home by at
least one if not both of the Plaintiff-parents. Mr. Berthoud made verbal
recommendations to Plaintiffs and provided them with a written Express Report
("Report"). (Amended Complaint, ¶16; Karen Marrone Depo., pp. 72, 199.) In
the Report, Mr. Berthoud noted indications of water penetration conditions in the
basement, in particular, water marks/stains. (Express Report, p. 11; Karen
Marrone Depo., pp. 212, 218-19.) The Report also noted indications of possible

-4-

prior remedial work, namely construction/coatings. (Express Report, p. 11.) It did

not note the presence of wetness, dampness, mildew or condensation in the

basement. (Id.)  The Report set forth several recommendations to Plaintiffs with

regard to water penetration, including "slope soil away from house; keep

downspouts clean and flowing, or consider extending spouts onto surface."

(Amended Complaint, ¶16; Karen Marrone Depo., p. 218.)  Karen Marrone

reviewed the Report, including the recommendations.  (Karen Marrone Depo., p.

90.)

Plaintiffs settled on the house with Defendant Edleman at the end of

August, 1999, immediately taking possession and moving in to the subject

property.  (Amended Complaint, ¶20; Karen Marrone Depo., p. 83.) Plaintiffs

followed HouseMaster's recommendations set forth in the Report, extending the

downspouts away from the house.  (Karen Marrone Depo., p. 90; Matthew

Marrone Depo., pp. 67-68.)

In July of 2000, nearly one year following HouseMaster's inspection of the

home, Plaintiffs traveled to Missouri for a one week vacation. (Amended

Complaint, ¶22; Karen Marrone Depo., p. 144.) During that time, Plaintiffs closed

up the house, shutting down the air conditioning units and leaving standing water

in the hot tub located in the basement.  (Jack Marrone Depo., pp. 259-260; Karen

Marrone Depo., p. 145; Larry Miller Depo., pp. 57-58.) Upon Plaintiffs' return home from vacation, they discovered mold present on the walls, ceiling, furniture and floor of their basement. (Amended Complaint, ¶22; Karen Marrone Depo., pp. 145-147.) Plaintiffs never contacted HouseMaster regarding this condition. (Jack Marrone Depo., pp. 240-241; Karen Marrone Depo., p. 203.)

Plaintiffs contacted Allstate concerning the condition of their basement on or about August 8, 2000. (Larry Miller Depo., pp. 20-22.) According to the claim log, Jack Marrone relayed that the basement floor, paneling and ceiling had been damaged by water, apparently from a broken pipe. (Larry Miller Depo., pp. 20-22, 25-26.) The date of loss was July 11, 2000. (Id.) Allstate senior claims representative Larry Miller inspected the home on August 10, 2000, determining that the claim was not a covered loss. (Id., pp. 29-30.) Shortly thereafter, Plaintiffs began removing the paneling, insulation, and drywall from the basement walls and ceiling. (Jack Marrone Depo., pp. 132-134; Karen Marrone Depo., p. 151.)

Plaintiffs then contacted Advanced Applied Services, Inc., hiring the firm to perform a bioaerosol survey of the home. (Karen Marrone Depo., p. 154.) On September 28, 2000, Robert A. Pfromm, CIH, met with Plaintiffs and conducted an indoor air quality/indoor environmental quality survey on the home. (Amended

-6-

Complaint, ¶30; Karen Marrone Depo., p. 154; 10/15/00 Report of Robert A. Pfromm.)  Mr. Pfromm issued a report on the survey results dated October 15, 2000, which found fungal contaminants in the home and made recommendations regarding remediation of the basement.  (10/15/00 Report of Robert A. Pfromm.)  Plaintiffs, however, moved out of the subject property on October 14, 2000, abandoning it.  (Karen Marrone Depo., p. 162.)  No one told Plaintiffs to vacate the home.  (Jack Marrone Depo., p. 242; Karen Marrone Depo., p. 162.)

According to Plaintiffs, they have suffered various physical and psychological damages as a result of exposure to fungal contaminations in the home.  (Amended Complaint, ¶¶35-38.)

## IV.   **QUESTIONS PRESENTED**

1.    Whether HouseMaster is entitled to judgment as a matter of law on Plaintiffs' breach of contract claim?

(Suggested Answer: <u>Yes</u>.)

2.    Whether HouseMaster is entitled to summary judgment on Plaintiffs' negligence, misrepresentation and UTPCPL claims under the "gist of the action" doctrine where such claims are collateral to the contract between Plaintiffs and HouseMaster?

(Suggested Answer:  <u>Yes</u>.)

3.    Whether HouseMaster is entitled to judgment as a matter of law on Plaintiffs' negligence claim?

(Suggested Answer: <u>Yes</u>.)

4.    Whether HouseMaster is entitled to judgment as a matter of law on Plaintiffs' misrepresentation claim?

(Suggested Answer: <u>Yes</u>.)

5.    Whether HouseMaster is entitled to judgment as a matter of law on Plaintiffs' UTPCPL claim?

(Suggested Answer: <u>Yes</u>.)

6.    Whether HouseMaster is entitled to judgment as a matter of law on Plaintiffs' claims for personal injury damages where Plaintiff have failed to proffer expert medical testimony regarding their alleged bodily injuries?

(Suggested Answer: <u>Yes</u>.)

## V.    <u>ARGUMENT</u>

### NO GENUINE ISSUES OF MATERIAL FACT EXIST AND DEFENDANT HOUSEMASTER IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

### A.    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court

-8-

must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  See White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).

Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted).  The non-moving party may not rely upon bare assertions, conclusory allegations, or suspicions.  Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." Id.

**B.      Housemaster Is Entitled To Judgment As A Matter Of Law On Plaintiffs' Breach of Contract Claim**

In Count X of the Amended Complaint, Plaintiffs attempt to set forth a claim for breach of contract arising from the Inspection Order Agreement. In particular, Plaintiffs allege that they specifically contracted with HouseMaster

-9-

concerning potential water/dampness problems with the subject property.

(Amended Complaint, ¶102.)  According to Plaintiffs, HouseMaster breached the

contract by failing to identify the source and severity of the water damage in the

basement and by failing to inform Plaintiffs of potential fungus or harm to

Plaintiffs' health which could result therefrom.  (Id., ¶¶103 and 106.)  To make out

a claim for breach of contract, Plaintiffs must prove: (1) the formation of a

contract, (2) the terms of the contract, (3) performance by plaintiff; (4) breach by

defendant, and (5) damages.  Clement I. Momah, M.D. v. Albert Einstein Medical

Center, 978 F.Supp. 621, 636 (E.D. Pa. 1997).  Plaintiffs have not set forth

sufficient evidence to establish a breach of contract by HouseMaster.

First, the gravamen of Plaintiffs' contract claim is that they contracted with

HouseMaster to have the company notify them of potential hazards and harms

associated with the subject property and that HouseMaster failed to provide them

with such notice.  This failure to warn, according to Plaintiffs, gives rise to a

breach of contract claim.  HouseMaster, however,  had no contractual obligation to

provide such notice of future potential harms, environmental or otherwise.  For

example, the Inspection Order Agreement signed by Karen Marrone states:

> **1. INSPECTION LIMITATIONS.**  The Company can only inspect
> and report on specified, visible and accessible elements of the house
> proper.  The Inspection is not intended to detect latent conditions or

concealed defects. . . .  The Inspection will not involve destructive testing . . ..

Agreement, ¶1.  The Agreement further provides:

> **5. ENVIRONMENTAL CONCERNS.  The Client acknowledges that what is being contracted for is a home inspection and not an environmental evaluation.**  The inspection is not intended to detect, identify or disclose any health or environmental concerns regarding this house or property such as the presence of . . . fungi, or any other potentially toxic materials or gases, etc., in the air, water, soil or house materials.

Id., ¶5 (emphasis in original).

The Express Report delivered to Plaintiffs immediately following the inspection reiterates the limited scope of the inspection.  Indeed, the purpose of the Express Report was "to render an opinion as to the condition of the major inspected elements of the referenced property <u>on the date of inspection</u>."  Report, p. 1 (emphasis added).  According to the Report:

> Evaluations are basically <u>limited to a visual assessment</u>, are not technically exhaustive . . . .
> Furthermore, <u>no</u> engineering, geological, design, <u>environmental</u>, or code compliance <u>evaluations of the property were performed</u>. . . .
> Due to the normal and stated limitations of a home inspection, <u>no representations or guarantees are made with respect to latent deficiencies or any future conditions</u>. . . .

Id.(emphasis added).  Further, with regard to "Environmental Concerns," the Report explains:

-11-

The reported/actual health effects of many potentially harmful, toxic or environmentally hazardous elements that may be found in the air, soil, water or building materials in and around any house are varied, and in some cases controversial. <u>A home inspection does not include the detection, identification or analysis of any such element</u> . . .. <u>An environmental specialist should be contacted for evaluation of any potential health or environmental concerns.</u>

<u>Id.</u>, p. 2 (emphasis added). Finally, the Report states:

**GENERAL CONSIDERATIONS** - Most houses have the potential for surface or subsurface water penetration. Regardless of any specific report comments, it would be prudent in all cases to discuss local conditions and concerns with the present owner and local authorities. <u>Any comments made in this report are based on evidence/indication present at the time of inspection only. It is not possible to accurately determine the extent of past conditions or to predict future concerns. If there are indications of prior remedial work intended to reduce water penetration concerns, documentation should be obtained from the owner and/or installer.</u>

Experience indicates that the majority of water penetration concerns are due to a combination of factors commonly related to inadequate foundation grading and drainage provisions. In many situations, relatively straightforward measures may have a direct effect on the condition; in other cases, the remedy may be more complex or impossible to achieve. Any specific recommendations in the Report should be considered; however, be aware that <u>they do not necessarily represent a complete or permanent solution to the condition.</u>

<u>Id.</u>, p. 12, "Water Penetration"(emphasis added).

In short, Plaintiffs have not and cannot demonstrate that HouseMaster was contractually obligated to provide them with notice of potential future harms or hazards associated with the house, including mold. Rather, under the express

-12-

terms of the parties' contract, HouseMaster was to provide Plaintiffs with an

evaluation of the specific elements of the home on the date and time of the

inspection, based on a visual assessment of the home's accessible elements.

HouseMaster did so.  Thus, the breach of contract claim fails.

Second, even if Plaintiffs have set forth a valid claim for breach of contract,

HouseMaster's liability to Plaintiffs is limited by the terms of the contract.  The

Agreement between the parties provides, in pertinent part:

> **4. LIABILITY.**  The Inspection should not be considered a
> technically exhaustive inspection or an insurance policy against
> unexpected house repair/replacement needs.  The Client
> acknowledges that there is risk involved in purchasing a property and
> that the purpose of the inspection and the Guarantee is to reduce that
> risk but not eliminate it.  Furthermore, the Client agrees that the
> performance of the Inspection does not transfer that risk to the
> Company beyond the Guarantee limits.
>
> **No legal action . . . may be commenced against the Company after
> one year from the date of the inspection.**
>
> **The Company assumes no responsibility or liability for personal
> or bodily injury or fatalities caused by any of the property's
> components or conditions or their effects, regardless of the cause.
> The Client agrees to maintain adequate liability insurance to
> cover this potential liability.**
>
> **The Company's liability for any Client post-inspection claims,
> beyond the 90 day Guarantee, is limited to a maximum of the
> home inspection fee paid.**
>
> . . .

-13-

**10. CLIENT RESPONSIBILITY.** Should a concern or dispute arise over the condition of an inspected element after closing of title, **the Client agrees to notify the Company in writing and provide it with the opportunity to assess the elements condition prior to any repair/replacement work.** Failure to provide such written notification and access for reinspection will release the Company of any and all liability concerning this Inspection or Guarantee.

Agreement, ¶¶4 and 10 (emphasis in original).

Upon cursory review, Plaintiffs' claims and remedies are barred, restricted or limited by the Agreement. The Agreement provides that no legal action may be commenced against HouseMaster following one year from the date of inspection. Id., ¶4. Here, Plaintiffs commenced this lawsuit on May 3, 2001, approximately twenty-one months after HouseMaster's inspection. Plaintiffs are clearly out of time on their claims. In addition, the Agreement bars any liability or responsibility for personal or bodily injury claims by the client caused by the home's conditions. Id. Accordingly, Plaintiffs' personal injury damage claims allegedly caused by their mold exposure fail. The Agreement also limits liability for claims to the home inspection fee if the claim is brought beyond the ninety day guarantee. Thus, in this action, HouseMaster's potential liability totals $195.00. Id. Finally, the Agreement provides for a release of liability where the client fails to comply with the written notice/ reinspection requirement set forth therein. In the case at bar, Plaintiffs failed to avail themselves of this procedure. Indeed, the first notice

-14-

HouseMaster had of Plaintiffs' claim was the Complaint filed in this Court.

Hence, pursuant to the Agreement, HouseMaster is released of any and all liability

concerning the July 31, 1999 inspection.

> **C.** **The Court Should Grant Summary Judgment as to Plaintiffs' Negligence, Misrepresentation and UTPCPL Claims Pursuant to the "Gist of the Action" Test Because They Are Nothing More than Disguised Claims for Breach of Contract**

Plaintiffs' claims for negligence, misrepresentation and violation of the

UTPCPL must be dismissed as nothing more than artful camouflage of ordinary

breach of contract allegations into those sounding in tort. When a plaintiff alleges

that a defendant has committed torts in the course of carrying out a contractual

agreement, courts apply the "gist of the action" doctrine to determine whether the

causes of action sound in contract or tort. Factory Mkt., Inc. v. Schuller Int'l, Inc.,

987 F. Supp. 387, 394 (E.D. Pa. 1997); Allied Fire & Safety Co., Inc. v. Dick

Enter., 972 F. Supp. 922, 937 (E.D. Pa. 1997). Under the "gist of the action"

doctrine, tort claims cannot be maintained when they essentially duplicate an

action for breach of an underlying contract. Sunquest Info. Sys., Inc. v. Dean

Witter Reynolds, Inc., 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999).

The basis for the "gist of the action" doctrine is to preclude a plaintiff from

removing "the transactions from the ambit of the Commercial Code to the area of

-15-

tortious conduct simply by making general allegations of fraud" or by merely alleging that the conduct was done wantonly.  Horizon Unlimited, Inc. v. Silva & SNA, Inc., C.A. No. 97-7430, 1998 U.S. Dist. LEXIS 2223, at *17 (E.D. Pa. Feb. 27, 1998) (quoting Closed Circuit Corp. v. Jerrold Elec. Corp., 426 F. Supp. 361, 364 (E.D. Pa. 1977);  Factory Market, 987 F. Supp. at 394; Bash v. Bell Tel. Co., 411 Pa. Super. 347, 356, 601 A.2d 825, 829 (1992)("A claim *ex contractu* cannot be converted to one in tort simply by alleging that the conduct in question was wantonly done.")(citation omitted).  Thus, a plaintiff cannot maintain an action sounding in tort by merely recharacterizing a simple breach of contract claim. Rather, for a claim "to be construed as a tort action, the wrong ascribed to the defendant must be the gist of the action with the contract being collateral." Factory, 987 F. Supp. at 394 (citing Phico Ins. Co. v. Presbyterian Med. Serv. Corp., 663 A.2d 753, 757 (Pa. Super. 1995)(emphasis added)).

In the case at bar, Plaintiffs have brought claims of negligence, misrepresentation and violation of the UTPCPL/fraud[1] against HouseMaster. Notably, courts have repeatedly rejected negligence, misrepresentation and fraud claims pursuant to the "gist of the action" doctrine where, as in this case, the

_____

[1]A plaintiff must prove the elements of common law fraud to prevail under the UTPCPL.  Booze v. Allstate Ins. Co., 750 A.2d 877, 880 (Pa. Super. 2000).

allegations underlying the negligence, misrepresentation and fraud claims mirror those in support of a claim for breach of contract.   See e.g., Bash, supra (affirming dismissal of negligence claim where the gist of plaintiff's complaint was that the defendant failed to perform under the contract); USX Corp. v. Prime Leasing, Inc., 988 F.2d 433, 440 (3d Cir. 1993)(affirming dismissal of tortious misrepresentation claim based on the same acts that gave rise to contract claims); Closed Circuit Corp. of Am. v. Jerrold Elec. Corp., 426 F. Supp. 361, 364 (E.D. Pa. 1977) (dismissing fraud claim where the allegations "[rose] no higher than that the defendant failed to comply with contract specifications").  In Factory Market, 987 F. Supp. at 388, the defendant agreed to design and construct a roofing system and provided a guarantee that the roof would have a duration of at least ten years.  Id. The roofing system was plagued with leaking problems prompting a state court action.  Id. at 389.  Defendant agreed as part of a settlement to repair the roofing system and issued a new guarantee.  Id. at 390.  Plaintiff brought claims for, among other things, breach of contract and fraud asserting that defendant failed to disclose, at the time the settlement agreement was executed, that it was unable to adequately fix the system.  Id. at 391, 395.  In applying the "gist of the action" doctrine and dismissing the fraud claim, the court stated that the purpose of the doctrine is to preclude a plaintiff from disrupting the "expectations of the parties

-17-

by supplanting their agreement with a tort action that claims that the party misperformed the agreement in question." Id. at 394. The court found that the obligations arising out of the agreement were central to the complaint, and thus, "the allegations set forth in plaintiff's fraud count [were] simply another way of stating its claim for breach of contract." Id. at 395.

In Horizon Unlimited, 1998 U.S. Dist. LEXIS 2223, at *17, the court likewise held that a fraud claim could not be maintained where the same alleged misrepresentations formed the basis for both breach of contract and fraud claims. In rejecting plaintiffs' fraud claim, the court declared that a "[b]reach of contract, without more, is not a tort." Id. at *13 (quoting Windsor Sec. v. Hartford Life Ins. Co., 986 F.2d 655, 664 (3d Cir. 1993)). The court found that because the same misrepresentation formed the basis for plaintiffs' fraud and breach of warranty claims, the fraud claim was merely an attempt to "recover under a tort theory for an alleged wrong properly characterized as a breach of contract". Id. at *16-17.

Plaintiffs' claims for negligence, misrepresentation and fraud under the UTPCPL similarly fail. The allegations underlying all of Plaintiffs' claims are identical: Plaintiffs hired HouseMaster to inspect the subject property for any problems (Amended Complaint, ¶15); the inspection on July 30, 1999 revealed the presence of water stains in the basement (id. at ¶16); HouseMaster recommended

that Plaintiffs "slope soil away from house, keep downspouts clean and flowing, or

consider extending spouts onto surface," which recommendations Plaintiffs

followed (id. at ¶¶16-17); and approximately one year following the inspection, in

July of 2000, Plaintiffs returned home from a vacation to find the basement of the

subject property covered in mold.  (Id. at ¶22.)  Further, the gravamen of

Plaintiffs' four claims is also identical: HouseMaster erred in not providing

Plaintiffs with information concerning the source of the water damage in the

basement and the potential damages from or harmful effects of the same.[2]

Moreover, not only do Plaintiffs assert identical facts in support of their

negligence, misrepresentation, UTPCPL and breach of contract claims, Plaintiffs

---

[2]In particular, with regard to breach of contract claim, Plaintiffs allege that
"HouseMasters [sic], while noting water damage, failed to identify the source of
such damage, the severity of said source, nor did they identify or notify the
Plaintiffs regarding any potential health problems pertaining to said
water/dampness prior to the purchase of the . . . home." (Amended Complaint,
¶103.)  In their negligence claim, Plaintiffs assert that, "HouseMasters [sic], while
noting the water stains, did not identify the source of said stains, nor did they
recommend further investigation, nor did they refer Plaintiffs to other
professionals who may have been of assistance.  (Id., ¶92.)  In their
misrepresentation claim, Plaintiffs assert that "Housemasters [sic] misrepresented
the conditions of the house at issue to the Plaintiffs when it failed to inform them
of the source of the water damage and/or of any current or potential problems
related to water damage."  (Id., ¶97.)  And, in their UTPCPL claim, Plaintiffs aver
that HouseMaster used "deceptive representations in connection of [sic] the
aforesaid sale of subject property."  (Id., ¶109(a).)

also seek the <u>same</u> measure of damages on the Counts.  <u>Id</u>., <u>compare</u> ¶¶ 95, 99,

110 with ¶107.

Like the plaintiffs in <u>Bash</u>, <u>Factory Market</u> and <u>Horizon Unlimited</u>,

Plaintiffs' claims for negligence, misrepresentation and UTPCPL are nothing more

than different dressings for their purported breach of contract claim.  These claims

are clearly collateral to the contract itself.  Indeed, any alleged obligation to notify

or warn Plaintiffs of potential future problems, including health issues, could only

arise from the parties' agreement, not greater social policies.  <u>See</u> <u>Bash</u>, 411 Pa.

Super. at 356-57; 601 A.2d at 829-830.  Plaintiffs simply contend in Counts VIII

through XI that HouseMaster misperformed under the contract by failing to notify

them of potential harms and hazards.  Plaintiffs' attempts to recover under tort

theories for a mere breach of contract mandates dismissal of Counts VIII, IX and

XI of Plaintiffs' Amended Complaint under the "gist of the action" doctrine.

**D.      Housemaster Is Entitled To Judgment As A Matter Of Law On Plaintiffs' Negligence Claim**

1.      <u>Summary Judgment Is Appropriate Where Plaintiffs Have Failed to Proffer Expert Testimony Regarding The Standard of Care</u>

HouseMaster also seeks summary judgment on Plaintiffs' negligence claim

on the basis that in an action for professional negligence, Plaintiffs must utilize

expert testimony to establish the standard of care (with certain exceptions not applicable here) and, lacking any expert testimony, the Plaintiffs cannot establish their *prima facie* case.  Accordingly, Count VIII of their Amended Complaint should be dismissed.

To sustain a cause of action for negligence under Pennsylvania law, Plaintiffs must establish the existence of the following elements: (1) a duty recognized by law requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a reasonably close causal connection between the conduct and the resulting injury; (4) actual loss or damage resulting to the interest of another.  Fennell v. Nationwide Mut. Fire Ins. Co., 412 Pa. Super. 534, 603 A.2d 1064, app. den., 533 Pa. 600, 617 A.2d 1274 (1992)(citing Prosser Law of Torts, §30 at 143 (4th ed. 1971)).  The burden of proving negligence, or the absence of due care, rests upon the party who has asserted it.  Schmoyer v. Mexico Forge, Inc., 437 Pa. Super. 159, 649 A.2d 705 (1994).  The concept of due care presupposes one's exercise of judgment which necessarily requires relevant knowledge.  Wermeling v. Shattuck, 366 Pa. 23, 76 A.2d 406 (1950).  For this reason, Pennsylvania law is clear that in a professional negligence action, the duty ascribed to a professional is defined by the standard of care normally possessed by

-21-

members of that profession or trade.  <u>Robert Wooler Company v. Fidelity Bank</u>,

330 Pa. Super. 523, 531, 479 A.2d 1027, 1031 (1984).  Thus, it has long been the

rule in Pennsylvania that expert testimony is required for a plaintiff to establish the

negligent practice, <u>i.e.</u>, breach of the standard of care, in any profession.  <u>Powell v.

Risser</u>, 375 Pa. 60, 65, 99 A.2d 454, ____ (1953); <u>Bowser v.Lee Hospital</u>, 399 Pa.

Super. 332, ___, 582 Pa. Super. 369, 373 (1990) (citation omitted).  The only

exception to this rule is where the matter under consideration is so simple and the

lack of skill or want of care so obvious as to be within the range of the ordinary

experience and comprehension of even non-professional persons.  <u>Cipriani v. Sun

Pipeline Co.</u>, 393 Pa. Super. 471, 574 A.2d 706 (1990).

  In this case, it is clear that a determination as to what constitutes the

standard of care applicable to Chuck Berthoud/HouseMaster, as a professional

home inspector/home inspection company, will require specialized knowledge

beyond that possessed by the average layperson.  The issue in this claim is the

duty owed by a reasonable and prudent home inspector under the circumstances.

As a result, Plaintiffs necessarily require the use of expert testimony to establish

the standard of care of a reasonable and prudent home inspector to assist the trier

of fact in determining whether HouseMaster breached that standard under the facts

and circumstances of this case.  Because Plaintiffs have failed to produce any

-22-

expert testimony capable of establishing the applicable standard of care against which to evaluate HouseMaster's conduct, Plaintiffs are incapable making out a *prima facie* case of professional negligence and of establishing that HouseMaster breached that standard in this case.

Admittedly, Plaintiffs have proffered an expert report by Tom Moore, a home inspector. However, the stated purpose for Mr. Moore's inspection of the subject property on August 12, 2002 and subsequent written report was "to examine the house for moisture and water problems that possibly may have contributed to a mold and mildew condition resulting in the occupants having to move out of the house." Moore Report, p. 1.[3] Significantly, Mr. Moore's report does not comment on the standard of care required of Mr. Berthoud as a home inspector. It also does not state that visible deficiencies existed in the subject property at the time Mr. Berthoud conducted his inspection or that he negligently failed to identify such deficiencies and inform Plaintiffs of them. Finally, Mr.

---

[3]Notably, no expert has opined that Plaintiffs <u>had</u> to move out and abandon their Mt. Gretna home due to the mold condition. Indeed, Robert A. Pfromm, who conduct the bioaerosol survey of the property in September, 2000, recommended only that Plaintiffs not occupy the basement of the home until the fungal growth has been reduced or otherwise removed. (10/15/00 Expert Report of Robert Pfromm, p. 7, ¶1.)

Moore's report does not provide information on the extent and repair cost of the alleged damage to Plaintiffs' home.

In fact, Mr. Moore's report merely concludes that the basement of the subject property was finished improperly.  Specifically, he concludes that the vapor barrier was incorrectly applied to the block wall whereas it should have been placed between the interior finished wall and the insulation.  Id., p. 2. Notably, however, this "defect" was not detectable by HouseMaster in July of 1999.  Rather, the HouseMaster inspection was limited to a visual assessment of conditions readily visible at the time and date of inspection, with no destructive testing.  With the drywall and paneling intact in 1999, the finishing materials were simply not accessible to HouseMaster.

Having failed to produce the expert testimony necessary to establish the very standard HouseMaster has allegedly breached, Plaintiffs are incapable of making out a *prima facie* case of professional negligence against HouseMaster as a matter of law.  For this reason, judgment should be entered for HouseMaster and Count VIII of Plaintiff's Amended Complaint should be dismissed with prejudice.

**E.    HouseMaster Is Entitled To Judgment As A Matter of Law on Plaintiffs' Misrepresentation Claim**

In Count IX of their Amended Complaint, Plaintiffs contend that HouseMaster misrepresented the conditions of the subject property by failing to inform Plaintiffs of the source of the water damage in the basement of the home and/or of any current or potential problems related to the water damage. (Amended Complaint, ¶97.)  Intentional misrepresentation has been defined as: "(1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance." Bortz v. Noon, 556 Pa. 489, 729 A.2d 555, 560 (Pa. 1999). Plaintiffs cannot establish the requisite elements of misrepresentation.

First, HouseMaster's obligations to Plaintiffs were limited by the parties' contract.  The gravamen of Plaintiffs' claim is that HouseMaster misrepresented the home's condition when it failed to warn Plaintiffs of current and future problems related to water penetration, including mold or other environmental or health concerns.  However, as noted supra, HouseMaster had a duty to report only on the present, visually detectable conditions in the home, which it did.  See

-25-

Agreement, ¶1("The Company can only inspect and report on specified, visible and accessible elements of the house proper. The Inspection is not intended to detect latent conditions or concealed defects. . . . The Inspection will not involve destructive testing . . .."); accord, Report, p. 1 (purpose of inspection is "to render an opinion as to the condition of the major inspected elements of the referenced property on the date of inspection. . .."); Id., p. 12 ("Any comments made in this report are based on evidence/indication present at the time of inspection only. It is not possible to accurately determine the extent of past conditions or to predict future concerns."). HouseMaster had no obligation, contractual or otherwise, to report on either future conditions or on health or environmental concerns posed by the home's condition. See Agreement, ¶5 ("The Client acknowledges that what is being contracted for is a home inspection and not an environmental evaluation. The inspection is not intended to detect, identify or disclose any health or environmental concerns regarding this house or property such as the presence of . . . fungi . . .in the air, water, soil or house materials."); accord, Report, p. 1 ([N]o . . . environmental . . .evaluations of the property were performed. . . . [N]o representations or guarantees are made with respect to latent deficiencies or any future conditions. . . ."); Id., p. 2 ("A home inspection does not include the detection, identification or analysis of any such element . . .. An environmental

-26-

specialist should be contacted for evaluation of any potential health or environmental concerns."). HouseMaster's silence in this regard, therefore, is not actionable.

Second, the record reveals no false representations by HouseMaster regarding the subject property. To the contrary, the evidence demonstrates that HouseMaster, in accordance with the parties' Agreement, inspected and reported on the visually detectable condition of the basement as of the date of the inspection. Specifically, HouseMaster observed and reported that while there was evidence of water marks and remedial coatings/construction in the basement, the basement was not wet on July 30, 1999. Report, p. 11. Indeed, Plaintiffs aver that they did not notice mold, dampness or musty odors in the basement until the so-called mold explosion in July, 2000. (Amended Complaint, ¶22; accord, 10/15/00 Expert Report of Robert A. Pfromm, CIH, p. 1 ("At that time, [Plaintiffs] did not observe any signs of water problems or visible mold."); Jack Marrone Depo., pp. 249-250; Karen Marrone Depo., pp. 93-94, 151-52, 178-79.) Thus, Plaintiffs' claim fails.

Finally, Plaintiffs fail to offer any proof that HouseMaster intended to deceive them with the representations in the Report. Plaintiffs hired HouseMaster to conduct a visual specific element inspection and the representations

-27-

HouseMaster made to Plaintiffs in its Report were true at the time of the inspection. There is simply no evidence to the contrary. Further, it makes no sense that HouseMaster would intentionally deceive its own client. Accordingly, summary judgment should be entered in favor of HouseMaster and against Plaintiffs on Count IX of the Amended Complaint.

**F.     HouseMaster Is Entitled To Judgment As A Matter of Law on Plaintiffs' Unfair Trade Practices And Consumer Protection Law Claim**

Plaintiffs claim in Count XI of the Amended Complaint that HouseMaster is liable under Pennsylvania's Unfair Trade Practices and Consumer Protection Law because HouseMaster allegedly misrepresented the condition of the subject property. Even if Plaintiffs' UTPCPL claim is not barred by the "gist of the action" doctrine, it still fails as Plaintiffs cannot prove fraud in this case.

First, judgment should be entered in HouseMaster's favor because Plaintiffs' allegations and the evidence in the record support, at best, a finding that HouseMaster engaged in nonfeasance. Nonfeasance is insufficient to make a claim under the UTPCPL. Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 307 (3d Cir. 1995). The conduct which Plaintiffs identify as fraudulent and deceptive conduct is, in essence, conduct that tends to show that HouseMaster failed to warn Plaintiffs of potential health hazards and other problems. Such a

-28-

claim does not amount to misfeasance and, thus, HouseMaster should be granted summary judgment with respect to Count XI.

Second, Plaintiffs here have failed to provide evidence to support their claim under the UTPCPL. To prevail under the UTPCPL, Plaintiffs must prove the elements of common law fraud: 1) a material misrepresentation of an existing fact; 2) scienter; 3) justifiable reliance on the misrepresentation; and 4) damages. See Booze v. Allstate Ins. Co., 750 A.2d 877, 880 (Pa. Super. 2000); Hammer v. Nikol, 659 A.2d 617, 620 (Pa. Commw. Ct. 1995). Moreover, the courts have held that, "the initial inquiry for the judge is whether the proof of every element of fraud has met the exacting standard, justifying refusal to grant a non-suit and its submission to the fact finder." Weisblatt v. Minnesota Mutual Life Ins. Co., 4 F. Supp.2d 371, 384 (E.D.Pa. 1998)(citation omitted). In this regard, Plaintiffs "[bear] the heavy burden in establishing elements of fraud by clear and convincing evidence." Id.

Here, Plaintiffs have failed to set forth evidence of record that HouseMaster, through its agent Chuck Berthoud, engaged in fraudulent conduct towards Plaintiffs. Although Plaintiffs aver that they were misled into believing that the home was not defective, Plaintiffs provide no evidence, let alone "clear and convincing" evidence, of deceptive or misleading statements or actions either in

-29-

the Express Report or elsewhere by HouseMaster. The only facts of record prove the contrary. As noted supra, the Report reveals that water stains and marks were noted in the basement at the time of the inspection. Report, p. 11. Further, there was evidence or indications of possible prior remedial work with regard to water penetration, namely construction/coatings. Id. However, no wetness or condensation was present on the date of inspection. Id. These representations are uncontroverted.[4] In addition, recommendations were made by HouseMaster to Plaintiffs to help prevent water penetration, including sloping the soil away from the house and keeping the gutters clean and free flowing. Id. Although Plaintiffs allege that these suggested repairs were fraudulent because they did not mitigate and/or prevent water leakage (Amended Complaint, ¶109(d)), the mold explosion did not occur until one year after the inspection by HouseMaster.[5] Thus, water penetration was mitigated or delayed by use of the recommendations. And, Plaintiffs cannot claim detrimental reliance with regard to the recommendations

---

[4]In fact, Plaintiffs related to their expert, Mr. Pfromm, that the subject property was shown to them during a period of dryer weather and that they did not observe any signs of water problems or visible mold during their visits to the property. 10/15/00 Pfromm Expert Report, p. 1.

[5]And, notably, the mold explosion occurred only after Plaintiffs closed up their home, without air conditioning or a dehumidifier running and with standing water in the basement hot tub, for one week in the summer of 2000. (Jack Marrone Depo., pp. 259-260; Karen Marrone Depo., p. 145; Larry Miller Depo., pp. 57-58.)

because Jack Marrone testified that he had no idea why HouseMaster made such recommendations. (Jack Marrone Depo., pp. 79-84.)

Further, Plaintiffs cannot demonstrate scienter on the part of HouseMaster. Without a doubt, the record in this case is devoid of any facts to prove that HouseMaster intended to deceive Plaintiffs. Housemaster had no way of knowing that one year after its inspection, mold would cover the basement of the subject property. Indeed, Housemaster's Report states unequivocally that "moisture/water conditions are subject to unpredictable changes; future conditions cannot be determined." Report, p. 11. The Report also provides:

> Most houses have the potential for surface or subsurface water penetration . . .. Any comments made in this report are based on evidence/indication present at the time of inspection only. It is not possible to accurately determine the extent of past conditions or to predict future concerns . . ..

Id., p. 12, "Water Penetration - General Considerations." For these reasons, summary judgment must be granted in this instance because Plaintiffs have failed to come forward with sufficient facts of record which support this claim and which would permit this claim to proceed to the fact finder.

In sum, the key to invoking the UTPCPL is fraud and the requisite elements of fraud are clearly lacking here. Accordingly, Count XI of the Amended Complaint must be dismissed.

-31-

### G.    HouseMaster Is Entitled To Judgment As A Matter of Law on Plaintiffs' Claims for Personal Injury Damages

In Counts VIII through XI of the Amended Complaint, Plaintiffs seek damages in excess of One Hundred Thousand Dollars ($100,000.00) for, in part, physical and emotional damage and distress they allegedly suffered as a result of their exposure to fungal toxins in their Mt. Gretna home.  Summary judgment is appropriate on these damages claims, however, as Plaintiffs have failed to proffer requisite expert testimony on their injuries and the relationship between their injuries and the alleged cause.

With regard to personal injury claims, a plaintiff must prove the existence of a causal relationship between the injury complained of and the alleged negligent act to be entitled to recover for the injury. Hamil v. Bashline, 481 Pa. 256, 392 A.2d 1280 (1978). It is well settled in Pennsylvania that, when there is no obvious casual relationship, "unequivocal medical testimony is necessary to establish the casual connection." Albert v. Alter, 252 Pa. Super. 203, 224, 381 A.2d 459, 470 (1977)(citing Smith v. German, 434 Pa. 47, 253 A.2d 107 (1969)). An obvious causal relationship exists where the injuries are either an "immediate and direct" or the "natural and probable" result of the alleged negligent act.  Lattanze v. Silverstrini, 302 Pa. Super. 217, 223, 448 A.2d 605, 608 (1982); Tabuteau v.

London G. & A., Ltd., 351 Pa. 183, 40 A.2d 396 (1945); Fenstermaker v. Bodamer, 195 Pa. Super. 436, 171 A.2d 641 (1961). The injury and the act must be "so closely connected and so readily apparent that a layman could diagnose (except by guessing) the causal connection." Smith v. German, 434 Pa. at 51, 253 A.2d at 109.

The instant matter clearly falls in the category of cases requiring expert medical testimony.  Indeed, Defendants have proffered the expert testimony of Michael G. Holland, M.D., FACMT, FACOEM, FACEP.  Dr. Holland performed independent medical examinations on all of the Plaintiffs and concluded, with a reasonable degree of medical certainty, that Plaintiffs' various health problems are not due to their exposure to the indoor air environment at the Mt. Gretna home. (Expert Reports of Michael G. Holland, M.D.)  Rather, their alleged symptoms and illnesses are adequately explained by other common causes.  Notably, however, Plaintiffs have offered no medical expert in support of their personal injury claims.[6]  Absent such expert testimony, summary judgment should be entered in favor of HouseMaster and against Plaintiffs on their claims for personal

---

[6]Plaintiffs have proffered expert testimony of Tom Moore and Robert Pfromm, CIH.  Neither of these gentleman are medical doctors or are otherwise qualified by training or experience to provide medical diagnosis of Plaintiffs' alleged impairment with the professed cause.

injury damages.  Accordingly, Plaintiffs' claims for personal injury damages
should be dismissed.

## VI.    **CONCLUSION**

For the foregoing reasons, Defendant HouseMaster respectfully requests
this Court to enter Summary Judgment in its favor and to dismiss Counts VIII
through XI of the Amended Complaint with prejudice.

DUANE MORRIS LLP

Date:  October 18, 2002

Paul E. Scanlan, Esquire
Attorney ID No. 75733
Jennifer L. Murphy, Esquire
Attorney ID No. 76432
305 North Front Street, 5th Floor
P.O. Box 1003
Harrisburg, PA 17108-1003
(717) 237-5500

Attorneys for Defendant HouseMaster

HBG\104835.1

-34-

Case 1:01-cv-00773-YK   Document 59   Filed 10/18/2002   Page 41 of 56

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 2223                    Page 1 of 15

Service:  **Get by LEXSEE®**
Citation: **1998 us dist lexis 2223**

*1998 U.S. Dist. LEXIS 2223, \**

HORIZON UNLIMITED, INC. & JOHN HARE v. RICHARD SILVA & SNA, INC.

CIVIL ACTION No. 97-7430

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1998 U.S. Dist. LEXIS 2223

February 26, 1998, Decided
February 26, 1998, Filed; February 27, 1998, Entered

**SUBSEQUENT HISTORY:** Motion for Reconsideration Denied March 27, 1998, Reported at:
1998 U.S. Dist. LEXIS 4008.

**DISPOSITION:  [\*1]** Defendants motion to dismiss Complaint under Federal Rule of Civil
Procedure 12(b)(6) granted in part and denied in part.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant manufacturers filed a motion, under Fed. R. Civ.
12(b)(6), to dismiss plaintiff consumers' complaint alleging violation of the Pennsylvania
Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. tit. 73, § 201-1, et
seq., negligent misrepresentation, fraud and deceit, and breach of warranty, relating to a
model airplane kit.

**OVERVIEW:** Plaintiff consumers filed suit against defendant manufacturers alleging
violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law
(UTPCPL), Pa. Stat. Ann. tit. 73, § 201-1, et seq., negligent misrepresentation, fraud and
deceit, and breach of warranty. The consumers claimed they purchased an airplane kit
based on the specifications listed in the brochure, but after completing construction, the
airplane did not perform as represented in the brochure. The manufacturers filed a
motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). The court granted the
motion as to the negligent misrepresentation, fraud and deceit, and breach of warranty
claims because they were barred by a limitation of liability clause in the purchase
agreement. But the court denied the motion as to the UTPCPL claim because it was
distinct from the barred claims. The court ruled the limitation of liability clause did not
apply because it only pertained to contractual remedies. The court noted that the
consumers' complaint did not allege that any of the airplane's parts were defective, but
instead that the manufacturers engaged in deceptive acts prior to formation of the
contract.

**OUTCOME:** The court granted the manufacturers' motion as to the negligent
misrepresentation, fraud and deceit, and breach of warranty claims, but denied the
motion on the claim under the Pennsylvania Unfair Trade Practices and Consumer
Protection Law. The court ruled the consumers claimed a violation based on the
manufacturers' alleged deceptive activity leading them to enter into a commercial
transaction, which was distinct from the contractual claims.

**CORE TERMS:** specification, motion to dismiss, airplane, aircraft, deceit, negligent
misrepresentation, breach of warranty, kit, punitive damages, brochure, misrepresentation,

Case 1:01-cv-00773-YK    Document 39    Filed 10/18/2002    Page 42 of 56

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 2223                    Page 2 of 15

purchaser, promotional, exculpatory clause, warranty, unfair, integration clause, deceptive acts, written contract, fraudulent, falsity, Consumer Protection Law, mph, contracting party, prima facie case, summary judgment, collateral, deceptive, loss of time, principal place of business

## CORE CONCEPTS - ◆ Hide Concepts

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must take all the well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief. The court must decide whether relief could be granted on any set of facts which could be proved. A motion to dismiss may be granted only if the court finds the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss

When deciding a motion to dismiss, the court properly may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case. When the plaintiff attaches an exhibit to the complaint and incorporates it therein, he is bound by the contents of the exhibit. The court need not convert the motion to dismiss into a motion for summary judgment in order to consider the contents of an attached exhibit.

Contracts Law > Contract Interpretation > Parol Evidence Rule
Contracts Law > Contract Interpretation > Interpretation Generally

In Pennsylvania, the intent of the parties to a written contract is to be regarded as being embodied in the writing itself. The law declares the writing to be not only the best, but the only evidence of the parties' agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract.

Contracts Law > Contract Interpretation > Interpretation Generally

Where the contractual language is not vague or ambiguous, the court cannot rewrite the terms of the agreement to conform to a party's preferred state of affairs.

Contracts Law > Contract Interpretation > Parol Evidence Rule
Contracts Law > Contract Conditions & Provisions > Waivers

In certain, limited situations, a party can avoid a waiver of warranties and rely on evidence of prior representations. The party must allege fraud, accident or mistake. However, it is not sufficient for a plaintiff to allege that defendants made fraudulent misrepresentations; the plaintiff must allege fraud in the inducement, that is, the representations were fraudulently or by accident or mistake omitted from the integrated written contract.

Torts > Business & Employment Torts > Negligent Misrepresentation

To establish a prima facie case of negligent misrepresentation, the plaintiff must show: 1) a misrepresentation of a material fact; 2) the representor either knew of the misrepresentation, made the misrepresentation without knowledge as to its truth or falsity or made the misrepresentation under circumstances in which he should have known of its falsity; 3) the representor intended the misrepresentation to induce the plaintiff to act on it; 4) the plaintiff acted in justifiable reliance on the

Case 1:01-cv-00773-YK   Document 59   Filed 10/18/2002   Page 43 of 56

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 2223          Page 3 of 15

misrepresentation, and 5) injury resulted to the plaintiff.

📁 Contracts Law > Contract Conditions & Provisions
📁 Torts > Procedure

⬇ Under Pennsylvania law, when a tort involves actions arising from a contractual relationship, the plaintiff is limited to an action under the contract. Only in limited circumstances may a plaintiff proceed under a tort theory for alleged wrongs arising from a contractual relationship.

📄 Torts > Business & Employment Torts > Bad Faith Breach of Contract
📄 Contracts Law > Breach > Causes of Action

⬇ Breach of contract, without more, is not a tort. The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus. To maintain a tort action, the wrong ascribed to defendant must be the gist of the action with the contract being collateral. A claim ex contractu cannot be converted to one in tort simply by alleging that the conduct in question was wantonly done.

📄 Torts > Business & Employment Torts > Deceit & Fraud

⬇ A plaintiff claiming fraud and deceit must establish the following elements: 1) a representation; 2) which is material to the transaction at hand; 3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; 4) with the intent of misleading another into relying on it; 5) justifiable reliance on the misrepresentation, and 6) injury proximately caused by the reliance. In addition, a plaintiff must establish fraud through "clear, precise and convincing" evidence.

📄 Torts > Business & Employment Torts > Deceit & Fraud

⬇ There is a serious question whether statements in promotional literature are actionable as representations.

📄 Torts > Business & Employment Torts > Deceit & Fraud

⬇ A plaintiff cannot remove transactions from the ambit of the Commercial Code to the area of tortious conduct simply by making general allegations of fraud.

📄 Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices

⬇ See Pa. Stat. Ann. tit. 73, § 201-1, et seq.

📄 Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices
📄 Governments > Legislation > Interpretation

⬇ The general purpose of the Unfair Trade Practices and Consumer Protection Law (UTPCPL), Pa. Stat. Ann. tit. 73, § 201-1, et seq., is to protect the public from fraud and unfair or deceptive business practices. Because UTPCPL is an anti-fraud, consumer protection statute, it should be liberally construed to effect the purpose.

📄 Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices

⬇ A private right of action under the Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. tit. 73, § 201-1, et seq., exists for any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by this act. Pa. Stat. Ann. tit. 73, § 201-9.2(a).

📄 Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices



Case 1:01-cv-00773-YK   Document 59   Filed 10/18/2002   Page 44 of 56

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 2223                    Page 4 of 15

A claim under the Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. tit. 73, § 201-1, et seq., is separate and distinct from a claim for breach of contract, even though both claims may be based on the same facts.

Contracts Law > Contract Conditions & Provisions > Waivers

A limitation of liability clause does not eliminate a contracting party's liability, but it restricts it to a certain amount or form of corrective action. Limitation of liability clauses are routinely enforced under the Uniform Commercial Code when contained in sales contracts negotiated between sophisticated parties and when no personal injury or property damage is involved. This is true whether the damages are pled in contract or tort. Limitation of liability clauses are not disfavored under Pennsylvania law; Pennsylvania courts generally enforce them, finding the parties are at liberty to fashion the terms of their bargain.

Contracts Law > Contract Conditions & Provisions > Waivers

A valid exculpatory clause deprives one contracting party of a right to recover for damages suffered through the negligence of the other contracting party. Three conditions must be met for an exculpatory clause to be valid: 1) the clause cannot contravene public policy; 2) the contract must involve only the private affairs of the parties and not a public matter, and 3) the contract cannot be one of adhesion. Even if the exculpatory clause is valid, it is unenforceable unless the language of the parties is clear that a person is being relieved of liability for his own acts of negligence. The contract language is strictly construed and must state the parties' intentions with particularity. Any ambiguities must be resolved against the party seeking immunity from liability.

Contracts Law > Contract Interpretation > Interpretation Generally

When a contract does not provide for a contingency, it is not ambiguous; rather, it is silent, and the court may not read into the contract something it does not contain and thus make a new contract for the parties.

Antitrust & Trade Law > Consumer Protection > Deceptive Acts & Practices
Antitrust & Trade Law > Private Actions > Injuries & Damages

Under the Unfair Trade Practices and Consumer Protection Law (UTPCPL), Pa. Stat. Ann. tit. 73, § 201-1, et seq., a successful plaintiff may recover actual damages or $ 100, whichever is greater. Pa. Stat. Ann. tit. 73, § 201-9.2(a). The court may, in its discretion, award up to three times the actual damages sustained, but not less than $ 100, and may provide such additional relief as it deems necessary or proper including costs and reasonable attorney fees. The imposition of exemplary or treble damages is essentially punitive in nature. Courts will be guided by the well-established, general principles of law governing punitive damages when exercising discretion under the UTPCPL. The statute authorizes an award of treble damages, ultimately serving the same purpose as an award of punitive damages. Plaintiffs may be awarded statutory damages rather than punitive damages if successful at trial.

Civil Procedure > Class Actions
Torts > Damages > Punitive Damages
Contracts Law > Remedies > Punitive Damages

Each member of the putative class holds a separate and distinct interest in a punitive damages award.

Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Case 1:01-cv-00773-YK   Document 59   Filed 10/18/2002   Page 45 of 56

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 2223

Page 5 of 15

**COUNSEL:** For HORIZON UNLIMITED, INC., JOHN HARE, PLAINTIFFS: MARTIN A. PEDATA, PALM HARBOR, FL USA. RICHARD F. KLINEBURGER, III, PHILA, PA USA. TRACEY OANDASEN, WOODSTOWN, NJ USA.

For RICHARD SILVA, SNA, INC., DEFENDANTS: TERRY ELIZABETH SILVA, ESQUIRE, PHILA, PA USA.

**JUDGES:** Norma L. Shapiro, J.

**OPINIONBY:** NORMA L. SHAPIRO

**OPINION:** MEMORANDUM and ORDER

Norma L. Shapiro, J.

February 26, 1998

Plaintiffs Horizon Unlimited, Inc. ("Horizon") and John Hare ("Hare") (collectively the "plaintiffs"), alleging violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. tit. 73, § 201-1, et seq., negligent misrepresentation, fraud and deceit, and breach of warranty, filed this action against defendants Richard Silva ("Silva") and SNA, Inc. ("SNA") (collectively the "defendants"). Defendants have filed a motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, defendants' motion will be granted in part and denied in part.

## BACKGROUND

Horizon is incorporated under the laws **[*2]** of Delaware, n1 and Hare is a citizen of Canada. (Cmplt. PP 6-7). Silva is the president of SNA and resides in Pennsylvania; SNA is incorporated in and has its principal place of business in Pennsylvania. (Id. PP 8-9). Plaintiffs propose to represent a class of all persons who purchased a Seawind aircraft kit manufactured, marketed and sold by defendants. (Id. P 1).

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 The caption to plaintiffs' Complaint and response to defendants' motion to dismiss describes Horizon as a Florida corporation. However, in the body of their Complaint, plaintiffs aver Horizon is a Delaware corporation; they do not state Horizon's principal place of business. For the purposes of this motion, the court will assume Horizon is incorporated and has its principal place of business in a state other than Pennsylvania.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

The Seawind kit contains a variety of fiberglass and machine parts, but the purchaser must provide certain aircraft parts, such as an engine and propeller. The purchaser is required to construct at least 51% of the aircraft **[*3]** under Federal Aviation Administration ("FAA") regulations. (Id. P 21). The purchaser may obtain outside help to assist in building the airplane, but defendants cannot construct the airplane for the buyer. (Id.).

In order to market and sell the Seawind airplane kit, defendants printed a brochure and placed advertisements in national trade publications. (Id. P 22). The advertising materials described the design of the Seawind, its specifications, n2 and stated the building time be "under 2,000 hours." Seawind Brochure at 6. However, plaintiffs claim "some of the customers purchased the aircraft based upon the 1,000 build time" allegedly represented by

defendants in earlier promotional materials. (Cmplt. P 24). It is not clear whether plaintiffs, who purchased their airplane in November, 1991, were among those "customers" who believed the build time was under 1,000 hours.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 According to plaintiffs, the relevant specifications are as follows:

[SEE TABLE IN ORIGINAL]

Weight- Max Takeoff Land 3400, Water 3400 lbs.

Empty 2300 lbs.

Useful 1100 lbs.

Level Speed 100% Power 200 mph

Cruise 75% Power (8000 feet) 191 mph

Maximum Range (no reserve) 980 miles

Rate of Climb 1250 fpm

Stall Speed- Clean 72 mph

Flaps and wheels 59 mph

Take Off Distance- Land 820 ft - 1175 ft

Water 1100 ft - 1450 ft

Landing Distance- Land 770 ft - 1300 ft

Water 620 ft - 1150 ft

See Seawind Brochure at 1, attached as Ex. to Pltffs.'Cmplt. ["Seawind Brochure"].

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - **[*4]**

Plaintiffs claim they purchased the Seawind airplane kit based on the specifications listed in the brochure. After completing construction, their airplane did not perform as represented in the brochure. Plaintiffs do not state how their airplane was deficient or what specifications they are challenging; plaintiffs only allege the airplane did not "perform according to the specifications and building times" printed in the promotional materials. (Id. P 28, 37, 47, 55, 57).

Plaintiffs initiated this action to seek redress for the alleged discrepancies between the specifications and building time in the promotional materials and the airplane's actual performance. They assert four counts: 1) violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); 2) negligence/negligent misrepresentation; 3) fraud and deceit; and 4) breach of warranty. Defendants move to dismiss plaintiffs' Complaint.

DISCUSSION

**I. Standard of Review**

⚑In considering a motion to dismiss under Rule 12(b)(6), the court "must take all the well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable **[*5]** reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988) (citations omitted), cert. denied, 489 U.S. 1065, 103 L. Ed. 2d 808, 109 S. Ct. 1338 (1989); see Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). The court must decide whether "relief could be granted on any set of facts which could be proved." Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988). A motion to dismiss may be granted only if the court finds the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).

⚑When deciding a motion to dismiss, the court properly may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see Williams v. Stone, 923 F. Supp. 689, 690 (E.D. Pa. 1996), aff'd, 109 F.3d 890 (3d Cir.), cert. denied, 139 L. Ed. 2d 299, 118 S. Ct. 383 (1997). When the plaintiff attaches an exhibit to the Complaint and incorporates it therein, he **[*6]** is bound by the contents of the exhibit. See Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). The court need not convert the motion to dismiss into a motion for summary judgment in order to consider the contents of an attached exhibit. See id.; Kolimaga v. Bartle, 871 F.2d 331, 340 n.3 (3d Cir. 1989).

## II. Breach of Warranty

In Count IV, plaintiffs claim a breach of warranty regarding the Seawind's specifications and building time made by defendants in their promotional materials. (Cmplt. P 54). Plaintiffs claim these statements created express warranties which they relied upon in purchasing the airplane kit. (Cmplt. PP 54-57). When the Seawind did not perform according to plaintiffs' expectations, defendants allegedly breached these express warranties.

The Purchase Agreement between plaintiffs and defendants contains the following warranty:

> SNA, Inc. warrants that the contents of the Kit at the time of shipment will be free of defects in material and workmanship according to current standards of the experimental aircraft industry. SNA, Inc.'s sole obligation under such warranty shall be limited to replacing, **[*7]** correcting or repairing any part of said property, which, within six months after date of shipment and prior to assembly, is shown to be defective and is returned by Purchaser to SNA, Inc.'s plant with all transportation charges, duties and excises paid by seller.

> ...

> SNA, Inc.'s warranty (a) does not apply to any defect caused by accident, misuse, neglect, improper repair or modifications; (b) does not apply to any part or component not manufactured by SNA, Inc.; and (c) does not apply to any part after it has been assembled in the Aircraft.

> Purchase Agreement P 5, at 2, attached as Ex. to Pltffs.' Cmplt. ["Purchase Agreement"].

The Purchase Agreement also contains an integration clause stating:

Case 1:01-cv-00775-YK   Document 55   Filed 10/18/2002   Page 48 of 56

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 2223                    Page 8 of 15

> SNA, Inc. hereby gives notice that it carries NO LIABILITY INSURANCE and
> Purchaser and SNA, Inc. agree that THE FOREGOING WARRANTY IS EXPRESSLY
> IN LIEU OF ANY AND ALL OTHER REPRESENTATIONS, WARRANTIES OR
> CONDITIONS EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OR
> CONDITIONS OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE,
> AND IS IN LIEU OF ANY AND ALL OBLIGATIONS OR LIABILITIES OF SNA, INC. TO
> PURCHASER, WHETHER FOR PROPERTY LOSSES OR PERSONAL INJURY **[*8]**
> LOSSES OR LOSS OF USE OF THE AIRCRAFT, LOSS OF TIME, INCONVENIENCE,
> COMMERCIAL LOSS, OR FOR INDIRECT, DIRECT, SPECIAL OR CONSEQUENTIAL
> DAMAGES, OR OTHERWISE, ARISING OUT OF THE USE OF THE KIT OR THE
> FINISHED AIRCRAFT. THE PURCHASER SPECIFICALLY ACKNOWLEDGES AND
> AGREES THAT THE FOREGOING SHALL SURVIVE FUNDAMENTAL BREACH OF
> THIS AGREEMENT.

Id. P 5, at 3. The parties initialed the Purchase Agreement directly beneath this clause.

The Purchase Agreement continued with the following language:

> The entire understanding and agreement between SNA, Inc. and Purchaser
> regarding the subject matter hereof is set forth in this document and the Exhibits
> A, B & C herein. All prior or contemporaneous agreements, understandings,
> negotiations, discussions, conditions, covenants, warranties and representations,
> whether written or oral, not incorporated herein are superseded except for the
> Release and Indemnity signed currently with this Agreement.

Purchase Agreement P 14, at 5.

The Purchase Agreement further contains a choice of law clause stating the agreement "shall
be construed and enforced in accordance with, and the rights of the parties hereto shall be
governed by, the **[*9]** laws of the Commonwealth of Pennsylvania." Purchase Agreement P
9, at 4.

Plaintiffs, claiming the earlier representations in the brochure formed part of the "basis of the
bargain," argue defendants cannot "hide behind" the integration clause. (Cmplt. PP 21-22).
Plaintiffs, citing no Pennsylvania case law to support their position, assert that a subsequent,
written contractual provision cannot contradict earlier express representations.

⚓In Pennsylvania, "the intent of the parties to a written contract is to be regarded as being
embodied in the writing itself." Steuart v. McChesney, 498 Pa. 45, 444 A.2d 659, 661 (Pa.
1982). "The law declares the writing to be not only the best, but the only evidence" of the
parties' agreement. Gianni v. Russell & Co., Inc., 281 Pa. 320, 126 A. 791, 792 (Pa. 1924);
see Lenihan v. Howe, 449 Pa. Super. 426, 674 A.2d 273, 275 (Pa. Super. 1996). "All
preliminary negotiations, conversations and verbal agreements are merged in and
superseded by the subsequent written contract ...." Union Storage Co. v. Speck, 194 Pa.
45 A. 48, 49 (Pa. 1899); see HCB Contractors v. Liberty Place Hotel Assoc., 539 Pa. 395, 652
A.2d 1278, 1279 (Pa. 1995). **[*10]**

The integration clause in the Purchase Agreement purports to supplant "any and all other
representations" made prior to formation of the contract. Purchase Agreement P 5, at 3.
⚓Where the contractual language is not vague or ambiguous, the court cannot rewrite the
terms of the agreement to conform to a party's preferred state of affairs. The waiver of all

Case 1:01-cv-00773-YK    Document 59    Filed 10/18/2002    Page 49 of 56

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 2223                                    Page 9 of 15

other express or implied warranties contained in the Purchase Agreement bars an action for breach of warranty based on any representations defendants made prior to the date of the contract.

⚓In certain, limited situations, a party can avoid a waiver of warranties and rely on evidence of prior representations. The party must allege fraud, accident or mistake. See Bardwell v. Willis Co., 375 Pa. 503, 100 A.2d 102, 104 (Pa. 1953). However, it is not sufficient for a plaintiff to allege that defendants made fraudulent misrepresentations; the plaintiff must allege fraud in the inducement, that is, "the representations were fraudulently or by accident or mistake omitted from the integrated written contract." HCB Contractors, 652 A.2d at 1279. "'If it were otherwise, the parole evidence rule would become a mockery, because all a **[\*11]** party to a written contract would have to do to avoid, modify or nullify it would be to aver (and prove) that the false representations were fraudulently made.'" Nicolella v. Palmer, 432 Pa. 502, 248 A.2d 20, 23 (Pa. 1968) (quoting Bardwell, 100 A.2d at 104).

Plaintiffs have made no allegation that defendants fraudulently induced them to sign the Purchase Agreement. The parties initialed the contract immediately underneath the integration clause, so plaintiffs were not unaware of that provision. An allegation that defendants' brochure made fraudulent representations of the Seawind's specifications or building time is not sufficient to avoid the waiver contained in the integration clause. The waiver in the Purchase Agreement bars plaintiffs' breach of warranty claim; the court will dismiss Count IV of plaintiffs' Complaint.

## III. Negligent Misrepresentation

Plaintiffs' Count II alleges negligent misrepresentation. ⚓To establish a prima facie case of negligent misrepresentation, the plaintiff must show: 1) a misrepresentation of a material fact; 2) the representor either knew of the misrepresentation, made the misrepresentation without knowledge as to its truth or falsity **[\*12]** or made the misrepresentation under circumstances in which he should have known of its falsity; 3) the representor intended the misrepresentation to induce the plaintiff to act on it; 4) the plaintiff acted in justifiable reliance on the misrepresentation; and 5) injury resulted to the plaintiff. See Gibbs v. Ernst, 538 Pa. 193, 647 A.2d 882, 890 (Pa. 1994).

Plaintiffs allege defendants made unidentified misrepresentations concerning the specifications of the Seawind airplane and that defendants knew or should have known of the falsity of their statements. (Cmplt. P 35). Plaintiffs also claim defendants intended for them to rely on the allegedly false statements in the brochure. (Cmplt. P 39). But plaintiffs cannot claim to have relied on the brochure specifications and figures when the subsequent contract, incorporated in their Complaint, specifically disclaimed any prior representations. Plaintiffs cannot show reliance. On the face of the Complaint, in light of the incorporated contract, plaintiffs have not established a prima facie case of negligent misrepresentation.

Plaintiffs' further difficulty arises from the relationship between their breach of warranty claim and their **[\*13]** claim for negligent misrepresentation. ⚓Under Pennsylvania law, when the tort involves actions arising from a contractual relationship, the plaintiff is limited to an action under the contract. See, e.g., Damian v. Hernon, 102 Pa. Super. 539, 157 A. 520, 521 (Pa. Super. 1931). Only in limited circumstances may a plaintiff proceed under a tort theory for alleged wrongs arising from a contractual relationship.

⚓"Breach of contract, without more, is not a tort." Windsor Securities Co. v. Hartford Life Ins. Co., 986 F.2d 655, 664 (3d Cir. 1993). "The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." Phico Ins. Co. v. Presbyterian Medical Servs., 444 Pa. Super. 221, 663 A.2d 753, 757 (Pa. Super. 1995).

Case 1:01-cv-00773-YK   Document 59   Filed 10/18/2002   Page 50 of 56

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 2223                           Page 10 of 15

To maintain a tort action, "'the wrong ascribed to defendant must be the gist of the action with the contract being collateral.'" <u>Bash v. Bell Tele. Co., 411 Pa. Super. 347, 601 A.2d 825, 829 (Pa. Super. 1992)</u> (citation omitted). "A claim ex contractu cannot be converted to one tort simply by alleging **[*14]** that the conduct in question was wantonly done." <u>Closed Circuit Corp. v. Jerrold Electronics Corp., 426 F. Supp. 361, 364 (E.D. Pa. 1977); Nirdlinger v. American Dist. Telegraph Co., 245 Pa. 453, 91 A. 883, 886 (Pa. 1914).</u>

The negligent misrepresentation claim is premised on defendants' statements in promotional literature. Plaintiffs have argued that those statements were part of the "basis of the bargain" that formed the contract between the parties. Plaintiffs claim those statements created express warranties breached by defendants. Plaintiffs' negligent misrepresentation claim is fundamentally intertwined with its breach of warranty claim; the contract is not collateral to the tort claim. Plaintiffs' mere allegation of negligence is not sufficient to create a distinct tort remedy. See <u>Phico, 663 A.2d at 758.</u>

The claim for negligent misrepresentation is "an impermissible attempt to convert a contract claim into a tort claim." <u>USX Corp. v. Prime Leasing, Inc., 988 F.2d 433, 440 (3d Cir. 1993)</u>. Plaintiffs' attempt to plead a negligence claim cannot survive a motion to dismiss under Rule 12(b)(6). See <u>Kimberton Chase Realty Corp. v. Mainline Bank, No. 97-2767, **[*15]** 1997 WL 698487, at *10 (E.D. Pa. Nov. 3, 1997)</u> (Shapiro, J.). Count II will be dismissed.

## IV. Fraud & Deceit

Plaintiffs' Count III asserts a fraud and deceit claim. ⚓A plaintiff claiming fraud and deceit must establish the following elements: 1) a representation; 2) which is material to the transaction at hand; 3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; 4) with the intent of misleading another into relying on it; 5) justifiable reliance on the misrepresentation; and 6) injury proximately caused by the reliance. See <u>Gibbs, 647 A.2d at 889; Wilson v. Donegal Mut. Ins. Co., 410 Pa. Super. 31, 598 A.2d 1310, 1315 (Pa. Super. 1991)</u>. In addition, a plaintiff must establish fraud through "clear, precise and convincing" evidence. <u>Yoo Hoo Bottling Co. of Pennsylvania, Inc. v. Leibowitz, 432 Pa. 117, 247 A.2d 469, 470 (Pa. 1968);</u> see <u>Gerfin v. Colonial Smelting and Refining Co., Inc., 374 Pa. 66, 97 A.2d 71, 74 (Pa. 1953)</u> ("clear, precise and indubitable" evidence); <u>New York Life Ins. Co. v. Brandwene, 316 Pa. 218, 172 A. 669, 669 (Pa. 1934)</u> ("clear and satisfactory" evidence).

Plaintiffs base their fraud and **[*16]** deceit claim on defendants' list of the Seawind's specifications and building time in the brochure. Plaintiffs aver that defendants intended for plaintiffs to rely on the statements and knew or should have known the representations were false. (Cmplt. P 48). Plaintiffs also claim they reasonably relied on the statements and were injured thereby. (Cmplt. PP 49-51). ⚓There is a serious question whether statements in promotional literature are actionable as representations. See, e.g., <u>Rodio v. Smith, 123 N.J. 345, 587 A.2d 621, 624 (N.J. 1991)</u> (promotional materials were mere puffery, not representations). But the contract attached to plaintiffs' Complaint expressly disclaims any prior statements or representations; plaintiffs cannot claim they relied on prior statements in the brochure to their detriment. By signing the Purchase Agreement, plaintiffs acknowledged that all prior representations were superseded by the contract terms. Plaintiffs have not stated a prima facie case of fraud and deceit.

Plaintiffs' fraud and deceit claim also suffers from the same infirmity as their claim for negligent misrepresentation. Plaintiffs are attempting to recover under a tort theory for **[*17]** an alleged wrong properly characterized as a breach of contract. The same misrepresentations forming the basis of plaintiffs' fraud and deceit claim underlie their claim for breach of warranty. There is no allegation of fraud in the inducement.

⚓A plaintiff cannot "remove the transactions from the ambit of the Commercial Code to the

Case 1:01-cv-00773-YK    Document 59    Filed 10/18/2002    Page 51 of 56

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 2223                                    Page 11 of 15

area of tortious conduct simply by making general allegations of fraud." <u>Closed Circuit Corp., 426 F. Supp. at 364.</u> "'If a party could simply, by alleging that a contracting party never intended to fulfill his promise, create a tortious action in fraud, there would be no effective way of preventing almost every contract case from being converted to a tort for jurisdictional purposes.'" <u>Id. at 365</u> (citation omitted). Because this Purchase Agreement is integral, not collateral, to the alleged fraud and deceit, plaintiffs could only claim a breach of the contract's warranty. See <u>USX Corp., 988 F.2d at 440.</u> Count III will be dismissed.

## V. Unfair Trade Practices & Consumer Protection Law

In Count I of their Complaint, plaintiffs allege a violation of ⚓the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), Pa. Stat. Ann. tit. 73, **[*18]** § 201-1, et seq., n3 based on defendants' representations in their promotional literature. ⚓"The general purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices." <u>Burke v. Yingling, 446 Pa. Super. 16, 666 A.2d 288, 291 (Pa. Super. 1995).</u> Because UTPCPL is an anti-fraud, consumer protection statute, it should be "liberally construed to effect the purpose." <u>Pennsylvania v. Monumental Prop., Inc., 459 Pa. 450, 329 A.2d 812, 816 (Pa. 1974).</u>

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n3 The relevant provision of UTPCPL states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce ... are hereby declared unlawful." Pa. Stat. Ann. tit. 73, § 201-3. Actions that qualify as "unfair methods of competition" or "unfair or deceptive acts or practices" are listed in Pa. Stat. Ann. tit. 73, § 201-2.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

⚓A private right of action under UTPCPL exists for "any person who purchases or leases goods or services primarily for personal, family or household purposes **[*19]** n4 and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by ... this act." Pa. Stat. Ann. tit. 73, § 201-9.2(a). Plaintiffs claim the "aircraft does not perform according to the specifications" in the brochure, (Cmplt. P 28), and defendants' omissions and false representations amount to deceptive acts prohibited by UTPCPL. n5

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - -

n4 The Seawind aircraft is designated as "experimental" by the FAA. See Purchase Agreement at 6, 14. Under FAA regulations, "no person may operate an aircraft that has an experimental certificate-- ... (2) Carrying persons or property for compensation or hire." <u>14 C.F.R. § 91.319.</u> Plaintiffs were not permitted to use the Seawind for commercial purposes; therefore, the court assumes without deciding now that they purchased the kit for "personal" use.

n5 Plaintiffs do not identify which statutory definition of "unfair methods of competition" or "unfair or deceptive acts or practices" they are relying upon. Conceivably, defendants' alleged actions might fall within the following definitions:

"Representing that goods or services have ... ingredients, uses, benefits or quantities that they do not have," 73 Pa. Stat. Ann. tit. 73, § 201-2(4)(v);

"Representing that goods or services are of a particular standard, quality or grade, or that the goods are of a particular style or model, if they are of another," 73 Pa. Stat. Ann. tit. 73, § 201-2(4)(vii);

Case 1:01-cv-00773-YK    Document 59    Filed 10/18/2002    Page 52 of 56

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 2223    Page 12 of 15

"Advertising goods or services with intent not to sell them as advertised," 73 Pa. Stat. Ann. tit. 73, § 201-2(4)(ix);

"Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made," 73 Pa. Stat. Ann. tit. 73, § 201-2(4)(xiv) (emphasis added); or

"Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," 73 Pa. Stat. Ann. tit. 73, § 201-2(4)(xxi).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - **[*20]** ☂

A claim under UTPCPL is separate and distinct from a claim for breach of contract, even though both claims may be based on the same facts. See Fink v. Delaware Valley HMO, 417 Pa. Super. 287, 612 A.2d 485, 488 (Pa. Super. 1992); Bash v. Bell Tele. Co. of Pa., 411 Pa. Super. 347, 601 A.2d 825, 828 (Pa. Super. 1992). The UTPCPL claim is not precluded because plaintiffs' breach of warranty claim is barred by an integration clause. The UTPCPL claim is also distinct from plaintiffs' common law tort actions for negligent misrepresentation and fraud and deceit; the fact that those claims are barred does not preclude plaintiffs' UTPCPL claim.

## A. Limitation of Liability Clause

Defendants argue the Purchase Agreement contains provisions restricting liability. One clause limits defendants' liability for defective parts to "replacing, correcting or repairing any part" prior to assembly. Purchase Agreement P 5, at 2.

☂A limitation of liability clause does not eliminate a contracting party's liability, but it it to a certain amount or form of corrective action. "Limitation of liability clauses are routinely enforced under the Uniform Commercial Code when contained in sales **[*21]** contracts negotiated between sophisticated parties and when no personal injury or property damage is involved. This is true whether the damages are pled in contract or tort." Valhal Corp. v. Sullivan Assoc., Inc., 44 F.3d 195, 203 (3d Cir. 1995) (citing cases). Limitation of liability clauses are not disfavored under Pennsylvania law; Pennsylvania courts generally enforce them, finding the parties "are at liberty to fashion the terms of their bargain." Vasilis v. Bell of Pa., 409 Pa. Super. 396, 598 A.2d 52, 54 (Pa. Super. 1991).

The Purchase Agreement states, "Purchaser represents that he is an educated and/or sophisticated purchaser of aircraft and purchases this kit as such." Purchase Agreement P 3, at 1. But the limitation of liability clause pertains only to contractual remedies. It warrants the contents of the Seawind kit will be free of defective parts; if defects exist, defendants agree to repair, correct or replace them. Plaintiffs are not alleging any of the airplane's parts are defective; they claim under the UTPCPL that defendants engaged in deceptive acts prior to formation of the contract. The clause limiting defendants' duty to repairing defective parts does **[*22]** not apply to this action.

## B. Exculpatory Clause

The Purchase Agreement contains a provision purporting to release defendants from any and all liability. ☂A valid exculpatory clause "deprives one contracting party of a right to recover for damages suffered through the negligence of the other contracting party." Fidelity Bank v. Tiernan, 249 Pa. Super. 216, 375 A.2d 1320, 1325 (Pa. Super. 1977); see Ellwood


Consolidated Water Co. v. Johnson, 420 F.2d 787, 788 (3d Cir. 1970).

Three conditions must be met for an exculpatory clause to be valid: 1) the clause cannot contravene public policy; 2) the contract must involve only the private affairs of the parties and not a public matter; and 3) the contract cannot be one of adhesion. See Topp Copy Products, Inc. v. Singletary, 533 Pa. 468, 626 A.2d 98, 99 (Pa. 1993). Even if the exculpatory clause is valid, it is unenforceable "unless the language of the parties is clear that a person is being relieved of liability for his own acts of negligence." Id. The contract language is strictly construed and must state the parties' intentions with particularity. Any ambiguities must be resolved against the party seeking immunity **[*23]** from liability. See, e.g., Dilks v. Flohr Chevrolet, Inc., 411 Pa. 425, 192 A.2d 682, 687 (Pa. 1963).

In the Purchase Agreement's exculpatory clause, plaintiffs agreed to assume "the entire responsibility and liability for, any and all damages or injuries of any kind or nature whatsoever, including property damage, personal injury or death, ... caused by, resulting from, arising out of, or occurring in connection with the supply to purchaser, or the use by purchaser or other persons, of the kit or finished aircraft." Plaintiffs also "generally released SNA, Inc. from any and all liabilities above described, either occurring now and/or at any time in the future." Purchase Agreement at 6.

Plaintiffs also agreed that defendants' agreement to repair any defective parts was "IN LIEU OF ANY OBLIGATIONS OR LIABILITIES OF SNA, INC. TO PURCHASER, WHETHER FOR PROPERTY LOSSES OR PERSONAL INJURY LOSSES OR LOSS OF USE OF THE AIRCRAFT, LOSS OF TIME, INCONVENIENCE, COMMERCIAL LOSS, OR FOR INDIRECT, DIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, OR OTHERWISE, ARISING OUT OF THE USE OF THE KIT OR THE FINISHED AIRCRAFT." Id. P 5, at 3.

If plaintiffs are claiming only their loss of time or **[*24]** the inconvenience of flying an airplane that does not conform to the specification in the brochure, the exculpatory clause would apply and preclude their recovery. However, plaintiffs appear to claim violation of UTPCPL based on defendants' alleged deceptive activity leading plaintiffs to enter into a commercial transaction. It is not clear from the language of the exculpatory clause whether the parties intended to bar actions based on a separate statutory remedy for illegal activity inducing the formation of the contract as opposed to an action for damages incurred after the making of the contract. The nature of the damages claimed and their cause or causes are also very unclear at this time.

⊤"When a contract does not provide for a contingency, it is not ambiguous; rather, it is silent, and the court may not 'read[] into the contract something it does not contain and thus make a new contract for the parties.'" Banks Engineering Co. v. Polons, 697 A.2d 1020, 1023 (Pa. Super. 1997) (citing Snellenburg Clothing Co. v. Levitt, 282 Pa. 65, 127 A. 309, 310 (Pa. 1925)). Because this matter is raised on a motion to dismiss, the court will not read into the exculpatory clause language **[*25]** barring an action under UTPCPL when the parties not did expressly contract for such a provision. The court will deny the motion to dismiss Count I of plaintiffs' Complaint without prejudice to a motion for summary judgment after the individual circumstances are revealed by discovery.

## VI. Damages

### A. Punitive Damages Under UTPCPL

Defendants move to dismiss any claims for punitive damages. ⊤Under UTPCPL, a successful plaintiff may "recover actual damages or one hundred dollars ($ 100), whichever is greater." Pa. Stat. Ann. tit. 73, § 201-9.2(a). "The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($ 100), and may provide such additional relief as it deems necessary or proper ... [including] costs and

Case 1:01-cv-00773-YK    Document 59    Filed 10/15/2002    Page 54 of 56
Get a Document - by Citation - 1998 U.S. Dist. LEXIS 2223

Page 14 of 15

reasonable attorney fees." Id.

"It is undisputed that the imposition of exemplary or treble damages is essentially punitive in nature." Johnson v. Hyundai Motor of Am., 698 A.2d 631, 639 (Pa. Super. 1997). "'[Courts] will be guided by the well-established, general principles of law governing punitive damages when exercising discretion under the UTPCPL.'" Kimberton Chase Realty Corp., 1997 **[*26]** WL 698487, at *11 (citation omitted). The statute authorizes an award of treble damages, ultimately serving the same purpose as an award of punitive damages. Plaintiffs may be awarded statutory damages rather than punitive damages if successful at trial.

### B. Punitive Damages in a Class Action

Defendants also argue punitive damages are unavailable because, "to the extent this is ever going to amount to a class action, no punitive damages are usually available to a common plaintiff and said claims must be dismissed." Defs.' Mem. Supp. Mot. Dismiss at 5. However, ⚓"each member of the putative class holds a separate and distinct interest in a punitive damages award." Pierson v. Source Perrier, 848 F. Supp. 1186, 1189 (E.D. Pa. 1994); see also Johnson v. Gerber Products. Co., 949 F. Supp. 327, 329 (E.D. Pa. 1996) (listing cases involving punitive damages in class actions).

In support of their argument, defendants rely on Bishop v. General Motors Corp., 925 F. Supp. 294 (D.N.J. 1996). Bishop simply holds that a class plaintiff cannot aggregate punitive damage claims for all class members to satisfy the jurisdictional amount in controversy requirement, see id. at 297, **[*27]** a proposition established by Snyder v. Harris, 394 U.S. 332, 335, 22 L. Ed. 2d 319, 89 S. Ct. 1053 (1969). See e.g., Hamel v. Allstate Indemnity Co., 1996 U.S. Dist. LEXIS 2685, No. 95-6554, 1996 WL 106120, at (E.D. Pa., Mar. 5, 1996). No class has yet been certified. However, only the UTPCPL claim remains, so plaintiffs are restricted to statutory damages, not punitive damages.

## VII. Specificity

Defendants move to dismiss the Complaint for failure to plead fraud with specificity. ⚓"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The court will dismiss plaintiffs' claim for fraud and deceit; therefore, defendants' Rule 9(b) argument is moot as to Count III. In Count I, plaintiffs rely on alleged fraudulent practices made illegal by UTPCPL. Viewing the Complaint in the light most favorable to plaintiffs, they have put defendants on sufficient notice that their claim is premised on the specifications listed in the Seawind promotional materials. Through discovery, defendants will be able to learn the specifications plaintiffs claim their Seawind fails to meet and the statutory provisions claimed to **[*28]** have been violated.

## CONCLUSION

The court will dismiss plaintiffs' claims for breach of warranty, negligent misrepresentation and fraud and deceit. The court will deny defendants' motion to dismiss plaintiffs' claim for violation of UTPCPL.

An appropriate Order follows.

## ORDER

AND NOW, this 26th day of February, 1998, upon consideration of defendants' motion to dismiss the Complaint, plaintiffs' response thereto, and in accordance with the attached Memorandum, it is hereby ORDERED that:

1. Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART.**

2. Defendants' motion to dismiss is **GRANTED** as to Count II (Negligence/Negligent Misrepresentation), Count III (Fraud and Deceit) and Count IV (Breach of Warranty).

3. Defendants' motion to dismiss is **DENIED** as to Count I (Unfair Trade Practices and Consumer Protection Law) without prejudice to a subsequent motion for summary judgment.

4. Plaintiffs' request for punitive damages is amended to a request for statutory damages under UTPCPL.

5. Defendants shall file an Answer within ten (10) days of the date of this Order.

6. Plaintiffs shall move for class certification within twenty (20) **[*29]** days of the date of this Order. Defendants shall respond within ten (10) days thereafter; plaintiffs may reply to defendants' response within an additional ten (10) days.

7. A Rule 16 conference and oral argument on the motion for class certification will be scheduled by separate Order.

Norma L. Shapiro, J.

     Service: **Get by LEXSEE®**
    Citation: **1998 us dist lexis 2223**
        View: Full
   Date/Time: Thursday, October 17, 2002 - 1:23 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2002 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# CERTIFICATE OF SERVICE

AND NOW, this 18th day of October, 2002, I, Denise L. Huber, an employee of Duane Morris LLP, hereby certify that I have served a copy of the Defendant HouseMaster's Brief in Support of its Motion for Summary Judgment on Counts VIII Through XI of the Amended Complaint on the following by depositing a true and correct copy of the same in the U.S. Mail at Harrisburg, Pennsylvania, postage prepaid, addressed to:

James G. Nealon, III, Esquire
Nealon & Grover, P.C.
2411 North Front Street
Harrisburg, PA 17110

Edward A. Monsky, Esquire
Fine, Wyatt & Carey, P.C.
425 Spruce Street
Scranton, PA 18501-0590

John Flounlacker, Esquire
Thomas, Thomas & Hafer, LLP
305 North Front Street
Harrisburg, PA 17108

Louis M. Tarasi, Jr., Esquire
510 Third Avenue
Pittsburgh, PA 15219

By: _____
Denise L. Huber