| | |
|---|---|
| THOMAS, THOMAS & HAFER, LLP<br>305 North Front Street<br>P.O. Box 999<br>Harrisburg, PA 17108 | John Flounlacker, Esquire<br>Attorney I.D. 73112<br>(717)237-7134<br>Attorneys for Defendant Edleman |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACK MARRONE, husband, KAREN MARRONE, wife, both individually and in their capacity as parents and guardians for VIDA MARRONE, a minor, and MATTHEW ADAM MARRONE<br>        Plaintiffs<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY, LINDA M. EDLEMAN, FRED SCHAFER, MT. GRETNA REALTY, and HOUSEMASTERS<br>        Defendants | : NO.: 1:CV-01-0773<br>:<br>:<br>:<br>:<br>:<br>:<br>: JUDGE KANE<br>:<br>: Civil Action Law<br>:<br>:<br>:<br>: Jury Trial Demanded<br>: |

FILED
HARRISBURG, PA
OCT 18 2002

## DEFENDANT LINDA M. EDLEMAN'S
## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**I.    STATEMENT OF FACTS**

On August 31, 1999, Plaintiffs purchased a home located at 354 Timber Road, Mount Gretna, Pennsylvania, from moving-Defendant Linda M. Edleman (hereinafter "Defendant"). Plaintiffs took immediate possession of the home.

Approximately eleven (11) months later, in July of 2000, Plaintiffs went on a week long vacation. When Plaintiffs returned, they found mold in the basement of their home. It was the first time Plaintiffs had noted any problem with mold.

On or about August 28, 2000, Plaintiffs had their home inspected by Advanced Applied Sciences, Inc., which consisted of a bioaerosol survey. The results found that at the time of testing, there was a fungal contamination. The

report of the industrial hygienist, Robert A. Pfromm, also found that such contamination could possibly be at symptomatic concentrations, depending on the sensitivity of the exposed person to the species found. Pfromm also suggested that Plaintiffs seek "appropriate medical testing" by "qualified medical personnel" to determine the Plaintiffs' susceptibility to any such contamination. Shortly after receiving Pfromm's report, Plaintiffs' vacated the home.

On August 12, 2002, Tom Moore, a home inspector, inspected the home in question at Plaintiffs request. At the time of the inspection, the house had been vacant for approximately two (2) years. Moore found that, as of the date of the inspection, there was a small pipe leak and evidence of pipe condensation. No other expert reports have been presented.

## II.   PROCEDURAL HISTORY

Plaintiffs filed their Complaint on or about May 3, 2001, alleging, *inter alia*, Misrepresentation, Negligent Misrepresentation and Breach of Contract against Defendant. An Amended Complaint was filed on or about November 2, 2001, which added Matthew Marrone as a Plaintiff in this action. A Copy of the Amended Complaint, may be found in the Appendix as Exhibit A. When the Amended Complaint was filed, Plaintiffs were represented by Stevens & Johnson of Allentown, Pennsylvania.

On or about December 21, 2001, as a result of a teleconference, this Court granted Stevens & Johnson's motion to withdraw as plaintiffs' counsel. On January 15, 2002, Plaintiffs filed a motion to extend time by 45 days so they could obtain new counsel. On February 1, 2002, Louis M. Tarasi, Jr., of the law firm of Tarasi, Tarasi & Fishman, P.C., located in Pittsburgh, Pennsylvania, entered his appearance on behalf of Plaintiffs.

On or about February 19, 2002, this Court entered a revised Case Management Order. Plaintiffs filed a motion to extend the order, which was

granted on July 5, 2002. The Case Management Order provides, *inter alia*, that dispositive motions with supporting briefs are due by October 18, 2002.

Defendants now seek summary judgment or, in the alternative, partial summary judgment regarding the relief Plaintiffs request. Defendant files this brief in support thereof.

### III. QUESTIONS PRESENTED

1. Should summary judgment be entered in favor of Defendant on Counts III (Misrepresentation), IV (Negligence) and V (Breach of Contract) when there is no evidence that Defendant either knew or should have known of any preexisting "water problem" in the home and there is no competent evidence, expert or otherwise, establishing a causal connection between Defendant's alleged conduct and Plaintiffs' claimed injuries arising from the mold growth?

**Suggested Answer:** Yes.

2. In the alternative, should partial summary judgment on the issue of any alleged bodily injury be granted when there is no medical evidence connecting Plaintiffs' alleged injuries to any mold found in the home?

**Suggested Answer:** Yes.

3. Should partial summary judgment on the issue of emotional damages claimed for Defendant's alleged Breach of Contract be granted when Plaintiffs are not legally entitled to any such damages?

**Suggested Answer:** Yes.

### IV. ARGUMENTS

Defendant seeks summary judgment as to Counts III, IV and V of Plaintiffs' Amended Complaint as there is no dispute to any material fact and there is no evidence by which Plaintiffs can prove the elements of their causes of action. In the alternative, Defendant respectfully seeks partial summary judgment as to any claims for bodily injury under the same three counts for failing to demonstrate any

3

causal connection between Plaintiffs' claimed injuries and Defendant's alleged conduct. Finally, also in the alternative, Defendant seeks partial summary judgment as to any emotional damages claimed under Count V, Breach of Contract, as Plaintiffs are not legally entitled to such damages.

Federal Rule of Civil Procedure 56, governing summary judgment, is a mechanism for "assessing the proof in order to see whether there is a genuine need for trial." Smith v. CGU, 179 F.Supp.2d 425, 427 (M.D. Pa. 2001); see also Fed.R.Civ.Pro. 56(e) advisory committee notes (1963). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id. This standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Id.

Pursuant to this rule, the Court must view the evidence in a light most favorable to the non-moving party. Id. at 428. However, the non-moving party may not rest on the bare allegations contained in his or her pleadings. Id. Once the moving party has shown there to be no genuine issue of material fact, the non-moving party is required by Fed.R.Civ.Pro. 56(e) to go beyond the pleadings in order to demonstrate specific material facts which give rise to a genuine issue. Id. (citing, Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Importantly, when Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. Smith v. CGU,

179 F.Supp.2d 425, 428 (M.D. Pa. 2001) (citing, <u>Equimark Commercial Fin. Co. v. C.I.T. Fin. Serv. Corp.</u>, 812 F.2d 141, 144 (3rd Cir. 1987)).

With these standards in mind, Defendant now turns to her substantive claims.

### A. SUMMARY JUDGMENT IS APPROPRIATE WHERE PLAINTIFFS FAIL TO PROVIDE EVIDENCE TO SUPPORT THEIR CLAIMS

All three counts in Plaintiffs' Amended Complaint against Defendant allege as their basis that Defendant either knew, or should have known, that there was a basement leak or water problem which caused the mold at issue in this case.[1] Further, all of Plaintiffs claims against Defendant allege that injuries resulted from the intentional or negligent misrepresentation. Plaintiffs, however, have failed to produce any proof whatsoever that the condition which caused the injuries they claim was a preexisting one that was either known, or reasonably knowable by, Defendant. Moreover, Plaintiffs have failed to prove that assuming *arguendo* there was an intentional or negligent misrepresentation or breach of warranty, that the injuries they claim resulted from said misrepresentation or breach.

#### 1. Plaintiffs' Standards Of Proof For Their Claims

To prove Fraudulent Misrepresentation, as Plaintiffs allege in Count III, a Plaintiff must show: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. <u>Bortz v. Noon</u>, 556 Pa. 489, 499, 729 A.2d 555, 560 (1999).

---

[1] Count III, Misrepresentation, alleges that knew that there were existing problems at the time of sale to Plaintiffs and intentionally misrepresented the lack of such problems. Count IV, Negligence, alleges that Defendant knew or should have known of the existing defect and negligently misrepresented the lack of such problems. Finally, Count V, Breach of Contract, alleges that the above misrepresentations breached the warranties Defendant made with regard to the condition of the home.

5

To establish a claim of Negligent Misrepresentation, a plaintiff must prove: (1) a misrepresentation of material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in jury to a party acting in justifiable reliance on the misrepresentation. Id. at 501, 729 A.2d at 561.

Under Pennsylvania law, the trial judge must decide as a matter of law before submitting a case to the jury whether plaintiff's evidence attempting to prove fraud is sufficiently clear, precise, and convincing to make out a *prima facie* case. Lind v. Jones, Lang LaSalle Americas, Inc., 135 F.Supp.2d 616, 621 (E.D. Pa. 2001). Thus, clear and convincing evidence of fraud, rather than a preponderance of the evidence, must exist. Id.

There is no such proof here. Specifically, Plaintiffs have failed to establish a *prima facie* case for two of the elements above: a false representation, either negligent or intentional, and causation of their alleged injuries.

### 2.    Lack Of Evidence Regarding Falsity And Causation

Plaintiffs have produced no evidence which would allow a jury to conclude that any representations made by Defendant were false when they were made. Plaintiffs have produced no evidence that the problems which they allege were fraudulently misrepresented existed at the time Defendant sold the home to Plaintiffs. Further, there is no evidence, expert or otherwise, that even assuming there was a basement "water problem," that this preexisting problem was the cause of mold growth eleven (11) months after the sale of the home, which Plaintiffs allege caused their injuries.

Plaintiffs have produced the report of Tom Moore, a home inspector, whose report may be found in the Appendix as Exhibit B. No where in Moore's report does he state that there was any evidence of a preexisting "water problem" in the

6

basement.[2] Neither does Moore's report discuss what conditions, if any, were preexisting; how severe any such problems were which would allow an owner to have notice of them; or how long any problems appeared to be present. All Moore's report states is that two years after the house was abandoned and left completely vacant, there were sweating pipes in the ceiling of the basement. The report, however, is silent about what exact problems there were, if any, and when such problems possibly arose based on the evidence he found.

Plaintiffs have also produced the report of Robert A. Pfromm, the project manager from Advanced Applied Sciences, Inc. (hereinafter "A2SI") and industrial hygienist, which may be found in the Appendix as Exhibit C. Pfromm found that as of the time of the testing, there was a growth of mold in the basement of a type which was different from that of the outside of the home, which meant that the basement had an elevated amount of mold growth. Exhibit C, p. 4.

There is nothing in Pfromm's report, however, which links said growth to any condition which predated the sale of the home. Further, the report is absent of any discussion of growth periods for the mold, or explanation of how it would even be possible for a condition preexisting the sale of the home to cause such mold growth at least eleven (11) months later. All of the aforementioned discussions would be indicative of some knowledge, actual or constructive, or other reason Defendant should have known about any alleged "water problem" or, at the very least linked the resulting mold to the Defendant's alleged actions.

Most importantly, however, in beginning his discussion of the moisture level increase in the basement, Plaintiffs' own expert stated in his report that:

> The presence of an organism in an interior [of the home] sample and not in the exterior sample requires either active growing colonies of

---

[2] Moore's report does state that the basement was incorrectly finished. However, even assuming *arguendo* such a conclusion is true, this is not claimed as a cause of action or alleged as the cause of any problems in the Complaint, nor is there evidence that the Defendant even had knowledge of such a possibility.

7

> the organism or a reservoir of viable spores to be present in the building. For this apparent amplification to be possible, several requirements <u>must</u> be met or have been met <u>at some time in the **recent past**</u>. They are as follows: a substrate or growth media, appropriate temperature conditions, and adequate or excessive moisture.

Exhibit C, p. 4 (emphasis added). The report then goes on to state that virtually any surface in a home has adequate sources for nutrients, but that the higher humidity makes growth more likely or even ideal. Exhibit C, p. 4.

As seen above, Plaintiffs' own expert stated that those requirements must have been met in the <u>recent past</u>. Since he also states immediately thereafter that any surface possesses adequate nutrients for growth, there must have been an increase in the humidity in the <u>recent past</u>. Importantly, the first sign of mold in the present case was in July of 2000, or eleven (11) months after the sale of the home.

### 3. Legal Conclusions Based On The Lack Of Evidence Presented

There is no evidence linking in any way whatsoever the alleged conduct by Defendant to Plaintiffs' injuries. As part of a tort action, plaintiff must prove that the injury claimed to have been sustained and for which recovery is sought was caused by the tortious act of the tortfeasor. <u>Maliszewski v. Rendon</u>, 374 Pa.Super. 109, 542 A.2d 170 (1988); see also <u>Narcise v. SEPTA</u>, No. 86-2229, 2000 U.S. Dist. LEXIS 12993. *6 (E.D. Pa. 2000). 2000 U.S. Dist. LEXIS 12993, may be found in the Appendix as Exhibit D. Accordingly, a defendant cannot be held liable on a theory of negligence, strict product liability or misrepresentation unless a causal relationship is established between the Defendant's conduct and the Plaintiff's injury. <u>Narcise</u>, <u>supra</u>. at *7. In other words, unequivocal expert testimony is necessary to establish the causal connection between a defendant's actions and plaintiff's injuries in cases where there is no obvious causal relationship between the accident and injury. See e.g., <u>Niklaus v. Vivadent, Inc.</u>,

8

767 F.Supp. 94, 96 (M.D. Pa. 1991), aff'd 986 F.2d 1409 (3rd Cir. 1993) (Discussing medical testimony in that case, and noting that "[a]n obvious causal relationship exists when the injury is either an 'immediate and direct' of the 'natural and probable' result of the complained act. The injury and the act must be so closely connected that a lay person could diagnose the causal connection" Id.).

The first sign of mold in the present case was in July of 2000, or eleven (11) months after the sale of the home. Not only is there no proof of any condition Defendant was or should have been aware of that could give rise to such a problem, but there is no evidence to explain why eleven (11) months went by before the problem first occurred. Even Plaintiffs' own expert states that the mold's amplification would be due to a set of "recent events." There is no explanation, expert or otherwise, of how a preexisting condition in the summer of 1999 could cause a mold growth not in that same year, but in the summer of 2000, almost a year later. There is no evidence, expert or otherwise, which shows there to be a condition predating the sale of the house to Plaintiffs and if there was, there is no proof of knowledge by Defendant.

The temporal connection is not obvious and there is no evidence regarding a preexisting condition, no less one of which Defendant was aware. Further, Plaintiffs are unable to prove that any preexisting condition which may, or may not, have existed caused the mold which in turn caused their alleged injuries. Plaintiffs cannot prove their claims of Misrepresentation, intentional or negligent, or Breach of Contract based on a false warranty by Defendant. There is no dispute of material fact, as Defendant relies upon Plaintiffs' own expert and the facts as set forth in their Amended Complaint. As such, Defendant respectfully submits that she is entitled to judgment as a matter of law as to Counts III, IV, and V.

B.  **SUMMARY JUDGMENT AS TO ALL PERSONAL INJURIES ALLEGED IS PROPER WHERE PLAINTIFFS PROVIDE NO MEDICAL TESTIMONY REGARDING THE CAUSE OF THEIR INJURIES**

In the alternative, should the Court find that summary judgment is not appropriate in the present case, the Defendant requests that partial summary judgment be granted as to any claims for bodily injury by the Plaintiffs. The deadline for the production of expert reports has passed pursuant to the case management order, and there is no medical evidence whatsoever regarding the Plaintiffs' alleged physical injuries.

Pennsylvania law is clear that with regard to claims of physical injury or impairment, expert medical testimony is necessary to establish the causal nexus of the injury to the tortious conduct. Maliszewski v. Rendon, 374 Pa.Super. 109, 113; 542 A.2d 170, 172 (1988). Such testimony is needed to establish that the injury in question did, within a reasonable degree of medical certainty, stem from the complained of act. Niklaus v. Vivadent, Inc., 767 F.Supp. 94, 96 (M.D. Pa. 1991), aff'd 986 F.2d 1409 (3rd Cir.). Medical testimony is needed regarding injuries suffered except in the rare case where there is an obvious causal relationship. Id. As this Court has stated, "[a]n obvious causal relationship exists when the injury is either an 'immediate and direct' of the 'natural and probable' result of the complained act. The injury and the act must be so closely connected that a lay person could diagnose the causal connection" Id.

In the present case, there is no medical evidence regarding the connection between any alleged actions by the Defendant, the mold found in the basement, and the injuries of which Plaintiffs complain. The Plaintiffs claim numerous injuries in their Amended Complaint from sexual dysfunction, to hair loss, to

general respiratory illness. However, Plaintiffs have no medical evidence that any of these alleged injuries resulted from the mold in question.

Plaintiffs' industrial hygienist Mr. Pfromm stated in his report that the mold found was a "potential respiratory" allergen. Exhibit C, p. 5. In fact, interestingly, Plaintiffs' own hygienist stated in his report:

> The fungi found are of significant concern from an allergen aspect, <u>dependent on the sensitivity</u> of the exposed person. These levels <u>could possibly</u> be at symptomatic concentrations, <u>if the exposed person is, in fact, sensitive to these species</u>…**<u>Appropriate medical testing on the occupants by qualified medical personnel could assist in determining the susceptibility of these individuals</u>**.

Exhibit C, p. 6 (emphasis added).

Plaintiffs' expert qualified any hygienist opinion noting that the fungi found "could" be an allergen "if" the exposed person is susceptible. Even Pfromm, who is familiar with mold and fungi although admittedly not a medical professional, cannot state that there is any obvious causal effect. Pfromm further qualified the possibility that an allergen is present in the home on whether the occupants are even sensitive to these types of fungi. Even then, Pfromm only refers to a possible allergen or respiratory effect, not the injuries Plaintiffs claim. Most importantly, however, Plaintiffs' own industrial hygienist specifically stated that Plaintiffs should find a "qualified medical specialist" to test in order to determine what effect, if any, the mold found would have on the Plaintiffs.

There is no obvious causal connection in this case. Not even an industrial hygienist who may not be a medical expert but is at least familiar with fungi, can say whether Plaintiffs were susceptible or in any way symptomatic of the species of mold found. This is very much out of the kin of a lay person, and medical testimony regarding the causal effect is required. Plaintiffs' hygienist is not qualified to speak on such causation, which is further evidenced by his own

11

suggestion that Plaintiffs speak to a qualified medical expert. Plaintiffs fail to present any such evidence. There is no question of material fact, as Defendant simply refers to what the Plaintiffs have alleged in their Amended Complaint and failed to produce in discovery. As such, Defendant respectfully submits that partial summary judgment be granted regarding any claim of personal injury in Counts III, IV and V.

### C. PARTIAL SUMMARY JUDGMENT AS TO EMOTIONAL DAMAGES FORBREACH OF CONTRACT IS APPROPRIATE WHERE NO SUCH DAMAGES ARE PERMITTED

Finally, in Count V of their Complaint, Breach of Contract, Plaintiffs request damages for "physical and emotional damage and distress." First, regardless of the above discussions, Plaintiffs are not entitled to receive such damages under a Breach of Contract theory. Second, since based on the above Defendant is entitled to judgment regarding any claim for bodily injury, Defendant submits that there is no arguable claim for emotional injuries in contract law.

As a general rule, damages for emotional disturbance and distress are not allowed in breach of contract cases. Rodgers v. Nationwide Mut. Ins. Co., 344 Pa.Super. 311, 319-320, 496 A.2d 811, 815 (1985); see also Anderson v. Allstate Life Ins. Co., 2 F.Supp. 688, 694 (E.D. Pa. 1998). Section 341 of the Restatement (Second) of Contracts states:

> In actions for breach of contract, damages will not be given as compensation for mental suffering, except where the breach was wanton or reckless and caused bodily harm and where it was the wanton or reckless breach of a contract to render a performance of such a character that the defendant had reason to know when the contract was made that the breach would cause mental suffering for reasons other than mere pecuniary loss.

Restatement (2d) Contracts § 341; Rodgers v. Nationwide Mut. Ins. Co., 344 Pa.Super. 311, 319-320, 496 A.2d 811, 815 (1985).

In the present case, it cannot be said that a breach of contract for the purchase of a home would cause any kind of mental suffering other than pecuniary loss at the time the contract was made. Further, for the reasons stated above, Plaintiffs have not proven any causal connection between their injuries and any alleged actions by the Defendant which serve as the basis for both the Misrepresentation claims and the Breach of Contract action. As a result, Plaintiffs cannot claim that the Breach of Contract at issue in this case caused any physical harm to them. Thus, without bodily harm, the exception to the general rule as provided in the Restatement quoted above is not met, and any claim for emotional distress arising out of any alleged Breach of Contract should be dismissed.[3]

## IV. CONCLUSION

For the reasons set forth above, Defendant respectfully requests that Plaintiffs have failed to meet the requisite elements of their claims, and thus judgment should be entered in favor of Defendant on Counts III, IV and V. In the alternative, partial summary judgment should be granted as to any claims for bodily injury in Counts III, IV and V as there is no causal connection between the alleged actions of Defendant and Plaintiffs' injuries. Finally, also in the alternative, partial summary judgment as to any claim of emotional

---

[3] The Rodgers Court mentioned that an exception in some jurisdictions exists for breaches that would likely cause serious emotional disturbance, such as the improper disposal of family members' remains. Rodgers v. Nationwide Mut. Ins. Co., 344 Pa.Super. 311, 319-320, 496 A.2d 811, 815 (1985). The Court noted that Pennsylvania has not adopted such an exception. Id. Regardless, the warranty allegedly breached here dealt with a "water condition" in the home's basement which falls far short of the serious emotional disturbance contemplated by the courts. See e.g., Id. (subject matter must be fundamental in nature and the conduct close to outrageous); Mason v. Western Penn. Hosp., 499 Pa. 494, 453 A.2d 974, 980 (1982) (rejecting application for a gynecological exam which caused pregnancy).

13

distress in Count V, Breach of Contract, should be dismissed as contrary to the law given the facts as have been established in discovery.

Respectfully submitted,

THOMAS, THOMAS & HAFER, LLP

By: /s/ John Flounlacker

John Flounlacker, Esquire
Attorney I.D. # 73112
P.O. Box 999
Harrisburg, PA 17108-0999
(717)237-7134

Date: 10/18/02

## CERTIFICATE OF SERVICE

I, Jeannie L. Kawalec, an employee for the law firm Thomas, Thomas & Hafer, LLP, hereby state that a true and correct copy of the foregoing document(s) was served upon all counsel of record by first class United States mail, postage prepaid, addressed as follows, on the date set forth below:

By First Class U.S. Mail:

Gianni Floro, Esquire
Louis M. Tarasi, Esquire
Tarasi, Tarasi & Fishman, P.C.
510 Third Avenue
Pittsburgh, PA 15219

James G. Nealon, III, Esquire
Nealon & Gover
2411 North Front Street
Harrisburg, PA 17110

Edward A. Monsky, Esquire
Fine, Wyatt & Carey, P.C.
425 Spruce Street
P.O. Box 590
Scranton, PA 18501-0590

Paul E. Scanlan, Esquire
Duane Morris & Heckscher
305 N. Front Street
P.O. Box 1003
Harrisburg, PA 17108

THOMAS, THOMAS & HAFER, LLP

_____
Jeannie L. Kawalec

Dated: 10/18/02