

JUDGE'S COPY

FILED
HARRISBURG, PA

OCT 18 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACK MARRONE, Husband,                    :
KAREN MARRONE, Wife,                      :        CIVIL ACTION - LAW
Both Individually and in Their Capacity   :
as Parents and Guardians for              :        JURY TRIAL DEMANDED
VIDA MARRONE, a Minor  and                :
MATTHEW ADAM MARRONE                      :
        Plaintiffs                        :        JUDGE  KANE
                                          :
                                          :        1:CV-01-0773
v.                                        :
ALLSTATE INSURANCE COMPANY,               :
LINDA M. EDLEMAN, FRED SCHAEFFER,         :
MT. GRETNA REALTY and                     :
HOUSE MASTERS,                            :
        Defendants                        :

---

### MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS
### FRED SCHAEFFER AND MT. GRETNA REALTY

Defendants, Fred Schaeffer and Mt. Gretna Realty, by and through their counsel, Fine, Wyatt &

Carey, P.C., hereby move this Honorable Court for entry of summary judgment in their favor, and in

support thereof set forth the following:

1.    Plaintiffs Jack Marrone and Karen Marrone entered into a standard agreement for the sale of

real estate with Linda M. Edleman on or about July 7, 1999.  A true and correct copy of the standard

agreement is attached hereto as Exhibit "A" and is incorporated by reference.

2.    The aforesaid agreement sets forth the following, in relevant part:

**26.    _RELEASE (7-96)_** - *Buyer hereby releases, quit claims and forever discharges SELLER,
ALL AGENTS, their SUBAGENTS, EMPLOYEES, and any OFFICER or PARTNER of any one of them and
any other PERSON, FIRM, or CORPORATION who may be liable by or through them, from any and all
claims, losses or demands, including, but not limited to, personal injuries and property damage and all of
the consequences thereof, whether now known or not, which may arise from the presence of termites or*

**NOTICES**

68   6. **MORTGAGE CONTINGENCY (1-98)** HAS THIS BEEN MORTGAGE LIMITED OPTIONS

69   ☐ WAIVED. This sale is NOT contingent on mortgage financing.

70   ☒ ELECTED

71   (A) This sale is contingent upon Buyer obtaining mortgage financing as follows:

72   1. Amount of mortgage loan $160,000

73   2. Minimum Term 30 years $165,000 Jon KAM

74   3. Type of mortgage VA

75   4. Interest rate 13 %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender not to

76   exceed a maximum interest rate of 8.5 %.

77   5. Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding

78   any mortgage insurance premiums or VA funding fee) not to exceed ____ % of the mortgage loan amount.

79   The interest rate and fees provisions required by Buyer is satisfied if a mortgage lender makes available to Buyer the right to guarantee an

80   interest rate at or below the Maximum Interest Rate specified herein with the percentage fees at or below the amount specified therein. Buyer

81   gives Seller the right, at Seller's sole option and as permitted by the lending institution and applicable laws, to contribute financially, without

82   promise of reimbursement, to the Buyer and/or lender to make the above terms available to Buyer.

83   (B) Within 10 days of the execution of this Agreement, buyer shall make a completed, written mortgage application to a responsible mortgage lend-

84   ing institution through the office of Agent for Buyer, if any, otherwise through the office of Subagent for Seller, if any, or Agent for Seller, if

85   any. This Agent is authorized to communicate with the lender for the purposes of assisting in the mortgage loan process.

86   (C) 1. Upon receipt of a mortgage commitment, Buyer and/or Agent will promptly deliver a copy of the commitment to Agent for Seller, if any,

87   otherwise to Seller.

88   2. Mortgage commitment date _____ Aug 15, 1999 _____. If a written commitment is not received by

89   Agent for Seller, if any, otherwise by Seller, by the above date, Buyer and Seller agree to extend the commitment date until Seller ter-

90   minates this Agreement in writing.

91   3. Seller has the option to terminate this Agreement in writing on or after the mortgage commitment date, if the mortgage commitment:

92   a. Is not valid until the date of settlement, OR

93   b. Is conditioned upon the sale and settlement of any other property, OR

94   c. Contains any other condition not specified in this Agreement.

95   4. In the event Seller does not terminate this Agreement as provided above, Buyer has the option to terminate this Agreement in writing if

96   the mortgage commitment:

97   a. Is not obtained by or valid until the date of settlement, OR

98   b. Is conditioned upon the sale and settlement of any other property which do not occur by the date of settlement, OR

99   c. Contains any other condition not specified in this Agreement which Buyer is unable to satisfy by the date of settlement.

100   5. If this Agreement is terminated as specified in paragraphs 6 (C)(2), (3), or (4), all deposit monies paid on account of purchase price shall

101   be returned to Buyer. Buyer will be responsible for any premiums for mechanics lien insurance and/or title search; or fee for cancellation

102   of same, if any; AND/OR any premiums for flood insurance and/or fire insurance with extended coverage; insurance binder charges or

103   cancellation fee, if any; AND/OR any appraisal fees and charges paid in advance to mortgage lender.

104   (D) If the mortgage lender requires repairs to the Property, Buyer will, upon receipt, deliver a copy of the mortgage lender's requirements to Agent

105   for Seller, if any, otherwise to Seller. Seller shall, within 5 days of receipt of the lender's requirements, notify Buyer whether Seller shall make

106   the required repairs at Seller's expense.

107   1. If Seller chooses to make repairs, Buyer shall accept the Property and agree to the RELEASE set forth in paragraph 26 of this Agreement.

108   2. If Seller chooses not to make the required repairs, Buyer will, within 5 days, notify Seller in writing of Buyer's choice to terminate the

109   Agreement of Sale OR make the required repairs at Buyer's expense and with Seller's permission, which shall not be unreasonably with-

110   held. If Seller denies Buyer permission to make the required repairs, Buyer may, within 5 days of Seller's denial, terminate this Agreement,

111   If Buyer terminates this Agreement, all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this

112   Agreement of Sale will be NULL and VOID.

113   (E) Seller Assist

114   ☒ NOT APPLICABLE

115   ☐ APPLICABLE. Seller shall pay:

116   ☐ $_____ maximum, toward Buyer's costs as permitted by the mortgage lender.

117   ☐ _____

118   ☐ _____

119

120   **FHA/VA, IF APPLICABLE** $165,000 Jon KAM

121   (F) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer shall not be obligated to complete the purchase of the

122   Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer has been given, in accor-

123   dance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner, Veterans Administration, or a Direct

124   Endorsement Lender setting forth the appraised value of the Property of not less than $160,000 (the dollar amount to be

125   inserted is the sales price as stated in the Agreement). Buyer shall have the privilege and option of proceeding with consummation of the con-

126   tract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the

127   Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. Buyer should

128   satisfy himself/herself that the price and condition of the Property are acceptable.

129   Warning:  Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development provides, "Whoever, for the purpose of . . . influ-

130   encing in any way the action of such department . . . makes, passes, utters or publishes any statement knowing the same to be false . . . shall be

131   fined not more than $5,000 or imprisoned not more than two years, or both".

132   (G) U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS:

133   **THE IMPORTANCE OF A HOME INSPECTION**

134   HUD does not warrant the condition of a property. (See Notices and Property Condition Inspections.)

135   (H) Certification  We, the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for purchase are

136   true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in connection with this transac-

137   tion is attached to this Agreement of Sale.

138   7. **INSPECTIONS (1-98)**

139   (A) Seller hereby agrees to permit inspections by authorized appraisers, reputable certifiers, insurer's representatives, surveyors, municipal officials

140   and/or Buyer as may be required by the lending institutions, if any, or insuring agencies. Seller further agrees to permit any other inspections

141   required by or provided for in the terms of this Agreement.

142   (B) Buyer reserves the right to make a pre-settlement walk-through inspection of the Property. Buyer's right to make this inspection is not waived

143   by any other provision of this Agreement.

144   (C) Seller will have heating and all utilities (including fuel(s)) on for the inspections.

145   8. **PROPERTY INSPECTION CONTINGENCY (1-98)**

146   ☐ WAIVED.  Buyer understands that Buyer has the option to request inspections of the Property (see Property Inspection and Environmental

147   Notices). BUYER WAIVES THIS OPTION and agrees to the RELEASE set forth in paragraph 26 of this Agreement.

148   Buyer Initials: KAM DM          A/S Residential Page 2 of 8          Seller Initials: ___

### NOTICE TO BUYERS SEEKING MORTGAGE FINANCING

The appraised value of the Property is used in determining the maximum amount of the mortgage loan and may be different from the purchase price and/or market value.

### NOTICES AND INFORMATION ON PROPERTY CONDITION INSPECTIONS

**U.S. Department of Housing and Urban Development**

**FHA Loans: PROPERTY INSPECTION NOTICE Importance of Home Inspections**
The U.S. Department of Housing and Urban Development (HUD) does not warrant the value or condition of a home. While HUD's FHA (the Federal Housing Administration) program requires the lender to have an appraiser determine the value of the property, it is an estimate only and is used to determine the amount of mortgage FHA will insure and all the conditions of the property makes it eligible for FHA mortgage insurance. This is not, however, a guarantee that the property is free of defects.

As the purchaser (buyer), you should carefully examine the property or have it inspected by a qualified home inspection company to make sure that the condition is acceptable to you. You should do this before you sign the sales agreement (this document) or make the contract contingent on the inspection. If repairs are needed, you may negotiate with the seller about having them done.

There is no requirement that you hire an inspector. If you choose to, the cost of the inspection up to $200 may be included in your mortgage loan. Names of home inspection companies can be found in the yellow pages of your telephone directory under the heading, "Home Inspection Services."

If you believe you have been subject to discrimination because of your race, color, religion, sex, handicap, familial status, or national origin, you should call the HUD Fair Housing and Equal Opportunity Complaint Hotline (800) 669-9777.

This statement must be delivered to you at the time of initial loan application. Return one copy to your lender as proof of notification and keep one copy for your records.

You, the borrower(s), must be certain that you understand the transaction. Seek professional advice if you are uncertain.

### PROPERTY INSPECTION NOTICES

**Property Inspection:** A general inspection of the Property can normally be handled by a local home inspection service and may include inspections of: structural components; roof; exterior windows and exterior trim; plumbing; appliances; electrical; plumbing, heating, and cooling systems; water penetration; and any other items of particular concern. Other inspections might include: Environmental Hazards (e.g., Asbestos, Ureaformaldehyde Foam Insulation, Underground Storage Tanks, Electromagnetic Fields); Wetlands Inspection, Flood Plain Verification, Property Boundary/Square Footage Verification; and any other items. Buyer is advised to investigate easements, deed and use restrictions that apply to the Property and to review local ordinances.

**Flood Plains:** If the Property is located in a flood area, the owner may be required to obtain additional insurance.

**Property Boundary / Square Footage:** Buyer is advised that Seller has not had the Property surveyed and that any fences, hedges, walls and other natural or constructed barriers may or may not represent the true lines of the Property. Buyer is also advised that any numerical representations of square footage of the structure(s) and/or land are approximations and likely to be inaccurate. Buyer is advised to engage a professional surveyor or obtain an independent measurement of the structure(s) and/or land size if the Buyer wishes to make this sale contingent on Buyer's approval of the Property's boundaries or square footage.

**Water Service:** Buyer may elect to have any water service inspected by a professional water testing company. In addition, on-site water systems may have requirements set by the municipality or the mortgage lender.

**Wood-Destroying Insect Infestation:** Insects whose primary source of food is wood, such as termites, wood-boring beetles, carpenter ants, carpenter bees, and certain other insects, can cause damage to the wood structure of a residence. Termite and Pest Control companies are available to make inspections to determine whether wood-destroying insects are present. Because of the way these insects function, damage to wood may be hidden. Careful selection should be made of skilled experts in the termite/pest control field to insure a proper determination of whether wood-boring insects or resultant damage is present.

### ENVIRONMENTAL NOTICES

**Asbestos:** The heat-resistant and durable nature of asbestos makes it useful in construction and industry. The physical properties that give asbestos its resistance to heat and decay are linked with several adverse human health effects. Asbestos can easily break into microscopic fibers that can remain suspended in the air for long periods of time. When inhaled, these fibers easily penetrate body tissue. Asbestos is known to cause Asbestosis and various forms of cancer. Inquiries or requests for more information about asbestos can be directed to the United States Environmental Protection Agency, 841 18th Street N.W., Washington, D.C. 20207, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health, Harrisburg, PA 17120.

**Electromagnetic Fields:** Electromagnetic Fields (EMFs) occur around all electrical appliances and power lines. Conclusive evidence that EMFs pose health risks does not exist at present, and Pennsylvania has no laws regarding this issue.

**Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's responsibility to dispose of them properly. For more information and a list of hazardous substances, contact U.S. Environmental Protection Agency, 401 18th Street N.W., Washington, D.C. 20207, (202) 634-7740.

**Ureaformaldehyde Foam Insulation (UFFI):** Ureaformaldehyde Foam Insulation (UFFI) is a thermal insulation material that is manufactured at the site of installation and pumped into the space in the walls of the building being insulated. UFFI can release formaldehyde gas into the interiors of the buildings in which it is installed. Adverse health effects linked to exposure to UFFI are cancer, acute illness such as eye, nose, and throat irritation, and sensitization. Although a 1982 ban of future sales of UFFI by the U.S. Consumer Product Safety Commission was overturned in 1983 because the health risk was not established as "unreasonable," it is recommended that prospective buyers be informed if UFFI is present or has been present on the property. Tests can be conducted to determine the concentration of formaldehyde gas present in a structure, as well as to measure the presence and toxicity of UFFI. The cost of removing UFFI will vary with the design of the construction and the accessibility of the insulation. Information regarding tests and testing procedures can be obtained by writing the U.S. Consumer Product Safety Commission, Office of the Secretary, Third Floor, 5401 Westbard Avenue, Bethesda, MD 20207.

**Wetlands:** Wetlands are protected by both the federal and state governments. Buyer may wish to have the Property inspected by an environmental engineer to determine if permits for plans to build, improve, or develop the property would be affected or denied because of wetlands.

149  ☒  ELECTED
150  (A)  Within __10__ days of the execution of this Agreement, Buyer, at Buyer's expense, may choose to make inspections and/or certifications com-
151  pleted by licensed or otherwise qualified professionals (see Property Inspection and Environmental Notices). Other provisions of this
152  Agreement may provide for inspections and/or certifications that are not waived or altered by Buyer's election here. If Buyer is not satisfied
153  with the condition of the Property as stated in any written report, Buyer will, within the time given for completing inspections:
154  ☐  Option 1
155      1.  Accept the Property with the information stated in the report(s) and agree to the RELEASE set forth in paragraph 26 of this
156          Agreement, OR
157      2.  Terminate the Agreement of Sale in writing by notice to Agent for Seller, if any, otherwise to Seller, within the time given for inspection,
158          in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement will
159          be NULL and VOID.
160  ☐  Option 2
161      1.  Accept the Property with the information stated in the report(s) and agree to the RELEASE set forth in paragraph 26 of this
162          Agreement, UNLESS the total cost to correct the conditions contained in the report(s) is more than $ __1,000.__
163      2.  If the total cost to correct the conditions contained in the report(s) EXCEEDS the amount specified in paragraph 8(A) (Option 2) 1.
164          Buyer will deliver the report(s) to Agent for Seller, if any, otherwise to Seller, within the time given for inspection.
165          a.  Seller will, within __5__ days of receiving the report(s), inform Buyer in writing of Seller's choice to:
166              1)  Make repairs before settlement so that the remaining cost to repair conditions contained in the report(s) is less than or equal to
167                  the amount specified in paragraph 8 (A) (Option 2) 1.
168              2)  Credit Buyer at settlement for the difference between the estimated cost of repairing the conditions contained in the report(s)
169                  and the amount specified in paragraph 8 (A) (Option 2) 1. This option must be acceptable to the mortgage lender, if any.
170              3)  Not make repairs and not credit Buyer at settlement for any defects in conditions contained in the report(s).
171          b.  If Seller chooses to make repairs or credit Buyer at settlement as specified in paragraph 8 (A) (Option 2) 2, Buyer shall accept the
172              Property and agree to the RELEASE set forth in paragraph 26 of this Agreement.
173          c.  If Seller chooses not to make repairs and not to credit Buyer at settlement, or if Seller fails to choose any option within the time
174              given, Buyer will within __5__ days:
175              1)  Accept the Property with the information stated in the report(s) and agree to the RELEASE set forth in paragraph 26 of this
176                  Agreement, OR
177              2)  Terminate the Agreement of Sale in writing by notice to Agent for Seller, if any, otherwise to Seller, in which case all deposit
178                  monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and
179                  VOID.
180  (B)  Buyer's failure to exercise any of Buyer's options within the time limits specified in this paragraph shall constitute a WAIVER of this
181       contingency and Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement.
182  9.  WOOD INFESTATION CONTINGENCY (1-98)
183  ☐  WAIVED.  Buyer understands that Buyer has the option to request that the Property be inspected for wood infestation by a certified Pest Control
184       Operator. BUYER WAIVES THIS OPTION and agrees to the RELEASE set forth in paragraph 26 of this Agreement.
185  ☒  ELECTED
186  (A)  Within __75__ days of the execution of this Agreement,
187      ☒  Buyer, at Buyer's expense,
188      ☐  Buyer, at Seller's expense, not to exceed $ _____
189       shall obtain a written "Wood-Destroying Insect Infestation Inspection Report" from a certified Pest Control Operator and will deliver it and all
190       supporting documents and drawings provided by the Pest Control Operator to Agent for Seller, if any, otherwise to Seller. The report is to be
191       made satisfactory to and in compliance with applicable laws, mortgage and lending institutions, and/or Federal Insuring and Guaranteeing
192       Agency requirements, if any. The inspection will include all readily visible and accessible areas of all structures on the Property except the fol-
193       lowing structures, which will not be inspected: _____
194       _____
195  (B)  If the inspection reveals evidence of active infestation(s), Seller agrees, at Seller's expense and before settlement, to treat for active infestation(s),
196       in accordance with applicable laws.
197  (C)  If the inspection reveals damage from active infestation(s) or previous infestation(s), Buyer, at Buyer's expense, has the option to obtain a writ-
198       ten report by a professional contractor, home inspection service, or structural engineer that is limited to structural damage to the Property caused
199       by wood-destroying organisms and a proposal to repair the damage. Buyer will deliver the structural damage report and corrective proposal to
200       Agent for Seller, if any, otherwise to Seller, within _____ days of delivering the original inspection report.
201  (D)  Within 5 days of receiving the structural damage report and corrective proposal, Seller shall advise Buyer whether Seller will repair, at Seller's
202       expense and before settlement, any structural damage from active or previous infestation(s).
203  (E)  If Seller chooses to repair structural damage revealed by the report, Buyer agrees to accept the Property as repaired and agrees to the RELEASE
204       set forth in paragraph 26 of this Agreement.
205  (F)  If Seller chooses not to repair structural damage revealed by the report, Buyer, within 5 days of receiving Seller's notice, will notify Seller in
206       writing of Buyer's choice to:
207      1.  Accept the Property with the defects revealed by the inspection, without abatement of price and agree to the RELEASE set forth in para-
208          graph 26 of this Agreement, OR
209      2.  Make the repairs before settlement, if required by the mortgage lender, if any, at Buyer's expense and with Seller's permission, which shall
210          not be unreasonably withheld, in which case Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this
211          Agreement. If Seller denies Buyer permission to make the repairs, Buyer may, within 5 days of Seller's denial, terminate this Agreement.
212          If Buyer terminates this Agreement, all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this
213          Agreement of Sale will be NULL and VOID, OR
214      3.  Terminate this Agreement, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and
215          this Agreement of Sale will be NULL and VOID.
216  (G)  Buyer's failure to exercise any of Buyer's options within the time limits specified in this paragraph shall constitute a WAIVER of this
217       contingency and Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement.
218  10.  CERTIFICATE OF OCCUPANCY (1-98)
219  ☒  NOT APPLICABLE
220  ☐  APPLICABLE
221  (A)  Buyer and Seller acknowledge that a certificate permitting occupancy of the Property may be required by the municipality and/or govern-
222       mental authority.
223  (B)  If a certificate is required, Seller shall, at Seller's expense and within _____ days of the execution of this Agreement, order the certificate for
224       delivery to Buyer on or before settlement.
225  (C)  In the event repairs/improvements are required for the issuance of the certificate, Seller shall, within 5 days of Seller's receipt of the require-
226       ments, notify Buyer of the requirements and whether Seller shall make the required repairs/improvements at Seller's expense.
227  (D)  If Seller chooses not to make the required repairs/improvements, Buyer will, within 5 days, notify Seller in writing of Buyer's choice to
228       terminate the Agreement of Sale OR make the repairs/improvements at Buyer's expense and with Seller's permission, which shall not be unrea-
229       sonably withheld. If Seller denies Buyer permission to make the required repairs, Buyer may, within 5 days of Seller's denial, terminate this
230       Agreement. If Buyer terminates this Agreement, all deposit monies paid on account of purchase price shall be returned promptly to Buyer and
231       this Agreement of Sale will be NULL and VOID.
232  11.  RESIDENTIAL LEAD-BASED PAINT HAZARD REDUCTION ACT NOTICE REQUIRED FOR PROPERTIES
233       BUILT BEFORE 1978 (1-98)
234  ☒  NOT APPLICABLE
235  ☐  APPLICABLE
236  (A)  Seller represents that:  (check 1 OR 2)
237      ☐ 1.  Seller has no knowledge concerning the presence of lead-based paint and/or lead-based paint hazards in or about the Property.
238      ☐ 2.  Seller has knowledge of the presence of lead-based paint and/or lead-based paint hazards in or about the Property. (Provide the basis for
239            determining that lead-based paint and/or hazards exist, the location(s), the condition of the painted surfaces, and other available informa-
240            tion concerning Seller's knowledge of the presence of lead-based paint and/or lead based paint hazards.) _____
241            _____
242            _____
243            _____
244
245  Buyer Initials: __KAM JPM__                     A/S Residential Page 3 of 8                     Seller Initials: __SE__

246 (B) Records/Reports (check 1 OR 2)
247 □ 1. Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in or about the Property.
248 □ 2. Seller has provided Buyer with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in or about
249 the Property. (List documents)

251 (C) Buyer's Acknowledgment
252 □ 1. Buyer has received the pamphlet *Protect Your Family from Lead in Your Home* and has read the Lead Warning Statement contained in this
253 Agreement (See Environmental)
254 Buyer's Initials _____ Date _____

255 □ 2. Buyer has reviewed Seller's disclosure of known lead-based paint and/or lead-based paint hazards, as identified in paragraph 11(A) and
256 has received the records and reports pertaining to lead-based paint and/or lead-based paint hazards identified in paragraph 11(B).
257 Buyer's Initials _____ Date _____

258 (D) RISK ASSESSMENT/INSPECTION. Buyer acknowledges that before Buyer is obligated to buy a residential dwelling, built before 1978,
259 Buyer has a 10 day period (unless Buyer and Seller agree, in writing, to a different period of time) to conduct a risk assessment or inspection of
260 the Property for the presence of lead-based paint and/or lead-based paint hazards, or the presence of lead-based paint and/or its hazards.
261 □ WAIVED. Buyer understands that Buyer has the right to conduct a risk assessment or inspection of the Property to determine the presence of
262 lead-based paint and/or lead-based paint hazards. BUYER WAIVES THIS RIGHT and agrees to the RELEASE set forth in paragraph 26 of
263 this Agreement.
264 □ ELECTED
265 1. Buyer, at Buyer's expense, chooses to obtain a risk assessment and/or inspection of the Property for lead-based paint and/or lead-based
266 paint hazards. The risk assessment and/or inspection shall be completed within _____ days of the execution of this Agreement of Sale.
267 (insert "10" unless Buyer and Seller agree to a different period of time).
268 2. Within the time set forth above, for obtaining the risk assessment and/or inspection of the Property for lead-based paint and/or
269 lead-based paint hazards, Buyer may deliver to Agent for Seller, if any, otherwise to Seller, a written list of the specific hazardous
270 conditions cited in the report and those corrections requested by Buyer, along with a copy of the risk assessment and/or inspection report.
271 3. Seller may, within _____ days of receiving the list and report(s), submit a written corrective proposal to Buyer. The corrective proposal
272 will include, but not be limited to, the name of the remediation company and a completion date for corrective measures. Seller will pro-
273 vide certification from a risk assessor or inspector that corrective measures have been made satisfactorily on or before the completion date.
274 4. Upon receiving the corrective proposal, Buyer, within 5 days, will:
275 a. Accept the corrective proposal and the Property in writing, and agree to the RELEASE set forth in paragraph 26 of this Agreement,
276 OR
277 b. Terminate this Agreement in writing, in which case all deposit monies paid on account of purchase price shall be returned promptly
278 to Buyer and this Agreement of Sale will be NULL and VOID.
279 5. Should Seller fail to submit a written corrective proposal within the time set forth in paragraph 11(D)3 of this Agreement, then Buyer,
280 within 5 days, will:
281 a. Accept the Property in writing, and agree to the RELEASE set forth in paragraph 26 of this Agreement, OR
282 b. Terminate this Agreement of Sale in writing, in which case all deposit monies paid on account of purchase price shall be returned
283 promptly to Buyer and this Agreement of Sale will be NULL and VOID.
284 6. Buyer's failure to exercise any of Buyer's options within the time limits specified in this paragraph shall constitute a WAIVER of
285 this contingency and Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement.
286 (E) Certification By signing this Agreement, Buyer and Seller certify the accuracy of their respective statements, to the best of their knowledge.

287 **12. RADON CONTINGENCY (1-98)**
288 (A) Seller represents that: (check appropriate response(s))
289 □ 1. Seller has no knowledge concerning the presence or absence of radon.
290 □ 2. Seller has knowledge that the Property was tested on the dates, by the methods (e.g., charcoal canister, alpha track, etc.), and with the
291 results of all tests indicated below:
292 DATE          METHOD          RESULTS (picoCuries/liter or working levels)
293 _____   _____     _____
294 _____   _____     _____
295 _____   _____     _____
296 COPIES OF ALL AVAILABLE TEST REPORTS will be delivered to Buyer with this Agreement. SELLER DOES NOT WARRANT
297 EITHER THE METHODS OR RESULTS OF THE TESTS.
298 □ 3. Seller has knowledge that the Property underwent radon reduction measures on the date(s) and by the method(s) indicated below:
299 DATE          RADON REDUCTION METHOD
300 _____   _____
301 _____   _____
302
303 □ WAIVED. Buyer understands that Buyer has the option to request that the Property be inspected for radon by a certified inspector (see Radon
304 Notice). BUYER WAIVES THIS OPTION and agrees to the RELEASE set forth in paragraph 26 of this Agreement.
305 □ ELECTED
306 (B) Buyer, at Buyer's expense, has the option to obtain, from a certified inspector, a radon test of the Property and will deliver a copy of the test
307 report to Agent for Seller, if any, otherwise to Seller, within _____ days of the execution of this Agreement. (See Radon Notice.)
308 1. If the test report reveals the presence of radon below 0.02 working levels (4 picoCuries/liter), Buyer accepts the Property and agrees to the
309 RELEASE set forth in paragraph 26 of this Agreement.
310 2. If the test report reveals the presence of radon at or exceeding 0.02 working levels (4 picoCuries/liter), Buyer will, within _____ days.
311 of receipt of the test results:
312 □ Option 1
313 a. Accept the Property in writing and agree to the RELEASE set forth in paragraph 26 of this Agreement, OR
314 b. Terminate this Agreement in writing, in which case all deposit monies paid on account of purchase price shall be returned promptly
315 to Buyer and this Agreement of Sale will be NULL and VOID, OR
316 c. Submit a written, corrective proposal to Agent for Seller, if any, otherwise to Seller. The corrective proposal will include, but not be
317 limited to, the name of the certified mitigation company; provisions for payment, including retests; and completion date for correc-
318 tive measures.
319 1) Within 5 days of receiving the corrective proposal, Seller will:
320 a) Agree to the terms of the corrective proposal in writing, in which case Buyer accepts the Property and agrees to the
321 RELEASE set forth in paragraph 26 of this Agreement, OR
322 b) Not agree to the terms of the corrective proposal.

NOTICES

**Lead: (For Properties built before 1978)**

**Lead Warning Statement:** Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to [illegible] women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**Lead Hazard Disclosure Requirements:** In accordance with the [illegible] Lead-Based [illegible] Reduction Act, any seller of property built before 1978 must provide the buyer with an EPA-approved lead hazard information pamphlet titled *Protect Your Family From Lead in Your Home* and must disclose to the buyer and the seller's agent the known presence of lead-based paint and/or lead-based paint hazards in or on the property being sold, including the basis used for determining that lead-based paint and/or lead-based paint hazards exist, the location of lead-based paint and/or lead-based paint hazards, and the condition of painted surfaces. Any seller of a pre-1978 structure must also provide the buyer with any records or reports available to the seller regarding lead-based paint or lead-based paint hazards in or about the property being sold, the common areas, or other residential dwellings in multi-family housing. The Act further requires that before a buyer is obligated to purchase any housing constructed prior to 1978, the seller shall give the buyer 10 days (unless buyer and seller agree in writing to another time period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards. The opportunity to conduct a risk assessment or inspection may be waived by the buyer, in writing. Neither testing nor abatement is required of the seller. Housing built in 1978 or later is not subject to the Act.

**Radon:** Radon is a natural, radioactive gas that is produced in the ground by the normal decay of uranium and radium. Studies indicate that extended exposure to high levels of radon gas can increase the risk of lung cancer. Radon can find its way into any air-space, including basements and crawl spaces and can permeate [illegible] Environmental Protection Agency (EPA) advises corrective action if the annual average exposure to radon exceeds 0.02 working levels [illegible]. If a house has a radon problem, it usually can be cured by increased ventilation and/or by preventing radon entry. Any person who tests, mitigates, or safeguards a building for radon in Pennsylvania must be certified by the Department of Environmental Protection. Information about radon [illegible] about certified testing or mitigation firms is available through DEP, Bureau of Radiation Protection, P.O. Box 2063, Harrisburg, PA 17120, (800) 23RADON or (717) 783-3594.

2) Should Seller not agree to the terms of the corrective proposal or fail to respond within the given time, Buyer will, within 5 days, elect to:
    a) Accept the Property in writing and agree to the RELEASE set forth in paragraph 26 of this Agreement, OR
    b) Terminate this Agreement in writing, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID.

  ☒ Option 2
    a. Accept the Property in writing and agree to the RELEASE set forth in paragraph 26 of this Agreement, OR
    b. Submit a written, corrective proposal to Agent for Seller, if any, otherwise to Seller. The corrective proposal will include, but not be limited to, the name of the certified remediation company; provision for payment, including retests; and completion date for corrective measures. Seller shall pay a maximum of $_____ toward the total cost of remediation and retests, which shall be completed by settlement.
      1) If the total cost of remediation and retests EXCEEDS the amount specified in paragraph 12(B) (Option 2) b, Seller will, within 5 days of receipt of the cost of remediation, notify Buyer of Seller's choice to pay for the total cost of remediation and retests, OR not pay for the total cost of remediation and retests.
      2) If the Seller chooses not to pay for the total cost of remediation and retests, Buyer will, within 5 days of receipt of Seller's notification, notify Seller, in writing, of Buyer's choice to:
        a) Pay the difference between Seller's contribution to remediation and retests and the actual cost thereof, in which case Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement, OR
        b) Terminate this Agreement, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID.
(C) Buyer's failure to exercise any of Buyer's options within the time limits specified in this paragraph shall constitute a WAIVER of this contingency and Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement.

**13.  STATUS OF WATER (1-98)**
(A) Seller represents that this property is served by:
  ☒ Public Water
  ☐ On-site Water
  ☐ Community Water
  ☐ None

(B) WATER SERVICE INSPECTION CONTINGENCY
  ☐ WAIVED. Buyer acknowledges that Buyer has the option to request an inspection of the water service for the Property. BUYER WAIVES THIS OPTION and agrees to the RELEASE set forth in paragraph 26 of this Agreement.
  ☒ ELECTED
    1. Buyer has the option, within ____ days of the execution of this Agreement and at Buyer's expense, to deliver to Agent for Seller, if any, otherwise to Seller, a written inspection report by a qualified, professional water testing company of the quality and/or quantity of the water service.
    2. Seller agrees to locate and provide access to the on-site (or individual) water system, if applicable, at Seller's expense, if required by the inspection company. Seller also agrees to restore the Property prior to settlement.
    3. If the report reveals that the water service does not meet the minimum standards of any applicable governmental authorities and/or fails to satisfy the requirements for quality and/or quantity set by the mortgage lender, if any, then Seller shall, within **5** days of receipt of the report, notify Buyer in writing of Seller's choice to:
      a. Upgrade the water service to the minimum acceptable levels, before settlement, in which case Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement, OR
      b. Not upgrade the water service.
    4. If Seller chooses not to upgrade the water service to minimum acceptable levels, Buyer will, within **5** days of Seller's notice not to correct, either:
      a. Accept the Property and the water service and, if required by the mortgage lender, if any, and/or any governmental authority, upgrade the water service before settlement or within the time required by the mortgage lender, if any, and/or any governmental authority, at Buyer's expense and with Seller's permission, which shall not be unreasonably withheld, and agree to the RELEASE set forth in paragraph 26 of this Agreement. If Seller denies Buyer permission to upgrade the water service, Buyer may, within 5 days of Seller's denial, terminate this Agreement. If Buyer terminates this Agreement, all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID, OR
      b. Terminate this Agreement, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID.
    5. Buyer's failure to exercise any of Buyer's options within the time limits specified in this paragraph shall constitute a WAIVER of this contingency and Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement.

**14.  STATUS OF SEWER (1-98)**
(A) Seller represents that Property is served by:
  ☒ Public Sewer
  ☐ Individual On-lot Sewage Disposal System (See Sewage Notice 1)
  ☐ Individual On-lot Sewage Disposal System in Proximity to Well (See Sewage Notice 4, if applicable)
  ☐ Community Sewage Disposal System
  ☐ Ten-acre Permit Exemption (See Sewage Notice 2)
  ☐ Holding Tank (See Sewage Notice 3)
  ☐ None (See Sewage Notice 1)
  ☐ None Available/Permit Limitations in Effect (See Sewage Notice 5)

(B) INDIVIDUAL ON-LOT SEWAGE DISPOSAL INSPECTION CONTINGENCY
  ☒ WAIVED. Buyer acknowledges that Buyer has the option to request an individual on-lot sewage disposal inspection of the Property. BUYER WAIVES THIS OPTION and agrees to the RELEASE set forth in paragraph 26 of this Agreement.
  ☐ ELECTED
    1. Buyer has the option, within _____ days of the execution of this Agreement and at Buyer's expense, to deliver to Agent for Seller, if any, otherwise to Seller, a written inspection report by a qualified, professional inspector of the individual on-lot sewage disposal system.
    2. Seller agrees to locate and provide access to the individual on-lot sewage disposal system, and, if required by the inspection company, empty the septic tank, at Seller's expense. Seller also agrees to restore the Property prior to settlement.
    3. If the report reveals defects that do not require expansion or replacement of the existing sewage disposal system, Seller shall, within _____ days of receipt of the report, notify Buyer in writing of Seller's choice to:
      a. Correct the defects before settlement, including retests, at Seller's expense, in which case Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement, OR
      b. Not correct the defects, in which case Buyer will, within _____ days of Seller's notice not to correct the defects, either:
        1) Accept the Property and the system and, if required by the mortgage lender, if any, and/or any governmental authority, correct the defects before settlement or within the time required by the mortgage lender, if any, and/or any governmental authority, at Buyer's sole expense and with Seller's permission, which shall not be unreasonably withheld, and agree to the RELEASE set forth in paragraph 26 of this Agreement. If Seller defects Buyer permission to correct the defects, Buyer may, within 5 days of Seller's denial, terminate this Agreement. If Buyer terminates this Agreement, all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID, OR
        2) Terminate this Agreement in writing, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID.
    4. If the report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____ days of receipt of the report, submit a corrective proposal to Agent for Buyer, if any, otherwise to Buyer. The corrective proposal will include, but not be limited to, the name of the remediation company; provisions for payment, including retests; and completion date for corrective measures. Within 5 days of receiving Seller's corrective proposal, or if no corrective proposal is received within the given time, Buyer will:
      a. Agree to the terms of the corrective proposal, if any, in writing, in which case Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement, OR

# SEWAGE NOTICES

## NOTICES PURSUANT TO THE PENNSYLVANIA SEWAGE FACILITIES [illegible]

**NOTICE 1:** **THERE IS NO CURRENTLY EXISTING COMMUNITY SEWAGE SYSTEM AVAILA[illegible] FOR THE SUBJECT PROPERTY.** Section 7 of the Pennsylvania Sewage Facilities Act provides that no person shall inst[illegible] disposals for construction, alter, repair or occupy any building or structure for which an individual sewage [illegible] to be [illegible] wit[illegible]rst obtaining a permit. Buyer is advised by this notice that, before signing this Agreement of Sale, B[illegible] should c[illegible]act the loc[illegible] charged with administering the Act to determine the procedure and requirements for obt[illegible]ng a perm[illegible] sev[illegible]. The local agency charged with administering the Act will be the municipality where the [illegible] cate[illegible] municip[illegible]ty working cooperatively with others.

**NOTICE 2:** **THIS PROPERTY IS SERVICED BY AN INDIVIDUA[illegible] WAGE SYSTEM [illegible]ED UNDER THE TEN-ACRE PERMIT EXEMPTION PROVISIONS OF SECTION 7 [illegible] THE [illegible]NSYLVA[illegible] SEW[illegible] FACILITIES ACT.** (Section 7 provides that a permit may not be required before installin[illegible] con[illegible] a [illegible]'s con[illegible]or construction, altering, repairing or connecting to an individual sewage system where a ten-acre [illegible] lo[illegible] ivi[illegible] tract after January 10, 1987). Buyer is advised that soils and site testing were not conducted a[illegible] ould the [illegible] the owner of the Property or properties serviced by the system at the time of a malfunction ma[illegible] for any c[illegible]ation, pollution, public health hazard or nuisance which occurs as a result.

**NOTICE 3:** **THIS PROPER[illegible]VICED B[illegible] OLDING TANK (PERMANENT OR TEMPORARY) TO WHICH SEWAGE IS CONVEYED BY [illegible]YING SY[illegible] AND WHICH IS DESIGNED AND CONSTRUCTED TO FACILITATE ULTIMATE DISPOSAL [illegible] HE SE[illegible] AT ANO[illegible]ER SITE.** Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history [illegible] ann[illegible]st of mai[illegible]g the tank from the date of its installation or December 14, 1995, whichever is later.

**NOTIC[illegible]:** **AN [illegible] SYSTEM HAS BEEN INSTALLED AT AN ISOLATION DISTANCE FROM A WELL THAT IS LESS [illegible]HAN [illegible] DIS[illegible] SPECIFIED BY REGULATION.** The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal iso[illegible] provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water suppl[illegible] supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the horizontal isolation [illegible]ance between the individual water supply or water supply system suction line and the perimeter of the absorption shall be 100 feet.

**NOTICE 5:** **THIS LOT IS WITHIN AN AREA IN WHICH PERMIT LIMITATIONS ARE IN EFFECT AND IS SUBJECT TO THOSE LIMITATIONS. SEWAGE FACILITIES ARE NOT AVAILABLE FOR THIS LOT AND CONSTRUCTION OF A STRUCTURE TO BE SERVED BY SEWAGE FACILITIES MAY NOT BEGIN UNTIL THE MUNICIPALITY COMPLETES A MAJOR PLANNING REQUIREMENT PURSUANT TO THE PENNSYLVANIA SEWAGE FACILITIES ACT AND REGULATIONS PROMULGATED THEREUNDER.**

b. Accept the Property and the system and, if required by the mortgage lender, if any, and/or any governmental authority, correct the defects before settlement or within the time required by the mortgage lender, if any, and/or any governmental authority, at Buyer's sole expense and with Seller's permission, which shall not be unreasonably withheld, and agree to the RELEASE set forth in paragraph 26 of this Agreement. If Seller denies Buyer permission to correct the defects, all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID, OR

c. Terminate this Agreement in writing, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID.

5. Buyer's failure to exercise any of Buyer's options within the time limits specified in this paragraph shall constitute a WAIVER of this contingency and Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement.

## 15. NOTICES & ASSESSMENTS (1-98)

(A) Seller represents as of Seller's execution of this Agreement, that no public improvement, condominium or homeowner association assessments have been made against the Property which remain unpaid and that no notice by any government or public authority has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances which remain uncorrected, and that Seller knows of no condition that would constitute violation of any such ordinances which remains uncorrected, unless otherwise specified here: _____

(B) Seller knows of no other potential notices and assessments except as follows: _____

(C) In the event notices and assessments are received after execution of this Agreement and before settlement, Seller will notify Buyer in writing, within 5 days of receiving the notice or assessment, that Seller shall:

1. Comply with notices and assessments at Seller's expense, in which case Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement, OR

2. NOT comply with notices and assessments at Seller's expense, in which case Buyer will notify Seller within 5 days in writing that Buyer shall:

a. Comply with the notices and assessments at Buyer's expense and agree to the RELEASE set forth in paragraph 26 of this Agreement, OR

b. Terminate this Agreement, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID.

If Buyer fails to notify Seller within the given time, Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement.

(D) Buyer is advised that access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

(E) If required by law, Seller shall deliver to Agent for Buyer, if any, otherwise to Buyer, on or before settlement, a certification from the appropriate municipal department or departments disclosing notice of any uncorrected violation of zoning, housing, building, safety or fire ordinances.

## 16. TITLE, SURVEYS, AND COSTS (1-98)

(A) The Property is to be conveyed free and clear of all liens, encumbrances, and easements, EXCEPTING HOWEVER the following: existing deed restrictions, building restrictions, ordinances, easements of roads, easements visible upon the ground, easements of record, privileges or rights of public service companies, if any; otherwise the title to the above described real estate shall be good and marketable and such as will be insured by a reputable Title Insurance Company at the regular rates.

(B) In the event Seller is unable to give a good and marketable title and such as will be insured by a reputable Title Company at the regular rates, as specified in paragraph 16(A), Buyer shall have the option of taking such title as Seller can give without changing the price or of being repaid all monies paid by Buyer to Seller on account of purchase price and Seller shall reimburse Buyer for any costs incurred by Buyer for those items specified in paragraph 16(C) and in paragraph 16(D) items (1), (2), (3); and in the latter event there shall be no further liability or obligation on either of the parties hereto and this Agreement shall become NULL and VOID.

(C) Any survey or surveys which may be required by the Title Insurance Company or the abstracting attorney, for the preparation of an adequate legal description of the Property (or the correction thereof), shall be secured and paid for by Seller. However, any survey or surveys desired by Buyer or required by the mortgage lender shall be secured and paid for by Buyer.

(D) Buyer shall pay for the following: (1) The premium for mechanics lien insurance and/or title search, or fee for cancellation of same, if any; (2) The premiums for flood insurance and/or fire insurance with extended coverage, insurance binder charges or cancellation fee, if any; (3) Appraisal fees and charges paid in advance to mortgage lender, if any; (4) Buyer's customary settlement costs and accruals.

## 17. ZONING CLASSIFICATION (1-98)

Failure of this Agreement to contain the zoning classification (except in cases where the property (and each parcel thereof, if subdividable) is zoned solely or primarily to permit single-family dwellings) shall render this Agreement voidable at the option of the Buyer, and, if voided, any deposits tendered by the Buyer shall be returned to the Buyer without any requirement for court action.

Zoning Classification: _____ R-1 _____

☐ ELECTED. Within _____ days of the execution of this Agreement, Buyer will verify that the existing use of the Property as _____ is permitted. In the event the use is not permitted, Buyer will, within the time given for verification, notify Agent for Seller, if any, otherwise Seller, in writing that the existing use of the Property is not permitted and this Agreement will be NULL and VOID, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer. Buyer's failure to respond within the given time shall constitute a WAIVER of this contingency and all other terms of this Agreement of Sale remain in full force and effect.

## 18. COAL NOTICE (1-98)

☑ NOT APPLICABLE
☐ APPLICABLE

THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract with the owners of the economic interests in the coal. This acknowledgment is made for the purpose of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

## 19. POSSESSION (1-98)

(A) Possession is to be delivered by deed, keys and:

1. Physical possession to a vacant building (if any) broom clean, free of debris at day and time of settlement, AND/OR

2. Assignment of existing lease(s), together with any security deposits and interest, at time of settlement, if Property is tenant occupied at the execution of this Agreement or unless otherwise specified herein. Buyer will acknowledge existing lease(s) by initialing said lease(s) at time of signing of this Agreement of Sale, if Property is tenant occupied.

(B) Seller shall not enter into any new leases, written extension of existing leases, if any, or additional leases for the Property without expressed written consent of Buyer.

## 20. RECORDING (3-85) This Agreement shall not be recorded in the Office for the Recording of Deeds or in any other office or place of public record and if Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a breach of this Agreement.

## 21. ASSIGNMENT (3-85) This Agreement shall be binding upon the parties, their respective heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto, it being expressly understood, however, that Buyer shall not transfer or assign this Agreement without the written consent of Seller.

## 22. DEPOSIT AND RECOVERY FUND (1-98)

(A) Deposits paid by Buyer within 30 days of settlement shall be by cashier's or certified check. Deposits, regardless of the form of payment and the person designated as payee, shall be paid to Agent identified in paragraph 3(F), who shall retain them in an escrow account until consummation or termination of this Agreement in conformity with all applicable laws and regulations. Agent may hold any uncashed check tendered as deposit pending the acceptance of this offer.

(B) In the event of a dispute over entitlement to deposit monies, the Agent holding the deposit is required by the Rules and Regulations of the State Real Estate Commission (49 Pa. Code §35.327) to retain the monies in escrow until the dispute is resolved. In the event of litigation for the return of deposit monies, Agent shall distribute the monies as directed by a final order of court or the written Agreement of the parties. Buyer and Seller agree that, in the event any Agent herein is joined in litigation for the return of deposit monies, the attorneys' fees and costs of the Agent(s) will be paid by the party joining the Agent.

Buyer Initials: _____   A/S Residential Page 6 of 8   Seller Initials: _____

(C) A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate licensee owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658 or (800) 822-2113 (within Pennsylvania) and (717) 783-4854 (outside Pennsylvania).

**23. CONDOMINIUM RESALE ACT NOTICE (8-98)**

☒ NOT APPLICABLE

☐ APPLICABLE

(A) Buyer acknowledges that the Property is a unit in a condominium that is primarily run by a unit owners' association.

(B) §3407 of the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of the condominium declaration (other than plats and plans), the bylaws, and the rules and regulations of the association.

(C) Within _____ days of the execution of this Agreement, Seller shall submit a request to the association for a Certificate of Resale and the documents necessary to enable Seller to comply with the Act. The Act provides that the association is required to provide these documents within 10 days of Seller's request.

(D) Under the Act, Seller is not liable to Buyer for the failure or delay of the association to provide the Certificate in a timely manner, nor is Seller liable to Buyer for any erroneous information provided by the association and included in the Certificate.

(E) Buyer may declare the Agreement of Sale VOID at any time before Buyer's receipt of the Certificate of Resale and for 5 days thereafter, OR until settlement, whichever occurs first. Buyer's notice declaring the Agreement void must be in writing; thereafter all deposit monies shall be returned to Buyer.

**24. PLANNED COMMUNITY (HOMEOWNER ASSOCIATION) NOTICE FOR PURPOSES OF RESALE ONLY (1-97)**

☒ NOT APPLICABLE

☐ APPLICABLE

(A) Buyer acknowledges that the Property is part of a planned community as defined by the Uniform Planned Community Act. (See Definition of Planned Community Notice for the definition contained in the Act).

(B) §5407(a) of the Act requires Seller to furnish Buyer with a copy of the Declaration (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the provisions set forth in §5407(a) of the Act.

(C) Within _____ days of the execution of this agreement, Seller shall submit a request to the association for a Certificate and the documents necessary to enable Seller to comply with the Act. The Act provides that the association is required to provide these documents within 10 days of Seller's request.

(D) Under the Act, Seller is not liable to Buyer for the failure or delay of the association to provide the Certificate in a timely manner, nor is Seller liable to Buyer for any erroneous information provided by the Association and included in the Certificate.

(E) Buyer may declare the Agreement of Sale VOID at any time before Buyer's receipt of the association documents and for 5 days thereafter, OR until settlement, whichever occurs first. Buyer's notice declaring the Agreement void must be in writing; thereafter all deposit monies shall be returned to Buyer.

**25. MAINTENANCE AND RISK OF LOSS (1-98)**

(A) Seller shall maintain the Property, grounds, fixtures, and any personal property specifically scheduled herein in its present condition, normal wear and tear excepted.

(B) In the event any system or appliance included in the sale of the Property fails and Seller does not repair or replace the item, Seller will promptly notify Buyer in writing of Seller's choice to:

1. Repair or replace the failed system or appliance before settlement or credit Buyer at settlement for the fair market value of the failed system or appliance (this option must be acceptable to the mortgage lender, if any). In each case, Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement.

2. Make no repairs or replacements, and not credit Buyer at settlement for the fair market value of the failed system or appliance, in which case Buyer will notify Seller in writing within 5 days or before settlement, whichever is sooner, that Buyer shall:

   a. Accept the Property and agree to the RELEASE set forth in paragraph 26 of this Agreement, OR

   b. Terminate this Agreement, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID.

(C) Seller shall bear risk of loss from fire or other casualties until time of settlement. In the event of damage by fire or other casualties to any property included in this sale that is not repaired or replaced prior to settlement, Buyer shall have the option of rescinding this Agreement and promptly receiving all monies paid on account of purchase price or of accepting the Property in its then condition together with the proceeds of any insurance recovery obtainable by Seller. Buyer is hereby notified that Buyer may insure Buyer's equitable interest in this Property as of the time of execution of this Agreement.

Buyer's failure to exercise any of Buyer's options within the time limits specified in this paragraph shall constitute a WAIVER of this contingency and Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement.

**26. RELEASE (7-96)** — Buyer hereby releases, quit claims and forever discharges SELLER, ALL AGENTS, their SUBAGENTS, EMPLOYEES, and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM, or CORPORATION who may be liable by or through them, from any and all claims, losses or demands, including, but not limited to, personal injuries and property damage and all of the consequences thereof, whether now known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. This release shall survive settlement.

**27. REPRESENTATIONS (1-98)**

(A) Buyer understands that any representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Agents or their employees are not a part of this Agreement, unless expressly incorporated or stated in this Agreement.

(B) It is understood that Buyer has inspected the Property before signing this Agreement of Sale (including fixtures and any personal property specifically scheduled herein), or has waived the right to do so, and has agreed to purchase it in its present condition unless otherwise stated in this Agreement. Buyer acknowledges that the Agents have not made an independent examination or determination of the structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, or conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems contained therein.

(C) It is further understood that this Agreement contains the whole agreement between Seller and Buyer and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale. Furthermore, this Agreement shall not be altered, amended, changed, or modified except in writing executed by the parties.

(D) The headings, captions, and line numbers in this Agreement are meant only to make it easier to find the paragraphs.

**28. DEFAULT-TIME OF THE ESSENCE (1-98)**

The said time for settlement and all other times referred to for the performance of any of the obligations of this Agreement are hereby agreed to be of the essence of this Agreement. For the purposes of this Agreement, number of days shall be counted from the date of execution, by excluding the day this Agreement was executed and including the last day of the time period. Should Buyer:

(A) Fail to make any additional payments as specified in paragraph 3; OR

(B) Furnish false or incomplete information to Seller, Agent for Seller, Agent for Buyer, or the mortgage lender, if any, concerning Buyer's legal or financial status, or fail to cooperate in the processing of the mortgage loan application, which acts would result in the failure to obtain the approval of a mortgage loan commitment; OR

(C) Violate or fail to fulfill and perform any other terms or conditions of this Agreement;

then in such case, Seller shall have the option of retaining all deposit monies and other sums paid by Buyer on account of purchase price, whether required by this Agreement or not, only as elected below: (Check only one)

☒ As liquidated damages. In this event Buyer and Seller shall be released from further liability or obligation and this Agreement shall be NULL and VOID.

☐ On account of purchase price, or as monies to be applied to Seller's damages, or as liquidated damages for such breach, as Seller may elect. In the event of liquidated damages, Buyer and Seller shall be released from further liability or obligation and this Agreement shall be NULL and VOID.

**29. AGENT(S) (1-98)** It is expressly understood and agreed between the parties that the named Agent for Seller, any Subagents, their salespeople, employees, officers and/or partners, are Agent(s) for Seller, and that the named Agent for the Buyer, their salespeople, employees, officers and/or partners, are Agent(s) for Buyer. If there is no Agent for Buyer, Agent for Seller or Subagent for Seller may perform services for Buyer in connection with financing, insurance and document preparation, with written disclosure to Buyer and Seller.

Buyer Initials: _____     A/S Residential Page 7 of 8     Seller Initials: _____

Case 1:01-cv-00773-YK    Document 07    Filed 10/18/2002    Page 24 of 41

NOTICES

## DEFINITION OF A PLANNED COMMUNITY

The Uniform Planned Community Act defines "planned community" as ...

**24. PLANNED COMMUNITY (CONDOMINIUM/OTHER ASSOCIATION) NOTICE FOR PURPOSES OF TRANSFER OF TITLE**

**25. MATERIAL DAMAGE AND RISK OF LOSS (1-98)**

**26. RELEASE (1-98)**

**27. REPRESENTATIONS (1-98)**

**28. DEFAULT: TIME OF THE ESSENCE (1-98)**

**29. AGENCY (10-98)**

## MEDIATION

**30. MEDIATION (7-96)**

☐ **NOT AVAILABLE**

☐ **WAIVED.** Buyer and Seller understand that they may choose to mediate at a later date, should a dispute arise, but that there will be no obligation on the part of any party to do so.

☒ **ELECTED**

(A) Buyer and Seller will try to resolve any dispute or claim that may arise from this Agreement of Sale through mediation, in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System. Any agreement reached through a mediation conference and signed by the parties will be binding.

(B) Buyer and Seller acknowledge that they have received, read, and understand the Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System. (See Mediation Notice.)

(C) This agreement to mediate disputes arising from this Agreement shall survive settlement.

Buyer and Seller acknowledge that they have read and understand the notices and explanatory information regarding property conditions, inspections set forth on the back of this form.

**NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Return by facsimile transmission (FAX) of this Agreement of Sale, and all addenda, bearing the signature of all parties, constitutes acceptance of this Agreement. Parties to this transaction are advised to consult an attorney before signing if they desire legal advice.

WITNESS _____ BUYER X _____ DATE 7 Feb 99

WITNESS _____ BUYER _____ DATE 7 July 99

WITNESS _____ BUYER _____ DATE

Seller hereby approves the above contract this _____ day of July A.D. 1999

WITNESS _____ SELLER X Blanche M Gellman DATE 7/9/99

WITNESS _____ SELLER _____ DATE

WITNESS _____

Seller agrees to and will pay Buyer's closing costs. Check due within 24 hours of Seller's acceptance, 7-18-99 + 8/13/99

**Services to Buyer**

In conjunction with this Agreement of Sale, by initialing below, Buyer authorizes Subagent for Seller, if any, or Agent for Seller to perform the following services on Buyer's behalf:

_____ Order Title Insurance from any reputable Title Insurance Company.
Buyer's Initials

_____ Order Homeowner's Insurance with coverage in the amount of $ _____
Buyer's Initials

_____ Order Fire & Extended Coverage Insurance with coverage in the amount of $ _____
Buyer's Initials

_____ Order Flood Insurance with coverage in the amount of $ _____
Buyer's Initials

_____ Buyer's Services _____ Fee: $ _____
Buyer's Initials

**Seller's Acknowledgment**

_____ Seller acknowledges receipt of a separate Buyer's services agreement with Agent for Seller or Subagent for Seller.
Seller's Initials

**Broker's/Agent's Certifications (check all that are applicable)**

☐ **Regarding Lead-Based Paint Hazards Disclosure: Required if Property was built before 1978.** The undersigned Agents involved in this transaction, on behalf of themselves and their brokers, certify that their statements are true to the best of their knowledge and belief. Agents' Acknowledgment: The Agents involved in this transaction have informed Seller of Seller's obligations under The Residential Lead Paint Hazard Reduction Act, 42 U.S.C. 4852(d), and are aware of their responsibility to ensure compliance.

☐ **Regarding FHA Mortgages:** The undersigned Agents involved in this transaction, on behalf of themselves and their brokers, certify that the terms of this contract for purchase are true to the best of their knowledge and belief, and that any other agreement entered into by any of these parties in connection with this transaction is attached to this Agreement of Sale.

☒ **Regarding Mediation: The undersigned**
☒ Agent for Seller ☐ Agent for Buyer ☐ Subagent for Seller on behalf of themselves and their brokers, agree to submit to mediation in accordance with paragraph 30 of this Agreement.

AGENT FOR SELLER (Company Name) _____

ACCEPTED BY _____ DATE 28-99
_____
(Signature of Broker or Salesperson)

SUBAGENT FOR SELLER (Company Name) _____

ACCEPTED BY _____ DATE _____
_____
(Signature of Broker or Salesperson)

AGENT FOR BUYER (Company Name) Re/Max of Lebanon Co

ACCEPTED BY _____ DATE Oct 7/999
_____
(Signature of Broker or Salesperson)

Buyer Initials: _____ KAM     A/S Residential Page 8 of 8     Seller Initials: _____

## DISPUTE RESOLUTION SYSTEM

1. **Agreement of Parties** The Rules and Procedures of the Dispute Resolution System (DRS) apply when the parties agree to mediate under DRS. The written agreement can be achieved by a separate form or as part of a listing or sales contract, or by a separate written agreement with broker brokerage firm ...

2. **Initiation of Mediation** If a dispute exists, any party may start the mediation process by submitting a completed Request to Initiate Mediation DRS Transmittal Form (Transmittal Form) to the local Association of REALTORS® (hereafter Administrator). The Transmittal Form should be available through the Administrator's office. The initiating party should try to include the following information when sending the completed Transmittal Form to the Administrator:
   a. A copy of the written agreement to mediate if there is one, OR a request by the initiating party to have the Administrator contact the other parties to the dispute to invite them to join the mediation process.
   b. The names, addresses and telephone numbers of the parties involved in the dispute, including the name of every insurance company who may have received notice of the dispute or claim and the corresponding claim numbers ...
   c. A brief statement of the facts of the dispute and the damages or relief sought ...

3. **Selection of Mediator** Within five days of receiving the completed Transmittal Form, the Administrator will send each party to the dispute a copy of the Transmittal Form and a list of qualified mediators and their fee schedules. Each party then has ten days to review the list of mediators, and to notify the name of any mediator to whom the party objects, and return the list to the Administrator. The Administrator will appoint the first available mediator who is acceptable to all parties involved.

   A mediator who has any financial or personal interest in the result of the mediation shall disclose ... parties are informed and give their written consent to ...

4. **Mediation Fees** Mediation fees will be divided equally among the parties to the dispute ... the payment terms contained in the mediator's fee schedule ...

5. **Time and Place of Mediation Conference** Within ten days of being appointed, the mediator ... contact the parties and set the date, time and place of the mediation conference. The mediator must give at least ... days advance notice of the conference. The mediation conference should not be more than sixty days from the mediator's appointment to the dispute ...

6. **Conduct of Mediation Conference** The parties attending the mediation must:
   1. Have the authority to enter into and sign a ... agreement.
   2. Produce all information required for the mediator to understand the issues involved in the dispute. The information may include relevant written materials, as well as descriptions of witnesses and the content of their testimony, whether or not they will be appearing at the mediation conference. The mediator can require the parties to submit written materials and information before the date of the mediation conference.

   The mediator presiding over the conference:
   1. Will impartially conduct an orderly settlement negotiation.
   2. Will help the parties define the matters in dispute and reach a mutually agreeable solution.
   3. Will have no authority to render a decision, to bind the parties to his or her decision, or to force the parties to reach a settlement.

   Formal rules of evidence will not apply to the mediation conference.

7. **Representation by Counsel** Any party who intends to be accompanied to the mediation conference by legal counsel will notify the mediator and the other parties of that intent at least ten days before the conference.

8. **Confidentiality** No aspect of the mediation can be relied upon or introduced as evidence in any arbitration, judicial or other proceeding. This includes, but is not limited to, any opinions or suggestions made by any party regarding a possible settlement; any admissions made during the course of the mediation; any proposals or opinions expressed by the mediator; and any responses given by any party to opinions, suggestions, or proposals.

   No privilege will be affected by disclosures made in the course of the mediation ...

   Transcripts or recordings of the mediation will not be allowed without the prior, written consent of all parties and the mediator.

   Records, reports, and other documents received or prepared by the mediator or Administrator cannot be subpoenaed for an arbitration, judicial or other proceeding, with the exception of an agreement to settle ... Neither the mediator nor the Administrator can be subpoenaed or testify concerning the mediation in any arbitration, judicial or other proceeding ... the course of the mediation or in any confidential communication ...

9. **Mediated Settlement** When a dispute is resolved through mediation, the mediator will put the complete agreement in writing and all parties will sign the written agreement within ten days of the conclusion of the mediation conference. Every reasonable effort will be made to sign the written agreement at the end of the conference.

10. **Judicial Proceedings and Immunity** NEITHER THE ADMINISTRATOR, THE MEDIATOR, THE NATIONAL ASSOCIATION OF REALTORS®, THE PENNSYLVANIA ASSOCIATION OF REALTORS® NOR ANY OF ITS MEMBER BOARDS, SHALL BE DEEMED NECESSARY OR INDISPENSABLE PARTIES IN ANY JUDICIAL PROCEEDINGS RELATING TO MEDIATION UNDER THESE RULES AND PROCEDURES, NOR SHALL ANY OF THEM SERVING UNDER THESE PROCEDURES BE LIABLE TO ANY PARTY FOR ANY ACT, ERROR OR OMISSION IN CONNECTION WITH ANY SERVICE OR THE OPERATION OF THE HOME SELLERS/HOME BUYERS DISPUTE RESOLUTION SYSTEM.

ACCEPTED BY _____  DATE _____

SUBMITTED FOR SELLER (Customer Name) _____

ACCEPTED BY _____  DATE _____

AGENT/FOR BUYER (Customer Name) _____

ACCEPTED BY _____  DATE _____

EXHIBIT

*tabbies*

B

# SELLER'S PROPERTY DISCLOSURE STATEMENT

PROPERTY ADDRESS _354 Timber Road, Mt. Coreh._

SELLER _Linda M. Edleman_

A seller must disclose to a buyer all known material defects about property being sold that are not readily observable. This disclosure statement is designed to assist the seller in complying with disclosure requirements and to assist the buyer in evaluating the property being considered.

This statement discloses the seller's knowledge of the condition of the property as of the date signed by the seller and is not a substitute for any inspections or warranties that the buyer may wish to obtain. This statement is not a warranty of any kind by the seller or a warranty or representation by any listing real estate broker, any selling real estate broker or their agents. The buyer is encouraged to address concerns about the conditions of the property that may not be included in this statement. This statement does not relieve the seller of the obligation to disclose a material defect that may not be addressed on this form.

A material defect is a problem with the property or any portion of it that would have a significant adverse impact on the value of the residential real property or that INVOLVES AN UNREASONABLE RISK TO PEOPLE ON THE LAND.

1. Seller's expertise. The seller does not possess expertise in contracting, engineering, architecture or other areas related to the construction and conditions of the property and its improvements, except as follows:_____

2. Occupancy. Do you, the seller, currently occupy this property? ✓Yes __No
If "No", when did you last occupy the property?_____

~ Roof.
. Date roof was installed: _nov 984_ ___ Documented? __Yes __No __Unknown

b) Has the roof been replaced or repaired during your ownership? __Yes ✓No
If "Yes," were the existing shingles removed? __Yes __No __Unknown

c) Has the roof ever leaked during your ownership? __Yes ✓No

d) Do you know of any problems with the roof, gutters or downspouts? __Yes ✓No

Explain any "Yes" answers that you give in this section:_____
_____
_____

4. Basements and crawl spaces (Complete only if applicable).
a) Does the property have a sump pump? __Yes ✓No __Unknown

b) Are you aware of any water leakage, accumulation or dampness within the basement or crawl space? __Yes ✓No
If "Yes" describe in detail:_____

c) Do you know of any repairs or other attempts to control any water or dampness problem in the basement or crawl space?
__Yes ✓No If "Yes" describe the location, extent, date and name of the person who did the repair or control effort:_____
_____

Termites/wood destroying insects, dry rot, pests.
a) Are you aware of any termites/wood destroying insects, dry rot or pests affecting the property? __Yes ✓No

b) Are you aware of any damage to the property caused by termites/wood destroying insects, dry rot or pests? ✓Yes __No

c) Is your property currently under contract by a licensed pest control company? __Yes ✓No

d) Are you aware of any termite/pest control reports or treatments for the property in the last five years? __Yes ✓No

Explain any "Yes" answers that you give in this section:_____
_____

6. Structural items.
a) Are you aware of any past or present water leakage in the house or other structures? __Yes ✓No

b) Are you aware of any past or present movement, shifting, deterioration or other problems with walls, foundations or other structural components? __Yes ✓No

c) Are you aware of any past or present problems with driveways, walkways, patios or retaining walls on the property? __Yes ✓No

Explain any "Yes" answers that you give in this section. When explaining efforts to control or repair, please describe the location and extent of the problem and the date and person by whom the work was done, if known:_____
_____

SELLER INITIALS ✓ ✓

7. Additions/ Remodeling.  Have you made any additions, structural changes or other alterations to the property? __Yes _✓No
If "Yes," please describe: _____
_____

8. Water and sewage.
a) What is the source of your drinking water? __Public __Community System ✓Well on Property __Other
If "Other," please explain: _____

b) If your drinking water source is not public:  When was your water last tested? _____  What was the result of the test? _____
Is the pumping system in working order? _✓Yes __No  If "No," please explain: _____

c) What is the quantity, gallons per minute, of the on-site water service? N/A

d) Do you have a softener, filter or other purification system? __Yes ✓No  If "Yes," is the system: __Leased __Owned

e) What is the type of sewage system? ✓Public Sewer __Private Sewer __Septic Tank __Cesspool __Other
If "Other," please explain: _____
    Unknown

f) Is there a sewage pump? __Yes __No  If "Yes," is it in working order? __Yes __No unknown

g) When was the cesspool or septic system last serviced? N/A

h) Is either the water or sewage system shared? __Yes ✓No  If "Yes," please explain: _____
_____

i) Are you aware of any leaks, backups or other problems relating to any of the plumbing, water and sewage-related items?
__Yes ✓No  If "Yes," please explain: _____

9. Plumbing system.
a) Type of plumbing: ✓Copper __Galvanized __Lead __PVC __Unknown __Other  If "Other," please explain: _____
_____

b) Are you aware of any problems with any of your plumbing fixtures (including, but not limited to: kitchen, laundry or bathroom
fixtures, wet bars, hot water heater, etc.)? __Yes ✓No  If "Yes," please explain: _____
_____

10. Heating and air conditioning.
a) Type of air conditioning: __Central Electric __Central Gas __Wall __None  Number of window units included in sale: 2
Location: living room, master bed room

b) List any areas of the house that are not air conditioned: 2 units cool entire house

c) Type of heating: ✓Electric __Fuel Oil __Natural Gas __Other  If "Other," please explain: _____

d) List any areas of the house that are not heated: _____

e) Type of water heating: ✓Electric __Solar __Gas __Other  If "Other," please explain: _____

f) Are you aware of any underground fuel tanks on the property? __Yes ✓No  If "Yes," please describe: _____

g) Are you aware of any problems with any item in this section? __Yes ✓No  If "Yes," please explain: _____

h) What are the approximate annual utility costs?
Natural Gas _____        Electricity $2200.-/yr    Trash Collection $168.-
Bottled Gas _____        Water _____
Sewer $500/yr              Heating Oil _____

11. Electrical system.  Are you aware of any problems or repairs needed in the electrical system? __Yes ✓No
If "Yes," please explain: _____
_____

12. Other equipment and appliances included in sale (complete only if applicable).
__Electrical Garage Door Opener  Number of transmitters _____
✓Smoke Detectors.  How Many? 2  Location: front hallway
    back hallway

SELLER INITIALS XX

c) ___Security Alarm System   ___Owned   ___Leased  Lease Information:_____

d) ___Lawn Sprinkler  ___Number  ____Automatic Timer

e) ✓ Swimming Pool   ___Pool Heater   ✓ Spa/Hot Tub  List all pool/spa equipment:_____

f) ✓ Refrigerator  ✓ Range   ___Microwave Oven  ✓ Dishwasher   ___Trash Compactor   ___Garbage Disposal
g) ✓ Washer  ✓ Dryer
h) ___Intercom
i) ✓ Ceiling Fans    Number 2  Location: Kitchen, living room

j) Other:_____
_____

Are any items in this section in need of repair or replacement?___Yes ✓ No ___Unknown  If "Yes," please explain:_____
_____
_____

13. Land (soils, drainage and boundaries).   a) Are you aware of any fill or expansive soil on the property? ___Yes ✓ No

b) Are you aware of any sliding, settling, earth movement, upheaval, subsidence or earth stability problems that have occurred on or that affect the property?   ___Yes   ✓ No

NOTE TO BUYER: YOUR PROPERTY MAY BE SUBJECT TO MINE SUBSIDENCE DAMAGE.  MAPS OF THE COUNTIES AND MINES WHERE MINE SUBSIDENCE DAMAGE MAY OCCUR AND MINE SUBSIDENCE INSURANCE ARE AVAILABLE THROUGH:  DEPARTMENT OF ENVIRONMENTAL PROTECTION, MINE SUBSIDENCE INSURANCE FUND 3913 WASHINGTON ROAD, MCMURRAY, PA 15317  (412-941-7100)

c) Are you aware of any existing or proposed mining, strip mining or any other excavations that might affect this property?
___Yes   ✓ No

d) To your knowledge, is this property, or part of it, located in a flood zone or wetlands area?   ___Yes   ✓ No

e) Do you know any of the past or present drainage or flooding problems affecting the property?   ___Yes   ✓ No

f) Do you know of any encroachments, boundary line disputes or easements?   ___Yes   ✓ No

NOTE TO BUYER: Most properties have easements running across them for utility services and other reasons.  In many cases, the easements do not restrict the ordinary use of the property, and the seller may not be readily aware of them.  Buyers may wish to determine the existence of easements and restrictions by examining the property and ordering an abstract of title, or searching the records in the Office of the Recorder of Deeds for the county before entering into an agreement of sale.

g) Are you aware of any shared or common areas (for example, driveways, bridges, docks, walls, etc.) or maintenance agreements?
___Yes ✓ No

Explain any "Yes" answers that you give in this section:_____
_____
_____

14. Hazardous substances.
a) Are you aware of any underground tanks or hazardous substances present on the property (structure or soil), including, but not limited to asbestos, polychlorinated biphenyls (PCBs), radon, lead paint, ureaformaldehyde foam insulation (UFFI), etc.?   ___Yes   ✓ No

b) To your knowledge, has the property been tested for any hazardous substances?   ___Yes   ✓ No  If yes, please attach a copy of the test results.

c) Do you know of any other environmental concerns that might impact upon the property?   ___Yes  ✓ No

d) Do you know of any tests for radon gas that have been performed in any buildings on the property?   ___Yes   ✓ No
   If yes, list date, type, and results of all tests below:
   DATE       TYPE OF TEST          RESULTS (picoCuries/liter or working levels)
   _____   _____      _____
   _____   _____      _____

e) Are you aware of any radon removal system on the property?   ___Yes   ✓ No
   If yes, list date installed and type of system, and whether it is in working order below:
   DATE INSTALLED          TYPE OF SYSTEM                              WORKING ORDER
   _____         _____                    ___Yes  ___No
   _____         _____                    ___Yes  ___No
   _____         _____                    ___Yes  ___No

f) If property was constructed, or if construction began, before 1978, you must disclose any knowledge of lead-based paint on the property.  Are you aware of any lead-based paint or lead-based paint hazards on the property?   ___Yes  ✓ No
   If yes, explain how you know of it, where it is, and the condition of those lead-based paint surfaces:_____
_____

If property was constructed, or if construction began, before 1978, you must disclose any reports or records of lead-based paint on property. Are you aware of any reports or records regarding lead-based paint or lead-based paint hazards on the property? ____Yes __✓__No    If yes, list all available reports and records: _____

_____

Explain any "Yes" answers that you give in this section:_____

_____

_____

15. Condominiums and other homeowners associations (complete only if applicable).
Type: ___Condominium  ___Cooperative  ___ Homeowners Association  ___Other If "Other," please explain:_____

_____

_____

NOTICE REGARDING CONDOMINIUMS AND COOPERATIVES: ACCORDING TO SECTION 3407 OF THE UNIFORM CONDOMINIUM ACT (68 PA.C.S SECTION 3407 (RELATING TO RESALES OF UNITS) AND 68 PA.C.S. SECTION 4409 (RELATING TO RESALES OF COOPERATIVE INTERESTS), A BUYER OF A RESALE UNIT IN A CONDOMINIUM OR COOPERATIVE MUST RECEIVE A CERTIFICATE OF RESALE ISSUED BY THE ASSOCIATION IN THE CONDOMINIUM OR COOPERATIVE. THE BUYER WILL HAVE THE OPTION OF CANCELING THE AGREEMENT WITH THE RETURN OF ALL DEPOSIT MONEYS UNTIL THE CERTIFICATE HAS BEEN PROVIDED TO THE BUYER AND FOR FIVE DAYS THEREAFTER OR UNTIL CONVEYANCE, WHICHEVER OCCURS FIRST.

SELLER INITIALS____  ____

16. Miscellaneous.
a) Are you aware of any existing or threatened legal action affecting the property? __Yes _✓_No

Do you know of any violations of Federal, State or local laws or regulations relating to this property? __Yes  _✓_No

c) Are you aware of any public improvement, condominium or homeowner association assessments against the property that remain unpaid or of any violations of zoning, housing, building, safety or fire ordinances that remain uncorrected? __Yes  _✓_No

d) Are you aware of any judgement, encumbrance, lien (for example, comaker or equity loan) or other debt against this property that cannot be satisfied by the proceeds of this sale? __Yes  _✓_No

e) Are you aware of any reason, including a defect in title, that would prevent you from giving a warranty deed or conveying title to the property? __Yes _✓_No

f) Are you aware of any material defects to the property, dwelling or fixtures which are not disclosed elsewhere on this form? __Yes _✓_No

A material defect is a problem with the property or any portion of it that would have a significant adverse impact on the value of the residential real property or that INVOLVES AN UNREASONABLE RISK TO PEOPLE ON THE LAND.

Explain any "Yes" answers that you give in this section:_____

_____

_____

The undersigned seller represents that the information set forth in this disclosure statement is accurate and complete to the best of the seller's knowledge. The seller hereby authorizes any agent for the seller to provide this information to prospective buyers of the property and to other real estate agents. The seller alone is responsible for the accuracy of the information contained in this statement. The seller shall cause the buyer to be notified in writing of any information supplied on this form which is rendered inaccurate by a change in the tition of the property following the completion of this form.

SELLER _Linda M Edleman_ DATE_4-27-99_  SELLER _____  DATE _____

SELLER _____  DATE _____  SELLER _____  DATE _____

EXECUTOR, ADMINISTRATOR, TRUSTEE
The undersigned has never occupied the property and lacks the personal knowledge necessary to complete this disclosure statement.

_____ DATE _____

_____ DATE _____

RECEIPT AND ACKNOWLEDGMENT BY BUYER
The undersigned buyer acknowledges receipt of this disclosure statement. The buyer acknowledges that this statement is not a warranty and that, unless stated otherwise in the sales contract, the buyer is purchasing this property in its present condition. It is the buyer's responsibility to satisfy himself or herself as to the condition of the property. The buyer may request that the property be inspected, at the buyer's expense and by qualified professionals, to determine the condition of the structure or its components.

BUYER _Karen J Marrone_ DATE_9 Jul 99_  BUYER _____  DATE _____

BUYER _John P Marrone_ DATE_7 July 99_  BUYER _____  DATE _____

~v 4/28/98)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACK MARRONE, Husband,                         :
KAREN MARRONE, Wife,                          :   CIVIL ACTION - LAW
Both Individually and in Their Capacity        :
as Parents and Guardians for                   :   JURY TRIAL DEMANDED
VIDA MARRONE, a Minor  and                     :
MATTHEW ADAM MARRONE                           :
         Plaintiffs                            :   JUDGE  KANE
                                               :
v.                                             :   1:CV-01-0773
ALLSTATE INSURANCE COMPANY,                    :
LINDA M. EDLEMAN, FRED SCHAEFFER,              :          :
MT. GRETNA REALTY and                          :
HOUSE MASTERS,                                 :
         Defendants                            :

---

## CERTIFICATE OF SERVICE

I, **EDWARD A. MONSKY, ESQUIRE,** hereby certify that I forwarded a true and correct copy of

the foregoing Motion for Summary Judgment of Fred Schaeffer and Mt. Gretna Realty upon the following

individuals by first class U.S. Mail, postage prepaid, on the    *17*ᵗʰ    day of October, 2002:

> Louis M. Tarasi, Esquire
> Tarasi, Tarasi & Fishman,  P.C.
> 510 Third Ave.
> Pittsburgh,  PA  15219

> James G. Nealon, III, Esquire
> Nealon & Grover
> 2411 N. Front St.
> Harrisburg,  PA  17110