2 Ct
propo.

# ORIGINAL

79

11/7/0

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

JACK MARRONE, husband, KAREN : 
MARRONE, wife, both individually and :     Civil Action No.: 1:CV-01-0773
in their capacity as parents and guardians :
for VIDA MARRONE, a minor, and :
MATTHEW ADAM MARRONE, :

       Plaintiffs :

       vs. :     (U.S. District Judge Yvette Kane)

ALLSTATE INSURANCE COMPANY, :
LINDA M. EDLEMAN, FRED SCHAFER, :
MT. GRETNA REALTY, and HOUSE :     **JURY TRIAL DEMANDED**
MASTERS :

---

FILED
_____BURG, PA

NOV 0 6 2002

_. D'ANDREA, CLER
Deputy Clerk

### PLAINTIFFS' RESPONSE TO THE MOTION FOR SUMMARY JUDGMENT
### OF DEFENDANT HOUSEMASTER

AND Now come the Plaintiffs, by and through their counsel of record, Tarasi, Tarasi &

Fishman, P.C., Louis M. Tarasi, Jr., Esquire, and Gianni Floro, Esquire, and hereby file this

Plaintiffs' Response to the Motion for Summary Judgment of Defendant Housemaster, reserving

the right to supplement and amend this response should Plaintiffs' motion for extension of time

to file responses to Defendants motions for summary judgment be granted, and in support thereof

set forth the following:

The Defendant Housemaster has moved for summary judgment in its favor and against

Plaintiffs on Counts VIII though XI of the Amended Complaint and on Plaintiffs request for

personal injury damages in those counts.  It broadly asserts that based upon the pleadings,

depositions and record in this case that there are no geniune issues of material fact.  Nevertheless,

a review of the Plaintiffs' Counter Statement of Undisputed Material Facts Regarding the Motion

for Summary Judgment of Defendant Housemaster reveals that there numerous issues of material fact which must be resolved by the trier of fact.

Wherefore, the Plaintiffs respectfully request that this District Court enter an Order Denying the Motion for Summary Judgment of the Defendant Housemaster.

Respectfully submitted,

TARASI, TARASI & FISHMAN, P.C.

By: _____
Gianni Floro, Esquire
PA I.D. No. 85837
Attorney for the Plaintiffs
510 Third Avenue
Pittsburgh, PA  15219
P:  (412) 391-7135
F:  (412) 471-2673

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

JACK MARRONE, husband, KAREN    :
MARRONE, wife, both individually and  :    Civil Action No.:  1:CV-01-0773
in their capacity as parents and guardians :
for VIDA MARRONE, a minor, and    :
MATTHEW ADAM MARRONE,      :
                  :
       Plaintiffs         :
                  :
    vs.               :    (U.S. District Judge Yvette Kane)
                  :
ALLSTATE INSURANCE COMPANY,  :
LINDA M. EDLEMAN, FRED SCHAFER, :
MT. GRETNA REALTY, and HOUSE   :    **JURY TRIAL DEMANDED**
MASTERS              :

---

**PLAINTIFFS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS
REGARDING THE MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HOUSEMASTER**

AND Now come the Plaintiffs, by and through their counsel of record, Tarasi, Tarasi & Fishman, P.C., Louis M. Tarasi, Jr., Esquire, and Gianni Floro, Esquire, and hereby file this Plaintiffs' Counter Statement of Undisputed Material Facts Regarding the Motion for Summary Judgment of Defendant Housemaster, reserving the right to supplement and amend this counter statement of undisputed material facts should Plaintiffs' motion for extension of time to file responses to Defendants motions for summary judgment be granted, and in support thereof set forth the following:

    1.    Admitted.

    2.    Admitted.

    3.    Admitted.

4.      Admitted.

5.      Admitted.

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      Admitted in part and denied in part.  It is admitted that Mrs. Marrone went through the house on at least two occassions prior to purchasing the home, but is denied that referenced deposition testimony of Mrs. Marrone indicates she went through the approximately two times prior to purchasing the home.  By way of further response, when asked how many times she had gone through the house prior to purchasing the home Mrs. Marrone stated "I don't know." (Depo. of Karen Marrone at p. 54, ln. 24 - p. 55, ln. 2)

10.      Admitted.  By way of further response, the Defendant, Housemaster, by and through its agent, Chuck Bertoud, was advised by Mrs. Marrone that the "black spot" on the peg board in the basement was an item of concern to them, and she even pointed it out to Mr. Bertoud.  (Depo. of Karen Marrone at p. 69, ln. 16 - p. 70, ln. 4)

11.      Admitted.

12.      Admitted in part and denied in part.  It is admitted that Chip Stanilla suggested Housemaster to conduct the home inspection that was paid for by the Marrones.  It is denied, as characterized by the Defendant Housemaster that it had no duty to inform the Marrones that mold was present in the basement of the subject property.

13.      Admitted in part and denied in part.  It is admitted that Housemaster was hired to perform a structural inspection of the home, including the foundation, and to undertake a radon

test.  It is denied that Housemaster was not hired to conduct an inspection regarding the potential for problems associated with water penetration.  (Depo. of Karen Marrone at p. 190, ln. 1 - p. 193, ln. 8; Depo. of Jack Marrone at p. 204, ln. 9 - p. 210, ln. 17)

14.    Admitted in part and denied in part.  It is admitted that Housemaster was hired to perform a structural inspection of the home, including the foundation, and to undertake a radon test.  It is denied that Housemaster was not hired to conduct an inspection regarding the potential for problems associated with water penetration, or that such inspection is "limited" in any way with regard to the duty owed to Plaintiffs by Housemaster.  (Depo. of Karen Marrone at p. 190, ln. 1 - p. 193, ln. 8; Depo. of Jack Marrone at p. 204, ln. 9 - p. 210, ln. 17)

15.    Admitted.

16.    Denied.  It denied that Mrs. Marrone acknowledged having read the piece of paper which Mr. Bertoud handed her and asked her to sign, Mrs. Marrone testified that she did not have an opportunity to read that document and was only advised that it recommended sloping the soil away from the house and extending the gutters.  (Depo. of Karen Marrone at p. 193, ln. 6 - p. 194, ln. 23)

17.    Admitted in part and denied in part.  It is admitted that Mrs. Marrone signed the "Inspection Order Agreement," but is denied that she acknowledged the terms and conditions therein when she testified that all Mr. Bertoud explained to her when he asked her to sign it was that it recommended sloping the soil away from the house and extending the gutters.  (Depo. of Karen Marrone at p. 193, ln. 6 - p. 194, ln. 23)  She also testified that she did not have an opportunity to read that document.  (Id.)

18.    Denied.  Housemaster was hired to perform a structural inspection of the home,

including the foundation, and to undertake a radon test, and to conduct an inspection regarding

the potential for problems associated with water penetration, any statement that such inspection

is "limited" in any way with regard to the duty owed to Plaintiffs by Housemaster is denied.

(Depo. of Karen Marrone at p. 190, ln. 1 - p. 193, ln. 8; Depo. of Jack Marrone at p. 204, ln. 9 -

p. 210, ln. 17)

19.     It is admitted that the total cost of the inspection was $195.00.

20.     Admitted.  By way of further response, the document referenced speaks for itself.

21.     Admitted.  By way of further response, the document referenced speaks for itself.

22.     Admitted.  By way of further response, the document referenced speaks for itself.

23.     Admitted.  By way of further response, the document referenced speaks for itself.

24.     Admitted.  By way of further response, Mr. Marrone testified that the inspection

lasted for approximately only twenty minutes.  (Depo. of Jack Marrone at p. 204, ln. 9 - p. 210,

ln. 17)

25.     Admitted.  By way of further response, Mrs. Marrone testified that all Mr.

Bertoud explained to herwas that his report recommended sloping the soil away from the house

and extending the gutters.  (Depo. of Karen Marrone at p. 193, ln. 6 - p. 194, ln. 23)  Mr. Bertoud

also pointed out waterproofing on the foundation walls to Mr. and Mrs. Marrone.  (Depo. of

Karen Marrone at p. 192, lns. 10- 23)

26.     Admitted.

27.     Admitted.

28.     Admitted.

29.     Admitted.

30.    Admitted.

31.    Denied.  Housemaster was hired to perform a structural inspection of the home, including the foundation, and to undertake a radon test, and to conduct an inspection regarding the potential for problems associated with water penetration, any statement that such inspection is "limited" in any way with regard to the duty owed to Plaintiffs by Housemaster is denied. (Depo. of Karen Marrone at p. 190, ln. 1 - p. 193, ln. 8; Depo. of Jack Marrone at p. 204, ln. 9 - p. 210, ln. 17)

32.    Denied.  It is denied that any exclusions or limitations on the "Express Report" or the "Inspection Order Agreement" in any way limit the duty owed to the Plaintiffs by Housemaster, and any such issues raise issues of material fact, Housemaster was hired to perform a structural inspection of the home, including the foundation, and to undertake a radon test, and to conduct an inspection regarding the potential for problems associated with water penetration, any statement that such inspection is "limited" in any way with regard to the duty owed to Plaintiffs by Housemaster is denied.  (Depo. of Karen Marrone at p. 190, ln. 1 - p. 193, ln. 8; Depo of Jack Marrone at p. 204, ln. 9 - p. 210, ln. 17)

33.    Admitted.

34.    Denied.  By way of further response, the "Express Report" speaks for itself.

35.    Denied.  By way of further response, the "Express Report" speaks for itself.

36.    Admitted.

37.    Admitted.

38.    Admitted.  By way of further response, Mrs. Marrone testified that she did not what the substance was at the time she discovered it.

39.     Denied.  The Plaintiffs testified that they pointed out the "black spot" on the peg board to Mr. Bertoud, lathough they were not aware that it was mold at the time; moreover, during that same time period the Plaintiffs relied upon Mr. Bertoud's (Housemaster's) represnetations with regard to water penetration problems.  (Depo. of Karen Marrone at p. 190, ln. 1 - p. 193, ln. 8; Depo. of Jack Marrone at p. 204, ln. 9 - p. 210, ln. 17)

40.     Admitted.

41.     Admitted.

42.     Admitted.

43.     Denied.  Mr. Marrone that he did not leave the home "closed up" and he did not testify that he ever left water in the hot tub/spa as Defendant Housemaster indicates.  (Depo. of Jack Marrone at pp. 259-260; p. 238, lns. 10-22; p. 248, lns. 14-18; p. 249, lns. 4-6)

44.     Admitted.

45.     Admitted.

46.     Denied.  Housemaster was properly served with the Complaint in this matter that details this "occurrence."

47.     Admitted.

48.     Admitted.

49.     Admitted in part and denied in part.  It is admitted that Mr. Marrone contacted his insured to report the covered loss, but it is denied that Mr. Marrone stated what Mr. Miller said he stated.  Strict proof of the same is demanded at the time of trial.  By way of further response, while a broken pipe may have caused the condition at issue, that issue raises issues of material fact.

50.    Admitted in part and denied in part.  It is admitted that Mr. Miller inspected the home after the mold explosion, but is denied that his opinion is a valid coverage determination, Mr. Miller having failed to conduct a proper examination of the premises, including testing the wate pipes for leaks.  The claim should have been a covered loss due to the findings of Tom Moore, the Plaintiffs expert regarding home inspections who found that there was evidence of leaking pipes in the ceiling of the basement.  (Report of Tom Moore, attached as Ex. B to the Motion for Summary Judgment of Defendant Edleman.)  (A supporting Affidavit will be filed within ten (10) days.)

51.    Admitted.

52.    Admitted.

53.    Admitted.

54.    Admitted.

55.    Admitted.

56.    Admitted.

57.    Admitted.  By way of further response, Mr. Marrone testified that "Yes, I did not want to live in a burning house." (Depo. of Jack Marrone at p. 133, ln. 4)  (Plaintiff, Jack Marrone, referring to his following common sense and not tolerating the conditions of house for his family's sake.) (Depo. of Karen Marrone at p. 159, ln. 7 - p. 162, ln. 17)

58.    Admitted.

59.    Denied.  By way of further response the Plaintiffs were forced to vacte their home due to the unsafe conditions created by the presence of extremely high levels of mold in the air and on surface.  (Amed. Compl. at p. 6, ¶ 34.)

60.     Admitted.

61.     Admitted.

62.     Admitted.

63.     Denied.  The Plaintiffs did seek qualified medical testing and qualified medical personnel to determine the Plaintiffs susceptibility to the mold contamination in their home, the reports of Eckardt Johanning, M.D., M.Sc., were attached to their Motion to Permit the Filing of Plaintiffs' Medical Causation Expert Reports *Nunc Pro Tunc*.  As such, Dr. Johanning provided medical causation for each of the Plaintiffs' medical conditions, linking them, as stated in his report, to their mold exposure.  (A supporting Affidavit will be filed within ten (10) days.)

64.     Admitted.

65.     Admitted.

66.     Admitted in part and denied in part.  It is admitted that no "treating physician" advised Mrs. Marrone that her condition was related to her mold exposure, but is denied that she was not advised through qualified medical testing and qualified medical personnel that she was determined to be susceptible to the mold contamination in her home, the reports of Eckardt Johanning, M.D., M.Sc., were attached to their Motion to Permit the Filing of Plaintiffs' Medical Causation Expert Reports *Nunc Pro Tunc*.  As such, Dr. Johanning provided medical causation for each of the Plaintiffs' medical conditions, linking them, as stated in his report, to their mold exposure.  (A supporting Affidavit will be filed within ten (10) days.)

67.     Denied.  The Plaintiffs did seek qualified medical testing and qualified medical personnel to determine the Plaintiffs susceptibility to the mold contamination in their home, the reports of Eckardt Johanning, M.D., M.Sc., were attached to their Motion to Permit the Filing of

Plaintiffs' Medical Causation Expert Reports *Nunc Pro Tunc*.  As such, Dr. Johanning provided

medical causation for each of the Plaintiffs' medical conditions, linking them, as stated in his

report, to their mold exposure.  (A supporting Affidavit will be filed within ten (10) days.)

     68.    Admitted.

     69.    Admitted.

     70.    Admitted in part and denied in part.  It is admitted that no "treating physician"

advised Matthew Adam Marrone that his condition was related to his mold exposure, but is

denied that he was not advised through qualified medical testing and qualified medical personnel

that he was determined to be susceptible to the mold contamination in his previous home, the

reports of Eckardt Johanning, M.D., M.Sc., were attached to their Motion to Permit the Filing of

Plaintiffs' Medical Causation Expert Reports *Nunc Pro Tunc*.  As such, Dr. Johanning provided

medical causation for each of the Plaintiffs' medical conditions, linking them, as stated in his

report, to their mold exposure.  (A supporting Affidavit will be filed within ten (10) days.)

     71.    Denied.  The Plaintiffs did seek qualified medical testing and qualified medical

personnel to determine the Plaintiffs susceptibility to the mold contamination in their home, the

reports of Eckardt Johanning, M.D., M.Sc., were attached to their Motion to Permit the Filing of

Plaintiffs' Medical Causation Expert Reports *Nunc Pro Tunc*.  As such, Dr. Johanning provided

medical causation for each of the Plaintiffs' medical conditions, linking them, as stated in his

report, to their mold exposure.  (A supporting Affidavit will be filed within ten (10) days.)

     72.    Admitted.

     73.    Admitted.

     74.    Admitted in part and denied in part.  It is admitted that no "treating physician"

advised Ms. Marrone that her condition was related to her mold exposure, but is denied that she was not advised through qualified medical testing and qualified medical personnel that she was determined to be susceptible to the mold contamination in her home, the reports of Eckardt Johanning, M.D., M.Sc., were attached to their Motion to Permit the Filing of Plaintiffs' Medical Causation Expert Reports *Nunc Pro Tunc.* As such, Dr. Johanning provided medical causation for each of the Plaintiffs' medical conditions, linking them, as stated in his report, to their mold exposure.  (A supporting Affidavit will be filed within ten (10) days.)

75.     Denied.  The Plaintiffs did seek qualified medical testing and qualified medical personnel to determine the Plaintiffs susceptibility to the mold contamination in their home, the reports of Eckardt Johanning, M.D., M.Sc., were attached to their Motion to Permit the Filing of Plaintiffs' Medical Causation Expert Reports *Nunc Pro Tunc.*  As such, Dr. Johanning provided medical causation for each of the Plaintiffs' medical conditions, linking them, as stated in his report, to their mold exposure.  (A supporting Affidavit will be filed within ten (10) days.)

Wherefore, the Plaintiffs respectfully request that this District Court enter an Order Denying the Motion for Summary Judgment of the Defendant Housemaster.

Respectfully submitted,

TARASI, TARASI & FISHMAN, P.C.

By: _____
Gianni Floro, Esquire
PA I.D. No. 85837
Attorney for the Plaintiffs
510 Third Avenue
Pittsburgh, PA  15219
P:  (412) 391-7135
F:  (412) 471-2673

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT OF DEFENDANT HOUSEMASTER AND PLAINTIFFS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS REGARDING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT HOUSEMASTER**, were served on counsel for the Defendants on this _5th_ day of November, 2002, by the United States Mail, First Class, Postage prepaid addressed as follows:

James G. Nealon, III, Esquire
Nealon & Grover, P.C.
2411 North Front Street
Harrisburg, PA 17110

John Flounlacker, Esquire
Thomas, Thomas & Hafer, LLP
305 North Front Street
Harrisburg, PA 17108

Edward A. Monsky, Esquire
Fine, Wyatt & Carey, P.C.
425 Spruce Street
Scranton, PA 18501-0590

Jennifer L. Murphy, Esquire
Duane, Morris & Heckscher, LLP
305 North Front Street, 5th Floor
Harrisburg, PA 17108-1003

TARASI, TARASI & FISHMAN, P.C.

Date: 11|5|02

By: _____
Gianni Floro, Esquire
PA I.D. No. 85837
Attorney for the Plaintiffs
510 Third Avenue
Pittsburgh, PA 15219
P: (412) 391-7135
F: (412) 471-2673