IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

JACK MARRONE, husband, KAREN     :
MARRONE, wife, both individually and   :
in their capacity as parents and guardians  :
for VIDA MARRONE, a minor, and     :
MATTHEW ADAM MARRONE,      :
                          :
        Plaintiffs            :
                          :
       vs.               :
                          :
ALLSTATE INSURANCE COMPANY,    :
LINDA M. EDLEMAN, FRED SCHAFER, :
MT. GRETNA REALTY, and HOUSE    :
MASTERS                  :

Civil Action No.: 1:CV-01-0773

(U.S. District Judge Yvette Kane)

**JURY TRIAL DEMANDED**

---

**PLAINTIFFS' AMENDED COUNTER STATEMENT OF UNDISPUTED MATERIAL
FACTS REGARDING THE MOTION FOR SUMMARY JUDGMENT
OF DEFENDANT HOUSEMASTER**

AND Now come the Plaintiffs, by and through their counsel of record, Tarasi, Tarasi &

Fishman, P.C., Louis M. Tarasi, Jr., Esquire, and Gianni Floro, Esquire, and hereby file this

Plaintiffs' Amended Counter Statement of Undisputed Material Facts Regarding the Motion for

Summary Judgment of Defendant Housemaster, and in support thereof set forth the following:

     1.      Admitted.

     2.      Admitted.

     3.      Admitted.

     4.      Admitted.

     5.      Admitted.

     6.      Admitted.

7.    Admitted.

8.    Admitted.

9.    Admitted in part and denied in part.  It is admitted that Mrs. Marrone went through the house on at least two occassions prior to purchasing the home, but is denied that referenced deposition testimony of Mrs. Marrone indicates she went through the approximately two times prior to purchasing the home.  By way of further response, when asked how many times she had gone through the house prior to purchasing the home Mrs. Marrone stated "I don't know."  (Depo. of Karen Marrone at p. 54, ln. 24 - p. 55, ln. 2)

10.    Admitted.  By way of further response, the Defendant, Housemaster, by and through its agent, Charles E. Bertoud, Jr. (hereinafter, "Bertoud"), was advised by Mrs. Marrone that the "black spot" on the peg board in the basement was an item of concern to them, and she even pointed it out to Mr. Bertoud.  (Depo. of Karen Marrone at p. 69, ln. 16 - p. 70, ln. 4)  When the Plaintiffs met with their home inspector Mr. Bertoud, they pointed out an area in the unfinished portion of the basement which they were unsure as to what the "black spot" upon the peg board was.  (Depo. of Karen Marrone at p. 32, lns. 14-21; p. 58, ln. 23 - p. 60, ln. 25; p. 65, ln. 14 - p. 66, ln. 24; p. 69, ln. 16 - p. 71, ln. 14; p. 73, ln. 24 - p. 75, ln. 1; p. 82 lns. 2-9; Depo. of Jack Marrone at p. 76, ln. 24 - p. 77, ln. 7; p. 204, ln. 22 - p. 205, ln. 5; p. 207, lns. 2-7; Depo. of Vida Marrone at p. 33, ln. 3 - p. 34, ln. 5; p. 35, ln. 24 - p. 36, ln. 3; p. 61, ln. 19 - p. 62, ln. 13; Depo. of Matthew Marrone at p. 56, ln. 11 - p. 57, ln.1; p. 87, ln. 10 - p. 89, ln. 11)

11.    Admitted.

12.    Admitted in part and denied in part.  It is admitted that Chip Stanilla suggested

Housemaster to conduct the home inspection that was paid for by the Marrones. (Depo. of Karen Marrone at p. 194, ln. 8 - p. 195, ln. 8) It is denied, as characterized by the Defendant Housemaster that it had no duty to inform the Marrones that mold was present in the basement of the subject property.

13.    Admitted in part and denied in part. It is admitted that Housemaster was hired to perform a structural inspection of the home, including the foundation, and to undertake a radon test. It is denied that Housemaster was not hired to conduct an inspection regarding the potential for problems associated with water penetration. (Depo. of Karen Marrone at p. 190, ln. 1 - p. 193, ln. 8; Depo. of Jack Marrone at p. 204, ln. 9 - p. 210, ln. 17)

14.    Admitted in part and denied in part. It is admitted that Housemaster was hired to perform a structural inspection of the home, including the foundation, and to undertake a radon test. It is denied that Housemaster was not hired to conduct an inspection regarding the potential for problems associated with water penetration, or that such inspection is "limited" in any way with regard to the duty owed to Plaintiffs by Housemaster. (Depo. of Karen Marrone at p. 190, ln. 1 - p. 193, ln. 8; Depo. of Jack Marrone at p. 204, ln. 9 - p. 210, ln. 17)

15.    Admitted.

16.    Denied. It denied that Mrs. Marrone acknowledged having read the piece of paper which Mr. Bertoud handed her and asked her to sign, Mrs. Marrone testified that she did not have an opportunity to read that document and was only advised that it recommended sloping the soil away from the house and extending the gutters. (Depo. of Karen Marrone at p. 193, ln. 6 - p. 195, ln. 8)

3

17.    Admitted in part and denied in part.  It is admitted that Mrs. Marrone signed the "Inspection Order Agreement," but is denied that she acknowledged the terms and conditions therein when she testified that all Mr. Bertoud explained to her when he asked her to sign it was that it recommended sloping the soil away from the house and extending the gutters  (Depo. of Karen Marrone at p. 193, ln. 6 - p. 195, ln. 8)  She also testified that she did not have an opportunity to read that document.  (Id.)

18.    Denied.  Housemaster was hired to perform a structural inspection of the home, including the foundation, and to undertake a radon test, and to conduct an inspection regarding the potential for problems associated with water penetration, any statement that such inspection is "limited" in any way with regard to the duty owed to Plaintiffs by Housemaster is denied. (Depo. of Karen Marrone at p. 190, ln. 1 - p. 193, ln. 8; Depo. of Jack Marrone at p. 204, ln. 9 - p. 210, ln. 17)

19.    It is admitted that the total cost of the inspection was $195.00.

20.    Admitted.  By way of further response, the document referenced speaks for itself.

21.    Admitted.  By way of further response, the document referenced speaks for itself.

22.    Admitted.  By way of further response, the document referenced speaks for itself.

23.    Admitted.  By way of further response, the document referenced speaks for itself.

24.    Admitted.  By way of further response, Mr. Marrone testified that the inspection lasted for approximately only twenty minutes. (Depo. of Jack Marrone at p. 204, ln. 9 - p. 210, ln. 17)

25.    Admitted.  By way of further response, Mrs. Marrone testified that all Mr.

4

Bertoud explained to her was that his report recommended sloping the soil away from the house and extending the gutters. (Depo. of Karen Marrone at p. 193, ln. 6 - p. 194, ln. 23)  Mr. Bertoud also pointed out waterproofing on the foundation walls to Mr. and Mrs. Marrone.  (Depo. of Karen Marrone at p. 192, lns. 10- 23)

    26.    Admitted.

    27.    Admitted.

    28.    Admitted.  By way of further response and without waiver of the foregoing, Exhibits 10 and 12 of Mr. Bertoud's deposition gives some indication of the physical location of the two areas at issue, the unfinished area, depicted in exhibit 10, and the finished area, depicted in the left hand side and top right pictures in exhibit 12A, and the right hand side and lower left pictures in exhibit 12B.  (Depo. of Bertoud at Exs. 10 and 12)  Photographs number 36 and 41, taken on August 12, 2002, and attached to the Report of Tom Moore, provides a clear demarcation of the two areas; observing those photographs demonstrates the white "Dry-Loc" coating material that was applied to the unfinished area, and the bare concrete block indicating the finished area of the basement; these photograph post-date Mr. Marrone's activities of removing the paneling and insulation in the finished area, after the "mold explosion."  (Affidavit of Tom Moore; Depo. of Jack Marrone at p. 126, lns. 6-12; p. 130, ln. 6 - p. 133, ln. 23)  These two areas were noted in the Report of Robert Pfromm of October 15, 2000:

> It was observed, that most of the interior surface of the below grade (underground) foundation walls were covered first with a layer of tar paper , then with fiberglass insulation between studs, then with wood paneling.

(Affidavit of Robert Pfromm at p. 2 of the "Observations" in his report of October 15, 2000)

Clearly, Mr. Bertoud only noted the water marks/stain he could observe.

29.    Admitted.

30.    Admitted.

31.    Denied.  Housemaster was hired to perform a structural inspection of the home, including the foundation, and to undertake a radon test, and to conduct an inspection regarding the potential for problems associated with water penetration, any statement that such inspection is "limited" in any way with regard to the duty owed to Plaintiffs by Housemaster is denied. (Depo. of Karen Marrone at p. 190, ln. 1 - p. 193, ln. 8; Depo. of Jack Marrone at p. 204, ln. 9 - p. 210, ln. 17)

32.    Denied.  It is denied that any exclusions or limitations on the "Express Report" or the "Inspection Order Agreement" in any way limit the duty owed to the Plaintiffs by Housemaster, and any such issues raise issues of material fact, Housemaster was hired to perform a structural inspection of the home, including the foundation, and to undertake a radon test, and to conduct an inspection regarding the potential for problems associated with water penetration, any statement that such inspection is "limited" in any way with regard to the duty owed to Plaintiffs by Housemaster is denied.  (Depo. of Karen Marrone at p. 190, ln. 1 - p. 193, ln. 8; Depo of Jack Marrone at p. 204, ln. 9 - p. 210, ln. 17)

33.    Admitted.

34.    Denied.  By way of further response, the "Express Report" speaks for itself.

35.    Denied.  By way of further response, the "Express Report" speaks for itself.

36.    Admitted.

37.    Admitted.

38.    Admitted. By way of further response, Mrs. Marrone testified that she did not what the substance was at the time she discovered it, and as it appeared similar to the "black spot" in the basement that Mr. Bertoud found to be of little import, so Mrs. Marrone also disregarded its significance, relying of Mr. Bertoud's earlier advice, so she just cleaned it up. Mrs. Marrone that the "black spot" on the peg board in the basement was an item of concern to them, and she even pointed it out to Mr. Bertoud. (Depo. of Karen Marrone at p. 69, ln. 16 - p. 70, ln. 4) When the Plaintiffs met with their home inspector Mr. Bertoud, they pointed out an area in the unfinished portion of the basement which they were unsure as to what the "black spot" upon the peg board was. (Depo. of Karen Marrone at p. 32, lns. 14-21; p. 58, ln. 23 - p. 60, ln. 25; p. 65, ln. 14 - p. 66, ln. 24; p. 69, ln. 16 - p. 71, ln. 14; p. 73, ln. 24 - p. 75, ln. 1; p. 82 lns. 2-9; Depo. of Jack Marrone at p. 76, ln. 24 - p. 77, ln. 7; p. 204, ln. 22 - p. 205, ln. 5; p. 207, lns. 2-7; Depo. of Vida Marrone at p. 33, ln. 3 - p. 34, ln. 5; p. 35, ln. 24 - p. 36, ln. 3; p. 61, ln. 19 - p. 62, ln. 13; Depo. of Matthew Marrone at p. 56, ln. 11 - p. 57, ln.1; p. 87, ln. 10 - p. 89, ln. 11)

39.    Denied. The Plaintiffs testified that they pointed out the "black spot" on the peg board to Mr. Bertoud, although they were not aware that it was mold at the time; moreover, during that same time period the Plaintiffs relied upon Mr. Bertoud's (Housemaster's) represenetations with regard to water penetration problems. (Depo. of Karen Marrone at p. 190, ln. 1 - p. 193, ln. 8; Depo. of Jack Marrone at p. 204, ln. 9 - p. 210, ln. 17)

40.    Admitted.

41.    Admitted.

42.    Admitted.

43.    Denied. Mr. Marrone that he did not leave the home "closed up" and he did not testify that he ever left water in the hot tub/spa as Defendant Housemaster indicates. (Depo. of Jack Marrone at pp. 259-260; p. 238, lns. 10-22; p. 248, lns. 14-18; p. 249, lns. 4-6)

44.    Admitted.

45.    Admitted.

46.    Denied. Housemaster was properly served with the Complaint in this matter that details this "occurrence."

47.    Admitted.

48.    Admitted.

49.    Admitted in part and denied in part. It is admitted that Mr. Marrone contacted his insured to report the covered loss, but it is denied that Mr. Marrone stated what Mr. Miller said he stated. Strict proof of the same is demanded at the time of trial. By way of further response, while a broken pipe may have caused the condition at issue, that issue raises issues of material fact.

50.    Admitted in part and denied in part. It is admitted that Mr. Miller inspected the home after the mold explosion, but is denied that his opinion is a valid coverage determination, Mr. Miller having failed to conduct a proper examination of the premises, including testing the water pipes for leaks. The claim should have been a covered loss due to the findings of Tom Moore, the Plaintiffs expert regarding home inspections who found that there was evidence of leaking pipes in the ceiling of the basement. (Affidavit of Tom Moore at Ex. 2)

8

51.    Admitted.

52.    Admitted.

53.    Admitted.

54.    Admitted.

55.    Admitted.

56.    Admitted.

57.    Admitted. By way of further response, Mr. Marrone testified that "Yes, I did not want to live in a burning house." (Depo. of Jack Marrone at p. 133, ln. 4) (Plaintiff, Jack Marrone, referring to his following common sense and not tolerating the conditions of house for his family's sake.) (Depo. of Karen Marrone at p. 159, ln. 7 - p. 162, ln. 17)

58.    Admitted.

59.    Denied. By way of further response the Plaintiffs were forced to vacte their home due to the unsafe conditions created by the presence of extremely high levels of mold in the air and on the surface areas in the absement of the home. (Amed. Compl. at p. 6, ¶ 34.)

60.    Admitted.

61.    Admitted.

62.    Admitted.

63.    Denied. The Plaintiffs did seek qualified medical testing and qualified medical personnel to determine the Plaintiffs susceptibility to the mold contamination in their home. (Affidavit of Dr. Johanning at Ex. 2) As such, Dr. Johanning provided medical causation for each of the Plaintiffs' medical conditions, linking them, as stated in his report, to their mold

exposure.

64.    Admitted.

65.    Admitted.

66.    Admitted in part and denied in part. It is admitted that no "treating physician" advised Mrs. Marrone that her condition was related to her mold exposure, but is denied that she was not advised through qualified medical testing and qualified medical personnel that she was determined to be susceptible to the mold contamination in her home. (Affidavit of Dr. Johanning at Ex. 2) As such, Dr. Johanning provided medical causation for each of the Plaintiffs' medical conditions, linking them, as stated in his report, to their mold exposure.

67.    Denied. The Plaintiffs did seek qualified medical testing and qualified medical personnel to determine the Plaintiffs susceptibility to the mold contamination in their home. (Affidavit of Dr. Johanning at Ex. 2) As such, Dr. Johanning provided medical causation for each of the Plaintiffs' medical conditions, linking them, as stated in his report, to their mold exposure.

68.    Admitted.

69.    Admitted.

70.    Admitted in part and denied in part. It is admitted that no "treating physician" advised Matthew Adam Marrone that his condition was related to his mold exposure, but is denied that he was not advised through qualified medical testing and qualified medical personnel that he was determined to be susceptible to the mold contamination in his previous home. (Affidavit of Dr. Johanning at Ex. 2) As such, Dr. Johanning provided medical causation for

10

each of the Plaintiffs' medical conditions, linking them, as stated in his report, to their mold exposure.

71.    Denied.  The Plaintiffs did seek qualified medical testing and qualified medical personnel to determine the Plaintiffs susceptibility to the mold contamination in their home. (Affidavit of Dr. Johanning at Ex. 2)  As such, Dr. Johanning provided medical causation for each of the Plaintiffs' medical conditions, linking them, as stated in his report, to their mold exposure.

72.    Admitted.

73.    Admitted.

74.    Admitted in part and denied in part.  It is admitted that no "treating physician" advised Ms. Marrone that her condition was related to her mold exposure, but is denied that she was not advised through qualified medical testing and qualified medical personnel that she was determined to be susceptible to the mold contamination in her home.  (Affidavit of Dr. Johanning at Ex. 2)  As such, Dr. Johanning provided medical causation for each of the Plaintiffs' medical conditions, linking them, as stated in his report, to their mold exposure.

75.    Denied.  The Plaintiffs did seek qualified medical testing and qualified medical personnel to determine the Plaintiffs susceptibility to the mold contamination in their home. (Affidavit of Dr. Johanning at Ex. 2)  As such, Dr. Johanning provided medical causation for each of the Plaintiffs' medical conditions, linking them, as stated in his report, to their mold exposure.

Wherefore, the Plaintiffs respectfully request that this District Court enter an Order

Denying the Motion for Summary Judgment of the Defendant Housemaster.

Respectfully submitted,

TARASI, TARASI & FISHMAN, P.C.

By: _____

Gianni Floro, Esquire
PAID No. 85837
Attorney for the Plaintiffs
510 Third Avenue
Pittsburgh, PA  15219
P:  (412) 391-7135
F:  (412) 471-2673