


IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACK MARRONE, husband, KAREN MARRONE, wife, both individually and in their capacity as parents and guardians for VIDA MARRONE, a minor, and MATTHEW ADAM MARRONE, | : : : : : | Civil Action No.: 1:CV-01-0773 |
| Plaintiffs | : : | |
| vs. | : : | (U.S. District Judge Yvette Kane) |
| ALLSTATE INSURANCE COMPANY, LINDA M. EDLEMAN, FRED SCHAFER, MT. GRETNA REALTY, and HOUSE MASTERS | : : : : | **JURY TRIAL DEMANDED** |

**PLAINTIFFS' AMENDED COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS REGARDING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT ALLSTATE INSURANCE COMPANY**

AND Now come the Plaintiffs, by and through their counsel of record, Tarasi, Tarasi & Fishman, P.C., Louis M. Tarasi, Jr., Esquire, and Gianni Floro, Esquire, and hereby file this Plaintiffs' Amended Counter Statement of Undisputed Material Facts Regarding the Motion for Summary Judgment of Defendant Allstate Insurance Company, and in support thereof set forth the following:

1. Admitted.

2. Denied. By way of further response and without waiver of the foregoing, prior to closing, a binder was issued by Allstate Insurance Company (hereinafter, "Allstate") to the Marrones, and then after closing on their home in Mt. Gretna, Mrs. Marrone testified that

someone from Allstate came to their home to conduct an inspection, and then provided her with the policy. (Depo. of Karen Marrone at p. 11, ln. 1 - p. 16, ln. 6; Depo of Larry Miller (hereinafter, "Miller")at Exs. 5-6) Mr. Marrone also testified that someone from Allstate came to inspect their property. (Depo. of Jack Marrone at p. 20, lns. 1-7) Mr. Miller identified that person as either Lisa Bernieri or her employee, Ellen Zern. (Depo. of Miller at p. 47, ln. 3 - p. 50, ln. 24; Depo of Miller at Exs. 5-6)

   3.   Admitted.

   4.   Admitted.

   5.   Admitted in part and denied in part. It is admitted that the Marrones went through an application process for their home insurance, but it is denied as suggested by Allstate that the application was all that was required for the issuance of an insurance by Allstate, it having had one of its representatives inspect the premises prior to issuing a home insurance policy to the Marrones. (Depo. of Karen Marrone p. 11, ln. 14 - p. 16, ln. 6; Depo of Miller at Exs. 5-6; Depo. of Jack Marrone at p. 20, lns. 1-7)

   6.   Admitted.

   7.   Admitted.

   8.   Admitted in part and denied in part. It is admitted that the mold caused some of the Plaintiffs damages, but it is denied that the mold infestation was the proximate cause or one of the primary sources of the Plaintiffs' damages. Proximate cause has been defined as that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces injury, and without which the result would not have occurred. Without water, in the

2

form of a high relative humidity the mold would not have flourished as it did. (Affidavit of Robert Pfromm at Ex. 2, pp. 1-2 of the report of September 12, 2002 and pp. 1-2 and 6 of the report of October 15, 2000) In the case, *sub judice*, but for the leaking pipe in the basement of the Marrone's basement, the mold infestation would not have occurred, and according to Tom Moore, the Plaintiffs expert regarding home inspections, he found that there was evidence of leaking pipes in the ceiling of the basement. (Affidavit of Tom Moore at Ex. 2) Such evidence indicates that more than just the mold was to blame for this condition, a sudden and accidental release from a leaking pipe caused an additional water problem at this home. (Affidavit of Tom Moore at Ex. 2; Affidavit of Robert Pfromm at Ex. 2)

Mr. Miller testified that Allstate received a statement from the Marrones on August 8, 2000, where an Allstate employee, Lauren Hittle, noted that "[w]ater has caused damage to his basement floor and ceiling. He is not sure where the problem is originating but it appears there is a pipe inside the basement where the water came from. Floor is damp and panels are buckled." (Depo. of Miller at p. 25, ln. 4 - p. 26, ln. 20; Ex. 2 at p. 6) Although Mr. Miller said he did not find a broken pipe, he never examined above the ceiling for the leaking pipe. (Depo. of Miller at p. 26, lns. 16-20; p. 61, ln. 3 - p. 63, ln. 4) He was able to make a coverage determination at that time, without examining above the ceiling where the pipe was leaking, blaming the situation on mold and not one of the primary causes, a leaking pipe. (Depo. of Miller at p. 30, ln. 8 - p. 31, ln. 9) Moreover, such a determination demonstrated Allstate's bad faith in not properly investigating the claim, *i.e.*, how could the loss not be termed "sudden and accidental" if it occurred within approximately one (1) week. (Depo. of Larry Miller at p. 36, lns. 2-18; Ex. 2,

pp. 16-17) Allstate knew prior to Mr. Miller's investigation that there was a possible source of the leaking water. (Depo. of Larry Miller at p. 44, ln. 2 - p. 45, ln. 8; Ex. 2, p. 22) Even more egregious was the fact that the photograph of the ceiling, taken after the Marrones returned from their trip in July, revealed that black lines on the ceiling could be seen where the pipes ran through the ceiling. (Affidavit of Tom Moore at Ex. 2 at p.2-3; Ex. 3, p. 2 (top left photograph); Ex. 4, photographs 43-46 and 52; Affidavit of Robert Pfromm at Ex. 2, p. 2 of the September 12, 2002 report and p. 1 of the October 15, 2000 report; Deposition of Charles E. Bertoud, Jr. (hereinafter, "Bertoud") at Ex. 12A (top left photograph))

9.  Admitted. By way of further response and without waiver of the foregoing, Mr. Miller never intended on conducting an inspection of the Plaintiffs' home, he testified that Allstate received a statement from the Marrones on August 8, 2000, where an Allstate employee, Lauren Hittle, noted that "[w]ater has caused damage to his basement floor and ceiling. He is not sure where the problem is originating but it appears there is a pipe inside the basement where the water came from. Floor is damp and panels are buckled." (Depo. of Miller at p. 25, ln. 4 - p. 26, ln. 20; Ex. 2 at p. 6) But, Mr. Miller said he did not find a broken pipe, that is because he never examined above the ceiling for the leaking pipe. (Depo. of Miller at p. 26, lns. 16-20; p. 61, ln. 3 - p. 63, ln. 4) He was able to make a coverage determination at that time, without examining above the ceiling where the pipe was leaking, blaming the situation on mold and not on a primary cause, a leaking pipe. (Depo. of Miller at p. 30, ln. 8 -p. 31, ln. 9) Moreover, such a determination demonstrated Allstate's bad faith in not properly investigating the claim, *i.e.*, how could the loss not be termed "sudden and accidental" if it occurred within approximately one (1)

4

week. (Depo. of Miller at p. 36, lns. 2-18; Ex. 2, pp. 16-17) Allstate knew prior to Mr. Miller's investigation that there was a possible source of the leaking water. (Depo. of Miller at p. 44, ln. 2 - p. 45, ln. 8; Ex. 2, p. 22) Even more egregious was the fact that the photograph of the ceiling, taken after the Marrones returned from their trip in July, revealed that black lines on the ceiling were clearly visible where the pipes ran in the ceiling. (Affidavit of Tom Moore at Ex. 2 at p.2-3; Ex. 3, p. 2 (top left photograph); Ex. 4, photographs 43-46 and 52; Affidavit of Robert Pfromm at Ex. 2, p. 2 of the September 12, 2002 report and p. 1 of the October 15, 2000 report; Deposition of Bertoud) at Ex. 12A (top left photograph)) In the documents (Claim File) that Allstate provided to the Marrones during discovery in this case, there was a note that stated there was "water damage, basement ceiling and floor, in line with pipe inside there is mold there partially wet damp and panels buckled." (Depo. of Miller at Ex. 2, p. 22; Depo. of Miller at p. 44, ln. 2 - p. 45, ln. 12)

10.    Admitted. By way of further response and without waiver of the foregoing, Mr. Miller, the claims inspector who was sent out to the Plaintiffs' home, should have advised the Plaintiffs of the potential for adverse health effects of mold exposure, Allstate having known of the devastating nature of such claims previously; Mr. Miller himself testified that he knew of the potential health hazards of exposure to mold, but the Plaintiffs claim that he failed to warn the Plaintiffs of this fact, Mr. Miller stated otherwise. (Depo. of Miller at p. 31, ln. 21 - p. 32, ln. 7; p. 56, lns. 17-25; Pls.' Ans. and Objs. to Ints. Filed on Behalf of Def. Housemaster at Int. 9 ("At no did he state at any time did he state that there was a mold problem."))

Wherefore, the Plaintiffs respectfully request that this District Court enter an Order

5

Denying the Motion for Summary Judgment of the Defendant Allstate Insurance Company.

Respectfully submitted,

TARASI, TARASI & FISHMAN, P.C.

By:_____
Gianni Floro, Esquire
PA ID No. 85837
Attorney for the Plaintiffs
510 Third Avenue
Pittsburgh, PA  15219
P: (412) 391-7135
F: (412) 471-2673