

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACK MARRONE, husband, KAREN MARRONE, wife, both individually and in their capacity as parents and guardians for VIDA MARRONE, a minor, and MATTHEW ADAM MARRONE,<br><br>Plaintiffs<br><br>vs.<br><br>ALLSTATE INSURANCE COMPANY, LINDA M. EDLEMAN, FRED SCHAFER, MT. GRETNA REALTY, and HOUSE MASTERS | Civil Action No.: 1:CV-01-0773<br><br>(U.S. District Judge Yvette Kane)<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' BRIEF IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT LINDA M. EDLEMAN**

AND NOW come the Plaintiffs, by and through their counsel of record, Tarasi, Tarasi & Fishman, P.C., Louis M. Tarasi, Jr., Esquire, and Gianni Floro, Esquire, and hereby file this Plaintiffs' Brief in Opposition to the Motion for Summary Judgment of Defendant Linda M. Edleman, and in support thereof set forth the following:

**I.   COUNTER STATEMENT OF THE FACTS:**

Non-moving Plaintiffs incorporate by reference, as if set forth fully herein, their "Plaintiffs' Amended Counter Statement of Undisputed Material Facts Regarding the Motion for Summary Judgment of Defendant Linda M. Edleman."

**II.   STANDARD OF REVIEW:**

The standards to be applied by this District Court in ruling on a motion for summary judgment are set forth in Fed.R.Civ.P. 56. This District Court is compelled to look beyond the

pleadings to determine if the pleadings and claims made therein have sufficient factual support to warrant consideration for trial; and thus a motion for summary judgment is only appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Lind v. Jones, Lang Lesalle Americas, Inc., 135 F.Supp.2d 616, 619 (E.D.Pa. 2001), *citing*, Williams v. Borough of West Chester, 891 F.2d 458, 463-464 (3d Cir. 1989). The party seeking summary judgment always bears the initial responsibility of informing the District Court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, which it believes demonstrates the absence of a genuine issue of material fact. Lind, 135 F.Supp.2d at 619, *citing*, Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986).

It is well settled that this District Court must consider all the evidence, and the inferences from it, in the light most favorable to the non-moving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994 (1962); Tigg v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987); Baker v. Lukens Steel Co., 793 F.2d 509, 511 (3d Cir. 1986). If a conflict arises between the evidence presented by both sides, the District Court must accept as true the allegations of the non-moving party. Lind, 135 F.Supp.2d at 619, *citing*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986).

### III. ARGUMENT:

#### A. Plaintiffs Have Established a Claim for Misrepresentation Against the Moving Defendant Linda M. Edleman

In their Amended Complaint the Plaintiffs made the following allegations against the moving Defendant (hereinafter, "Edleman") and in support of their claim for misrepresentation:

2

57. The Plaintiffs hereby incorporate paragraphs 1 through 56 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

58. Defendant Edleman had a duty to disclose all material defects relating to the property at issue, pursuant to the Real Estate Seller Disclosure Act (68 P.S. §1021 et seq.).

59. In the Seller's Property Disclosure Statement, required pursuant to 68 P.S. §1024, Defendant Edleman intentionally misrepresented the conditions associated with the property at issue when she indicated that there was no basement dampness/water problems or leakage problems.

60. Defendant Edleman knew, or should have known, that said basement was prone to dampness and water problems and disclosed same as required by law.

61. At all times material hereto, the Plaintiffs relied upon the misrepresentations of Defendant Edleman.

62. These undisclosed problems lead to the formation of the mold in July of 2000.

63. As a direct and proximate result of Defendant Edleman's failure to disclose said information, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, as set forth supra., and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

The crux of the Plaintiffs allegations against Ms. Edleman concerned her failure to disclose the condition of the house she had placed on the market, which condition was known or should have been known to her. Ms. Edleman was aware or should have been aware that the improvements made by her ex-husband, *i.e.*, the "addition to" or "remodeling" of the basement in her former house, were intended to disguise or hide a latent defect, *e.g.*, a dampness or water problem. Although the Plaintiffs (hereinafter, "Marrones") did have a home inspection conducted, and it revealed that there were "INDICATIONS OF WATER PENETRATION

3

CONDITIONS: Water Marks/Stains" and that there were "INDICATIONS OF POSSIBLE PRIOR REMEDIAL WORK: Construction/Coatings," those warnings were limited to an area of the basement that had not had the "addition to" or "remodeling" of the basement conducted, *i.e.*, the non-finished area of the basement. (Depo. of Charles E. Bertoud, Jr. (hereinafter, "Bertoud") at Ex. 7, "Express Report;" Depo. of Bertoud at p. 30, ln. 20 - p. 39, ln. 4) Mr. Bertoud testified that his inspection was under certain limitations:

> Limitations would be like if there was contents down there that could not be moved **to look behind finished materials**, drop ceilings, insulation.

(Depo. of Bertoud at p. 38, lns. 22-24) (*Emphasis supplied*) Exhibits 10 and 12 of Mr. Bertoud's deposition gives some indication of the physical location of the two areas at issue, the unfinished area, depicted in exhibit 10, and the finished area, depicted in the left hand side and top right pictures in exhibit 12A, and the right hand side and lower left pictures in exhibit 12B. (Depo. of Bertoud at Exs. 10 and 12) Photographs number 36 and 41, taken on August 12, 2002, and attached to the Report of Tom Moore, provides a clear demarcation of the two areas; observing those photographs demonstrates the white "Dry-Loc" coating material that was applied to the unfinished area, and the bare concrete block indicating the finished area of the basement; these photograph post-date Mr. Marrone's activities of removing the paneling and insulation in the finished area, after the "mold explosion." (Affidavit of Tom Moore; Depo. of Jack Marrone at p. 126, lns. 6-12; p. 130, ln. 6 - p. 133, ln. 23) These two areas were noted in the Report of Robert Pfromm of October 15, 2000:

> It was observed, that most of the interior surface of the below grade (underground) foundation walls were covered first with a layer of tar paper, then with fiberglass insulation between studs, then with wood paneling.

4

(Affidavit of Robert Pfromm at p. 2 of the "Observations" in his report of October 15, 2000) Clearly, Mr. Bertoud would not have ripped down the finished area of the basement had he not had a reason to, such as a specific indication that an addition to or remodeling had been conducted in the basement to disguise water damage in that area of the basement. Therefore, this condition was a latent defect of the property, which was not disclosed to the Plaintiffs prior to purchase. (Depo. of Schaeffer at Ex. 14, "Seller's Property Disclosure Statement")

Contrary to the contentions of Ms. Edleman, summary judgment is inappropriate in this matter and on her behalf, because the Marrones have established that this was a condition which pre-existed the sale of this house to the Plaintiff. In this case the Marrones were unable to determine the fraud perpetrated against them until after they returned from their trip in July of 2000. That fraud was composed of a misrepresentation that was intended to induce the action undertaken by the Marrones, *i.e.*, purchasing the Edleman house, in reliance upon the misrepresentation, to the damage of its victims, the Marrones. Thomas v. Seaman, 451 Pa. 347, 350, 304 A.2d 139 (1973). The evidence presented of the fraud must be clear, precise, and convincing. Thomas, 451 Pa. At 351. The elements of intentional misrepresentation are as follows:

1. A representation;
2. which is material to the transaction at hand;
3. made falsely, **with knowledge of its falsity or recklessness as to whether it is true or false**;
4. with the intention of misleading another party into relying on it;
5. justifiable reliance on the misrepresentation; and
6. the resulting injury was proximately caused by the reliance.

GMH. Associates, Inc. v. Prudential Realty Group, CB, 2000 Pa.Super. 59, 752 A.2d 889, 901 (2000). (*Emphasis Supplied*)

5

A misrepresentation is material if it is of such character that **had it not been made** the transaction would not have been consummated. GMH Associates, 752 A.2d at 902. A "negligent misrepresentation" is a misrepresentation which arises from a want of "reasonable care or competence in obtaining or communicating information" as opposed to a "fraudulent" misrepresentation which involves either a "knowing" or a "reckless" communication or misrepresentation. Woodward v. Dietrich, 378 Pa.Super. 111, 548 A.2d 301, 308, FN5, (1988).

A result is deemed to be "intended" if the actor either acts with a desire to cause it, or acts believing that there is a substantial certainty that the result would follow from his conduct. Woodward, 548 A.2d at 127, FN7 (1988). "Reason to expect" is when one has reason to expect a result if he has information from which a reasonable man would conclude that the result will follow or would govern his conduct upon the assumption that it will do so. Woodward, 548 A.2d at 127, FN7 (1988).

The Marrones demonstrated that Ms. Edleman failed to disclose the water problems associated with the property at issue, she misrepresented that the property was free of such a problem, going so far as to mask that fact. Ms. Edleman's Seller's Property Disclosure Statement misrepresented material facts regarding the house at issue, 354 Timber Road. (68 P.S. § 1021, *et seq.*) The second page of the Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate (a document memorializing the exchange information between Ms. Edleman and Mr. Schaeffer) indicates that Ms. Edleman was aware that the basement was improved, *see item* "L: Basement" in which option 4 "Improved" is selected. (Depo. of Schaeffer at Ex. 13; and Depo. of Schaeffer at p. 24, ln. 1-24) However, paragraph 7 of the Seller's Property Disclosure Statement indicates that there were "no additions" or "remodeling"

6

undertaken by Ms. Edleman, or known to her to be undertaken; however, it is clear that Ms. Edleman knew of the addition and remodeling that Ms. Edleman's ex-husband undertook, she admitted to it. (Depo. of Edleman at Ex. 5, p.2; Depo. of Schaeffer at Ex. 14; and Depo. of Schaeffer at p. 24, ln. 1-24; Affidavits of Tom Moore and Robert Pfromm) An examination of the writing (Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate) (Depo. of Schaeffer at Ex. 13) and of Exhibit 3 (second document) of Mr. Schaeffer's deposition reveals that Mr. Schaeffer himself, in his own writing, filled the Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate form and would have known that the basement was improved, and it is reasonable to infer that Ms. Edleman also knew this fact, having executed the Seller's Property Disclosure Statement with knowledge of its falsity. (Depo. of Schaeffer at Ex. 3 (second document); Depo. of Schaeffer at p. 13, lns. 13-22) Mr. Schaeffer admits to having filled out the Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate with Ms. Edleman. (Depo. of Schaeffer at Exs. 12-13; p. 23, ln. 10 - p. 24, ln. 18) Mr. Schaeffer also admits to having gone through the Seller's Property Disclosure Statement with Ms. Edleman to ensure that she knew how items on the Seller's Property Disclosure Statement **affected the price of the home**. (Depo. of Schaeffer at p. 58, ln. 25 - p. 59, ln. 24) By providing a true recitation of the history of the Edleman house would have delayed any purchaser from buying the Edleman house due to the defective condition of the house, known only to Ms. Edleman, her ex-husband, and the Seller's Agents.

When there is a serious and dangerous latent defect known to the seller, then he must disclose such defect to the unknowing or suffer liability for his failure to do so. <u>Gozon v.</u>

7

Henderson-Dewey & Associates, Inc., 312 Pa. Super. 242, 245, 458 A.2d 605, 607 (1983).

Sellers are required to disclose dangerous and material defects to prospective purchasers. Frey v. Beaver County Tax Claim Bureau, 687 A.2d 57, 58 (Pa. Cmwlth. 1996). Public policy requires that **this is an affirmative duty.** Id. The Pennsylvania Superior Court has held:

> Where there are ... defects in ... premises, dangerous to the property, health, or life of the tenant, which defects are known to the landlord ... it is the duty of the landlord to disclose them to the tenant ... and failure to do so amounts to a fraud.

Quashnock v. Frost, 299 Pa. Super. 9, 21, n7, 445 A.2d 121, 127, n.7 (1982).

As the moisture problem and the subsequent remedial efforts to mask that problem, was known to Ms. Edleman, this failure to disclose this information was made with the intention to deceive the Marrones and to deceive them into believing that no such problem existed. The Marrones, being in an inferior position due to their lack of knowledge of the home, relied on the legally imposed duty of the seller to disclose such information. As a result of the Marrones justifiable reliance, and Ms. Edleman's failure to disclose, as was her duty, the Marrones have suffered physical and financial damages. (Pls.' Ans. Obj. to Ints. and Req. Prod. Docs.) Ms. Edleman admits that Mr. Schaeffer made frequent visit to her home and observed the entire house, including the basement. (Depo. of Edleman at p. 20, ln. 1 - p. 22, ln. 20) She also admitted to being in every part of her house, including the basement, between 1984 and 1999. (Depo. of Edleman at p. 63, ln. 25 - p. 64, ln. 18) It is reasonable to infer that she had knowledge of the condition of the basement, and the remedial efforts of her ex-husband.

Ms. Edleman knew or should have known about the problem, while she admitted to having knowledge that her husband had placed paneling in the basement in 1985 or 1986, she

denied any knowledge that her husband had undertaken renovation of an area of the basement. (Depo. of Edleman at p. 30, ln. 6 - p. 34, ln. 9; p. 35, ln. 18 - p. 36, ln. 15) Mr. Miller, the Allstate senior claims representative who inspected the house after the mold explosion, noted that the house had evidence of "a chronic problem" with water penetration, and he told the Marrones that the "wall was leaking for a long time." (Depo. of Miller at p. 51, ln. 11 - p. 56, ln. 12) Ms. Edleman had knowledge beyond the Plaintiffs regarding the condition of the house and its water and dampness problems, and should have taken steps to ensure that if such problems existed, they were disclosed to Plaintiffs as is required by law. (68 P.S. § 1021, *et seq.*) Contrary to Ms. Edleman's contention, both Mr. Moore and Mr. Pfromm opined that the renovation undertaken by Mr. Edleman were the source of the mold problem, and both unequivocally linked the pre-existing condition to the mold growth. (Affidavit of Robert Pfromm at Ex. 2, report of October 15, 2000, pp. 2, 6-8; report of September 12, 2002; Affidavit of Tom Moore at Ex. 2) Upon Mr. Moore's inspection he found that:

> Some studs were rotted significantly on the vertical area indicating a wetting and drying scenario over a period of time. (photo 48) The bottom wall plate was black and moisture saturated. This condition was on the back half of the base plate, the front half looked normal. the bottom was not rotted since the wood appears to stay wet or saturated. (photo 47, 48)

\* \* \*

> The finishing of the basement was incorrectly done. The vapor barrier (felt paper) was applied to the block wall. The correct method would have been to have the vapor barrier between the interior finished wall (dry wall or panelling) and the insulation so that warm, moist air is stopped before entering the wall cavity. In the house, this house, the warm, moist air was condensing on the felt paper and then running down the felt paper and would run down to the bottom of the wall which would account for the saturated condition of the bottom wall plate.

9

(Affidavit of Tom Moore at Ex. 2) This finding indicated that a water and dampness problem pre-existed the sale, and since the renovations would have had to have been known by Ms. Edleman, she could have informed the Marrones of the latent defect so that their home inspector could have undertaken a more invasive inspection upon the demands of the Marrones..

Fraud arises where there is a non-privileged failure to disclose. DeJoseph v. Zamelli, 392 Pa. 24, 139 A.2d 644, 647 (1958). Fraud renders a transaction **voidable**, even where the misrepresentation is not material. Id. These determinations are questions of fact, and therefore, are questions for a jury. Fidelity Bank and Tiernan, 249 Pa. Super. 216, 234, 375 A.2d 1320, 1330 (1977).

Lastly, on the aforementioned element of reliability, whether or not said reliance was justifiable is a question for the jury to be based on all of the facts and permissible inferences which may be drawn from the evidence presented at trial. Myers v. McHenry, 398 Pa. Super. 100, 109, 580 A.2d 860, 865 (1990). Because the Marrones have raised genuine issues of material fact, which need to be determined by a jury, dismissal of this action against the Plaintiffs would be inappropriate.

> B. **Plaintiffs' Have Established Their Claims Were Causally related to this Moving Defendant's Conduct and Medical Testimony Supports Their Personal Injury Claims Regarding Causation**

The testimony of the Plaintiffs' expert are stated within a reasonable degree of certainty, and are therefore unequivocal. (Affidavits of Tom Moore, Robert Pfromm and Dr. Johanning at their the "Conclusion" sections of their reports.) This Defendant raises an in issue of material fact by suggesting that the word "recent" implies within eleven (11) months. (Def. Edleman's Br. in Supp. of Mtn. for Summ. J. at p. 9, ¶ 2) Ms. Edleman's contentions are specious, the Plaintiffs'

experts provide logical and well-reasoned opinions based clear factual evidence that has been made a part of the record. (Affidats of Tom Moore, Robert Pfromm and Dr. Johanning) These determinations are questions of fact, and therefore, are questions for a jury. Fidelity Bank and Tiernan, 249 Pa. Super. 216, 234, 375 A.2d 1320, 1330 (1977). The Marrones justifiably relied upon the misrepresentations made by Ms. Edleman, as explained above, she was negligent, in that she had a duty to disclose the latent defects of her former house, she breached that duty to the Plaintiffs by failing to fulfill her duties, causing the Plaintiffs personal and economic injuries that were a result of the breach. As a result, the Marrones purchased a home that had a latent defect (Affidats of Tom Moore, Robert Pfromm), as well as being contaminated with toxic mold, (Affidats of Robert Pfromm and Dr. Johanning) causing this unsuspecting family both physical and financial damages. (The Plaintiffs' depositions, their answers to discovery requests describe their alleged physical maladies and also detail their economic damages; their medical causation expert has causally related some of their physical injuries more fully in his reports.) The Plaintiffs respectfully submit that they have demonstrated that there are genuine issues of material fact which precludes the moving Defendant's motion for summary judgment.

Wherefore, the Plaintiffs respectfully request that this District Court enter an Order Denying the Motion for Summary Judgment of the Defendant Linda M. Edleman.

Respectfully submitted,

TARASI, TARASI & FISHMAN, P.C.

By: _____
Gianni Floro, Esquire
PA ID No. 85837

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiffs' Amended Response to Motion for Summary Judgment of Defendant Linda M. Edleman, Plaintiffs' Amended Counter Statement of Undisputed Material Facts Regarding the Motion for Summary Judgment of Defendant Linda M. Edleman, and Plaintiffs' Brief in to the Motion for Summary Judgment of Defendant Linda M. Edleman, were served on counsel for the Defendants on this __23rd__ day of November, 2002, by the United States Mail, First Class, Postage prepaid addressed as follows:

James G. Nealon, III, Esquire
Nealon & Grover, P.C.
2411 North Front Street
Harrisburg, PA 17110

John Flounlacker, Esquire
Thomas, Thomas & Hafer, LLP
305 North Front Street
Harrisburg, PA 17108

Edward A. Monsky, Esquire
Fine, Wyatt & Carey, P.C.
425 Spruce Street
Scranton, PA 18501-0590

Jennifer L. Murphy, Esquire
Duane, Morris & Heckscher, LLP
305 North Front Street, 5th Floor
Harrisburg, PA 17108-1003

TARASI, TARASI & FISHMAN, P.C.

Date: 11/23/02

By: _____
Gianni Floro, Esquire
PA ID No. 85837
Attorney for the Plaintiffs
510 Third Avenue
Pittsburgh, PA 15219
P: (412) 391-7135
F: (412) 471-2673

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

JACK MARRONE, husband, KAREN  :
MARRONE, wife, both individually and  :   Civil Action No.: 1:CV-01-0773
in their capacity as parents and guardians  :
for VIDA MARRONE, a minor, and  :
MATTHEW ADAM MARRONE,  :
   :
      Plaintiffs  :
   :
vs.  :
   :
ALLSTATE INSURANCE COMPANY,  :
LINDA M. EDLEMAN, FRED SCHAFER,  :
MT. GRETNA REALTY, and HOUSE  :
MASTERS  :

---

## ORDER

AND NOW, this _____ day of _____, 2002, upon the "Plaintiffs' Amended Response to Motion for Summary Judgment of Defendant Linda M. Edleman," "Plaintiffs' Amended Counter Statement of Undisputed Material Facts Regarding the Motion for Summary Judgment of Defendant Linda M. Edleman," and "Plaintiffs' Brief in to the Motion for Summary Judgment of Defendant Linda M. Edleman" it is hereby ORDERED that the Motion for Summary Judgment of the Defendant Linda M. Edleman is hereby DENIED.

                              BY THE COURT:

_____       _____
Date                                          Yvette Kane, Judge
                                                                                     Middle District of Pennsylvania