JUDGE'S COPY

**THOMAS, THOMAS & HAFER, LLP**
305 North Front Street
P.O. Box 999
Harrisburg, PA 17108

**John Flounlacker, Esquire**
Attorney I.D. 73112
(717)237-7134
Attorneys for Defendant Edleman

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACK MARRONE, husband, KAREN
MARRONE, wife, both individually and
in their capacity as parents and guardians
for VIDA MARRONE, a minor, and
MATTHEW ADAM MARRONE
                  Plaintiffs

    v.

ALLSTATE INSURANCE COMPANY,
LINDA M. EDLEMAN, FRED SCHAFER,
MT. GRETNA REALTY, and
HOUSEMASTERS
                 Defendants

: NO.: 1:CV-01-0773
:
:
:
:
:
:
: JUDGE KANE
:
: Civil Action Law
:
:
:
:
: Jury Trial Demanded
:

**FILED**
HARRISBURG, PA

DEC 1 2 2002

MARY E. D'ANDREA, CLERK
Per _____
          Deputy Clerk

## BRIEF IN SUPPORT OF DEFENDANT
## LINDA M. EDLEMAN'S MOTION TO STRIKE THE
## AFFIDAVIT OF ECKHARDT JOHANNING, M.D., M.SC.

## I.    STATEMENT OF THE RELEVANT FACTS

    Plaintiffs and their former legal counsel initiated this action by filing their
Complaint on May 3, 2001. The Complaint alleged, *inter alia*, Misrepresentation,
Negligent Misrepresentation, and Breach of Contract against the moving
Defendant.

    On July 5, 2002, this Honorable Court granted the Plaintiffs' Motion for the
extension of time and issued a new case management Order which provided that
discovery was to conclude by August 30, 2002, reports of experts were due on
September 13, 2002, and supplemental expert reports were due by September 27,

2002.  A true and correct copy of this Court's July 5, 2002 case management Order is incorporated herein and attached hereto as Exhibit A.  All dispositive motions were to be filed by October 18, 2002.  See Exhibit A.

On October 18, 2002, moving Defendant filed a Motion for Summary Judgment on the basis that Plaintiffs had failed to meet their burden of proof and, after discovery, was unable to prove the essential elements of their case.  Also on October 18, 2002, over one month beyond the deadline provided by the case management Order, Defendant received a facsimile copy of Plaintiffs' request for a fourth extension of time for the purposes of securing a report from an unidentified medical expert.  To that date, Plaintiffs had not produced any report from a medical expert, nor had Plaintiffs identified any medical experts that they planned to use in their prosecution of this case.

While the Plaintiffs' Motion for the extension of time in which to file expert reports was pending, on October 31, 2002 Plaintiffs filed a Motion to permit the filing of medical expert causation reports *nunc pro tunc*.

On November 5, 2002, this Honorable Court denied the Plaintiffs' Motion to extend time in which to file expert reports.  A true and correct copy of this Court's November 5, 2002 Order is incorporated herein and attached hereto as Exhibit B.  On November, 27, 2002, pursuant to Local Rule 7.5, this Court deemed the Plaintiffs' Motion to permit the filing of medical expert causation reports *nunc pro tunc* withdrawn for failure to file a brief in support of the Motion or a certificate of concurrence.  A true and correct copy of this Court's November 27, 2002 Order is incorporated herein and attached hereto as Exhibit C.

On November 23, 2002, Plaintiffs filed their Amended Response to the Defendant's Motion for Summary Judgment.  Contained in the voluminous documents accompanying Plaintiffs' response was a document entitled the Affidavit of Eckhardt Johanning, M.D., M.Sc.  A true and correct copy of the

2

Affidavit of Eckardt Johanning, M.D., M.Sc. is incorporated herein and attached hereto as Exhibit D.

Moving Defendant submits that this document is violative of this Court's July 5, 2002 case management Order, this Court's November 5, 2002 denial of Plaintiffs' Motion to extend time in which to file expert reports, and that it also violates the Rules of Civil Procedure. As such, Defendant requests that this affidavit be stricken from Plaintiffs' appendix and that any reference to such affidavit in Plaintiffs' amended response likewise be stricken.

## II.    **QUESTION PRESENTED**

Should the Affidavit of Eckhardt Johanning, M.D., M.Sc. be stricken from Plaintiffs' Amended Response to Defendant's Motion for Summary Judgment when it is an attempt to submit an expert report outside of discovery after Plaintiff failed to meet any and all such deadlines, was denied such remedies by this Court, and the affidavit is an unsworn memorandum?

**Suggested Answer:**        **Yes.**

## III.    **ARGUMENT**

The moving Defendant seeks to have the Affidavit of Eckardt Johanning, M.D., M.Sc., stricken from Plaintiffs' Amended Response to the moving Defendant's Motion for Summary Judgment. Defendant submits that this is an obvious attempt by the Plaintiffs to circumvent the case management Order and this Court's rulings on Plaintiffs' motions to extend time. Additionally, should the Court find that such a submission is appropriate or permitted under the Rules, the Affidavit is an unsworn memorandum which was not made under oath or affirmation and as such, should be stricken from Plaintiffs' response.

Plaintiffs' submission of Eckardt Johanning, M.D.'s report as an Affidavit accompanying a large amount of paperwork in response to Defendant's Motion for Summary Judgment is a clear attempt to get through the back door what Plaintiffs

have been unable to get through the front door. On November 5, 2002, this Honorable Court issued an Order denying the Plaintiffs' Motion for the extension of time in which to file medical causation reports. <u>See</u> Exhibit B. The Order explicitly stated that "[a]ll parties shall comply with the deadlines previously set in this Court's Order of July 5, 2002." <u>See</u> Exhibit B. One of the expert reports Plaintiffs sought to submit over a month beyond the deadline was that of Eckhardt Johanning, M.D., M.Sc.

Even though such relief was denied, and no medical expert reports were ever mentioned or produced throughout the course of discovery, Plaintiffs have attempted to attach Johanning's report in order to establish medical causation. Under the Court's case management Order, this is impermissible. Further, an expert's affidavit, although not necessarily based upon personal knowledge as required under Rule 56(e), is eligible for summary judgment consideration if the affiant would be permitted to testify as an expert at trial. <u>1836 Callowhill St. v. Johnson Controls</u>, 819 F.Supp. 460, 462 (E.D. Pa. 1993). This is not the case.

Setting aside for the moment Plaintiffs' attempt to circumvent this Court's rulings regarding Plaintiffs' ability to submit medical reports well beyond the discovery deadlines, Johanning would not be able to testify at trial. No medical causation reports were ever received by the moving Defendant in discovery. No medical experts were ever mentioned by Plaintiffs during discovery, even though the information was requested. It was not until over a month after the deadline for expert reports and after moving Defendant filed her Motion for Summary Judgment that Plaintiffs even mentioned having expert reports that they wanted to produce at a later date. As nothing was ever produced in discovery regarding Johanning, any visits that Plaintiffs had with him, his possible opinions or his report, Johanning would be unable to testify at trial. As such, the Affidavit of Eckhardt Johanning is violative of this Court's Orders, inadmissible at trial and it,

and all references to it in Plaintiffs' answer and brief, should be stricken from Plaintiffs' Amended Response.

In the alternative, should the Court find that the submission of Johanning's Affidavit is permissible, the Affidavit should be stricken as violative of the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 56(e) requires that affidavits and other materials submitted in support or opposition to a motion for summary judgment be sworn or certified. Fed.R.Civ.Pro. 56(e); Tukesbrey v. Midwest Transit, Inc., 822 F.Supp. 1192, 1198 (W.D. Pa. 1993). Matters which are not sworn or certified should be stricken. Tukesbrey, 822 F.Supp. at 1198; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 n.16 (1970) (noting that if a statement in an affidavit is unsworn and not in the record from the proceedings, it cannot be considered by the trial court). Nonetheless, 28 U.S.C. § 1746 provides that unsworn written declarations which substantially conform to a statutorily prescribed form and are dated and signed by the maker can have the same force and effect as sworn declarations. 28 U.S.C. § 1746; Tukesbrey v. Midwest Transit, Inc., 822 F.Supp. 1192, 1198 (W.D. Pa. 1993). The form provided by the statute is: "I declare (certify, verify or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." See id. Matters which are unsworn or which do not possess such certification should be stricken. Tukesbrey, 822 F.Supp. at 1198.

Not only is the Affidavit of Eckhardt Johanning unsworn which violates Rule 56(e), but it possesses no such certification as permitted by 28 U.S.C. § 1746. See Exhibit D. The Affidavit first swears that Johanning personally appeared before the Notary, written from the perspective of the Notary. See Exhibit D. However, there is no Notary Public attestation, signature, seal, commission stamp, or any evidence whatsoever that a Notary was even present in the room with Johanning. See Exhibit D. In fact, there is nothing from a Notary at all, merely

5

blank lines where presumably a Notary could have sworn Johanning.  <u>See</u> Exhibit D.

Moreover, the Affidavit does not have Johanning swear to anything at all.  It merely states that the Notary swears Johanning was there, but there was no Notary Public and no oath administered.  <u>See</u> Exhibit D.  Paragraph 3 states that the facts and opinions in the report are based on personal knowledge and experience, but the Affidavit contains no oath, no certification, no recognition of perjury charges, no swearing to the truth of its contents or anything that could be construed as satisfying either Rule 56(e) or 28 U.S.C. § 1746.  For this reason, the Affidavit of Eckardt Johanning and all references and reliance upon the same should be stricken from Plaintiffs' Amended Response to moving Defendant's Motion for Summary Judgment.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, moving Defendant respectfully requests that this Honorable Court strike the Affidavit of Eckardt Johanning, M.D., M.Sc. and all references to it from Plaintiffs' Amended Response to Defendant's Motion for Summary Judgment.

Respectfully submitted,

**THOMAS, THOMAS & HAFER, LLP**

By: _John Flounlacker_

John Flounlacker, Esquire
Attorney I.D. # 73112
Shawn E. Smith, Esquire
Attorney I.D. # 86121
P.O. Box 999
305 N. Front Street
Harrisburg, PA  17108-0999
(717)237-7134

Date: 12/10/02

6

JUL 0 9 2002

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACK MARRONE, husband, KAREN    :   **CIVIL ACTION NO.**
MARRONE, wife, both individually and   :   1:CV-01-773
in their capacity as parents and guardians :
for VIDA MARRONE, a minor,     :
         Plaintiffs      :

        v.        :   J. Kane

                :
ALLSTATE INSURANCE COMPANY,  :       **FILED**
LINDA M. EDELMAN, FRED SCHAFER :     **HARRISBURG**
MT. GRETNA REALTY, and HOUSE
MASTER,                 JUL - 5 2002
        Defendants     MARY E. D'ANDREA, CLERK
                  Per_____
                     DEPUTY CLERK

## ORDER

    AND NOW, this ___3rd___ day of July, **IT IS ORDERED THAT** plaintiffs' motion

to extend the case management order dated February 19, 2002 is **GRANTED**. The case

management order dated February 19, 2002 is **AMENDED** as follows:

| | |
|---|---|
| Close of Fact Discovery: | August 30, 2002 |
| Report of Experts: | September 13, 2002 |
| Response Reports to Experts Report: | September 27, 2002 |
| Dispositive Motions and Daubert Motions with | |
| Supporting Briefs Due: | October 18, 2002 |
| Local Rule 16.3 - Attorney Conference and | |
| Exchange of Proposed Jury Instructions: On or before: | December 27, 2002 |
| Motions In Limine Due: | January 3, 2003 |
| Pretrial Memoranda Due: | January 17, 2003 |
| Pretrial and Settlement Conference: | January 22, 2003 - 2:00 p.m. |
| Joint Jury Instructions with Objections and | |
| Proposed Voir Dire Questions Due: | January 29, 2003 |
| Jury Selection and Trial: | February 3, 2003 - 9:30 a.m. |

                                 Yvette Kane
                                 United States District Judge



DEFENDANT'S
EXHIBIT
_A_

（中略）

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACK MARRONE, husband, KAREN           :
MARRONE, wife, both individually and   :
in their capacity as parents and guardians:
for VIDA MARRONE, a minor, and         :
MATTHEW ADAM MARRONE,                   :
      Plaintiffs                       :
                                :       CIVIL ACTION NO. 1:CV-01-0773
     v.                                :       (Judge Kane)
                                :       **FILED**
ALLSTATE INSURANCE CO., et al.         :       HARRISBURG
      Defendants                        :
                                              NOV - 5 2002

                    **ORDER**                      MARY E. D'ANDREA, CLERK
                                            Per_____
                                              DEPUTY CLERK

AND NOW, this 5the day of November, 2002, upon consideration of Plaintiffs' Motion

for Extension of Time in which to File Responses to Defendants' Motions for Summary

Judgment, it is HEREBY ORDERED that Plaintiffs' request is GRANTED.   Plaintiffs are

granted twenty (20) additional days to respond to the summary judgment motions; responses

shall be due on or before November 25, 2002.

                                            _____
                                            Yvette Kane
                                            United States District Judge

Calendar

DEFENDANT'S
EXHIBIT
B

DEC 2 2002

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG

NOV 27 2002

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

JACK MARRONE, husband, KAREN  :
MARRONE, wife, both individually and  :
in their capacity as parents and guardians:
for VIDA MARRONE, a minor, and  :
MATTHEW ADAM MARRONE,  :
      Plaintiffs  :
  :
  :    **CIVIL ACTION NO. 1:CV-01-0773**
    v.  :    (Judge Kane)
  :
  :
ALLSTATE INSURANCE CO., et al.  :
    Defendants  :

### ORDER

Before the Court is Plaintiffs' Motion to Permit the Filing of Plaintiff's Medical

Causation Expert Reports Nunc Pro Tunc (Doc. No. 73). Plaintiffs filed the motion on

November 1, 2002 and have not filed a certificate of concurrence or a brief in support of the

motion. Therefore, pursuant to Local Rule 7.5, **IT IS HEREBY ORDERED THAT** Plaintiffs'

motion is **DEEMED WITHDRAWN**.

_____
Yvette Kane
United States District Judge

Date: ___11/27___, 2002



DEFENDANT'S
EXHIBIT

C

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACK MARRONE, husband, KAREN
MARRONE, wife, both individually and
in their capacity as parents and guardians
for VIDA MARRONE, a minor, and
MATTHEW ADAM MARRONE,

        Plaintiffs

        vs.

ALLSTATE INSURANCE COMPANY,
LINDA M. EDLEMAN, FRED SCHAFER,
MT. GRETNA REALTY, and HOUSE
MASTERS

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.: 1:CV-01-0773

(U.S. District Judge Yvette Kane)

**JURY TRIAL DEMANDED**

STATE OF PENNSYLVANIA      )
                              )ss
COUNTY OF _____     )

## AFFIDAVIT OF ECKARDT JOHANNING, M.D., M.SC.

BEFORE ME, the undersigned authority, a Notary Public in and for the County and State aforesaid, personally appeared Eckardt Johanning, M.D., M.Sc., known to me (or satisfactorily proven) to be the person whose name is subscribed, and having been duly sworn, deposes and states under oath as follows:

1.     I am above the age of 18, of sound mind and capable of executing this Affidavit.

2.     My curriculum vitae establishing my competency as an expert is attached as exhibit 1.

3.     The facts and opinions contained in my reports are based on my personal



knowledge and experience and are attached as exhibit 2.


_November 21, 2002_
DATE

_Eckardt Johanning_
Eckardt Johanning, M.D., M.Sc.

SWORN TO and SUBSCRIBED TO

before me this _____ day

of November, 2002.


_____
      (Notary)



NEW YORK STAT

Commissioner of Motor Vehicles
ID:844 850 213

DRIVER LICEN

DOB:04-06-53

JOHANNING,ECKARDT
108 EUCLID AV
ALBANY    NY
12203

SEX:M EYES: GR  HT: 5-09  CLASS
END:      REST:B
ISSUED: 03-22-02   EXPIRES: 04-06

533

# Exhibit 1

# CURRICULUM VITAE

# Dr. med. Eckardt Johanning, M.D., M.Sc.

**Address:**  Occupational and Environmental Life Science - Fungal Research Group (FRG), Inc., 650 Warren Street, Albany, N.Y. 12203
eckardtjohanning@attglobal.net

**Present Appointment:** Private Practice, Medical Director, Fungal Research Group, Inc., Adjunct Instructor, Dep. Community Medicine, Mount Sinai School of Medicine, New York City

**Previous Position:**  1993-2000 Medical Director, Eastern New York Occupational and Environmental Health Center, Albany, N.Y.
1990-1993 Attending physician, Irving J. Selikoff Occupational Health Clinic Center, Mount Sinai Medical Center, New York, Instructor Dep. Community Medicine. Mount Sinai School of Medicine, New York

**Education:**  1964-1973 Georg Büchner Schule, Darmstadt, Abitur, Major in Mathematics/Natural Science
1978-1984 J.W. Goethe University, Frankfurt: Study of Human Medicine

**and**  Sociology
Medical Doctor (Arzt), October 1984

**Scholarships**  "Villigst" scholarship for highly gifted students (1978-1984)
DAAD, ZENAF: US Research Scholarship 1982

**Postdoctoral**  1985-1988 State University of New York Training. Health Science Center of Brooklyn, New York , Residency training in Family Practice
1988-1990 Mount Sinai Medical School - City University of New York, Residency in Occupational and Environmental Medicine - Community Medicine

**Degrees/Certifications:**

Diplomat of the American Board of Family Practice (1988, recertified 1995, 2002)
Master in Community Science, 1990
Diplomat of the American Board of Preventive Medicine, Occupational Medicine, 1991

Dissertation (Ph.D), 1991 - J. W. Goethe University, Frankfurt, FR Germany:
Whole body vibration and back disorders. - magna cum laude -

| | |
|---|---|
| Licensure | N.Y.S. License No. 175278-1, DEA: BJ 1914363 |
| Professional Societies | American College of Occupational and Environmental Medicine<br>American Academy of Family Physicians<br>American Public Health Association<br>International Commission in Occupational Health, (ICOH)<br>(Committes: Organic Dust, Vibration) |
| Reviewer/Consultant: | American Journal of Industrial Medicine<br>International Journal of Occupational and Environmental Health<br>National Sciences and Engineering Research Counsel of Canada<br>Journal for Sound and Vibration |
| Other/Miscellaneous: | Listed among the  A Indoor Environment Power 50" in the US by Indoor Environment Review (August 1997, 1998).<br>Advisor to the Center for Disease Control and Prevention, Atlanta, Ga. (Toxic mold infant investigation)<br>Advisor to Ontario Ministry of Health, Canada; participant of expert panel on toxigenic mold contamination indoors (2/99)<br>Consultant to the World Health Organization (WHO), Geneve, Suisse, (Bioaerosols) (2001/2)<br>Founder and principle organizer of the International Saratoga Springs, New York - Bioaerosols, Fungi and Bacteria, Mycotoxins Conferences (1994, 1996, 1998, 2000 in Helsinki, Finland (together with Healthy Buildings 2000)) which brought together a wide range of leading international researchers and health specialists devoted to public health and prevention.<br>Interviews/quotations by national broadcasting companies (ABC, NBC, CBS, CBC) and newspapers (NYT, USA-Today, Wall-Street Journal, etc.) |
| Awards: | Public Service Award, Indoor Environment 1998; IAQ Publication, Inc.<br>Prof. B. Gedek - Mycotoxin Scientific Research Award, May 2002, The German Mycotoxin Research Association, Berlin, Germany. |
| Grant Support: | -Occupational Health Clinic (Eastern New York Occupational and Environmental Health Center - Kaiser Permanente - Community Health Plan, Albany, N.Y.) New York State - DOH, BOH 96-2 (1997-2002)<br>-Assessment of respiratory exposure hazards in composting. CDC Announcement #738 (NIOSH, Morgantown, WV)<br>-Study of back disorders related to whole-body vibration and ergonomic hazards in locomotive engineers and conductors (supported by Brotherhood of Locomotive Engineers Legislative Board, N.Y.; Volpe Center; U.S. DOT) |

## Original Peer-Reviewed Reports, Books and Other Publications

1) *Whole Body Vibration Exposure in Subway Cars and Review of Adverse Health Effects*. Johanning E, Wilder D, Landrigan P, Pope MH. Journal of Occupational Medicine, Vol 33 No 5, 605-12, 1991

2) *Survey Results of Back and Health Disorders in Whole-body Vibration exposed Subway Operators*. Johanning E, Schechter C, Landrigan P. Revue d'epidemiologie et de sante publique. Vol. 40, suppl., S 129, 1992 / Archives des Maladies Professionnelles, Vol 53 p 591, 1992.

3) *Survey Results of Back Disorders and Health Problems in Subway Train Operators Exposed to Whole-Body Vibration*. E. Johanning Scandinavian Journal of Work, Environment and Health 1991;17:414-9

4) *Asbestos Hazard Evaluation in South Korean Textile Production*. Johanning E, Goldberg M, Kim R. International Journal of Health Service, Vol 24:1, 131-144, 1994.

5) *Munich Mass Transit Operator Cardiovascular and Back Disorder Prevalence and Intervention Study*. Johanning E, Landsbergis P, Geissler H, Karazmann R. International Journal of Occupational and Environmental Health (1996;2:79-87)

6) *Health and Immunology Study following exposure to toxigenic fungi (Stachybotrys atra) in a water damaged office environment*.  Johanning E, Biagini R, Hull D, Morey P, Jarvis B, Landsbergis P., Archives of Occupational and Environmental Health (1996;68:207-218)

7) *Vibration Study* Johanning, E, Christ, E. American Industrial Hygiene Association Journal, Letter to the Editor (58) 261-2, April 1997

8) *Whole-body vibration - call for occupational medical surveillance and prevention*. Johanning, E.  (1997) Journal of Occupational and Environmental Medicine. Letter to the Editor (39)11:1031-2

9) *Building-related illnesses associated with moisture and fungal contamination - Current concepts*. Johanning E, Auger P, Reijula K.  Letter to the Editor - The New England Journal of Medicine, April 9, 1998, Volume 338, Number 15

10) *Stachybotrys revisited* Johanning E (1998) Clinical toxicology 36(6) 629-631

11) *Back disorder intervention strategies for mass transit operators exposed to whole-body vibration - comparison of two transit system approaches and practices*. Johanning E (1998) J Sound and Vibration 215(4) 629-634

12) *(A comparison of occupational carpal tunnel syndrome notified in the Czech Republic and in the USA)*. Urban P, Johanning E, Lukas E, Tencza A. Pracov.(1998)  Lek 50,4 175-80

13) *Toxicity screening of materials from buildings with fungal indoor air quality problems (Stachybotrys chartarum)*. Johanning E, Gareis M, Yang CS, Hintikka EL, Nikulin M, Jarvis B, Dietrich R (1998) Mycotoxin Research, Vol 14 p60-73

14) *Clinical experience and results of a and sentinel health event investigation related to indoor fungal exposure.* Johanning E, Landsbergis P, Gareis M, Yang CS, Olmsted E. Environmental Health Perspectives 1999 Jun;107 Suppl 3:489-494.

15) *Evaluation and management of occupational low back disorders.* Johanning E, Am J Ind Med. 2000 Jan;37(1):94-111.

16) *Whole Body Vibration Exposure in US Railroad Locomotives - An Ergonomic Risk Assessment.* Johanning E, Fischer S, Landsbergis P. Am Ind Hyg Ass Journal, 63:439-446 July/August 2002

## Books/Chapters:

1) *Fungi and bacteria in indoor environments: Health effects, detection and remediation-* Proceedings from the international conference. Johanning E, Yang CS (ed.) Saratoga Springs, N.Y. 1995

2) *Asbestos Health Hazard Evaluation in South Korea: Asbestos Textile Manufacturing. Report to the Collegium Ramazzini.* Johanning E, Goldberg M. Mount Sinai Medical Center, New York.; in "Arbeitsschutz am Beispiel Asbest", Manuscript 67. H. Böckler Stiftung, Düsseldorf, 1992.

3) *Health problems related to fungal exposure - primarily of Stachybotrys atra.* In: Johanning E, Yang CS (ed) Fungi and bacteria in indoor environments: Health effects, detection and Remediation (Conference proceedings), Saratoga Springs, N.Y. 1995

4) *Noise, Vibration, and Heat and Cold* Schneider S, Johanning E, Belard L, Engholm G. In: Ringen K, Englund A, Welch L, Weeks JL, Seegal JL (eds) Construction Safety and Health. Occupational Medicine: State of the Art Review. 10:2, Hanley & Belfus, Philadelphia, 1995.

5) *Airborne Fungi and Mycotoxins (Health effects)* Yang C, Johanning E. In: Hurst CJ, Knudsen GR, McInerney, Stetzenbach LD, Walter WV (ed): Manual of Environmental Microbiology. ASM Press 1997

6) *Whole-body and segmental human vibration.* (Chapter 10) Johanning.E, Christ E, Hulshof C, In: Dickerson B, Erdil M, Cumulative Trauma Disorders: Prevention, Evaluation and Treatment. Van Nostrand Reinhold, New York 1997

7) *Allergene und giftige Schimmelpilze in Innenräumen.* Johanning E. In: Diel, Feist, Krieg, Linden (ed): Ökologisches Bauen und Sanieren. C.F. Müller Verlag Heidelberg, 1997

8) *Schwingungsbelastungen und arbeitsmedizinische Massnahmen bei Schienenfahrern.* Johanning E (1998) VDI Berichte, Köln, Germany (VDI [Association of German Engineers]) 85-92

9) *Low back disorders and dentistry - stress factors and ergonomic intervention.* Johanning E, Bruder R (1998) In: Murphy DC (ed) Ergonomics and the dental care worker. American Public Health Association, Washington, D.C.

10) *Fungal and related exposures.* Johanning E (1999) In: Bowler RM, Cone JE (eds) Occupational Medicine Secrets. Henley & Belfus Publ., Philadelphia, Pa. 135-47

11) *Occupational Medicine for the Family Practitioner* Lomax J, Johanning E. (2001) Lippincott Williams & Wilkens Publ., Philadelphia, Pa.

12) Overview of waste management in the United States and recent research activities about composting related occupational health risks. Johanning E. In: Eikmann Th, Hofmann R. eds. (1999) Stand von Wissenschaft, Forschung und Technik zu siedlungshygienischen Aspekten der Abfallentsorgung und -verwertung. (Status assessment of science, research and techniques related to hygiene in waste-management and -use) Kommission Reinhaltung der Luft im VDI und DIN. Band 30. Schriftenreihe des Vereins für Wasser-, Boden- und Lufthygiene; 104, Berlin, Germany.

13) Bioaerosols, Fungi and Mycotoxins: Health Effects, Assessment, Prevention and Control. Johanning E, (editor) (with over 90 international authors), Eastern New York Occupational and Environmental Health Clinic, Mount Sinai School of Medicine, New York (2000)

14) Toxigenic Fungi and Health - Observation in an Occupational and Environmental Health Clinic. Johanning E, Gareis M, Dietrich R, Märtlbauer, Morey P, Yang CS, Gordon W, Nielson K. In: Gesundheitliche Aspekte toxinogener Schimmilpilze in Gebäuden. Keller R, Senkpiel K. (Editors) Schriftenreihe des Instituts für Medizinische Mikrobiologie und Hygiene der Medizinischen Universität zu Lübeck. Heft 4 (2001)

15) *Fungi and Indoor Health* Johanning E, Ammann HM, In: The Encyclopedia of Environmental Microbiology. Bitton G. (Editor in Chief). Wiley, New York (2002)

16) *Mycotoxin and Indoor Health* Johanning E. In: Guidelines for Biological Agents in the Indoor Environment. Schwela D, (Editor in Chief), World Health Organization, Geneva, Switzerland. (In print)

Others:

*Professional clean up of hazardous fungi, molds, and microbials in buildings after flooding and water leaks.* Johanning E, Morey P. In: Cleaning & Restoration. The official Publication of the American Society of Cleaning and Restoration International. Vol. 35 2; 1998.

## Abstracts, Lectures  and Presentations:

1) *Drug Safety in the Elderly: Drug Interaction Screening with Computer Programs.* American Academy of Family Practice Annual Convention. Los Angeles, 9/1989.
2) *Vibration Hazards.* In "Challenges in Occupational Health in the 1990s: Repetitive Motion Injuries and Occupational Neurotoxicity". ERC Annual Scientific Meeting, New York 5/1990

3) *Etiological Factors for Low Back Pain in Subway Drivers*. Johanning E, Wilder D, Landrigan P, Pope MH. International Society for the Study of the Lumbar Spine. Boston, 6/1990

4) *Whole Body Vibration Exposure and Health Problems of Subway Operators*. American Public Health Association, Annual Meeting. New York, Oct. 1990.

5) *Lead Exposure and Protection Among Demolition Workers*. Goldberg M, Klitzman S, Lau S, Johanning E, Levin S. American Public Health Association, Annual Meeting. New York 10/1990.

6) *Clinical-epidemiological Investigation of Health Effects caused by Stachybotrys atra Building Contamination*. Johanning E, Jarvis BB, Morey PR. Indoor Air '93, Helsinki, Finland. 1993 4:311-316

7) *Remedial Techniques and Medical Surveillance Guidelines for the Handling of Toxigenic Stachybotrys atra*. Johanning E, Morey PR, Goldberg M. Indoor Air '93, Helsinki, Finland. 1993 1:225-31

8) *Fungi and Mycotoxin related Health Problems in Indoor Air Environments*. Johanning E. American Public Health Association (APHA), 121st Annual Meeting. Oct. 24-28, 1993

9) *Cancer Export: Asbestos Production in South Korea*. 6th Congreso Latinoamericano Y 8th Congreso Mundial de Medicina Social, Guadalajara, Mexico, March 1994.

10) *Medical Issues during Remediation of Toxic Mold, especially Stachybotrys atra*. Johanning E, Morey PR. American Industrial Hygiene Conference, Anaheim Ca., May 1994.

11) *Munich Transit Operator Cardiovascular Stress and Back Pain Intervention Study*. Johanning E, Landbergis P, Geissler H, Karazman R. American Public Health Association (APHA), 122st Annual Meeting. Washington D.C., Nov. 1994.

12) *Immunophenotyping of normal human worker volunteers: Distribution and range studies*. Biagini RE, Pinkerton LE, Johanning E, Hull RD, Luster MI. Society of Toxicology meeting. Baltimore March, 1994.

13) *Biological Toxicity Analyses of Mycotoxin Producing Fungal Samples from Field Studies*. Johanning E, Gareis M, Hintikka E, Nikulin M, Yang C (1995) American Industrial Hygiene Conference, Kansas City, Ms.

14) *Medical issues related to municipal waste composting*. Johanning E, Olmsted E, Yang C (1995) American Industrial Hygiene Conference, Kansas City, Ms.

15) *Toxic and irritant effects of biocontaminants*. Johanning E. (3/1996) Biological contamination of indoor environments. Symposium. MidAtlantic Environmental Hygiene Resource Center, University of Tulsa, US EPA, Region 9, San Diego, Ca.

16) *Gesundheitsprobleme durch/nach Pilzkontamination in Innenräumen - Ergebnisse von Feldstudien*. Johanning E, Gareis M, Hintikka EL, Jarvis B, Yang CS, Dietrich R. 18th Mycotoxin Workshop;June, 1996 Kulmbach, Germany,

17) *Inhalation risk of toxigenic bioaerosols, primarily of fungal origin - Clinical experiences and emerging issues*. Johanning E, Auger P, Gareis M, Aberman A, Mainville C. 25th International Congress on Occupational Health (ICOH),Stockholm, Sweden, September 1996

18) *Medical surveillance for composting workers* Johanning E,25th International Congress on Occupational Health (ICOH),Stockholm, Sweden, September 1996

19) *Lead smelter exposure and residential blood lead levels: Lower levels related to improved environmental regulation and better control engineering in New York State ?* Johanning E, Landbergis P, Tencza A, Burton N. American Public Health Association, Annual Meeting. New York, N.Y., November, 1996

20) *Toxic fungi in indoor environments: Results of sentinel health effect investigations*. Johanning E, Gareis M, Hintikka E, Jarvis B, Yang C. American Public Health Association=s Annual Meeting. New York, N.Y., November, 1996

21) *Health effects of biocontaminants for building occupants: Occupational and Non-occupational exposure* Johanning E., Biological Contaminaiton of Indoor Environments, MidAtlantic Environmental Hygiene Resource Center, Symposium, Chicago Ill, April 16-18, 1997

22) *Umweltmedizinische Aspekte bei allergischen und giftigen Schimmelpilzen in Innenräumen* [Environmental aspects of allergic and toxic fungi indoors] Johanning E, Arbeitsgemeinschaft Ökologischer Forschungsinstitute, Jahrestagung, Fulda, FR Germany, May 1997

23) *Ganzkörperschwingungen und Gesundheitsschutz für Fahrer im Nahverkehr* (Whole-body vibration and medical care for transport workers). VDI Vibrationmeeting >97, Verein Deutscher Ingenieure. Annual conference: Vibration at work and in the environment. Veitshöchheim, Germany, 9/97

24) *Vibration health hazards and prevention programs. A comparison of intervention strategies for mass transit drivers.* 8th International Vibration Conference, Southampton, UK, 9/97

25) *Clinical experience of diagnosis and treating patients with indoor fungal exposure.* Johanning E (1998) Abstract. Third International Conference on Bioaerosols, Fungi and Mycotoxins: Health Effects, Assessment, Prevention and Control, Saratoga Springs, New York. Eastern New York Occupational and Environmental Health Center, New York.

26) *Mycotoxin cytotoxicity screening of field samples.* Gareis M, Johanning E, Dietrich R (1998) Abstract. Third International Conference on Bioaerosols, Fungi and Mycotoxins: Health Effects, Assessment, Prevention and Control, Saratoga Springs, New York. Eastern New York Occupational and Environmental Health Center, New York.

27) *Cognitive impairment associated with exposure to toxigenic fungi (i.e. Stachybotrys atra): Results of a preliminary study.* Gordon W, Johanning E, Haddad L (1998) Abstract. Third International Conference on Bioaerosols, Fungi and Mycotoxins: Health Effects, Assessment, Prevention and Control, Saratoga Springs, New York. Eastern New York Occupational and Environmental Health Center, New York.

28) *The medical role of bioaerosols in indoor environments.* Johanning E (1998) De la prévention à la décontamination microbienne dans la bâtiments: aspect médicaux, juridiques et techniques. Natur=Air - Kiwatin, Montreal, Canada.

29) *Fungal remediation and worker=s health and safety.* Johanning, E. First NSF International Conference on Indoor Air Health, May 3-5, 1999. Denver, Co. (invited)

30) *Mold and moisture problems in Indoor environments.* Johanning, E. Bugs, mold and rot. Conference of building science. 1999 Washington D.C.(invited)

31)Overview of waste management in the United States and recent research activities about composting related occupational health risks. Johanning E. Status assessment of science, research and techniques related to hygiene in waste-management and -use. Federal Environmental Protection Agency of Germany. Langen, Germany, 30.8.-1.9.1999 (invited)

32) Occupational health care and prevention in a market economy - critical review of a model clinic in the State of New York, USA. Johanning E. 6th International Conferences. ICOH Scientific committee on health service research and evaluation in occupational health. Cancun, Mexico, Oct 12-14, 1999.

33) Indoor environmental health intervention study. Johanning E. American Public Health Association Annual Meeting. Chicago, Il. November, 1999 (invited).

34) Working with medical community. Johanning, E. Healthy Indoor Environments: Asthma and Allergen Control. Conference on May 10-13, 2000. Dallas, Tx. (University of Tulsa Indoor Air Program et al.)

35) Bioaerosol hygiene and medical surveillance. Johanning, E, Morey, P. American Occupational Health Conference (AOHC) 2000, May 12-19, 2000 in Philadelphia, Pa.

36) *Assessment of respiratory hazards in us composting facilities - exposure study*. Johanning E, VanRaalte J, Olmsted E, Hintz P, Yang CS, Sorenson B, Rylander R , Morey P, Gareis M, Maertlebauer E, Dietrich R . 26th International Congress on Occupational Health, Singapore, Sept. 2000

37) Mycotoxin air sampling in indoor environments with moisture related fungal contamination (*Stachybotrys atra*). Johanning E, Gareis M, Maertlebauer E, Dietrich R . 26th International Congress on Occupational Health, Singapore, Sept. 2000

38) *Whole-body vibration and ergonomic factors in modern US Railroad Locomotives*. Johanning E, Goeres B, Fischer S, Christ E. . 26th International Congress on Occupational Health, Singapore, Sept. 2000

39) *Mold and Mildew in Indoor Environments - Why the Big Fuzz and what we need to know about it*. American Public Health Association - Continuing Education Institute for the 128th Annual Meeting in Boston, Ma (Nov. 12, 2000)

40) *Indoor Health* - Keynote Address - 2nd NSF International Conference on Indoor Air Health. Miami, Fl. January 28-29, 2001.

41) "A look at Today's Building Occupants - Sensitivities in the Workplace" -  Indoor Air Quality Management: What is a Reasonable Approach in Today's Society? Metropolitan New York AIHA Local Section Meeting. March 23, 2001.

42) *Mold and Public Health* - Keynote Address - 18 Annual Conference of the Environmental Information Association. March 25-28, 2001. Albuquerque, NM.

43) Mold and Mildew in Indoor Environments - CEI Course -American Public Health Association - Continuing Education Institute for the 129th Annual Meeting in Atlanta, Ge (Oct. 20, 2001)

44) *Molds and Bioaerosols*. 7th Annual Occupational Safety & Health Conference. 2001 Safety and Health Odyssey. Dep of Labor, New Jersey October 22, 2001.

45) *Airborne mycotoxin sampling and screening analysis*. E Johanning, M Gareis, K Nielsen, R Dietrich, E Märtlbauer, Indoor Air 2002, July 1-5, 2002, Monterey, Ca.

46) *Medical issues related to indoor mycotoxin exposure.* E. Johanning. VI. Conference on Mycotoxin in the Environment of People and Animals. Bydgoszcz, Poland (September 25-27, 2002)

47) Clinical experience and issues related to fungal indoor exposure. National Academy of Science "Damp Indoor Spaces" meeting. (invited expert testimony) Woods Hole, Mass. Oct. 8, 2002.

9/02

# Exhibit 2

# Eckardt Johanning, M.D., M.Sc.

## Occupational and Environmental Life Science -
## Fungal Research Group, Inc. (FRG)

650 Warren Street - Medical Arts Building
Albany, N.Y. 12208 U.S.A.
518-459-3336 • fax - 4646
www.fungalresearchgroup.com

Offices:
Albany,
New York City
Frankfurt/Main, FRG

October 21, 2002

**RE:**

Jack P. Marrone
11673 Highway PT
Dixon, MO 65459

**Date of Birth**

2/22/46

I reviewed again the visit of Jack Marrone from January 17, 2002. This is a summary of the findings. I reviewed all provided outside medical reports and environmental findings, including the Advanced Applied Science report from October, 15, 2000.

Mr. Marrone, age 55, is a VA vet, with 100% disability since 1993 secondary to a gunshot wound, posttraumatic stress syndrome, and chloracne problems. He reported that after moving into and after doing some clean-up work inside the house on 354 Timber Rd, Mount Gretna, Pa, he developed a variety of problems including shortness of breath, eye irritation, chest tightness, wheezing, coughing, excessive fatigue, and nasal problems. He has been sneezing as well. He also developed an increased sensitivity and intolerance to gases, fumes, and a variety of air contaminants. He reports that his chloracne problem had been getting worse, and that he generally would look different. He reported that the special acne soap has not been helpful for him as in the past. He reported that he had not been seen at the time by his VA doctor and he had no special breathing test or chest x-ray test done. He left his home secondary to health concerns and findings of mold and moisture problems in his previous house. Since leaving this house, he felt much better. He stated that his breathing and fatigue had improved. He has less headaches.

## Medications:

Trazodone.

## Past Medical History:

Benign prostrate hypertrophy, exposure to Agent Orange resulting in chloracne development, posttraumatic stress syndrome, and gunshot wound. He had episodes of stomach cramps in the past. He denied any other significant abnormalities.

## Past Surgical History:

 

"is a member of"

AMERICAN COLLEGE OF
OCCUPATIONAL AND
ENVIRONMENTAL MEDICINE

Scrotal cyst surgery in 1976.

## Social History:

He is a smoker starting at age 16, 1-1½ pack per day. He denied any alcohol or significant drug history.

He reported that he now has been living in Missouri, and that he feels much better there. In his current home there are no known environmental problems.

## Physical Examination:

Blood pressure: 120/90 mmHg. Respiratory rate 12/min. Temperature 97 T. Height: 5'9". Weight: 201 pounds. His peak flow was found at 440.

Examination of head, ears, nose, throat, chest, abdomen, lungs, and extremities was overall unremarkable. The nasal passage showed increased erythema and were narrow.

## Laboratory Tests:

On laboratory examination, he showed no reaction to specific IgE allergens; however, he had a marked reaction indicating significant organic dust exposure including to a variety of tested fungi, i.e., *Micropolyspora faeni, Aspergillus fumigatus, Aureobasidium pullulans, Penicillium notatum, and Trichoderma viride*. He also had elevated IgG and IgA response to *Stachybotrys chartarum*. These tests are used as exposure markers and do not necessarily correspond with disease activity.

Pulmonary function test from September 12, 2002 showed that he had overall normal lung function. Chest x-ray was negative.

Immunological test which included IgG subclasses and lymphocyte enumeration test and function test showed a slightly lower than normal absolute CD3 or matured T-lymphocyte cell count with 1462, normal 1507-1953. The remainder of the testing was normal. These findings are non-specific, but typical after intense fungal exposure.

I reviewed medical records provided to me by various providers. These records did not produce any additional information. He has been diagnosed in the past with prostatitis, hemorrhoids, stable COPD, and prostatitis problems.

The environmental investigation and report by Mr. R. Pfromm indicated the presence of moisture related fungi and defects inside the house, in particular in the basement. Fungi included species of *Aspergillus, Penicillium and Stachybotrys*, that were higher inside the house than outside (control). Photos were also provided confirming visible contamination.

**Conclusion**:

Based on recent findings, I conclude that Mr. Marrone had a respiratory reaction after intense exposure to mold and mildew in his home, which was probably also aggravated by doing some repair and clean-up work in the moldy house. He has been diagnosed in addition to his previous medical conditions with upper and lower airway inflammation and irritation effects (Rhinosinusitis, bronchitis) and mold allergy. With a reasonable degree of medical certainty I believe this was the result of the exposure in the described contaminated house. He has been advised that in the future he should avoid any of these problems since he has clearly been sensitized. Provided that he has no further exposure to the fungi, he should be reasonably well.

Sincerely,

Eckardt Johanning, M.D., MSc.
Diplomate of American Board of Preventive Medicine
(Occupational and Environmental Medicine)
Diplomate of American Board of Family Medicine

# Eckardt Johanning, M.D., M.Sc.

## Occupational and Environmental Life Science - Fungal Research Group, Inc. (FRG)

650 Warren Street - Medical Arts Building
Albany, N.Y. 12208 U.S.A.
518-459-3336 • fax - 4646
www.fungalresearchgroup.com

Offices:
Albany,
New York City
Frankfurt/Main, FRG

October 21, 2002

RE:

Date of Birth

Karen A. Marrone
11673 Highway PT
Dixon, MO 65459
12/22/56

I reviewed again the visit of Karen Marrone from January 17, 2002. She came accompanied by her husband and daughter Vida, who also were examined that day. This is a summary of the findings. I reviewed all provided outside medical reports and environmental findings, including the Advanced Applied Science report from October, 15, 2000.

Mrs. Marrone, age 45 years, has a known service related disability since 1976. She has been previously diagnosed with multiple sclerosis in 1977. She reported that after moving into the house on 354 Timber Rd, Mount Gretna, Pa, she developed a variety of problems including shortness of breath, chest tightness, coughing, excessive fatigue, and nasal problems, stomach cramps. She had been diagnosed by her VA physician Dr. DaCosta with sinusitis and bronchitis. She also consulted an ENT specialist who reportedly recommended surgery.

She and the rest of the family left this home October 14, 2001 secondary to health concerns and findings of mold and moisture problems in this house. Since leaving this house, she also felt much better.

## Medications:

Albuterol, Ibuprofen, Baclofen, Clonazepam

## Past Medical History:

Rubella 1972, MS 1977, PUD, reflux, esophagitis, rhinosinusitis since early 70s, PTSD in 80s. Allergy to penicillin.

"is a member of"   AMERICAN COLLEGE OF OCCUPATIONAL AND ENVIRONMENTAL MEDICINE

Karen A. Marrone    ●    2    ●    October 21, 2002

## Past Surgical History:

Gallbladder surgery 5/2000,  hernia repair, cyst removal, laparoscopy.

## Social History:

She is a smoker starting at age 15, 1-2 packs per day. She denied any alcohol or significant drug history.

She reported that she now living with her family in Missouri, and that she feels much better there. In this current home there are no known environmental problems.

## Physical Examination:

Blood pressure: 120/90 mmHg. Respiratory rate 12/min. Temperature 99.8 T. Height: 5'5". Weight: 131 pounds. Her peak flow was  400 ml. She was coughing during the exam.

Examination of head, ears, nose, throat, chest, abdomen, lungs, and extremities was overall unremarkable. She had problems with line walking and imbalance.

## Laboratory Tests:

No reaction to specific IgE and IgG fungal allergens.

Pulmonary function test was not done. Chest x-ray was negative.

Immunological test which included IgG subclasses and lymphocyte enumeration test and function test showed a higher than normal CD4/CD8 ratio and B-lymphocyte cell counts/percentage.  The remainder of the testing was normal. These findings are non-specific, but typical after intense fungal exposure.

I reviewed medical records provided to me by various providers. These records did not produce any additional information.

The environmental investigation and report by Mr. R. Pfromm indicated the presence of moisture related fungi and defects inside the house, in particular in the basement.  Fungi included species of *Aspergillus, Penicillium and Stachybotrys*, that were higher inside the house than outside (control). Photos were also provided confirming visible contamination.

## Conclusion:

Based on recent findings, I conclude that Mrs. Marrone had an respiratory reaction after intense exposure to mold and mildew in her previous home. She has been diagnosed in addition to her previous medical conditions with upper and lower airway inflammation and irritation effects (Rhinosinusitis, bronchitis). With a reasonable degree of medical

Karen A. Marrone                          3                          October 21, 2002

certainty I believe these were the results of the exposure in the described contaminated house. She has been advised that in the future she should avoid any of these moldy indoor exposures and stop smoking. Provided that she has no further exposure to the fungi, she should be reasonably well related to this condition.

Sincerely,

Eckardt Johanning, M.D., MSc.
Diplomate of American Board of Preventive Medicine
(Occupational and Environmental Medicine)
Diplomate of American Board of Family Medicine

# Eckardt Johanning, M.D., M.Sc.

## Occupational and Environmental Life Science - Fungal Research Group, Inc. (FRG)

650 Warren Street - Medical Arts Building
Albany, N.Y. 12208 U.S.A.
518-459-3336 • fax - 4646
www.fungalresearchgroup.com

Offices:
Albany,
New York City
Frankfurt/Main, FRG

October 21, 2002

**RE:**                          Vida A. Marrone
                                 11673 Highway PT
                                 Dixon, MO 65459

**Date of Birth**                5/5/84

I reviewed again the visit of Ms. Vida A. Marrone from January 17, 2002. She came accompanied by her parents, who also were examined that day. This is a summary of the findings. I reviewed all provided outside medical reports and environmental findings, including the Advanced Applied Science report from October, 15, 2000.

Ms. Vida Marrone, age 17 years, is a student who works part time as a waitress. She reported that after moving into the house on 354 Timber Rd, Mount Gretna, Pa, she developed a variety of problems including coughing, sore throat, fatigue, skin irritation, headaches and nasal problems. Away from the house (such as her friends' houses) she generally would feel much better. She had been diagnosed by an emergency room doctor with sinusitis and bronchitis.

She left with her family the house on October 14, 2001 secondary to health concerns and findings of mold and moisture problems. Since leaving this house, she also felt much better.

## Medications:

None.

## Past Medical History:

MVA 2/01 related low back pain.

## Past Surgical History:

None

"is a member of"   AMERICAN COLLEGE OF OCCUPATIONAL AND ENVIRONMENTAL MEDICINE

## Social History:

She is a "very light" smoker (1-5 cigg./day). She denied any alcohol or significant drug history.

She reported that she is now living with her parents in Missouri, and that she feels much better there. In this current home there are no known environmental problems.

## Physical Examination:

Blood pressure: 100/60 mmHg. Respiratory rate 12/min. Temperature 98 T. Height: 5'5". Weight: 138 pounds. Her peak flow was 550 ml.

Examination of head, ears, nose, throat, chest, abdomen, lungs, and extremities was overall unremarkable.

## Laboratory Tests:

No reaction to specific IgE and IgG fungal allergens. There was a very minimal IgA elevation to *Stachybotrys* specific IgA.

Pulmonary function test and Chest x-ray were not done.

Immunological test which included IgG subclasses and lymphocyte enumeration test and function test showed a higher than normal T and B-lymphocyte cell counts/percentage. The remainder of the testing was normal. These findings are non-specific, but typical after intense fungal exposure and some immune reactivity. Follow up repeat evaluation have been recommended.

I reviewed medical records provided to me by various providers. These records did not produce any additional information.

The environmental investigation and report by Mr. R. Pfromm indicated the presence of moisture related fungi and defects inside the house, in particular in the basement. Fungi included species of *Aspergillus, Penicillium and Stachybotrys*, that were higher inside the house than outside (control). Photos were also provided confirming visible contamination.

## Conclusion:

Based on recent findings, I conclude that Ms. Vida Marrone had also a typical acute respiratory reaction after intense exposure to mold and mildew in her previous home. She has been diagnosed with upper and lower acute airway inflammation and irritation effects (Rhinosinusitis, bronchitis). With a reasonable degree of medical certainty I believe these were the results of the exposure in the described contaminated house. She has been advised that in the future she should avoid any of these moldy indoor exposures and stop

Vida A. Marrone                    3                    October 21, 2002

smoking. Provided that she has no further exposure to the fungi, she should be reasonably well related to this condition.


Sincerely,



Eckardt Johanning, M.D., MSc.
Diplomate of American Board of Preventive Medicine
(Occupational and Environmental Medicine)
Diplomate of American Board of Family Medicine

# Eckardt Johanning, M.D., M.Sc.

Occupational and Environmental Life Science -
Fungal Research Group, Inc. (FRG)

650 Warren Street - Medical Arts Building
Albany, N.Y. 12208 U.S.A.
518-459-3336 • fax - 4646
www.fungalresearchgroup.com

Offices:
Albany,
New York City
Frankfurt/Main, FRG

October 21, 2002

**RE:**          Matthew Marrone
                 11673 Highway PT
                 Dixon, MO 65459
**Date of Birth**   7/29/82

I reviewed again the visit of Matthew Marrone from January 17, 2002. This is a summary of the findings. I reviewed also the environmental findings, including the Advanced Applied Science report from October, 15, 2000.

Matthew Marrone, age 19,  is a biology undergraduate student with no prior significant medical history. He reported that after moving into the house on 354 Timber Rd, Mount Gretna, Pa, in August of 1999 he developed shortness of breath, chest tightness, eye irritation, skin lesions under his axillae, excessive fatigue, nasal problems and significant memory loss. After leaving the house he had some improvement. At the time of the visit he was particularly bothered by joint pain in knees, memory problems and fatigue.

## Medications:

None.

## Past Medical History:

Benign. He denied any other significant abnormalities.

## Past Surgical History:





Matthew Marrone                    2                    October 21, 2002

## Social History:

He denied any smoking, alcohol or drug abuse history.

## Physical Examination:

Blood pressure: 110/70 mmHg. Respiratory rate 12/min. Temperature normal Height: 5'10". Weight: 163 pounds. His peak flow was found at 450ml.

Examination of head, ears, nose, throat, chest, abdomen, lungs, and extremities was overall unremarkable.

## Environmental Exposure:

The environmental investigation and report by Mr. R. Pfromm indicated the presence of moisture related fungi and defects inside the house, in particular in the basement. Fungi included species of *Aspergillus, Penicillium and Stachybotrys*, that were higher inside the house than outside (control). Photos were also provided confirming visible contamination.

## Conclusion:

Mr. Matthew Marrone had a variety of health complaints including respiratory reactions that are in time and place associated with exposure to mold and mildew in his previous home. He has been advised that in the future he should avoid any of these fungal indoor exposures and related problems. He has been discharged for care and follow up by his local physicians. Provided that he has no further exposure to the fungi, he should be reasonably well.

Sincerely,

Eckardt Johanning, M.D., MSc.
Diplomate of American Board of Preventive Medicine
(Occupational and Environmental Medicine)
Diplomate of American Board of Family Medicine

## CERTIFICATE OF SERVICE

I, Jeannie L. Kawalec, an employee for the law firm Thomas, Thomas & Hafer, LLP, hereby state that a true and correct copy of the foregoing document(s) was served upon all counsel of record by first class United States mail, postage prepaid, addressed as follows, on the date set forth below:

By First Class U.S. Mail:

Gianni Floro, Esquire
Louis M. Tarasi, Esquire
Tarasi, Tarasi & Fishman, P.C.
510 Third Avenue
Pittsburgh, PA  15219

James G. Nealon, III, Esquire
Nealon & Gover
2411 North Front Street
Harrisburg, PA  17110

Edward A. Monsky, Esquire
Fine, Wyatt & Carey, P.C.
425 Spruce Street
P.O. Box 590
Scranton, PA  18501-0590

Paul E. Scanlan, Esquire
Duane Morris & Heckscher
305 N. Front Street
P.O. Box 1003
Harrisburg, PA 17108

THOMAS, THOMAS & HAFER, LLP

Jeannie L. Kawalec

Dated: 12/11/62