**FILED**
HARRISBURG, PA

JAN 0 3 2003

MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

**THOMAS, THOMAS & HAFER, LLP**
305 North Front Street
P.O. Box 999
Harrisburg, PA 17108
(717) 237-7134
Attorneys for Defendant Edleman

John Flounlacker, Esquire
Attorney I.D. 73112
John J. McNally III, Esquire
Attorney I.D. 52661
Shawn E. Smith, Esquire
Attorney I.D. 86121

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACK MARRONE, husband, KAREN MARRONE, wife, both individually and in their capacity as parents and guardians for VIDA MARRONE, a minor, and MATTHEW ADAM MARRONE <br> Plaintiffs <br><br> v. <br><br> ALLSTATE INSURANCE COMPANY, LINDA M. EDLEMAN, FRED SCHAFER, MT. GRETNA REALTY, and HOUSEMASTERS <br> Defendants | : NO.: 1:CV-01-0773 <br> : <br> : <br> : <br> : <br> : <br> : <br> : JUDGE KANE <br> : <br> : Civil Action Law <br> : <br> : <br> : <br> : Jury Trial Demanded <br> : |

## DEFENDANT LINDA M. EDLEMAN'S
## MOTION *IN LIMINE*

AND NOW, Defendant Linda M. Edleman, by and through her attorneys, Thomas, Thomas & Hafer, LLP, hereby file this Motion *in Limine*, and in support thereof aver as follows:

### I.    Statement of Facts

1.    Plaintiffs and the former legal counsel initiated this lawsuit by filing their Complaint on May 3, 2001.

2.      On November 2, 2002, upon receiving leave of Court, Plaintiffs filed an Amended Complaint.   A true and correct copy of Plaintiffs' Amended Complaint is attached hereto as Exhibit A.

3.      The Amended Complaint alleges that as a direct and proximate result of exposure to mold Plaintiffs suffered, and will continue to suffer, from the following things:

- Memory loss
- Mood swings
- Depression
- Severe fatigue
- Sexual dysfunction
- Hair loss
- Abdominal cramping
- Diarrhea
- Sinusitis
- Phlegm and coughing
- Fever
- Dry and itchy skin
- Loss of concentration
- Loss of cognitive functions
- Severe loss of voice
- Continuous headaches

See Exhibit A, Paras. 35-38.

WHEREFORE, Defendant Edelman respectfully requests that all testimony regarding physical injury allegedly suffered by Plaintiffs be excluded from trial.

## II.   **PROCEDURAL HISTORY**

4.      Paragraphs 1-3 are incorporated herein as if set forth in full.

5.      On or about September 21, 2001, a Joint Case Management Plan was submitted to the Court.

6.    On September 26, 2001, the parties participated in the Initial Case Management Conference.

7.    On September 27, 2001, this Honorable Court entered a Case Management Order which, among other things, required that all fact discovery be concluded by February 28, 2002, and that the parties were required to produce their expert reports by March 29, 2002.

8.    On November 6, 2002, Plaintiffs' former counsel advised all of the parties that he would be withdrawing his representation of Plaintiffs.

9.    Ultimately, on November 21, 2001, a Motion to Withdraw as counsel was filed by Attorney Richard F. Stevens.

10.    On December 19, 2001, this Honorable Court granted Attorney Stevens' request to withdraw his representation of Plaintiffs.

11.    On December 21, 2001, this Honorable Court granted Plaintiffs' First Request for an Extension of Time for the purpose of securing new legal counsel.

12.    On January 15, 2002, the Court granted Plaintiffs' Second Request for an Extension of Time, also for the purpose of securing new counsel to proceed with this litigation.

13.    On February 1, 2002, Louis M. Tarasi, Esquire, of the law firm of Tarasi, Tarasi & Fishman, P.C., entered his appearance for Plaintiffs.

14.    On or about February 19, 2002, this Honorable Court entered a revised Case Management Order which provided, among other things, that a discovery cutoff for this case was to occur on June 28, 2002, and that expert reports were to be produced by July 12, 2002.

15.    On July 2, 2002, Plaintiffs filed a Motion seeking a third extension, requesting additional time for the purposes of pursuing further fact discovery.

16.    On July 5, 2002, this Honorable Court granted the above-referenced Motion and issued a new Case Management Order which provided that discovery was to conclude by August 30, 2002, reports of experts were due on September 13, 2002 and supplemental expert reports were due by September 27, 2002.   A true and correct copy of this Court's July 5, 2002 Case Management Order is attached hereto as Exhibit B.

17.    On October 18, 2002, Defendant Edelman filed a Motion for Summary Judgment alleging that, *inter alia,* after discovery Plaintiffs were unable to meet their burden of proof on the essential issues of their case against Defendant Edelman.

18.    Also on October 18, 2002, Defendant Edelman received a facsimile copy of Plaintiffs' Request seeking an extension of time for the purposes of securing a report from an unidentified medical expert.

19.   To that date, Plaintiffs had not produced any report from a medical expert, nor had Plaintiffs identified any medical expert they planned to use in connection with prosecuting this case.

20.   The Plaintiffs' Motion for Extension of Time in which to file expert reports was their fourth request for enlargements of time in connection with this lawsuit.  Moreover, this request was made approximately thirty (30) days after the deadline for production of expert reports expired.

21.   On October 31, 2002, Plaintiffs filed a motion to permit the filing of medical causation expert reports *nunc pro tunc*, which was Plaintiffs' fifth attempt to somehow extend time in this case.

22.   On November 5, 2002, this Honorable Court denied Plaintiffs' Motion to Extend Time in which to file expert reports.

23.   On November 23, 2002, Plaintiffs filed their Amended Response to Defendant Edelman's Motion for Summary Judgment.

24.   Contained in the voluminous documents accompanying Plaintiffs' Response was a document entitled "Affidavit of Eckardt Johanning, M.D., M.Sc.

25.   On December 11, 2002, Defendant Edelman filed a Motion to Strike the Affidavit of Dr. Johanning as violative of both this Court's Case Management Order and the Federal Rules of Civil Procedure.

5

26.    Defendant Edelman's Motion for Summary Judgment, Plaintiffs' Motion to Permit the Filing of Medical Expert Causation Reports *Nunc Pro Tunc*, and Defendant Edelman's Motion to Strike the Affidavit of Dr. Johanning are currently pending before this Honorable Court.

## III.   ARGUMENT

27.    Paragraphs 1-26 are incorporated herein as if set forth in full.

28.    Should this Honorable Court deny Plaintiffs' motion to permit the filing of medical causation reports *nunc pro tunc*, Plaintiffs should not be permitted to testify as to claims of physical injury, impairment or their alleged causation.

29.    Pennsylvania law is clear that with regard to claims of physical injury or impairment, expert medical testimony is necessary to establish a causal nexus between the injury and the alleged tortious conduct.  Maliszewski v. Renden, 374 Pa.Super. 109, 113, 542 A.2d 170, 172 (1988).

30.    Medical testimony is needed regarding injuries suffered except in the rare case where there is an obvious causal relationship.  Nicklaus v. Vivident, Inc., 767 F.Supp. 94, 96 (M.D. Pa. 1991), aff'd, 986 F.2d 1409 (3rd Cir. 1992).

31.    As this Court has stated, "[a]n obvious causal relationship exists when the injury is either an 'immediate and direct' or the 'natural and probable' result of the complained act.  The injury and the act must be so closely connected that a lay person could diagnose the causal relationship."  Id.

32.     In the present case, if this Honorable Court denies Plaintiffs' motion to permit the filing of expert causation reports *nunc pro tunc* and Defendant's Edelman's Motion for Summary Judgment, there is no medical evidence regarding the connection between any alleged actions by Defendant Edelman, the mold found in the basement, and the injuries of which Plaintiffs complain.

33.     Plaintiffs claim numerous injuries in their Amended Complaint from sexual dysfunction, to hair loss, to general respiratory illness.

34.     As there is no obvious causal connection between any of the actions Plaintiffs attribute to Defendant Edelman and their alleged injuries, Defendant Edelman respectfully submits that any lay testimony regarding injuries or their causation be excluded.

35.     In the alternative, should Plaintiffs' motion to permit the filing of medical expert causation reports *nunc pro tunc* be granted, Defendant Edelman requests that any testimony pertaining to Plaintiffs' alleged injuries or their causation be limited to the scope of the report submitted by Dr. Johanning.

36.     In addition to the need for expert testimony to provide a causal link noted above, Federal Rule of Civil Procedure 26(a)(2)(B) provides that a party planning to present expert testimony must produce a report that contains "a complete statement of all opinions to be expressed and the basis and reasons therefore." F.R.C.P. 26(a)(2)(B).

37.     The purpose behind requiring expert reports is "the elimination of unfair surprise to the opposing party and the conservation of resources." Chladec v. Milligan, 1998 U.S. Dist. LEXIS 9209, p. 9, (E.D. Pa. 1998) (quoting, Reed v. Binder, 164 F.R.D. 424, 429 (D.N.J. 1996)).

38.     Dr. Johanning's reports regarding Plaintiffs Jack Marrone, Karen Marrone and Vida Marrone limit his opinion to the possibility of a respiratory reaction caused by the exposure to mold and mildew.  A true and correct copy of the Report of Eckardt Johanning, M.D., M.Sc., is attached hereto as Exhibit C.

39.     Dr. Johanning's report as to Plaintiff Matthew Marrone contains no opinion within a reasonable degree of medical certainty. See Exhibit C.

40.     Thus, to the extent that Plaintiffs' proposed expert has a medical causation opinion, it is limited to alleged respiratory ailments and does not include the numerous other alleged injuries Plaintiffs claim.

41.     Moreover, Dr. Johanning reaches no opinion as to Plaintiff Matthew Marrone.

42.     As such, any testimony presented at trial, whether that of an expert or a lay person, should be limited to any alleged respiratory condition as there is no expert support for any of the other claims of injuries Plaintiffs make, and there should be no testimony regarding Plaintiff Matthew Marrone as there is no medical basis for such testimony.

WHEREFORE, Defendant Edelman respectfully submits that any testimony regarding physical injuries or their causation be excluded from trial. In the alternative, should Plaintiffs' motion to permit the filing of medical expert causation reports *nunc pro tunc* be granted, any testimony presented at trial should be limited to alleged respiratory conditions, and any testimony regarding other injuries should be excluded. Further, as there is no medical basis for Plaintiff Matthew Marrone's alleged physical injuries, all testimony regarding physical injuries he may have suffered should also be excluded.

Respectfully submitted,

**THOMAS, THOMAS & HAFER, LLP**

By:_____
John Flounlacker, Esquire
John J. McNally III, Esquire
Shawn E. Smith, Esquire
P.O. Box 999
Harrisburg, PA  17108-0999
(717)237-7134

Date:  January 3, 2003
:216668

## CERTIFICATE OF SERVICE

I. Shawn E. Smith, Esquire, of the law firm Thomas, Thomas & Hafer, LLP, hereby state that a true and correct copy of the foregoing document(s) was served upon all counsel of record by first class United States mail, postage prepaid, addressed as follows, on the date set forth below:

By First Class U.S. Mail:

Gianni Floro,Esquire
Louis M. Tarasi, Esquire
Tarasi, Tarasi & Fishman, P.C.
510 Third Avenue
Pittsburgh, PA  15219

James G. Nealon, III, Esquire
Nealon & Gover
2411 North Front Street
Harrisburg, PA  17110

Edward A. Monsky, Esquire
Fine, Wyatt & Carey, P.C.
425 Spruce Street
P.O. Box 590
Scranton, PA  18501-0590

Paul E. Scanlan, Esquire
Duane Morris & Heckscher
305 N. Front Street
P.O. Box 1003
Harrisburg, PA 17108

THOMAS, THOMAS & HAFER, LLP


Dated:  January 3, 2003                         Shawn E. Smith

*A*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACK MARRONE, husband, KAREN      :
MARRONE, wife, both individually and    :
in their capacity as parents and guardians   :      Civil Action No.      1: CV-01-0773
for VIDA  MARRONE, a minor, and    :
MATTHEW ADAM MARRONE,      :
      Plaintiffs      :
          :
    vs.      :
          :
ALLSTATE INSURANCE COMPANY,      :
LINDA M. EDLEMAN, FRED SCHAFER,  :
MT.  GRETNA REALTY, and      :      JURY TRIAL DEMANDED
HOUSE MASTERS      :
      Defendants      :

## AMENDED COMPLAINT

AND NOW COMES, the Plaintiffs, by and through their counsel, Stevens & Johnson, and

for their Complaint states and alleges the following:

### JURISDICTION

1.  Plaintiffs seek jurisdiction of this Court under Diversity of Citizenship pursuant to

28 U.S.C. § 1332.  Plaintiffs are citizens of the State of Missouri.  Defendant Allstate Insurance

Company, is duly incorporated in the State of Delaware, with its corporate headquarters located in

Illinois. Defendant Linda M. Edleman is a citizen of Pennsylvania, Defendant, Mt. Gretna Realty is located in Pennsylvania, Defendant Housemasters is an independently owned franchise located in Pennsylvania. The matter in controversy exceeds, exclusive of interests and costs, the sum specified by 28 U.S.C. § 1332.

## PARTIES

2.    Plaintiffs, Jack Marrone and Karen Marrone, are both adults, who are husband and wife, and reside at 11673 Highway PP, Dixon, Missouri. They are the natural guardians of Vida Marrone, their daughter.

3.    Plaintiff, Vida Marrone, is a sixteen (16) year old minor, and daughter of Jack and Karen Marrone and resides with her parents at 11673 Highway PP, Dixon, Missouri.

4.    Plaintiff, Matthew Adam Marrone, is an adult residing at 308 Sherman Avenue, Lebanon, Missouri.

5.    Defendant, Allstate Insurance Company is a corporation, duly incorporated in the State of Delaware, with its corporate headquarters located at Allstate Plaza, 2775 Sanders Road, Northbrook, Illinois.

6.    Defendant, Linda M. Edleman, is an adult woman residing at 82 Norway Lane, Lebanon, Lebanon County, Pennsylvania.

7.    Defendant, Fred Schafer, was Defendant Edleman's real estate agent and is located at 83 Columbia Avenue, Mt. Gretna, Lebanon County, Pennsylvania.

8.    Defendant, Mt. Gretna Realty, is located at 83 Columbia Avenue, Mt. Gretna, Lebanon County, Pennsylvania.

2

9.    Defendant, HouseMasters, is an independently owned franchise, located at 203, West Caracas Avenue, Hershey, Dauphin County, Pennsylvania.

10.    At all relative times hereto, Defendants Allstate, Mt. Gretna Realty, and HouseMasters, were acting through their respective agents, servants, employees, and ostensible agents who were acting within the course and scope of their employment with the above listed Defendants and under the exclusive control of said Defendants.

## BACKGROUND

11.    On or about June of 1999, the Plaintiffs came to Pennsylvania to look for a home.

12.    On or about July of 1999, the Plaintiffs found the home at issue, located at 354 Kimber Road, Mt. Gretna, Lebanon County, Pennsylvania, owned at that time by Defendant Linda M. Edleman.

13.    Mt. Gretna Realty, at all relevant times, acted as the agent of the seller, Linda M. Edleman, in the sale of the property at issue, and as such knew, or should have known, due to previous experience in the sale of homes in the neighborhood, of the potential for water/dampness and mold problems with the house at issue.

14.    On or about July 30, 1999, the Plaintiffs hired Defendant HouseMasters, to inspect said home, who did so through their agent, servant, employee, or ostensible agent.

15.    Said inspection was for any problems associated with the purchase of a dwelling.

16.    Said inspection noted water stains in the basement and without further inspection HouseMasters recommended to "slope soil away from house; keep down spouts clean and flowing, or consider extending spouts onto surface."

3

17.   Plaintiffs, relying on said report, complied fully with said recommendation.

18.   Defendant Allstate issued an insurance policy covering the property at issue which became effective August 25, 1999.

19.   Prior to completing the purchase, Defendant Edleman, pursuant to 68 P.S. §1024, provided a Seller's Property Disclosure Statement specifically denying any basement dampness/water problems or leakage problems.

20.   On or about August 31, 1999, Plaintiffs completed the purchase of said home and the Plaintiffs immediately took possession and occupied said property relying on the representations of all of the Defendants except Defendant Allstate.

21.   All of the contracts referred to in this suit have in addition to the other terms, the implied covenant of "good faith."

22.   On or about July of 2000, the Plaintiffs went away on vacation, and returned one (1) week later to find the basement covered in mold.  Said mold covered the walls, ceiling, floor, and furniture.  This was the first time that the Plaintiffs had any notice of this problem.

23.   Plaintiffs immediately contacted Defendant Allstate and filed an insurance claim.

24.   Defendant Allstate's agent, servant, employee, or ostensible agent, at all times acting in the course and scope of his employment, performed only a cursory and superficial inspection, and in a letter dated August 10, 2000, denied coverage claiming said damage was the result of a "preexisting condition" and therefore not covered by Plaintiffs' policy.

25.   The cause of the "so called" preexisting condition was not stated.

26.   There was also no statement that Plaintiffs should have somehow been aware of the

4

condition.

27.    Despite Defendant Allstate's involvement in similar litigation concerning the health hazards posed by mold, at no time did Defendant Allstate, or its agents, servants, employees, or ostensible agents, who now had actual knowledge of the mold problem, inform or otherwise make known to the Plaintiffs the possibility of potential health problems related to the growth of mold, or other organic toxins.

28.    Plaintiffs, being unaware of the potential catastrophic dangers created by mold remained in the home.

29.    As between Plaintiffs and Defendant Allstate, an unknown condition, does not meet the test of a preexisting condition; or in the alternative, the test for preexisting condition in this policy is either ambiguous or unenforceable.

30.    On or about August 28, 2000, the Plaintiffs had their home inspected by Advanced Applied Sciences, Inc., whose corporate headquarters is located at 4400 Linglestown Road, Harrisburg, Pennsylvania.

31.    Said inspection consisted of a bioaerosol survey.

32.    On or about September 29, 2000, as a result of a telephone conversation with Advanced Applied Sciences, Inc., the Plaintiffs learned the results of the aforementioned testing.

33.    Plaintiffs learned that there was a finding of "fungal contaminations in the house" consisting of, but not limited to, Aspergillus, Stachybotrys, Penicillium, Alternaria, Chrysosporium, Epicoccum, and Cladosporium, said inspection also revealed a relative humidity level in    the basement 21% higher than that found outside the house.

34.   Having learned that the toxic levels in the house were unsafe, the Plaintiffs, as a result, were forced to vacate the premises.

35.   As a direct and proximate result of exposure to said fungal toxins, Plaintiff, Jack Marrone has suffered and will continue to suffer from among other things:

(a)   memory loss

(b)   mood swings

(c)   depression

(d)   severe fatigue

(e)   sexual dysfunction

36.   As a direct and proximate result of exposure to said fungal toxins, Plaintiff, Karen Marrone has suffered and will continue to suffer from among other things:

(a)   hair loss

(b)   abdominal cramping

(c)   diarrhea

(d)   sinusitis

(e)   phlegm and coughing

(f)   fever

(g)   dry and itching skin

(h)   loss of concentration

(i)   loss of cognitive functions

(j)   severe fatigue

6

(k)    severe loss of voice

37.    As a direct and proximate result of exposure to said fungal toxins, Plaintiff, Vida Marrone has suffered and will continue to suffer from among other things:

(a)    hair loss

(b)    sinusitis

(c)    continuous headaches

(d)    diarrhea

(e)    cramping

(f)    severe fatigue

38.    As a direct and proximate result of exposure to said fungal toxins, Plaintiff, Matthew Adam Marrone has suffered and may continue to suffer from among other things:

(a)    severe fatigue

(b)    loss of concentration

(c)    memory loss

39.    As a direct and proximate result of exposure to said fungal toxins, the Plaintiffs have suffered and will continue to suffer embarrassment, humiliation, and psychological trauma.

40.    As a direct and proximate result of said fungal toxins, the Plaintiffs have suffered financial damages, including but not limited to, the economic loss of their home.

41.    To this date, the house at 354 Kimber Road is still standing, vacant and unsalable.

42.    At all times material hereto, the Plaintiffs have met all of their obligations acquired under all contracts mentioned below.

7

43.     Plaintiffs now bring this action for damages caused by the Defendants bad faith, breach of contract, misrepresentations, negligence, and violations of statutes.

## COUNT I

### PLAINTIFFS v.  ALLSTATE INSURANCE COMPANY
### BAD FAITH

44.     The Plaintiffs hereby incorporate paragraphs 1 through 43 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

45.     Defendant Allstate Insurance Company failed to handle the Plaintiffs' claims in a reasonable manner by failing to perform a complete and detailed investigation as to the cause of said fungal toxins.

46.     Defendant Allstate Insurance Company violated the provisions of 42 Pa. C.S.A. §8371; the Unfair Insurance Practices Act, 40 P.S. § 1171.1 et al., and the Unfair Claims Settlement Practices, Title 31, Subsection 146.1 et al.

47.     An action for bad faith may arise from an insurer's inadequate investigations. *O'Donnell v.  Allstate Insurance Co., 734 A.2d 901 (Pa.  Super.  1999).*

48.     Defendant Allstate Insurance Company also acted in bad faith by failing to inform the Plaintiffs of possible health risks associated with exposure to fungal toxins, which the Defendant was or should have been aware of from such claims which were known to Defendant Allstate previously.

49.     In addition to all other monetary demands heretofore made, in order to punish Defendant Allstate Insurance Company for their bad faith and to deter other insurers from engaging

in similar activities, and to compensate Plaintiffs for the complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars together with attorneys' fees, interests, costs, and punitive damages in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant Allstate Insurance Company for payment in excess of One Hundred Thousand ($100,000.00) Dollars, plus attorneys' fees, costs, and punitive damages in excess of One Hundred Thousand ($100,000.00) Dollars.

## COUNT II

### THE PLAINTIFFS v. ALLSTATE INSURANCE COMPANY
### BREACH OF CONTRACT

50.    The Plaintiffs hereby incorporate paragraphs 1 through 49 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

51.    The Plaintiffs, Jack and Karen Marrone, contracted with Defendant Allstate Insurance Company to provide homeowners insurance coverage for the Plaintiffs' property which included an express or implied requirement for Defendant Allstate to fairly, in good faith, and with the exercise of reasonable care, without bad faith, to adjust covered claims by Plaintiffs.

52.    Defendant Allstate, through its agents, representatives, and employees breached the contract by performing the most simple of inspections, then coming to the immediate determination

that the mold infestation of the house at issue was a pre-existing condition, despite the fact that there was nothing which would indicate that Plaintiffs were aware of any alleged preexisting problem.

53.    Defendant Allstate failed to properly evaluate and pay Plaintiffs' claim within a reasonable period of time, which constituted a breach of its contract with the Plaintiffs, to properly adjust claims by the Plaintiffs.

54.    Defendant Allstate also failed to warn the Plaintiffs of the potential danger associated with mold.

55.    Defendant Allstate failed to properly apply the terms and conditions of the policy.

56.    As a direct and proximate result of Defendant Allstate's breach of contract, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant Allstate Insurance Company for payment in excess of One Hundred Thousand ($100,000.00) Dollars.

## COUNT III

### PLAINTIFFS v. LINDA M. EDLEMAN
### MISREPRESENTATION

57.    The Plaintiffs hereby incorporate paragraphs 1 through 43 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

10

58.     Defendant Edleman had a duty to disclose all material defects relating to the property at issue, pursuant to the Real Estate Seller Disclosure Act (68 P.S. § 1021 et seq.).

59.     In the Seller's Property Disclosure Statement, required pursuant to 68 P.S. § 1024, Defendant Edleman intentionally misrepresented the conditions associated with the property at issue when she indicated that there was no basement dampness/water problems or leakage problems.

60.     Defendant Edleman knew, or should have known, that said basement was prone to dampness and water problems and disclosed same as required by law.

61.     At all times material hereto, the Plaintiffs relied upon the misrepresentations of Defendant Edleman.

62.     These undisclosed problems lead to the formation of the mold in July of 2000.

63.     As a direct and proximate result of Defendant Edleman's failure to disclose said information, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, as set forth supra., and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant Edleman  for payment in excess of One Hundred  Thousand ($100,000.00) Dollars, Plaintiffs also request Rescission of the subject transaction for the sale of the property at issue and complete restitution together with a judgment ordering other incidental and consequential costs, prejudgment interest, attorneys' fees, and cost of suit.

11

## COUNT IV

### PLAINTIFFS v LINDA M. EDLEMAN
### NEGLIGENCE

64.     The Plaintiffs incorporate paragraphs 1 through 41 and 57 through 63 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

65.     Defendant Edleman had a legally imposed duty to disclose all known defects to the property at issue prior to settlement.

66.     Defendant Edleman knew or should have known of said defects to the property, in the form of dampness/water leakage in the basement.

67.     Defendant Edleman negligently breached this duty when she failed to disclose said information as was required by law. *negligently failed to disclose*

68.     These undisclosed problems lead to the formation of the mold in July of 2000.

69.     As a direct and proximate result of Defendant Edleman's failure to disclose said information, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant Edleman for payment in excess of One Hundred Thousand ($100,000.00) Dollars, Plaintiffs also request Recision of the subject transaction for the sale of the property at issue and

12

complete restitution together with a judgment ordering other incidental and consequential costs, prejudgment interest, attorneys' fees, and cost of suit.

## COUNT V

### PLAINTIFFS v. LINDA M. EDLEMAN
### BREACH OF CONTRACT

70.    The Plaintiffs hereby incorporate paragraphs 1 through 43 and 57 through 69 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

71.    The Plaintiffs, Jack and Karen Marrone, contracted with Defendant Edleman for the purchase of her house.

72.    When Defendant Edleman agreed to said contract, she made express or implied warranties concerning the condition of said house.

73.    Defendant Edleman breached her contract with the Plaintiffs by failing to disclose relevant information concerning the condition of the basement prior to the sales transaction.

74.    These undisclosed problems lead to the formation of the mold in July of 2000.

75.    As a direct and proximate result of Defendant Edleman's breach of contract, the Plaintiffs, Jack and Karen Marrone, have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred  Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone and Karen Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant Edleman  for payment in

13

excess of One Hundred  Thousand ($100,000.00) Dollars, Plaintiffs also request Recision of the

subject transaction for the sale of the property at issue and complete restitution together with a

judgment ordering other incidental and consequential costs, prejudgment interest, attorneys' fees,

and cost of suit.

## COUNT VI

### PLAINTIFFS v.  FRED SCHAFER AND MT.  GRETNA REALTY MISREPRESENTATION

76.    The Plaintiffs incorporate paragraphs 1 through 43 of their Amended Complaint,

inclusive.  as though the same were set forth herein at length.

77.    Defendants Fred Schafer and Mt.  Gretna Realty were at all relevant times the agent,

servant, employee, or ostensible agent of Defendant Linda M.  Edleman, and acted through its

agents, servants, employees, and ostensible agents.

78.    Defendants Fred Schafer and Mt.  Gretna Realty were, and have been an agent for,

other homes in the area and as such, due to their experience and expertise, knew or should have

know that the property in question, and the area was prone to said dampness/water problems.

79.    Defendants Fred Schafer and Mt.  Gretna Realty had a duty to disclose, as well as a

duty to make sure that the seller, their principle, disclosed all known defects in the property at issue

prior to sale.

80.    Defendants Fred Schafer and Mt.  Gretna Realty breached that duty by failing to

disclose, and acted in concert with Defendant Edleman to not reveal said known defects relating to

dampness/water.

14

81.    These undisclosed problems lead to the formation of the mold in July of 2000.

82.    As a direct and proximate result of Defendants Fred Schafer and Mt. Gretna Realtys' failure to disclose said information, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendants Fred Schafer and Mt. Gretna Realty for payment in excess of One Hundred Thousand ($100,000.00) Dollars, Plaintiffs, Jack and Karen Marrone, also request Recision of the subject transaction for the sale of the property at issue and complete restitution together with a judgment ordering other incidental and consequential costs, prejudgment interest, attorneys' fees, and cost of suit.

## COUNT VII

### PLAINTIFFS v. FRED SCHAFER AND MT. GRETNA REALTY
### UNFAIR TRADE PRACTICE AND CONSUMER PROTECTION LAW (UTPCPL)

83.    Plaintiffs incorporate paragraphs 1 through 43 and 76 through 82 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

84.    In view of the foregoing, the Plaintiffs believe and therefore aver that the Defendants, Fred Schafer and Mt. Gretna Realty, have engaged in unfair and/or deceptive acts or practices as contemplated by the Pennsylvania Unfair Trade Practice and Consumer Protection Law (hereinafter

15

sometimes referred to as "UTPCPL") which include but are not limited to the following:

(a) Using deceptive representations in connection of the condition of the aforesaid sale of subject property;

(b) In representing that said property was not defective when they knew, or should have known, it was not;

(c) Engaging in fraudulent conduct which created a likelihood of confusion and/or misunderstanding in the Plaintiffs' purchase, ownership, and maintenance of the subject property;

(d) Defendants engaged in the foregoing conduct for the sole purpose of concealing the seriousness and gravity of the defective conditions of said property and thus preventing any further action to rectify the serious and defective condition of the subject property which was reckless, malicious, and in gross disregard of the Plaintiffs' rights.

85. As a direct and proximate cause of the Defendants' violation of the UTPCPL, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars, and are entitled to treble damages and attorneys' fees.

WHEREFORE, Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against the Defendants Fred Schafer and Mt. Gretna Realty, in excess of One Hundred Thousand ($100,000.00) Dollars, costs, treble damages, and punitive damages.

**COUNT VIII**

16

## PLAINTIFFS v. HOUSEMASTERS
## NEGLIGENCE

86.    The Plaintiffs hereby incorporate paragraphs 1 through 43 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

87.    At all relative times hereto, Defendant HouseMasters acted through its agents, employees, servants, and ostensible agents, including but not limited to, Chuck Berthound, the HouseMasters inspector who inspected the Plaintiffs home.

88.    Due to concerns of the Plaintiffs regarding water spots in the basement, they contracted with and hired HouseMasters to perform an inspection of what became the fungal toxin infested house prior to their purchasing the same.

89.    On or about July 30, 1999, Defendant HouseMasters performed an inspection of the home.

90.    The HouseMasters report noted water stains in the basement, and recommended sloping the soil away from the house, keeping the down spouts clean, or to consider extending the spouts onto the surface.

91.    Defendant, HouseMasters, through its agent Mr. Berthound, was and is a professional house inspection company and therefore holds itself out as expert in said field.

92.    Defendant, HouseMasters, while noting the water stains, did not identify the source of said stains, nor did they recommend further investigation, nor did they refer the Plaintiffs to other professionals who may have been of assistance.

93.    In reliance of the HouseMasters report, which was void of any warnings of potential

17

problems, the Plaintiffs purchased the house at issue.

94.     Defendant HouseMasters had a duty to inspect said home for defects and to then notify the potential purchasers of said defects.

95.     As a direct and proximate result of Defendant HouseMasters's failure to disclose said information, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant HouseMasters for payment in excess of One Hundred Thousand ($100,000.00) Dollars, interest, and costs of this suit.

## COUNT IX

### PLAINTIFFS v. HOUSEMASTERS
### MISREPRESENTATION

96.     The Plaintiffs hereby incorporate Paragraphs 1 through 43 and 86 through 95 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

97.     Defendant HouseMasters misrepresented the conditions of the house at issue to the Plaintiffs when it failed to inform them of the source of the water damage and/or of any current or potential problems related to water damage.

98.     The Plaintiffs' justifiably relying on said information purchased the house at issue.

18

99.     As a direct and proximate result of Defendant HouseMasters's failure to disclose said information, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant HouseMasters for payment in excess of One Hundred Thousand ($100,000.00) Dollars.

## COUNT X

### PLAINTIFFS v. HOUSEMASTERS
### BREACH OF CONTRACT

100.    The Plaintiffs hereby incorporate paragraphs 1 through 43 and 86 through 99 of their Complaint, inclusive, as though the same were set forth herein at length.

101.    Plaintiffs, Jack and Karen Marrone, contracted with HouseMasters to perform an inspection of the property at issue, in order to determine any defects or potentially hazardous conditions on the property prior to the Plaintiffs purchasing the same.

102.    The Plaintiffs specifically contracted with HouseMasters regarding potential water/dampness problems with the house.

103.    Defendant, HouseMasters, while noting water damage, failed to identify the source of said damage, the severity of said source, nor did they identify or notify the Plaintiffs regarding any potential health problems pertaining to said water/dampness prior to the purchase of what became

19

the fungal toxin infested home.

104.    As experts in the field of home inspection, Defendant HouseMasters knew, or should have known, that fungal growth was a potential result of said water/dampness.

105.    As experts in the field of home inspection, Defendant HouseMasters knew, or should have known, that said fungal growth was potentially toxic and harmful to human health.

106.    Despite their contractual arrangement with the Plaintiffs to inform them of potential hazards associated with their prospective home, Defendant HouseMasters at no time informed them of any potential fungus or potential harm which could result therefrom.

107.    As a direct and proximate result of Defendant HouseMasters breach of contract with the Plaintiffs, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone and Karen Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against the Defendant HouseMasters in excess of One Hundred Thousand ($100,000.00) Dollars.

## COUNT XI

### PLAINTIFFS v. HOUSEMASTERS
### UNFAIR TRADE PRACTICE AND CONSUMER PROTECTION LAW (UTPCPL)

108.    The Plaintiffs incorporate paragraphs 1 through 43 and 86 through 107 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

20

109.    In view of the foregoing, the Plaintiffs believe and therefore aver that the Defendant, HouseMasters, has engaged in unfair and/or deceptive acts or practices as contemplated by the Pennsylvania Unfair Trade Practice and Consumer Protection Law (hereinafter sometimes referred to as "UTPCPL") which include but are not limited to the following:

(a)    Using deceptive representations in connection of the condition of the aforesaid sale of subject property;

(b)    In representing that said property was not defective when they knew, or should have known, it was not;

(c)    Engaging in fraudulent conduct which created a likelihood of confusion and/or misunderstanding in the Plaintiffs' purchase, ownership, and maintenance of the subject property;

(d)    Fraudulently representing to Plaintiffs that suggested repairs regarding property at issue would mitigate and/or prevent said leakage and/or other defects or damage which occurred.

(e)    Defendant engaged in the foregoing conduct for the sole purpose of concealing the seriousness and gravity of the defective conditions of said property and thus preventing any further action to rectify the serious and defective condition of the subject property which was reckless, malicious, and in gross disregard of the Plaintiffs' rights.

110.    As a direct and proximate cause of the Defendant's violation of the UTPCPL, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars, and are entitled to treble damages and attorneys' fees.

WHEREFORE, Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida

WHEREFORE, Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against the Defendant HouseMasters, in excess of One Hundred Thousand ($100,000.00) Dollars, costs, treble damages, punitive damages, and attorneys' fees.

STEVENS & JOHNSON

By: _____
Richard F. Stevens, Esquire
I.D. No: 08073
Attorneys for the Plaintiffs,
Jack Marrone,
Karen Marrone,
Matthew Marrone, and
Vida Marrone

740 Hamilton Mall
Allentown, Pennsylvania 18101
(610) 439-1451

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a true and correct copy of the attached Amended Complaint, will be served upon all parties, by placing the same in the United States Postal Service, first class, postage prepaid, and mailed to the following upon return receipt from the U.S. District Court for the Middle District of Pennsylvania:

James G. Nealon, III, Esquire
Nealon & Grover
2411 North Front Street
Harrisburg, PA 17110

John Flounlacker, Esquire
Thomas, Thomas & Hafer, LLP
305 North Front Street
P.O. Box 999
Harrisburg, PA 17108

Edward A. Monsky, Esquire
Fine, Wyatt & Carey, PC
425 Spruce St.
P.O. Box 590
Scranton, PA 18501-0590

Robert E. Kelly, Jr., Esquire
Duane, Morris & Heckscher, LLP
305 North Front Street, 5th Floor, .
P.O. Box 1003
Harrisburg, PA 17108-1003

Date: 11/01/01

By: _Richard F. Steven_
    Richard F. Stevens, Esquire
    I.D. No: 08073
    Attorneys for the Plaintiffs
    Jack Marrone, Karen Marrone,
    Matthew Marrone and Vida Marrone

    740 Hamilton Mall
    Allentown, Pennsylvania 18101
    (610) 439-1451

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACK MARRONE, husband, KAREN    :    **CIVIL ACTION NO.**
MARRONE, wife, both individually and    :    1:CV-01-773
in their capacity as parents and guardians    :
for VIDA MARRONE, a minor,    :
               Plaintiffs    :
       v.    :    J. Kane
                   :
ALLSTATE INSURANCE COMPANY,    :    **FILED**
LINDA M. EDELMAN, FRED SCHAFER    :    **HARRISBURG**
MT. GRETNA REALTY, and HOUSE
MASTER,    JUL - 5 2002
           Defendants    MARY E. D'ANDREA, CLERK
                     Per_____
                         DEPUTY CLERK

### ORDER

   **AND NOW**, this ___ day of July, **IT IS ORDERED THAT** plaintiffs' motion

to extend the case management order dated February 19, 2002 is **GRANTED**.  The case

management order dated February 19, 2002 is **AMENDED** as follows:

| | |
|---|---|
| Close of Fact Discovery: | August 30, 2002 |
| Report of Experts: | September 13, 2002 |
| Response Reports to Experts Report: | September 27, 2002 |
| Dispositive Motions and Daubert Motions with Supporting Briefs Due: | October 18, 2002 |
| Local Rule 16.3 - Attorney Conference and Exchange of Proposed Jury Instructions: On or before: | December 27, 2002 |
| Motions In Limine Due: | January 3, 2003 |
| Pretrial Memoranda Due: | January 17, 2003 |
| Pretrial and Settlement Conference: | January 22, 2003 - 2:00 p.m. |
| Joint Jury Instructions with Objections and Proposed Voir Dire Questions Due: | January 29, 2003 |
| Jury Selection and Trial: | February 3, 2003 - 9:30 a.m. |

_____
Yvette Kane
United States District Judge

# Eckardt Johanning, M.D., M.Sc.

## Occupational and Environmental Life Science - Fungal Research Group, Inc. (FRG)

650 Warren Street - Medical Arts Building
Albany, N.Y. 12208 U.S.A.
518-459-3336 • fax - 4646
www.fungalresearchgroup.com

Offices:
Albany,
New York City
Frankfurt/Main, FRG

October 21, 2002

**RE:**                            Jack P. Marrone
                                   11673 Highway PT
                                   Dixon, MO 65459
**Date of Birth**                  2/22/46

I reviewed again the visit of Jack Marrone from January 17, 2002. This is a summary of the findings. I reviewed all provided outside medical reports and environmental findings, including the Advanced Applied Science report from October, 15, 2000.

Mr. Marrone, age 55, is a VA vet, with 100% disability since 1993 secondary to a gunshot wound, posttraumatic stress syndrome, and chloracne problems. He reported that after moving into and after doing some clean-up work inside the house on 354 Timber Rd, Mount Gretna, Pa, he developed a variety of problems including shortness of breath, eye irritation, chest tightness, wheezing, coughing, excessive fatigue, and nasal problems. He has been sneezing as well. He also developed an increased sensitivity and intolerance to gases, fumes, and a variety of air contaminants. He reports that his chloracne problem had been getting worse, and that he generally would look different. He reported that the special acne soap has not been helpful for him as in the past. He reported that he had not been seen at the time by his VA doctor and he had no special breathing test or chest x-ray test done. He left his home secondary to health concerns and findings of mold and moisture problems in his previous house. Since leaving this house, he felt much better. He stated that his breathing and fatigue had improved. He has less headaches.

## Medications:

Trazodone.

## Past Medical History:

Benign prostrate hypertrophy, exposure to Agent Orange resulting in chloracne development, posttraumatic stress syndrome, and gunshot wound. He had episodes of stomach cramps in the past. He denied any other significant abnormalities.

## Past Surgical History:

 

Jack P. Marrone                              2                              October 21, 2002

Scrotal cyst surgery in 1976.

**Social History:**

He is a smoker starting at age 16, 1-1½ pack per day. He denied any alcohol or significant drug history.

He reported that he now has been living in Missouri, and that he feels much better there. In his current home there are no known environmental problems.

**Physical Examination:**

Blood pressure: 120/90 mmHg. Respiratory rate 12/min. Temperature 97 T. Height: 5'9". Weight: 201 pounds. His peak flow was found at 440.

Examination of head, ears, nose, throat, chest, abdomen, lungs, and extremities was overall unremarkable. The nasal passage showed increased erythema and were narrow.

**Laboratory Tests:**

On laboratory examination, he showed no reaction to specific IgE allergens; however, he had a marked reaction indicating significant organic dust exposure including to a variety of tested fungi, i.e., *Micropolyspora faeni, Aspergillus fumigatus, Aureobasidium pullulans, Penicillium notatum, and Trichoderma viride*. He also had elevated IgG and IgA response to *Stachybotrys chartarum*. These tests are used as exposure markers and do not necessarily correspond with disease activity.

Pulmonary function test from September 12, 2002 showed that he had overall normal lung function. Chest x-ray was negative.

Immunological test which included IgG subclasses and lymphocyte enumeration test and function test showed a slightly lower than normal absolute CD3 or matured T-lymphocyte cell count with 1462, normal 1507-1953. The remainder of the testing was normal. These findings are non-specific, but typical after intense fungal exposure.

I reviewed medical records provided to me by various providers. These records did not produce any additional information. He has been diagnosed in the past with prostatitis, hemorrhoids, stable COPD, and prostatitis problems.

The environmental investigation and report by Mr. R. Pfromm indicated the presence of moisture related fungi and defects inside the house, in particular in the basement. Fungi included species of *Aspergillus, Penicillium and Stachybotrys*, that were higher inside the house than outside (control). Photos were also provided confirming visible contamination.

Jack P. Marrone                    3                    October 21, 2002

**Conclusion:**

Based on recent findings, I conclude that Mr. Marrone had a respiratory reaction after intense exposure to mold and mildew in his home, which was probably also aggravated by doing some repair and clean-up work in the moldy house. He has been diagnosed in addition to his previous medical conditions with upper and lower airway inflammation and irritation effects (Rhinosinusitis, bronchitis) and mold allergy. With a reasonable degree of medical certainty I believe this was the result of the exposure in the described contaminated house. He has been advised that in the future he should avoid any of these problems since he has clearly been sensitized. Provided that he has no further exposure to the fungi, he should be reasonably well.

Sincerely,

Eckardt Johanning, M.D., MSc.
Diplomate of American Board of Preventive Medicine
(Occupational and Environmental Medicine)
Diplomate of American Board of Family Medicine

# Eckardt Johanning, M.D., M.Sc.

## Occupational and Environmental Life Science - Fungal Research Group, Inc. (FRG)

650 Warren Street - Medical Arts Building
Albany, N.Y. 12208 U.S.A.
518-459-3336 • fax - 4646
www.fungalresearchgroup.com

Offices:
Albany,
New York City
Frankfurt/Main, FRG

October 21, 2002


RE:                          Karen A. Marrone
                             11673 Highway PT
                             Dixon, MO 65459
Date of Birth                12/22/56


I reviewed again the visit of Karen Marrone from January 17, 2002. She came accompanied by her husband and daughter Vida, who also were examined that day. This is a summary of the findings. I reviewed all provided outside medical reports and environmental findings, including the Advanced Applied Science report from October, 15, 2000.

Mrs. Marrone, age 45 years, has a known service related disability since 1976. She has been previously diagnosed with multiple sclerosis in 1977. She reported that after moving into the house on 354 Timber Rd, Mount Gretna, Pa, she developed a variety of problems including shortness of breath, chest tightness, coughing, excessive fatigue, and nasal problems, stomach cramps. She had been diagnosed by her VA physician Dr. DaCosta with sinusitis and bronchitis. She also consulted an ENT specialist who reportedly recommended surgery.

She and the rest of the family left this home October 14, 2001 secondary to health concerns and findings of mold and moisture problems in this house. Since leaving this house, she also felt much better.

## Medications:

Albuterol, Ibuprofen, Baclofen, Clonazepam


## Past Medical History:

Rubella 1972, MS 1977, PUD, reflux, esophagitis, rhinosinusitis since early 70s, PTSD in 80s. Allergy to penicillin.



*"is a member of"*    AMERICAN COLLEGE OF
OCCUPATIONAL AND
ENVIRONMENTAL MEDICINE

Karen A. Marrone                                    2                          October 21, 2002

**Past Surgical History:**

Gallbladder surgery 5/2000,  hernia repair, cyst removal, laparoscopy.
**Social History:**

She is a smoker starting at age 15, 1-2 packs per day. She denied any alcohol or
significant drug history.

She reported that she now living with her family in Missouri, and that she feels much
better there. In this current home there are no known environmental problems.

**Physical Examination:**

Blood pressure: 120/90 mmHg. Respiratory rate 12/min. Temperature 99.8 T. Height:
5'5". Weight: 131 pounds. Her peak flow was  400 ml. She was coughing during the
exam.

Examination of head, ears, nose, throat, chest, abdomen, lungs, and extremities was
overall unremarkable. She had problems with line walking and imbalance.

**Laboratory Tests:**

No reaction to specific IgE and IgG fungal allergens.

Pulmonary function test was not done. Chest x-ray was negative.

Immunological test which included IgG subclasses and lymphocyte enumeration test and
function test showed a higher than normal CD4/CD8 ratio and B-lymphocyte cell
counts/percentage.  The remainder of the testing was normal. These findings are non-
specific, but typical after intense fungal exposure.

I reviewed medical records provided to me by various providers. These records did not
produce any additional information.

The environmental investigation and report by Mr. R. Pfromm indicated the presence of
moisture related fungi and defects inside the house, in particular in the basement. Fungi
included species of *Aspergillus, Penicillium and Stachybotrys*, that were higher inside the
house than outside (control). Photos were also provided confirming visible
contamination.

**Conclusion:**

Based on recent findings, I conclude that Mrs. Marrone had an respiratory reaction after
intense exposure to mold and mildew in her previous home. She has been diagnosed in
addition to her previous medical conditions with upper and lower airway inflammation
and irritation effects (Rhinosinusitis, bronchitis). With a reasonable degree of medical

Karen A. Marrone                          3                    October 21, 2002

certainty I believe these were the results of the exposure in the described contaminated house. She has been advised that in the future she should avoid any of these moldy indoor exposures and stop smoking. Provided that she has no further exposure to the fungi, she should be reasonably well related to this condition.


Sincerely,



Eckardt Johanning, M.D., MSc.
Diplomate of American Board of Preventive Medicine
(Occupational and Environmental Medicine)
Diplomate of American Board of Family Medicine

# Eckàrdt Johanning, M.D., M.Sc.

**Occupational and Environmental Life Science -
Fungal Research Group, Inc. (FRG)**

650 Warren Street - Medical Arts Building
Albany, N.Y. 12208 U.S.A.
518-459-3336 • fax - 4646
www.fungalresearchgroup.com

<u>Offices:</u>
Albany,
New York City
Frankfurt/Main, FRG

October 21, 2002

**RE:**

Vida A. Marrone
11673 Highway PT
Dixon, MO 65459

**Date of Birth**

5/5/84

I reviewed again the visit of Ms. Vida A. Marrone from January 17, 2002. She came accompanied by her parents, who also were examined that day. This is a summary of the findings. I reviewed all provided outside medical reports and environmental findings, including the Advanced Applied Science report from October, 15, 2000.

Ms. Vida Marrone, age 17 years, is a student who works part time as a waitress. She reported that after moving into the house on 354 Timber Rd, Mount Gretna, Pa, she developed a variety of problems including coughing, sore throat, fatigue, skin irritation, headaches and nasal problems. Away from the house (such as her friends' houses) she generally would feel much better. She had been diagnosed by an emergency room doctor with sinusitis and bronchitis.

She left with her family the house on October 14, 2001 secondary to health concerns and findings of mold and moisture problems. Since leaving this house, she also felt much better.

## <u>Medications:</u>

None.

## <u>Past Medical History</u>:

MVA 2/01 related low back pain.

## <u>Past Surgical History</u>:

None

*"is a member of"*   AMERICAN COLLEGE OF
OCCUPATIONAL AND

**Social History:**

She is a "very light" smoker (1-5 cigg./day). She denied any alcohol or significant drug history.

She reported that she is now living with her parents in Missouri, and that she feels much better there. In this current home there are no known environmental problems.

**Physical Examination:**

Blood pressure: 100/60 mmHg. Respiratory rate 12/min. Temperature 98 T. Height: 5'5". Weight: 138 pounds. Her peak flow was 550 ml.

Examination of head, ears, nose, throat, chest, abdomen, lungs, and extremities was overall unremarkable.

**Laboratory Tests:**

No reaction to specific IgE and IgG fungal allergens. There was a very minimal IgA elevation to *Stachybotrys* specific IgA.

Pulmonary function test and Chest x-ray were not done.

Immunological test which included IgG subclasses and lymphocyte enumeration test and function test showed a higher than normal T and B-lymphocyte cell counts/percentage. The remainder of the testing was normal. These findings are non-specific, but typical after intense fungal exposure and some immune reactivity. Follow up repeat evaluation have been recommended.

I reviewed medical records provided to me by various providers. These records did not produce any additional information.

The environmental investigation and report by Mr. R. Pfromm indicated the presence of moisture related fungi and defects inside the house, in particular in the basement. Fungi included species of *Aspergillus, Penicillium and Stachybotrys*, that were higher inside the house than outside (control). Photos were also provided confirming visible contamination.

**Conclusion:**

Based on recent findings, I conclude that Ms. Vida Marrone had also a typical acute respiratory reaction after intense exposure to mold and mildew in her previous home. She has been diagnosed with upper and lower acute airway inflammation and irritation effects (Rhinosinusitis, bronchitis). With a reasonable degree of medical certainty I believe these were the results of the exposure in the described contaminated house. She has been advised that in the future she should avoid any of these moldy indoor exposures and stop

Vida A. Marrone                    3                    October 21, 2002

smoking. Provided that she has no further exposure to the fungi, she should be reasonably well related to this condition.


Sincerely,


Eckardt Johanning, M.D., MSc.
Diplomate of American Board of Preventive Medicine
(Occupational and Environmental Medicine)
Diplomate of American Board of Family Medicine

# Eckardt Johanning, M.D., M.Sc.

## Occupational and Environmental Life Science - Fungal Research Group, Inc. (FRG)

650 Warren Street - Medical Arts Building
Albany, N.Y. 12208 U.S.A.
518-459-3336 • fax - 4646
www.fungalresearchgroup.com

Offices:
Albany,
New York City
Frankfurt/Main, FRG

October 21, 2002

RE:                        Matthew Marrone
                           11673 Highway PT
                           Dixon, MO 65459
Date of Birth              7/29/82

I reviewed again the visit of Matthew Marrone from January 17, 2002. This is a summary of the findings. I reviewed also the environmental findings, including the Advanced Applied Science report from October, 15, 2000.

Matthew Marrone, age 19,  is a biology undergraduate student with no prior significant medical history. He reported that after moving into the house on 354 Timber Rd, Mount Gretna, Pa, in August of 1999 he developed shortness of breath, chest tightness, eye irritation, skin lesions under his axillae, excessive fatigue, nasal problems and significant memory loss. After leaving the house he had some improvement. At the time of the visit he was particularly bothered by joint pain in knees, memory problems and fatigue.

## Medications:

None.

## Past Medical History:

Benign. He denied any other significant abnormalities.

## Past Surgical History:

 

Matthew Marrone                    2                    October 21, 2002

**Social History:**

He denied any smoking, alcohol or drug abuse history.

**Physical Examination:**

Blood pressure: 110/70 mmHg. Respiratory rate 12/min. Temperature normal Height: 5'10". Weight: 163 pounds. His peak flow was found at 450ml.

Examination of head, ears, nose, throat, chest, abdomen, lungs, and extremities was overall unremarkable.

**Environmental Exposure:**

The environmental investigation and report by Mr. R. Pfromm indicated the presence of moisture related fungi and defects inside the house, in particular in the basement. Fungi included species of *Aspergillus, Penicillium and Stachybotrys*, that were higher inside the house than outside (control). Photos were also provided confirming visible contamination.

**Conclusion:**

Mr. Matthew Marrone had a variety of health complaints including respiratory reactions that are in time and place associated with exposure to mold and mildew in his previous home. He has been advised that in the future he should avoid any of these fungal indoor exposures and related problems. He has been discharged for care and follow up by his local physicians. Provided that he has no further exposure to the fungi, he should be reasonably well.

Sincerely,

Eckardt Johanning, M.D., MSc.
Diplomate of American Board of Preventive Medicine
(Occupational and Environmental Medicine)
Diplomate of American Board of Family Medicine

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

--------------------------------------------------------------------------------------------------------

JACK MARRONE, husband, KAREN          :
MARRONE, wife, both individually and    :        Civil Action No.: 1:CV-01-0773
in their capacity as parents and guardians :
for VIDA MARRONE, a minor, and         :
MATTHEW ADAM MARRONE,              :
                                                          :
            Plaintiffs                                :
                                                          :
      vs.                                               :
                                                          :
ALLSTATE INSURANCE COMPANY,      :
LINDA M. EDLEMAN, FRED SCHAFER, :
MT. GRETNA REALTY, and HOUSE        :
MASTERS                                            :

--------------------------------------------------------------------------------------------------------

**ORDER**

        AND NOW, this _____ day of _____, 2002, upon the Plaintiffs' "Motion

to Permit the Filing of Plaintiffs' Medical Causation Expert Reports *Nunc Pro Tunc*," and with

good cause shown, it is hereby ORDERED that the Plaintiffs' request to file their medical

causation expert reports, attached to their motion as exhibits 1-4, is hereby GRANTED and they

shall be accepted as filed.

                                                BY THE COURT:

_____                    _____
Date                                            Yvette Kane, Judge
                                                Middle District of Pennsylvania

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **MOTION FILE**

**PLAINTIFFS' MEDICAL CAUSATION EXPERT REPORTS** *NUNC PRO TUNC* was

served on counsel for the Defendants on this __31st__ day of October, 2002, by the United States

Mail, First Class, Postage prepaid addressed as follows:

James G. Nealon, III, Esquire
Nealon & Grover, P.C.
2411 North Front Street
Harrisburg, PA 17110

John Flounlacker, Esquire
Thomas, Thomas & Hafer, LLP
305 North Front Street
Harrisburg, PA 17108

Edward A. Monsky, Esquire
Fine, Wyatt & Carey, P.C.
425 Spruce Street
Scranton, PA 18501-0590

Jennifer L. Murphy, Esquire
Duane, Morris & Heckscher, LLP
305 North Front Street, 5th Floor
Harrisburg, PA 17108-1003

TARASI, TARASI & FISHMAN, P.C.

Date: __10·31·02__

By: _____

Gianni Floro, Esquire
PA I.D. No. 85837
Attorney for the Plaintiffs
510 Third Avenue
Pittsburgh, PA 15219
P: (412) 391-7135
F: (412) 471-2673