**THOMAS, THOMAS & HAFER, LLP**
305 North Front Street
P.O. Box 999
Harrisburg, PA  17108

**John Flounlacker, Esquire**
Attorney I.D.  73112
(717)237-7134
Attorneys for Defendant Edleman

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACK MARRONE, husband, KAREN MARRONE, wife, both individually and in their capacity as parents and guardians for VIDA MARRONE, a minor, and MATTHEW ADAM MARRONE | : NO.: 1:CV-01-0773 <br> : <br> : <br> : Electronically Filed <br> : |
| Plaintiffs | : <br> : JUDGE KANE |
| v. | : <br> : Civil Action Law |
| ALLSTATE INSURANCE COMPANY, LINDA M. EDLEMAN, FRED SCHAFER, MT. GRETNA REALTY, and HOUSEMASTERS | : <br> : <br> : <br> : Jury Trial Demanded |
| Defendants | : |

## DEFENDANT LINDA M. EDLEMAN'S
## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

Table of Contents                                                                                          i

Table of Authorities                                                                                       ii

I.      Statement of Facts                                                                            1

II.     Procedural History                                                                            2

III.    Questions Presented                                                                          3

IV.     Arguments                                                                                         3

        A.      Summary Judgment is appropriate where Plaintiffs fail to provide
                evidence of knowledge or causation in support of their claims.         4

                1.      Plaintiffs' standard of proof for their claims.                       5

                2.      Lack of evidence regarding falsity and causation.             6

                3.      Legal conclusions based on the lack of evidence presented.    8

        B.      Summary Judgment is appropriate where Defendant Edleman's
                duty to dispose the problem at issue was abrogated by statute.        10

        C.      Partial Summary Judgment as to Plaintiff Matthew Marrone is
                appropriate where there is no competent expert opinion regarding
                his health condition or causation of any previous health problems.   13

V.      Conclusion                                                                                       16

# TABLE OF AUTHORITIES

**Cases**

Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999)....................................................................5

Cohen v. Albert Einstein Med. Ctr., 592 A.2d 720, 723 (Pa.Super. 1991).....................14

Lind v. Jones, Lang LaSalle Americas, Inc., 135 F.Supp.2d 616, 621 (E.D. Pa. 2001)...6

Maliszewski v. Rendon, 374 Pa.Super. 109, 542 A.2d 170 (1988); ..........................8, 15
Maliszewski v. Rendon, 542 A.2d 170, 172 (Pa.Super. 1988). ......................................15

Narcise v. SEPTA, No. 86-2229, 2000 U.S. Dist. LEXIS 12993, *6 (E.D. Pa. 2000).....8

Niklaus v. Vivadent, Inc., 767 F.Supp. 94, 96 (M.D. Pa. 1991) .................................9, 15

Shultz v. Celotex Corp., 942 F.2d 204, 208 (3rd Cir. 1991)............................................14

Smith v. CGU, 179 F.Supp.2d 425, 427 (M.D. Pa. 2001)................................................4

**Statutes**

68 P.S. § 1021, et *seq*....................................................................................................10

68 P.S. § 1030(a); 68 Pa.C.S. § 7309(a).......................................................................11

68 P.S. § 1030(c); 68 Pa.C.S. § 7309(c) ..................................................................11, 12

## I.    STATEMENT OF FACTS

On August 31, 1999, Plaintiffs purchased a home located at 354 Timber Road, Mount Gretna, Pennsylvania, from moving-Defendant Linda M. Edleman (hereinafter "Defendant").  Plaintiffs took immediate possession of the home.

Approximately eleven (11) months later, in July of 2000, Plaintiffs went on a week long vacation.  When Plaintiffs returned, they found mold in the basement of their home. It was the first time Plaintiffs had noted any problem with mold.

On or about August 28, 2000, Plaintiffs had their home inspected by Advanced Applied Sciences, Inc., which consisted of a bioaerosol survey.  The results found that at the time of testing, there was a fungal contamination.  The report of the industrial hygienist, Robert A. Pfromm, also found that such contamination could possibly be at symptomatic concentrations, depending on the sensitivity of the exposed person to the species found.  Pfromm also suggested that Plaintiffs seek "appropriate medical testing" by "qualified medical personnel" to determine the Plaintiffs' susceptibility to any such contamination.  Shortly after receiving Pfromm's report, Plaintiffs' vacated the home.

On August 12, 2002, Tom Moore, a home inspector, inspected the home in question at Plaintiffs request.  At the time of the inspection, the house had been vacant for approximately two (2) years.  Moore found that, as of the date of the inspection, there was a small pipe leak and evidence of pipe condensation.

## II.    PROCEDURAL HISTORY

Plaintiffs filed their Complaint on or about May 3, 2001, alleging, *inter alia*, Misrepresentation, Negligent Misrepresentation and Breach of Contract against Defendant.  An Amended Complaint was filed on or about November 2, 2001, which

added Matthew Marrone as a Plaintiff in this action. A copy of the Amended Complaint is attached to the Appendix as Exhibit A.

After several extensions were granted to Plaintiffs, on October 18, 2002, Defendant Edleman filed a Motion for Summary Judgment alleging that, *inter alia,* after discovery Plaintiffs were unable to meet their burden of proof on the essential issues of their case against Defendant Edleman. Also on October 18, 2002, Defendant Edleman received a facsimile copy of Plaintiffs' Request, seeking a fourth extension of time for the purposes of securing a report from an unidentified medical expert. On November 5, 2002, this Honorable Court denied Plaintiffs' Motion to Extend Time in which to file expert reports.

On October 31, 2002, Plaintiffs filed a motion to permit the filing of medical causation expert reports *nunc pro tunc*. On January 14, 2003, this Court granted Plaintiffs' motion to permit the filing of medical causation expert reports *nunc pro tunc*. A copy of this Court's Memorandum and Order dated January 14, 2003 is attached hereto as Exhibit B. In that same Order, this Court denied Defendant's Motion for Summary Judgment, without prejudice, permitting such a motion to be refiled at a later date. See Exhibit B.

On March 31, 2003, pursuant to the request of this Court, the parties underwent mediation before Professor Michael A. Mogill. The mediation was not successful.

On April 29, 2003, this Court issued an amended case management Order which provided, *inter alia*, that dispositive motions and supporting briefs are due on May 16, 2003.

Defendant files this Motion seeking summary judgment or, in the alternative, partial summary judgment regarding the relief Plaintiffs request. Defendant files this brief in support thereof.

## III.  QUESTIONS PRESENTED

A.  Should Summary Judgment be entered in favor of Defendant on Counts III, IV, and V when there is no evidence that Defendant either knew or should have known of any preexisting "water problem" in the home and there is no competent evidence, expert or otherwise, establishing a causal connection between Defendant's alleged conduct and Plaintiffs' claimed injuries arising from the mold growth?

   **Suggested Answer:**      **Yes.**

B.  Should Summary Judgment be entered in favor of Defendant on Counts III, IV and V when Defendant's duty to disclose any water leakage was abrogated by statute and reliance by Plaintiffs cannot be established?

   **Suggested Answer:**      **Yes.**

C.  In the alternative, should partial summary judgment be granted as to Plaintiff Matthew Marrone when there is no competent medical evidence connecting his alleged injuries to any mold found in the home?

   **Suggested Answer:**      **Yes.**

## IV.  ARGUMENTS

Defendant seeks summary judgment as to Counts III, IV and V of Plaintiffs' Amended Complaint as there is no dispute to any material fact and there is no evidence by which Plaintiffs can prove the elements of their causes of action. In the alternative, Defendant respectfully seeks partial summary judgment as to any claims for bodily injury by Plaintiff Matthew Marrone failing to demonstrate any causal connection between Plaintiffs' claimed injuries and Defendant's alleged conduct.

Federal Rule of Civil Procedure 56, governing summary judgment, is a mechanism for "assessing the proof in order to see whether there is a genuine need for

trial." Smith v. CGU, 179 F.Supp.2d 425, 427 (M.D. Pa. 2001). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id. This standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Id.

Pursuant to this Rule, the Court must view the evidence in a light most favorable to the non-moving party. Id. at 428. However, the non-moving party may not rest on the bare allegations contained in his or her pleadings. Id. Once the moving party has shown there to be no genuine issue of material fact, the non-moving party is required to go beyond the pleadings in order to demonstrate specific material facts which give rise to a genuine issue. Id.

Importantly, when Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial. Smith v. CGU, 179 F.Supp.2d 425, 428 (M.D. Pa. 2001).

With these standards in mind, Defendant now turns to her substantive claims.

**A. SUMMARY JUDGMENT IS APPROPRIATE WHERE PLAINTIFFS FAIL TO PROVIDE EVIDENCE OF KNOWLEDGE OR CAUSATION IN SUPPORT OF THEIR CLAIMS**

All three counts in Plaintiffs' Amended Complaint against Defendant allege as their basis that Defendant either knew, or should have known, that there was a

basement leak or water problem which caused the mold at issue in this case.[1]  Further,
all of Plaintiffs claims against Defendant allege that injuries resulted from intentional or
negligent misrepresentation.   Plaintiffs, however, have failed to produce any proof
whatsoever that the condition which caused their claimed injuries was a preexisting one
that was either known, or reasonably knowable by Defendant.  Moreover, Plaintiffs have
failed to prove that assuming *arguendo* there was an intentional or negligent
misrepresentation or breach of warranty, that the injuries they claim resulted from the
misrepresentation or breach.

### 1.    Plaintiffs' Standards Of Proof For Their Claims

To prove Fraudulent Misrepresentation, as Plaintiffs allege in Count III, a Plaintiff
must show:  (1) a representation;  (2) which is material to the transaction at hand;  (3)
made falsely, with knowledge of its falsity or recklessness as to whether it is true or
false;  (4) with the intent of misleading another into relying on it;  (5) justifiable reliance
on the misrepresentation;  and (6) the resulting injury was proximately caused by the
reliance.  Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999).

To establish a claim of Negligent Misrepresentation, a plaintiff must prove: (1) a
misrepresentation of material fact;   (2) made under circumstances in which the
misrepresenter ought to have known its falsity;  (3) with an intent to induce another to
act on it;  and (4) which results in jury to a party acting in justifiable reliance on the
misrepresentation.  Id. at 561.

Under Pennsylvania law, the trial judge must decide as a matter of law before
submitting a case to the jury whether plaintiff's evidence attempting to prove fraud is

---

[1] Count III, Misrepresentation, alleges that knew that there were existing problems at the time of sale to Plaintiffs and intentionally
misrepresented the lack of such problems.  Count IV, Negligence, alleges that Defendant knew or should have known of the existing

sufficiently clear, precise, and convincing to make out a *prima facie* case.  Lind v. Jones, Lang LaSalle Americas, Inc., 135 F.Supp.2d 616, 621 (E.D. Pa. 2001).  Thus, clear and convincing evidence of fraud, rather than a preponderance of the evidence, must exist.  Id.

There is no such proof here.  Specifically, Plaintiffs have failed to establish a *prima facie* case for two of the elements above:  a false representation, either negligent or intentional, and causation of their alleged injuries.

### 2.    Lack Of Evidence Regarding Falsity And Causation

Plaintiffs have produced no evidence which would allow a jury to conclude that any representations made by Defendant were false when they were made.  Plaintiffs have produced no evidence that the water problems which they allege were fraudulently misrepresented existed at the time Defendant sold the home to Plaintiffs.  Further, there is no evidence, expert or otherwise, that even assuming there was a basement "water problem," that this preexisting problem was the cause of mold growth eleven (11) months after the sale of the home, which Plaintiffs allege caused their injuries.

Plaintiffs have produced the report of Tom Moore, a home inspector, whose report may be found in the Appendix as Exhibit C.  No where in Moore's report did he state that there was any evidence of a preexisting "water problem" in the basement.[2] Neither does Moore's report discuss what conditions, if any, were preexisting; how severe any such problems were which would allow a reasonable owner to take notice of them;  or how long any problems appeared to be present.  Moore's report merely stated

---

defect and negligently misrepresented the lack of such problems.  Finally, Count V, Breach of Contract, alleges that the above misrepresentations breached the warranties Defendant made with regard to the condition of the home.
[2] Moore's report does state that the basement was incorrectly finished.  However, even assuming *arguendo* such a conclusion is true, this is not claimed as a cause of action or alleged as the cause of any problems in the Complaint, nor is there evidence that the Defendant even had knowledge of such a possibility.

that two years after the house was abandoned and left completely vacant, there were sweating pipes in the ceiling of the basement.  The report, however, was silent about what exact problems there were, if any, and when such problems possibly arose based on the evidence he found.

Plaintiffs have also produced the report of Robert A. Pfromm, an industrial hygienist, which may be found in the Appendix as Exhibit D.  Pfromm found that as of the time of the testing in August 2000, there was a growth of mold in the basement of a type which was different from that of the outside of the home, which meant that the basement had an elevated amount of mold growth.  Exhibit D, p. 4.

There is nothing in Pfromm's report, however, which linked the growth to any condition which predated the sale of the home.  Further, the report was absent of any discussion of growth periods for the mold, or explanation of how it would even be possible for a condition preexisting the sale of the home to cause such mold growth at least eleven (11) months later.  All of these aforementioned discussions would be indicative of some knowledge, actual or constructive, or other reason Defendant should have known about any alleged "water problem" or, at the very least linked the resulting mold to the Defendant's alleged actions.  Such discussions were absent from the report.


Most importantly, however, in beginning his discussion of the moisture level increase in the basement, Plaintiffs' own expert stated that:

> The presence of an organism in an interior [of the home] sample and not in the exterior sample requires either active growing colonies of the organism or a reservoir of viable spores to be present in the building.  For this apparent amplification to be possible, several requirements <u>must</u> be met or have been met <u>at some time in the **recent past**</u>.

> They are as follows:  a substrate or growth media,
> appropriate temperature conditions, and adequate or
> excessive moisture.

Exhibit D, p. 4 (emphasis added).  The report then goes on to state that virtually any surface in a home has adequate sources for nutrients, but that the higher humidity makes growth more likely or even ideal.  Exhibit D, p. 4.

As seen above, Plaintiffs' own expert stated that those requirements must have been met in the <u>recent past</u>.  Since he also stated immediately thereafter that <u>any</u> surface possesses adequate nutrients for growth rather than just the basement there must have been an increase in the humidity in the <u>recent past</u>.  Importantly, the first sign of mold in the present case was in July of 2000, or eleven (11) months after the sale of the home.  There is no explanation of this, especially in light of Pfromm's conclusion that the moisture conditions needed to bring about this mold must have come together recently.

### 3.    Legal Conclusions Based On The Lack Of Evidence Presented

There is no evidence linking in any way whatsoever the alleged conduct by Defendant to Plaintiffs' injuries.  As part of a tort action, Plaintiff must prove that the injury claimed to have been sustained and for which recovery is sought was caused by the tortious act of the tortfeasor. <u>Maliszewski v. Rendon</u>, 374 Pa.Super. 109, 542 A.2d 170 (1988); <u>see also</u> <u>Narcise v. SEPTA</u>, No. 86-2229, 2000 U.S. Dist. LEXIS 12993, *6 (E.D. Pa. 2000).  <u>Narcise</u>, may be found in the Appendix as Exhibit E.  Accordingly, a defendant cannot be held liable on a theory of negligence, strict product liability or misrepresentation unless a causal relationship is established between the Defendant's conduct and the Plaintiff's injury.  <u>Narcise</u>, <u>supra</u>. at *7.  In other words, unequivocal

expert testimony is necessary to establish the causal connection between a defendant's actions and plaintiff's injuries in cases where there is no obvious causal relationship between the accident and injury.  See e.g., Niklaus v. Vivadent, Inc., 767 F.Supp. 94, 96 (M.D. Pa. 1991)  (An obvious causal relationship exists when the injury is either an 'immediate and direct' of the 'natural and probable' result of the complained act.  The injury and the act must be so closely connected that a lay person could diagnose the causal connection"  Id.).

The first sign of mold in the present case was in July of 2000, or eleven (11) months after the sale of the home.  Not only is there no proof of any condition Defendant was or should have been aware of that could give rise to such a problem, but there is no evidence to explain why eleven (11) months went by before the problem first occurred.  Even Plaintiffs' own expert states that the mold's amplification would be due to a set of "recent events."  There is no explanation, expert or otherwise, of how a preexisting condition in the summer of 1999 could cause a mold growth not in that same year, but in the summer of 2000, almost a year later.  There is no evidence, expert or otherwise, which shows there to be a condition predating the sale of the house to Plaintiffs and if there was, there is no proof of knowledge by Defendant.

The temporal connection is not obvious and there is no evidence regarding a preexisting condition, no less a condition of which Defendant was aware.  Further, Plaintiffs are unable to prove by clear and convincing evidence that any preexisting condition which may, or may not, have existed caused the mold which in turn caused their alleged injuries.  Plaintiffs cannot prove their claims of Misrepresentation, intentional or negligent, or Breach of Contract based on a false warranty by Defendant.

9

There is no dispute of material fact, as Defendant relies upon Plaintiffs' own expert and the facts as set forth in their Amended Complaint.  As such, Defendant respectfully submits that she is entitled to judgment as a matter of law as to Counts III, IV, and V.

**B.     SUMMARY JUDGMENT IS APPROPRIATE WHERE DEFENDANT EDLEMAN'S DUTY TO DISPOSE THE PROBLEM AT ISSUE WAS ABROGATED BY STATUTE**

In the alternative, should this Honorable Court find there to be adequate evidence of knowledge and causation, Defendant Edleman submits that Plaintiff's claims must fail as the duty to disclose upon which Plaintiff's base their claims was abrogated by statute under the facts of this case.

As noted above, the basis for Counts III, IV and V against Defendant Edleman is the failure to disclose a basement dampness/water problem.  Count III notes a duty which arose from the Real Estate Seller's Disclosure Act ("RESDA"), 68 P.S. § 1021, et *seq*.  Exhibit A, para. 58.  Count IV, Negligence, refers to the failure to disclose as provided by law, and Count V refers to the failure to disclose relevant information concerning the condition of the house prior to the sales transaction.  Exhibit A, paras. 67, 73.  As can be seen, the duty upon which Plaintiffs' base their claim is the failure to disclose the condition of the home pursuant to the RESDA.  However, a reading of the RESDA reveals that under the facts of this case, Defendant Edleman's liability for any failure to disclose has been abrogated.

The RESDA Section 1030(a)[3] provides that:

---

[3]    Defendant Edleman would note that since the transaction of this home occurred, the provisions of the RESDA have been reenacted under different section numbers.  As such, where appropriate the Brief shall refer to both the old and the new section numbers.

**(a) General Rule. –** A seller shall not be liable for any error, inaccuracy or omission of any information delivered pursuant to this chapter if:

(1)    the seller had no knowledge of the error, inaccuracy or omission;

(2)    the error, inaccuracy or omission was based on a reasonable belief that a material defect or other matter not disclosed had been corrected; or

(3)    the error, inaccuracy or omission was based on information provided by a public agency, home inspector, contractor or person registered or licensed under an act referred to in Section 7503(a) (relating to relationship to other laws) about matters within the scope of the agencies jurisdiction or such other persons occupation and the seller had no knowledge of the error, inaccuracy or omission.

68 P.S. § 1030(a); 68 Pa.C.S. § 7309(a).  Further, and important to this case, the Act

further provides that:

**(c) report by expert. –** the delivery of a report or opinion prepared by a home inspector, contractor or person registered or licensed under an act referred to in Section 7503(a) dealing with matters within the scope of the persons registration, license or expertise <u>shall be sufficient compliance for application of the exception provided under § (a)(3) if the information is provided to the prospective buyer in writing</u>.

68 P.S. § 1030(c); 68 Pa.C.S. § 7309(c).   As can be seen from the language cited

above, if the report of a home inspector contains the error, inaccuracy or omission

complained of and such report is provided to the prospective buyer in writing, a seller

shall not be held liable for such failure.

On July 30, 1999, approximately one month before the purchase of the home in

question, Plaintiff's had a home inspection conducted by Defendant HouseMasters.  A

copy of the report of HouseMasters' Home Inspection dated July 30, 1999, is attached

hereto as Exhibit F.  On the first page of the Express Report from HouseMasters, it

explicitly states "structural/wet basement."  Exhibit F.  In fact, the second page of the express report states that the basement had indications of water penetration including water marks and stains and the indications of prior remedial work including construction and/or coatings.  Exhibit F.  Finally, the HouseMasters' report even gave Plaintiffs a few suggestions on how these conditions can be prevented including sloping soil away from the house, keeping downspouts clean and flowing, or considering the extension of spouts onto the surface.  Exhibit F.  The cover page of the HouseMasters' report indicates that the Plaintiffs were present during the inspection.  Exhibit F (cover page has "buyer" checked off as an attendee).  Thus, Plaintiffs not only received a copy of the house inspector's report, but were present during the inspection of the home where these specific problems were noted.

Pursuant to the RESDA, the seller shall not be liable for any errors, inaccuracies or omissions if such omission is found by a home inspector and report of such inspector was provided to the buyer in writing.  68 P.S. § 1030(c); 68 Pa.C.S. § 7309(c).  In the present case, Plaintiffs were made well aware of a dampness condition in the basement as well as prior remedial work, as their own house inspector found these problems one month prior to the sale of home.  In fact, Plaintiffs were present during the inspection of the home where such problems were found to exist.  Counts III, IV and V of Plaintiffs' Complaint all rely upon the legal duty Defendant had under the RESDA to disclose any defects of which she may have been aware.  However, under the facts of this case, being that Plaintiffs were made aware of such an omission prior to the sale of the through the inspection report of their home inspector, any liability on the part of the

seller for any such non-disclosure has been abrogated.  As such, Plaintiffs' claim must fail and Summary Judgment is appropriate.

Moreover, Plaintiffs' claim, and must prove, their alleged reliance on the statements made by Defendant.  Defendant submits that any such claim is without merit.

Plaintiffs had a home inspection done one month prior to the purchase of the home, where upon the exact water condition Plaintiffs claimed Defendant concealed was revealed.   In fact, as noted above, Plaintiffs were present during the house inspection where these problems were found.   Plaintiffs not only received a report regarding the allegedly concealed water condition, but were shown the signs of this condition during the course of the inspection.  In other words, Plaintiffs are attempting to hold Defendant responsible for an omission, whether purposeful or not, of which they were well-aware before the purchase of the home.  Plaintiffs now claim to have relied upon such omission even though they knew the opposite to be true.  This cannot be.

As Plaintiffs were well aware of any condition which they claim Defendant allegedly concealed well before the home was purchased, any claim that Plaintiffs suffered injury as a result of reliance on such omission is utterly without merit.  As such, Plaintiffs cannot meet their burden of proof and Summary Judgment as to Counts III, IV and V is appropriate in this matter.

**C.    PARTIAL SUMMARY JUDGMENT AS TO PLAINTIFF MATTHEW MARRONE IS APPROPRIATE WHERE THERE IS NO COMPETENT EXPERT OPINION REGARDING HIS HEALTH CONDITION OR CAUSATION OF ANY PREVIOUS HEALTH PROBLEMS**

Finally, should this Honorable Court find there to be adequate evidence of knowledge, causation, and find that a duty still existed, Defendant requests that partial

summary judgment be entered as to the claims made by Plaintiff Matthew Marrone. There is no expert opinion regarding his health condition and, as there is no obvious causal link present in this case, Plaintiff Matthew Marrone's claims must fail.

Medical experts who testify with a reasonable degree of medical certainty meet the requirements of the Federal Rules of Evidence.  Shultz v. Celotex Corp., 942 F.2d 204, 208 (3rd Cir. 1991).  While the phrase may not be dispositive of the issue, "it may indicate the level of confidence the expert has in the expressed opinion."  Id. at 209.

When a party must prove causation through expert testimony, the expert must testify with reasonable certainty that in his professional opinion, the result in question did come from the cause alleged.  Cohen v. Albert Einstein Med. Ctr., 592 A.2d 720, 723 (Pa.Super. 1991).  An expert fails this standard of certainty if he testifies that the alleged cause "possibly," or "could have" led to the result, that it "could very properly account" for the result, or even that it was "very highly probable" that it caused the result.  Id.  The reason for requiring this standard, and not specific language, is not merely one of semantics.  Id. at 723.  The logical reason for the rule is that the opinion of an expert is evidence and if believed by the jury, can be taken as fact.  Id.

Dr. Johanning reaches no conclusions to a reasonable degree of medical certainty, nor does he provide any specific opinion regarding his prognosis of Matthew Marrone.  Not only does Dr. Johanning's report not state an opinion within a reasonable degree of medical certainty, his report does not reach any specific conclusion at all.  A copy of Dr. Johanning's expert report as to Plaintiff Matthew Marrone is attached as Exhibit G.  To the contrary, Dr. Johanning's report with regard to Matthew Marrone is simply speculation.  Dr. Johanning's conclusion states, in full:

14

Mr. Matthew Marrone had a variety of health complaints including respiratory reaction <u>that are in time and place associated with exposure to mold and mildew in his previous home</u>. He has been advised that in the future he should avoid any of these fungal indoor exposures and related problems. He has been discharged for care and follow-up by his local physicians. Provided that he has no further exposure to the fungi, he should be reasonably well.

<u>See</u> Exhibit G (emphasis added).

Dr. Johanning stated that the subjective complaints of Matthew Marrone were during the same time period that he was allegedly exposed to the mold and mildew in his previous home. However, Dr. Johanning reaches no specific conclusion as to whether that was the actual cause of any objective problems Matthew Marrone might have had. This is not sufficient for an expert opinion, and therefore there is no expert opinion regarding Plaintiff Matthew Marrone.

Further, Pennsylvania law is clear that with regard to claims of physical injury or impairment, expert medical testimony is necessary to establish the causal nexus of the injury to the tortious conduct. <u>Maliszewski v. Rendon</u>, 542 A.2d 170, 172 (Pa.Super. 1988). Such testimony is needed to establish that the injury in question did, within a reasonable degree of medical certainty, stem from the complained of act. <u>Niklaus v. Vivadent, Inc.</u>, 767 F.Supp. 94, 96 (M.D. Pa. 1991). Medical testimony is needed regarding injuries suffered except in the rare case where there is an obvious causal relationship. <u>Id</u>.

There is no obvious causal connection in this case. Not even Plaintiffs' own industrial hygienist, who may not be a medical expert but is at least familiar with fungi, can say whether Plaintiffs were susceptible or in any way symptomatic of the species of

mold found.[4]  This is very much out of the kin of a lay person, and medical testimony regarding the causal effect is required.  Plaintiffs' hygienist is not qualified to speak on such causation, which is further evidenced by his own suggestion that Plaintiffs speak to a qualified medical expert.  Plaintiff Matthew Marrone fails to present any such evidence and the opinion of Dr. Johanning is legally insufficient.  As such, Defendant respectfully submits that partial summary judgment be granted regarding any claim of personal injury to Plaintiff Matthew Marrone in Counts III, IV and V.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Defendant respectfully requests that Plaintiffs have failed to meet the requisite elements of their claims, and thus judgment should be entered in favor of Defendant on Counts III, IV and V.  In the alternative, partial summary judgment should be granted as to any claims made by Plaintiff Matthew Marrone.

Respectfully submitted,

**THOMAS, THOMAS & HAFER, LLP**

By:   s/John Flounlacker
     John Flounlacker, Esquire
     Shawn E. Smith, Esquire
     P.O. Box 999
     Harrisburg, PA  17108-0999
Date:  May 15, 2003         (717)237-7134

---

[4] Robert Pfromm's report stated:

> The fungi found are of significant concern from an allergen aspect, <u>dependent on the sensitivity</u> of the exposed person.  These levels <u>could possibly</u> be at symptomatic concentrations, <u>if the exposed person is, in fact, sensitive to these species</u>…<u>**Appropriate medical testing on the occupants by qualified medical personnel could assist in determining the susceptibility of these individuals**</u>.

Exhibit C, p. 6 (emphasis added).  Thus, even Pfromm, who is familiar with mold and fungi although admittedly not a medical professional, cannot state that there is any obvious causal effect.  In fact, Pfromm specifically stated that Plaintiffs should find a "qualified medical specialist" to test in order to determine what effect, if any, the mold found would have on the Plaintiffs.

<u>CERTIFICATE OF SERVICE</u>

I, John Flounlacker, Esquire, of the law firm Thomas, Thomas & Hafer, LLP, hereby state that a true and correct copy of the foregoing document(s) was served upon all counsel of record by first class United States mail, postage prepaid, addressed as follows, on the date set forth below:

<u>By First Class U.S. Mail:</u>

Gianni Floro, Esquire
Tarasi, Tarasi & Fishman, P.C.
510 Third Avenue
Pittsburgh, PA  15219

James G. Nealon, III, Esquire
2411 North Front Street
Harrisburg, PA  17110

Edward A. Monsky, Esquire
Fine, Wyatt & Carey, P.C.
P.O. Box 590
Scranton, PA  18501-0590

Jennifer L. Murphy, Esquire
Duane Morris & Heckscher
305 N. Front Street
P.O. Box 1003
Harrisburg, PA 17108

Joel D. Gusky, Esquire
Harvey, Pennington, et al.
Eleven Penn Center, 29th Floor
1835 Market Street
Philadelphia, PA  19103-2989

THOMAS, THOMAS & HAFER, LLP


  s/ John Flounlacker
Dated:  May 15, 2003          John Flounlacker