

EXHIBIT

A

## STAN~~RD~~ AGREEMENT FOR THE SAL~~E~~ OF REAL ESTATE   A/S Residential

This form ~~rec~~ommended and approved for, but not restricted to use by, the Members of the Pennsylvania Association of REALTORS® (PAR)

### PA LICENSED BROKER

| | |
|---|---|
| AGENT FOR SELLER | Subanon-Gretna Realty |
| ADDRESS | P.O. Box 338 Mt. Gretna Pa 17064   PH 964-2100 |
| SUBAGENT FOR SELLER | FAX |
| ADDRESS | PH |
| AGENT FOR BUYER | R/Max of Lebanon County |
| ADDRESS | 209 W. Penn Ave Cleona Pa 17042   FAX |

### 1. This Agreement, dated _July_ _1999_ is between

SELLER(S): Linda M. Folkman

Address 354 Timber Road Mt. Gretna, Pa Zip Code 17064 hereafter "Seller" and

BUYER(S): Jack Peter Marrone Karen Anne

Address 11673 Highway PD Dixon MD Zip Code 65459 hereafter "Buyer."

### 2. PROPERTY (1-98) Seller hereby agrees to sell and convey to Buyer, who hereby agrees to purchase:

ALL THAT CERTAIN lot or piece of ground with buildings and improvements thereon erected, if any, known as:
354 Timber Road

in the Township of S. Londonderry

County of Lebanon in the Commonwealth of Pennsylvania, Zip Code 17064

Identification (e.g., Tax ID#; Parcel #; Lot, Block; Deed Book, Page, Recording Date) 31-9A-250-207-387

### 3. TERMS (1-98) (A) Purchase Price $160,000.00

One Hundred Sixty Thousand Dollars

which shall be paid to Seller by Buyer as follows:

| | | |
|---|---|---|
| (B) | Cash or check at signing this Agreement | |
| (C) | Cash or check on or before: | 5,000.00 |
| (D) | | |
| (E) | Cash, cashier's or certified check at time of settlement: | TOTAL $ 160,000.00 |
| (F) | Deposits to be held by Agent for Seller, unless otherwise stated herein | $16,500.00 |
| (G) | Written approval of Seller to be on or before: July 13 1999 | |
| (H) | Settlement to be made on or before: Aug 31 1999 | |

(I) Conveyance from Seller will be by fee simple deed or special warranty unless otherwise stated here:

(J) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here:

(K) At time of settlement, the following shall be adjusted pro-rata on a daily basis between Buyer and Seller, reimbursing where applicable: taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees, if any; water and/or sewer rents, if any, together with any other lienable municipal service. The charges are to be pro-rated for the period(s) covered: Seller will pay up to and including the date of settlement; Buyer will pay for all days following settlement, unless otherwise stated here:

### 4. FIXTURES AND PERSONAL PROPERTY (1-98)

(A) INCLUDED in this sale and purchase price are all existing items permanently installed in the Property, free of liens, including plumbing; heating; lighting fixtures (including chandeliers and ceiling fans); water treatment systems; pool and spa equipment; garage door openers and transmitters; television antennas; shrubbery, plantings and unpotted trees; any remaining heating and cooking fuels stored on the Property at the time of settlement; wall to wall carpeting; shades, window covering hardware; built-in air conditioners; built-in appliances; and the range/oven unless otherwise stated. Also included: Dishwasher, range refrigerator Hot tub, chair lift, washer & dryer, window coverings

(B) EXCLUDED fixtures and items:

### 5. SPECIAL CLAUSES (1-98)

(A) [X] Buyer and Seller acknowledge having received a statement of their respective estimated closing costs before signing this Agreement of Sale.

(B) [X] Buyer acknowledges receipt of Seller's Property Disclosure Statement before signing this Agreement, if required by law. (See Notice, Information Regarding the Seller's Property Disclosure Act.)

(C) [X] Buyer acknowledges receipt of the Deposit Money Notice (for cooperative sales when Agent for Seller is holding deposit money) before signing this Agreement.

(D) The following are a part of this Agreement if checked:
- [ ] Limited Dual Agency Addendum (PAR Form 140)
- [ ] Sale & Settlement of Other Property Contingency Addendum (PAR Form 130)
- [ ] Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form 131)
- [ ] Settlement of Other Property Contingency (PAR Form 133)
- [ ] Tenant-Occupied Property Addendum (PAR Form TOP)
- [ ]
- [ ]
- [ ]

Seller Initials: _____

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 1998

NOTICE TO BUYERS SEEKING MORTGAGE / FINANCING CONTINGENCY

The appraised value of the Property is used in determining the maximum amount of the mortgage loan and may be different from the purchase price and market value.

## NOTICES AND INFORMATION ON PROPERTY CONDITION INSPECTIONS

**U.S. Department of Housing and Urban Development**

**FHA Loans:   PROPERTY INSPECTION NOTICE  Importance of Home Inspections**
The U.S. Department of Housing and Urban Development (HUD) does not warrant the value or condition of a home. While HUD's FHA (the Federal Housing Administration) program requires the lender to have an appraiser determine the value of the property, it is an estimate only and is used to determine the amount of mortgage FHA will insure and if the condition of the property makes it eligible for FHA mortgage insurance. This is not, however, a guarantee that the property is free of defects.

As the purchaser (buyer), you should carefully examine the property or have it inspected by a qualified home inspection company to make sure that the condition is acceptable to you. You should do this before you sign the sales agreement (this document), or make the contract contingent on the inspection. If repairs are needed, you may negotiate with the owner about having the faults corrected.

There is no requirement that you hire an inspector, but if you choose to, the cost of the inspection up to $200 may be included in your mortgage loan. Names of home inspection companies can be found in the yellow pages of your telephone directory under the heading, "Home Inspection Services."

If you believe you have been subject to discrimination because of your race, color, religion, sex, handicap, familial status, or national origin, you should call the HUD Fair Housing and Equal Opportunity Complaint Hotline (800) 669-9777.

This statement must be delivered to you at the time of initial loan application. Return one copy to your lender as proof of notification and keep one copy for your records.

You, the borrower(s), must be certain that you understand the transaction. Seek professional advice if you are in doubt.

## PROPERTY INSPECTION NOTICES

**Property Inspection:**  A general inspection of the Property can be performed by a qualified home inspection service and may include inspections of:  structural components; roof; exterior windows and exterior doors; drainage and grading; gutters and downspouts; appliances; electrical; plumbing, heating, and cooling systems; water penetration; and any other items the parties may identify. Additional inspections might include:  Environmental Hazards (e.g., Asbestos, Ureaformaldehyde Foam Insulation, Underground Storage Tanks, Radon, Electromagnetic Fields) Wetlands Inspection, Flood Plain Verification, Property Boundary/Square Footage Verification, and inspection of items listed below. Buyer is advised to investigate easements, deed and use restrictions that apply to the Property and to review local zoning ordinances.

**Flood Plains:**  If the Property is located in a flood plain, the lender may require the purchase of additional insurance.

**Property Boundary / Square Footage:**  Buyer is advised, unless Seller has had the Property surveyed and that any fences, hedges, walls and other natural or constructed barriers or the lines of the Property. Buyer may obtain the square footage of the structure(s) and/or the lot. Buyer is advised that any numerical representations of square footage of the structure(s) and/or the lot may be inadequate. Buyer is advised to engage a professional surveyor or obtain an independent measurement of the structure(s) and/or lot. If the Buyer wishes to make the sale contingent on Buyer's approval of the Property's boundaries or square footage.

**Water Service:**  Buyer may select to have the water service inspected by a professional water testing company. In addition, on-site water service systems may have conditions for the quality and/or quantity requirements set by the municipality or the mortgage lender.

**Wood-Destroying Insect Inspection:**  Insects whose primary source of food is wood, such as termites, wood-boring beetles, carpenter ants, carpenter bees and certain other insects, can cause damage to the wood structure of a residence. Termite and Pest Control companies are available to make inspections to determine whether wood-destroying insects are present. Because of the way these insects function, damage to wood may be hidden. Careful selection should be made of skilled experts in the termite/pest control field to insure a proper determination of whether wood-boring insects or resultant damage is present.

## ENVIRONMENTAL NOTICES

**Asbestos:**  The heat-resistant and durable nature of asbestos makes it useful in construction and industry. The physical properties that give asbestos its resistance to heat and decay are linked with several adverse human health effects. Asbestos can easily break into microscopic fibers that can remain suspended in the air for long periods of time. When inhaled, these fibers easily penetrate body tissue. Asbestos is known to cause Asbestosis and various forms of cancer. Inquiries or requests for more information about asbestos can be directed to the United States Environmental Protection Agency, 1111-18th Street N.W., Washington, D.C. 20207, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health, Harrisburg, PA 17120.

**Electromagnetic Fields:**  Electromagnetic Fields (EMFs) occur around all electrical appliances and power lines. Conclusive evidence that EMFs pose health risks does not exist at present, and Pennsylvania has no laws regarding this issue.

**Environmental Hazards:**  The U.S. Environmental Protection Agency have and will recommend that owners and buyers and sellers comply with by law. Generally, if hazardous substances are found on a property, it is the property owner's responsibility to dispose of them properly. For more information and a list of hazardous substances, contact U.S. Environmental Protection Agency, 111 18th Street N.W., Washington, D.C. 20207, (202) 634-7740.

**Ureaformaldehyde Foam Insulation (UFFI):**  Ureaformaldehyde Foam Insulation (UFFI) is a thermal insulation material that is manufactured at the site of installation and pumped into the walls of the building being insulated. UFFI can release formaldehyde gas into the interiors of the buildings in which it is installed. Adverse health effects linked to exposure to UFFI are cancer; acute illness such as eye, nose, and throat irritation, and sensitization. Although a 1982 ban of future sales of UFFI by the U.S. Consumer Product Safety Commission was overturned in 1983 because the health risk was not established in UFFI vary with the design of the construction and the accessibility of the insulation. Information regarding tests and testing procedures can be obtained by writing the U.S. Consumer Product Safety Commission, Office of the Secretary, Third Floor, 5401 Westbard Avenue, Bethesda, MD 20207.

**Wetlands:**  Wetlands are protected by both the federal and state governments. Buyer may wish to have the Property inspected for wetlands by an environmental engineer to determine if permits for plans to build, improve, or develop the property would be affected or denied as a result of wetlands.

149  ☒  ELECTED
150  (A)  Within ___10___ days of the e... ...tion of this Agreement, Buyer, at Buyer's expense, may choose to have inspections and/or certifications com-
151       pleted by licensed or otherwise qualified professionals (see Property Inspection and Environmental Notices). Other provisions of this
152       Agreement may provide for inspections and/or certifications that are not waived or altered by Buyer's election here. If Buyer is not satisfied
153       with the condition of the Property as stated in any written report, Buyer will, **within the time given for completing inspections:**
154  ☐  Option 1
155       1.  Accept the Property with the information stated in the report(s) and agree to the RELEASE set forth in paragraph 26 of this
156           Agreement, OR
157       2.  Terminate the Agreement of Sale in writing by notice to Agent for Seller, if any, otherwise to Seller, within the time given for inspection,
158           in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement will
159           be NULL and VOID.
160  ☐  Option 2
161       1.  Accept the Property with the information stated in the report(s) and agree to the RELEASE set forth in paragraph 26 of this
162           Agreement, UNLESS the total cost to correct the conditions contained in the report(s) is more than $ _1,000_ .
163       2.  If the total cost to correct the conditions contained in the report(s) EXCEEDS the amount specified in paragraph 8(A) (Option 2) 1,
164           **Buyer will deliver the report(s) to Agent for Seller, if any, otherwise to Seller, within the time given for inspection.**
165           a.  Seller will, within ___5___ days of receiving the report(s), inform Buyer in writing of Seller's choice to:
166               1)  Make repairs before settlement so that the remaining cost to repair conditions contained in the report(s) is less than or equal to
167                   the amount specified in paragraph 8 (A) (Option 2) 1.
168               2)  Credit Buyer at settlement for the difference between the estimated cost of repairing the conditions contained in the report(s)
169                   and the amount specified in paragraph 8 (A) (Option 2) 1. This option must be acceptable to the mortgage lender, if any.
170               3)  Not make repairs and not credit Buyer at settlement for any defects in conditions contained in the report(s).
171           b.  If Seller chooses to make repairs or credit Buyer at settlement as specified in paragraph 8 (A) (Option 2) 2, Buyer shall accept the
172               Property and agree to the RELEASE set forth in paragraph 26 of this Agreement.
173           c.  If Seller chooses not to make repairs and not to credit Buyer at settlement, or if Seller fails to choose any option within the time
174               given, Buyer will within ___5___ days:
175               1)  Accept the Property with the information stated in the report(s) and agree to the RELEASE set forth in paragraph 26 of this
176                   Agreement, OR
177               2)  Terminate the Agreement of Sale in writing by notice to Agent for Seller, if any, otherwise to Seller, in which case all deposit
178                   monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and
179                   VOID.
180  (B)  Buyer's failure to exercise any of Buyer's options within the time limits specified in this paragraph shall constitute a WAIVER of this
181       contingency and Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement.
182  9.  WOOD INFESTATION CONTINGENCY (1-98)
183  ☐  WAIVED.  Buyer understands that Buyer has the option to request that the Property be inspected for wood infestation by a certified Pest Control
184       Operator. BUYER WAIVES THIS OPTION and agrees to the RELEASE set forth in paragraph 26 of this Agreement.
185  ☒  ELECTED  *S.S. 5pm MM 2-6-3/99*
186  (A)  Within _45_ days of the execution of this Agreement,
187       ☒  Buyer, at Buyer's expense,
188       ☐  Buyer, at Buyer's expense, not to exceed $ _____
189       shall obtain a written "Wood-Destroying Insect Infestation Inspection Report" from a certified Pest Control Operator and will deliver it and all
190       supporting documents and drawings provided by the Pest Control Operator to Agent for Seller, if any, otherwise to Seller. The report is to be
191       made satisfactory to and in compliance with applicable laws, mortgage and lending institutions, and/or Federal Insuring and Guaranteeing
192       Agency requirements, if any. The inspection will include all readily visible and accessible areas of all structures on the Property except the fol-
193       lowing structures, which will not be inspected: _____
194       _____
195  (B)  If the inspection reveals evidence of active infestation(s), Seller agrees, at Seller's expense and before settlement, to treat for active infestation(s),
196       in accordance with applicable laws.
197  (C)  If the inspection reveals damage from active infestation(s) or previous infestation(s), Buyer, at Buyer's expense, has the option to obtain a writ-
198       ten report by a professional contractor, home inspection service, or structural engineer that is limited to structural damage to the Property caused
199       by wood-destroying organisms and a proposal to repair the damage.  Buyer will deliver the structural damage report and corrective proposal to
200       Agent for Seller, if any, otherwise to Seller, within _____ days of delivering the original inspection report.
201  (D)  Within 5 days of receiving the structural damage report and corrective proposal, Seller shall advise Buyer whether Seller will repair, at Seller's
202       expense and before settlement, any structural damage from active or previous infestation(s).
203  (E)  If Seller chooses to repair structural damage revealed by the report, Buyer agrees to accept the Property as repaired and agrees to the RELEASE
204       set forth in paragraph 26 of this Agreement.
205  (F)  If Seller chooses not to repair structural damage revealed by the report, Buyer, within 5 days of receiving Seller's notice, will notify Seller in
206       writing of Buyer's choice to:
207       1.  Accept the Property with the defects revealed by the inspection, without abatement of price and agree to the RELEASE set forth in para-
208           graph 26 of this Agreement, OR
209       2.  Make the repairs before settlement, if required by the mortgage lender, if any, at Buyer's expense and with Seller's permission, which shall
210           not be unreasonably withheld, in which case Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this
211           Agreement. If Seller denies Buyer permission to make the repairs, Buyer may, within 5 days of Seller's denial, terminate this Agreement.
212           If Buyer terminates this Agreement, all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this
213           Agreement of Sale will be NULL and VOID, OR
214       3.  Terminate this Agreement, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and
215           this Agreement of Sale will be NULL and VOID.
216  (G)  Buyer's failure to exercise any of Buyer's options within the time limits specified in this paragraph shall constitute a WAIVER of this
217       contingency and Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement.
218  10.  CERTIFICATE OF OCCUPANCY (1-98)
219  ☒  NOT APPLICABLE
220  ☐  APPLICABLE
221  (A)  Buyer and Seller acknowledge that a certificate permitting occupancy of the Property may be required by the municipality and/or govern-
222       mental authority.
223  (B)  If a certificate is required, Seller shall, at Seller's expense and within _____ days of the execution of this Agreement, order the certificate for
224       delivery to Buyer on or before settlement.
225  (C)  In the event repairs/improvements are required for the issuance of the certificate, Seller shall, within 5 days of Seller's receipt of the require-
226       ments, notify Buyer of the requirements and whether Seller shall make the required repairs/improvements at Seller's expense.
227  (D)  If Seller chooses not to make the required repairs/improvements at Seller's expense, within 5 days, notify Seller in writing of Buyer's choice to
228       terminate the Agreement of Sale OR make the required repairs/improvements at Buyer's expense and with Seller's permission, which shall not be rea-
229       sonably withheld. If Seller denies Buyer permission to make the required repairs, Buyer may, within 5 days of Seller's denial, terminate this
230       Agreement. If Buyer terminates this Agreement, all deposit monies paid on account of purchase price shall be returned promptly to Buyer and
231       this Agreement of Sale will be NULL and VOID.
232  11.  RESIDENTIAL LEAD-BASED PAINT HAZARD REDUCTION ACT NOTICE REQUIRED FOR PROPERTIES
233       BUILT BEFORE 1978 (1-98)
234  ☒  NOT APPLICABLE
235  ☐  APPLICABLE
236  (A)  Seller represents that:  (check 1 OR 2)
237       ☐ 1. Seller has no knowledge concerning the presence of lead-based paint and/or lead-based paint hazards in or about the Property.
238       ☐ 2. Seller has knowledge of the presence of lead-based paint and/or lead-based paint hazards in or about the Property.
239           determining that lead-based paint and/or hazards exist, the location(s), the condition of the painted surfaces, and other available informa-
240           tion concerning Seller's knowledge of the presence of lead-based paint and/or lead based paint hazards.) _____
241           _____
242           _____

Buyer Initials: _KAM JPM_      A/S Residential Page 3 of 8      Seller Initial _S.T._

(B)  Records/Reports  (check 1   2)

☐ 1. Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in or about the Property.

☐ 2. Seller has provided Buyer with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in or about the Property. (List documents)

(C)  Buyer's Acknowledgment (check 1   2)

☐ 1. Buyer has received the pamphlet Protect Your Family from Lead in Your Home and has read the Lead Warning Statement contained in this Agreement (See Environmental Notice).

Buyer's Initials _____   Date _____

☐ 2. Buyer has reviewed Seller's disclosure of known lead-based paint and/or lead-based paint hazards, as identified in paragraph 11(A) and has received the records and reports pertaining to lead-based paint and/or lead-based paint hazards identified in paragraph 11(B).

Buyer's Initials _____   Date _____

(D)  RISK ASSESSMENT/INSPECTION. Buyer acknowledges that before Buyer is obligated to buy a residential dwelling built before 1978, Buyer has a 10 day period (unless Buyer and Seller agree in writing to a different period of time) to conduct a risk assessment or inspection of the Property for the presence of lead-based paint and/or lead-based paint hazards or for the presence of lead-based paint.

☐ WAIVED. Buyer understands that Buyer has the right to conduct a risk assessment or inspection of the Property to determine the presence of lead-based paint and/or lead-based paint hazards. BUYER WAIVES THIS RIGHT and agrees to the RELEASE set forth in paragraph 26 of this Agreement.

☐ ELECTED

1.  Buyer, at Buyer's expense, chooses to obtain a risk assessment or inspection of the Property for lead-based paint and/or lead-based paint hazards. The risk assessment and/or inspection shall be completed within _____ days of the execution of this Agreement of Sale (insert "10" unless Buyer and Seller agree to a different period of time).

2.  Within the time set forth above for obtaining the risk assessment and/or inspection of the Property for lead-based paint and/or lead-based paint hazards, Buyer may deliver to Agent for Seller, if any, otherwise to Seller, a written list specifying the existing conditions cited in the report and those corrections requested by Buyer, along with a copy of the risk assessment or inspection report.

3.  Seller may, within _____ days of receiving the list and report(s), submit a written corrective proposal to Buyer. The corrective proposal will include, but not be limited to, the name of the remediation company and a completion date for corrective measures. Seller will provide certification from a risk assessor or inspector that corrective measures have been made satisfactorily or before the completion date.

4.  Upon receiving the corrective proposal, Buyer, within 5 days, will:

   a.  Accept the corrective proposal and the Property in writing, and agree to the RELEASE set forth in paragraph 26 of this Agreement, OR

   b.  Terminate this Agreement in writing, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID.

5.  Should Seller fail to submit a written corrective proposal within the time set forth in paragraph 11(D)3 of this Agreement, then Buyer, within 5 days, will:

   a.  Accept the Property in writing, and agree to the RELEASE set forth in paragraph 26 of this Agreement, OR

   b.  Terminate this Agreement of Sale in writing, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID.

6.  Buyer's failure to exercise any of Buyer's options within the time limits specified in this paragraph shall constitute a WAIVER of this contingency and Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement.

(E)  Certification  By signing this Agreement, Buyer and Seller certify the accuracy of their respective statements, to the best of their knowledge.

**12.  RADON CONTINGENCY (1-98)**

(A)  Seller represents that: (check appropriate response(s))

☑ 1. Seller has no knowledge concerning the presence or absence of radon.

☐ 2. Seller has knowledge that the Property was tested on the dates, by the methods (e.g., charcoal canister, alpha track, etc.), and with the results of all tests indicated below:

| DATE | METHOD | RESULTS (picoCuries/liter or working levels) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

COPIES OF ALL AVAILABLE TEST REPORTS will be delivered to Buyer with this Agreement. SELLER DOES NOT WARRANT EITHER THE METHODS OR RESULTS OF THE TESTS.

☐ 3. Seller has knowledge that the Property underwent radon reduction measures on the date(s) and by the method(s) indicated below:

| DATE | RADON REDUCTION METHOD |
|---|---|
|  |  |
|  |  |
|  |  |

☐ WAIVED. Buyer understands that Buyer has the option to request that the Property be inspected for radon by a certified inspector (see Radon Notice). BUYER WAIVES THIS OPTION and agrees to the RELEASE set forth in paragraph 26 of this Agreement.

☑ ELECTED

(B)  Buyer, at Buyer's expense, has the option to obtain, from a certified inspector, a radon test of the Property and will deliver a copy of the test report to Agent for Seller, if any, otherwise to Seller, within 10 days of the execution of this Agreement. (See Radon Notice.)

1.  If the test report reveals the presence of radon below 0.02 working levels (4 picoCuries/liter), Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement.

2.  If the test report reveals the presence of radon at or exceeding 0.02 working levels (4 picoCuries/liter), Buyer will, within _____ days. of receipt of the test results:

☐ Option 1

   a.  Accept the Property in writing and agree to the RELEASE set forth in paragraph 26 of this Agreement, OR

   b.  Terminate this Agreement in writing, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID, OR

   c.  Submit a written, corrective proposal to Agent for Seller, if any, otherwise to Seller. The corrective proposal will include, but not be limited to, the name of the certified mitigation company; provisions for payment, including retests; and completion date for corrective measures.

      1)  Within 5 days of receiving the corrective proposal, Seller will:

         a)  Agree to the terms of the corrective proposal in writing, in which case Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement, OR

         b)  Not agree to the terms of the corrective proposal.

Buyer Initials: _KAM_ _DM_       A/S Residential Page 4 of 8

**Lead:** **(For Properties built before 19[illegible]**

**Lead Warning Statement:** Every purchaser of any interest in residential real property on which a reside[illegible]ing was built prior to 1978 [illegible] notified that such property may present exposure to lead from lead-based paint that may place young chi[illegible] of developing lead poisoni[illegible] Lead poisoning in young children may produce permanent neurological damage, including learning [illegible] ed intelligence quotie[illegible] behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to [illegible] w[illegible] any interest in reside[illegible]tial real property is required to provide the buyer with any information on lead-based [illegible] zards from [illegible] asses[illegible] s or inspections in t[illegible] seller's possession and notify the buyer of any known lead-based paint hazards. [illegible] ssess[illegible] or insp[illegible] ossible lead-based pa[illegible] hazards is recommended prior to purchase.

**Lead Hazard Disclosure Requirements:** In accordance with the [illegible] ead-Bas[illegible] eduction Act, any seller of property bu[illegible] before 1978 must provide the buyer with an EPA-approved lead ha[illegible] information [illegible] *Protect Your Family From Lead in Your Ho[illegible]* and must disclose to the buyer and the seller's agent the [illegible] pr[illegible] of lead-[illegible] paint [illegible]/or lead-based paint hazards in or on the propei[illegible] being sold, including the basis used for determini[illegible] tha[illegible] and/o[illegible] based paint hazards exist, the location of lead-based pai[illegible] and/or lead-based paint hazards, and the c[illegible] pa[illegible] fac[illegible] a pre-1978 structure must also provide the buyer with a[illegible] records or reports available to the seller [illegible] to lead-b[illegible] based paint hazards in or about the property being sold, the co[illegible] mon areas, or other residential dwel[illegible] family hou[illegible] e Act further requires that before a buyer is obligated to purchase any hou[illegible] ing constructed prior to 1978, the seller shall [illegible] buyer 10 [illegible] (unless buyer and seller agree in writing to another time period) to conduct risk assessment or insp[illegible] presence o[illegible] ased paint and/or lead-based paint hazards. The opportunity to conduct a risk assessment [illegible] inspection may be w[illegible] by [illegible], in writ[illegible] ther testing nor abatement is required of the seller. Housing built in 1978 or later is n[illegible] subject to the Act.

**Radon:** Radon is [illegible] al, [illegible] ve ga[illegible] s produced in the ground by the normal decay of uranium and radium. Studies indicate that extended expo[illegible] sure to h[illegible] vels of [illegible] as [illegible] risk of lung cancer. Radon can find its way into any air-space, including basements and crawl spaces and ca[illegible] permea[illegible] Environmental Protection Agency (EPA) advises corrective action if the annual average exposure to radon exceeds 0.02 wor[illegible] ing levels [illegible] If a house has a radon problem, it usually can be cured by increased ventilation and/or by preventing radon entry. Any pe[illegible] son who te[illegible] itigates [illegible] eguards a building for radon in Pennsylvania must be certified by the Department of Environmental Protection. Informatio[illegible] about radon [illegible] ut certified testing or mitigation firms is available through DER, Bureau of Radiation Protection, P.O. Box 2063, Harrisburg, PA 1712[illegible] (800) 23RAD[illegible] (717) 783-3594.

2) Should Seller agree to the terms of the corrective proposal, or fail to _____ nd within the given time, Buyer will, within 5 days, elect to:

    a)   Accept the Property in writing and agree to the RELEASE set forth in paragraph 26 of this Agreement, OR

    b)   Terminate this Agreement in writing, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID.

**Option 2**

a.   Accept the Property in writing and agree to the RELEASE set forth in paragraph 26 of this Agreement, OR

b.   Submit a written, corrective proposal to Agent for Seller, if any, otherwise to Buyer. The corrective proposal will include, but not be limited to, the name of the certified mitigation company; provisions for payment, including retests; and completion date for corrective measures. Seller shall pay a minimum of _____ toward the total cost of remediation and retests, which shall be completed by settlement.

    1)   If the total cost of remediation and retests EXCEEDS the amount specified in paragraph 12(B) (Option 2), Seller will, within 5 days of receipt of the cost of remediation, notify Buyer of Seller's choice to pay for the total cost of remediation and retests, OR not pay for the total cost of remediation and retests.

    2)   If the Seller chooses not to pay for the total cost of remediation and retests, Buyer will, within 5 days of receipt of Seller's notification, notify Seller, in writing, of Buyer's choice to:

        a)   Pay the difference between Seller's contribution to remediation and retests and the actual cost thereof, in which case Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement, OR

        b)   Terminate this Agreement, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID.

(C)  Buyer's failure to exercise any of Buyer's options within the time limits specified in this paragraph shall constitute a WAIVER of this contingency and Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement.

**13.  STATUS OF WATER (1-98)**

(A)  Seller represents that this property is served by:

    ☐  Public Water
    ☒  On-site Water
    ☐  Community Water
    ☐  None

(B)  **WATER SERVICE INSPECTION CONTINGENCY**

    ☐  WAIVED. Buyer acknowledges that Buyer has the option to request an inspection of the water service for the Property. BUYER WAIVES THIS OPTION and agrees to the RELEASE set forth in paragraph 26 of this Agreement.

    ☐  ELECTED

    1.  Buyer has the option, within _____ days of the execution of this Agreement and at Buyer's expense, to deliver to Agent for Seller, if any, otherwise to Seller, a written inspection report by a qualified, professional water testing company of the quality and/or quantity of the water service.

    2.  Seller agrees to locate and provide access to the on-site (or individual) water system, if applicable, at Seller's expense, if required by the inspection company. Seller also agrees to restore the Property prior to settlement.

    3.  If the report reveals that the water service does not meet the minimum standards of any applicable governmental authorities and/or fails to satisfy the requirements for quality and/or quantity set by the mortgage lender, if any, then Seller shall, within 5 days of receipt of the report, notify Buyer in writing of Seller's choice to:

        a.  Upgrade the water service to the minimum acceptable levels, before settlement, in which case Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement, OR

        b.  Not upgrade the water service.

    4.  If Seller chooses not to upgrade the water service to minimum acceptable levels, Buyer will, within 5 days of Seller's notice not to correct, either:

        a.  Accept the Property and the water service and, if required by the mortgage lender, if any, and/or any governmental authority, upgrade the water service before settlement or within the time required by the mortgage lender, if any, and/or any governmental authority, at Buyer's expense and with Seller's permission, which shall not be unreasonably withheld, and agree to the RELEASE set forth in paragraph 26 of this Agreement. If Seller denies Buyer permission to upgrade the water service, Buyer may, within 5 days of Seller's denial, terminate this Agreement. If Buyer terminates this Agreement, all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID, OR

        b.  Terminate this Agreement, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID.

    5.  Buyer's failure to exercise any of Buyer's options within the time limits specified in this paragraph shall constitute a WAIVER of this contingency and Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement.

**14.  STATUS OF SEWER (1-98)**

(A)  Seller represents that Property is served by:

    ☒  Public Sewer
    ☐  Individual On-lot Sewage Disposal System (See Sewage Notice 1)
    ☐  Individual On-lot Sewage Disposal System in Proximity to Well (See Sewage Notice 1; see Sewage Notice 4, if applicable)
    ☐  Community Sewage Disposal System
    ☐  Ten-acre Permit Exemption (See Sewage Notice 2)
    ☐  Holding Tank (See Sewage Notice 3)
    ☐  None (See Sewage Notice 1)
    ☐  None Available/Permit Limitations in Effect (See Sewage Notice 5)
    ☐  

(B)  **INDIVIDUAL ON-LOT SEWAGE DISPOSAL INSPECTION CONTINGENCY**

    ☒  WAIVED. Buyer acknowledges that Buyer has the option to request an individual on-lot sewage disposal inspection of the Property. BUYER WAIVES THIS OPTION and agrees to the RELEASE set forth in paragraph 26 of this Agreement.

    ☐  ELECTED

    1.  Buyer has the option, within _____ days of the execution of this Agreement and at Buyer's expense, to deliver to Agent for Seller, if any, otherwise to Seller, a written inspection report by a qualified, professional inspector of the individual on-lot sewage disposal system.

    2.  Seller agrees to locate and provide access to the individual on-lot sewage disposal system, and, if required by the inspection company, empty the septic tank, at Seller's expense. Seller also agrees to restore the Property prior to settlement.

    3.  If the report reveals defects that do not require expansion or replacement of the existing sewage disposal system, Seller shall, within _____ days of receipt of the report, notify Buyer in writing of Seller's choice to:

        a.  Correct the defects before settlement, including retests, at Seller's expense, in which case Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement, OR

        b.  Not correct the defects, in which case Buyer will, within _____ days of Buyer's notice not to correct the defects, either:

            1)  Accept the Property and the system and, if required by the mortgage lender, if any, and/or any governmental authority, correct the defects before settlement or within the time required by the mortgage lender, if any, and/or any governmental authority, at Buyer's sole expense and with Seller's permission, which shall not be unreasonably withheld, and agree to the RELEASE set forth in paragraph 26 of this Agreement. If Seller denies Buyer permission to correct the defects, Buyer may, within 5 days of Seller's denial, terminate this Agreement. If Buyer terminates this Agreement, all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID, OR

            2)  Terminate this Agreement in writing, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID.

    4.  If the report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____ days of receipt of the report, submit a corrective proposal to Agent for Buyer, if any, otherwise to Buyer. The corrective proposal will include, but not be limited to, the name of the remediation company; provisions for payment, including retests; and completion date for corrective measures. Within 5 days of receiving Seller's corrective proposal, or if no corrective proposal is received within the given time, Buyer will:

        a.  Agree to the terms of the corrective proposal, if any, in writing, in which case Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement, OR

d. Accept the Property and the system and, if required by the mortgage lender ity, and/or any governmental authority, correct the defects before sett at or within the time required by the mortgage lender, any, and/or any governmental authority, at Buyer's sole expense and with Seller's permission, which shall not be unreasonably withheld, and agree to the RELEASE set forth in paragraph 26 of this Agreement. If Seller denies Buyer permission to correct the defects, all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID, OR

e. Terminate this Agreement in writing, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID.

5. Buyer's failure to exercise any of Buyer's options within the time limits specified in this paragraph shall constitute a WAIVER of this contingency and Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement.

## 15. NOTICES & ASSESSMENTS (1-98)

(A) Seller represents as of Seller's execution of this Agreement, that no public improvement, condominium or homeowner association assessments have been made against the Property which remain unpaid and that no notice by any government or public authority has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances which remain uncorrected, and that Seller knows of no condition that would constitute violation of any such ordinances which remains uncorrected, unless otherwise specified here: _____

(B) Seller knows of no other potential notices and assessments except as follows: _____

(C) In the event notices and assessments are received after execution of this Agreement and before settlement, Seller will notify Buyer in writing, within 5 days of receiving the notice or assessment, that Seller shall:

1. Comply with notices and assessments at Seller's expense, in which case Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement, OR

2. NOT comply with notices and assessments, in which case Buyer will notify Seller within 5 days in writing that Buyer shall:

a. Comply with the notices and assessments at Buyer's expense and agree to the RELEASE set forth in paragraph 26 of this Agreement, OR

b. Terminate this Agreement, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer and this Agreement of Sale will be NULL and VOID.

If Buyer fails to notify Seller within the given time, Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement.

(D) Buyer is advised that access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

(E) If required by law, Seller shall deliver to Agent for Buyer, if any, otherwise to Buyer, on or before settlement, a certification from the appropriate municipal department or departments disclosing notice of any uncorrected violation of zoning, housing, building, safety or fire ordinances.

## 16. TITLE, SURVEYS, AND COSTS (1-98)

(A) The Property to be conveyed free and clear of all liens, encumbrances, and easements, EXCEPTING HOWEVER the following: existing deed restrictions, building restrictions, ordinances, easements of roads, easements visible upon the ground, easements of record, privileges or rights of public service companies, if any; otherwise the title to the above described real estate shall be good and marketable and such as will be insured by a reputable Title Insurance Company at the regular rates.

(B) In the event Seller is unable to give a good and marketable title and such as will be insured by a reputable Title Company at the regular rates, as specified in paragraph 16(A), Buyer shall have the option of taking such title as Seller can give without changing the price or of being repaid all monies paid by Buyer to Seller on account of purchase price and Seller shall reimburse Buyer for any costs incurred by Buyer for those items specified in paragraph 16(C) and in paragraph 16(D) items (1), (2), (3); and in the latter event there shall be no further liability or obligation on either of the parties hereto and this Agreement shall become NULL and VOID.

(C) Any survey or surveys which may be required by the Title Insurance Company or the abstracting attorney, for the preparation of an adequate legal description of the Property (or the correction thereof), shall be secured and paid for by Seller. However, any survey or surveys desired by Buyer or required by the mortgage lender shall be secured and paid for by Buyer.

(D) Buyer shall pay for the following: (1) The premium for mechanics lien insurance and/or title search, or fee for cancellation of same, if any; (2) The premiums for flood insurance and/or fire insurance with extended coverage, insurance binder charges or cancellation fee, if any; (3) Appraisal fees and charges paid in advance to mortgage lender, if any; (4) Buyer's customary settlement costs and accruals.

## 17. ZONING CLASSIFICATION (1-98)

Failure of this Agreement to contain the zoning classification (except in cases where the property [and each parcel thereof, if subdividable] is zoned solely or primarily to permit single-family dwellings) shall render this Agreement voidable at the option of the Buyer, and, if voided, any deposits tendered by the Buyer shall be returned to the Buyer without any requirement for court action.

Zoning Classification: _____

☐ ELECTED.  Within ____ days of the execution of this Agreement, Buyer will verify that the existing use of the Property as _____ is permitted. In the event the use is not permitted, Buyer will, within the time given for verification, notify Agent for Seller, if any, otherwise Seller, in writing that the existing use of the Property is not permitted and this Agreement will be NULL and VOID, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer. Buyer's failure to respond within the given time shall constitute a WAIVER of this contingency and all other terms of this Agreement of Sale remain in full force and effect.

## 18. COAL NOTICE

☐ NOT APPLICABLE

☐ APPLICABLE

THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract with the owners of the economic interests in the coal. This acknowledgment is made for the purpose of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

## 19. POSSESSION (1-98)

(A) Possession is to be delivered by deed, keys and:

1. Physical possession to a vacant building (if any) broom clean, free of debris at day and time of settlement, AND/OR

2. Assignment of existing lease(s), together with any security deposits and interest, at time of settlement, if Property is tenant occupied at the execution of this Agreement or unless otherwise specified herein. Buyer will acknowledge existing lease(s) by initialing said lease(s) at time of signing of this Agreement of Sale, if Property is tenant occupied.

(B) Seller shall not enter into any new leases, written extension of existing leases, if any, or additional leases for the Property without expressed written consent of Buyer.

## 20. RECORDING (3-85) This Agreement shall not be recorded in the Office for the Recording of Deeds or in any other office or place of public record and if Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such as a breach of this Agreement.

## 21. ASSIGNMENT (3-85) This Agreement shall be binding upon the parties, their respective heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto, it being expressly understood, however, that Buyer shall not transfer or assign this Agreement without the written consent of Seller.

## 22. DEPOSIT AND RECOVERY FUND (1-98)

(A) Deposits paid by Buyer within 30 days of settlement shall be by cashier's or certified check. Deposits, regardless of the form of payment and the person designated as payee, shall be paid to Agent identified in paragraph 3(F), who shall retain them in an escrow account until consummation or termination of this Agreement in conformity with all applicable laws and regulations. Agent may hold any uncashed check tendered as deposit pending the acceptance of this offer.

(B) In the event of a dispute over entitlement to deposit monies, the Agent holding the deposit is required by the Rules and Regulations of the State Real Estate Commission (49 Pa. Code §35.327) to retain the monies in escrow until the dispute is resolved. In the event of litigation for the return of deposit monies, Agent shall distribute the monies as directed by a final order of court or the written Agreement of the parties. Buyer and Seller agree that, in the event any Agent herein is joined in litigation for the return of deposit monies, the attorneys' fees and costs of the Agent(s) will be paid by the party joining the Agent.

Buyer Initials: _____  A/S Residential Page 6 of 8  Seller Initials: _____

521 (C) A Real Estate Recovery Fund exists to reimburse any persons who have obtained a civil judgment against a Pennsylvania real estate
522 licensee owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been unable to collect the judgment after exhaust-
523 ing all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658, or (800) 882-2113, (within Pennsylvania) and
524 (717) 783-4854 (outside Pennsylvania) during normal business hours of Commonwealth government employees.

525 **23. CONDOMINIUM RESALE ACT NOTICE (8-95)**
526 ☒ NOT APPLICABLE
527 ☐ APPLICABLE
528 (A) Buyer acknowledges that the Property is part of a condominium that is primarily run by a unit owners' association.
529 (B) §3407 of the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of the condo-
530 minium declaration (other than plats and plans) the bylaws, and the rules and regulations of the association.
531 (C) Within _____ days of the execution of this Agreement, Seller shall submit a request to the association for a Certificate of Resale and the doc-
532 uments necessary to enable Seller to comply with the Act. The Act provides that the association is required to provide these documents within
533 10 days of Seller's request.
534 (D) Under the Act, Seller is not liable to Buyer for the failure or delay of the association to provide the Certificate in a timely manner, nor is Seller
535 liable to Buyer for any erroneous information provided by the association and included in the Certificate.
536 (E) Buyer may declare the Agreement of Sale VOID at any time before Buyer's receipt of the Certificate of Resale and for 5 days thereafter, OR
537 until settlement, whichever occurs first. Buyer's notice declaring the Agreement void must be in writing; thereafter all deposit monies shall be
538 returned to Buyer.

539 **24. PLANNED COMMUNITY (HOMEOWNER ASSOCIATION) NOTICE FOR PURPOSES OF RESALE ONLY (1-97)**
540 ☒ NOT APPLICABLE
541 ☐ APPLICABLE
542 (A) Buyer acknowledges that the Property is part of a planned community as defined by the Uniform Planned Community Act. (See Definition of
543 Planned Community Notice for the definition contained in the Act).
544 (B) §5407(a) of the Act requires Seller to furnish Buyer with a copy of the Declaration (other than plats and plans), the bylaws, the rules and regu-
545 lations of the association, and a Certificate containing the provisions set forth in §5407(a) of the Act.
546 (C) Within _____ days of the execution of this agreement, Seller shall submit a request to the association for a Certificate and the documents nec-
547 essary to enable Seller to comply with the Act. The Act provides that the association is required to provide these documents within 10 days of
548 Seller's request.
549 (D) Under the Act, Seller is not liable to Buyer for the failure or delay of the association to provide the Certificate in a timely manner, nor is Seller
550 liable to Buyer for any erroneous information provided by the Association and included in the Certificate.
551 (E) Buyer may declare the Agreement of Sale VOID at any time before Buyer's receipt of the association documents and for 5 days thereafter, OR
552 until settlement, whichever occurs first. Buyer's notice declaring the Agreement void must be in writing; thereafter all deposit monies shall be
553 returned to Buyer.

554 **25. MAINTENANCE AND RISK OF LOSS (1-98)**
555 (A) Seller shall maintain the Property, grounds, fixtures, and any personal property specifically scheduled herein in its present condition, normal
556 wear and tear excepted.
557 (B) In the event any system or appliance included in the sale of the Property fails and Seller does not repair or replace the item, Seller will promptly
558 notify Buyer in writing of Seller's choice to:
559 1. Repair or replace the failed system or appliance before settlement or credit Buyer at settlement for the fair market value of the failed sys-
560 tem or appliance (this option must be acceptable to the mortgage lender, if any). In each case, Buyer accepts the Property and agrees to
561 the RELEASE set forth in paragraph 26 of this Agreement, OR
562 2. Make no repairs or replacements, and not credit Buyer at settlement for the fair market value of the failed system or appliance, in which
563 case Buyer will notify Seller in writing within 5 days or before settlement, whichever is sooner, that Buyer shall:
564 a. Accept the Property and agree to the RELEASE set forth in paragraph 26 of this Agreement, OR
565 b. Terminate this Agreement, in which case all deposit monies paid on account of purchase price shall be returned promptly to Buyer
566 and this Agreement of Sale will be NULL and VOID.
567 (C) Seller shall bear risk of loss from fire or other casualties until time of settlement. In the event of damage by fire or other casualties to any prop-
568 erty included in this sale that is not repaired or replaced prior to settlement, Buyer shall have the option of rescinding this Agreement and
569 promptly receiving all monies paid on account of purchase price or of accepting the Property in its then condition together with the proceeds
570 of any insurance recovery obtainable by Seller. Buyer is hereby notified that Buyer may insure Buyer's equitable interest in this Property as of
571 the time of execution of this Agreement.
572 Buyer's failure to exercise any of Buyer's options within the time limits specified in this paragraph shall constitute a WAIVER of this con-
573 tingency and Buyer accepts the Property and agrees to the RELEASE set forth in paragraph 26 of this Agreement.

574 **26. RELEASE (7-96)** — Buyer hereby releases, quit claims and forever discharges SELLER, ALL AGENTS, their SUBAGENTS, EMPLOY-
575 EES, and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM, or CORPORATION who may be liable by or
576 through them, from any and all claims, losses or demands, including, but not limited to, personal injuries and property damage and all of
577 the consequences thereof, whether now known or not, which may arise from the presence of termites or other wood-boring insects, radon,
578 lead-based paint hazards, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site
579 water service system, or any defects or conditions on the Property. This release shall survive settlement.

580 **27. REPRESENTATIONS (1-98)**
581 (A) Buyer understands that any representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Agents
582 or their employees are not a part of this Agreement, unless expressly incorporated or stated in this Agreement.
583 (B) It is understood that Buyer has inspected the Property before signing this Agreement of Sale (including fixtures and any personal prop-
584 erty specifically scheduled herein), or has waived the right to do so, and has agreed to purchase it in its present condition unless
585 otherwise stated in this Agreement. Buyer acknowledges that the Agents have not made an independent examination or determination
586 of the structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, or
587 of conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems
588 contained therein.
589 (C) It is further understood that this Agreement contains the whole agreement between Seller and Buyer and there are no other terms, obligations,
590 covenants, representations, statements or conditions, oral or otherwise of any kind whatsoever concerning this sale. Furthermore, this
591 Agreement shall not be altered, amended, changed, or modified except in writing executed by the parties.
592 (D) The headings, captions, and line numbers in this Agreement are meant only to make it easier to find the paragraphs.

593 **28. DEFAULT-TIME OF THE ESSENCE (1-98)**
594 The said time for settlement and all other times referred to for the performance of any of the obligations of this Agreement are hereby agreed to be
595 of the essence of this Agreement. For the purposes of this Agreement, number of days shall be counted from the date of execution, by excluding the
596 day this Agreement was executed and including the last day of the time period. Should Buyer:
597 (A) Fail to make any additional payments as specified in paragraph 3; OR
598 (B) Furnish false or incomplete information to Seller, Agent for Seller, Agent for Buyer, or the mortgage lender, if any, concerning Buyer's legal or
599 financial status, or fail to cooperate in the processing of the mortgage loan application, which acts would result in the failure to obtain the
600 approval of a mortgage loan commitment; OR
601 (C) Violate or fail to fulfill and perform any other terms or conditions of this Agreement;
602 then in such case, Seller shall have the option of retaining all deposit monies and other sums paid by Buyer on account of purchase price,
603 whether required by this Agreement or not, only as elected below: (Check only one)
604 ☒ As liquidated damages. In this event Buyer and Seller shall be released from further liability or obligation and this Agreement shall be
605 NULL and VOID.
606 ☐ On account of purchase price, or as monies to be applied to Seller's damages, or as liquidated damages for such breach, as Seller may
607 elect. In the event of liquidated damages, Buyer and Seller shall be released from further liability or obligation and this Agreement shall
608 be NULL and VOID.

609 **29. AGENT(S) (1-98)** It is expressly understood and agreed between the parties that the named Agent for Seller, any Subagents, their salespeople,
610 employees, officers and/or partners, are Agent(s) for Seller, and that the named Agent for the Buyer, their salespeople, employees, officers and/or
611 partners, are Agent(s) for Buyer. If there is no Agent for Buyer, Agent for Seller or Subagent for Seller may perform services for Buyer in connec-
612 tion with financing, insurance and document preparation, with written disclosure to Buyer and Seller.

Buyer Initials: _____   A/S Residential Page 7 of 8   Seller Initials: _____

**DEFINITION OF A PLANNED COMM...**

The Uniform Planned Community Act defines "planned community" ...

NOTICES (watermark)

(C) A R...

(D) §5102 of the Uniform Commu...

(C) _____ days after execution of this A...
means necessary to enable Seller to comply with the Act. A B...
10 days of Seller's request.

(D) Under the Act, Seller is not liable for the failure or delay of the association to provide the...
liable for any errors or inaccuracies in information provided by the association and included in the Certi...

(E) Buyer may declare this Agreement null and void... before Buyer's receipt of the Certificate...

24. **PLANNED COMMUNITY (HOMEOWNER ASSOCIATION) NOTICE FOR PURPOSES OF RESALE (1-98)**
NOT APPLICABLE
APPLICABLE

25. **MAINTENANCE AND RISK OF LOSS (1-98)**

(A) Seller shall maintain the Property grounds, fixtures, and any personal property specifically included herein in the...
wear and tear excepted.

(B) In the event any system or appliance is included in the sale of the Property fails and Seller does not repair or replace them...
notify Seller in writing of Seller's choice to:

(C) Seller assumes risk of loss from fire or other casualties until time of settlement. In the event of damage by...

26. **RELEASE (1-98)**

27. **REPRESENTATIONS (1-98)**

(A) ...

(B) It is understood that Buyer...

(C) It is further understood that representations made...

(D) Descriptions, captions, and titles used in this Agreement are means only to make a choice or...

28. **DEFAULT, TIME OF THE ESSENCE (1-98)**

(A) ...

(B) Funds that is incomplete information to Seller, Agent for Seller, Buyer, or the mortgage lender...

(C) In default to build by... shall have no charge in damage to deposit monies and other terms part... Check one or more and each item below that best represents the agreement below: (Check only one)
in an amount equal to the deposit monies paid; and Seller shall not further liability to escrow agent...
in liquidated damages; in the event that Buyer and Seller shall be released from further liability to...

**SELL and VOID.**
on account of purchase price or as needed to be applied to Seller's damages as liquidated damages...
their, in the event all additional damages, Buyer and Seller shall be released from further liability to...
**NULL and VOID.**

29. **AGENT (1-98)** It is expressly understood and agreement between the parties that the named Agent in...
employees operations under the Agency for Seller or Buyer or the named Agent for the Buyer does not have...
purchase. Agency by Buyer or Agent's fee by Buyer whether it is to Agent for Seller... Seller may per...
tion with financing, insurance and licensure inspection, with written disclosure to Buyer and Seller.

518  30.  **MEDIATION (7-96)**

519  ☐  NOT AVAILABLE

520  ☐  WAIVED.  Buyer and Seller understand that they may choose to mediate at a later date, should a dispute arise, but that there will be no obliga-
521  tion on the part of any party to do so.

522  ☒  ELECTED

523  (A)  Buyer and Seller will try to resolve any dispute or claim that may arise from this Agreement of Sale through mediation, in accordance with the
524  Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System. Any agreement reached through a mediation conference
525  and signed by the parties will be binding.

526  (B)  Buyer and Seller acknowledge that they have received, read, and understand the Rules and Procedures of the Home Sellers/Home Buyers
527  Dispute Resolution System. (See Mediation Notice.)

528  (C)  This agreement to mediate disputes arising from this Agreement shall survive settlement.

530  Buyer and Seller acknowledge that they have read and understand the notices and explanatory information regarding property condition inspec-
531  tions set forth on the back of this form.

533  NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT. Return by facsimile transmission (FAX) of this
534  Agreement of Sale, and all addenda, bearing the signatures of all parties, constitutes acceptance of this Agreement. Parties to this transaction
535  are advised to consult an attorney before signing if they desire legal advice.

637  WITNESS _____  BUYER X _Jack Marone_  DATE _7 July 99_

638  WITNESS _____  BUYER X _Reina J. Marone_  DATE _7 July 99_

639  WITNESS _____  BUYER _____  DATE _____

642  Seller hereby approves the above contract this ____9th____ SE ___ day of ___ July ___ A.D. 1999

648  WITNESS _____  SELLER X _Linda M. Sellman_  DATE _7/9/99_

650  WITNESS _____  SELLER _____  DATE _____

652  Services to Buyer: check due within 24 hours of Seller's acceptance  7/3/99

653  In conjunction with this Agreement of Sale, by initialing below, Buyer authorizes Subagent for Seller, if any, or Agent for Seller to perform the following
654  services on Buyer's behalf:

656  _____  Order Title Insurance from any reputable Title Insurance Company.
657  Buyer's Initials

659  _____  Order Homeowner's Insurance with coverage in the amount of $ _____
660  Buyer's Initials

662  _____  Order Fire & Extended Coverage Insurance with coverage in the amount of $ _____
663  Buyer's Initials

665  _____  Order Flood Insurance with coverage in the amount of $ _____
666  Buyer's Initials

668  _____  Buyer's Services _____  Fee: $ _____
669  Buyer's Initials

675  **Seller's Acknowledgment**

676  _____  Seller acknowledges receipt of a separate Buyer's services agreement with Agent for Seller or Subagent for Seller.
677  Seller's Initials

679  **Broker's/Agent's Certifications (check all that are applicable)**

680  ☐  **Regarding Lead-Based Paint Hazards Disclosure:** Required if Property was built before 1978. The undersigned Agents involved in this
681  transaction, on behalf of themselves and their brokers, certify that their statements are true to the best of their knowledge and belief.
682  Agents' Acknowledgment: The Agents involved in this transaction have informed Seller of Seller's obligations under The Residential Lead-
683  Paint Hazard Reduction Act, 42 U.S.C. 4852(d), and are aware of their responsibility to ensure compliance.

685  ☐  **Regarding FHA Mortgages:** The undersigned Agents involved in this transaction, on behalf of themselves and their brokers, certify that the
686  terms of this contract for purchase are true to the best of their knowledge and belief, and that any other agreement entered into by any of the
687  parties in connection with this transaction is attached to this Agreement of Sale.

689  ☒  **Regarding Mediation:** The undersigned
690  ☒ Agent for Seller; ☐ Agent for Buyer; ☐ Subagent for Seller
691  on behalf of themselves and their brokers, agree to submit to mediation in accordance with paragraph 30 of this Agreement.

694  AGENT FOR SELLER (Company Name) _____
695  ACCEPTED BY _Ole Scheff_  DATE _7.9.99_
697  (Signature of Broker or Salesperson)

699  SUBAGENT FOR SELLER (Company Name) _____
700  ACCEPTED BY _____  DATE _____
701  (Signature of Broker or Salesperson)

704  AGENT FOR BUYER (Company Name) _Re/Max of Lebanon Co_
705  ACCEPTED BY _____  DATE _7/7/99_
706  (Signature of Broker or Salesperson)

711  Buyer Initials: _JM_ _KAM_  **A/S Residential Page 8 of 8**  Seller Initials: _SE_

# DISPUTE RESOLUTION SYSTEM

1. **Agreement of Parties**   The Rules and Procedures of the Dispute Resolution System (DRS) govern all mediations under DRS. The written agreement can be a separate written agreement.

2. **Initiation of Mediation**   If a dispute exists, any party may start the mediation process by submitting a completed Request to Initiate Mediation (the Transmittal Form) to the local Association of REALTORS, (hereafter the Administrator). The Transmittal Form should be available through the Administrator's office. The initiating party should try to include the following information when sending the completed Transmittal Form to the Administrator:

   a.   A copy of the written agreement to mediate if there is one, OR a request by the initiating party to have the Administration contact the other parties to the dispute to invite them to join the mediation process.

   b.   The names, addresses and telephone numbers of the parties involved in the dispute including the name of every insurance company known to have received notice of the dispute or claim and the corresponding telephone numbers.

   c.   A brief statement of the facts of the dispute and the damages or relief sought.

3. **Selection of Mediator**   Within five days of receiving the completed Transmittal Form, the Administrator will send each party to the dispute a copy of the Transmittal Form and a list of qualified mediators and their fee schedules. Each party then has ten days to review the list of mediators, cross off the name of any mediator to whom the party objects, and return the list to the Administrator. The Administrator will appoint the first available mediator who is acceptable to all parties involved.

   A mediator who has any financial or personal interest in the result of the mediation must disclose this to the parties. The parties are informed, give their written consent.

4. **Mediation Fees**   Mediation fees will be shared equally by all parties to the dispute unless otherwise agreed. Each party agrees to the payment terms contained in the mediator's fee schedule.

5. **Time and Place of Mediation Conference**   Within ten days of being appointed by the Administrator, the mediator will contact the parties and set the time and place of the mediation conference. The mediator must give at least ten days advance notice of the conference. The mediation conference should not be more than sixty days from the mediator's appointment to the dispute.

6. **Conduct of Mediation Conference**   The parties attending the mediation conference should:

   1.   Have the authority to enter into and sign a settlement agreement.

   2.   Produce all information required for the mediator to understand the issues of the dispute. The information may include relevant written materials, as well as descriptions of witnesses, the content of their testimony, whether or not they will be appearing at the mediation conference. The mediator can require the parties to share written materials and information before the date of the mediation conference.

   The mediator presiding over the conference:

   1.   Will impartially conduct an orderly settlement negotiation.

   2.   Will help the parties define the matters in dispute and reach a mutually agreeable solution.

   3.   Will have no authority to render an opinion, to bind the parties to his or her decision, or to force the parties to reach a settlement.

   Formal rules of evidence will not apply to the mediation conference.

7. **Representation by Counsel**   Any party who intends to be accompanied at the mediation conference by legal counsel will notify the mediator and the other parties of this intent at least ten days before the conference.

8. **Confidentiality**   No aspect of the mediation can be relied upon or introduced as evidence in any arbitration, judicial or other proceeding. This includes, but is not limited to, any opinions or suggestions made by any party regarding a possible settlement; any admissions made during the course of the mediation; any proposals or opinions expressed by the mediator; and any responses given by any party to opinions, suggestions, or proposals.

   No privilege will be affected by disclosures made in the course of the mediation.

   Transcripts or recordings of the mediation will not be allowed without the prior, written consent of all parties and the mediator.

   Records, reports, and other documents received or prepared by the mediator or Administrator cannot be subpoenaed in any subsequent judicial or other proceeding, with the exception of an agreement that settles the dispute, made and signed by the parties during the course of the mediation.

   Neither the mediator nor the Administrator can be compelled to testify regarding the mediation in any adversary proceeding or judicial forum either in the course of the mediation or in any confidential communication.

9. **Mediated Settlement**   When a dispute is resolved through mediation, the mediator will put the complete agreement in writing and all parties will sign the written agreement within ten days of the conclusion of the mediation conference. Every reasonable effort will be made to sign the written agreement at the end of the conference.

10. **Judicial Proceedings and Immunity**   NEITHER THE ADMINISTRATOR, THE MEDIATOR, THE NATIONAL ASSOCIATION OF REALTORS, THE PENNSYLVANIA ASSOCIATION OF REALTORS, NOR ANY OF ITS MEMBER BOARDS, SHALL BE DEEMED NECESSARY OR INDISPENSABLE PARTIES IN ANY JUDICIAL PROCEEDINGS RELATING TO MEDIATION UNDER THESE RULES AND PROCEDURES, NOR SHALL ANY OF THEM SERVING UNDER THESE PROCEDURES BE LIABLE TO ANY PARTY FOR ANY ACT, ERROR OR OMISSION IN CONNECTION WITH ANY SERVICE OR THE OPERATION OF THE HOME SELLER/HOME BUYER DISPUTE RESOLUTION SYSTEM.

ACCEPTED BY _____   DATE _____

_____
(Signature of SELLER or Company Name)

ACCEPTED BY _____   DATE _____

_____
(Signature of Buyer or Salesperson)

ACCEPTED BY _____   DATE _____

_____
(Signature of Buyer or Salesperson)

Seller Initials: _____

7. Additions/ Remodeling.  Have you ___ any additions, structural changes or other ___ ___ ___ations to the property? __Yes ✔No
__Yes," please describe: _____

8. Water and sewage.
a) What is the source of your drinking water? __Public __Community System ✔Well on Property __Other
If "Other," please explain:_____

b) If your drinking water source is not public:  When was your water last tested? _____  What was the result of the test? _____
Is the pumping system in working order? ✔Yes __No If "No," please explain:_____

c) What is the quantity, gallons per minute, of the on-site water service? N/A

d) Do you have a softener, filter or other purification system? __Yes ✔No   If "Yes," is the system: __Leased __Owned

e) What is the type of sewage system? ✔Public Sewer __Private Sewer __Septic Tank __Cesspool __Other
If "Other," please explain:_____
__unknown

f) Is there a sewage pump?  __Yes __No  If "Yes," is it in working order?  __Yes __No unknown

g) When was the cesspool or septic system last serviced?  N/A

h) Is either the water or sewage system shared? __Yes ✔No If "Yes," please explain:_____

i) Are you aware of any leaks, backups or other problems relating to any of the plumbing, water and sewage-related items?
__Yes ✔No  If "Yes," please explain:_____

). Plumbing system.
) Type of plumbing: ✔Copper __Galvanized __Lead __PVC __Unknown __Other If "Other," please explain:_____

) Are you aware of any problems with any of your plumbing fixtures (including, but not limited to: kitchen, laundry or bathroom
fixtures, wet bars, hot water heater, etc.)?  __Yes ✔No  If "Yes," please explain:_____

0. Heating and air conditioning.
Type of air conditioning: __Central Electric __Central Gas __Wall __None  Number of window units included in sale: 2
ocation: living room, master bed room

List any areas of the house that are not air conditioned: 2 units cool entire house

Type of heating: ✔Electric __Fuel Oil __Natural Gas __Other  If "Other," please explain:_____

List any areas of the house that are not heated:_____

ype of water heating: ✔Electric __Solar __Gas __Other  If "Other," please explain:_____

Are you aware of any underground fuel tanks on the property? __Yes ✔No   If "Yes," please describe:_____

e you aware of any problems with any item in this section?  __Yes ✔No  If "Yes," please explain:_____

at are the approximate annual utility costs?
tural Gas_____   Electricity $2220.-/yr   Trash Collection $168.-
ttled Gas_____   Water_____
wer $500/yr.   Heating Oil_____

. Electrical system.  Are you aware of any problems or repairs needed in the electrical system? __Yes ✔No
"Yes," please explain:_____

Other equipment and appliances included in sale (complete only if applicable).
__Electrical Garage Door Opener   Number of transmitters_____

✔Smoke Detectors  How Many? 2  Location: front hallway
back hallway

SELLER INITIALS YC

c) __Security Alarm System    __Owned    __Leased  Lease Information:_____    _____

d) __Lawn Sprinkler    __Number    __Automatic Timer

e) ✓Swimming Pool    __Pool Heater    ✓Spa/Hot Tub  List all pool/spa equipment:_____

f) ✓Refrigerator    __Range    __Microwave Oven  ✓Dishwasher    __Trash Compactor    __Garbage Disposal
g) ✓Washer    ✓Dryer
h) __Intercom
i) ✓Ceiling Fans    Number _2_  Location: __Kitchen, living room__

j) Other:_____
_____
_____

Are any items in this section in need of repair or replacement?__Yes✓No __Unknown  If "Yes," please explain:_____
_____

13. Land (soils, drainage and boundaries).   a) Are you aware of any fill or expansive soil on the property? __Yes✓No

b) Are you aware of any sliding, settling, earth movement, upheaval, subsidence or earth stability problems that have occurred on o
affect the property?    __Yes   ✓No

NOTE TO BUYER: YOUR PROPERTY MAY BE SUBJECT TO MINE SUBSIDENCE DAMAGE.  MAPS OF THE COUNTIE
AND MINES WHERE MINE SUBSIDENCE DAMAGE MAY OCCUR AND MINE SUBSIDENCE INSURANCE ARE AVAIL/
THROUGH:  DEPARTMENT OF ENVIRONMENTAL PROTECTION, MINE SUBSIDENCE INSURANCE FUND 3913
.SHINGTON ROAD, MCMURRAY, PA 15317  (412-941-7100

c) Are you aware of any existing or proposed mining, strip mining or any other excavations that might affect this property?
__Yes ✓No

d) To your knowledge, is this property, or part of it, located in a flood zone or wetlands area?    __Yes  ✓No

e) Do you know any of the past or present drainage or flooding problems affecting the property?    __Yes  ✓No

f) Do you know of any encroachments, boundary line disputes or easements?    __Yes  ✓No

NOTE TO BUYER: Most properties have easements running across them for utility services and other reasons.  In many cases, the
easements do not restrict the ordinary use of the property, and the seller may not be readily aware of them.  Buyers may wish to
determine the existence of easements and restrictions by examining the property and ordering an abstract of title, or searching the reco
in the Office of the Recorder of Deeds for the county before entering into an agreement of sale.

g) Are you aware of any shared or common areas (for example, driveways, bridges, docks, walls, etc.) or maintenance agreements?
__Yes ✓No

Explain any "Yes" answers that you give in this section:_____
_____
_____

14. Hazardous substances.
a) Are you aware of any underground tanks or hazardous substances present on the property (structure or soil), including, but not limite
asbestos, polychlorinated biphenyls (PCBs), radon, lead paint, ureaformaldehyde foam insulation (UFFI), etc.?    __Yes  ✓No

b) To your knowledge, has the property been tested for any hazardous substances?    __Yes  ✓No  If yes, please attach a copy of the
test results.

c) Do you know of any other environmental concerns that might impact upon the property?    __Yes  ✓No

d) Do you know of any tests for radon gas that have been performed in any buildings on the property?    __Yes  ✓No
If yes, list date, type, and results of all tests below:

| DATE | TYPE OF TEST | RESULTS (picoCuries/liter or working levels) |
|------|-------------|----------------------------------------------|
| ___ | ___ | _____ |
| ___ | ___ | _____ |

e) Are you aware of any radon removal system on the property?    __Yes  ✓No
If yes, list date installed and type of system, and whether it is in working order below:

| DATE INSTALLED | TYPE OF SYSTEM | WORKING ORDER |
|----------------|----------------|---------------|
| _____ | _____ | __Yes __No |
| _____ | _____ | __Yes __No |
| _____ | _____ | __Yes __No |

f) If property was constructed, or if construction began, before 1978, you must disclose any knowledge of lead-based paint on the
property.  Are you aware of any lead-based paint or lead-based paint hazards on the property?    __Yes  ✓No
f yes, explain how you know of it, where it is, and the condition of those lead-based paint surfaces:_____

_____

If property was constructed, or .. construction began, before 1978, you must disclose any reports or records of lead-based pair property. Are you aware of any reports or records regarding lead-based paint or lead-based paint hazards on the property? ___Yes ✓No If yes, list all available reports and records: _____

Explain any "Yes" answers that you give in this section:_____

_____

_____

15. Condominiums and other homeowners associations (complete only if applicable),
Type: ___Condominium ___Cooperative ___Homeowners Association ___Other If "Other," please explain:_____

_____

**NOTICE REGARDING CONDOMINIUMS AND COOPERATIVES:** ACCORDING TO SECTION 3407 OF THE UNIFOR CONDOMINIUM ACT (68 PA.C.S SECTION 3407 (RELATING TO RESALES OF UNITS) AND 68 PA.C.S. SECTION 4409 (RELATING TO RESALES OF COOPERATIVE INTERESTS), A BUYER OF A RESALE UNIT IN A CONDOMINIUM OR COOPERATIVE MUST RECEIVE A CERTIFICATE OF RESALE ISSUED BY THE ASSOCIATION IN THE CONDOMINIUI COOPERATIVE. THE BUYER WILL HAVE THE OPTION OF CANCELING THE AGREEMENT WITH THE RETURN OF DEPOSIT MONEYS UNTIL THE CERTIFICATE HAS BEEN PROVIDED TO THE BUYER AND FOR FIVE DAYS THERE, OR UNTIL CONVEYANCE, WHICHEVER OCCURS FIRST.

SELLER INITIALS_____

16. Miscellaneous.
a) Are you aware of any existing or threatened legal action affecting the property? ___Yes ✓No

Do you know of any violations of Federal, State or local laws or regulations relating to this property? ___Yes ✓No

c) Are you aware of any public improvement, condominium or homeowner association assessments against the property that remain unpaid or of any violations of zoning, housing, building, safety or fire ordinances that remain uncorrected? ___Yes ✓No

d) Are you aware of any judgement, encumbrance, lien (for example, comaker or equity loan) or other debt against this property tha cannot be satisfied by the proceeds of this sale? ___Yes ✓No

e) Are you aware of any reason, including a defect in title, that would prevent you from giving a warranty deed or conveying title to property? ___Yes ✓No

f) Are you aware of any material defects to the property, dwelling or fixtures which are not disclosed elsewhere on this form? ___Yes ✓No

A material defect is a problem with the property or any portion of it that would have a significant adverse impact on the value of the residential real property or that INVOLVES AN UNREASONABLE RISK TO PEOPLE ON THE LAND.

Explain any "Yes" answers that you give in this section:_____

_____

_____

The undersigned seller represents that the information set forth in this disclosure statement is accurate and complete to the best of the seller's knowledge. The seller hereby authorizes any agent for the seller to provide this information to prospective buyers of the proper and to other real estate agents. The seller alone is responsible for the accuracy of the information contained in this statement. The selle shall cause the buyer to be notified in writing of any information supplied on this form which is rendered inaccurate by a change in the lition of the property following the completion of this form.

SELLER _Linda M Edleman_ DATE_4-27-99_ SELLER _____ DATE _____
SELLER _____ DATE _____ SELLER _____ DATE _____

## EXECUTOR, ADMINISTRATOR, TRUSTEE
The undersigned has never occupied the property and lacks the personal knowledge necessary to complete this disclosure statement.

_____ DATE _____

_____ DATE _____

## RECEIPT AND ACKNOWLEDGMENT BY BUYER
The undersigned buyer acknowledges receipt of this disclosure statement. The buyer acknowledges that this statement is not a warranty nd that, unless stated otherwise in the sales contract, the buyer is purchasing this property in its present condition. It is the buyer's :sponsibility to satisfy himself or herself as to the condition of the property. The buyer may request that the property be inspected, at 1e buyer's expense and by qualified professionals, to determine the condition of the structure or its components.

UYER _Karen A Morrow_ DATE_9 Jul 99_ BUYER _____ DATE _____
UYER _John P Morrow_ DATE_7 July 99_ BUYER _____ DATE _____

v 4/28/98)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACK MARRONE, Husband,
KAREN MARRONE, Wife,
Both Individually and in Their Capacity
as Parents and Guardians for
VIDA MARRONE, a Minor  and
MATTHEW ADAM MARRONE
  Plaintiffs

     v.

ALLSTATE INSURANCE COMPANY,
LINDA M. EDLEMAN, FRED SCHAEFFER,
MT. GRETNA REALTY and
HOUSE MASTERS,
  Defendants

:   CIVIL ACTION - LAW
:
:   JURY TRIAL DEMANDED
:
;
:   JUDGE  KANE
:
:
:   1:CV-01-0773
:
:
:
:
:

---

## CERTIFICATE OF SERVICE

I, **EDWARD A. MONSKY, ESQUIRE,** hereby certify that I forwarded a true and correct copy of

the foregoing Motion for Summary Judgment of Defendants Fred Schaeffer and Mt. Gretna Realty upon

the following individuals by first class U.S. Mail, postage prepaid, on the *14th* day of May, 2003:

     Gianni Floro, Esquire
     Tarasi, Tarasi & Fishman,  P.C.
     510 Third Ave.
     Pittsburgh, PA  15219

     James G. Nealon, III, Esquire
     Nealon & Grover
     2411 N. Front St.
     Harrisburg, PA  17110

John Flounlacker, Esquire.
Thomas, Thomas & Hafer
P.O. Box 999
Harrisburg, PA 17108

Jennifer L. Murphy, Esquire
Duane Morris & Heckscher
P.O. Box 1003
Harrisburg, PA 17108

Joel D. Gusky, Esquire
Harvey Pennington
Eleven Penn Center
1835 Market St., 29th Fl.
Philadelphia, PA 19103

**FINE, WYATT & CAREY, P.C.**

By: _____
      Edward A. Monsky, Esquire