

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACK MARRONE, Husband,              :
KAREN MARRONE, Wife,                :        CIVIL ACTION - LAW
Both Individually and in Their Capacity  :
as Parents and Guardians for        :        JURY TRIAL DEMANDED
VIDA MARRONE, a Minor, and          :
MATTHEW ADAM MARRONE               :
        Plaintiffs                  :        JUDGE KANE
                                    :
v.                                  :        1:CV-01-0773
ALLSTATE INSURANCE COMPANY,         :
LINDA M. EDLEMAN, FRED SCHAEFFER,
MT. GRETNA REALTY and               :
HOUSE MASTERS,                      :
        Defendants                  :

FILED

MAY 1 5 2003

MARY E. D'ANDREA, CLERK
PER _____ HBG, PA DEPUTY CLERK

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Moving Defendants, Fred Schaeffer and Mt. Gretna Realty, by and through their counsel, Fine, Wyatt & Carey, P.C., pursuant to L.R. 56.1, hereby submit their Statement of Material Facts as to which Moving Defendants contend there is no genuine issue to be tried:

1.      Plaintiffs Jack Marrone and Karen Marrone entered into a standard agreement for the sale of real estate with Linda M. Edleman on or about July 7, 1999. A true and correct copy of the standard agreement is attached as Exhibit "A" to the Motion for Summary Judgment of Moving Defendants.

2.      Plaintiffs executed a Receipt and Acknowledgement of the Seller's Property Disclosure Statement on or about July 7, 1999. The Seller's Property Disclosure Statement is not executed by Fred Schaeffer or any other representative of Mt. Gretna Realty. A true and correct copy of the Seller's Property Disclosure Statement is attached as Exhibit "B" to the Motion for Summary Judgment of Moving Defendants.

3.      At all times relevant to their purchase of the Edleman property, the Plaintiffs used the services of Chip Stanilla of Re-Max as their agent with regard to their purchase of the subject property. (K. Marrone dep., pp. 54-55; J. Marrone dep., p. 261).

4.      Karen Marrone never met Fred Schaeffer prior to closing and does not even recall meeting him at the closing on the subject property. (K. Marrone dep., pp. 55-56).

5.      Karen Marrone never spoke with Fred Schaeffer before the closing on the Edleman property and did not rely on anything he said about the Edleman property in connection with her decision to purchase the property. (K. Marrone dep., pp. 56-57).

6.      Karen Marrone obtained a house inspection from Housemasters based upon the recommendation of Plaintiff's agent, Chip Stanilla. (K. Marrone dep., p. 61, pp. 190-193).

7.      When Plaintiffs obtained the inspection from Housemasters, Fred Schaeffer was not present, nor was any representative of Mt. Gretna. The only real estate agent present at the inspection was the Plaintiff's agent, Chip Stanilla. (K. Marrone dep., pp. 71-72; Berthoud dep., p. 58).

8.      On the final house inspection prior to closing, Mr. Stanilla was present on behalf of the Plaintiffs. Moving Defendants were not present. Karen Marrone advised Stanilla that the home was dirty and filthy and he offered to obtain and pay for a cleaning service after closing. (K. Marrone dep., pp. 77-79).

9.      The real estate commission with regard to the sale of the house was split equally between moving Defendants and the Plaintiff's agent, Re-Max. (K. Marrone dep., pp. 82-83; J. Marrone dep., p. 261; Schaeffer dep. p. 19).

10.      Prior to closing on the home, Plaintiffs had the opportunity to review the report from Housemasters, and Plaintiffs never requested that Defendant Edleman correct any of the items noted on the inspection report. (K. Marrone dep., p. 171).

11.     The Marrone's saw quite a few homes with their agent, Chip Stanilla, prior to entering into the Agreement of Sale for the Edleman property. (J. Marrone dep., pp. 14-15).

12.     The Marrone's obtained an inspection of the property and understood that they would have the opportunity not to close on the home depending upon the results of the inspection. (J. Marrone dep., pp. 65-67).   Mr. Marrone stated that he would not buy a house unless he had a professional opinion from an inspector. (J. Marrone dep., p. 73).

13.     The Inspection Report indicates that the Plaintiff's owner and Chip Stanilla were present for the inspection. (J. Marrone dep., p. 77).

14.     Jack Marrone never met or talked with Defendant Schaeffer. (J. Marrone dep., p. 113).

15.     Jack Marrone does not even recall Fred Schaeffer attending closing. (J. Marrone dep., pp. 113, 119).

16.     Jack Marrone is not aware of any other homes in Mt. Gretna that have a mold problem. (J. Marrone, p. 138, pp. 260-261).

17.     Plaintiffs put their trust in their real estate agent, Chip Stanilla of Re-Max. (J. Marrone dep., pp. 261-262).

18.     Matthew  Marrone recalled that his parents worked with a real estate agent, Chip Stanilla, who was present when they first visited the subject property. (M. Marrone dep., pp.51-52).

19.     Matthew Marrone lived in the subject property from the time of closing until April of 2000 and did not observe a water problem in the basement of the property, nor did anyone tell him during that time that there was a water or similar problem in the basement. (M. Marrone dep., pp. 60-61).

20.     Vida Marrone looked at the Edleman home prior to the purchase of the property by her parents, together with their real estate agent, Chip Stanilla of Re-Max. (V. Marrone dep., pp.

3

30-31).  They went through the entire house and the basement on that visit.  (V. Marrone dep.,

p. 31).

 21. Fred Schaeffer has been a licensed real estate agent for 18 years.  He is the sole owner

and employee of Mt. Gretna Realty.  (Schaeffer dep., pp. 12-13).

 22. The Marrone's had a Buyer's Agency Agreement with Chip Stanilla of Re-Max.

(Schaeffer dep., p. 14, Exhibit 4).

 23. Fred Schaeffer did not accompany the Plaintiffs and the Plaintiff's real estate agent on the

walk through inspection prior to closing.  (Schaeffer dep., p. 17).

 24. Schaeffer visited the home and made a listing presentation to Ms. Edleman.  At the time

of this visit, he went through every room in the house and the basement, and did not notice any wetness

or dampness in the basement.  (Schaeffer dep., pp. 17-18).

 25. Fred Schaeffer was not aware of any water leakage or dampness within the basement.

He relied upon information which he received from the Seller, Linda Edleman and his own visit,

wherein he did not notice any water stains or water spots in the basement.  (Schaeffer dep., pp. 25-26).

 26. Mr. Schaeffer was not present during any of the inspections for the subject property,

including the Housemasters inspection. (Schaeffer dep. pp. 32-22;  Berthoud dep., p. 58).

 27. Schaeffer was not aware that there was an inspection of the property because of a possible

water problem.  (Schaeffer dep., p. 42).

 28. Schaeffer did not obtain a copy of the Housemaster Inspection Report.  (Schaeffer dep.,

pp. 43-46;  Berthoud dep., p. 58).

 29. Schaeffer had no indication or conversation with anyone prior to the Plaintiff's purchase

of the house that there was a mold problem in the house.  (Schaeffer dep. p. 57).

4

30.     The Marrone's had the option to terminate the Agreement of Sale within five (5) days of receipt of the Inspection Report.  (Schaeffer dep., p. 62-63, Exhibit 29).

31.     Linda Edleman executed a Seller's Property Disclosure Statement which indicated that she was not aware of any water leakage, accumulation of dampness within the basement or crawlspace. (Edleman dep., pp. 30-31).

32.     To her knowledge, her former husband Jeffrey Edleman was not aware of any water leakage, accumulation or dampness within the basement or crawlspace.  (Edleman dep., p. 32).

33.     Ms. Edleman did not know of any repairs or other attempts to control a water or dampness problem in the basement or crawlspace.   Her husband never advised her that he had worked in the basement to correct any wetness or dampness in the basement.  (Edleman dep., pp. 33-34).

34.     Mrs. Edleman's former husband, Jeffrey Edleman, placed paneling in the basement in 1985 or 1986 to finish off the basement.  (Edleman dep., pp. 35-36).

35.     Defendant Edleman also indicated in the Seller's Disclosure Statement that she was not aware of any problems with her plumbing fixtures.  (Edleman dep., p. 37).

36.     Defendant Edleman lived in the house from 1984 to 1999 and did not notice any mold or wetness in the house.  (Edleman dep., pp. 63-64).

37.     Plaintiffs received the Housemasters inspection report at the time of the inspection, and their  agent, Chip Stanilla, received a copy of the Housemasters inspection report.  (Berthoud dep., pp. 58-60).

38.     Mr. Berthoud of Housemasters did not know Mr. Schaeffer prior to his inspection and did not provide a copy of his report to Schaeffer.  (Berthoud dep., pp. 58-60).

39.     Attached hereto as Exhibits and incorporated by reference are the following portions of deposition transcripts referred to in the Statement of Undisputed Material Facts:

A.      Karen Marrone,  pp. 54-57, 61, 71-72, 77-79, 82, 83 and 171.

B.      Jack Marrone, pp. 14-15, 73, 77, 113, 119, 138, 260-262.

C.      Matthew  Marrone, pp. 51-52, 60-61

D.      Vida Marrone, pp. 30-31

E.      Fred Schaeffer, pp. 12-14, 17-18, 32, 42-46, 57, 62-63, Exhibit 29.

F.      Linda Edleman, pp. 30-37, 63-64

G.      Charles E. Berthoud, Jr., pp. 58-60

**WHEREFORE,**  Defendants Fred Schaeffer and Mt. Gretna Realty respectfully request that this Honorable Court grant summary judgment in their favor and against the Plaintiffs.

Respectfully submitted,

**FINE, WYATT & CAREY, P.C.**

By: _____

Edward A. Monsky, Esquire
Attorneys for Defendants
Fred Schaeffer and Mt. Gretna Realty

425 Spruce St., 4th Fl.
Scranton,  PA  18501
(570) 343-1197

6