IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACK MARRONE, KAREN MARRONE, both individually and in their capacity as parents and guardians for VIDA MARRONE, a minor, and MATTHEW MARRONE<br>　　　　Plaintiffs | :<br>:<br>: CIVIL ACTION - LAW<br>:<br>:<br>:<br>: |
| v. | : CASE NO.: 1:CV-01-0773<br>:<br>: JURY TRIAL DEMANDED |
| ALLSTATE INSURANCE COMPANY, LINDA M. EDLEMAN, FRED SCHAFER, MT. GRETNA REALTY, and HOUSEMASTER<br>　　　　Defendants | :<br>:<br>: (JUDGE KANE)<br>:<br>: |

## DEFENDANT HOUSEMASTER'S MOTION TO PRECLUDE EXPERT REPORTS AND TESTIMONY OF ECKARDT JOHANNING, M.D.

Defendant HouseMaster, by and through its counsel, Duane Morris LLP, hereby files this Motion To Preclude Expert Reports And Testimony Of Eckardt Johanning, M.D. and, in support thereof, avers as follows:

1.　In this action, Plaintiffs Jack Marrone, Karen Marrone, Matthew Marrone and Vida Marrone allege that they purchased a home which became infested with toxic mold due to undisclosed water problems with the subject property. (Appendix A, Amended Complaint.)

2.　In particular, Plaintiffs purchased the subject property, located at 354 Timber Road, Mt. Gretna, Pennsylvania, on or about August 30, 1999. (Appendix

A, Amended Complaint, ¶¶13, 20.)

3. From January through May, 2000, Jack Marrone lived away from the subject property, in West Virginia, due to a separation from Karen Marrone. (Appendix C, Karen Marrone Depo., pp. 184-185; Appendix E, Vida Marrone Depo., p. 42.)

4. During that time, in April of 2000, Matthew Marrone moved away from the subject property to Springfield, Missouri. (Appendix C, Karen Marrone Depo., p. 91; Appendix D, Matthew Marrone Depo., p. 72.)

5. Jack and Karen Marrone apparently reconciled, and they and their daughter, Vida Marrone, left the subject property in July, 2000, sometime after the July 4th holiday, for a week-long vacation in Missouri. (Appendix A, Amended Complaint, ¶22; Appendix C, Karen Marrone Depo., p. 144.)

6. Several days after their return home to the subject property, Jack Marrone found the basement floor, walls, ceiling and furniture covered in mold. (Appendix A, Amended Complaint, ¶22; Appendix C, Karen Marrone Depo., pp. 145-147.)

7. Plaintiffs contacted Advanced Applied Sciences, Inc. On August 28, 2000, Robert A. Pfromm, a certified industrial hygienist, met with Plaintiffs and conducted an indoor air quality/indoor environmental quality survey on the home.

(Appendix A, Amended Complaint, ¶30; Appendix C, Karen Marrone Depo., p. 154; Appendix O, 10/15/00 Report of Robert A. Pfromm, p. 1.)

8. Advanced Applied Sciences, Inc. issued their written report on the survey results on October 15, 2000. The Report found fungal contaminants in the home. The Report did not recommend that Plaintiffs leave the home; rather it recommended that Plaintiffs remediate the basement, sealing it off from the rest of the home until the mold condition was reduced/removed. (Appendix O, 10/15/00 Report, p. 7.)

9. Plaintiffs moved out of the home on October 14, 2000 abandoning it. (Appendix C, Karen Marrone Depo., p. 162.)

10. Plaintiffs brought suit against Defendants seeking, *inter alia*, damages for physical and psychological damages they allege they have suffered as a result of exposure to fungal contaminants in their home. (Appendix A, Amended Complaint.)

11. In particular, Jack Marrone claims personal injury damages including memory loss, mood swings, depression, severe fatigue and sexual dysfunction. (Appendix A, Amended Complaint, ¶35.)

12. Karen Marrone claims to suffer from, among other things, hair loss, abdominal cramping, diarrhea, sinusitis, phlegm and coughing, fever, dry and

itching skin, loss of concentration, loss of cognitive functions, severe fatigue and severe loss of voice. (Appendix A, Amended Complaint, ¶36.)

13. Matthew Marrone complains of severe fatigue, loss of concentration and memory loss. (Appendix A, Amended Complaint, ¶38.)

14. Vida Marrone complains of hair loss, sinusitis, continuous headaches, diarrhea, cramping, severe fatigue, dry and itching skins, headaches, itchy eyes, and other respiratory problems. (Appendix A, Amended Complaint, ¶37.)

15. With regard to personal injury claims, a plaintiff must prove the existence of a causal relationship between the injury complained of and the alleged negligent act to be entitled to recover for the injury. Hamil v. Bashline, 481 Pa. 256, 392 A.2d 1280 (1978). It is well settled in Pennsylvania that, when there is no obvious casual relationship, "unequivocal medical testimony is necessary to establish the casual connection." Albert v. Alter, 252 Pa. Super. 203, 224, 381 A.2d 459, 470 (1977)(citing Smith v. German, 434 Pa. 47, 253 A.2d 107 (1969)).

16. Plaintiffs have proferred the expert reports and testimony of Eckardt Johanning, M.D. in support of their personal injury damage claims. Dr. Johanning examined Plaintiffs on January 17, 2002. Laboratory testing was then performed on Jack, Karen and Vida Marrone in August, 2002. (Appendix J, Laboratory

Reports.)

17.     Dr. Johanning's written reports opine that Plaintiffs Jack, Karen and Vida Marrone had respiratory reactions after exposure to mold in their home. (Appendices F, G and I, Expert Reports of Eckardt Johanning, M.D.)  He diagnoses Plaintiffs Jack, Karen and Vida Marrone with upper and lower airway inflammation and irritation effects (rhinosinusitis, bronchitis), in addition to their previous medical conditions.  Dr. Johanning has opined that "[w]ithin a reasonable degree of medical certainty . . . this was the result of the exposure in the described contaminated house."

18.     Dr. Johanning's written report for Matthew Marrone states only that Matthew "had a variety of health complaints that are in time and place associated with exposure to mold and mildew at his previous home."  (Appendix H, Expert Report of Eckardt Johanning, M.D.)

19.     Dr. Johanning's reports and testimony should be precluded because his opinions and proposed testimony do not meet the minimum standards for scientific expert testimony established by Federal Rule of Evidence 702 and the Supreme Court's decision in <u>Daubert v. Merrell Dow Pharmaceuticals Inc.</u>, 509 U.S. 579 (1993).

20.     Under Federal Rules of Evidence 104(a) and 702, trial courts are

required to scrutinize expert testimony to ensure that only reliable and relevant scientific evidence is admitted. Daubert, 509 U.S. 579, 592, 113 S. Ct. 2786. When faced with a proffer of expert scientific testimony, a district court "must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand to determine a fact in issue." Id.

    21.    The Daubert standard has been specifically codified in Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The United States Court of Appeals for the Third Circuit has interpreted Rule 702 as embodying "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliabilility, and fit." Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000).

    22.    Here, in the case at bar, Dr. Johanning's expert reports and testimony fail to meet the requirements of Rule 702 of the Federal Rules of Evidence and the requirements set forth in Daubert.

23. In particular, in order to prove that an alleged injury was caused by exposure to a particular toxin, Plaintiffs, through expert testimony, must introduce sufficient evidence of both general causation and specific causation. In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 752 (3d Cir. 1994), cert. denied, 513 U.S. 1190 (1995)("Paoli II").

24. As more fully set forth in the supporting brief filed concurrently herewith, Dr. Johanning cannot establish general causation through application of reliable methodology. No specific tests, reasonable basis or reliable scientific evidence, including epidemiological or temporal relationship, either exist or have been set forth by Dr. Johanning with respect to whether exposure to mold causes physical and psychological problems.

25. As more fully set forth in the supporting brief filed concurrently herewith, Dr. Johanning cannot establish specific causation. While he has utilized reliable scientific methodology to establish specific causation between the mold exposure and Plaintiffs' injuries – differential diagnosis – his failure to reasonably rule out other plausible causes of Plaintiffs' claimed injuries, which a consistent application of differential diagnosis requires, renders his methodology unreliable.

Wherefore, Defendant HouseMaster respectfully requests this Court to preclude the expert reports and testimony of Eckardt Johanning, M.D. and to dismiss Plaintiffs' claims for personal injury damages.

                                       DUANE MORRIS LLP

                                       By: s/ Jennifer L. Murphy
                                             James J. Kutz, Esq.
                                             Attorney ID. No. 21589
                                             Jennifer L. Murphy, Esq.
                                             Attorney ID. No. 76432
                                             305 North Front St., 5th Floor
                                             P.O. Box 1003
                                             Harrisburg, PA  17108-1003
                                             (717) 237-550

                                     Attorneys for Defendant HouseMaster

Date:  May 16, 2003

HBG\114712.1

**CERTIFICATE OF SERVICE**

AND NOW, this 16th day of May, 2003, I hereby certify that I, Jennifer L. Murphy, caused to be served a copy of the Defendant HouseMaster's Motion to Preclude Expert Reports and Testimony of Eckardt Johanning, M.D. on the following by depositing a true and correct copy of the same in the U.S. Mail at Harrisburg, Pennsylvania, postage prepaid, addressed to:

> James G. Nealon, III, Esquire
> 2411 North Front Street
> Harrisburg, PA 17110
>
> John Flounlacker, Esquire
> Thomas, Thomas & Hafer, LLP
> 305 North Front Street
> Harrisburg, PA 17108
>
> Edward A. Monsky, Esquire
> Fine, Wyatt & Carey, P.C.
> 425 Spruce Street
> Scranton, PA 18501-0590
>
> Gianni Floro, Esquire
> Tarasi, Tarasi & Fishman, P.C.
> 510 Third Avenue
> Pittsburgh, PA 15219
>
> Joel D. Gusky, Esquire
> Harvey, Pennington, Cabot, Griffith & Renneisen, Ltd.
> Eleven Penn Center
> 1835 Market Street, 29th Floor
> Philadelphia, PA 19103

By: s/ Jennifer L. Murphy
Jennifer L. Murphy

HBG\114712.1