IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACK MARRONE, KAREN            :
MARRONE, both individually and :
in the capacity as parents and :   CIVIL ACTION - LAW
guardians for VIDA MARRONE, a  :
minor, and MATTHEW MARRONE,    :
       Plaintiffs              :
                              :
           v.                :   CASE NO.: 1:CV-01-0773
                              :
ALLSTATE INSURANCE             :   JURY TRIAL DEMANDED
COMPANY, LINDA M. EDELMAN,     :
FRED SCHAFER, MT. GRETNA       :   (JUDGE KANE)
REALTY, and HOUSEMASTER,       :
       Defendants             :

## DEFENDANT HOUSEMASTER'S BRIEF IN SUPPORT OF MOTION TO PRECLUDE EXPERT REPORTS AND TESTIMONY OF ECKARDT JOHANNING, M.D.

James J. Kutz, Esq.
Attorney ID. No. 21589
Jennifer L. Murphy, Esq.
Attorney ID. No. 76432
305 North Front St., 5th Floor
P.O. Box 1003
Harrisburg, PA  17108-1003
(717) 237-5508

Attorneys for Defendant
Housemaster

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

I.    INTRODUCTION .................................................................................. 1

II.   PROCEDURAL HISTORY ....................................................................... 2

III.  FACTUAL BACKGROUND .................................................................... 3

IV.   ARGUMENT ......................................................................................... 4

    A.    Standards Governing The Admissibility Of Expert Testimony .......... 4

        1.    Plaintiffs Cannot Establish General Causation Through Application Of Reliable Methodology ................................... 9

        2.    Plaintiffs Cannot Establish Specific Causation ...................... 15

V.    CONCLUSION ..................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Brock v. Merrell Dow Pharmaceuticals, Inc.*,
874 F.2d 307 (5th Cir. 1989) ............................................................................ 10

*Conde v. Velsicol Chem. Corp.*,
804 F. Supp. 972 (S.D. Ohio 1992),
affd., 24 F.3d 809 (6th Cir. 1994) ..................................................................... 10

*Daubert v. Merrell Dow Pharmaceuticals Inc.*,
509 U.S. 579, 592, 113 s. Ct. 2786, 2795,125 L.Ed.2d 469 (1993)…1, 2, 4, 5, 6, 7, 8

*DeLuca v. Merrell Dow Pharm., Inc.*,
911 F.2d 941 (3d Cir. 1990) .............................................................................. 9

*In re Diet Drugs*,
2000 U.S. Dist. LEXIS 9661 (E.D.Pa. June 28, 2000) ...................................... 6

*Elcock v. Kmart Corp.*,
233 F.3d 734 (3d Cir. 2000) .............................................................................. 6

*General Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ......................................................................................... 10

*Heller v. Shaw Indus., Inc.*,
167 F.3d 146 (3d Cir. 1999) ......................................................... 9, 11, 16, 17

*Holbrook v. Lykes Bros. S.S. Co., Inc.*,
80 F.3d 777 (3d Cir. 1996) ................................................................................ 5

*Kumho Tire Company, Ltd. v. Carmichael*,
526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) .................................... 7

*Merrell Dow Pharms. v. Havner*,
953 S.W.2d 706 (Tex. 1997) ................................................................ 12, 13, 14

*Oddi v. Ford Motor Co.*,
234 F.3d 136 (3rd Cir. 2000) ................................................................. 8

*In re Paoli Railroad Yard PCB Litigation*,
35 F.3d 717 (3d Cir. 1994), <u>cert</u>. <u>denied</u>, 513 U.S. 1190 (1995) ........5, 6, 7, 8, 9, 17

*Soldo v. Sandoz Pharms. Corp.*,
244 F. Supp. 2d 434 (W.D.Pa. 2003) ........................................ 9, 10, 12, 15, 16, 17

*In re TMI Litig.*,
193 F.3d 613 (3d Cir. 1999) ............................................................................... 8

## STATUTES

Fed. R. Evid. 702 ............................................................................................. 6, 8

## MISCELLANEOUS

58 Proc. Royal Soc'y. Med. 295, 299 (1965) ................................................. 11, 12


The Newest Toxic Tort, Ronald E. Gots, Ph.D., Vol. 8, No. 1 (Feb. 2001) ..... 10, 16

# I.    <u>INTRODUCTION</u>

Defendant HouseMaster (hereafter "HouseMaster"), by and through its counsel, Duane Morris LLP, submits this Brief in Support of its Motion to Preclude Expert Reports and Testimony of Eckardt Johanning, M.D.  In this lawsuit, Plaintiffs claim that exposure to mold in their home caused them to suffer various physical and psychological injuries.  In order to prove their case, Plaintiffs must prove by valid scientific evidence what is known as "general causation" – that mold is capable of causing bodily harm to humans, and "specific causation" – that Plaintiffs' exposure to mold did in fact cause them bodily harm.  Plaintiffs proffer Dr. Eckardt Johanning as their expert on causation.  This Court should preclude Dr. Johanning from offering testimony as to causation because his testimony does not meet the minimum standards for scientific expert testimony established by Federal Rule of Evidence 702 and the Supreme Court's decision in <u>Daubert v. Merrell Dow Pharmaceuticals Inc.</u>, 509 U.S. 579 (1993).

Simply put, Plaintiffs cannot prove either general or specific causation. There is no valid science, in the form of epidemiological studies or otherwise, that has ever found mold to cause the physical/psychological injuries claimed by Plaintiffs.  In fact, Defendants' own expert, Dr. Michael G. Holland, will testify that, according to his review of the epidemiology and Plaintiffs' alleged bodily injuries and medical history, there is no valid scientific basis for concluding that

mold caused the alleged injuries. <u>Daubert</u> and its progeny require the Court to act as a gatekeeper and to assure that an expert witness's conclusions are based on good grounds, and not "junk science." Here, Plaintiffs' expert would have this Court accept a conclusion that mold can cause and did cause Plaintiffs' alleged physical and psychological injuries based on nothing more than laboratory tests performed upon Plaintiffs some two years following the alleged mold exposure. Accordingly, this Court should grant Defendant HouseMaster's Motion to Preclude Dr. Johanning's Expert Reports and Testimony that mold can and in fact did cause bodily harm to Plaintiffs.

## II.    PROCEDURAL HISTORY

In this action, Plaintiffs Jack Marrone, Karen Marrone, Matthew Marrone and Vida Marrone allege that they purchased a home which became infested with toxic mold due to undisclosed water problems with the subject property. Plaintiffs instituted this action by filing a Complaint in this Court on May 3, 2001 against their homeowners' insurance company, Allstate Insurance Company, the seller of the subject property, Linda Edleman, the seller's real estate agent and agency, Fred Schaeffer and Mt. Gretna Realty, and the home inspection company, HouseMaster. Upon receiving leave of Court, on November 2, 2001, Plaintiffs filed an Amended Complaint alleging claims of: (1) negligence; (2) misrepresentation; (3) breach of

contract; and (4) violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201, et seq. ("UTPCPL"), against HouseMaster.

Discovery closed on August 30, 2002. Following significant motion practice, the Court ordered Plaintiffs to disclose the expert reports of Eckardt Johanning, M.D. to Defendants on or before January 17, 2003. Plaintiffs did so.

A new scheduling order was issued by the Court on April 29, 2003. Pursuant to that Order, on May 16, 2003, HouseMaster filed a Motion to Preclude Expert Reports and Testimony of Eckardt Johanning, M.D., M.S.C. This Brief is filed in support of that Motion.

## III.     FACTUAL BACKGROUND

According to Plaintiffs, they have suffered various physical and psychological damages as a result of exposure to fungal contaminations in the subject home. (Amended Complaint, ¶¶35-38.) They have proferred the expert reports and testimony of Eckardt Johanning, M.D. in support of their damages claims. Dr. Johanning's written reports opine that Plaintiffs had respiratory reactions after exposure to mold in their home. (Appendices F-I, Expert Reports of Eckardt Johanning, M.D.) He diagnoses Plaintiffs with upper and lower airway inflammation and irritation effects (rhinosinusitis, bronchitis), in addition to their previous medical conditions. Dr. Johanning has opined that "[w]ithin a reasonable degree of medical certainty . . . this was the result of the exposure in the described

contaminated house."  The basis for Dr. Johanning's conclusions as a differential diagnosis drawn from his examinations of Plaintiffs, the results of laboratory tests, review of Plaintiffs' medical histories, Plaintiffs' descriptions of their activities (i.e., smoking) and environmental findings from the home.

Defendants have proffered the expert report and testimony of Michael Holland, M.D.  Following independent medical examinations of Plaintiffs, Dr. Holland opined, within a reasonable degree of medical certainty, that Plaintiffs' various health problems were not due to their exposure to the indoor air environment at their home but, rather, resulted from other common causes. (Appendices K-N, Expert Reports of Michael G. Holland, M.D.)

## IV.    ARGUMENT

## THE EXPERT REPORTS AND TESTIMONY OF ECKARDT JOHANNING, M.D., SHOULD BE PRECLUDED FROM EVIDENCE IN THIS MATTER

### A.    Standards Governing The Admissibility Of Expert Testimony

Under Federal Rules of Evidence 104(a) and 702, trial courts are required to scrutinize expert testimony to ensure that only reliable and relevant scientific evidence is admitted.  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592, 113 S. Ct. 2786, 2795, 125 L.Ed.2d 469 (1993).  In particular, when faced with a proffer of expert scientific testimony, a district court "must determine at the outset, pursuant to [Fed.R.Evid.] 104(a), whether the expert is proposing to testify to (1)

scientific knowledge that (2) will assist the trier of fact to understand to determine a fact in issue." Id., 509 U.S. at 592, 113 S.Ct. 2786.  "Daubert requires the district court to act as 'gatekeeper' and to assure that the scientific methodology upon which the expert opinion is founded is reliable, i.e., that the expert's conclusion is based on good grounds (the methods and principles of science)." In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 732 (3d Cir. 1994), cert. denied, 513 U.S. 1190 (1995)("Paoli II").

Thus, it is the trial judge's task to ensure "that the testimony meets a minimum threshold of reliability and relevance." Holbrook v. Lykes Bros. S.S. Co., Inc., 80 F.3d 777, 781 (3d Cir. 1996).  Reliability is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." Daubert, 509 U.S. at 592-93, 113. S.Ct. 2786.  Relevance depends upon "whether [that] reasoning or methodology properly can be applied to the facts in issue." Id. at 593, 113 S.Ct. 2786.  The burden is on the proponent to establish the admissibility of proffered testimony by a preponderance of the evidence.  Id., 509 U.S. at 592 n.10, 113 S. Ct. at 2796 n. 10.

The Daubert standard has been specifically codified in Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or

otherwise, if (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  The United States Court of Appeals for the Third Circuit has interpreted Rule 702 as embodying "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliabilility, and fit."  Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000); see also Daubert, 509 U.S. at 592, 113 S. Ct. at 2796.

If a witness qualifies as an expert, the court must determine whether "the process or technique the expert used in formulating the opinion is reliable."  Paoli II, 35 F.3d at 542 (discussing Daubert, 509 U.S. at 589-90, 113 S. Ct. at 2794-95); see In re Diet Drugs, 2000 U.S. Dist. LEXIS 9661 *9 (E.D.Pa. June 28, 2000) (observing that, under Daubert and its progeny, "the court must examine an expert's methodology and conclusions to ensure reliability.").  Daubert "explains that the language of Rule 702 requiring the expert to testify to *scientific knowledge* means that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief."  Paoli II, 35 F.3d at 742 (quoting Daubert, 509 U.S. at 590, 113 S. Ct. at 2795).

The Supreme Court in Daubert listed four nonexclusive factors that a trial court may consider in assessing reliability:  (1) whether the opinion/ methodology

at issue is susceptible to testing and has been subjected to such testing; (2) whether the technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the technique has been generally accepted in the scientific community. Daubert, 509 U.S. at 593, 594, 113 S.Ct. at 2796-2797. Additional factors that the court may consider include: the existence and maintenance of standards controlling the technique's operation, the relationship of the technique to methods which have been established to be reliable, expert's qualifications and non-judicial uses to which the method has been put. Paoli II, 35 F.3d at 742 n.8. Regardless of the specific factors at issue, the purpose remains: "[t]o make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). To that end, each step of an expert's analysis must be reliable:

> any step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.

Paoli II, 35 F.3d at 745.[1]

Finally, not only must the expert's testimony be reliable, it must be relevant. "Rule 702 requires that the expert's testimony must assist the trier of the fact," i.e., the scientific knowledge about which the witness intends to testify must "fit" – have some logical connection with - the disputed facts for which expert testimony is required. Paoli II, 35 F.3d at 742-43; see Oddi v. Ford Motor Co., 234 F.3d 136, 145 (3rd Cir. 2000). As explained by the Third Circuit Court in In re TMI Litig., "admissibility depends in part on the proffered connection between a scientific research or test result to be presented and particular disputed factual issues in the case." Id., 193 F.3d at 665; see Daubert, 509 U.S. at 591-92, 113 S. Ct. at 2796.

Here, in the case at bar, Dr. Johanning's expert reports and testimony fail to meet the requirements of Rule 702 of the Federal Rules of Evidence and the requirements set forth in Daubert. Accordingly, Dr. Johanning's reports and testimony should be precluded from evidence in this matter and Plaintiffs' claims for personal injury damages dismissed.

---

[1] When an expert's testimony "relies in part on his own *ipse dixit*, rather than on something more readily verifiable . . . it is open to attack." In re TMI Litig., 193 F.3d 613, 687 (3d Cir. 1999). Indeed, "[s]omething doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were 'derived by *the* scientific method' be deemed conclusive." Id. (quoting Daubert v. Merrell Dow Pharmaceuticals, 43 F.3d 1311, 1315-16 (9th Cir. 1995).

**B.**    <u>**Dr. Johanning's Opinions Should Be Excluded Under Rule 702**</u>

In this case, Plaintiffs must demonstrate, for purposes of their personal injury claims, that the subject home contained mold, that they were exposed to mold, that they have been injured and that the exposure to mold was the cause of the injuries. <u>See</u> <u>Heller v. Shaw Indus.</u>, Inc., 167 F.3d 146, 153 (3d Cir. 1999) (expert testimony required to establish that alleged respiratory ailments were caused by carpet fumes).

Dr. Johanning's reports and proffered testimony are required to establish the causal link between Plaintiffs' alleged physical and psychological injuries and their exposure to mold.  In a toxic tort case, in order to prove that an alleged injury was caused by exposure to a particular toxin, a plaintiff must introduce sufficient evidence of <u>both</u> general causation and specific causation.  <u>Paoli II</u>, 35 F.3d at 752. In other words, Plaintiffs, through Dr. Johanning, must prove: (1) that mold generally causes personal injuries (general causation); and (2) that mold caused the specific injuries alleged by Plaintiffs (specific causation).  <u>See</u> <u>Soldo v. Sandoz Pharms. Corp.</u>, 244 F. Supp. 2d 434, 524-525 (W.D.Pa. 2003); <u>DeLuca v. Merrell Dow Pharm., Inc.</u>, 911 F.2d 941, 958 (3d Cir. 1990).  Plaintiffs, however, have not and cannot establish causation as Dr. Johanning's expert opinions are both unreliable and irrelevant.

**1.**    **Plaintiffs Cannot Establish General Causation Through Application Of Reliable Methodology**

"[T]he requirement of general causation as an aspect of a scientifically-reliable causation opinion is the very essence of Daubert." Soldo, 244 F. Supp. 2d at 25 (citing General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)). Here, the focus of the inquiry is on whether mold is capable of causing the particular injuries that Plaintiffs allegedly sustained. Without such evidence, Dr. Johanning cannot reliably perform the differential diagnoses that he contends he has employed. Soldo, supra.

Proof of causation generally involves both epidemiological and toxicological evidence, though epidemiology is the best method of establishing general causation. See Brock v. Merrell Dow Pharmaceuticals, Inc., 874 F.2d 307, 311 (5th Cir. 1989); Conde v. Velsicol Chem. Corp., 804 F. Supp. 972, 1025-26 (S.D. Ohio 1992)(epidemiology is "the primary generally accepted methodology for demonstrating a causal relation between a chemical compound and a set of symptoms or a disease."), affd., 24 F.3d 809 (6th Cir. 1994). Currently, however, there are simply no reliable epidemiological studies that demonstrate, by a preponderance of the evidence, a causal connection between mold and Plaintiffs' alleged diseases/symptoms. There are also no relevant peer review articles that establish such a connection. See Journal of Controversial Medical Claims, Mold and Mold Toxins, The Newest Toxic Tort, Ronald E. Gots, Ph.D., Vol. 8, No. 1 (Feb. 2001)("There are few epidemiological investigations of inhaled mycotoxins

and disease in indoor air settings.  Although some purport to show an association

between inhaled mycotoxins and health effects, none has had sufficient data or

experimental design to support this claim.").  Indeed, Plaintiffs' expert, Dr.

Johanning, has not identified any publication, study or any direct scientific

evidence demonstrating that exposure to mold causes physical or psychological

injuries to humans.  While the lack of these types of studies is not fatal, in and of

itself, to Plaintiffs' claims,  Heller, 167 F.3d at 158-59 (district court erred in

requiring expert's testimony to be backed by scientific studies, but found court

could consider that expert relied on few, if any, studies linking exposure to

hazardous substances), Dr. Johanning fails to establish general causation using

other methods.

For example, application of the *Bradford-Hill* criteria to the evidence in this

case does not provide reliable evidence of causation.  The *Bradford-Hill* criteria

are used in assessing causation of a disease.  See Austin Bradford Hill, The

Environment and Disease: Association or Causation?, 58 Proc. Royal Soc'y. Med.

295, 299 (1965).  According to these criteria, a causal relationship may be inferred

when the association between exposure and reaction exhibits the following:

strength of association, consistency among studies, specificity of association,

temporal relationship, dose-response relationship, coherence, biological

plausibility, experimental evidence and consideration of alternative explanations.

Id.; Soldo, 244 F.Supp.2d at 514-516; Merrell Dow Pharms. v. Havner, 953 S.W.2d 706, 718-19 (Tex. 1997).

Dr. Johanning's opinions do not meet these criteria. For example, with regard to four of the factors, strength and specificity of association, consistency and coherence of biological background, Dr. Johanning cannot point to any valid scientific evidence demonstrating a positive or strong association between mold exposure and the physical symptoms/injuries alleged by Plaintiffs, including cognitive dysfunction, sexual dysfunction, fatigue, memory loss, visual disturbances and depression. The association between molds and Plaintiffs' claimed injuries is not consistent with known facts of health effects of mold and allergic symptoms they can exacerbate. Thus, none of these criteria have been satisfied.

In addition, Dr. Johanning has not and cannot establish a dose-response relationship in this case. In fact, no dose-response relationship for mold exposure and the occurrence of the alleged symptoms/injuries has been documented and he has failed to articulate any known dose-response relationship for the alleged exposure and injuries. As more fully set forth below, Dr. Johanning has also failed to reliably rule out alternative explanations for Plaintiffs' injuries, including Plaintiffs' smoking, previous medical histories of depression, rhinosinusitis, multiple sclerosis, rashes, etc. Thus, neither of these criteria have been met.

Only two of the nine *Bradford-Hill* criteria, temporality and experimental evidence, may even arguably be satisfied. However, neither showing is particularly strong. For example, Dr. Johanning appears to base his conclusions, in part, on the temporal relationship between the mold exposure and the onset of Plaintiffs' alleged injuries/symptoms. There are, however, three major weaknesses with the temporal relationship. First, a review of Plaintiffs' long medical histories reveals a plethora of medical issues, the same or similar to those now claimed, long before Plaintiffs purchased the subject property. For example, while Jack Marrone claims memory loss, mood swings, depression, fatigue, sexual dysfunction and respiratory ailments resulting from mold exposure, a review of his medical history reveals prior occurrences of post traumatic stress disorder, depression, COPD, marital problems and lesions. (Jack Marrone Dep., pp. 94-95; Dr. Holland Report.) Likewise, Karen Marrone claims sinusitis, fever, loss of concentration and cognitive function and fatigue; however, her medical history indicates recurring sinusitis and multiple sclerosis. (Karen Marrone Dep., p. 98; Dr. Holland's Report.) Second, although Plaintiffs moved into the home in August, 1999, onset of their symptoms did not occur until at least November, 1999. (Id. at 101-102; Matthew Marrone Dep., pp. 28, 39, 41; Vida Marrone Dep., p.40.) Third, not only did Plaintiffs' symptoms not appear until months after they moved in, but the symptoms remained after they abandoned the home, with many allegedly

continuing today. (Karen Marrone, pp, 104-105, 107, 122-123, 142; Jack Marrone Dep., pp. 245-246; Matthew Marrone Dep., p. 23; Vida Marrone Dep., pp. 29, 45-46.) Thus, any temporal relationship is weak, at best, and cannot support a finding of causation.

Additionally, Dr. Johanning cites and Plaintiffs rely on experimental scientific evidence in the form of laboratory tests. These tests, however, lack scientific reliability.  In particular, they have not been approved by the Food and Drug Administration and were not performed on Plaintiffs until 15 to 20 months following Plaintiffs' last alleged mold exposure.[2]  (Appendix J, Lab Reports.)  In addition, the test results reveal questionable findings. For example, one test reveals elevated Stachybotrys specific IgA levels for Karen and Vida Marrone – a finding which 'is expected to correlate with a recent exposure to antigens from this mold since the persistence of the IgA isotype is generally of shorter duration that IgG." (Id.) However, Plaintiffs' last exposure was at least fifteen months earlier – hardly "recent."  Thus, the testing cannot be regarded as scientifically reliable evidence.

In short, no specific tests, reasonable basis or reliable scientific evidence exist or have been set forth by Dr. Johanning with respect to whether exposure to mold causes physical and psychological problems.  Because reliable scientific

_____

[2] It appears that no testing was performed on Matthew Marrone.

methodologies cannot establish that mold generally causes the injuries about which Plaintiffs complain, Plaintiffs cannot establish that their exposure to mold specifically caused their injuries.  Soldo, supra.

### 2.    Plaintiffs Cannot Establish Specific Causation

Even assuming, arguendo, that general causation has been proven, which it has not, an expert must then prove specific causation – in this case, that mold exposure caused Plaintiffs' alleged injuries.  To establish specific causation, Dr. Johanning must demonstrate: (1) mold was present in the residence; (2) Plaintiffs were exposed to the mold; (3) the dose and duration of the exposure to the mold was sufficient to cause Plaintiffs' alleged injuries;[3] and (4) Plaintiffs were injured.

---

[3] Dr. Johanning reviewed and relied upon the environmental investigation of Robert Pfromm, CIH, from A2SI, along with Plaintiffs' medical histories, to establish both the presence of mold in Plaintiffs' residence and Plaintiffs' exposure thereto. With regard to the presence of mold, no industry standards presently exist to determine the acceptable level of mold in an indoor area - only guidelines are available.  Mr. Pfromm's reports reveal that the levels of mold inside Plaintiffs' home exceeded those outside the home.  This alone, however, fails to indicate that Plaintiffs received doses sufficient to cause any of their alleged injuries.  Indeed, the A2SI report reveals only a snapshot of the mold levels inside and outside at the time the  air quality survey was conducted, some two months after the discovery of visible mold in the home's basement.  It does not, and cannot, address the level of exposure that someone living in the home prior to that time experienced.  Dr. Johanning also never took into account the period of time Plaintiffs spent outside of the home or basement in determining dose/exposure. In particular, Jack Marrone was not living in the home from January through May, 2000, Matthew Marrone moved out of the home in April, 2000, and Vida and Karen Marrone avoided the basement area almost completely once mold was discovered in July, 2000. (Karen

(Continued…)

See Journal of Controversial Medical Claims, Mold and Mold Toxins, The Newest

Toxic Tort, Ronald E. Gots, Ph.D., Vol. 8, No. 1 (Feb. 2001).  While Dr.

Johanning has utilized reliable scientific methodology to establish specific

causation between the mold exposure and Plaintiffs' injuries – differential

diagnosis – his failure to reasonably rule out other plausible causes of Plaintiffs'

claimed injuries, which a consistent application of differential diagnosis requires,

will render his methodology unreliable.

The use of this methodology, differential diagnosis, has been recognized by

the Third Circuit. Heller, 167 F.3d at 154.[4]  Differential diagnosis will sustain a

specific causation opinion if it: (1) was "thorough," (2) "ruled out other possible

causes," and (3) was based on "a valid and strong temporal relationship." Id.  An

expert need not rule out all alternative causes, simply the obvious alternative

_____

(Continued…)

Marrone Dep., pp. 91, 93-94, 148, 163; Jack Marrone Dep., p. 131; Matthew
Marrone Dep., p. 72; Vida Marrone Dep., p.42.)

There is also no test that will determine the actual dose of mold/mycotoxins to
which a person may have been exposed.  Without identifying the dose of exposure,
and with no dose-response relationship established, Dr. Johanning's opinions
regarding specific causation are simply unreliable.

[4] However, "the mere statement by an expert that he or she applied differential
diagnosis in determining causation does not *ipso facto* make that application
scientifically reliable or admissible." Soldo, 244 F.Supp.2d at 551.  Indeed, the
exclusion of causation opinions based on the purported use of differential diagnosis
was affirmed in Heller.

causes. Id. at 156. And, "where a defendant points to a plausible alternative cause and the doctor offers *no* explanation for why he or she has concluded that was not the sole cause, the doctor's methodology is unreliable." Id. (quoting Paoli II, 35 F.3d at 759 n. 27).

Dr. Johanning's opinions do not establish specific causation as they do not rule out other possible causes and, as discussed in more detail supra, are not based on a strong temporal relationship. Indeed, Dr. Holland has raised several obvious alternate causes for Plaintiffs' alleged injuries, including smoking, PTSD, depression, COPD, multiple sclerosis, eyestrain and stress. (Holland Reports, Assessment.) However, in his reports, Dr. Johanning offers little to no discussion establishing that any of these alternate causes have been reliably ruled out (or even considered to be "ruled in" at one time) using "sufficient diagnostic techniques to have good grounds for his . . . conclusion." Heller, 167 F.3d at 156 (quoting Paoli II, 35 F.3d at 761). HouseMaster respectfully submits that he simply cannot make that showing. As noted by the Third Circuit in Heller, "it [is] not necessarily error to exclude [the expert's] causation conclusion as unreliable if he relied on no scientific studies and the remaining foundation for his conclusion was shaky." Id. at 156. Here, with no scientific studies, no reliable temporal relationship, and a differential diagnoses that is "shaky" at best, Dr. Johanning's opinions and conclusions are unreliable and do not "fit" the data and methodologies that precede

17

them.  Thus, Dr. Johanning's expert reports and testimony must be precluded and Plaintiffs' claims for bodily injuries dismissed.

## V.    CONCLUSION

For the foregoing reasons, Defendant HouseMaster respectfully requests this Court to preclude the expert reports and testimony of Eckardt Johanning, M.D. and dismiss Plaintiffs claims for personal injury damages.


DUANE MORRIS LLP


By: s/ Jennifer L. Murphy
    James J. Kutz, Esq.
    Attorney ID. No. 21589
    Jennifer L. Murphy, Esq.
    Attorney ID. No. 76432
    305 North Front St., 5th Floor
    P.O. Box 1003
    Harrisburg, PA  17108-1003
    (717) 237-550


Attorneys for Defendant HouseMaster

Date:  May 16, 2003
HBG\109167.1

18

## **LOCAL RULE 7.8 CERTIFICATION**

I, Jennifer L. Murphy, Esquire, counsel for Defendant HouseMaster hereby certifies that the foregoing Brief in Support of Motion to Preclude Expert Reports and Testimony of Eckardt Johanning, M.D. is in compliance with Local Rule 7.8 in that it contains 4,098 words.

s/ Jennifer L. Murphy
Jennifer L. Murphy

Date:  May 16, 2003

<u>**CERTIFICATE OF SERVICE**</u>

AND NOW, this 16th day of May, 2003, I hereby certify that I, Jennifer L.

Murphy, caused to be served a copy of the foregoing document on the following by

depositing a true and correct copy of the same in the U.S. Mail at Harrisburg,

Pennsylvania, postage prepaid, addressed to:

James G. Nealon, III, Esquire
Nealon & Gover, P.C.
2411 North Front Street
Harrisburg, PA  17110

John Flounlacker, Esquire
Thomas, Thomas & Hafer, LLP
305 North Front Street
Harrisburg, PA 17108

Edward A. Monsky, Esquire
Fine, Wyatt & Carey, P.C.
425 Spruce Street
Scranton, PA  18501-0590

Gianni Floro, Esquire
Tarasi, Tarasi & Fishman, P.C.
510 Third Avenue
Pittsburgh, PA  15219

Joel D. Gusky, Esquire
Harvey, Pennington, Cabot, Griffith & Renneisen, Ltd.
Eleven Penn Center
1835 Market Street, 29th Floor
Philadelphia, PA  19103

By:  <u>s/ Jennifer L. Murphy</u>
Jennifer L. Murphy