## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACK MARRONE, KAREN MARRONE, both individually and in the capacity as parents and guardians for VIDA MARRONE, a minor, and MATTHEW MARRONE, Plaintiffs | : : : : : : : : | CIVIL ACTION - LAW |
| v. | : : | CASE NO.: 1:CV-01-0773 |
| ALLSTATE INSURANCE COMPANY, LINDA M. EDELMAN, FRED SCHAFER, MT. GRETNA REALTY, and HOUSEMASTER, Defendants | : : : : : | JURY TRIAL DEMANDED (JUDGE KANE) |

### DEFENDANT HOUSEMASTER'S BRIEF IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT

James J. Kutz, Esq.
Attorney ID. No. 21589
Jennifer L. Murphy, Esq.
Attorney ID. No. 76432
305 North Front St., 5th Floor
P.O. Box 1003
Harrisburg, PA  17108-1003
(717) 237-550

Attorneys for Defendant
Housemaster

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...................................................................................... ii

I.    INTRODUCTION ....................................................................................... 1

II.   PROCEDURAL HISTORY ........................................................................ 2

III.  FACTUAL BACKGROUND ...................................................................... 3

IV.   QUESTIONS PRESENTED........................................................................ 3

V.    ARGUMENT .............................................................................................. 4

      A.    Summary Judgment Standard........................................................... 4

      B.    Plaintiffs' Suit Against Housemaster Is Barred By The Suit
           Limitation Clause In The Agreement...............................................5

      C.    Housemaster Is Entitled To Judgment As A Matter Of Law On
           Plaintiffs' Breach of Contract Claim ................................................8

      D.    HouseMaster Is Entitled To Summary Judgment On Plaintiffs'
           Negligence, Misrepresentation and UTPCPL Claims Pursuant
           To  The Gist Of The Action Doctrine ............................................ 11

      E.    Housemaster Is Entitled To Judgment As A Matter Of Law On
           Plaintiffs' Negligence Claim........................................................... 15

      F.    HouseMaster Is Entitled To Judgment As A Matter of Law on
           Plaintiffs' Misrepresentation Claim................................................. 18

      H.    HouseMaster Is Entitled To Judgment As A Matter of Law on
           Plaintiffs' Claims for Personal Injury Damages ............................. 23

VI.      CONCLUSION.......................................................................... 235

# TABLE OF AUTHORITIES

## CASES

*Albert v. Alter*,
252 Pa. Super. 203, 381 A.2d 459, (1977)........................................................... 24

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................ 4

*Bash v. Bell Tel. Co.*,
411 Pa. Super. 347, 601 A.2d 825, (1992)....................................................12, 14

*Booze v. Allstate Ins. Co.*,
750 A.2d 877 (Pa. Super. 2000) ...................................................................12, 20

*Bortz v. Noon*,
556 Pa. 489, 729 A.2d 555, 560 (Pa. 1999) ....................................................... 18

*Bostick v. ITT Hartford Group, Inc.*,
56 F. Supp. 2d 580 (E.D. Pa. 1999) ................................................................... 6

*Bowser v. Lee Hospital*,
399 Pa. Super. 332, 582 A.2d 369, 373 (1990) .................................................. 16

*Caln Village Assocs., L.P. v. Home Indem. Co.*,
75 F. Supp.2d 404 (E.D. Pa. 1999) ................................................................... 6

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................ 4

*Cipriani v. Sun Pipeline Co.*,
574 A.2d 706 (Pa. Super. 1990) ..................................................................16, 17

*Clement I. Momah, M.D. v. Albert Einstein Medical Center*,
978 F.Supp. 621 (E.D. Pa. 1997) ...................................................................... 8

*Closed Circuit Corp. of Am. v. Jerrold Elec. Corp.*,
426 F. Supp. 361 (E.D. Pa. 1977) .................................................................... 13

*Factory Mkt., Inc. v. Schuller Int'l, Inc.*,
987 F. Supp. 387 (E.D. Pa. 1997) .................................................................12, 13

*Fennell v. Nationwide Mut. Fire Ins. Co.*,
412 Pa. Super. 534, 603 A.2d 1064,
app. den., 533 Pa. 600, 617 A.2d 1274 (1992) ................................................... 15

*General State Auth. v. Planet Ins. Co.*,
464 Pa. 162, 346 A.2d 265 (Pa. 1975) ................................................................ 5

*Hamil v. Bashline*,
481 Pa. 256, 392 A.2d 1280 (1978) ................................................................. 24

*Hammer v. Nikol*,
659 A.2d 617 (Pa. Commw. Ct. 1995) ............................................................. 20

*Horizon Unlimited, Inc. v. Silva & SNA, Inc.*,
1998 U.S. Dist. LEXIS 2223 (E.D. Pa. Feb. 27, 1998) .................................. 12, 13

*Horowitz v. Federal Kemper Life Assurance Co.*,
57 F.3d 300 (3d Cir. 1995) ................................................................................ 20

*Hosp. Support Servs., LTD v. Kemper Group, Inc.*,
889 F.2d 1311 (3rd Cir. 1989) ............................................................................ 6

*Lardas v. Underwriters Ins. Co.*,
426 Pa. 47, 231 A.2d 740, 741-42 (1967) ....................................................... 5, 6

*Lyons v. Nationwide Ins. Co.*,
390 Pa. Super. 25, 567 A.2d 1100, 1102 (1989) ................................................. 5

*Powell v. Risser*,
375 Pa. 60, 99 A.2d 454 (1953) ....................................................................... 16

*Robert Wooler Company v. Fidelity Bank*,
330 Pa. Super. 523, 479 A.2d 1027 (1984) ....................................................... 15

*Schmoyer v. Mexico Forge, Inc.*,
437 Pa. Super. 159, 649 A.2d 705 (1994) ......................................................... 15

*Smith v. German*,
434 Pa. 47, 253 A.2d 107 (1969) ..................................................................... 24

*Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*,

40 F. Supp. 2d 644 (W.D. Pa. 1999) ................................................................ 12

*Toledo v. State Farm Fire & Casualty Co.*,
810 F. Supp. 156 (E.D. Pa. 1992) ................................................................... 6

*USX Corp. v. Prime Leasing, Inc.*,
988 F.2d 433 (3d Cir. 1993) ......................................................................... 13

*Weisblatt v. Minnesota Mutual Life Ins. Co.*,
4 F. Supp.2d 371 (E.D.Pa. 1998) .................................................................. 21

*White v. Westinghouse Elec. Co.*,
862 F.2d 56 (3d Cir. 1988) ............................................................................ 4

## STATUTES

Fed. R. Civ. P. 56(c) ...................................................................................... 4

40 Pa.C.S.A. § 636(2) .................................................................................... 6

42 Pa.C.S.A. § 5501(a) ................................................................................... 6

## I. __INTRODUCTION__

Before this Court is the Motion for Summary Judgment filed by Defendant HouseMaster (hereafter "HouseMaster"). Through its Motion, HouseMaster seeks judgment as a matter of law in its favor and against Plaintiffs as to Plaintiffs' claims of breach of contract, negligence, misrepresentation and violation of the Unfair Trade Practices Consumer Protection Law, as well as to Plaintiffs' claims for personal injury damages.

First, Plaintiffs' entire action against HouseMaster is barred by the one year suit limitation clause set forth in the Inspection Order Agreement ("Agreement") entered into by and between HouseMaster and Plaintiffs. The Agreement provides that suit, if any, against HouseMaster shall be filed within one year from the date of the inspection (July 30, 1999). Since Plaintiffs failed to file the instant action within the one year contractual limitation period, Plaintiffs' claims against HouseMaster are barred. Further, even assuming *arguendo* that Plaintiffs' action against HouseMaster is not barred, HouseMaster's liability to Plaintiffs, if any, is limited by the express terms of the parties' Agreement. Second, with respect to Plaintiffs' breach of contract claim, Plaintiffs seek damages against HouseMaster on the alleged grounds that HouseMaster failed, per the Agreement, to identify the source and severity of water damage to the subject property and to inform them of potential health concerns arising from such water damage. Review of the terms of

Agreement between the parties, however, compels the conclusion that HouseMaster is not in breach of that contract. Rather, the Agreement is devoid of any language obligating HouseMaster to take any such actions. Third, Plaintiffs' negligence, misrepresentation and violation of the Unfair Trade Practices and Consumer Protection Law claims should be dismissed under the "gist of the action" doctrine. These three claims merely duplicate the breach of contract claim and, accordingly, fail as a matter of law. Fourth, even if those claims are not collateral to the contract, they still fail as Plaintiffs have failed to set forth evidence to meet each element of these claims against HouseMaster. Finally, Plaintiffs' claims for bodily injury damages must be dismissed. Such damages are not recoverable under the express terms of the parties' Agreement and, in any event, Plaintiffs have failed to establish the requisite causal connection. In short, no genuine issue of material fact exists and HouseMaster is entitled to judgment as a matter of law.

## II.    **PROCEDURAL HISTORY**

Plaintiffs instituted this action by filing a Complaint in this Court on May 3, 2001 against their homeowners' insurance company, Allstate Insurance Company, the seller of the subject property, Linda Edleman, the seller's real estate agent and agency, Fred Schafer and Mt. Gretna Realty, and the home inspection company, HouseMaster. Upon receiving leave of Court, on November 2, 2001, Plaintiffs filed an Amended Complaint alleging claims of: (1)negligence;(2)

misrepresentation; (3) breach of contract; and (4) violation of the Unfair Trade

Practices and Consumer Protection Law against HouseMaster.

On April 29, 2003, this Court issued an Order setting new case management

deadlines. Pursuant to that Order, on May 16, 2003, HouseMaster filed a Renewed

Motion for Summary Judgment. This Brief is submitted in support of that Motion.

### III.   FACTUAL BACKGROUND

HouseMaster incorporates by reference, as if set forth fully herein, its

Statement of Undisputed Material Facts submitted concurrently herewith.

### IV.   QUESTIONS PRESENTED

1.   Whether Plaintiffs' suit is barred by the suit limitation clause set forth in
     Agreement entered into by and between the parties?

2.   Where the pleadings and discovery are devoid of any evidence that
     HouseMaster breached its obligations to Plaintiffs under the Agreement, is
     HouseMaster entitled to judgment as a matter of law on Plaintiffs' breach of
     contract claim?

3.   Where Plaintiffs' claims of negligence, misrepresentation and UTPCPL are
     collateral to the contract between Plaintiffs and HouseMaster, is
     HouseMaster entitled to judgment as a matter of law on those claims under
     the "gist of the action" doctrine?

4.   Where HouseMaster had no duty to notify Plaintiffs of the source of and
     current/future problems related to water penetration at the subject property
     and Plaintiffs have failed to proffer expert testimony establishing such a
     duty, is HouseMaster entitled to judgment as a matter of law on Plaintiffs'
     negligence claim?

5.   Where the pleadings and discovery are devoid of any evidence that
     HouseMaster misrepresented or otherwise intended to deceive Plaintiffs
     regarding the condition of the subject property, is HouseMaster entitled to
     judgment as a matter of law on Plaintiffs' misrepresentation claim?

6.    Where the pleadings and discovery are devoid of any evidence, let alone the requisite clear and convincing evidence, that HouseMaster misrepresented or otherwise intended to deceive Plaintiffs regarding to condition of the subject property, is HouseMaster entitled to judgment as a matter of law on Plaintiffs' UTPCPL claim?

7.    Whether HouseMaster is entitled to judgment as a matter of law on Plaintiffs' claims for personal injury damages?

## V. ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see generally Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (for general discussion of Rule 56(c)). The Court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. See White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." Id. If the evidence adduced by the non-movant is merely colorable or not significantly probative, summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). Application of the law to the instant

matter compels the conclusion that HouseMaster is entitled to judgment in its favor and against Plaintiffs on Counts VIII though XI of the Amended Complaint.

**B.  Plaintiffs' Suit Against Housemaster Is Barred By The Suit Limitation Clause In The Agreement**

The Agreement entered into between Plaintiffs and HouseMaster on July 30, 1999 contains a suit limitation clause which modifies the statute of limitations for any and all actions brought against HouseMaster arising out of its inspection. In particular, Paragraph 4 of the Agreement, "Liability", provides, in pertinent part:

> **No legal action, including those alleging negligence, may be commenced against the Company after one year from the date of the inspection.**

Agreement, ¶4 (emphasis in original). Plaintiffs' action against HouseMaster is barred by this clause.

It is well established in Pennsylvania that contractual modifications of statutes of limitations are valid and enforceable. General State Auth. v. Planet Ins. Co., 464 Pa. 162, 346 A.2d 265, 267 (Pa. 1975)("The law is clear that such a clause, setting time limits upon the commencement of suits to recovery. . ., is valid and will be sustained."); Lardas v. Underwriters Ins. Co., 426 Pa. 47, 231 A.2d 740, 741-42 (Pa. 1967)("This is not a statute of limitation imposed by law; it is a contractual undertaking between the parties and the limitation on the time for bringing suit is imposed by the parties to the contract."); Lyons v. Nationwide Ins. Co., 390 Pa. Super. 25, 567 A.2d 1100, 1102 (Pa. Super. 1989)(citing Lardas); see

also Hosp. Support Servs., LTD v. Kemper Group, Inc., 889 F.2d 1311, 1315 (3rd Cir. 1989)(applying Pennsylvania law); Caln Village Assocs., L.P. v. Home Indem. Co., 75 F. Supp.2d 404, 409-10 (E.D. Pa. 1999); Bostick v. ITT Hartford Group, Inc., 56 F. Supp. 2d 580, 585-86 (E.D. Pa. 1999); Toledo v. State Farm Fire & Casualty Co., 810 F. Supp. 156, 157 (E.D. Pa. 1992). By statute, Pennsylvania law provides that contractual limitations of suit provisions, which are shorter than the applicable statute of limitations, are valid provided they are not manifestly unreasonable. 42 Pa.C.S.A. § 5501(a).[1]

Here, Paragraph 4 of the Agreement sets forth a one year suit limitation. The Pennsylvania legislature has recognized that a one year suit limitation clause is reasonable. 40 Pa.C.S.A. § 636(2); see also Lardas, 231 A.2d at 741 ("That [a one year suit limitations] clause is valid and reasonable has been long recognized."). Based on the statutory provision and case law, Plaintiffs' action against HouseMaster is barred. Indeed, Plaintiffs commenced their action against on May 3, 2001, approximately 21 months after HouseMaster's inspection. Accordingly, all claims against HouseMaster must be dismissed.

---

[1] 42 Pa.C.S.A. § 5501(a) states:
An action, proceeding or appeal must be commenced within the time   specified in or pursuant to this chapter unless, in the case of a civil action or proceeding, a
(Continued…)

Second, even assuming that Plaintiffs' suit is not barred by the suit limitation clause, HouseMaster's liability, if any, to Plaintiffs is limited by the terms of the contract. The Agreement between the parties provides, in pertinent part:

> **4. LIABILITY. . . .** Furthermore, the Client agrees that the performance of the Inspection does not transfer that risk to the Company beyond the Guarantee limits. . . .
>
> **The Company assumes no responsibility or liability for personal or bodily injury or fatalities caused by any of the property's components or conditions or their effects, regardless of the cause. The Client agrees to maintain adequate liability insurance to cover this potential liability.**
>
> The Company's liability for any Client post-inspection claims, beyond the 90 day Guarantee, is limited to a maximum of the home inspection fee paid. . . .
>
> **10. CLIENT RESPONSIBILITY.** Should a concern or dispute arise over the condition of an inspected element after closing of title, **the Client agrees to notify the Company in writing and provide it with the opportunity to assess the elements condition prior to any repair/replacement work.** Failure to provide such written notification and access for reinspection will release the Company of any and all liability concerning this Inspection or Guarantee.

Agreement, ¶¶4 and 10 (emphasis in original).

Upon cursory review, Plaintiffs' claims and remedies against HouseMaster, if any, are barred, restricted or otherwise limited by the Agreement. For example, Plaintiffs claim physical/psychological injuries as a result of mold exposure.

---

(Continued…)

different time is provided by this title or another statute or a shorter time which is not manifestly unreasonable is prescribed by written agreement.

However, the Agreement explicitly bars any liability for bodily injury claims caused by the home's conditions/effects. Id., ¶4. Thus, Plaintiffs' claims for personal injury damages fail. Paragraph 4 also limits HouseMaster's liability to the home inspection fee paid if the claim is brought beyond the guarantee. Since this action was commenced beyond the ninety day period, the potential liability totals $195.00. Id. Finally, the Agreement provides for a release of liability for a failure to comply with the notice/reinspection requirements set forth therein. Id., ¶10. Here, Plaintiffs failed to comply with this procedure. Indeed, although Plaintiffs learned of the mold in their home in July, 2000, their first notice to HouseMaster their Complaint filed in May of 2001. Hence, HouseMaster is released of any and all liability to Plaintiffs concerning the inspection.

### C. Housemaster Is Entitled To Judgment As A Matter Of Law On Plaintiffs' Breach of Contract Claim

In Count X of the Amended Complaint, Plaintiffs attempt to set forth a claim for breach of contract arising from the Inspection Order Agreement. In particular, Plaintiffs allege that they specifically contracted with HouseMaster concerning potential water/dampness problems with the subject property and that HouseMaster breached the contract by failing to identify the source/severity of the basement water damage and by failing to inform them of potential harm to their health. (Amended Complaint, ¶¶102,103,106.) To establish a claim for breach of contract, Plaintiffs must prove: (1) the formation of a contract, (2) the terms of the contract,

(3) performance by plaintiff; (4) breach by defendant, and (5) damages. <u>Clement I.</u> <u>Momah, M.D. v. Albert Einstein Medical Center</u>, 978 F.Supp. 621, 636 (E.D. Pa. 1997). There can be no dispute that Plaintiffs and HouseMaster entered into the Agreement on July 30, 1999. Plaintiffs, however, have failed to make any showing, to establish that HouseMaster breached its contractual duties thereunder.

First, the gravamen of Plaintiffs' contract claim is that they contracted with HouseMaster to have the company notify them of potential hazards and harms associated with the subject property and that HouseMaster failed to provide them with such notice. This failure to warn, according to Plaintiffs, gives rise to a breach of contract claim. However, no evidence exists to support these baseless accusations. Review of the terms of the parties' Agreement compels the conclusion that HouseMaster is not in breach. The Agreement is devoid of any language obligating HouseMaster to provide such notice of future potential harms. To the contrary, the Agreement signed by Karen Marrone, expressly limits the scope of HouseMaster's inspection, stating:

> **1. INSPECTION LIMITATIONS.** The Company can only inspect and report on specified, visible and accessible elements of the house proper. The Inspection is not intended to detect latent conditions or concealed defects. . . . The Inspection will not involve destructive testing . . ..
>
> **5. ENVIRONMENTAL CONCERNS. The Client acknowledges that what is being contracted for is a home inspection and not an environmental evaluation.** The inspection is not intended to detect, identify or disclose any health or environmental concerns regarding

> this house or property such as the presence of . . . fungi, or any other potentially toxic materials or gases, etc., in the air, water, soil or house materials.

Agreement, ¶¶1,5. (emphasis in original).

The Express Report delivered to Plaintiffs reiterates the limited scope of the inspection. Its purpose was "to render an opinion as to the condition of the major inspected elements of the referenced property <u>on the date of inspection</u>":

> Evaluations are basically <u>limited to a visual assessment</u>, are not technically exhaustive . . . .
>
> Furthermore, <u>no</u> engineering, geological, design, <u>environmental</u>, or code compliance <u>evaluations of the property were performed</u>. . . .
>
> Due to the normal and stated limitations of a home inspection, <u>no representations or guarantees are made with respect to latent deficiencies or any future conditions</u>. . . .

Report, p. 1(emphasis added).  Further, with regard to "Environmental Concerns":

> The reported/actual health effects of many potentially harmful, toxic or environmentally hazardous elements that may be found in the air, soil, water or building materials in and around any house are varied, and in some cases controversial.  <u>A home inspection does not include the detection, identification or analysis of any such element</u> . . ..  <u>An environmental specialist should be contacted for evaluation of any potential health or environmental concerns</u>.

<u>Id</u>., p. 2 (emphasis added).  Finally, the Report states:

> **GENERAL CONSIDERATIONS** - Most houses have the potential for surface or subsurface water penetration.  Regardless of any specific report comments, it would be prudent in all cases to discuss local conditions and concerns with the present owner and local authorities.  <u>Any comments made in this report are based on</u>

10

<u>evidence/indication present at the time of inspection only. It is not possible to accurately determine the extent of past conditions or to predict future concerns. If there are indications of prior remedial work intended to reduce water penetration concerns, documentation should be obtained from the owner and/or installer.</u>

Experience indicates that the majority of water penetration concerns are due to a combination of factors commonly related to inadequate foundation grading and drainage provisions. In many situations, relatively straightforward measures may have a direct effect on the condition; in other cases, the remedy may be more complex or impossible to achieve. Any specific recommendations in the Report should be considered; however, be aware that <u>they do not necessarily represent a complete or permanent solution to the condition</u>.

<u>Id</u>., p. 12, "Water Penetration"(emphasis added). In short, Plaintiffs have not and cannot demonstrate that HouseMaster was contractually obligated to provide them with notice of potential future harms or hazards associated with the house, including mold. Rather, under the express terms of the parties' contract, HouseMaster was to provide Plaintiffs with an evaluation of the specific elements of the home on the date and time of the inspection, based on a visual assessment of the home's accessible elements. HouseMaster has fully complied with this obligation  HouseMaster is thus entitled to judgment on this claim as a matter of law.

**D.    HouseMaster Is Entitled To Summary Judgment On Plaintiffs' Negligence, Misrepresentation and UTPCPL Claims Pursuant To The Gist Of The Action Doctrine**

Plaintiffs' claims for negligence, misrepresentation and violation of the UTPCPL must be dismissed as nothing more than artful camouflage of ordinary

breach of contract allegations into those sounding in tort. When a plaintiff alleges

that a defendant has committed torts in the course of carrying out a contractual

agreement, courts apply the "gist of the action" doctrine to determine whether the

causes of action sound in contract or tort. Factory Mkt., Inc. v. Schuller Int'l, Inc.,

987 F. Supp. 387, 394 (E.D. Pa. 1997). Under the "gist of the action" doctrine, tort

claims cannot be maintained when they essentially duplicate an action for breach

of an underlying contract. Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.,

40 F. Supp. 2d 644, 651 (W.D. Pa. 1999); Horizon Unlimited, Inc. v. Silva & SNA,

Inc., C.A. No. 97-7430, 1998 U.S. Dist. LEXIS 2223, at *17 (E.D. Pa. Feb. 27,

1998); Bash v. Bell Tel. Co., 411 Pa. Super. 347, 356, 601 A.2d 825, 829

(1992)("A claim *ex contractu* cannot be converted to one in tort simply by alleging

that the conduct in question was wantonly done.")(citation omitted). Thus, for a

claim "to be construed as a tort action, the wrong ascribed to the defendant must be

the gist of the action with the contract being collateral." Factory, 987 F. Supp. at

394 (citation omitted)(emphasis added)).

Here, Plaintiffs have brought claims of negligence, misrepresentation and

violation of the UTPCPL/fraud[2] against HouseMaster. Notably, courts have

_____

[2] A plaintiff must prove the elements of common law fraud to prevail under the
UTPCPL. Booze v. Allstate Ins. Co., 750 A.2d 877, 880 (Pa. Super. 2000).

repeatedly rejected these claims pursuant to the "gist of the action" doctrine where, as in this case, the allegations underlying the claims mirror those in support of a claim for breach of contract.   See e.g., Bash, supra (affirming dismissal of negligence claim where the gist of plaintiff's complaint was that the defendant failed to perform under the contract); USX Corp. v. Prime Leasing, Inc., 988 F.2d 433, 440 (3d Cir. 1993)(affirming dismissal of tortious misrepresentation claim based on the same acts that gave rise to contract claims); Closed Circuit Corp. of Am. v. Jerrold Elec. Corp., 426 F. Supp. 361, 364 (E.D. Pa. 1977) (dismissing fraud claim where the allegations "[rose] no higher than that the defendant failed to comply with contract specifications"); Factory Market, 987 F. Supp. at 395(finding the obligations arising out of the contract were central to the complaint, and thus, "the allegations set forth in plaintiff's fraud count [were] simply another way of stating its claim for breach of contract."); Horizon Unlimited, 1998 U.S. Dist. LEXIS 2223, at *16-17(finding because the same misrepresentation formed the basis for fraud and breach of warranty claims, the fraud claim was merely an attempt to "recover under a tort theory for an alleged wrong properly characterized as a breach of contract.").   Indeed, the allegations underlying Plaintiffs' claims here are identical: Plaintiffs hired HouseMaster to inspect for any problems (Amended Complaint, ¶15); the inspection revealed the presence of water stains in the basement (id. at ¶16); HouseMaster recommended that Plaintiffs "slope soil away

from house, keep downspouts clean and flowing, or consider extending spouts onto surface," which recommendations Plaintiffs followed (id. at ¶¶16-17); and approximately one year following the inspection, in July of 2000, Plaintiffs discovered the basement covered in mold.  (Id. at ¶22.)  The gravamen of the claims is also identical: HouseMaster erred in not providing Plaintiffs with information concerning the source of the water damage in the basement and the potential damages from or harmful effects of the same. (Amended Complaint, ¶¶ 92,97,103,109.)  Moreover, not only do Plaintiffs assert identical facts in support of their claims, Plaintiffs also seek the same measure of damages on the Counts. Id., compare ¶¶ 95, 99, 110 with ¶107.

Simply put, Plaintiffs' claims for negligence, misrepresentation and UTPCPL are nothing more than different dressings for their purported breach of contract claim -- that HouseMaster misperformed by failing to notify them of potential harms/hazards.  The claims are clearly collateral to the Agreement.[3] Plaintiffs' attempts to recover under tort theories for a mere breach of contract

_____

[3] Indeed, any alleged obligation to notify or warn Plaintiffs of potential future problems, including health issues, could only arise from the parties' agreement, and not from greater social policies.  See Bash, 411 Pa. Super. at 356-57; 601 A.2d at 829-830.

mandates dismissal of Counts VIII, IX and XI of Plaintiffs' Amended Complaint under the "gist of the action" doctrine.

### E.    Housemaster Is Entitled To Judgment As A Matter Of Law On Plaintiffs' Negligence Claim

HouseMaster also seeks summary judgment on Plaintiffs' negligence claim on the basis that in an action for professional negligence, Plaintiffs must utilize expert testimony to establish the standard of care (with certain exceptions not applicable here) and, lacking any expert testimony, the Plaintiffs cannot establish their *prima facie* case.

To sustain a cause of action for negligence under Pennsylvania law, Plaintiffs must establish the existence of the following elements: (1) a duty recognized by law requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a reasonably close causal connection between the conduct and the resulting injury; (4) actual loss or damage resulting to the interest of another.  Fennell v. Nationwide Mut. Fire Ins. Co., 412 Pa. Super. 534, 603 A.2d 1064, app. den., 533 Pa. 600, 617 A.2d 1274 (1992)(citation omitted).  The burden of proving negligence rests upon the party who has asserted it.  Schmoyer v. Mexico Forge, Inc., 437 Pa. Super. 159, 649 A.2d 705 (1994).  Pennsylvania law is clear that in a professional negligence action, the duty ascribed to a professional is defined by the standard of care normally possessed by members of that

profession or trade. <u>Robert Wooler Company v. Fidelity Bank</u>, 330 Pa. Super. 523, 531, 479 A.2d 1027, 1031 (1984). Thus, expert testimony is required for a plaintiff to establish the negligent practice, <u>i.e.</u>, breach of the standard of care, in any profession. <u>Powell v. Risser</u>, 375 Pa. 60, 65, 99 A.2d 454 (1953); <u>Bowser v.Lee Hospital</u>, 399 Pa. Super. 332, 582 A.2d 369, 373 (1990) (citation omitted). The only exception is where the matter under consideration is so simple and the lack of skill or want of care so obvious as to be within the and comprehension of non-professionals. <u>Cipriani v. Sun Pipeline Co.</u>, 574 A.2d 706 (Pa. Super. 1990).

In this case, it is clear that a determination as to the standard of care applicable to Chuck Berthoud/HouseMaster will require specialized knowledge beyond that possessed by the average layperson. The issue here is the duty owed by a reasonable and prudent home inspector under the circumstances. Thus, Plaintiffs necessarily require the use of expert testimony to establish this standard of care to assist the trier of fact in determining whether HouseMaster breached that standard here. Because Plaintiffs have failed to produce the requisite expert testimony, Plaintiffs are incapable making out a *prima facie* case of professional negligence against HouseMaster. Admittedly, Plaintiffs have proffered an expert report by Tom Moore, a home inspector. However, the stated purpose for his inspection and report was "to examine the house for moisture and water problems that possibly may have contributed to a mold and mildew condition resulting in the

occupants having to move out of the house."  Moore Report, p. 1. Significantly,

Mr. Moore's report does not comment on the standard of care required of Mr.

Berthoud as a home inspector, nor does it state that visible deficiencies existed at

the time Mr. Berthoud conducted his inspection or that he negligently failed to

identify and inform of same.[4] In fact, the report merely concludes that the

basement of the subject property was finished improperly -- a vapor barrier

incorrectly applied to the block wall instead of between the interior finished wall

and insulation. Id., p. 2.  Notably, however, this "defect" was not detectable by

HouseMaster in July of 1999 as its inspection was limited to a visually accessible

conditions, with no destructive testing.  With the drywall and paneling intact in

1999, the finishing materials were simply not accessible to HouseMaster.

Having failed to produce the expert testimony necessary to establish the

standard HouseMaster has allegedly breached, Plaintiffs are incapable of making

out a prima facie case of professional negligence.  Further, even assuming expert

testimony is not required, the claim still fails.  As discussed in detail supra,

HouseMaster had no duty, contractual or otherwise, to notify Plaintiffs of potential

---

[4] Mr. Moore's report does not even provide information on the extent and repair
cost of the alleged damage to the home.

17

problems, both present and future, related to water penetration. For these reasons,

Count VIII of Plaintiff's Amended Complaint should be dismissed with prejudice.

### F.    HouseMaster Is Entitled To Judgment As A Matter of Law on Plaintiffs' Misrepresentation Claim

In Count IX of their Amended Complaint, Plaintiffs contend that

HouseMaster misrepresented the home's conditions by failing to inform them of

the source of the water damage and/or of any current or potential problems related

thereto. (Amended Complaint, ¶97.) Intentional misrepresentation has been

defined as: "(1) A representation; (2) which is material to the transaction at hand;

(3) made falsely, with knowledge or recklessness as to whether it is true or false;

(4) with the intent of misleading another into relying on it; (5) justifiable reliance

on the misrepresentation; and, (6) the resulting injury was proximately caused by

the reliance." Bortz v. Noon, 556 Pa. 489, 729 A.2d 555, 560 (Pa. 1999). Plaintiffs

cannot establish the requisite elements of misrepresentation.

First, HouseMaster's obligations to Plaintiffs were limited by the parties'

contract. The gravamen of Plaintiffs' claim is that HouseMaster misrepresented

the home's condition when it failed to warn Plaintiffs of current and future

problems related to water penetration, including mold or other environmental or

health concerns. However, as discussed fully supra, HouseMaster had a duty to

report only on the present, visually detectable conditions in the home, which it did.

See Agreement, ¶1; accord, Report, pp. 1, 12. HouseMaster had no obligation,

contractual or otherwise, to report on either future conditions or on health or environmental concerns posed by the home's condition. See Agreement, ¶5; Report, pp. 1,2. HouseMaster's silence in this regard, therefore, is not actionable.

Second, the record reveals no false representations by HouseMaster regarding the subject property. To the contrary, the evidence demonstrates that HouseMaster, in accordance with the Agreement, inspected and reported on the visually detectable condition of the basement as of the date of the inspection. HouseMaster observed and reported that while there was evidence of water marks and remedial coatings/construction in the basement, the basement was not wet on July 30, 1999. Report, p. 11. Indeed, Plaintiffs aver that they did not notice mold, dampness or musty odors in the basement until the so-called mold explosion in July, 2000. (Amended Complaint, ¶22; accord, 10/15/00 Expert Report of Robert A. Pfromm, CIH, p. 1 ("At that time, [Plaintiffs] did not observe any signs of water problems or visible mold."); Jack Marrone Depo., pp. 249-250; Karen Marrone Depo., pp. 93-94, 151-52, 178-79.)) Thus, Plaintiffs' claim fails.

Finally, Plaintiffs fail to offer any proof that HouseMaster intended to deceive them with the representations in the Report. Plaintiffs hired HouseMaster to conduct a visual specific element inspection and the representations HouseMaster made to Plaintiffs in its Report were true at the time of the inspection. There is simply no evidence to the contrary. Plaintiffs' argument that

HouseMaster intentionally deceived them, HouseMaster's own clients, for the purpose of inducing them to purchase the subject property defies common sense. HouseMaster did not and could not benefit from Plaintiffs' purchase of the home – this cannot be disputed. Summary judgment is therefore warranted.

### G. HouseMaster Is Entitled To Judgment As A Matter of Law on Plaintiffs' UTPCPL Claim

Plaintiffs claim in Count XI of the Amended Complaint that HouseMaster is liable under the UTPCPL because HouseMaster allegedly misrepresented the condition of the subject property. Plaintiffs, however, cannot prove fraud.

First, judgment should be entered in HouseMaster's favor because the record evidence supports, at best, a finding that HouseMaster engaged in nonfeasance. Nonfeasance is insufficient to make a claim under the UTPCPL. Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 307 (3d Cir. 1995). The conduct which Plaintiffs identify as fraudulent and deceptive is conduct that tends to show that HouseMaster failed to warn Plaintiffs of potential health hazards and other problems. Such a claim does not amount to misfeasance.

Second, Plaintiffs have failed to provide evidence to support their claim. To prevail under the UTPCPL, Plaintiffs must prove the elements of fraud: 1) a material misrepresentation of an existing fact; 2) scienter; 3) justifiable reliance on the misrepresentation; and 4) damages. See Booze v. Allstate Ins. Co., 750 A.2d 877, 880 (Pa. Super. 2000); Hammer v. Nikol, 659 A.2d 617, 620 (Pa. Commw.

Ct. 1995). Moreover, the courts have held that, "the initial inquiry for the judge is whether the proof of every element of fraud has met the exacting standard, justifying refusal to grant a non-suit and its submission to the fact finder." Weisblatt v. Minnesota Mutual Life Ins. Co., 4 F. Supp.2d 371, 384 (E.D.Pa. 1998)(citation omitted). In this regard, Plaintiffs "[bear] the heavy burden in establishing elements of fraud by clear and convincing evidence." Id.

Here, as discussed supra, Plaintiffs have failed to set forth evidence of record that HouseMaster engaged in fraudulent conduct. Although Plaintiffs aver that they were misled into believing that the home was not defective, Plaintiffs provide no evidence, let alone "clear and convincing" evidence, of deceptive or misleading statements or actions either in the Express Report or elsewhere by HouseMaster. The facts of record prove the contrary. Indeed, the Report reveals that water stains/marks were noted in the basement at the time of the inspection as well as evidence or indications of possible prior remedial work with regard to water penetration, namely construction/coatings. Report, p. 11. However, no wetness or condensation was present. Id. These representations are uncontroverted.[5] In addition, HouseMaster made recommendations to help prevent

---

[5] In fact, Plaintiffs related to their expert, Mr. Pfromm, that the subject property was shown to them during a period of dryer weather and that they did not observe

(Continued…)

water penetration.  Id.  Although Plaintiffs allege that these suggested repairs were fraudulent because they did not mitigate/prevent water leakage (Amended Complaint, ¶109(d)), the mold explosion did not occur until one year after the inspection by HouseMaster.[6]  Thus, water penetration was mitigated or delayed by use of the recommendations. Plus, Plaintiffs cannot claim detrimental reliance with regard to the recommendations because Jack Marrone testified that he had no idea why said recommendations were made. (Jack Marrone Dep., pp. 79-84.)  Plaintiffs also cannot demonstrate scienter on the part of HouseMaster. Without a doubt, the record in this case is devoid of any facts to prove that HouseMaster intended to deceive Plaintiffs.  Housemaster had no way of knowing that one year after its inspection, mold would cover the basement of the subject property.  Indeed, Housemaster's Report states unequivocally that "moisture/water conditions are subject to unpredictable changes; future conditions cannot be determined."  Report, p. 11.  The Report also provides: "Most houses have the potential for surface or subsurface water penetration…. Any comments made in this report are based on

_____

(Continued…)

any signs of water problems or visible mold during their visits to the property. 10/15/00 Pfromm Expert Report, p. 1.

[6] And notably, the mold explosion occurred only after Plaintiffs closed up their home, without air conditioning or a dehumidifier running and with standing water in the basement hot tub, for one week in the summer of 2000. (Jack Marrone Depo., pp. 259-260; Karen Marrone Depo., p. 145; Larry Miller Depo., pp. 57-58.)

evidence/indication present at the time of inspection only.  It is not possible to accurately determine the extent of past conditions or to predict future concerns . . ..."Id., p. 12.  Plaintiffs have simply failed to proffer sufficient facts to permit this claim to proceed to the fact finder.  The key to invoking the UTPCPL is fraud and the requisite elements of fraud are lacking here.  Accordingly, Count XI of the Amended Complaint must be dismissed.

### H.    HouseMaster Is Entitled To Judgment As A Matter of Law on Plaintiffs' Claims for Personal Injury Damages

In Counts VIII through XI of the Amended Complaint, Plaintiffs seek damages for, in part, physical and emotional damage and distress they allegedly suffered as a result of their exposure to mold in their home.  Summary judgment is appropriate on these damages claims, however, as: (1) the terms of the Agreement expressly bar recovery against HouseMaster for bodily injuires; and (2) Plaintiffs have failed to proffer requisite expert testimony regarding the relationship between their injuries and the alleged causes thereof.

As discussed supra, the terms and conditions of the Agreement entered into by and between Plaintiffs and Housemaster expressly limit HouseMaster's liability for injuries arising out of its specific element inspection of the homs.  In particular, Paragraph 4 of the Agreement states, in pertinent part,

> **The Company assumes no responsibility or liability for personal or bodily injury or fatalities caused by any of the property's components or conditions or their effects, regardless of the cause.**

23

**The Client agrees to maintain adequate liability insurance to cover this potential liability.**

Agreement, ¶ 4 (emphasis in original).  Thus, under the express terms of the

Agreement, Plaintiffs' claims for bodily injury damages fail as a matter of law.

Even if Plaintiffs' personal injury claims are not barred by the express

provisions of the Agreement, such claims still fail as Plaintiffs have failed to

demonstrate a causal link between the condition of the subject home and Plaintiffs'

alleged physical and psychological ailments. A plaintiff must prove the existence

of a causal relationship between an injury complained of and the alleged negligent

act to be entitled to recover for the injury. Hamil v. Bashline, 481 Pa. 256, 392

A.2d 1280 (1978). When there is no obvious casual relationship, "unequivocal

medical testimony is necessary to establish the casual connection." Albert v. Alter,

252 Pa. Super. 203, 224, 381 A.2d 459, 470 (1977)(citing Smith v. German, 434

Pa. 47, 253 A.2d 107 (1969)).  Here, in support of their bodily injury claims,

Plaintiffs have proffered the expert testimony of Eckardt Johanning, M.D.  Dr.

Johanning has opined that each of the Plaintiffs suffered from a respiratory

reaction after exposure to mold and mildew at the subject property.  Dr. Johanning

also diagnosed Jack, Karen and Vida Marrone with upper and lower airway

inflammation and irritation effects (rhinosinusitis, bronchitis), resulting from their

exposure in the subject property.[7]  As discussed in HouseMaster's Motion to

Preclude Expert Reports and Testimony of Eckardt Johanning, M.D. filed

concurrently herewith, which is incorporated by reference herein as if fully set

forth, Plaintiffs' damage claims fail as Plaintiffs cannot establish either general or

specific causation.  The claims, thus, must be dismissed.

## V.    **CONCLUSION**

For the foregoing reasons, Defendant HouseMaster respectfully requests this

Court to enter Summary Judgment in its favor and to dismiss Counts VIII through

XI of the Amended Complaint and the bodily injury damage claims with prejudice.

DUANE MORRIS LLP

By: s/ Jennifer L. Murphy
     James J. Kutz, Esq.
     Attorney ID. No. 21589
     Jennifer L. Murphy, Esq.
     Attorney ID. No. 76432
     305 North Front St., 5th Floor
     P.O. Box 1003
     Harrisburg, PA  17108-1003
     (717) 237-550

Attorneys for Defendant HouseMaster

Date:  May 16, 2003

HBG\14767.1

---

[7] Summary judgment on Matthew Marrone's personal injury claims is clearly warranted.  In particular, no tests were performed on him, no diagnosis of airway inflammation/irritation was made for him and no opinion was proffered to a reasonable degree of medical certainty.

## **LOCAL RULE 7.8 CERTIFICATION**

I, Jennifer L. Murphy, Esquire, counsel for Defendant HouseMaster hereby certify that the foregoing Brief is in compliance with Local Rule 7.8, as I have sought and received prior authorization from the Court to file a Brief in excess of the 15-page, 5000 word limitation, but not exceeding 25 pages.

s/ Jennifer L. Murphy
Jennifer L. Murphy

<u>**CERTIFICATE OF SERVICE**</u>

AND NOW, this 16th day of May, 2003, I hereby certify that I, Jennifer L.

Murphy, caused to be served a copy of the Defendant HouseMaster's Brief in

Support of Renewed Motion for Summary Judgment on the following by

depositing a true and correct copy of the same in the U.S. Mail at Harrisburg,

Pennsylvania, postage prepaid, addressed to:

James G. Nealon, III, Esquire
Nealon & Gover, P.C.
2411 North Front Street
Harrisburg, PA  17110

John Flounlacker, Esquire
Thomas, Thomas & Hafer, LLP
305 North Front Street
Harrisburg, PA 17108

Edward A. Monsky, Esquire
Fine, Wyatt & Carey, P.C.
425 Spruce Street
Scranton, PA  18501-0590

Gianni Floro, Esquire
Tarasi, Tarasi & Fishman, P.C.
510 Third Avenue
Pittsburgh, PA  15219

Joel D. Gusky, Esquire
Harvey, Pennington, Cabot, Griffith & Renneisen, Ltd.
Eleven Penn Center
1835 Market Street, 29th Floor
Philadelphia, PA  19103

By:  <u>s/ Jennifer L. Murphy</u>
Jennifer L. Murphy