Case 1:01-cv-00773-YK   Document 161   Filed 05/16/2003   Page 1 of 15



# ORIGINAL
2 to cv

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FILED
HARRISBURG, PA

MAY 1 6 2003

MARY E. D/ANDREA, CLER
Per _____
Deputy Clerk

| | | |
|---|---|---|
| JACK MARRONE, husband, KAREN MARRONE, wife, both individually and in their capacity as parents and guardians for VIDA MARRONE, a minor, Plaintiffs, | : : : : : | NO.:  1:CV-01-0773 |
| v. | : : | (THE HONORABLE JUDGE KANE) |
| ALLSTATE INSURANCE COMPANY, LINDA M. EDLEMAN, FRED SHAFER, MT. GRETNA REALTY, and HOUSE MASTERS, Defendants. | : : : : : | JURY TRIAL DEMANDED |

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, ALLSTATE INSURANCE COMPANY

1.      On or about May 3, 2001, Plaintiffs (Jack, Karen and Vida Marrone) commenced this civil action by filing a Complaint.  On or about September 26, 2001, Plaintiffs filed a motion to file an amended Complaint to include an additional plaintiff, Matthew Marrone.  Said motion to amend the Complaint was granted by this Honorable Court on October 19, 2001.

2.      Allstate incorporates by reference thereto as if set forth a length Exhibits A, B, C, D, E, F, G, and H that were previous attached to Allstate's Motion for Summary Judgment filed on October 18, 2002.

3.    The Discovery is now closed per this Honorable Court's Order of January 14, 2003.  The deposition transcripts of all the Plaintiffs (Jack, Karen, Vida and Matthew Marrone) and Allstate claims representative Larry Miller are attached by reference hereto as exhibits "A", "B", "C", "D", and "E" respectively.

4.    The underlying facts giving rise to this cause of action pertain to certain injuries allegedly suffered by the Plaintiffs as a result of a mold infestation occurring in or about July 2000, within the plaintiffs' residence, particularly in the basement, located at 354 Timber Road, Mt. Gretna, Lebanon County, Pennsylvania.

5.    By way of background, on August 31, 1999, Plaintiffs, Jack and Karen Marrone, husband and wife, took possession of 354 Timber Road after settlement on said date.  Thereafter, the Marrone's children, Plaintiff's Vida and Matthew Marrone, resided with Jack and Karen at the residence in question.

6.    Prior to settlement on the aforesaid property, on August 25, 1999, Plaintiff Karen Marrone applied for a homeowners policy with Defendant, Allstate Insurance Company (hereinafter "Allstate").  A true and

correct copy of the Allstate application is attached by reference hereto as Exhibit "F".

7.    Pursuant to Ms. Marrone's application for Homeowners Insurance, Allstate issued its Deluxe Plus Homeowners Policy identified by policy number: 0 01 657755 (hereinafter "Homeowners Policy").  A true and correct copy of the Homeowners Policy is attached by reference hereto as Exhibit "G".

8.    Said Homeowners Policy was effective from 12:01 a.m. on August 25, 1999 to August 25, 2000.

9.    The Homeowners Policy was in effect during all relevant times pertaining to the within action.

10.    Plaintiffs, who then resided at 354 Timber Lane, took a one-week vacation in July 2000.  Upon returning from vacation, the Plaintiffs allegedly discovered mold had infiltrated their basement.

11.    Allstate concedes that Plaintiff's filed a claim with Allstate under the Homeowner Policy because of this mold problem.

12.    On August 10, 2000, Allstate denied coverage for Plaintiffs' claim under the Homeowners Policy.  A true and correct copy of the

disclaimer letter sent to the Plaintiffs by Allstate is attached by reference hereto as Exhibit "H".

13.    On August 12, 2002, Plaintiff's expert, Tom Moore of Multi-Spec Home Inspection Services, inspected the residence at 354 Timber Lane.  A true and correct copy of Tom Moore's expert report, as prepared for Plaintiffs, is attached hereto as Exhibit I.

14.    However, the Allstate Homeowners Policy provides "Losses We Cover Under Coverages A [pertaining to the dwelling] and B [pertaining to other structures on the property]" as follows:

> We will cover sudden and accidental direct physical loss to property described in Coverage A—Dwelling Protection and Coverage B—Other Structures Protection except as limited or excluded in this policy.

*See* Homeowners Policy at 6.

15.  The Homeowners Policy further provides the following specific exclusions:

In addition, we do not cover loss consisting of or caused by any of the following:

13.     a) wear and tear, aging, marring, scratching,
deterioration, inherent vice, or latent defect;

b) mechanical breakdown;

c) growth of trees, shrubs, plants or lawns
whether or not such growth is about or below the ground;

d) rust or other corrosion, **mold**, wet or dry rot;

e) smog, smoke from the manufacturing of
any controlled substance, agricultural smudging and industrial operations;

f) settling, cracking, shrinking, bulging or
expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

g) insects, rodents, birds, or domestic animals.
We do not cover the breakage of glass or safety glazing materials caused by birds; or

h) seizure by government authority.


.       .       .


16. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel:

a) from a plumbing, heating, air
   conditioning or automatic fire
   protection system or from within a
   domestic appliance; or
b) from, within or around any
   plumbing fixtures, including, but not
   limited to shower stalls, shower
   baths, tub installations, sinks or
   other fixtures designed for the use
   of water or steam.

*Id.* at 7, 8 (emphasis added).

16.   The leaks as attributed by Plaintiff's expert as the underlying cause of the mold problem are specifically excluded in the Homeowners Policy.  *See* Homeowners Policy at 8.   In the alternative, notwithstanding Plaintiffs' expert's comments that "small pipe leaks at the copper water line joints in the [basement] ceiling" were a possible cause of the mold infestation of 354 Timber Lane, undoubtedly "small pipe leaks" do not constitute "sudden and accidental" occurrence as used in the Allstate Homeowners Policy; as such, there is no coverage for such "small pipes leaks." (See Exhibit I).

17.   The physical injuries alleged in the Complaint are alleged to have been caused solely by mold in the Plaintiffs' home.

6

18.    Plaintiff Jack Marrone's deposition indicates that the sole cause of his family's health problems, as alleged to have arisen out of this cause of action, were from the mold and/or fungal toxins present within the residence. (See Exhibit A at p. 23, ln. 16-22).

19.    Furthermore, the other plaintiffs, Karen Marrone, Vida Marrone and Matthew Marrone, as well as any other evidence in this case, fail to point to any facts identifying any other causes of their health problems other than mold.  (See Exhibits B, C, and D).

20.    As the above-quoted language from the Homeowners Policy clearly indicates, "loss consisting of or caused by . . . mold" is not covered under the Homeowners Policy. *Id*. at 7.

21.    Plaintiffs' Complaint alleges that the injuries sustained were caused solely by "exposure to said fungal toxins"  (Plaintiffs' Complaint at ¶ 34-36).

22.    Additionally, because the Allstate Homeowners Policy clearly does not cover losses "consisting of or caused by mold", Allstate had a reasonable basis to act as it did and deny coverage after determining that the problems were caused by mold.

23.   Allstate did not act in Bad Faith nor breach any of its duties as it had a reasonable basis to deny coverage because of the clear and unambiguous mold exclusion.

24.   Furthermore, Allstate had no duty to warn the Plaintiffs of any potential health concerns stemming from the presence of mold in Plaintiffs' home.

25.   No genuine issue of material fact exists and Allstate is entitled to judgment as a matter of law.

**WHEREFORE**, Defendant, Allstate Insurance Company, urges the Honorable Court to enter summary judgment in its favor and dismiss it from the within action.

Respectfully submitted,

NEALON & GOVER, P.C.

By: _____

        James G. Nealon, III, Esquire
        I.D. #:        46457
        2411 North Front Street
        Harrisburg, PA  17110
        717/232-9900

Date: _5/14/03_____

8

Case 1:01-cv-00073-YK   Document 161   Filed 05/16/2003   Page 9 of 15

LOUIS M. TARASI, JR.
CERTIFIED CIVIL TRIAL ADVOCATE BY THE NATIONAL
BOARD OF TRIAL ADVOCACY.  A PENNSYLVANIA
SUPREME COURT APPROVED AGENCY.

ELIZABETH M. TARASI
CRAIG L. FISHMAN

CHRISTINA K. HURNYAK
C. WILLIAM KENNY
GIANNI FLORO

# TARASI, TARASI & FISHMAN, P.C.
## ATTORNEYS AND COUNSELORS AT LAW

510 THIRD AVENUE
PITTSBURGH, PENNSYLVANIA 15219-2191
(412)391-7135  FAX: (412)471-2673
WEBSITE:  WWW.TARASILAW.COM
E-MAIL:  LAWYERS@TARASILAW.COM

*Exh 1*

**Via Telefax (717) 237-7105**
**and U.S. Mail First Class**

September 13, 2002

John Flounlacker, Esquire
Thomas, Thomas & Hafer, LLP
305 North Front Street, 6th Floor
Harrisburg, PA  17108-0999

Re:   <u>Jack Marrone, husband, Karen Marrone, wife, both individually and in
their capacity as parents and natural guardians for Vida Marrone, a minor,
and Matthew Adam Marrone v. Allstate Insurance Company, Linda M.
Edleman, Fred Schafer, Mt. Gretna Realty and House Masters</u>
In the United States District Court for the Middle District of Pennsylvania
Civil Action No. 1: CV-01-0073

Dear Mr. Flounlacker:

Enclosed please find the Expert Report of Tom Moore, Home Inspector.

If you should have any questions or comments regarding this matter, please do not
hesitate to contact me directly.

Very truly yours,

TARASI, TARASI & FISHMAN, P.C.

Gianni Floro

Enclosure

cc:   James G. Nealon, Esquire (w/encl. *via telefax 717-236-9119 and U.S. Mail First Class*)
Edward A. Monsky, Esquire  (w/encl. *via telefax 570-343-9538 and U.S. Mail First Class*)
Paul E. Scanlan, Esquire  (*w/encl. via telefax 717-232-4015 and U.S. Mail First Class*)

# Multi-Spec

## Home Inspection Services

*421 Redgate Rd. Sewickley, Pa. 15143*        *Fax (412) 741-5465*        *Bus. (412) 749-0626*

### INSPECTION REPORT 8-12-02

*Prepared for:*

*Gianni Floro*
*Tarasi, Tarasi & Fishman, P.C.*
*510 Third Avenue*
*Pittsburgh, PA   15219-2191*

*Prepared by:*
*Tom Moore*
*8-31-02*

## Purpose of the Report

An inspection was done on August 12, 2002 at a residential property at 354 Timber Road, Mt. Gretna, PA. The purpose of the inspection was to examine the house for moisture and water problems that possibly may have contributed to a mold and mildew condition resulting in the occupants having to move out of the house.

## Current Conditions

Weather was clear, temperature in the 80's. Electric was off and could not operate the water since the source was a well and power is needed to operate the pump.

## Observations and Findings

The house is a single story ranch style house with a full basement and integral garage underneath. The exterior and grounds inspection found some low areas and negative slope at the front and sides. (photos 5, 7, 8, 9, 10) The ground should be graded to slope away from the house so surface water is diverted. The gutters were found to have leaves and debris in them and they need to be cleaned out. The front center downspout had black corrugated piping attached to it to carry the discharge water around the side and to the rear of the house. (photo 4) The driveway slopes toward the garage and has inadequate drainage in front of the door. (photo 15, 16) There was evidence of water entering under the garage door and path way into the garage. (photo 29) Proper drainage needs to be installed to handle all rain conditions. The right rear downspout was smashed almost closed and needs to be repaired.

The house is currently vacant and has been for approximately 2 years.

The first floor of the house had no evidence of mold or mildew growth.

The basement had remnants of a drywall ceiling that had been removed and the fiberglass insulation is still in place. (photo 26) The front wall of the basement had 2" x 4" studs and fiberglass insulation in place from the left front corner to approximately the middle of the front wall. Between the insulation and the block foundation was a layer of black roofing paper. The wall studs at the center of the front wall had areas of rot. Some studs were rotted significantly on the vertical areas indicating a wetting and drying scenario over a period of time. (photo 48) The bottom wall plate was black and moisture saturated. This condition was on the back half of the base plate, the front half looked normal. The bottom was not rotted since the wood appears to stay wet or saturated. (photo 47, 48) The rear basement wall and right end partition wall still had paneling on it, which was warped due to dampness and humidity. (photo 37, 38, 39) The worst warpage was at the right rear corner of the finished area. There was evidence of small pipe leaks at the copper water line joints in the ceiling. (photo 43, 44, 45, 46, 52) There was also evidence of condensation and sweating of the copper water lines which had been above the drywall and under the ceiling insulation. The indications were dark staining of the insulation above the pipes and rusting pipe supports. (photo 45, 46) The areas affected appeared to increase in the amount of the rust and staining as you move

toward the center of the area at the right rear corner of the finished area. *(photo 37)* There has been references of a hot tub being located at one time in this area. The storage area of the basement at the right end *(photo 40,41,42)* had current mold and mildew on the walls and paneling and efflorescence on the block indicating moisture migration through the block from the outside.

### Conclusions

The finishing of the basement was incorrectly done. The vapor barrier (felt paper) was applied to the block wall. The correct method would have been to have the vapor barrier between the interior finished wall (drywall or paneling) and the insulation so that warm, moist air is stopped before entering the wall cavity. In this house, the warm, moist air was condensing on the felt paper and then running down the wall. Also, any exterior surface water migrating through the wall was also stopped by the felt paper and would run down to the bottom of the wall which would account for the saturated condition of the bottom wall plate. The presence of a hot tub in a basement without proper ventilation and dehumidifiers would contribute to humidity and temperature conditions needed for mold and mildew growth. Finally, there is evidence of leakage at the water pipes above the basement ceiling which would also have contributed to mold and mildew growth. Mold and mildew need moisture, warm temperatures, and a food source on which to grow. In this basement, the moisture was readily available from any number of sources outside surface water leaking through the foundation walls; leaking water supply pipes, and the use of a hot tub indoors. The food source was the framing, drywall, and paneling. These conditions from the photographs I examined existed at the time the photographs were taken. All my opinions are based upon a reasonable degree of home inspection certainty.

*Tom Moore*

# *Multi-Spec*

## *Home Inspection Services*

*421 Redgate Rd. Sewickley, Pa. 15143*        *Fax (412) 741-5465*        *Bus. (412) 749-0626*

*Jack Marrone, husband, Karen Marrone, wife both individually and in their capacity as parents and natural guardians for Vida Marrone, a minor, and Matthew Adam Marrone v. Allstate Insurance Company, Linda M. Edleman, Fred Shafer, Mt. Gretna Realty and House Masters.*

## *REFERENCES:*

*1)       A copy of the Amended Complaint in Civil Action;*

*2)       a copy of the Housemaster Express Report;*

*3)       a copy of the Advanced Applied Sciences Report;*

*4)       a copy of the photographs of the Marrone's House (Lower Level) after the mold infestation took place;*

*5)       a copy of the Seller's Disclosure Statement;*

*6)       a copy of the video tape deposition of Chuck Berthoud, the Housemaster home inspector;*

*7)       relevant portions of the materials that were attached to the home inspection report.*

Tom Moore
Multi-Spec
421 Redgate Road
Sewickley, PA  15143
(412) 741-3256

**HIGHLIGHTS OF QUALIFICATIONS**
* Certified Pest Control Operator in PA
* Qualified through EPA for Radon Testing
* Certified by Building Officials and Code Administrators (BOCA) to perform one and two family dwelling and combination commercial inspections

**EMPLOYMENT HISTORY**

May 1990 to Present — Multi-Spec, Sewickley, PA
Business Owner, Home Inspection & Pest Control
Founded residential home inspection business, including radon, water quality, well-flow, and septic dye testing, as well as termite inspection and pest control
Responsible for determining general repair costs

Feb.1982 to Mar.1990 — Trapp Construction, Sewickley, PA
Construction Crew Leader
Oversaw construction crews in new home construction and remodeling

Dec.1972 to Dec.1981 — Bravo Corporation, Neville Island, PA
Fitting and Welding Foreman
Supervised fitting and welding crew of twenty men in the construction of barges and towboats

**EDUCATION**

Property Inspector's Training Institute
Fort Washington, MD
Certificate in Property Inspection, May 1990
Intensive training in all areas of home inspection

Community College of Allegheny County
Pittsburgh, PA
Certificate in Heating/Air Conditioning, May 1983
GPA: 3.2

Alliance College, Cambridge Springs, PA
21 credits in Liberal Arts, May 1970

**PROFESSIONAL ORGANIZATIONS**
Member, American Society of Home Inspectors (ASHI)
Member, Building Officials and Code Administrators (BOCA)

**REFERENCES**
References available upon request

## CERTIFICATE OF SERVICE

**AND NOW**, this __16th__ day of May, 2003, I hereby certify that I have served the foregoing MOTION FOR SUMMARY JUDGMENT on the following by depositing a true and correct copy of same in the United States mail, postage prepaid, addressed to:

Gianni Floro, Esquire
TARASI, TARASI & FISHMAN, P.C.
510 Third Avenue
Pittsburgh, PA  15219

John Flounlacker, Esquire
THOMAS, THOMAS & HAFER, LLP
305 North Front Street
Harrisburg, PA  17101

Edward A. Monsky, Esquire
FINE, WYATT & CAREY, P.C.
425 Spruce Street
P.O. Box 590
Scranton, PA  18501-0590

Jennifer L. Murphy, Esquire
DUANE, MORRIS & HECKSHER, LLP
305 North Front Street, 5th Floor
Harrisburg, PA  17101

Joel D. Gusky, Esquire
1835 Market Street
29th Floor
Philadelphia, PA  19103

_____
James G. Nealon, III, Esquire