# ORIGINAL
2-b Cv

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

FILED
HARRISBURG, PA

MAY 1 6 2003

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

| | | |
|---|---|---|
| JACK MARRONE, husband, KAREN MARRONE, wife, both individually and in their capacity as parents and guardians for VIDA MARRONE, a minor, Plaintiffs, | : : : : : | NO.: 1:CV-01-0773 |
| v. | : : | (THE HONORABLE JUDGE KANE) |
| ALLSTATE INSURANCE COMPANY, LINDA M. EDLEMAN, FRED SHAFER, MT. GRETNA REALTY, and HOUSE MASTERS, Defendants. | : : : : : : | JURY TRIAL DEMANDED |

## BRIEF OF DEFENDANT, ALLSTATE INSURANCE COMPANY, IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## I.   Background.

On or about May 3, 2001, Plaintiffs (Jack, Karen and Vida Marrone) commenced this civil action by filing a Complaint. On or about September 26, 2001, Plaintiffs filed a motion to file an amended Complaint to include an additional plaintiff, Matthew Marrone. Said motion to amend the Complaint was granted by this Honorable Court on October 19, 2001.

The underlying facts giving rise to this cause of action arise from certain injuries allegedly suffered by the Plaintiffs as a result of an alleged mold infestation occurring in or about July 2000, within the plaintiffs'

residence located at 354 Timber Road, Mt. Gretna, Lebanon County, Pennsylvania.

On August 31, 1999, Plaintiffs, Jack and Karen Marrone, husband and wife, took possession of 354 Timber Road after settlement on the same date. The Marrones lived at the property in question with their children, Plaintiff's Vida and Matthew Marrone.

Prior to settlement on the property, on August 25, 1999, Plaintiff Karen Marrone applied for a homeowners policy with Defendant, Allstate Insurance Company (hereinafter "Allstate"). Pursuant to Ms. Marrone's application for Homeowners Insurance, Allstate issued its Deluxe Plus Homeowners Policy (hereinafter "Homeowners Policy"). The Homeowners Policy was effective from 12:01 a.m. on August 25, 1999 to August 25, 2000. It is undisputed that the Homeowners Policy was in effect during all relevant times pertaining to the within action.

Plaintiffs, who then resided at 354 Timber Lane, took a one-week vacation in July 2000. Upon returning from vacation, the Plaintiffs allegedly discovered mold had infiltrated their basement. Allstate concedes that

2

Plaintiff's filed a claim with Allstate under the Homeowner Policy to file a claim because of this mold problem.  On August 10, 2000, after an Allstate representative, Larry Miller inspected the residence, Allstate denied coverage for Plaintiffs' claim under the Homeowners Policy citing the specific policy language of the unambiguous mold exclusion contained within the Policy.

Plaintiffs, since filing their amended Complaint, have now found an expert to opine that "there was evidence of small pipe leaks at the copper water line joints in the [basement] ceiling" and that such leaks could have been a source of moisture in the basement of 354 Timber Lane that "would also have contributed to mold and mildew growth."  (Report of Tom Moore as attached to Motion for Summary Judgment as Exhibit I).  However, Plaintiffs have put no facts forth indicating that if there were "small pipe leaks" such leaks were a sudden and accidental as required to invoke coverage under the Homeowners Policy.  Additionally, Plaintiffs contend that Allstate acted in Bad Faith in handling Plaintiffs claim, notwithstanding

Allstate relying upon the plain and unambiguous mold exclusion in the Homeowners Policy.

Allstate has filed for summary judgment and this brief is in support thereof.

II.    **Question Presented**.

    A. WHETHER ALLSTATE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE OF THE MOLD EXCLUSION AND THE "SUDDEN AND ACCIDENTAL" REQUIREMENT IN THE APPLICABLE ALLSTATE HOMEOWNERS POLICY?

        (**Suggested answer in the AFFIRMATIVE**.)

    B. WHETHER ALLSTATE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE IT DID NOT ACT IN BAD FAITH IN HANDLING THE PLAINTIFFS' CLAIM?

        (**Suggested answer in the AFFIRMATIVE**.)

III.    **Argument**.

    **Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to

4

judgment as a matter of law.  Fed.R.C.P. 56(c).  It is not the responsibility of the trial court to resolve disputed issues of fact, but to determine whether there are any factual issues to be tried.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).  For a dispute to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 248.  If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A. **ALLSTATE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE OF THE MOLD EXCLUSION IN THE APPLICABLE ALLSTATE HOMEOWNERS POLICY AND THERE IS NO EVIDENCE TO SHOW THAT ANY PIPE LEAKAGE WAS SUDDEN AND ACCIDENTAL.**

1. **Policy Language at Issue.**

The Allstate Policy at issue provides for certain losses to the Plaintiff's residence and other structures as follows:

> We will cover **sudden and accidental** direct physical loss to property described in Coverage

5

A—Dwelling Protection and Coverage B—
Other Structures Protection **except as limited
or excluded in this policy**.

*See* Homeowners Policy at 6 (emphasis added).

Furthermore, the Homeowners Policy specifically excludes losses

consisting of or caused by mold:

> In addition, [Allstate does] not cover loss
> consisting of or caused by any of the following:
> 13.    a) wear and tear, aging, marring, scratching,
>        deterioration, inherent vice, or latent
> defect;
> b) mechanical breakdown;
> c) growth of trees, shrubs, plants or lawns
>    whether or not such growth is about
>    or below the ground;
> d) rust or other corrosion, **mold**, wet or
> dry rot;
> e) smog, smoke from the manufacturing of
>    any controlled substance, agricultural
>    smudging and industrial operations;
> f) settling, cracking, shrinking, bulging or
>    expansion of pavements, patios,
>    foundations, walls, floors, roofs or
>    ceilings;
> g) insects, rodents, birds, or domestic
> animals.

> We do not cover the breakage of
> glass or safety glazing materials
> caused by birds; or
> h) seizure by government authority.
>
> .      .      .
>
> 16. Seepage, meaning continuous or
>       repeated seepage or leakage over a
>       period of weeks, months, or years, of
>       water, steam or fuel:
>       a. from a plumbing, heating, air
>          conditioning or automatic fire
>          protection system or from within a
>          domestic appliance; or
>       b. from, within or around any
>          plumbing fixtures, including, but not
>          limited to shower stalls, shower
>          baths, tub installations, sinks or
>          other fixtures designed for the use
>          of water or steam.

*Id.* at 7, 8 (emphasis added).

## 2. Law

An insurance policy is a contract.  The standard of review for such a

contract has been previously determined.

> The standards to be applied in reviewing such a contract are
> well settled. First, the words included in the instrument must be
> given their ordinary meaning.  Second, ambiguous terms in an
> insurance policy should be construed against the insurer.
> Third, a term is ambiguous only "if reasonably intelligent men

on considering it in the context of the entire policy would honestly differ as to its meaning." Fourth, the parties true intent must be determined not only from the language but from all the surrounding circumstances.

*United Services Auto. Ass'n v. Elitzky*, 517 A.2d 982, 986 (Pa.Super. 1986) (citations omitted) *(*quoting *Erie Ins. Exchange v. Transamerica Ins. Co.,* 507 A.2d 389, (Pa.Super. 1984)).

### 3. Analysis

Given the foregoing strictures that confine this analysis, Allstate has no duty to provide coverage because any losses consisting of or caused by mold, when read in light of the plain and clear meaning of the above-quoted Homeowners Policy, are excluded from coverage. Furthermore, nothing in the Homeowners Policy is ambiguous nor is there a question of intent of the policy. The Homeowners Policy specifically affords coverage unless there is a specific exclusion. Here, there is a specific mold exclusion. Allstate Policy at 7 (*See* "Losses We Do Not Cover Under Coverages A and B" on page 7, at number 13.d). By Plaintiffs' own admissions, the only alleged cause of their injuries is the presence of mold at their 354 Timber Road residence. (Karen Marrone N.T. at 16-17; Jack Marrone N.T. at 23).

8

Allstate contends the mold infestation is not covered because of the specific and unambiguous exclusion delineated in the Homeowners Policy. *See United Services Auto. Ass'n v. Elitzky, supra.* The Record is void of any evidence to the contrary and as such there is no genuine issue of material fact.

Furthermore, the plaintiffs cannot show that there is anything more than a metaphysical doubt as to whether the mold condition in their home was caused by leaking pipes because the only indication that there was an ongoing problem with the pipes in the basement ceiling is found in Plaintiffs' expert report that discusses "small pipe leaks." See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Even assuming that Plaintiffs had a leaking pipe, any loss caused by it is clearly excluded under the Homeowners Policy. Again the policy language is free from ambiguity and the specific exclusion at Paragraph 16, as cited above, clearly excludes coverage for leaking pipes.

**B.    ALLSTATE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE IT DID NOT ACT IN BAD FAITH IN HANDLING THE PLAINTIFFS' CLAIM?**

"The elements of the statutory cause of action for bad faith are: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis." *Booze v. Allstate Ins. Co.*, 750 A.2d 877, 880 (Pa.Super. 2000)(citing *Terlesky v. Prudential Property and Casualty Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688 (1994)).  Moreover:

> The term bad faith has been defined by this Court as follows when referring to insurance:
>
>> Insurance. "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.
>
> *MGA Insurance Company v. Bakos*, 699 A.2d 751, 754 (Pa.Super. 1997).
>
>> "A recovery for bad faith requires clear and convincing evidence of bad faith, rather than mere insinuation, and a showing by the insured that the insurer did not have a

> reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Id*. at 754.  "When evaluating bad faith under section 8371, a trial court may look to (1) other cases construing the statute and the law of bad faith in general, (2) the plain meaning of the terms in the statute, and/or (3) other statutes addressing the same or similar subjects." *Id*. at 755.

Morrison v. Mountain Laurel Assurance Co., 748 A.2d 689, 691-692

(Pa.Super. 2000).

In the case at bar, on August 10, 2000, Allstate adjuster Larry Miller inspected the residence and confirmed the Plaintiffs concerns that mold had developed within the basement of 354 Timber Lane during the relevant time period.  (N.T. Larry Miller at 38-45).  Larry Miller's letter denying coverage for the mold, attached to the Motion for Summary Judgment at Exhibit H, illustrates that Larry Miller, acting on behalf of Allstate, had a reasonable basis to deny coverage.  That bases for denying Plaintiffs' claim were the mold exclusion and the "sudden and accidental" language clearly stated in the Homeowners Policy.  (See Exhibit H; N.T. Larry Miller at 46-47).  Plaintiffs' own admissions indicate that the injuries alleged to have been sustained were caused solely by the mold in the basement of the

11

residence. (Jack Marrone at 23). Additionally, there has been nothing else produced by Plaintiffs pointing to any other cause of their harm other than mold. And, since the Larry Miller did not see any evidence of damaged pipes, there was a proper basis to deny the claim under the "sudden and accidental" language of the Homeowners Policy. (N.T. Larry Miller at 45).

Finally, when Larry Miller inspected 354 Timber Lane on August 10, 2000, he informed Plaintiffs that the claim would not be covered under the Homeowners Policy. (N.T. Larry Miller at 30). He further informed the plaintiffs to contact a "mold mitigation contractor" because of "the potential for health issues and concerns of the nature." (N.T. Larry Miller 31-32). Miller's recommendation to Plaintiffs of having a mitigation company look at the problem is confirmed by Jack and Karen Marrone's testimony. (N.T. Jack Marrone at 26-27; N.T. Karen Marrone 18-19). Therefore, any allegation that Allstate acted in bad faith is simply not supported by the record.

The record can point to nothing else to show Allstate acted in any unreasonable manner in denying benefits.  Furthermore, since "negligence or bad judgment is not bad faith" there clearly is not issue of material fact as to whether Allstate acted in bad faith.   *MGA Insurance Company v. Bakos*, 699 A.2d at 754.

## IV.    **Conclusion**.

WHEREFORE, for all of the foregoing reasons and in light of the authority cited herein, Defendant, Allstate Insurance Company, urges this Honorable Court to enter Summary Judgment in its favor and dismiss it from the within action.

NEALON & GOVER, P.C.

By: _____
James G. Nealon, III, Esquire
I.D. #46,457
2411 North Front Street
Harrisburg, PA  17110
717/232-9900

Date: _5-16-03_

13

# CERTIFICATE OF SERVICE

**AND NOW**, this ___16___ day of May, 2003, I hereby certify that I have

served the foregoing BRIEF IN SUPPORT OF MOTION FOR SUMMARY

JUDGMENT on the following by depositing a true and correct copy of same

in the United States mail, postage prepaid, addressed to:

Gianni Floro, Esquire
TARASI, TARASI & FISHMAN, P.C.
510 Third Avenue
Pittsburgh, PA  15219

John Flounlacker, Esquire
THOMAS, THOMAS & HAFER, LLP
305 North Front Street
Harrisburg, PA  17101

Edward A. Monsky, Esquire
FINE, WYATT & CAREY, P.C.
425 Spruce Street
P.O. Box 590
Scranton, PA  18501-0590

Jennifer L. Murphy, Esquire
DUANE, MORRIS & HECKSHER, LLP
305 North Front Street, 5th Floor
Harrisburg, PA  17101

Joel D. Gusky, Esquire
1835 Market Street
29th Floor
Philadelphia, PA  19103

_____
James G. Nealon, III, Esquire