# ORIGINAL 2-6 ct

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

JACK MARRONE, husband, KAREN     :
MARRONE, wife, both individually and  :
in their capacity as parents and guardians  :
for VIDA MARRONE, a minor, and  :
MATTHEW ADAM MARRONE,     :
                          :
        Plaintiffs,          :
                          :
        vs.              :
                          :
ALLSTATE INSURANCE COMPANY,  :
LINDA M. EDLEMAN, FRED SCHAFER, :
MT. GRETNA REALTY, and HOUSE  :
MASTERS,            :
                          :
        Defendants.      :

Civil Action No.:  1:CV-01-0773

**FILED**
HARRISBURG, PA

**MAY 3 0 2003**

MARY E. D'ANDREA, CLERK
(U.S. District Judge Yvette Kane)
Per _____

**JURY TRIAL DEMANDED**

---

## PLAINTIFFS' RESPONSE TO THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT ALLSTATE INSURANCE COMPANY

AND Now come the Plaintiffs, by and through their counsel of record, Tarasi, Tarasi & Fishman, P.C., Louis M. Tarasi, Jr., Esquire, and Gianni Floro, Esquire, and hereby file this Plaintiffs' Response to the Motion for Summary Judgment of Defendant Allstate Insurance Company, and in support thereof set forth the following:

1.    Admitted.

2.    The Plaintiffs incorporate by reference hereto as if set forth at length Exhibits 1-14 per the "List of Exhibits for Plaintiffs' Response to the (Renewed)

Motions for Summary Judgment of Defendants, Allstate Insurance Company, Linda

M. Edleman, Fred Schafer, Mt. Gretna Realty, and Housemaster" all filed with the

Clerk and in opposition to the several Defendants' motions for summary judgment.

3.      Admitted in part and denied in part, it is admitted this Honorable Court

entered an Order of Court of January 14, 2003; however, pursuant to F.R.C.P. 56 (c),

the party opposing any motion for summary judgment may serve Affidavits opposing

said motion; therefore, it is denied that as framed by this Defendant that the

discovery material it references encompasses the record before this Honorable Court

for review.

4.      Denied.  By way of further response, the underlying facts reveal that

mold was present in the subject home throughout August of 1999 to the present.

(Depo. of Karen Marrone at p. 69, lns. 16 - p. 70, ln. 17; Affidavit of Tom Moore at

Ex. 2; Affidavit of Robert Pfromm at Ex. 2)  The Plaintiffs were therefore exposed to

said mold at various times, depending on the particular Plaintiff, throughout August

of 1999 to October 14, 2000.  (Depo. of Karen Marrone at p. 162, lns. 10-24)

5.      Admitted.

6.      Admitted.  By way of further response and without waiver of the

foregoing, the Allstate application noted by moving Defendant is silent on whether

or not Ms. Zern inspected the home, although it clearly requires that an option be

selected on the form by the Producer's or Agent's signature of the application.

(Depo. of Miller at Ex. 6)  The evidence establishes that an Allstate agent inspected the house including the basement before an insurance binder was issued.  This agent had to see the water stains and the black mold that the Marrones saw but said nothing to the Marrones and wrote the policy and issued a binder to the Marrones.

7.     Admitted in part and denied in part.  It is admitted that the Marrones went through an application process for their home insurance, but it is denied as suggested that the application was all that was required for the issuance of insurance by Allstate, it having had one of its representatives inspect the premises prior to issuing a home insurance policy to the Marrones.  (Depo. of Karen Marrone p. 11, ln. 14 - p. 16, ln. 6)  Of more importance is the fact that the Allstate application noted by moving Defendant above is silent on whether or not Ms. Zern inspected the home, although it clearly requires that an option be selected on the form by the Producer's or Agent's signature of the application.  (Depo. of Miller at Ex. 6)  Therefore, it is averred that a reasonable inference can be drawn that Allstate required that an inspection be conducted of the Plaintiffs' home prior to the issuance of a policy of insurance, which Allstate accomplished.  Allstate therefore failed to inform the Marrones that the "black spot" in their basement was mold and that this mold was of concern.  When the Plaintiffs met with their home inspector Charles E. Bertoud, Jr. (hereinafter, "Bertoud"), they pointed out an area in the unfinished portion of the basement which they were unsure as to what the "black spot" upon the peg board

3

was. (Depo. of Karen Marrone at p. 32, lns. 14-21; p. 58, ln. 23 - p. 60, ln. 25; p. 65, ln. 14 - p. 66, ln. 24; p. 69, ln. 16 - p. 71, ln. 14; p. 73, ln. 24 - p. 75, ln. 1; p. 82 lns. 2-9; Depo. of Jack Marrone at p. 76, ln. 24 - p. 77, ln. 7; p. 204, ln. 22 - p. 205, ln. 5; p. 207, lns. 2-7; Depo. of Vida Marrone at p. 33, ln. 3 - p. 34, ln. 5; p. 35, ln. 24 - p. 36, ln. 3; p. 61, ln. 19 - p. 62, ln. 13; Depo. of Matthew Marrone at p. 56, ln. 11 - p. 57, ln.1; p. 87, ln. 10 - p. 89, ln. 11) The Marrones later learned that the "black spot" was a fungus identified as Stachybotrys, which Robert Pfromm recommended that Marrones not occupy the basement until it was eliminated or reduced. (Affidavit of Robert Pfromm at Ex. 2, report of October 15, 2000, pp. 5-6) Mr. Bertoud testified that such a "black spot" would be indicative of mold. (Depo. of Bertoud at p. 46, ln. 23 - p. 47, ln. 21; Depo. of Bertoud at Ex. 10) Mr. Bertoud also testified, with what little recollection he had that he did observe the "black spot," but that he believed it to be a small amount, and said he would have mentioned it to the Marrones. (Depo. of Bertoud at p. 52, ln. 11 - p. 53, ln. 3)

8.      Admitted.

9.      Admitted.

10.     Admitted in part and denied in part. It is admitted that after the Plaintiffs return from their trip that they discovered the mold infestation or "explosion" as it has been termed. It is denied that "Plaintiffs allegedly discovered mold had infiltrated their basement," when Allstate's own inspector observed the

4

conditions and described it as a "major mold and mildew problem." (Depo. of Miller

p. 29, ln. 24 - p. 30, ln. 24; Ex. 2, p. 12)

11.    Denied.  By way of further response, a claim was filed with Allstate

because when the Marrones returned from their trip they found that they had a

basement full of mold and no idea how it got there.  (Depo. of Jack Marrone at p. 23,

ln. 23 - p. 26, ln. 25; Depo. of Karen Marrone at p. 17, ln. 8 - p. 26, ln. 23)

Nevertheless, the Marrones were contacted by their insurer on August 8, 2000, the

day after they reported their loss and the Allstate employee that took the call, Lauren

Hittle, noted that:

> Water has caused damage to his basement floor and ceiling.  He is not
> sure where problem is originating but it appears there is a pipe inside
> the basement where the water came from.  Floor is damp and panels are
> buckled.

(Depo. of Miller at Ex. 2, p. 6; Depo. of Miller at p. 25, ln. 8 - p. 26, ln. 22)  On

August 7, 2000, when the Marrones reported the claim, a narrative was generated by

that Allstate employee, Ms. Hittle, which listed the following:

| 080700 | HI4 | 5 | OTHER DAMAGE TO HOME: | YES |
|---|---|---|---|---|
| | | 6 | OTHER DAMAGE TO PROP: | NO |
| | | 7 | OTHER DAMAGES TO PROP: | YES |
| | | 8 | CEILING DAMAGE: | YES |
| | | 8A | ROOMS W/CEIL DMG: | BASEMENT |
| | | 9 | WALLS DAMAGED: | YES |
| | | 10 | FLOOR DMG: | YES |
| | | 10A | ROOMS W/ FLOOR DMG: | BASEMENT |
| | | 10B | DMGD FLOOR TYPES: | CARPET |
| | | 11 | CONTRACTOR SELECTED: | NO |

```
12   DAMAGED CONTENTS?:              YES
13   DMGD CONTENTS OWNED
     BY INSURED:                     YES
-BUMPED UP CLAIM LEVEL PER INSD IS
OLDER AND THERE IS MOLD ALL OVER
BASEMENT
```

(Depo. of Miller at Ex. 2, p. 3, "Loss Report - Diary" generated August 7, 2000)

12.     Admitted.  By way of further response, the letter wrongfully denying coverage speaks for itself.

13.     Admitted.

14.     Admitted.  It is admitted that the policy says what its says, by way of further response, the policy speaks for itself.

15.     Admitted in part and denied in part.  It is admitted that the policy says what it says; however, it is denied as a conclusion of law that the referenced text provides "specific" exclusion when no such  "specific exclusions" and no such language ("specific") appears on the document itself.  (Depo. of Larry Miller at Ex. 3, p. 7, ¶ 13)

16.     Admitted in part and denied in part.  It is admitted that the mold subsequently caused some of the Plaintiffs' alleged injuries, the mold infestation was the proximate or primary cause of the Plaintiffs' economic damages and personal injuries, their expert Tom Moore, the Plaintiffs expert regarding home inspections found that there was evidence of leaking pipes in the ceiling of the

basement. This leak as well as the concealed problem were the cause of the mold explosion in the Marrone house. (Affidavit of Tom Moore at Ex. 2) Such evidence indicates the mold was to blame for this condition, a sudden and accidental release from a leaking pipe caused an additional water and mold problem at this home. (Affidavit of Tom Moore at Ex. 2;) Larry Miller testified that Allstate received a statement from the Marrones on August 8, 2000, where an Allstate employee, Lauren Hittle, noted that "[w]ater has caused damage to his basement floor and ceiling. He is not sure where the problem is originating but it appears there is a pipe inside the basement where the water came from. Floor is damp and panels are buckled." (Depo. of Miller at p. 25, ln. 4 - p. 26, ln. 20; Ex. 2 at p. 6) Although Mr. Miller said he did not find a broken pipe, **he never examined above the ceiling for the leaking pipe.** (Depo. of Miller at p. 26, lns. 16-20; p. 61, ln. 3 - p. 63, ln. 4) He was able to make a coverage determination at that time, **without examining the above the ceiling where the pipe was leaking**, blaming the situation on the obvious mold that had resulted from the increased relative humidity due to the pipe leaking, and not one of the primary causes the leaking pipe, which also caused the mold. (Depo. of Miller at p. 30, ln. 8 -p. 31, ln. 9) Moreover, such a determination demonstrated Allstate's bad faith in not properly investigating the claim, *i.e.*, how could the loss not be termed "sudden and accidental" if it occurred within approximately one (1) week. (Depo. of Miller

7

at p. 36, lns. 2-18; Ex. 2, pp. 16-17)  Allstate knew prior to Mr. Miller's investigation a possible source of the leaking water.  (Depo. of Miller at p. 44, ln. 2 - p. 45, ln. 8; Ex. 2, p. 22)  Even more egregious was the fact that the photograph of the ceiling, taken after the Marrones returned from their trip in July, revealed that black lines indicative of a leak and mold from the leak, and this could be seen where the pipes ran through the ceiling.  (Affidavit of Tom Moore at Ex. 2 at p.2-3; Ex. 3, p. 2 (top left photograph); Ex. 4, photographs 43-46 and 52; Affidavit of Robert Pfromm at Ex. 2, p. 2 of the September 12, 2002 report and p. 1 of the October 15, 2000 report; Deposition of Charles E. Bertoud, Jr. (hereinafter, "Bertoud") at Ex. 12A (top left photograph))  An action for bad faith may arise from an insurer's inadequate investigations.  O'Donnell v. Allstate Insurance Co., 734 A.2d 901 (Pa. Super. 1999)

Proximate cause has been defined as that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces injury, and without which the result would not have occurred.  Without water, in the form of a high relative humidity the mold would not have flourished as it did. (Affidavit of Robert Pfromm at Ex. 2, pp. 1-2 of the report of September 12, 2002 and pp. 1-2 and 6 of the report of October 15, 2000)  In the case, *sub judice*, but for the leaking pipe in the basement of the Marrone's basement, the mold infestation would not have occurred, and according to Tom Moore, the Plaintiffs

expert regarding home inspections, he found that there was evidence of leaking

pipes in the ceiling of the basement.  (Affidavit of Tom Moore at Ex. 2)  Such

evidence indicates the mold was to blame for this latent condition and caused by a

sudden and accidental release from a leaking pipe.  (Affidavit of Tom Moore at

Ex. 2; Affidavit of Robert Pfromm at Ex. 2)

   The Plaintiff has pointed-out and indicated in the record, also from which it

can be inferred, that the above referenced behavior comports with that conduct

found to be "bad faith" pursuant to 42 Pa.C.S.A. § 8371.  In <u>Dercoli v.</u>

<u>Pennsylvania National Mutual Insurance Company</u>, the Supreme Court of

Pennsylvania held that:

> The duty of an insurance company to deal with the insured fairly and
> in good faith includes the duty of full and complete disclosure as to
> all the benefits and every coverage that is provided by the applicable
> policy or policies along with all requirements, including any time
> limitations for making a claim.

520 Pa. 471, 478, 554 A.2d 906, 909 (1989), *citing*, <u>Gatlin v. Tennessee Farmers</u>

<u>Mutual Insurance Co.</u>, 741 S.W.2d 324 (Tenn. 1987); <u>Sarchett v. Blue Shield of</u>

<u>California</u>, 43 Cal.3d 1, 233 Cal.Rptr. 76, 729 P.2d 267 (1987).  Did Mr. Miller

neglect to investigate the leaking pipe at the time the claim was made for fear

Allstate would have to pay the loss, and that he knew he would have a duty to

explain the possibility of coverage to the Marrones, which he failed and neglected

to do.  Moreover, in that case the Supreme Court of Pennsylvania earlier had

9

recognized its own long standing rule that:

> [T]he utmost fair dealing should characterize the transactions between an insurance company and the insured.

520 Pa. 471, 477, 554 A.2d 906, 909 (1989), *quoting*, Fedas v. Insurance Company of the State of Pennsylvania, 300 Pa. 555, 151 A. 285 (1930).

The Supreme Court of Pennsylvania's pronouncement in Dercoli regarding an insurer's duty toward its insured was followed by this statement:

> This is especially true where the insurer undertakes to advise and counsel the insured in the insured's claim for benefits.

520 Pa. 471, 478, 554 A.2d 906, 909 (1989). Thus, even if an insured is represented by counsel, the insurer still is duty bound "to deal with the insured fairly and in good faith includes the duty of full and complete disclosure as to all the benefits and every coverage that is provided by the applicable policy or policies along with all requirements, including any time limitations for making a claim." 520 Pa. 471, 478, 554 A.2d 906, 909 (1989), *citing*, Gatlin v. Tennessee Farmers Mutual Insurance Co., 741 S.W.2d 324 (Tenn. 1987); Sarchett v. Blue Shield of California, 43 Cal.3d 1, 233 Cal.Rptr. 76, 729 P.2d 267 (1987).

In Tonkovic v. State Farm Mutual Automobile Insurance Company, the Supreme Court of Pennsylvania set forth clearly when dealing with its insured, if there is any question of fairness the insurance company must explain the policy to the insured clearly and fairly. 513 Pa. 445, 452-453, 521 A.2d 920, 924 (1987)

(*See also*, <u>Worldwide Underwriters Insurance Company v. Brady</u>, 973 F.2d 192, 194-195 (3d. Cir. 1992)  Here as in <u>Worldwide</u> there is ambiguity in the policy.

To determine whether a claim potentially comes within coverage of the policy, the scope of the coverage must first be ascertained.  <u>Sclabassi v. Nationwide Mutual Fire. Ins. Co.</u>, 789 A.2d 699, 702 (Pa. Super. 2001).  Any ambiguity in an insurance policy should be construed in favor of the insured and against the insurer.  <u>Redevelopment Authority of Cambria County v. International Ins. Co.</u>, 454 Pa. Super. 374, 388, 685 A.2d 581, 588 (1996); <u>Tonkovic</u>, 513 Pa. at 452-453, 521 A.2d at 924 (As there is a manifest inequality of bargaining power between an insured and insurer, a court may deviate from the plain language of an insurance contract).  Moreover, the occurrence took place within one week, the policy exclusion as written states **"over a period of weeks."**  (*Emphasis supplied*).

17.    Denied as stated, while the physical manifestations of injuries caused by the Plaintiffs' toxic mold exposures where certainly caused by mold; however, the proximate cause of their injuries were the collective acts of all the named Defendants.

18.    Denied as stated, the testimony of Jack Marrone speaks for itself, and while the physical manifestations of injuries caused by the Plaintiffs' toxic mold exposures where certainly caused by mold; however, the proximate cause of their injuries were the collective acts of all the named Defendants.

11

19.    Denied as stated in part and admitted in part, the testimony of the Marrone family speaks for itself, and while the physical manifestations of injuries caused by the Plaintiffs' toxic mold exposures where certainly caused by mold; however, the proximate cause of their injuries were the collective acts of all the named Defendants.  It is admitted that there is no other cause for the Plaintiffs' health problems other than their mold exposure, and that the record indicates this admitted fact by this Defendant.

20.    Denied as a conclusion of law for which no response is required.  By way of further response, and insofar as one is required, it is denied that the mold damage is excluded from coverage under the home policy, especially in light of the opinion of the Plaintiffs expert regarding home inspections who found that there was evidence of leaking pipes in the ceiling of the basement a cause for the mold.  Such evidence indicates that more than one thing caused mold that created this condition, water problems existed at this home as well in the form of water penetration from the outside and leaking pipes from the inside both causing the mold problem.  Tom Moore, the Plaintiffs expert regarding home inspections found that there was evidence of leaking pipes in the ceiling of the basement. (Affidavit of Tom Moore at Ex. 2)  Such evidence indicates that more than one cause for the mold, a sudden and accidental release from a leaking pipe caused an additional water problem at this home, was causing the mold problem.  (Affidavit

12

of Tom Moore at Ex. 2;)  Larry Miller testified that Allstate received a statement

from the Marrones on August 8, 2000, where an Allstate employee, Lauren Hittle,

noted that "[w]ater has caused damage to his basement floor and ceiling.  He is not

sure where the problem is originating but it appears there is a pipe inside the

basement where the water came from.  Floor is damp and panels are buckled."

(Depo. of Miller at p. 25, ln. 4 - p. 26, ln. 20; Ex. 2 at p. 6)  Although Mr. Miller

said he did not find a broken pipe, **he never examined above the ceiling for the

leaking pipe.**  (Depo. of Miller at p. 26, lns. 16-20; p. 61, ln. 3 - p. 63, ln. 4)  He

was able to make a coverage determination at that time, **without examining the

above the ceiling where the pipe was leaking**, blaming the situation on the

obvious mold that had resulted from the increased relative humidity due to the

pipe leaking as well as the concealed water problem both causing the mold

problem.  (Depo. of Miller at p. 30, ln. 8 -p. 31, ln. 9)  Moreover, such a

determination demonstrated Allstate's bad faith in not properly investigating the

claim, *i.e.*, how could the loss not be termed "sudden and accidental" if it occurred

within approximately one (1) week.  (Depo. of Miller at p. 36, lns. 2-18; Ex. 2, pp.

16-17)  Allstate knew prior to Mr. Miller's investigation a possible source of the

leaking water.  (Depo. of Miller at p. 44, ln. 2 - p. 45, ln. 8; Ex. 2, p. 22)  Even

more egregious was the fact that the photograph of the ceiling, taken after the

Marrones returned from their trip in July, revealed that black lines on the ceiling

could be seen where the pipes ran through the ceiling. The black lines again

showing mold infestation. (Affidavit of Tom Moore at Ex. 2 at p.2-3; Ex. 3, p. 2

(top left photograph); Ex. 4, photographs 43-46 and 52; Affidavit of Robert

Pfromm at Ex. 2, p. 2 of the September 12, 2002 report and p. 1 of the October 15,

2000 report; Deposition of Charles E. Bertoud, Jr. (hereinafter, "Bertoud") at Ex.

12A (top left photograph))

In addition, the term "consisting of" is not a defined term within the policy,

and therefore it should be determined to be ambiguous. As detailed above, the

mold was not the first problem to have occurred at the Marrone's home, it was the

pipe that leaked in their ceiling that caused their problems, *i.e.*, the sudden and

accidental release of water from their pipes above the ceiling causing the mold as

well as the concealed water problem. It is well settled that this District Court must

consider all the evidence, and the inferences from it, in the light most favorable to

the non-moving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994

(1962); Tigg v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987); Baker v.

Lukens Steel Co., 793 F.2d 509, 511 (3d Cir. 1986). If a conflict arises between

the evidence presented by both sides, the District Court must accept as true the

allegations of the non-moving party. Lind, 135 F.Supp.2d at 619, *citing*,

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986).

These determinations are questions of fact, and therefore, are questions for a jury.

<u>Fidelity Bank and Tiernan</u>, 249 Pa. Super. 216, 234, 375 A.2d 1320, 1330 (1977).

Lastly, on the aforementioned element of reliability, whether or not said reliance was justifiable is a question for the jury to be based on all of the facts and permissible inferences which may be drawn from the evidence presented at trial. <u>Myers v. McHenry</u>, 398 Pa. Super. 100, 109, 580 A.2d 860, 865 (1990).  Because the Marrones have raised genuine issues of material fact, which need to be determined by a jury, dismissal of this action against the Plaintiffs would be inappropriate.

21.    Denied as stated, the Plaintiffs' Amended Complaint also provides at paragraphs 37-40, allegations regarding their injuries.

22.    Denied.  The inspector who was sent out to the Plaintiffs home should have advised the Plaintiffs of the potential for adverse health effects of mold exposure, Allstate having known of such claims previously; Mr. Miller himself testified that he knew of the potential health hazards of exposure to mold, but the Plaintiffs claim that he failed to warn the Plaintiffs of this fact, Mr. Miller stated otherwise.  (Depo. of Larry Miller at p. 31, ln. 21 - p. 32, ln. 7; p. 56, lns. 17-25; Pls.' Ans. and Objs. to Ints. Filed on Behalf of Def. Housemaster at Int. 9 ("At no time did he state that there was a mold problem."))  There was no reasonable basis to deny coverage in that Allstate had one of its agents inspect the property prior to issuing an insurance binder, who viewed the "blacl spot" and did not warn the

15

Marrones of any dangers, nor explain that they would assert that no coverage was available for this type of loss at a later date. Moreover, Mr. Miller did not even inspect where the pipes were in the ceiling, although he was advised of this by Mr. Marrone, and it was clearly visible.

23.    Denied as a conclusion of law for which no response is required. By way of further and without waiver of the foregoing, Allstate acted in bad faith and breached its duties to these Plaintiffs at the time when they were most in need by failing to properly investigate the loss, failing to provide coverage, and by asserting clarity of an otherwise ambiguous set of policy provisions regarding coverage.

24.    Denied as a conclusion of law for which no response is required. By way of further response and without waiver of the foregoing, the inspector who was sent out to the Plaintiffs home should have advised the Plaintiffs of the potential for adverse health effects of mold exposure, Allstate having known of such claims previously; Mr. Miller himself testified that he knew of the potential health hazards of exposure to mold, but the Plaintiffs claim that he failed to warn the Plaintiffs of this fact, Mr. Miller stated otherwise. (Depo. of Larry Miller at p. 31, ln. 21 - p. 32, ln. 7; p. 56, lns. 17-25; Pls.' Ans. and Objs. to Ints. Filed on Behalf of Def. Housemaster at Int. 9 ("At no time did he state that there was a mold problem."))

25.     Denied.  Genuine issues of material fact exist that preclude the entry
of default judgment on behalf of this Defendant.

Wherefore, the Plaintiffs respectfully request that this District Court enter
an Order Denying the Motion for Summary Judgment of the Defendant Allstate
Insurance Company.

Respectfully submitted,

TARASI, TARASI & FISHMAN, P.C.

By:_____
Gianni Floro, Esquire
PA ID No. 85837
Attorney for the Plaintiffs
510 Third Avenue
Pittsburgh, PA  15219
P:  (412) 391-7135
F:  (412) 471-2673