# ORIGINAL

## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

------------------------------------------------------------------------------------------------

JACK MARRONE, husband, KAREN     :
MARRONE, wife, both individually and  :
in their capacity as parents and guardians  :
for VIDA MARRONE, a minor, and    :
MATTHEW ADAM MARRONE,      :
                           :
        Plaintiffs,         :
                           :
     vs.                  :
                           :
ALLSTATE INSURANCE COMPANY,  :
LINDA M. EDLEMAN, FRED SCHAFER, :
MT. GRETNA REALTY, and HOUSE   :
MASTERS,               :
                           :
        Defendants.      :

Civil Action No.: 1:CV-01-0773

**FILED**
HARRISBURG, PA

**MAY 3 0 2003**

MARY E. D'ANDREA, CLERK
Per _____
(U.S. District Judge Yvette Kane)

**JURY TRIAL DEMANDED**

------------------------------------------------------------------------------------------------

## PLAINTIFFS' BRIEF IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT ALLSTATE INSURANCE COMPANY

AND Now come the Plaintiffs, by and through their counsel of record, Tarasi,

Tarasi & Fishman, P.C., Louis M. Tarasi, Jr., Esquire, and Gianni Floro, Esquire, and

hereby file this Plaintiffs' Brief in Opposition to the Motion for Summary Judgment

of Defendant Allstate Insurance Company, and in support thereof set forth the

following:

## I.    COUNTER STATEMENT OF THE FACTS:

Non-moving Plaintiffs incorporate by reference, as if set forth fully herein,

their "Plaintiffs' Counter Statement of Undisputed Material Facts Regarding the

Motion for Summary Judgment of Defendant Allstate."

## III.  ARGUMENT:

### A.  <u>Plaintiffs Have Established a Valid and Covered Claim Under Their Insurance Policy</u>

In their Amended Complaint the Plaintiffs made the following allegations

against the moving Defendants (hereinafter, "Allstate") and in support of their claim

for Breach of Contract and Bad Faith:

A.  Breach of Contract:

50.  The Plaintiffs hereby incorporate paragraphs 1 through 49 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

51.  The Plaintiffs, Jack and Karen Marrone, contracted with Defendant Allstate Insurance Company to provide homeowners insurance coverage for the Plaintiffs' property which included an express or implied requirement for Defendant Allstate to fairly, in good faith, and with the exercise of reasonable care, without bad faith, to adjust covered claims by Plaintiffs.

52.  Defendant Allstate, through its agents, representatives, and employees breached the contract by performing the most simple of inspections, then coming to the immediate determination that the mold infestation of the house at issue as a pre-existing condition, despite the fact that there was nothing which would indicate that Plaintiffs were aware of any alleged pre-existing problem.

53.  Defendant Allstate failed to properly evaluate and pay Plaintiffs' claim within a reasonable period of time, which constituted a breach of its contract with the Plaintiffs, to properly adjust claims by the Plaintiffs.

54.  Defendant Allstate also failed to warn the Plaintiffs of the

potential danger associated with mold.

55.   Defendant Allstate failed to properly apply the terms and conditions of the policy.

56.   As a direct and proximate result of Defendant Allstate's breach of contract, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in a amount in excess of One Hundred Thousand ($100,000.00) Dollars.

B.   Bad Faith:

44.   The Plaintiffs hereby incorporate paragraphs 1 through 43 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

45.   Defendant Allstate Insurance Company failed to handle the Plaintiffs' claims in a reasonable manner by failing to perform a complete and detailed investigation as to the cause of said fungal toxins.

46.   Defendant Allstate Insurance Company violated the provisions of 42 Pa.C.S.A. §8371; the Unfair Insurance Practices Act, 40 P.S. §1171.1 et al., and the Unfair Claims Settlement Practices, Title 31, Subsection 146.1 et al.

47.   An action for bad faith may arise from an insurer's inadequate investigations. O'Donnell v. Allstate Insurance Co., 734 A.2d 901 (Pa. Super. 1999).

48.   Defendant Allstate Insurance Company also acted in bad faith by failing to inform the Plaintiffs of possible health risks associated with exposure to fungal toxins, which the Defendant was or should have been aware of from such claims which were known to Defendant Allstate previously.

49.   In addition to all other monetary demands heretofore made, in order to punish Defendant Allstate Insurance Company for their

bad faith and to deter other insurers from engaging in similar activities, and to compensate Plaintiffs for the complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars together with attorneys' fees, interests, costs, and punitive damages in excess of One Hundred Thousand ($100,000.00) Dollars.

Allstate contends that the claim reported by the Marrones is excluded under what they term a "specific mold exclusion," and under "sudden and accidental requirement." (Br. of Def., Allstate Inc. Co., in Supp. of its Mtn. for Summ. J. at p. 5) Nevertheless, under the terms of the insurance policy at issue the Marrones did suffer from a covered loss that was neither properly investigated or considered by Allstate. Moreover, it outrageous that Allstate would contend that an occurrence that took place within the span of one (1) week, could not fall within the "sudden and accidental requirement," especially when the policy language itself says "leakage **over a period of weeks**." (Depo. of Miller at Ex. 3 "Homeowners Policy" at pp. 7-8) These purported exclusions are ambiguous and do not apply to the Marrones claim.

Prior to the issuance of the Marrone's insurance policy, Allstate inspected the home, including the basement, and did not inform them that the "black spot," as we now know as mold, was not going to be covered by the insurance policy it was issuing to the Marrones. The underlying facts reveal that mold was present in the subject home throughout August of 1999 to the present. (Depo. of Karen Marrone at

p. 69, lns. 16 - p. 70, ln. 17; Affidavit of Tom Moore at Ex. 2; Affidavit of Robert

Pfromm at Ex. 2) The Plaintiffs were therefore exposed to said mold at various

times, depending on the particular Plaintiff, throughout August of 1999 to October

14, 2000. (Depo. of Karen Marrone at p. 162, lns. 10-24) The Allstate application

noted by moving Defendant is silent on whether or not Ms. Zern inspected the home,

although it clearly requires that an option be selected on the form by the Producer's

or Agent's signature of the application. (Depo. of Miller at Ex. 6) The Marrones

went through an application process for their home insurance, but it is denied as

suggested that the application was all that was required for the issuance of insurance

by Allstate, it having had one of its representatives inspect the premises prior to

issuing a home insurance policy to the Marrones. At no time did Lisa Bernieri, an

Allstate employee, or her employee, Ellen Zern, inform the Marrones of a possible

mold problem although they came to inspect the property and saw the same water

stains and the black mold spot the Marrones saw but instead wrote a binder of

insurance for the Marrones. (Depo. of Karen Marrone p. 11, ln. 14 - p. 16, ln. 6) Of

more importance is the fact that the Allstate application noted by moving Defendant

above is silent on whether or not Ms. Zern inspected the home, although it clearly

requires that an option be selected on the form by the Producer's or Agent's signature

of the application. (Depo. of Miller at Ex. 6) At no time did Lisa Bernieri, an

Allstate employee, or her employee, Ellen Zern, inform the Marrones of a possible

5

mold problem although they came to inspect the property and saw the same water stains and the black mold spot the Marrones saw but instead wrote a binder of insurance for the Marrones. Allstate therefore failed to inform the Marrones that the "black spot" in their basement was mold and that this mold was of concern. When the Plaintiffs met with their home inspector Charles E. Bertoud, Jr. (hereinafter, "Bertoud"), they pointed out an area in the unfinished portion of the basement which they were unsure as to what the "black spot" upon the peg board was. (Depo. of Karen Marrone at p. 32, lns. 14-21; p. 58, ln. 23 - p. 60, ln. 25; p. 65, ln. 14 - p. 66, ln. 24; p. 69, ln. 16 - p. 71, ln. 14; p. 73, ln. 24 - p. 75, ln. 1; p. 82 lns. 2-9; Depo. of Jack Marrone at p. 76, ln. 24 - p. 77, ln. 7; p. 204, ln. 22 - p. 205, ln. 5; p. 207, lns. 2-7; Depo. of Vida Marrone at p. 33, ln. 3 - p. 34, ln. 5; p. 35, ln. 24 - p. 36, ln. 3; p. 61, ln. 19 - p. 62, ln. 13; Depo. of Matthew Marrone at p. 56, ln. 11 - p. 57, ln.1; p. 87, ln. 10 - p. 89, ln. 11) The Marrones later learned that the "black spot" was a fungus identified as Stachybotrys, which Robert Pfromm recommended that Marrones not occupy the basement until it was eliminated or reduced. (Affidavit of Robert Pfromm at Ex. 2, report of October 15, 2000, pp. 5-6) Mr. Bertoud testified that such a "black spot" would be indicative of mold. (Depo. of Bertoud at p. 46, ln. 23 - p. 47, ln. 21; Depo. of Bertoud at Ex. 10) Mr. Bertoud also testified, with what little recollection he had that he did observe the "black spot," but that he believed it to be a small amount, and said he would have mentioned it to the Marrones. (Depo.

6

of Bertoud at p. 52, ln. 11 - p. 53, ln. 3)  The Marrones testified that Bertoud never told them this was mold.  If he had they would not have purchased this home.

The Plaintiffs were never notified by Allstate that the "black spot" in the basement, clearly visible and apparent when Allstate conduct its pre-insurance policy issuance inspection, would not be covered under their insurance policy.  At no time did Lisa Bernieri, an Allstate employee, or her employee, Ellen Zern, inform the Marrones of a possible mold problem although they came to inspect the property and saw the same water stains and the black mold spot the Marrones saw but instead wrote a binder of insurance for the Marrones.  In <u>Tonkovic v. State Farm Mutual Automobile Insurance Company</u>, the Supreme Court of Pennsylvania set forth clearly when dealing with its insured, if there is any question of fairness the insurance company must explain the policy to the insured clearly and fairly.  513 Pa. 445, 452-453, 521 A.2d 920, 924 (1987) (*See also*, <u>Worldwide Underwriters Insurance Company v. Brady</u>, 973 F.2d 192, 194-195 (3d. Cir. 1992)  Allstate was under a duty to notify the Marrone's that the "black spot" on the wall would be interpreted by it to be a non-covered loss under the insurance policy they were issuing to them.  Allstate failed to do so, and these Plaintiffs respectfully submit that Allstate was under a duty to inform them, ahead of time that the hazard apparent in the home would be interpreted by it to be a non-covered loss under the insurance policy they were issuing to them.

7

What was even more egregious and shocking to ones conscious, was Allstate's conduct after the claim was reported by the Marrones. After returning from their week (1) long trip , the Marrones reported a claim with their insurer, Allstate, because they had a basement was wet and full of mold, and they had no idea how the water, and subsequent mold got there. (Depo. of Jack Marrone at p. 23, ln. 23 - p. 26, ln. 25; Depo. of Karen Marrone at p. 17, ln. 8 - p. 26, ln. 23) The Marrones were then contacted by their insurer on August 8, 2000, the day after they reported their loss and the Allstate employee that took the call, Lauren Hittle, noted that:

> Water has caused damage to his basement floor and ceiling. He is not sure where problem is originating but it appears there is a pipe inside the basement where the water came from. Floor is damp and panels are buckled.

(Depo. of Miller at Ex. 2, p. 6; Depo. of Miller at p. 25, ln. 8 - p. 26, ln. 22; Depo. of Miller at Ex. 2, p. 3, "Loss Report - Diary" generated August 7, 2000) Although the mold caused the Plaintiffs' alleged injuries, the mold infestation was the sole, proximate or primary cause of the Plaintiffs' economic damages and personal injuries; the Plaintiffs' expert on home inspections, Tom Moore, found that there was evidence of leaking pipes in the ceiling of the basement. (Affidavit of Tom Moore at Ex. 2) Such evidence indicates that much more than one source of the mold was to blame for this condition, **a sudden and accidental release from a leaking pipe** caused a significant and immediate water problem at this

8

home and substantially contributed to the mold problem. (Affidavit of Tom Moore at Ex. 2;) Larry Miller testified that Allstate received a statement from the Marrones on August 8, 2000, where an Allstate employee, Lauren Hittle, noted that "[w]ater has caused damage to his basement floor and ceiling. He is not sure where the problem is originating but it appears there is a pipe inside the basement where the water came from. Floor is damp and panels are buckled." (Depo. of Miller at p. 25, ln. 4 - p. 26, ln. 20; Ex. 2 at p. 6) Although Mr. Miller said he did not find a broken pipe, **he never examined above the ceiling for the leaking pipe.** (Depo. of Miller at p. 26, lns. 16-20; p. 61, ln. 3 - p. 63, ln. 4) He was able to make a coverage determination at that time, **without examining the above the ceiling where the pipe was leaking**, blaming the situation on the obvious mold that had resulted from the increased relative humidity due to the pipe leaking, and not one of the primary causes the leaking pipe which in fact was a substantial factor in causing the mold. (Depo. of Miller at p. 30, ln. 8 -p. 31, ln. 9)

Moreover, such a determination demonstrated Allstate's bad faith in not properly investigating the claim, *i.e.*, how could the loss not be termed "sudden and accidental" if it occurred within approximately one (1) week. (Depo. of Miller at p. 36, lns. 2-18; Ex. 2, pp. 16-17) Allstate knew prior to Mr. Miller's investigation a possible source of the leaking water. (Depo. of Miller at p. 44, ln. 2 - p. 45, ln. 8; Ex. 2, p. 22) Even more egregious was the fact that the photograph

of the ceiling, taken after the Marrones returned from their trip in July, revealed that black lines on the ceiling could be seen where the pipes ran through the ceiling a sure sign of mold. (Affidavit of Tom Moore at Ex. 2 at p.2-3; Ex. 3, p. 2 (top left photograph); Ex. 4, photographs 43-46 and 52; Affidavit of Robert Pfromm at Ex. 2, p. 2 of the September 12, 2002 report and p. 1 of the October 15, 2000 report; Deposition of Charles E. Bertoud, Jr. (hereinafter, "Bertoud") at Ex. 12A (top left photograph)) An action for bad faith may arise from an insurer's inadequate investigations. O'Donnell v. Allstate Insurance Co., 734 A.2d 901 (Pa. Super. 1999)

Proximate cause has been defined as that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces injury, and without which the result would not have occurred. Without water, in the form of a high relative humidity the mold would not have flourished as it did. (Affidavit of Robert Pfromm at Ex. 2, pp. 1-2 of the report of September 12, 2002 and pp. 1-2 and 6 of the report of October 15, 2000) In the case, *sub judice*, but for the leaking pipe in the basement of the Marrone's basement, the mold infestation would not have occurred with such rapidity, and according to Tom Moore, the Plaintiffs expert regarding home inspections, he found that there was evidence of leaking pipes in the ceiling of the basement. (Affidavit of Tom Moore at Ex. 2) Such evidence indicates that more than one source of the mold was to

10

blame for this condition, a sudden and accidental release from a leaking pipe caused an additional water problem at this home causing the mold explosion. (Affidavit of Tom Moore at Ex. 2; Affidavit of Robert Pfromm at Ex. 2)  For this District Court to permit the interpretation of the insurance policy that Allstate contends would allow Allstate to deny any claim where water enters a home and then subsequently cause mold or any other post-water release condition, *i.e.*, a rain storm rolls through a neighborhood and cause a tree to fall on an insured's house and the home is inundated with water, causing damages to home.  During the time between the occurrence, the sudden and accidental release of water occurs and the time the water is cleaned-up, mold occurs in the dampened portion of the home, it would be a non-covered or excluded occurence.  This District Court cannot allow such a result.  Plaintiffs submit this is a similar situation that was at issue in <u>Paris Foods Corp. v. American Casualty Co. of Reading, Pa.</u>, wherein the Court of Common Pleas of Philadelphia found that the only coverage that would inure to the plaintiff under the defendant's interpretation would be that:

> [T]he policy purchased by plaintiff confers coverage under such narrow and mysterious circumstance as to be phantasmal.

(72 D. & C.2d 673, 675 (1975).

The Plaintiff has pointed-out and indicated in the record, also from which it can be inferred, that the above referenced behavior comports with that conduct found to be "bad faith" pursuant to 42 Pa.C.S.A. § 8371.  In <u>Dercoli v.</u>

11

Pennsylvania National Mutual Insurance Company, the Supreme Court of

Pennsylvania held that:

> The duty of an insurance company to deal with the insured fairly and
> in good faith includes the duty of full and complete disclosure as to
> all the benefits and every coverage that is provided by the applicable
> policy or policies along with all requirements, including any time
> limitations for making a claim.

520 Pa. 471, 478, 554 A.2d 906, 909 (1989), *citing*, Gatlin v. Tennessee Farmers

Mutual Insurance Co., 741 S.W.2d 324 (Tenn. 1987); Sarchett v. Blue Shield of

California, 43 Cal.3d 1, 233 Cal.Rptr. 76, 729 P.2d 267 (1987).  Did Mr. Miller

neglect to investigate the leaking pipe at the time the claim was made for fear

Allstate would have to pay the loss, and that he knew he would have a duty to

explain the possibility of coverage to the Marrones, which he failed and neglected

to do.  Moreover, in that case the Supreme Court of Pennsylvania earlier had

recognized its own long standing rule that:

> [T]he utmost fair dealing should characterize the transactions between
> an insurance company and the insured.

520 Pa. 471, 477, 554 A.2d 906, 909 (1989), *quoting*, Fedas v. Insurance

Company of the State of Pennsylvania, 300 Pa. 555, 151 A. 285 (1930).

The Supreme Court of Pennsylvania's pronouncement in Dercoli regarding

an insurer's duty toward its insured was followed by this statement:

> This is especially true where the insurer undertakes to advise and
> counsel the insured in the insured's claim for benefits.

12

520 Pa. 471, 478, 554 A.2d 906, 909 (1989). Thus, even if an insured is represented by counsel, the insurer still is duty bound "to deal with the insured fairly and in good faith includes the duty of full and complete disclosure as to all the benefits and every coverage that is provided by the applicable policy or policies along with all requirements, including any time limitations for making a claim." 520 Pa. 471, 478, 554 A.2d 906, 909 (1989), *citing*, Gatlin v. Tennessee Farmers Mutual Insurance Co., 741 S.W.2d 324 (Tenn. 1987); Sarchett v. Blue Shield of California, 43 Cal.3d 1, 233 Cal.Rptr. 76, 729 P.2d 267 (1987). Thus Allstate was under a duty to inform the Marrones that the "black spot" was a hazard that would be used by Allstate to disavow liability; moreover, Allstate had a duty to properly inspect the home after the occurence, including to determine the source of the water in the Marrone's home causing the mold problem.

In Tonkovic v. State Farm Mutual Automobile Insurance Company, the Supreme Court of Pennsylvania set forth clearly when dealing with its insured, if there is any question of fairness the insurance company must explain the policy to the insured clearly and fairly. 513 Pa. 445, 452-453, 521 A.2d 920, 924 (1987) (*See also*, Worldwide Underwriters Insurance Company v. Brady, 973 F.2d 192, 194-195 (3d. Cir. 1992) Here as in Worldwide there is ambiguity in the policy.

To determine whether a claim potentially comes within coverage of the policy, the scope of the coverage must first be ascertained. Sclabassi v.

13

Nationwide Mutual Fire. Ins. Co., 789 A.2d 699, 702 (Pa. Super. 2001). Any
ambiguity in an insurance policy should be construed in favor of the insured and
against the insurer. Redevelopment Authority of Cambria County v. International
Ins. Co., 454 Pa. Super. 374, 388, 685 A.2d 581, 588 (1996); Tonkovic, 513 Pa. at
452-453, 521 A.2d at 924 (As there is a manifest inequality of bargaining power
between an insured and insurer, a court may deviate from the plain language of an
insurance contract).

In addition, the term "consisting of" is not a defined term within the policy,
and therefore it should be determined to be ambiguous. As detailed above, the
mold was not the first problem to have occurred at the Marrone's home, it was the
pipe that leaked in their ceiling that caused their problems, *i.e.*, the sudden and
accidental release of water from their pipes above the ceiling causing the mold as
well as the concealed water leakage. It is well settled that this District Court must
consider all the evidence, and the inferences from it, in the light most favorable to
the non-moving party. U.S. v. Diebold, Inc., 369 U.S. at 655, 82 S.Ct. at 994
(citations omitted). If a conflict arises between the evidence presented by both
sides, the District Court must accept as true the allegations of the non-moving
party. Lind, 135 F.Supp.2d at 619 (citations omitted). These determinations are
questions of fact, and therefore, are questions for a jury. Fidelity Bank and
Tiernan, 249 Pa. Super. at 234, 375 A.2d at 1330 Because the Marrones have

14

raised genuine issues of material fact, which need to be determined by a jury, dismissal of this action against the Plaintiffs would be inappropriate.

Here as in <u>Worldwide</u> there is ambiguity in the policy.  An action for bad faith may arise from an insurer's inadequate investigations.  <u>O'Donnell v. Allstate Insurance Co.</u>, 734 A.2d 901 (Pa. Super. 1999)  Genuine issues of material fact exist that preclude the entry of default judgment on behalf of this Defendant.  It is clear that there exist genuine issues of material fact with regard to Mr. Miller's inspection of the Marrone house, and the pre-insurance issuance inspection conducted by Allstate, both of which preclude judgment as a matter of law.  These Plaintiffs lost their home, and when they needed their insurer the most it let them down, they were not in good hands with Allstate.

Wherefore, the Plaintiffs respectfully request that this District Court enter an Order Denying the Motion for Summary Judgment of the Defendant Allstate Insurance Company.

Respectfully submitted,

TARASI, TARASI & FISHMAN, P.C.

By: _____

Gianni Floro, Esquire
PA ID No. 85837
Attorney for the Plaintiffs
510 Third Avenue
Pittsburgh, PA  15219
P:  (412) 391-7135
F:  (412) 471-2673

15