# ORIGINAL

2-6cv

FILED
HARRISBURG, PA

MAY 3 0 2003

MARY E. D'ANDREA, CLERK
Per _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

JACK MARRONE, husband, KAREN
MARRONE, wife, both individually and
in their capacity as parents and guardians
for VIDA MARRONE, a minor, and
MATTHEW ADAM MARRONE,

        Plaintiffs,

    vs.

ALLSTATE INSURANCE COMPANY,
LINDA M. EDLEMAN, FRED SCHAFER,
MT. GRETNA REALTY, and HOUSE
MASTERS,

        Defendants.

:    Civil Action No.: 1:CV-01-0773

:    (U.S. District Judge Yvette Kane)

:    **JURY TRIAL DEMANDED**

---

## PLAINTIFFS' RESPONSE TO THE MOTION FOR SUMMARY
## JUDGMENT OF DEFENDANT LINDA M. EDLEMAN

AND Now come the Plaintiffs, by and through their counsel of record,

Tarasi, Tarasi & Fishman, P.C., Louis M. Tarasi, Jr., Esquire, and Gianni Floro,

Esquire, and hereby file this Plaintiffs' Response to the Motion for Summary

Judgment of Defendant Linda M. Edleman, and in support thereof set forth the

following:

    1.    Admitted.

2.      Admitted.

3.      Admitted.

4.      Admitted in part and denied in part. It is admitted that the first time that the Plaintiffs noted a problem with mold was when they returned from their trip to Missouri. It is denied that the first time that the Plaintiffs actually observed mold was on that date; when the Plaintiffs met with their home inspector Charles E. Bertoud, Jr. (hereinafter, "Bertoud"), they pointed out an area in the unfinished portion of the basement which they were unsure as to what the "black spot" upon the peg board was. (Depo. of Karen Marrone at p. 32, lns. 14-21; p. 58, ln. 23 - p. 60, ln. 25; p. 65, ln. 14 - p. 66, ln. 24; p. 69, ln. 16 - p. 71, ln. 14; p. 73, ln. 24 - p. 75, ln. 1; p. 82 lns. 2-9; Depo. of Jack Marrone at p. 76, ln. 24 - p. 77, ln. 7; p. 204, ln. 22 - p. 205, ln. 5; p. 207, lns. 2-7; Depo. of Vida Marrone at p. 33, ln. 3 - p. 34, ln. 5; p. 35, ln. 24 - p. 36, ln. 3; p. 61, ln. 19 - p. 62, ln. 13; Depo. of Matthew Marrone at p. 56, ln. 11 - p. 57, ln.1; p. 87, ln. 10 - p. 89, ln. 11) The Marrones later learned that the "black spot" was a fungus identified as Stachybotrys, which Robert Pfromm recommended that Marrones not occupy the basement until it was eliminated or reduced. (Affidavit of Robert Pfromm at Ex. 2, report of October 15, 2000, pp. 5-6) Mr. Bertoud testified that such a "black spot" would be indicative of mold. (Depo. of Bertoud at p. 46, ln. 23 - p. 47, ln. 21; Depo. of Bertoud at Ex. 10) Mr. Bertoud also testified, with what little recollection he had

2

that he did observe the "black spot," but that he believed it to be a small amount, and said he would have mentioned it to the Marrones. (Depo. of Bertoud at p. 52, ln. 11 - p. 53, ln. 3)

5.     Admitted.  By way of further response the reports of Advanced Applied Science speaks for themselves and are attached to the Affidavit of Robert Pfromm as exhibit 2.

6.     Admitted.  By way of further response the reports of Advanced Applied Science speaks for themselves and are attached to the Affidavit of Robert Pfromm as exhibit 2.

7.     Admitted.  By way of further response the reports of Advanced Applied Science speaks for themselves and are attached to the Affidavit of Robert Pfromm as exhibit 2.

8.     Admitted.  By way of further response the reports of Advanced Applied Science speaks for themselves and are attached to the Affidavit of Robert Pfromm as exhibit 2.  The Plaintiffs did seek qualified medical testing and qualified medical personnel to determine the Plaintiffs susceptibility to the mold contamination in their home, the reports of Eckardt Johanning, M.D., M.Sc., are attached to his affidavit at exhibit 2.  As such, Dr. Johanning provided medical causation for each of the Plaintiffs' medical conditions, linking them, as stated in his report, to their mold exposure.

9.    Admitted.

10.    Admitted in part and denied in part.  It is admitted that the Plaintiffs filed their Amended Complaint alleging causes of action for misrepresentation, negligence and breach of contract against the tortfeasor, Linda M. Edleman (hereinafter, "Edleman").  It is denied that those counts listed by Ms. Edleman, encompass the only facts alleged against her, in that paragraphs 1-56 of the Amended Complaint are incorporated by reference, as though the same were set forth at length therein.

11.    Admitted.  By way of further response and without waiver of the foregoing, Karen Marrone testified that she suffered physical injuries.  (Depo. of Karen Marrone at p. 96, ln. 21 - p. 97, ln. 19; p. 101, ln. 20 - p. 112, ln. 4; p. 119, ln. 18 - p. 124, ln. 16; p. 209, lns. 6-12)  Jack Marrone testified that his wife suffered physical injuries.  (Depo. of Jack Marrone at p. 136, lns. 7-8)  Matthew Marrone testified that his mother, Karen Marrone, and his sister, Vida Marrone, also suffered physical injuries.  (Depo. of Matthew Marrone at p. 63, ln. 19 - p. 64, ln. 16; p. 65, ln. 17, p. 66, ln. 7)  Karen Marrone also testified that her children suffered physical injuries.  (Depo. of Karen Marrone at p. 132, ln. 25 - 143, ln. 2)  Jack Marrone also testified that his daughter, Vida Marrone was suffering from physical injuries.  (Depo. of Jack Marrone at p. 136, lns. 5-6)  Vida Marrone testified that she suffered from physical injuries.  (Depo. of Vida Marrone at p. 12,

ln. 21 - p. 13, ln. 25; p. 14, ln. 6 - p. 30, ln. 2; p. 39, ln. 16 - 42, ln. 23; p. 45, ln. 20 - 46, ln. 12)  Vida Marrone also testified that her father was suffering from physical injuries.  (Depo. of Vida Marrone at p. 44, lns. 7-16)

Some of the Marrones physical injuries were causally related to their exposure to mold at their former home in Mt. Gretna by the expert opinions and prescribed medical testing of Eckardt Johanning, M.D., M.Sc. to determine the Plaintiffs susceptibility to the mold contamination in their home, his expert reports, and additional testing materials are attached to his affidavit at exhibit 2. As such, Dr. Johanning provided medical causation for the Plaintiffs' respiratory reactions, and where applicable linked to them, as stated in his report, to their mold exposure.  (Affidavit of Dr. Johanning at Ex. 2)

12.    Admitted.  By way of further response the report of Tom Moore speaks for itself and is attached to the Affidavit of Tom Moore at Ex. 2.  Ms. Edleman admits that Mr. Schaeffer made frequent visits to her home and observed the entire house, including the basement.  (Depo. of Edleman at p. 20, ;n. 1 - p. 22, ln.)  She also admitted to being in every part of her house, including the basement, between 1984 and 1999.  (Depo. of Edleman at p. 63, ln. 25 - p. 64, ln. 18)  The second page of the Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate indicates that Mr. Schaeffer and Ms. Edleman were both aware that the basement was improved, *see item* "L: Basement" in

5

which option 4 "Improved" is selected. (Depo. of Schaeffer at Ex. 13; and Depo. of Schaeffer at p. 24, ln. 1 -24)  However, paragraph 7 of the Seller's Property Disclosure Statement indicates that there were "no additions" or "remodeling" undertaken by Ms. Edleman, or known to her to be undertaken; however, it is clear that both Ms. Edleman and Mr. Schaeffer knew of the addition and remodeling that Ms. Edleman's ex-husband undertook.  (Depo. of Edleman at Ex. 5, p.2; Depo. of Schaeffer at Ex. 14; and Depo. of Schaeffer at p. 24, ln. 1 -24; Affidavits of Tom Moore and Robert Pfromm)

Nowhere in the Seller's Property Disclosure Statement does Ms. Edleman disclose the moisture problems of the basement, or that renovations had been undertaken to mask such a condition.  The entire Seller's Property Disclosure Statement  indicates that there are no problems with the property at issue.  This misrepresentation was material, because the Marrones would not have purchased the property had they known at the time that there was such a problem.  Ms. Edleman knew or should have known about the problem, while she admitted to having knowledge that her husband had placed paneling in the basement in 1985 or 1986, she denied any knowledge that her husband had undertaken renovation of an area of the basement.  (Depo. of Edleman at p. 30, ln. 6 - p. 34, ln. 9; p. 35, ln. 18 - p. 36, ln. 15)  Mr. Miller, the Allstate senior claims representative who inspected the house after the mold explosion, noted that the house had  evidence

of "a chronic problem" with water penetration, and he told the Marrones that the
"wall was leaking for a long time." (Depo. of Miller at p. 51, ln. 11 - p. 56, ln. 12)
Ms. Edleman had knowledge beyond the Plaintiffs regarding the condition of the
house and its water and dampness problems, and should have taken steps to ensure
that if such problems existed, that they were disclosed as is required by law.  (68
P.S. § 1021, *et seq.*)  Both Mr. Moore and Mr. Pfromm opined that the renovation
undertaken by Mr. Edleman was one of the sources of the mold problem.
(Affidavit of Robert Pfromm at Ex. 2, report of October 15, 2000, pp. 2, 6-8;
report of September 12, 2002; Affidavit of Tom Moore at Ex. 2)  Upon Mr.
Moore's inspection he found that:

> Some studs were rotted significantly on the vertical area
> indicating a wetting and drying scenario over a period of time.
> (photo 48)  The bottom wall plate was black and moisture
> saturated.  This condition was on the back half of the base
> plate, the front half looked normal.  The bottom was not rotted
> since the wood appears to stay wet or saturated.  (photo 47, 48)

> * * *

> The finishing of the basement was incorrectly done.  The vapor
> barrier (felt paper) was applied to the block wall.  The correct
> method would have been to have the vapor barrier between the
> interior finished wall (dry wall or paneling) and the insulation
> so that warm, moist air is stopped before entering the wall
> cavity.  In the house, this house, the warm, moist air was
> condensing on the felt paper and then running down the felt
> paper and would run down to the bottom of the wall which
> would account for the saturated condition of the bottom wall
> plate.

(Affidavit of Tom Moore at Ex. 2)  This finding indicated that a water and dampness problem pre-existed the sale, and since the renovations would have had to have been known by Ms. Edleman, she could have informed the Marrones of the latent defect so that their home inspector could have undertaken a more invasive inspection upon the demands of the Marrones.

13.    Admitted.  By way of further response the report of Tom Moore speaks for itself.  (Affidavit of Tom Moore at Ex. 2)

14.    Admitted.  By way of further response the report of Tom Moore speaks for itself. (Affidavit of Tom Moore at Ex. 2)

15.    Paragraphs 1 through 14 are incorporated by reference as if fully stated herein.

16.    This paragraph sets forth conclusions of law for which no response is required.  By way of further response and without waiver of the foregoing, The standards to be applied by this District Court in ruling on a motion for summary judgment are set forth in Fed.R.Civ.P. 56.  This District Court is compelled to look beyond the pleadings to determine if the pleadings and claims made therein have sufficient factual support to warrant consideration for trial; and thus a motion for summary judgment is only appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Lind v. Jones, Lang Lesalle Americas, Inc., 135 F.Supp.2d 616, 619 (E.D.Pa. 2001),

8

*citing*, <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 463-464 (3d Cir. 1989). The party seeking summary judgment always bears the initial responsibility of informing the District Court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, which it believes demonstrates the absence of a genuine issue of material fact. <u>Lind</u>, 135 F.Supp.2d at 619, *citing*, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548 (1986).

It is well settled that this District Court must consider all the evidence, and the inferences from it, in the light most favorable to the non-moving party. <u>U.S. v. Diebold, Inc.</u>, 369 U.S. 654, 655, 82 S.Ct. 993, 994 (1962); <u>Tigg v. Dow Corning Corp.</u>, 822 F.2d 358, 361 (3d Cir. 1987); <u>Baker v. Lukens Steel Co.</u>, 793 F.2d 509, 511 (3d Cir. 1986). If a conflict arises between the evidence presented by both sides, the District Court must accept as true the allegations of the non-moving party. <u>Lind</u>, 135 F.Supp.2d at 619, *citing*, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986).

17.    Denied. Ms. Edleman admits that Mr. Schaeffer made frequent visits to her home and observed the entire house, including the basement. (Depo. of Edleman at p. 20, ;n. 1 - p. 22, ln.) She also admitted to being in every part of her house, including the basement, between 1984 and 1999. (Depo. of Edleman at p. 63, ln. 25 - p. 64, ln. 18) The second page of the Lebanon County Multi-List

9

Services Exclusive Right to Sell Agreement for Sale of Real Estate indicates that Mr. Schaeffer and Ms. Edleman were both aware that the basement was improved, *see item* "L: Basement" in which option 4 "Improved" is selected. (Depo. of Schaeffer at Ex. 13; and Depo. of Schaeffer at p. 24, ln. 1 -24)  However, paragraph 7 of the Seller's Property Disclosure Statement indicates that there were "no additions" or "remodeling" undertaken by Ms. Edleman, or known to her to be undertaken; however, it is clear that both Ms. Edleman and Mr. Schaeffer knew of the addition and remodeling that Ms. Edleman's ex-husband undertook. (Depo. of Edleman at Ex. 5, p.2; Depo. of Schaeffer at Ex. 14; and Depo. of Schaeffer at p. 24, ln. 1 -24; Affidavits of Tom Moore and Robert Pfromm)

Nowhere in the Seller's Property Disclosure Statement does Ms. Edleman disclose the moisture problems of the basement, or that renovations had been undertaken to mask such a condition.  The entire Seller's Property Disclosure Statement  indicates that there are no problems with the property at issue.  This misrepresentation was material, because the Marrones would not have purchased the property had they known at the time that there was such a problem.  Ms. Edleman knew or should have known about the problem, while she admitted to having knowledge that her husband had placed paneling in the basement in 1985 or 1986, she denied any knowledge that her husband had undertaken renovation of an area of the basement. (Depo. of Edleman at p. 30, ln. 6 - p. 34, ln. 9; p. 35, ln.

18 - p. 36, ln. 15)  Mr. Miller, the Allstate senior claims representative who

inspected the house after the mold explosion, noted that the house had evidence

of "a chronic problem" with water penetration, and he told the Marrones that the

"wall was leaking for a long time."  (Depo. of Miller at p. 51, ln. 11 - p. 56, ln. 12)

Ms. Edleman had knowledge beyond the Plaintiffs regarding the condition of the

house and its water and dampness problems, and should have taken steps to ensure

that if such problems existed, that they were disclosed as is required by law.  (68

P.S. § 1021, *et seq.*)  Both Mr. Moore and Mr. Pfromm opined that the renovation

undertaken by Mr. Edleman was one of the sources of the mold problem.

(Affidavit of Robert Pfromm at Ex. 2, report of October 15, 2000, pp. 2, 6-8;

report of September 12, 2002; Affidavit of Tom Moore at Ex. 2)  Upon Mr.

Moore's inspection he found that:

> Some studs were rotted significantly on the vertical area
> indicating a wetting and drying scenario over a period of time.
> (photo 48)  The bottom wall plate was black and moisture
> saturated.  This condition was on the back half of the base
> plate, the front half looked normal.  The bottom was not rotted
> since the wood appears to stay wet or saturated.  (photo 47, 48)

> \* \* \*

> The finishing of the basement was incorrectly done.  The vapor
> barrier (felt paper) was applied to the block wall.  The correct
> method would have been to have the vapor barrier between the
> interior finished wall (dry wall or paneling) and the insulation
> so that warm, moist air is stopped before entering the wall
> cavity.  In the house, this house, the warm, moist air was

11

condensing on the felt paper and then running down the felt paper and would run down to the bottom of the wall which would account for the saturated condition of the bottom wall plate.

(Affidavit of Tom Moore at Ex. 2)  This finding indicated that a water and dampness problem pre-existed the sale, and since the renovations would have had to have been known by Ms. Edleman, she could have informed the Marrones of the latent defect so that their home inspector could have undertaken a more invasive inspection upon the demands of the Marrones.

By way of further response, Mr. Schaeffer did admit to advising Ms. Edleman with regard to the sale of her property, and it is important to note that Mr. Schaeffer was also aware or should have been aware that Ms. Edleman's Seller's Disclosure Statement misrepresented material facts regarding the house at issue, 354 Timber Road.  The second page of the Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate indicates that Mr. Schaeffer and Ms. Edleman were both aware that the basement was improved, *see item* "L: Basement" in which option 4 "Improved" is selected.  However, paragraph 7 of the Seller's Disclosure Statement indicates that there was "no additions" or "remodeling" undertaken by the Seller; however, it is clear that both Ms. Edleman and Mr. Schaeffer knew of the addition and remodeling that Ms. Edleman's ex-husband undertook.  (Depo. of Linda M. Edleman at Ex. 5, p.2)  An

examination of the writing (Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate) and of Exhibit 3 (second document) reveals that Mr. Schaeffer himself, in his own writing, filled the Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate form and would have known that the basement was improved.  (Depo. of Fred Schaeffer at Ex. 3 (second document); p. 13, lns. 13-22)  Mr. Schaeffer admits to having filled out the Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate with Ms. Edleman.  (Depo. of Fred Schaeffer Exs. 12-13; p. 23, ln. 10 - p. 24, ln. 18)  Mr. Schaeffer also admits to having gone through the Seller's Property Disclosure Statement with Ms. Edleman to ensure that she knew how items on the Seller's Property Disclosure Statement affected the price of the home.  (Depo. of Fred. Schaeffer at p. 58, ln. 25 - p. 59, ln. 24)  The Plaintiffs have made out a claim of misrepresentation against the Defendant Linda M. Edleman.  The elements of an intentional misrepresentation have been made out by the Plaintiffs:

      a.    <u>A representation</u>:  The Seller, with the advise and assistance of her agent, misrepresented that there was no improvements made to the basement (this representation hid the fact that such improvements were made to conceal that there was problems with water penetration in the basement);

      b.    <u>which is material to the transaction at hand</u>:  The problem of water penetration into the basement was

13

certainly material to the transaction at hand (such knowledge would have allowed the Plaintiffs to avoid the transaction) (Mr. Marrone testified that if he would have been advised not to purchase the home by his inspector, who was also unaware of the improvements, then he would have not undertaken the transaction. Deposition of Jack Marrone at p. 219, ln. 5 - p. 220, ln. 8)

c.  made falsely, with knowledge of its falsity or recklessness as to whether it is true or false: The Seller, with the advise and assistance of her agent, misrepresented that there was no improvements made to the basement (this representation hid the fact that such improvements were made to conceal that there was problems with water penetration in the basement);

d.  with the intent of misleading another party into relying upon it: A result is deemed to be "intended" if the actor either acts with a desire to cause it, or acts believing that there is a substantial certainty that the result would follow from his conduct. Woodward v. Dietrich, 378 Pa. Super. 111, 127-128, 548 A. 2d 301, 308-309 (1988). "Reason to expect" is when one has reason to expect a result if he has information from which a reasonable man would conclude that the result will follow or would govern his conduct upon the assumption that it will do so. Id. Mr. Schaeffer advised Ms. Edleman that statements made on the Seller's Disclosure Statement would affect the price she would receive from a buyer. Ms. Edleman knew an adverse property disclosure, such as advising any potential buyers of water penetration, would reduce the amount she could obtain from those buyers, it is reasonable to infer that she intended to mislead the Marrones;

e.  justifiable reliance on the misrepresentation: The Marrones justifiably relied upon Ms. Edleman's representations, and the representations that her agent

14

provide through the Seller' Disclosure Statement as well, the law in this Commonwealth provides that buyers can rely upon the representations of seller in their property disclosure statement, and to find other wise would be **manifestly unfair and would affirmatively aid the perpetration of fraud against an unsuspecting buyer.** LeDonne, 256 Pa.Super. at 293, 389 A.2d at 1130. (*Emphasis supplied*) ;

f.  the resulting injury was proximately caused by the reliance:  had the known defects in the property been revealed to the Plaintiffs they would have not entered into the transaction and never suffered the damages proved by the Plaintiffs (The Plaintiffs' depositions, their answers to discovery requests describe their alleged physical maladies and also detail their economic damages; their medical causation expert has causally related some of their physical injuries more fully in his reports.)

Having demonstrated misrepresentation on the part of the Ms. Edleman, her breach of the implied warranty of habitability and express warranty she provided in delivering the Seller's Property Disclosure Statement, absent warnings of the latent defects with the house were  also apparent, by her acts and omissions Ms. Edleman breached her contract with the Marrones.

18.  Denied.  See response to paragraph 17 above.

19.  Denied.  See response to paragraph 17 above.

20.  Denied.  See response to paragraph 17 above.

Wherefore, the Plaintiffs respectfully request that this District Court enter an Order Denying the Motion for Summary Judgment of the Defendant Linda M.

Edleman.

21.     Paragraphs 1 through 20 are incorporated by reference, as fully as if they were set forth at length herein.

22.     Denied as a conclusion of law for which no response is required.  By way of further response and without waiver of the foregoing, the Defendant, Edleman also had a common law duty not misrepresent the condition of her home to the Marrones, paragraph 17, *supra*.

23.     Denied as a conclusion of law for which no response is required.  By way of further response and without waiver of the foregoing, the Defendant, Edleman also had a common law duty not misrepresent the condition of her home to the Marrones, paragraph 17, *supra*; moreover, Ms. Edleman failed to disclose the fact that renovations were undertaken in the lower level of the home, and she further failed to disclose that any leakage, accumulation moisture or dampness was present in the lower level of the home.  Thus, the misrepresentations made by the Defendant, Ms. Edleman, was relevant and material, because the Plaintiffs would not have purchased the property had they known of the latent defects at the time that there were such problems.  Further, the disclosure statement asks:

> Are you aware of any water leakage, accumulation or dampness within the basement or crawlspace?  ___ Yes  _√_ No

(Depo. of Fred Schaeffer at Ex. 14, ¶ 4 b)  This statement is false.  Ms. Edleman

knew this statement was false.  Moreover, the Act was amended in 2000, and made effective one year after that in 2001, well after the institution of this suit.  In addition, the exemption of liability for sellers does not apply in this case, due to the fact that the information that Ms. Edleman provided was not based upon the opinion or information of a home inspector, contractor, or person registered or licenced, *i.e.*, she provided the information falsely on her own accord, and not in or on reliance of another.

     24.    Admitted.

     25.    Admitted.

     26.    Denied as stated, the inspection report provides only a cursory indication of any "Indication of Water Penetration Condotions," and then the report only indicates that "Water Marks/Stains" were observed; moreover, reference is made to subsection four, which indicates at "Indications of Possible Prior Remedial Work" that "Construction/Coatings" was observed, and as Mr. Bertoud testified to he was referring to "Dry-Lock" which had been painted onto a portion of the basement wall.  (Depo. of Bertoud at p. 35, ln. 18 - p. 37, ln. 25)  Had the Marrones been aware that the problem was behind the renovations undertaken by Ms. Edleman's ex-husband then they could have undertaken further inspection, and not purchased the home.

     27.    Denied as a conclusion of law for which no response is required.

This Defendant, Ms. Edleman should be held liable for her misrepresentations, negligence and breach of contract.

28.    Denied as a conclusion of law and fact for which no response is required, and if one is deemed required it is denied.. This Defendant, Ms. Edleman should be held liable for her misrepresentations, negligence and breach of contract; had she revealed that renovations were undertaken in the lower level of the home then the Marrones could have further investigated that information.

29.    Denied. By way of further response and without waiver of the foregoing, the inspection report did not reveal the "problem" that the home had the potential for or an actual "mold problem" or water infiltration problem that could cause mold.

30.    Denied as a conclusion of law for which no response is required.  The Plaintiffs have demonstrated that material issues of fact exist that preclude this Defendant's motion for summary judgment.

Wherefore, the Plaintiffs respectfully request that this District Court enter an Order Denying the Motion for Summary Judgment of the Defendant Linda M. Edleman.

31.    Paragraphs 1 through 30 are incorporated by reference, as fully as if they were set forth at length herein.

32.    This paragraph sets forth conclusions of law for which no response is

required. By way of further response and without waiver of the foregoing, Dr. Johanning provided medical causation for Matthew Marrones physical injuries as stated in his report. He in effect stated within a reasonable degree of certainty that Matthew Marrone's physical injuries were a result of his mold exposure, further opining that they were related both in time and place. (Affidavit of Dr. Johanning)

33.     This paragraph sets forth conclusions of law for which no response is required. By way of further response and without waiver of the foregoing, Dr. Johanning provided medical causation for Matthew Marrones physical injuries relating them in time and place.

34.     This paragraph sets forth conclusions of law for which no response is required.

35.     This paragraph sets forth conclusions of law for which no response is required.

36.     This paragraph sets forth conclusions of law for which no response is required.

37.     This paragraph sets forth conclusions of law for which no response is required.

38.     This paragraph sets forth conclusions of law for which no response is required.

39.     This paragraph sets forth conclusions of law for which no response is

required.

40.    This paragraph sets forth conclusions of law for which no response is required.

Wherefore, the Plaintiffs respectfully request that this District Court enter an Order Denying the Motion for Summary Judgment of the Defendant Linda M. Edleman.

Respectfully submitted,

TARASI, TARASI & FISHMAN, P.C.

By: _____
Gianni Floro, Esquire
PA ID No. 85837
Attorney for the Plaintiffs
510 Third Avenue
Pittsburgh, PA  15219
P:  (412) 391-7135
F:  (412) 471-2673