# ORIGINAL 2-t cv

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

JACK MARRONE, husband, KAREN
MARRONE, wife, both individually and
in their capacity as parents and guardians
for VIDA MARRONE, a minor, and
MATTHEW ADAM MARRONE,

        Plaintiffs,

    vs.

ALLSTATE INSURANCE COMPANY,
LINDA M. EDLEMAN, FRED SCHAFER,
MT. GRETNA REALTY, and HOUSE
MASTERS,

        Defendants.

:

Civil Action No.: 1:CV-01-0773

**FILED**
HARRISBURG, PA

**MAY 3 0 2003**

MARY E. D'ANDREA, CLERK
Per _____
(U.S. District Judge Yvette Kane)

**JURY TRIAL DEMANDED**

---

## PLAINTIFFS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS REGARDING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT LINDA M. EDLEMAN

AND Now come the Plaintiffs, by and through their counsel of record,

Tarasi, Tarasi & Fishman, P.C., Louis M. Tarasi, Jr., Esquire, and Gianni Floro,

Esquire, and hereby file this Plaintiffs' Counter Statement of Undisputed Material

Facts Regarding the Motion for Summary Judgment of Defendant Linda M.

Edleman, and in support thereof set forth the following:

    1.    Admitted.

    2.    Admitted.

3.      Admitted.

4.      Admitted in part and denied in part.  It is admitted that the first time that the Plaintiffs noted a problem with mold was when they returned from their trip to Missouri.  It is denied that the first time that the Plaintiffs actually observed mold was on that date; when the Plaintiffs met with their home inspector Charles E. Bertoud, Jr. (hereinafter, "Bertoud"), they pointed out an area in the unfinished portion of the basement which they were unsure as to what the "black spot" upon the peg board was.  (Depo. of Karen Marrone at p. 32, lns. 14-21; p. 58, ln. 23 - p. 60, ln. 25; p. 65, ln. 14 - p. 66, ln. 24; p. 69, ln. 16 - p. 71, ln. 14; p. 73, ln. 24 - p. 75, ln. 1; p. 82 lns. 2-9; Depo. of Jack Marrone at p. 76, ln. 24 - p. 77, ln. 7; p. 204, ln. 22 - p. 205, ln. 5; p. 207, lns. 2-7; Depo. of Vida Marrone at p. 33, ln. 3 - p. 34, ln. 5; p. 35, ln. 24 - p. 36, ln. 3; p. 61, ln. 19 - p. 62, ln. 13; Depo. of Matthew Marrone at p. 56, ln. 11 - p. 57, ln.1; p. 87, ln. 10 - p. 89, ln. 11)  The Marrones later learned that the "black spot" was a fungus identified as Stachybotrys, which Robert Pfromm recommended that Marrones not occupy the basement until it was eliminated or reduced.  (Affidavit of Robert Pfromm at Ex. 2, report of October 15, 2000, pp. 5-6)  Mr. Bertoud testified that such a "black spot" would be indicative of mold.  (Depo. of Bertoud at p. 46, ln. 23 - p. 47, ln. 21; Depo. of Bertoud at Ex. 10)  Mr. Bertoud also testified, with what little recollection he had that he did observe the "black spot," but that he believed it to be a small amount,

and said he would have mentioned it to the Marrones.  (Depo. of Bertoud at p. 52, ln. 11 - p. 53, ln. 3)

5.    Admitted.  By way of further response the reports of Advanced Applied Science speaks for themselves and are attached to the Affidavit of Robert Pfromm as exhibit 2.

6.    Admitted.  By way of further response the reports of Advanced Applied Science speaks for themselves and are attached to the Affidavit of Robert Pfromm as exhibit 2.

7.    Admitted.  By way of further response the reports of Advanced Applied Science speaks for themselves and are attached to the Affidavit of Robert Pfromm as exhibit 2.

8.    Admitted.  By way of further response the reports of Advanced Applied Science speaks for themselves and are attached to the Affidavit of Robert Pfromm as exhibit 2.  The Plaintiffs did seek qualified medical testing and qualified medical personnel to determine the Plaintiffs susceptibility to the mold contamination in their home, the reports of Eckardt Johanning, M.D., M.Sc., are attached to his affidavit at exhibit 2.  As such, Dr. Johanning provided medical causation for each of the Plaintiffs' medical conditions, linking them, as stated in his report, to their mold exposure.

9.    Admitted.

10.     Admitted in part and denied in part.  It is admitted that the Plaintiffs

filed their Amended Complaint alleging causes of action for misrepresentation,

negligence and breach of contract against the tortfeasor, Linda M. Edleman

(hereinafter, "Edleman").  It is denied that those counts listed by Ms. Edleman,

encompass the only facts alleged against her, in that paragraphs 1-56 of the

Amended Complaint are incorporated by reference, as though the same were set

forth at length therein.

11.     Admitted.  By way of further response and without waiver of the

foregoing, Karen Marrone testified that she suffered physical injuries.  (Depo. of

Karen Marrone at p. 96, ln. 21 - p. 97, ln. 19; p. 101, ln. 20 - p. 112, ln. 4; p. 119,

ln. 18 - p. 124, ln. 16; p. 209, lns. 6-12)  Jack Marrone testified that his wife

suffered physical injuries.  (Depo. of Jack Marrone at p. 136, lns. 7-8)  Matthew

Marrone testified that his mother, Karen Marrone, and his sister, Vida Marrone,

also suffered physical injuries.  (Depo. of Matthew Marrone at p. 63, ln. 19 - p. 64,

ln. 16; p. 65, ln. 17, p. 66, ln. 7)  Karen Marrone also testified that her children

suffered physical injuries.  (Depo. of Karen Marrone at p. 132, ln. 25 - 143, ln. 2)

Jack Marrone also testified that his daughter, Vida Marrone was suffering from

physical injuries.  (Depo. of Jack Marrone at p. 136, lns. 5-6)  Vida Marrone

testified that she suffered from physical injuries.  (Depo. of Vida Marrone at p. 12,

ln. 21 - p. 13, ln. 25; p. 14, ln. 6 - p. 30, ln. 2; p. 39, ln. 16 - 42, ln. 23; p. 45, ln. 20

- 46, ln. 12)  Vida Marrone also testified that her father was suffering from physical injuries.  (p. 44, lns. 7-16)

Some of the Marrones physical injuries were causally related to their exposure to mold at their former home in Mt. Gretna by the expert opinions and prescribed medical testing of Eckardt Johanning, M.D., M.Sc. to determine the Plaintiffs susceptibility to the mold contamination in their home, his expert reports, and additional testing materials are attached to his affidavit at exhibit 2. As such, Dr. Johanning provided medical causation for the Plaintiffs' respiratory reactions, and where applicable linked to them, as stated in his report, to their mold exposure.  (Affidavit of Dr. Johanning at Ex. 2)

12.    Admitted.  By way of further response the report of Tom Moore speaks for itself.  Ms. Edleman admits that Mr. Schaeffer made frequent visit to her home and observed the entire house, including the basement.  (Depo. of Edleman at p. 20, ;n. 1 - p. 22, ln.)  She also admitted to being in every part of her house, including the basement, between 1984 and 1999.  (Depo. of Edleman at p. 63, ln. 25 - p. 64, ln. 18)  The second page of the Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate indicates that Mr. Schaeffer and Ms. Edleman were both aware that the basement was improved, *see item* "L: Basement" in which option 4 "Improved" is selected.  (Depo. of Schaeffer at Ex. 13; and Depo. of Schaeffer at p. 24, ln. 1 -24)  However,

paragraph 7 of the Seller's Property Disclosure Statement indicates that there were "no additions" or "remodeling" undertaken by Ms. Edleman, or known to her to be undertaken; however, it is clear that both Ms. Edleman and Mr. Schaeffer knew of the addition and remodeling that Ms. Edleman's ex-husband undertook. (Depo. of Edleman at Ex. 5, p.2; Depo. of Schaeffer at Ex. 14; and Depo. of Schaeffer at p. 24, ln. 1 -24; Affidavits of Tom Moore and Robert Pfromm)

Nowhere in the Seller's Property Disclosure Statement does Ms. Edleman disclose the moisture problems of the basement, or that renovations had been undertaken to mask such a condition. The entire Seller's Property Disclosure Statement indicates that there are no problems with the property at issue. This misrepresentation was material, because the Marrones would not have purchased the property had they known at the time that there was such a problem. Ms. Edleman knew or should have known about the problem, while she admitted to having knowledge that her husband had placed paneling in the basement in 1985 or 1986, she denied any knowledge that her husband had undertaken renovation of an area of the basement. (Depo. of Edleman at p. 30, ln. 6 - p. 34, ln. 9; p. 35, ln. 18 - p. 36, ln. 15) Mr. Miller, the Allstate senior claims representative who inspected the house after the mold explosion, noted that the house had evidence of "a chronic problem" with water penetration, and he told the Marrones that the "wall was leaking for a long time." (Depo. of Miller at p. 51, ln. 11 - p. 56, ln. 12)

Ms. Edleman had knowledge beyond the Plaintiffs regarding the condition of the

house and its water and dampness problems, and should have taken steps to ensure

that if such problems existed, that they were disclosed as is required by law.  (68

P.S. § 1021, *et seq.*)  Both Mr. Moore and Mr. Pfromm opined that the renovation

undertaken by Mr. Edleman was one of the sources of the mold problem.

(Affidavit of Robert Pfromm at Ex. 2, report of October 15, 2000, pp. 2, 6-8;

report of September 12, 2002; Affidavit of Tom Moore at Ex. 2)  Upon Mr.

Moore's inspection he found that:

> Some studs were rotted significantly on the vertical area indicating a wetting and drying scenario over a period of time. (photo 48)  The bottom wall plate was black and moisture saturated.  This condition was on the back half of the base plate, the front half looked normal.  The bottom was not rotted since the wood appears to stay wet or saturated.  (photo 47, 48)

> * * *

> The finishing of the basement was incorrectly done.  The vapor barrier (felt paper) was applied to the block wall.  The correct method would have been to have the vapor barrier between the interior finished wall (dry wall or paneling) and the insulation so that warm, moist air is stopped before entering the wall cavity.  In the house, this house, the warm, moist air was condensing on the felt paper and then running down the felt paper and would run down to the bottom of the wall which would account for the saturated condition of the bottom wall plate.

(Affidavit of Tom Moore at Ex. 2)  This finding indicated that a water and

dampness problem pre-existed the sale, and since the renovations would have had

7

to have been known by Ms. Edleman, she could have informed the Marrones of the latent defect so that their home inspector could have undertaken a more invasive inspection upon the demands of the Marrones.

13.    Admitted.  By way of further response the report of Tom Moore speaks for itself.  (Affidavit of Tom Moore at Ex. 2)

14.    Admitted.  By way of further response the report of Tom Moore speaks for itself. (Affidavit of Tom Moore at Ex. 2)

15.    Denied.  The reports of Eckardt Johanning, M.D., M.Sc., regarding Matthew Marrone is attached to his affidavit at exhibit 2.  As such, Dr. Johanning provided medical causation for Matthew Marrone's medical conditions, linking it, as stated in his report, to his mold exposure.

16.    Admitted.

17.    Admitted.

18.    Denied as stated, the report at the referenced section states "Structural/Wet Basement; Radon."

19.    Denied as stated, the inspection report provides only a cursory indication of any "Indication of Water Penetration Condotions," and then the report only indicates that "Water Marks/Stains" were observed; moreover, reference is made to subsection four, which indicates at "Indications of Possible Prior Remedial Work" that "Construction/Coatings" was observed, and as Mr.

Bertoud testified to he was referring to "Dry-Lock" which had been painted onto a portion of the basement wall. (Depo. of Bertoud at p. 35, ln. 18 - p. 37, ln. 25) Had the Marrones been aware that the problem was behind the renovations undertaken by Ms. Edleman's ex-husband then they could have undertaken further inspection, and not purchased the home.

20.     Admitted in part and denied in part. It is admitted that the report provides suggestions as to how to keep water away from the foundation of the home; however, it is denied that said suggestions included how the Marrones could cure the latent defects due to Ms. Edleman's misrepresentation of the condition of the house, and or her negligence in informing the Marrones of said defects.

Wherefore, the Plaintiffs respectfully request that this District Court enter an Order Denying the Motion for Summary Judgment of the Defendant Linda M. Edleman.

Respectfully submitted,

TARASI, TARASI & FISHMAN, P.C.

By:_____

Gianni Floro, Esquire
PA ID No. 85837
Attorney for the Plaintiffs
510 Third Avenue
Pittsburgh, PA  15219
P:  (412) 391-7135
F:  (412) 471-2673