# ORIGINAL 2 to U

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

JACK MARRONE, husband, KAREN
MARRONE, wife, both individually and
in their capacity as parents and guardians
for VIDA MARRONE, a minor, and
MATTHEW ADAM MARRONE,

        Plaintiffs,

    vs.

ALLSTATE INSURANCE COMPANY,
LINDA M. EDLEMAN, FRED SCHAFER,
MT. GRETNA REALTY, and HOUSE
MASTERS,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.: 1:CV-01-0773

**FILED**
HARRISBURG, PA

**MAY 3 0 2003**

MARY E. D'ANDREA, CLERK
Per _____
(U.S. District Judge Yvette Kane)

**JURY TRIAL DEMANDED**

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO THE MOTION FOR
## SUMMARY JUDGMENT OF DEFENDANTS FRED SCHAEFFER
## AND MT. GRETNA REALTY

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *ii*

**I.**    **COUNTER STATEMENT OF THE FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**II.**   **STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**III.**  **ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    **A.**   Plaintiffs Have Established a Claim for Misrepresentation
            Against the Moving Defendants Fred Schaeffer and
            Mt. Gretna Realty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    **B.**   Plaintiffs' Have Established a Claim Pursuant to the Pennsylvania
            Unfair Trade Practices and Consumer Protection Law
            ("UTPCPL") Against these Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**PROOF OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

i

## TABLE OF AUTHORITIES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986) . . . . . . . . . . 3

Baker v. Lukens Steel Co., 793 F.2d 509, 511 (3d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Bardwell v. The Willis Co., 375 Pa. 503, 506, 100 A.2d 102, 104 (1953) (footnote omitted) . . . 7

Bowman v. Meadow Ridge, Inc., 419 Pa.Super. 511, 615 A.2d 755 (1992) . . . . . . . . . . . . . . . 6,7

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . 2

Com. v. Monumental Properties, 459 Pa. 450, 457-461, 329 A.2d 812, 815-817 (1974) . . . . . . 18

Culbreth v. Lawrence Miller, Inc., 328 Pa. Super. 374, 477 A.2d 491 (1984) . . . . . . . . . . . . . . 18

Davis, III v. Government Employees Insurance Company, 2002 WL 469099,
*4 (Pa. Super. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

DeJoseph v. Zamelli, 392 Pa. 24, 139 A.2d 644, 647 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fidelity Bank and Tiernan, 249 Pa. Super. 216, 234, 375 A.2d 1320, 1330 (1977) . . . . . . . . . 16

Frey v. Beaver County Tax Claim Bureau, 687 A.2d 57, 58 (Pa. Cmwlth. 1996 . . . . . . . . . . . 15

Gabriel v. O'Hara, 368 Pa. Super. 383, 388, n.6, 534 A.2d 488, 491, n.6 (1987) . . . . . . . . . . 18

GMH. Associates, Inc. v. Prudential Realty Group, CB, 2000 Pa.Super.
59, 752 A.2d 889, 901 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Gozon v. Henderson-Dewey & Associates, Inc., 312 Pa. Super.
242, 245, 458 A.2d 605, 607 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Henry Shenk Co. v. City of Erie, 352 Pa. 481, 43 A.2d 99 (1945) . . . . . . . . . . . . . . . . . . . . . . . .11

LeDonne v. Kessler, 256 Pa.Super. 280, 286-287, 389 A.2d 1123, 1126-1127 (1978) . . . . . . . 7, 8

Lind v. Jones, Lang Lesalle Americas, Inc., 135 F.Supp.2d 616, 619 (E.D.Pa. 2001) . . . . . . . . 2

Myers v. McHenry, 389 Pa.Super. 100, 106, 580 A.2d 860, 863 (1990) . . . . . . . . . . . . . . . 7, 17

Quashnock v. Frost, 299 Pa. Super. 9, 21, n7, 445 A.2d 121, 127, n.7 (1982) . . . . . . . . . . . . . 15

Restifo v. McDonald, 426 Pa. 5, 230 A.2d 199 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Sparler v. Fireman's Insurance Company of Newark, New Jersey . . . . . . . . . . . . . . . . . . . . . . . 10

Thomas v. Seaman, 451 Pa. 347, 350, 304 A.2d 139 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Tigg v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 3

U.S. v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994 (1962) . . . . . . . . . . . . . . . . . . . . . . . 2

Vaughn v. Didizian 436 Pa. Super. 436, 439, 648 A.2d 38, 40 (1994). . . . . . . . . . . . . . . . . . . . . 10

Williams v. Borough of West Chester, 891 F.2d 458, 463-464 (3d Cir. 1989). . . . . . . . . . . . . . . 2

Wolbach  v. Fay  488 Pa. 239, 242, 412 A.2d 487, 488 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Woodward v. Dietrich, 378 Pa.Super. 111, 548 A.2d 301, 308, FN5, (1988) . . . . . . . . . . . . . . . 12

Yoo Hoo Bottling Co. of Pa., Inc. v. Lebowitz, 432 Pa. 117, 247 A.2d 469 (1968) . . . . . . . . . . . 9

Zurich General Acc. & Liab. Ins. Co. v. Klein, 181 Pa. Super. 48, 121 A.2d 893 (1956) . . . . . . 11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| JACK MARRONE, husband, KAREN MARRONE, wife, both individually and in their capacity as parents and guardians for VIDA MARRONE, a minor, and MATTHEW ADAM MARRONE, | : : : : : : | Civil Action No.:  1:CV-01-0773 |
| Plaintiffs, | : : | |
| vs. | : : | (U.S. District Judge Yvette Kane) |
| ALLSTATE INSURANCE COMPANY, LINDA M. EDLEMAN, FRED SCHAFER, MT. GRETNA REALTY, and HOUSE MASTERS, | : : : : | **JURY TRIAL DEMANDED** |
| Defendants. | : : | |

---

### PLAINTIFFS' BRIEF IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS FRED SCHAEFFER AND MT. GRETNA REALTY

AND NOW come the Plaintiffs, by and through their counsel of record,

Tarasi, Tarasi & Fishman, P.C., Louis M. Tarasi, Jr., Esquire, and Gianni Floro,

Esquire, and hereby file this Plaintiffs' Brief in Opposition to the Motion for

Summary Judgment of Defendants Fred Schaeffer and Mt. Gretna Realty, and in

support thereof set forth the following:

### I.    COUNTER STATEMENT OF THE FACTS:

Non-moving Plaintiffs incorporate by reference, as if set forth fully herein,

their "Plaintiffs' Counter Statement of Undisputed Material Facts Regarding the Motion for Summary Judgment of Defendants Fred Schaeffer and Mt. Gretna Realty."

## II.   STANDARD OF REVIEW:

The standards to be applied by this District Court in ruling on a motion for summary judgment are set forth in Fed.R.Civ.P. 56. This District Court is compelled to look beyond the pleadings to determine if the pleadings and claims made therein have sufficient factual support to warrant consideration for trial; and thus a motion for summary judgment is only appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Lind v. Jones, Lang Lesalle Americas, Inc., 135 F.Supp.2d 616, 619 (E.D.Pa. 2001), *citing*, Williams v. Borough of West Chester, 891 F.2d 458, 463-464 (3d Cir. 1989). The party seeking summary judgment always bears the initial responsibility of informing the District Court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, which it believes demonstrates the absence of a genuine issue of material fact. Lind, 135 F.Supp.2d at 619, *citing*, Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986).

It is well settled that this District Court must consider all the evidence, and the inferences from it, in the light most favorable to the non-moving party. U.S. v.

2

Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994 (1962); Tigg v. Dow Corning

Corp., 822 F.2d 358, 361 (3d Cir. 1987); Baker v. Lukens Steel Co., 793 F.2d 509,

511 (3d Cir. 1986).  If a conflict arises between the evidence presented by both

sides, the District Court must accept as true the allegations of the non-moving

party.  Lind, 135 F.Supp.2d at 619, *citing*, Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986).

## III.  ARGUMENT:

### A.  Plaintiffs Have Established a Claim for Misrepresentation Against the Moving Defendants Fred Schaeffer and Mt. Gretna Realty

In their Amended Complaint the Plaintiffs made the following allegations

against the moving Defendants (hereinafter, "Seller's Agents") and in support of

their claim for misrepresentation:

76. The Plaintiffs incorporate paragraphs 1 through 75 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

77. Defendants Fred Schafer and Mt. Gretna Realty were at all relevant times the agent, servant, employee, or ostensible agent of Defendant Linda M. Edleman, and acted through its agents, servants, employees, and ostensible agents.

78. Defendants Fred Schafer and Mt. Gretna Realty were, and have been an agent for, other homes in the area and as such, due to their experience and expertise, knew or should have know that the property in question, and the area was prone to said dampness/water problems.

79.   Defendants Fred Schafer and Mt. Gretna Realty had a duty to disclose, as well as a duty to make sure that the seller, their principle, disclosed all known defects in the property at issue prior to sale.

80.   Defendants Fred Schafer and Mt. Gretna Realty breached that duty by failing to disclose, and acted in concert wither Defendant Edleman to not reveal said know defects relating to dampness/water.

81.   These undisclosed problems lead to the formation of the mold in July of 2000.

82.   As a direct and proximate result of Defendants Fred Schafer and Mt. Gretna Realtys' failure to disclose said information, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

The crux of the Plaintiffs allegations against the Seller's Agents concerned the Seller's Agents' failure to disclose the condition of the house they placed on the market on behalf of the Defendant, Linda M. Edleman (hereinafter, "Edleman"), which condition was known or should have been known to them. Seller's Agents were aware or should have been aware that the improvements made by the Edlemans, *i.e.*, the "addition to" or "remodeling" of the basement in the Edleman house, were intended to disguise or hide a latent defect, *e.g.*, a dampness or water problem. Although the Plaintiffs (hereinafter, "Marrones") did have a home inspection conducted, and it revealed that there were

4

"INDICATIONS OF WATER PENETRATION CONDITIONS: Water

Marks/Stains" and that there were "INDICATIONS OF POSSIBLE PRIOR

REMEDIAL WORK: Construction/Coatings," those warnings were limited to an

area of the basement that had not had the "addition to" or "remodeling" of the

basement conducted, *i.e.*, the non-finished area of the basement. (Depo. of

Charles E. Bertoud, Jr. (hereinafter, "Bertoud") at Ex. 7, "Express Report;" Depo.

of Bertoud at p. 30, ln. 20 - p. 39, ln. 4) Mr. Bertoud testified that his inspection

was under certain limitations:

> Limitations would be like if there was contents down there that could
> not be moved **to look behind finished materials**, drop ceilings,
> insulation.

(Depo. of Bertoud at p. 38, lns. 22-24) (*Emphasis supplied*) Exhibits 10 and 12 of

Mr. Bertoud's deposition gives some indication of the physical location of the two

areas at issue, the unfinished area, depicted in exhibit 10, and the finished area,

depicted in the left hand side and top right pictures in exhibit 12A, and the right

hand side and lower left pictures in exhibit 12B. (Depo. of Bertoud at Exs. 10 and

12) Photographs number 36 and 41, taken on August 12, 2002, and attached to the

Report of Tom Moore, provides a clear demarcation of the two areas; observing

those photographs demonstrates the white "Dry-Loc" coating material that was

applied to the unfinished area, and the bare concrete block indicating the finished

area of the basement; these photograph post-date Mr. Marrone's activities of

5

removing the paneling and insulation in the finished area, after the "mold

explosion." (Affidavit of Tom Moore; Depo. of Jack Marrone at p. 126, lns. 6-12;

p. 130, ln. 6 - p. 133, ln. 23)  These two areas were noted in the Report of Robert

Pfromm of October 15, 2000:

> It was observed, that most of the interior surface of the below grade
> (underground) foundation walls were covered first with a layer of tar
> paper , then with fiberglass insulation between studs, then with wood
> paneling.

(Affidavit of Robert Pfromm at p. 2 of the "Observations" in his report of October

15, 2000)  Clearly, Mr. Bertoud would not have ripped down the finished area of

the basement had he not had a reason to, such as a specific indication that an

addition to or remodeling had been  conducted in the basement to disguise water

damage in that area of the basement, therefore, this condition was a latent defect of

the property, which was not disclosed to the Plaintiffs prior to purchase.  (Depo. of

Schaeffer at Ex. 14, "Seller's Property Disclosure Statement")

Contrary to the contentions of the Seller's Agents, summary judgment is

inappropriate in this matter and on their behalf.  In support of their position the

Seller's Agents rely on the holding in <u>Bowman v. Meadow Ridge, Inc.</u>, 419

Pa.Super. 511, 615 A.2d 755 (1992).  In that case the Superior Court of

Pennsylvania affirmed the dismissal of a complaint of home buyers by preliminary

objections of the seller's agent, based upon their interpretation of the "parol

6

evidence rule."  <u>Bowman</u> dealt only with the applicability the rule, regarding <u>oral</u>

representations made to the buyers, which would allow the admission into

evidence of those oral representations by the seller's agent.  The Superior Court of

Pennsylvania noted the following definition of the parol evidence rule:

> Where the alleged prior or contemporaneous oral representations or
> agreements concern a subject which is specifically dealt with within
> the written contract, and the written contract covers or purports to
> cover the entire agreement of the parties, the law is now clearly and
> well settled that **in the absence of fraud**, accident or mistake, the
> alleged oral representations or agreements are merged in or
> superseded by the subsequent written contract, and parol evidence to
> vary, modify or supersede the written contract is inadmissible in
> evidence.

<u>Bowman</u>, 419 Pa.Super. at 517, 615 A.2d at 758-759, *quoting*, <u>LeDonne v.</u>

<u>Kessler</u>, 256 Pa.Super. 280, 286-287, 389 A.2d 1123, 1126-1127 (1978), *quoting*,

<u>Bardwell v. The Willis Co.</u>, 375 Pa. 503, 506, 100 A.2d 102, 104 (1953) (footnote

omitted); <u>Myers v. McHenry</u>, 389 Pa.Super. 100, 106, 580 A.2d 860, 863 (1990).

(*Emphasis supplied*)

Nevertheless, this is not a case of an alleged oral misrepresentation, and

unlike the facts in <u>Bowman</u>, this is a case where the misrepresentation concerned

the physical condition of the home and could not have been discovered by an

inspection of the premises.  <u>Bowman</u>, 419 Pa.Super. at 518, 615 A.2d at 759.  This

case is more akin to the condition at issue in the <u>LeDonne</u> case; in that case the

Superior Court of Pennsylvania allowed the plaintiffs' case to go forward due to

7

the fact that those plaintiffs were not reasonably on notice of the latent defect of

the property, the Superior Court opined:

> Because the septic system was underground, appellants could not
> have possessed full knowledge of its physical appearance and
> adequacy and could not have readily ascertained whether a drainage
> problem existed. They observed a purported drainage field, but this
> observation would not reasonably put them on notice that the
> subterranean septic system still malfunctioned. Indeed, the opposite
> inference would be more logical. Because appellants could not
> discern through visual inspection alone the existence of the septic
> system problem of which they now complain, the wording of
> paragraph six does not bar the admission of evidence of appellees'
> alleged misrepresentations concerning septic system problems.

LeDonne, 256 Pa.Super. at 291-292, 389 A.2d at 1129.  The Superior Court went

to note that:

> To invoke the parole evidence rule to cover a situation which buyer
> could not have envisioned at the time of contracting would be
> **manifestly unfair and would affirmatively aid the perpetration of**
> **fraud against an unsuspecting buyer.**

LeDonne, 256 Pa.Super. at 293, 389 A.2d at 1130.  (*Emphasis supplied*)

The integration clause set forth at paragraph 27(c), upon which the Seller's

Agents rely is meaningless in this matter due to the fact that the Seller's Property

Disclosure Statement is specifically referenced in the Standard Agreement of Sale

at paragraph 5. SPECIAL CLAUSES (1-98), which provides that:

> Buyer acknowledges receipt of Seller's Property Disclosure Statement
> before signing this Agreement, if required by law.  (See Notice,
> Information Regarding the Seller's Property Disclosure Act.)

8

(Depo. of Schaeffer at Ex. 29; Depo. of Schaeffer at p. 51, ln. 24 - p. 56, ln. 13; Depo. of Schaeffer at Ex. 14)  It is disingenuous for the Seller's Agents to now claim that the Seller's Property Disclosure Statement was not a representation that was a part of the Standard Agreement of Sale when that document is specifically referenced in the contract itself.  Moreover, the Seller's Agents also rely upon paragraph 26 of Standard Agreement of Sale, which is alleged to provide a release; however, upon review of the Standard Agreement of Sale it is obvious that Marrones did not agree to this release with regard to paragraph 8 PROPERTY INSPECTION CONTINGENCY (1-98), which was not marked by the Plaintiffs, therefore, the Plaintiffs specifically did not agree to the release in paragraph 26, and the contract should be interpreted to be ambiguous with regard to this provision, especially in light of the misrepresentations regarding the latent defect of the house and the fact that no option is selected by the parties.  (Depo. of Schaeffer at Ex. 29, ¶ 8)  The cases cited by the Seller's Agents in support of their contention that the release in paragraph 26 of the Standard Agreement of Sale exempts them from liability are not favorable to them.  In <u>Wolbach v. Fay</u>, the Supreme Court of Pennsylvania opined that:

> Reformation of a release would require **a showing of fraud** or mutual mistake by clear and convincing evidence.

488 Pa. 239, 242, 412 A.2d 487, 488 (1980), *citing*, <u>Yoo Hoo Bottling Co. of Pa.,</u>

Inc. v. Lebowitz, 432 Pa. 117, 247 A.2d 469 (1968). (*Emphasis supplied*) In that case Mr. Wolbach was questioned on whether or not he had read and understood the release he had signed, he answered affirmatively on both inquiries, **and absent fraud** the Court would not allow for relief. Wolbach, 488 Pa. at 242, 412 A.2d 488. In the case *sub judice*, there was no evidence presented by the Seller's Agents in support of their motion for summary judgment that demonstrated that Jack and Karen Marrone read the release, or for that matter understood the contents of it. In Sparler v. Fireman's Insurance Company of Newark, New Jersey, the Superior Court of Pennsylvania stated that:

> A release normally covers only such matters as can fairly be said to
> be within the contemplation of the parties when release was given.

360 Pa.Super. 597, 601, 521 A.2d 433, 434-435. Had the Marrones known that this purported release would extinguish their rights with regard to a material misrepresentation of a latent defect, they would have never entered into the contract. (Depo. of Karen Marrone at p. 73, lns. 17-20; Depo. of Jack Marrone at p. 219, ln. 5 - p. 220, ln. 8) In Vaughn v. Didizian, the Superior Court of Pennsylvania recognized that:

> [R]eleases are strictly construed **so as not to bar the enforcement of
> a claim which had not accrued at the date of the execution of the
> release.**

436 Pa. Super. 436, 439, 648 A.2d 38, 40 (1994) (*emphasis supplied*), *citing,*

Restifo v. McDonald, 426 Pa. 5, 230 A.2d 199 (1967); Henry Shenk Co. v. City of Erie, 352 Pa. 481, 43 A.2d 99 (1945); Zurich General Acc. & Liab. Ins. Co. v. Klein, 181 Pa. Super. 48, 121 A.2d 893 (1956).   In this case the Marrones were unable to determine the fraud perpetrated against them until after the execution of the purported release.   That fraud was composed of a misrepresentation that was intended to induce the action undertaken by the Marrones, *i.e.*, purchasing the Edleman house, in reliance upon the misrepresentation, to the damage of its victims, the Marrones.  Thomas v. Seaman, 451 Pa. 347, 350, 304 A.2d 139 (1973).   The evidence presented of the fraud must be clear, precise, and convincing.  Thomas, 451 Pa. At 351.   The elements of intentional misrepresentation are as follows:

1.  A representation;
2.  which is material to the transaction at hand;
3.  made falsely, **with knowledge of its falsity or recklessness as to whether it is true or false;**
4.  with the intention of misleading another party into relying on it;
5.  justifiable reliance on the misrepresentation; and
6.  the resulting injury was proximately caused by the reliance.

GMH. Associates, Inc. v. Prudential Realty Group, CB, 2000 Pa.Super. 59, 752 A.2d 889, 901 (2000).  (*Emphasis Supplied*)

A misrepresentation is material if it is of such character that **had it not been made** the transaction would not have been consummated.  GMH Associates, 752

11

A.2d at 902. A "negligent misrepresentation" is a misrepresentation which arises from a want of "reasonable care or competence in obtaining or communicating information" as opposed to a "fraudulent" misrepresentation which involves either a "knowing" or a "reckless" communication or misrepresentation. <u>Woodward v. Dietrich</u>, 378 Pa.Super. 111, 548 A.2d 301, 308, FN5, (1988).

A result is deemed to be "intended" if the actor either acts with a desire to cause it, or acts believing that there is a substantial certainty that the result would follow from his conduct. <u>Woodward</u>, 548 A.2d at 127, FN7 (1988). "Reason to expect" is when one has reason to expect a result if he has information from which a reasonable man would conclude that the result will follow or would govern his conduct upon the assumption that it will do so. <u>Woodward</u>, 548 A.2d at 127, FN7 (1988).

The Marrones demonstrated that the Seller's Agents failed to disclose the water problems associated with the property at issue, the Seller's Agents misrepresented that the property was free of such a problem, going so far as to mask that fact. Mr. Schaeffer admitted to advising Ms. Edleman with regard to the sale of her property, and it is important to note that Mr. Schaeffer was also aware <u>or should have been aware</u> that Ms. Edleman's Seller's Property Disclosure Statement misrepresented material facts regarding the house at issue, 354 Timber Road. (68 P.S. § 1021, *et seq.*) Further, the disclosure statement asks:

12

Are you aware of any water leakage, accumulation or dampness within the basement or crawlspace? ___ Yes _√_ No

(Depo. of Fred Schaeffer at Ex. 14, ¶ 4 b)  This statement is false.  Mt. Gretna

Realty, Mr. Schaeffer and Ms. Edleman knew this statement was false. The second

page of the Lebanon County Multi-List Services Exclusive Right to Sell

Agreement for Sale of Real Estate indicates that Mr. Schaeffer and Ms. Edleman

were both aware that the basement was improved, *see item* "L: Basement" in

which option 4 "Improved" is selected.  (Depo. of Schaeffer at Ex. 13; and Depo.

of Schaeffer at p. 24, ln. 1 -24)  However, paragraph 7 of the Seller's Property

Disclosure Statement indicates that there were "no additions" or "remodeling"

undertaken by Ms. Edleman, or known to her to be undertaken; however, it is clear

that both Ms. Edleman and Mr. Schaeffer knew of the addition and remodeling

that Ms. Edleman's ex-husband undertook.  (Depo. of Edleman at Ex. 5, p.2; Depo.

of Schaeffer at Ex. 14; and Depo. of Schaeffer at p. 24, ln. 1 -24; Affidavits of

Tom Moore and Robert Pfromm)  An examination of the writing (Lebanon County

Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate)

(Depo. of Schaeffer at Ex. 13) and of Exhibit 3 (second document) of Mr.

Schaeffer's deposition reveals that Mr. Schaeffer himself, in his own writing, filled

the Lebanon County Multi-List Services Exclusive Right to Sell Agreement for

Sale of Real Estate form and would have known that the basement was improved.

(Depo. of Schaeffer at Ex. 3 (second document); Depo. of Schaeffer at p. 13, lns.

13-22)  Mr. Schaeffer admits to having filled out the Lebanon County Multi-List

Services Exclusive Right to Sell Agreement for Sale of Real Estate with Ms.

Edleman.  (Depo. of Schaeffer at Exs. 12-13; p. 23, ln. 10 - p. 24, ln. 18)  Mr.

Schaeffer also admits to having gone through the Seller's Property Disclosure

Statement with Ms. Edleman to ensure that she knew how items on the Seller's

Property Disclosure Statement **affected the price of the home**.  (Depo. of

Schaeffer at p. 58, ln. 25 - p. 59, ln. 24)  By providing a true recitation of the

history of the Edleman house would have delayed any purchaser from buying the

Edleman house due to the defective condition of the house,  known only to Ms.

Edleman, her ex-husband, and the Seller's Agents.

Nowhere in the Seller's Property Disclosure Statement does the Ms.

Edleman disclose the moisture problems of the basement.  The entire Seller's

Property Disclosure Statement  indicates that there are no problems with the

property at issue.  Further, the disclosure statement asks:

> Are you aware of any water leakage, accumulation or dampness
> within the basement or crawlspace?  ___ Yes _√_ No

(Depo. of Fred Schaeffer at Ex. 14, ¶ 4 b)  This statement is false.  Mt. Gretna

Realty, Mr. Schaeffer and Ms. Edleman knew this statement was false. This

misrepresentation was material, because the Marrones would not have purchased

14

the property had they known at the time that there was such a problem.  The

Seller's Agents knew or should have known about the problem, as they are

professional realtors, who have sold other homes in the area for eighteen (18)

years.  (Depo. of Schaeffer at p. 12, lns. 3-25; Depo. of Jack Marrone at p. 140, ln.

6 - p. 141, ln. 8; p. 152, ln. 21 - p. 153, ln. 13)  Because of their expertise in the

area of home sales, they had, or should have had, knowledge beyond the Plaintiffs

regarding such problems, and should have taken steps to ensure that if such

problems existed, that they were disclosed as is required by law.  (68 P.S. § 1021,

*et seq.*)

When there is a serious and dangerous latent defect known to the seller,

then he must disclose such defect to the unknowing or suffer liability for his

failure to do so.  Gozon v. Henderson-Dewey & Associates, Inc., 312 Pa. Super.

242, 245, 458 A.2d 605, 607 (1983).  Sellers are required to disclose dangerous

and material defects to prospective purchasers.  Frey v. Beaver County Tax Claim

Bureau, 687 A.2d 57, 58 (Pa. Cmwlth. 1996).  Public policy requires that **this is**

**an affirmative duty**.  Id.  The Pennsylvania Superior Court has held:

> Where there are ... defects in ... premises, dangerous to
> the property, health, or life of the tenant, which defects
> are known to the landlord ... it is the duty of the landlord
> to disclose them to the tenant ... and failure to do so
> amounts to a fraud.

Quashnock v. Frost, 299 Pa. Super. 9, 21, n7, 445 A.2d 121, 127, n.7 (1982).

As the moisture problem was known to Ms. Edleman, and therefore, should have been known by her agents, this failure to disclose this information was made with the intention to deceive the Marrones and to deceive them into believing that no such problem existed. The Marrones, being in an inferior position due to their lack of expertise, relied on the legally imposed duty on the seller and her agents to disclose such information. As a result of the Marrones reliance, and the Seller's Agents failure to disclose, as was their duty, the Marrones have suffered physical and financial damages. (Pls.' Ans. Obj. to Ints. and Req. Prod. Docs.)

Releases are construed in accordance with traditional principles of contract law and are binding on parties **absent fraud**. <u>Davis, III v. Government Employees Insurance Company</u>, 2002 WL 469099, *4 (Pa. Super. 2001). Fraud arises where there is a non-privileged failure to disclose. <u>DeJoseph v. Zamelli</u>, 392 Pa. 24, 139 A.2d 644, 647 (1958). Fraud renders a transaction **voidable**, even where the misrepresentation is not material. <u>Id</u>.

Additionally, the liability of the Seller's Agents arose out of their alleged agency relationship with the Ms. Edleman. The Seller's Agents' liability may be determined based on the nature and scope of said agency. These determinations are questions of fact, and therefore, are questions for a jury. <u>Fidelity Bank and Tiernan</u>, 249 Pa. Super. 216, 234, 375 A.2d 1320, 1330 (1977).

Lastly, on the aforementioned element of reliability, whether or not said

reliance was justifiable is a question for the jury to be based on all of the facts and permissible inferences which may be drawn from the evidence presented at trial. Myers v. McHenry, 398 Pa. Super. 100, 109, 580 A.2d 860, 865 (1990).  Because the Marrones have raised genuine issues of material fact, which need to be determined by a jury, dismissal of this action against the Plaintiffs would be inappropriate.

**B.** **Plaintiffs' Have Established a Claim Pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") Against these Defendants.**

In their Amended Complaint the Plaintiffs made the following allegations against the Seller's Agents in support of their claim for violations of UTPCPL:

83.  Plaintiffs incorporate paragraphs 1 through 82 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

84.  In view of the foregoing, the Plaintiffs believe and therefore aver that the Defendants, Fred Schafer and Mt. Gretna Realty, have engaged in unfair and/or deceptive acts or practices as contemplated by the Pennsylvania Unfair Trade Practice and Consumer Protection Law (hereinafter sometimes referred to as "UTPCPL") which include but are not limited to the following:

(a)  Using deceptive representations in connection of the condition of the aforesaid sale of subject property;

(b)  In representing that said property was not defective when they knew, or should have know, it is not;

(c)  Engaging in fraudulent conduct which created a likelihood of confusion and/or misunderstanding in the

Plaintiffs' purchase, ownership, and maintenance of the subject property;

(d) Defendants engaged in the foregoing conduct for the sole purpose of concealing the seriousness and gravity of the defective conditions of said property and thus preventing any further action to rectify the serious and defective condition of the subject property which was reckless, malicious, and in gross disregard of the Plaintiffs' rights.

85. As a direct and proximate cause of the Defendants' violation of the UTPCPL, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars, and are entitled to treble damages and attorneys' fees.

The Seller's Agents claim that the Marrones have failed to prove the common-law elements of fraud. The Marrones have demonstrated the fraudulent and deceptive business practices of the Seller's Agents, as set forth above.

The legislative intent in enacting the Pennsylvania UTPCPL was to enhance the protection of the public from unfair business practices. Gabriel v. O'Hara, 368 Pa. Super. 383, 388, n.6, 534 A.2d 488, 491, n.6 (1987). The central underlying intent of this statute is fraud prevention and the Act must be construed liberally to effectuate that remedial intent. Com. v. Monumental Properties, 459 Pa. 450, 457-461, 329 A.2d 812, 815-817 (1974). Gabriel, 534 A.2d at 491. Culbreth v. Lawrence Miller, Inc., 328 Pa. Super. 374, 477 A.2d 491 (1984).

In the Act, the legislature has established a private cause of action for treble

18

damages under 73 P.S. §201-9.2(a), which reads:

### §201-9.2 Private Actions

(a)     any person who purchases or leases goods or services
primarily for personal, family or household purposes and
thereby suffers any ascertainable loss of money or
property, real or personal, as a result of the use or
employment by any person of a method, act or practice
declared unlawful by section 3 of this act, may bring a
private action to recover actual damages or one hundred
($100.00) dollars, whichever is greater.  The Court may,
in its discretion, award up to three times the actual
damages sustained, but not less than on hundred
($100.00) dollars, and may provide such additional relief
as it deems necessary or proper.

73 P.S. §201-9.2(a).  73 P.S. §201-2(4)(xiii) defines "unfair or deceptive acts or

practices" as "[e]ngaging in any other fraudulent conduct which creates a

likelihood of confusion or of misunderstanding."

The Marrones justifiably relied upon the misrepresentations of the Sellers

Agents, as explained above.  As a result, the Marrones purchased a home that had

a latent defect, as well as being contaminated with toxic mold, (Affidavits of Tom

Moore and Robert Pfromm) causing this unsuspecting family both physical and

financial damages.  Accordingly, the Plaintiffs respectfully submit that they have

demonstrated that there are genuine issues of material fact which precludes the

moving Defendants' motion for summary judgment.

Wherefore, the Plaintiffs respectfully request that this District Court enter

an Order Denying the Motion for Summary Judgment of the Defendants Schaeffer and Mt. Gretna.

Respectfully submitted,

TARASI, TARASI & FISHMAN, P.C.

By: _____
Gianni Floro, Esquire
PA ID No. 85837
Attorney for the Plaintiffs
510 Third Avenue
Pittsburgh, PA 15219
P: (412) 391-7135
F: (412) 471-2673