# ORIGINAL

2-16 CV

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

JACK MARRONE, husband, KAREN
MARRONE, wife, both individually and
in their capacity as parents and guardians
for VIDA MARRONE, a minor, and
MATTHEW ADAM MARRONE,

        Plaintiffs,

  vs.

ALLSTATE INSURANCE COMPANY,
LINDA M. EDLEMAN, FRED SCHAFER,
MT. GRETNA REALTY, and HOUSE
MASTERS,

        Defendants.

:

Civil Action No.: 1:CV-01-0773

**FILED**
HARRISBURG, PA

MAY 3 0 2003

MARY E. D'ANDREA
Per _____
(U.S. District Judge Yvette Kane)

**JURY TRIAL DEMANDED**

---

## PLAINTIFFS' COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS REGARDING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS FRED SCHAEFFER AND MT. GRETNA REALTY

AND Now come the Plaintiffs, by and through their counsel of record, Tarasi,

Tarasi & Fishman, P.C., Louis M. Tarasi, Jr., Esquire, and Gianni Floro, Esquire, and

hereby file this Plaintiffs' Counter Statement of Undisputed Material Facts Regarding

the Motion for Summary Judgment of Defendants Fred Schaeffer and Mt. Gretna

Realty, and in support thereof set forth the following:

    1.    Admitted.

2.      Admitted. By way of further response, Mr. Schaeffer did admit to advising Ms. Edleman with regard to the sale of her property, and it is important to note that Mr. Schaeffer was also aware <u>or should have been aware</u> that Ms. Edleman's Seller's Disclosure Statement misrepresented material facts regarding the house at issue, 354 Timber Road.  The second page of the Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate indicates that Mr. Schaeffer and Ms. Edleman were both aware that the basement was improved, *see item* "L: Basement" in which option 4 "Improved" is selected.  (Depo. of Fred Schaeffer at Ex. 13; and Depo. of Fred Schaeffer at p. 24, ln. 1 -24)  However, paragraph 7 of the Seller's Disclosure Statement indicates that there was "no additions" or "remodeling" undertaken by the Seller; however, it is clear that both Ms. Edleman and Mr. Schaeffer knew of the addition and remodeling that Ms. Edleman's ex-husband undertook. (Depo. of Linda M. Edleman at Ex. 5, p.2; Depo. of Fred Schaeffer at Ex. 14; and Depo. of Fred Schaeffer at p. 24, ln. 1 -24)  An examination of the writing (Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate (Depo. of Fred Schaeffer at Ex. 13) and of Exhibit 3 (second document) reveals that Mr. Schaeffer himself, in his own writing, filled the Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate form and would have known that the basement was improved.  (Depo. of Fred Schaeffer at Ex. 3 (second document); Depo. of Fred Schaeffer at p. 13, lns. 13-22)  Mr. Schaeffer admits

2

to having filled out the Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate with Ms. Edleman. (Depo. of Fred Schaeffer at Exs. 12-13; p. 23, ln. 10 - p. 24, ln. 18)  Mr. Schaeffer also admits to having gone through the Seller's Property Disclosure Statement with Ms. Edleman to ensure that she knew how items on the Seller's Property Disclosure Statement affected the price of the home. (Depo. of Fred Schaeffer at p. 58, ln. 25 - p. 59, ln. 24)

3.    Admitted.

4.    Admitted. By way of further response, Defendant Edleman recalls Mr. Schaeffer was at the closing. (Depo. of Linda M. Edleman at p. 47, ln. 24 - p. 48, ln. 12)  Mr. Schaeffer was present at the closing, in another room away from the Marrones, but Mr. Stanilla would have had to speak with Mr. Schaeffer in order to effectuate the transaction. (Depo. of Karen Marrone at p. 55, ln. 21 - p. 56, ln. 1)

5.    Admitted in part and denied in part.  It is admitted that the Plaintiff, Karen Marrone never spoke with Fred Schaeffer before the closing on the Edleman property.  It is denied that the Plaintiff, Karen Marrone, did not rely upon anything that Mr. Schaeffer said about the Edleman property in connection with her decision to purchase the property.  By way of further response and with waiver of the foregoing, Mr. Schaeffer did admit to advising Ms. Edleman with regard to the sale of her property, and it is important to note that Mr. Schaeffer was also aware <u>or should have been aware</u> that Ms. Edleman's Seller's Disclosure Statement misrepresented material

3

facts regarding the house at issue, 354 Timber Road.  The second page of the Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate indicates that Mr. Schaeffer and Ms. Edleman were both aware that the basement was improved, *see item* "L: Basement" in which option 4 "Improved" is selected.  (Depo. of Fred Schaeffer at Ex. 13; and Depo. of Fred Schaeffer at p. 24, ln. 1 -24)  However, paragraph 7 of the Seller's Disclosure Statement indicates that there was "no additions" or "remodeling" undertaken by the Seller; however, it is clear that both Ms. Edleman and Mr. Schaeffer knew of the addition and remodeling that Ms. Edleman's ex-husband undertook.  (Depo. of Linda M. Edleman at Ex. 5, p.2; Depo. of Fred Schaeffer at Ex. 14; and Depo. of Fred Schaeffer at p. 24, ln. 1 -24)  An examination of the writing (Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate (Depo. of Fred Schaeffer at Ex. 13) and of Exhibit 3 (second document) reveals that Mr. Schaeffer himself, in his own writing, filled the Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate form and would have known that the basement was improved.  (Depo. of Fred Schaeffer at Ex. 3 (second document); Depo. of Fred Schaeffer at p. 13, lns. 13-22)  Mr. Schaeffer admits to having filled out the Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate with Ms. Edleman.  (Depo. of Fred Schaeffer at Exs. 12-13; p. 23, ln. 10 - p. 24, ln. 18)  Mr. Schaeffer also admits to having gone through the Seller's Property Disclosure Statement with Ms. Edleman

4

to ensure that she knew how items on the Seller's Property Disclosure Statement affected the price of the home. (Depo. of Fred Schaeffer at p. 58, ln. 25 - p. 59, ln. 24) Further, the disclosure statement asks:

> Are you aware of any water leakage, accumulation or dampness within the basement or crawlspace? ___ Yes _✓_ No

(Depo. of Fred Schaeffer at Ex. 14, ¶ 4 b)  This statement is false.  Mt. Gretna Realty, Mr. Schaeffer and Ms. Edleman knew this statement was false.

6.    Admitted.  By way of further response, and without waiver of the foregoing, although the Plaintiffs obtained a house inspection, the misrepresentation concerned the physical condition of the home and could not have been discovered by an inspection of the premises because Mr. Schaeffer represented through the Seller's Disclosure Statement that the basement was not improved.  Further, the disclosure statement asks:

> Are you aware of any water leakage, accumulation or dampness within the basement or crawlspace? ___ Yes _✓_ No

(Depo. of Fred Schaeffer at Ex. 14, ¶ 4 b)  This statement is false.  Mt. Gretna Realty, Mr. Schaeffer and Ms. Edleman knew this statement was false.  (Depo. of Fred Schaeffer at Ex. 14; p. 24, ln. 1 -24)  By not informing the Plaintiffs or their agents of the improvements, such a latent defect hidden by the improvements, such as a water problem, would not have been readily ascertainable by an inspection which would have been limited by not being able to rip through walls to discover such defects.

7.     Admitted.  By way of further response, and without waiver of the foregoing, although not present at the inspection, Mr. Schaeffer had made his misrepresentations through the Seller's Disclosure Statement.

8.     Admitted.

9.     Admitted.

10.    Admitted.  By way of further response, none of the reported items in the Housemaster's report pertained to warning directed to the Plaintiffs regarding the potential for problems associated with water penetration and high humidity.  Had Plaintiffs known of the problems associated with water penetration and high humidity they could have acted to rescind the sales agreement and cancel the transaction.  Thus, the misrepresentations made by the Defendants Schaeffer and Mt. Gretna were relevant and material, because the Plaintiffs would not have purchased the property had they known of the latent defects at the time that there were such problems.  Further, the disclosure statement asks:

> Are you aware of any water leakage, accumulation or dampness within the basement or crawlspace?  ___ Yes  _√_ No

(Depo. of Fred Schaeffer at Ex. 14, ¶ 4 b)  This statement is false.  Mt. Gretna Realty, Mr. Schaeffer and Ms. Edleman knew this statement was false.

11.    Admitted.

12.    Admitted.

13.     Admitted.

14.     Admitted.

15.     Admitted. By way of further response, Defendant Edleman recalls Mr. Schaeffer was at the closing. (Depo. of Linda M. Edleman at p. 47, ln. 24 - p. 48, ln. 12) Mr. Schaeffer was present at the closing, in another room away from the Marrones, but Mr. Stanilla would have had to speak with Mr. Schaeffer in order to effectuate the transaction. (Depo. of Karen Marrone at p. 55, ln. 21 - p. 56, ln. 1)

16.     Admitted.  By way of further response, Jack Marrone only was in Mt. Gretna shortly, he relied on Mr. Schaeffer's and Mt. Gretna's misrepresentations to his detriment.  Defendants knew or should have known about said problems, as Mr. Schaeffer is a professional realtor and also the agent of his company, Mt. Gretna Realty.  Because of his expertise in the area of home sales and his experience with the Mt. Gretna area, he had or should have had, knowledge beyond that of the Plaintiffs regarding such problems, and should have taken steps to ensure that if such problems existed, that they were disclosed as is required by law.

17.     Admitted.  By way of further response, as the Marrone family did, Mr. Stanilla also relied upon the misrepresentations of Schaeffer and Mt. Gretna.  Mr. Schaeffer was present at the closing, in another room away from the Marrones, but Mr. Stanilla would have had to speak with Mr. Schaeffer in order to effectuate the transaction. (Depo. of Karen Marrone at p. 55, ln. 21 - p. 56, ln. 1)  Mr. Schaeffer was

7

also aware <u>or should have been aware</u> that Ms. Edleman's Seller's Disclosure Statement misrepresented material facts regarding the house at issue, 354 Timber Road. Further, the disclosure statement asks:

> Are you aware of any water leakage, accumulation or dampness within the basement or crawlspace? ___ Yes _✓_ No

(Depo. of Fred Schaeffer at Ex. 14, ¶ 4 b)  This statement is false.  Mt. Gretna Realty, Mr. Schaeffer and Ms. Edleman knew this statement was false. The second page of the Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate indicates that Mr. Schaeffer and Ms. Edleman were both aware that the basement was improved, *see item* "L: Basement" in which option 4 "Improved" is selected.  However, paragraph 7 of the Seller's Disclosure Statement indicates that there was "no additions" or "remodeling" undertaken by the Seller; however, it is clear that both Ms. Edleman and Mr. Schaeffer knew of the remodeling that Ms. Edleman's husband undertook.  (Depo. of Linda M. Edleman at Ex. 5, p.2)  An examination of the writing (Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate (Depo. of Fred Schaeffer at Ex. 13) and of Exhibit 3 (second document) reveals that Mr. Schaeffer himself, in his own writing) filled the Lebanon County Multi-List Services Exclusive Right to Sell Agreement for Sale of Real Estate form and would have known that the basement was improved.  (Depo. of Fred Schaeffer at Ex. 3 (second document); Depo. of Fred Schaeffer at p. 13, lns. 13-22;

Depo. of Fred Schaeffer at Ex. 13; and Depo of Fred Schaeffer at p. 24, lns. 1-24)

18. Admitted.

19. Admitted. By way of further response and without waiver of the foregoing, it is now clear that the reason that Matthew Marrone would not have reported a water problem was that because it was a latent defect hidden by these moving Defendants in order to make the sale, and with little concern for the ramifications of their misrepresenations.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Denied. Strict proof of the same is required at the time of trial. By way of further respnse and without waiver of the foregoing, it is alleged that Mr. Schaeffer knew of the problems associated with water penetration and high humidity, and it was this knowledge, which he intentionally misled the Marrones into believing and thus relying upon. The Seller's Agents knew or should have known about the problem, as they are professional realtors, who have sold other homes in the area for eighteen (18) years. (Depo. of Schaeffer at p. 12, lns. 3-25; Depo. of Jack Marrone at p. 140, ln. 6 - p. 141, ln. 8; p. 152, ln. 21 - p. 153, ln. 13) Because of their expertise in the area of home sales, they had, or should have had, knowledge beyond the Plaintiffs regarding

9

such problems, and should have taken steps to ensure that if such problems existed, that they were disclosed as is required by law. (68 P.S. § 1021, *et seq.*)

25.    Denied. Strict proof of the same is required at the time of trial. It is alleged that Mr. Schaeffer knew of the problems associated with water penetration and high humidity, and it was this knowledge, which he intentionally misled the Marrones into believing and thus relying upon. Edleman was adamant that water problem was disclosed to the buyers in the disclosure statement. (Depo. of Linda M. Edleman at p. 51, ln. 9 - p. 52, ln. 25; Ex. 9, p.2) Also paragraph 7 of the Seller's Disclosure Statement indicates that there was no additions or remodeling undertaken by the Seller; however, it is clear that Ms. Edleman knew of the remodeling that her husband undertook. (Depo. of Linda M. Edleman at Ex. 5, p.2)

26.    Denied as stated, Mr. Schaeffer testified that he was aware that a home inspection was conducted by Housemaster; he should have read that inspection, which would have undoubtedly revealed to him that there was a water problem. Mr. Schaeffer himself conducted an inspection of the Edleman property during his listing presentation to Ms. Edleman, and he would have observed that there was a water problem. (Depo. of Fred Schaeffer at p. 17, ln. 11 - p. 18, ln. 6; p. 42, lns. 23-25)

27.    Admitted. By way of further response and without waiver of the foregoing, it was logical that he would be unaware that there was an inspection of the Edleman property for water problems, in that he misrepresented that there were no

10

improvements, which prevented the detection of said latent defect.

28.    Admitted.

29.    Admitted.

30.    Denied.  Strict proof of the same is demanded at the time of trial.  By way of further response and without waiver of the foregoing, upon review of the Standard Agreement of Sale it is obvious that Marrones did not agree to this release with regard to paragraph 8 PROPERTY INSPECTION CONTINGENCY (1-98), which was not marked by the Plaintiffs, therefore, the Plaintiffs specifically did not agree to the release in paragraph 26, and the contract should be interpreted to be ambiguous with regard to this provision, especially in light of the misrepresentations regarding the latent defect of the house and the fact that no option is selected by the parties.  (Depo. of Schaeffer at Ex. 29, ¶ 8)

31.    Admitted.

32.    Denied.  Strict proof of the same is demanded at trial.  It is alleged that Ms. Edleman and her ex-husband were equally aware of the problems associated with water penetration and high humidity in the basement.  Edleman was adamant that water problem was disclosed to the buyers in the disclosure statement.  (Depo. of Linda M. Edleman at p. 51, ln. 9 - p. 52, ln. 25; Ex. 9, p.2)  Also paragraph 7 of the Seller's Disclosure Statement indicates that there was no additions or remodeling undertaken by the Seller; however, it is clear that Ms. Edleman knew of the

remodeling that her husband undertook.  (Depo. of Linda M. Edleman at Ex. 5, p.2)

Further, the disclosure statement asks:

> Are you aware of any water leakage, accumulation or dampness
> within the basement or crawlspace?  ___ Yes _√_ No

(Depo. of Fred Schaeffer at Ex. 14, ¶ 4 b)  This statement is false.  Mt. Gretna Realty,

Mr. Schaeffer and Ms. Edleman knew this statement was false.

33.    Denied.  Strict proof of the same is demanded at trial.  It is alleged that

Ms. Edleman and her ex-husband were equally aware of the problems associated with

water penetration and high humidity in the basement.  Edleman was adamant that

water problem was disclosed to the buyers in the disclosure statement.  (Depo. of

Linda M. Edleman at p. 51, ln. 9 - p. 52, ln. 25; Ex. 9, p. 2; *but see*, Depo. of Fred

Schaeffer at Ex. 14, ¶ 4 b)  Also paragraph 7 of the Seller's Disclosure Statement

indicates that there was no additions or remodeling undertaken by the Seller; however,

it is clear that Ms. Edleman knew of the remodeling that her husband undertook.

(Depo. of Linda M. Edleman at Ex. 5, p.2)

Seller's Agents were aware or should have been aware that the  improvements

made by the Edlemans, *i.e.*, the "addition to" or "remodeling" of the basement in the

Edleman house, were intended to disguise or hide a latent defect, *e.g.*, a dampness or

water problem.  Although the Plaintiffs (hereinafter, "Marrones") did have a home

inspection conducted, and it revealed that there were "INDICATIONS OF WATER

12

PENETRATION CONDITIONS:  Water Marks/Stains" and that there were

"INDICATIONS OF POSSIBLE PRIOR REMEDIAL WORK:

Construction/Coatings," those warnings were limited to an area of the basement that

had not had the "addition to" or "remodeling" of the basement conducted, *i.e.*, the non-

finished area of the basement.  (Depo. of Charles E. Bertoud, Jr. (hereinafter,

"Bertoud") at Ex. 7, "Express Report;" Depo. of Bertoud at p. 30, ln. 20 - p. 39, ln. 4)

Mr. Bertoud testified that his inspection was under certain limitations:

> Limitations would be like if there was contents down there that could not
> be moved **to look behind finished materials**, drop ceilings, insulation.

(Depo. of Bertoud at p. 38, lns. 22-24)  (*Emphasis supplied*)  These so called

limitations were never explained to the Marrones.  Exhibits 10 and 12 of Mr. Bertoud's

deposition gives some indication of the physical location of the two areas at issue, the

unfinished area, depicted in exhibit 10, and the finished area, depicted in the left hand

side and top right pictures in exhibit 12A, and the right hand side and lower left

pictures in exhibit 12B.  (Depo. of Bertoud at Exs. 10 and 12)  Photographs number 36

and 41, taken on August 12, 2002, and attached to the Report of Tom Moore, provides

a clear demarcation of the two areas; observing those photographs demonstrates the

white "Dry-Loc" coating material that was applied to the unfinished area, and the bare

concrete block indicating the finished area of the basement; these photograph post-

date Mr. Marrone's activities of removing the paneling and insulation in the finished

area, after the "mold explosion."  (Affidavit of Tom Moore; Depo. of Jack Marrone at

p. 126, lns. 6-12; p. 130, ln. 6 - p. 133, ln. 23)  These two areas were noted in the

Report of Robert Pfromm of October 15, 2000:

> It was observed, that most of the interior surface of the below grade
> (underground) foundation walls were covered first with a layer of tar
> paper , then with fiberglass insulation between studs, then with wood
> paneling.

(Affidavit of Robert Pfromm at p. 2 of the "Observations" in his report of October 15,

2000)  Clearly, Mr. Bertoud would not have ripped down the finished area of the

basement had he not had a reason to, such as a specific indication that an addition to or

remodeling had been  conducted in the basement to disguise water damage in that area

of the basement, therefore, this condition was a latent defect of the property, which

was not disclosed to the Plaintiffs prior to purchase.  (Depo. of Schaeffer at Ex. 14,

"Seller's Property Disclosure Statement")

34.    Admitted. By way of further response, Karen Marrone conducted an

investigation to determine the earliest possible date of installation of the paneling,

insulation and water block treatment, pursuant to Larry Miller's (Allstate) opinion that

he beleived someone had placed the paneling to conceal something.  (Depo. of Karen

Marrone at p. 168, ln. 8 - p. 169, ln. 169)

35.    Admitted.  In as much as this allegation attempts to characterize

paragraph 34 as being something Ms. Edleman placed in her Seller's Disclosure the

same is denied and strict proof of the same is demanded at the time of trial.

36.     Denied.  Strict proof of the same is demanded at trial.  It is alleged that Ms. Edleman and her ex-husband were equally aware of the problems associated with water penetration and high humidity in the basement.  Edleman was adamant that water problem was disclosed to the buyers in the disclosure statement.  (Depo. of Linda M. Edleman at p. 51, ln. 9 - p. 52, ln. 25; Ex. 9, p. 2, *but see*, Depo. of Fred Schaeffer at Ex. 14, ¶ 4 b)  Also paragraph 7 of the Seller's Disclosure Statement indicates that there was no additions or remodeling undertaken by the Seller; however, it is clear that Ms. Edleman knew of the remodeling that her husband undertook. (Depo. of Linda M. Edleman at Ex. 5, p.2)

37.     Denied in part and admitted in part.  It is admitted that the Plaintiffs' received a copy of the Housemasters' inspection report at the time of inspection, but is denied that Chip Stanilla received a copy of the report.  Strict proof of the same is demanded at the time of trial.

38.     Admitted.

39.     The deposition transcript portions referenced speak for themselves.

Wherefore, the Plaintiffs respectfully request that this District Court enter an Order Denying the Motion for Summary Judgment of the Defendants Schaeffer and

Mt. Gretna.

                              Respectfully submitted,

                              TARASI, TARASI & FISHMAN, P.C.

                              By:_____
                              Gianni Floro, Esquire
                              PA ID No. 85837
                              Attorney for the Plaintiffs
                              510 Third Avenue
                              Pittsburgh, PA  15219
                              P:  (412) 391-7135
                              F:  (412) 471-2673