# ORIGINAL

2 -6 CV

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

JACK MARRONE, husband, KAREN
MARRONE, wife, both individually and
in their capacity as parents and guardians
for VIDA MARRONE, a minor, and
MATTHEW ADAM MARRONE,

      Plaintiffs

    vs.

ALLSTATE INSURANCE COMPANY,
LINDA M. EDLEMAN, FRED SCHAFER,
MT. GRETNA REALTY, and HOUSE
MASTERS,

      Defendants.

    :

Civil Action No.: 1:CV-01-0773

**FILED**
HARRISBURG, PA

MAY 3 0 2003

MARY E. D'ANDREA, CLERK
Per _____
(U.S. District Judge Yvette Kane)

**JURY TRIAL DEMANDED**

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO THE RENEWED MOTION
## FOR SUMMARY JUDGMENT OF DEFENDANT HOUSEMASTER

AND NOW come the Plaintiffs, by and through their counsel of record,

Tarasi, Tarasi & Fishman, P.C., Louis M. Tarasi, Jr., Esquire, and Gianni Floro,

Esquire, and hereby file this Plaintiffs' Brief in Opposition to the Renewed Motion

for Summary Judgment of Defendant Housemaster, and in support thereof set forth

the following:

## I.    COUNTER STATEMENT OF THE FACTS:

Non-moving Plaintiffs incorporate by reference, as if set forth fully herein,

their "Plaintiffs' Counter Statement of Undisputed Material Facts Regarding the

Renewed Motion for Summary Judgment of Defendants Housemaster."

## II.    STANDARD OF REVIEW:

The standards to be applied by this District Court in ruling on a motion for

summary judgment are set forth in Fed.R.Civ.P. 56.  This District Court is

compelled to look beyond the pleadings to determine if the pleadings and claims

made therein have sufficient factual support to warrant consideration for trial; and

thus a motion for summary judgment is only appropriate where there is no genuine

issue of material fact, and the moving party is entitled to judgment as a matter of

law. Lind v. Jones, Lang Lesalle Americas, Inc., 135 F.Supp.2d 616, 619 (E.D.Pa.

2001), *citing*, Williams v. Borough of West Chester, 891 F.2d 458, 463-464 (3d

Cir. 1989).  The party seeking summary judgment always bears the initial

responsibility of informing the District Court of the basis for its motion and

identifying those portions of the pleadings, depositions, answers to interrogatories

and admissions on file, together with any affidavits, which it believes

demonstrates the absence of a genuine issue of material fact. Lind, 135 F.Supp.2d

at 619, *citing*, Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986).

It is well settled that this District Court must consider all the evidence, and

the inferences from it, in the light most favorable to the non-moving party. U.S. v.

Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994 (1962); Tigg v. Dow Corning

Corp., 822 F.2d 358, 361 (3d Cir. 1987); Baker v. Lukens Steel Co., 793 F.2d 509,

2

511 (3d Cir. 1986). If a conflict arises between the evidence presented by both

sides, the District Court must accept as true the allegations of the non-moving

party. <u>Lind</u>, 135 F.Supp.2d at 619, *citing*, <u>Anderson v. Liberty Lobby, Inc.</u>, 477

U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986).

## III.   ARGUMENT:

### A.   <u>Plaintiffs Have Established a Claim for Breach of Contract Against the Moving Defendant Housemaster</u>

The Plaintiffs contracted with Housemaster to inspect their home, this

consisted of a telephone call to Housemaster and was hired to perform a structural

inspection of the home, including the foundation, and to undertake a radon test.

Housemaster was hired to conduct an inspection regarding the potential for

problems associated with water penetration, that such inspection was not "limited"

in any way with regard to the duty owed to Plaintiffs by Housemaster. (Depo. of

Karen Marrone at p. 190, ln. 1 - p. 193, ln. 8; Depo. of Jack Marrone at p. 204, ln.

9 - p. 210, ln. 17)

Housemaster assumes that the "Inspection Order Agreement" contained the

terms for their contract, this was not the case. This was presented to Mrs.

Marrone, **after the contract had already been completed**, he had been paid and

the contract was **complete upon the handling of the inspection report to Mrs.**

**Marrone**. Mrs. Marrone never acknowledged having read the piece of paper

3

which Mr. Bertoud handed her and asked her to sign, Mrs. Marrone testified that she did not have an opportunity to read that document and was only advised by Mr. Bertoud that it recommended sloping the soil away from the house and extending the gutters. (Depo. of Karen Marrone at p. 193, ln. 6 - p. 195, ln. 8) She testified that she did not have an opportunity to read that document. (Id.)

In Sparler v. Fireman's Insurance Company of Newark, New Jersey, the Superior Court of Pennsylvania stated that:

> A release normally covers only such matters as can fairly be said to be within the contemplation of the parties when release was given.

360 Pa.Super. 597, 601, 521 A.2d 433, 434-435.  Had the Marrones known that this purported release would extinguish their rights with regard to Housemaster's negligence, Mrs. Marrone would have never signed the acknowledgment, or that it would have limited the limitations period for claims against Housemaster, then Mrs. Marrone would have accepted the document, purported to be an "inspection report" not a contract. (Depo. of Karen Marrone at p. 73, lns. 17-20; Depo. of Jack Marrone at p. 219, ln. 5 - p. 220, ln. 8)  In Vaughn v. Didizian, the Superior Court of Pennsylvania recognized that:

> [R]eleases are strictly construed **so as not to bar the enforcement of a claim which had not accrued at the date of the execution of the release.**

436 Pa. Super. 436, 439, 648 A.2d 38, 40 (1994) (*emphasis supplied*), *citing,*

4

Restifo v. McDonald, 426 Pa. 5, 230 A.2d 199 (1967); Henry Shenk Co. v. City of Erie, 352 Pa. 481, 43 A.2d 99 (1945); Zurich General Acc. & Liab. Ins. Co. v. Klein, 181 Pa. Super. 48, 121 A.2d 893 (1956).  Whether or not the release was read by Mrs. Marrone is a question of fact, she testified that she did not read either the report or inspection order agreement before signing it **because Mr. Bertoud explained that they only had slope the soil away from the house and extend the gutters, and that there were no other concerns for them.**  At no time were the Marrones told that there could possibly be a mold problem associated with the water penetration.  If so informed the Marrones would not have purchased the property.  These determinations are questions of fact, and therefore, are questions for a jury.  Fidelity Bank and Tiernan, 249 Pa. Super. 216, 234, 375 A.2d 1320, 1330 (1977).  The terms of this oral contract were in essence, you come out to the house and inspect it, because your a professional home inspector, and we will pay you to advise us if there are any problems that should preclude us from buying the house, there was no subsequent reformation or modification of the contract as this Defendant contends.  Plaintiff incorporates these arguments regarding this Defendant's purported release regarding this Defendant's contention regarding their personal injuries, and will be further responded to in the Plaintiffs' Response to this Defendant's Motion to Preclude the Testimony of Dr. Johanning.  (Def. Housemaster's Br. in Supp. of Renew. Mtn. for Summ. J. at 25)

**B.** **Plaintiffs Have Established a Claim for Negligence Against the Moving Defendant Housemaster**

Mr. Charles E. Bertoud, Jr. (hereinafter, ("Bertoud") saw the "black spot" what we now as mold, but failed to advise the Plaintiffs regarding what it was. Exhibits 10 and 12 of Mr. Bertoud's deposition gives some indication of the physical location of the two areas at issue, the unfinished area, depicted in exhibit 10, and the finished area, depicted in the left hand side and top right pictures in exhibit 12A, and the right hand side and lower left pictures in exhibit 12B. (Depo. of Bertoud at Exs. 10 and 12) Photographs number 36 and 41, taken on August 12, 2002, and attached to the Report of Tom Moore, provides a clear demarcation of the two areas; observing those photographs demonstrates the white "Dry-Loc" coating material that was applied to the unfinished area, and the bare concrete block indicating the finished area of the basement; these photograph post-date Mr. Marrone's activities of removing the paneling and insulation in the finished area, after the "mold explosion." (Affidavit of Tom Moore; Depo. of Jack Marrone at p. 126, lns. 6-12; p. 130, ln. 6 - p. 133, ln. 23) These two areas were noted in the Report of Robert Pfromm of October 15, 2000:

> It was observed, that most of the interior surface of the below grade (underground) foundation walls were covered first with a layer of tar paper , then with fiberglass insulation between studs, then with wood paneling.

(Affidavit of Robert Pfromm at p. 2 of the "Observations" in his report of October

15, 2000) The first time that the Plaintiffs actually observed mold was on that date; when the Plaintiffs met with their home inspector Mr. Bertoud, they pointed out an area in the unfinished portion of the basement which they were unsure as to what the "black spot" upon the peg board was. (Depo. of Karen Marrone at p. 32, lns. 14-21; p. 58, ln. 23 - p. 60, ln. 25; p. 65, ln. 14 - p. 66, ln. 24; p. 69, ln. 16 - p. 71, ln. 14; p. 73, ln. 24 - p. 75, ln. 1; p. 82 lns. 2-9; Depo. of Jack Marrone at p. 76, ln. 24 - p. 77, ln. 7; p. 204, ln. 22 - p. 205, ln. 5; p. 207, lns. 2-7; Depo. of Vida Marrone at p. 33, ln. 3 - p. 34, ln. 5; p. 35, ln. 24 - p. 36, ln. 3; p. 61, ln. 19 - p. 62, ln. 13; Depo. of Matthew Marrone at p. 56, ln. 11 - p. 57, ln.1; p. 87, ln. 10 - p. 89, ln. 11) The Marrones later learned that the "black spot" was a fungus identified as Stachybotrys, which Robert Pfromm recommended that Marrones not occupy the basement until it was eliminated or reduced. (Affidavit of Robert Pfromm at Ex. 2, report of October 15, 2000, pp. 5-6) Mr. Bertoud testified that such a "black spot" would be indicative of mold. (Depo. of Bertoud at p. 46, ln. 23 - p. 47, ln. 21; Depo. of Bertoud at Ex. 10) Mr. Bertoud also testified, with what little recollection he had that he did observe the "black spot," but that he believed it to be a small amount, and said he would have mentioned it to the Marrones. (Depo. of Bertoud at p. 52, ln. 11 - p. 53, ln. 3) Contrary to this allegation, the Marrones allege that they were not advised that the black spot was mold, this in itself creates **a material issue of fact precluding summary judgment, for it is a question for**

7

**a jury to answer**. At no time were the Marrones told that there could possibly be a mold problem associated with the water penetration. If so informed the Marrones would not have purchased the property.

The Defendants attempt to characterize this matter as a "professional negligence" case, and although the Plaintiffs themselves characterized Mr. Bertoud as an expert in his field in the Amended Complaint at paragraph 91, the negligence claimed is that of ordinary care, and that which Mr. Bertoud failed to exercise, that is to report to the Marrone's that the "black spot" was of concern, especially because its proximity to the foundation wall of the house. At no time were the Marrones told that there could possibly be a mold problem associated with the water penetration. If so informed the Marrones would not have purchased the property. This exactly the type of situation that was at issue in Cipriani v. Sun Pipeline Co., where the township's engineer knew or should have know of the existence of a pipeline when he issued the road occupancy permit. 393 Pa.Super. 471, 479, 547 A.2d 706, 710 (1990). Here as there, expert testimony was not required when the matter under consideration simple and the lack of ordinary care is obvious and within the range comprehension of the average juror. Id., *citing*, Smith v. Yohe, 412 Pa. 94, 194 A.2d 167 (1963); Storm v. Golden, 371 Pa.Super. 368, 538 A.2d 61 (1988); Burns v. City of Philadelphia, 350 Pa.Super. 615, 504 A.2d 1321 (1986). Mr. Bertoud saw the "black spot," but paid no attention to it,

and did not even advise the Plaintiffs to investigate it any further. The trier of fact could determine if he had a duty to advise the Plaintiffs regarding the "black spot" without the assistance of an expert. Furthermore, Plaintiffs have provided expert testimony that Housmaster did not do their job properly and in a professional manner. They were professionally negligent. (Affidavit of Tom Moore and Supplemental Affidavit of Tom Moore)

C. **Plaintiffs Have Established Claim for Negligence and a Claim Pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") Against the Moving Defendant Housemaster**

The crux of the Plaintiffs allegations against Housemaster concerned the failure to disclose the condition of the house, *i.e.*, the source of the water damage and/or any current or potential problems related to water damage, which condition was known or should have been known to Housemaster. Mr. Bertoud was aware or should have been aware that the improvements made by the Edlemans, *i.e.*, the "addition to" or "remodeling" of the basement in the Edleman house, were intended to disguise or hide a latent defect, *e.g.*, a dampness or water problem, because a further inquiry into the "black spot" by the Marrones would have led to removal of the paneling from the foundation wall to reveal the extensive water damage or infiltration caused by the improper remodeling. Although he conducted the home inspection, and revealed that there were "INDICATIONS OF WATER

9

PENETRATION CONDITIONS: Water Marks/Stains" and that there were "INDICATIONS OF POSSIBLE PRIOR REMEDIAL WORK: Construction/Coatings," those warnings were limited to an area of the basement that had not had the "addition to" or "remodeling" of the basement conducted, *i.e.*, the non-finished area of the basement. (Depo. of Charles E. Bertoud, Jr. (hereinafter, "Bertoud") at Ex. 7, "Express Report;" Depo. of Bertoud at p. 30, ln. 20 - p. 39, ln. 4) Mr. Bertoud testified that his inspection was under certain limitations:

> Limitations would be like if there was contents down there that could not be moved **to look behind finished materials**, drop ceilings, insulation.

(Depo. of Bertoud at p. 38, lns. 22-24) (*Emphasis supplied*) Exhibits 10 and 12 of Mr. Bertoud's deposition gives some indication of the physical location of the two areas at issue, the unfinished area, depicted in exhibit 10, and the finished area, depicted in the left hand side and top right pictures in exhibit 12A, and the right hand side and lower left pictures in exhibit 12B. (Depo. of Bertoud at Exs. 10 and 12) Photographs number 36 and 41, taken on August 12, 2002, and attached to the Report of Tom Moore, provides a clear demarcation of the two areas; observing those photographs demonstrates the white "Dry-Loc" coating material that was applied to the unfinished area, and the bare concrete block indicating the finished area of the basement; these photograph post-date Mr. Marrone's activities of

10

removing the paneling and insulation in the finished area, after the "mold

explosion." (Affidavit of Tom Moore; Depo. of Jack Marrone at p. 126, lns. 6-12;

p. 130, ln. 6 - p. 133, ln. 23) These two areas were noted in the Report of Robert

Pfromm of October 15, 2000:

> It was observed, that most of the interior surface of the below grade
> (underground) foundation walls were covered first with a layer of tar
> paper, then with fiberglass insulation between studs, then with wood
> paneling.

(Affidavit of Robert Pfromm at p. 2 of the "Observations" in his report of October

15, 2000) Clearly, Mr. Bertoud would not have ripped down the finished area of

the basement had he not had a reason to, such as a specific indication that an

addition to or remodeling had been conducted in the basement to disguise water

damage in that area of the basement, therefore, this condition was a latent defect of

the property, which was not disclosed to the Plaintiffs prior to purchase. (Depo. of

Schaeffer at Ex. 14, "Seller's Property Disclosure Statement") Yet, had Mr.

Bertoud indicated to the Plaintiffs that the "black spot" was of concern, and

identified its proximity to the foundation wall as an indication of potential

problems with that foundation wall of the house, then the Marrones could have

insisted on the Ms. Edleman permitting them to have Mr. Bertoud conduct a more

invasive inspection, actually removing the paneling to reveal the water infiltration

problem caused by the improper remodeling. At no time were the Marrones told

that there could possibly be a mold problem associated with the water penetration. If so informed the Marrones would not have purchased the property.

The evidence presented of the fraud must be clear, precise, and convincing. <u>Thomas</u>, 451 Pa. At 351. A "negligent misrepresentation" is a misrepresentation which arises from a want of "reasonable care or competence in obtaining or communicating information" as opposed to a "fraudulent" misrepresentation which involves either a "knowing" or a "reckless" communication or misrepresentation. <u>Woodward v. Dietrich</u>, 378 Pa.Super. 111, 548 A.2d 301, 308, FN5, (1988).

A result is deemed to be "intended" if the actor either acts with a desire to cause it, or acts believing that there is a substantial certainty that the result would follow from his conduct. <u>Woodward</u>, 548 A.2d at 127, FN7 (1988). "Reason to expect" is when one has reason to expect a result if he has information from which a reasonable man would conclude that the result will follow or would govern his conduct upon the assumption that it will do so. <u>Woodward</u>, 548 A.2d at 127, FN7 (1988).

The Marrones demonstrated that the Mr. Bertoud failed to disclose that "black spot" as being of concern.   At no time were the Marrones told that there could possibly be a mold problem associated with the water penetration.  If so informed the Marrones would not have purchased the property.  These

determinations are questions of fact, and therefore, are questions for a jury.

Fidelity Bank and Tiernan, 249 Pa. Super. 216, 234, 375 A.2d 1320, 1330 (1977).

Lastly, on the aforementioned element of reliability, whether or not said reliance

was justifiable is a question for the jury to be based on all of the facts and

permissible inferences which may be drawn from the evidence presented at trial.

Myers v. McHenry, 398 Pa. Super. 100, 109, 580 A.2d 860, 865 (1990).  Because

the Marrones have raised genuine issues of material fact, which need to be

determined by a jury, dismissal of this action against the Plaintiffs would be

inappropriate.

> **D.** **Plaintiffs' Have Established a Claim Pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") Against this Defendant.**

The Marrones have demonstrated the deceptive business practices of the

Housemaster, as set forth above.  The legislative intent in enacting the

Pennsylvania UTPCPL was to enhance the protection of the public from unfair

business practices. Gabriel v. O'Hara, 368 Pa. Super. 383, 388, n.6, 534 A.2d 488,

491, n.6 (1987).  The central underlying intent of this statute is fraud prevention

and the Act must be construed liberally to effectuate that remedial intent. Com. v.

Monumental Properties, 459 Pa. 450, 457-461, 329 A.2d 812, 815-817 (1974).

Gabriel, 534 A.2d at 491.  Culbreth v. Lawrence Miller, Inc., 328 Pa. Super. 374,

477 A.2d 491 (1984).

In the Act, the legislature has established a private cause of action for treble damages under 73 P.S. §201-9.2(a), which reads:

### §201-9.2 Private Actions

    (a)    any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred ($100.00) dollars, whichever is greater. The Court may, in its discretion, award up to three times the actual damages sustained, but not less than on hundred ($100.00) dollars, and may provide such additional relief as it deems necessary or proper.

73 P.S. §201-9.2(a). 73 P.S. §201-2(4)(xiii) defines "unfair or deceptive acts or practices" as "[e]ngaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding."

The Marrones justifiably relied upon the misrepresentations of the Housemaster, as explained above. As a result, the Marrones purchased a home that had a latent defect, as well as being contaminated with toxic mold, (Affidavits of Tom Moore and Robert Pfromm) causing this unsuspecting family both physical and financial damages. Accordingly, the Plaintiffs respectfully submit that they have demonstrated that there are genuine issues of material fact which precludes the moving Defendants' renewed motion for summary judgment.

**E.     The Plaintiffs Have Established a Claim for Misrepresentation against Housemaster**

A misrepresentation is material if it is of such character that **had it not been made** the transaction would not have been consummated. GMH Associates, 752 A.2d at 902. Had the Marrones been advised that their future home had mold, they would have not purchased the property. A "negligent misrepresentation" is a misrepresentation which arises from a want of "reasonable care or competence in obtaining or communicating information" as opposed to a "fraudulent" misrepresentation which involves either a "knowing" or a "reckless" communication or misrepresentation. Woodward v. Dietrich, 378 Pa.Super. 111, 548 A.2d 301, 308, FN5, (1988). Mr. Bertoud should have advised the Marrones to further investigate the property prior to purchasing it, yet he only told then to slope the soil away and extend the down spouts; they relied on this misrepresentation to their ultimate detriment, and thus the Marrones have demonstrated by facts of record that material issues of fact require the trier of fact for resolution. Wherefore, the Plaintiffs respectfully request that this District Court enter an Order Denying the Renewed Motion for Summary Judgment of the Defendant Housemaster.

Respectfully submitted,

TARASI, TARASI & FISHMAN, P.C.

By: _____
Gianni Floro, Esquire
PA ID No. 85837

15