Case 1:01-cv-00773-YK   Document 185   Filed 06/03/2003   Page 1 of 10


ORIGINAL
⊃⫻ ↳ ↻

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

JACK MARRONE, husband, KAREN       :
MARRONE, wife, both individually and   :   Civil Action No.: 1:CV-01-0773
in their capacity as parents and guardians   :
for VIDA MARRONE, a minor, and   :
MATTHEW ADAM MARRONE,   :
:
     Plaintiffs,   :
:
vs.   :   (U.S. District Judge Yvette Kane)
:
ALLSTATE INSURANCE COMPANY,   :
LINDA M. EDLEMAN, FRED SCHAFER,   :
MT. GRETNA REALTY, and HOUSE   :   **JURY TRIAL DEMANDED**
MASTERS,   :
:
    Defendants.   :

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO THE DEFENDANT HOUSEMASTER'S MOTION TO PRECLUDE EXPERT TESTIMONY OF ECKARDT JOHANNING, M.D.

AND Now come the Plaintiffs, by and through their counsel of record,

Tarasi, Tarasi & Fishman, P.C., Louis M. Tarasi, Jr., Esquire, and Gianni Floro,

Esquire, and hereby file this Brief in Opposition to the Defendant Housemaster's

Motion to Preclude Expert Report and Testimony of Eckardt Johanning, M.D., and

in support thereof argues as follows:

# I.    COUNTER-STATEMENT OF THE FACTS:

On January 17, 2002, Dr. Johanning conducted a physical examination of the Marrone Family. (See, Affidavit of Dr. Johanning at Ex. 2) During the course of Dr. Johanning's examination he took the medical and social histories of each member of the Marrone family, and reviewed the outside reports and environmental findings, including the report of Advanced Applied Sciences, Inc. (Id.) Dr. Johanning also prescribed laboratory and pulmonary function testing, which he discusses in his reports he reviewed the results of, as well as having reviewed the medical records of the Marrone family. (Id.) Dr. Johanning relied upon all the laboratory and pulmonary function testing, his physical examination of each Plaintiff, their medical records, and most importantly the environmental testing conducted by Advanced Applied Sciences, Inc. [Robert Pfromm, CIH] in formulating his opinions regarding the Plaintiffs' medical conditions; also observing photographs of the Marrone home, in which he notes "visible contamination." (Id.) Based upon all of that information, his experience, knowledge and skill, Dr. Johanning opined that the symptoms that these Plaintiffs experienced was causally related to their injuries, as he describes in his reports. (Id.)

This Defendant, Housemaster has misinterpreted this District Court's

function as a "gatekeeper" in an effort to further forestall the Plaintiffs' claims; the injuries that the Plaintiffs have alleged are both related to their mold exposure temporally and spacially, as Dr. Johanning opines.

## II.   ARGUMENT:

### A.   DR. JOHANNING IS QUALIFIED TO OFFER AN OPINION AS TO MEDICAL CAUSATION REGARDING THE OBVIOUS CAUSAL AND TEMPORAL RELATIONSHIP BETWEEN THE MARRONE FAMILY'S EXPOSURE TO THE TOXIC MOLD AND THEIR BODILY INJURIES

F.R.E. 702 has three major requirement: (1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical, or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. In re: Paoli, 2000 U.S. Dist. LEXIS 12993, *10, *citing*, Kannankeril v. Terminex Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997). Dr. Johanning is <u>certainly</u> a qualified expert, being a licensed physician, being <u>Board Certified in Family Practice and also in Occupational and Environmental Medicine</u>, and having numerous other credentials as detailed in *curriculum vitae*. (Affidavit of Dr. Johanning at Ex. 1) Dr. Johanning is offered to testify about his specialized knowledge in the area of Environmental Medicine regarding the Plaintiffs' exposure to the toxic mold they were exposed to while living in Mt. Gretna; and his testimony will certainly assist the trier-of-fact in understanding how the mold

3

exposure that the Marrones experienced adversely affected them. The rules of evidence embody a strong and undeniable preference for admitting any evidence which has the potential for assisting the trier of fact. Kannankeril, 128 F.3d at 806, *citing*, Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 780 (3d Cir. 1996). No one is more qualified than Dr. Johanning to offer an opinion about medical causation in the case *sub judice*; he will certainly assist the trier of fact in determining liability in this matter.

Dr. Johanning properly considered the possible alternative causes of the Plaintiffs' symptoms, and concluded that within a reasonable degree of medical certainty that "this was a result of the exposure in the described contaminated house" (*E.g.,* Affidavit of Dr. Johanning at Ex. 2, "Report regarding Jack Marrone dated October 21, 2002")

The Defendants' reliance on Elcock v. Kmart Corp., 233 F.3d 734, 741 (3rd Cir. 2000) is misplaced and this case is factually distinguishable. In that case the Third Circuit Court of Appeals was not dealing with the admission of a medical doctor's opinion, but instead that of a vocational rehabilitation expert. The overwhelming body of jurisprudence from the Third Circuit Court of Appeals indicates that Dr. Johanning should properly be allowed to testify as the Plaintiff medical causation expert in this matter. In Heller v. Shaw Inductries, Inc., the

4

Third Circuit Court of Appeals discussed differential diagnosis with regard to how

a district court should not require an expert's opinion to be based upon published

studies regarding causation due to exposure to chemicals. 167 F.3d at 155. The

Third Circuit Court of Appeals went on to caution and in fact <u>hold</u> that a medical

expert is not required to rule out alternative possible causes, further holding that:

> A medical expert's causation conclusion should not be excluded
> because he or she has failed to rule out every possible alternative
> cause of the plaintiff's illness. As professor Capra, Reporter to the
> Advisory Committee on the Federal Rules of Evidence, has put it:
>
> > [T]o require the experts to rule out categorically all other
> > possible causes of an injury would mean that few experts
> > would ever be able to testify...
> > ... Obviously alternative causes need to be ruled out. All
> > possible causes, however, cannot be and need not be eliminated
> > before an expert's testimony will be admitted.
>
> Daniel J. Carpa, *The Daubert Puzzle*, 32 Ga.L.Rev. 699, 728 (1998).

167 F.3d at 156. The law in this jurisdiction, as stated by the Third Circuit Court

of Appeals in <u>Hellar</u> is that:

> a physician need not conduct every possible test to rule out all
> possible causes of a patient's illness 'so long as he or she employed
> sufficient diagnostic techniques to have good grounds for his or her
> conclusion.'

<u>Id.</u>, *quoting*, <u>In re Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717, 761 (3d Cir. 1994).

Moreover, it also "emphasized that the district court should take care not to

mistake credibility questions for admissibility questions." <u>Heller</u>, 167 F.3d at 157,

*quoting*, <u>Kannankeril</u>, 128 F.3d at 809.  In the case *sub judice*, Dr. Johanning has

stated that he based his opinion upon:

> The environmental investigation and report by Mr. R. Pfromm
> indicated the presence of moisture related fungi and defects inside the
> house, in particular in the basement.  Fungi included species of
> *Asprgillus, Penicillium and Stachybotrys*, that were higher inside the
> house than outside (control).  Photos were also provided confirming
> visible contamination

(Affidavit of Dr, Johanniong  at Ex. 2, "Report regarding Jack Marrone dated

October 21, 2002"; *see also*, Affidavit of Robert Pfromm, CIH)  Dr. Johanning can

quite properly states his utilization of these facts based upon his experience,

knowledge and expertise regarding the utilization of laboratory and pulmonary

function testing, physical examinations, record reviews in order to properly

formulate his opinions; he is also Board Certified in Occupational and

Environmental  Medicine.  Dr. Johanning employed sufficient diagnostic

techniques to have good grounds for his conclusion.  <u>Heller</u>, 167 F.3d 156,

*quoting*, <u>In re Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717, 761 (3d Cir. 1994).

> An obvious causal relationship exists when the injury is either an
> 'immediate and direct' or 'natural and probable' result of the
> complained of act.  The injury and the act must be so closely
> connected that a lay person could diagnose the causal connection.

<u>In re:  Paoli R.R. Yard PCB Litig.</u>, 2000 U.S. Dist. LEXIS 12993, *8 (E.D. Pa.

2000), *quoting*, <u>Nicklaus v. Vivadent, Inc.</u>, 767 F. Supp. 94, 96 (M.D. Pa. 1991),

*aff'd*, 986 F.2d 1409 (3d Cir. 1993). Dr. Johanning's conclusions are reliable, and he should be permitted to assist the trier of fact in resolving the genuine factual issues in this case. An analysis of this Defendant's brief reveals no substance or merit in its argument, *e.g.*, this Defendant states that no epidemiological evidence exists regarding mold exposure and adverse reactions, but as far back as ancient times, during the time of Leviticus the world knew of the dangers associated with mold exposure:

> And he shall look on the plague, and, behold, if the plague be in the walls of the house with hollows strakes, greenish or reddish, which in sight are lower than the wall; 38. Then the priest shall go out of the house to the door of the house, and shut up the house seven days; 39. And the priest shall come again the seventh day, and shall look: and, behold, if the plague be spread in the walls of the house; 40. Then the priest shall command that they take away the stones in which the plague is, and they shall cast them into an unclean place without the city.

Leviticus Chapter 14 Verses 37-40. Nevertheless, in more modern times it is axiomatic that scientist have studied the subject since it is a great cause adverse health affects and concern among the general population; and to that end Dr. Johanning <u>did utilize laboratory testing</u> to establish causation as stated in his reports, this Defendant misstates that Dr. Johanning did not conduct such testing, even after identifying the result in their appendix at J. (Affidavit of Dr. Johanning at Ex. 2, "Report regarding Jack Marrone dated October 21, 2002" at p. 2

"Laboratory Tests"; *see also*, Affidavit of Robert Pfromm, CIH)  Moreover, this

Defendant's misplaced reliance on <u>Heller</u> is fatal to its argument because in <u>Heller</u>,

the Third Circuit Court of Appeals discussed differential diagnosis with regard to

<u>how a district court should not require an expert's opinion to be based upon</u>

<u>published studies regarding causation due to exposure to chemicals</u>.  167 F.3d at

155.  That Court of Appeals went on to caution and in fact <u>hold</u> that a medical

expert is not required to rule out alternative possible causes, further holding that:

> A medical expert's causation conclusion should not be excluded
> because he or she has failed to rule out every possible alternative
> cause of the plaintiff's illness.  As professor Capra, Reporter to the
> Advisory Committee on the Federal Rules of Evidence, has put it:

>> [T]o require the experts to rule out categorically all other
>> possible causes of an injury would mean  that few experts
>> would ever be able to testify...
>> ... Obviously alternative causes need to be ruled out.  All
>> possible causes, however, cannot be and need not be eliminated
>> before an expert's testimony will be admitted.

> Daniel J. Carpa, *The Daubert Puzzle*, 32 Ga.L.Rev. 699, 728 (1998).

167 F.3d at 156.  The law in this jurisdiction, as stated by the Third Circuit Court

of Appeals in <u>Hellar</u> is that:

> a physician need not conduct every possible test to rule out all
> possible causes of a patient's illness 'so long as he or she employed
> sufficient diagnostic techniques to have good grounds for his or her
> conclusion.'

<u>Id</u>., *quoting*, <u>In re Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717, 761 (3d Cir. 1994).

Moreover, it also "emphasized that the district court should take care not to mistake credibility questions for admissibility questions." <u>Heller</u>, 167 F.3d at 157, *quoting*, <u>Kannankeril</u>, 128 F.3d at 809

## III.   CONCLUSION:

Dr. Johanning's medical causation conclusions are reliable because he is well qualified, by experience, knowledge and expertise, to assist the trier of fact in determining liability and causation.  Dr. Johanning's opinions are admissible and will assist the trier of fact in understanding and resolving this matter, and his testimony is admissible under F.R.E. 702.  Wherefore, the Plaintiffs respectfully request that this District Court enter an Order Denying the Defendant Housemaster's Motion to Preclude Expert Report and Testimony of Eckardt Johanning, M.D.

Respectfully submitted,

TARASI, TARASI & FISHMAN, P.C.

By:_____
Gianni Floro, Esquire
PA ID No. 85837
Attorney for the Plaintiffs
510 Third Avenue
Pittsburgh, PA  15219
P:  (412) 391-7135
F:  (412) 471-2673

9