**THOMAS, THOMAS & HAFER, LLP**  
305 North Front Street  
P.O. Box 999  
Harrisburg, PA 17108

**John Flounlacker, Esquire**  
Attorney I.D. 73112  
(717)237-7134  
Attorneys for Defendant Edleman

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACK MARRONE, husband, KAREN MARRONE, wife, both individually and in their capacity as parents and guardians for VIDA MARRONE, a minor, and MATTHEW ADAM MARRONE<br>　　　　Plaintiffs<br><br>　　　　v.<br><br>ALLSTATE INSURANCE COMPANY, LINDA M. EDLEMAN, FRED SCHAFER, MT. GRETNA REALTY, and HOUSEMASTERS<br>　　　　Defendants | NO.: 1:CV-01-0773<br><br>Electronically Filed<br><br>JUDGE KANE<br><br>Civil Action Law<br><br>Jury Trial Demanded |

### DEFENDANT LINDA M. EDLEMAN'S REPLY BRIEF
### IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**I.   The Affidavit Of Tom Moore And Dr. Johanning Are Improper And Should Be Stricken**

Attached to Plaintiffs' brief in opposition to this motion for summary judgment as Exhibit 14 is the "Supplemental Affidavit of Tom Moore," Plaintiffs' home inspection expert. Additionally, attached as Exhibit 13 is the "affidavit" of Dr. Johanning, which Plaintiffs previously attempted to improperly file as an expert report, and moving Defendant sought to strike, last November. Both are completely improper.

**A.   Tom Moore's Supplemental Affidavit**

In Moore's "affidavit," he supplements his expert report by reaching further conclusions with regard to what should have been found during the original home inspection conducted by Defendant Housemasters. These are, in reality, supplemental

expert reports. This is the second time in <u>this case</u> that Plaintiffs' and their counsel have engaged in such activities.[1]

Final expert reports have been in, pursuant to this Court's orders, since January 31, 2003. <u>See</u> January 14, 2003 case management order. Now, Plaintiffs attempt to fill holes in their expert reports which are the partial basis for motions for summary judgment by filing affidavits which have the effect of a supplemental expert report. This is impermissible.

Further, an expert's affidavit, although not necessarily based upon personal knowledge as required under Rule 56(e), is eligible for summary judgment consideration if the affiant would be permitted to testify as an expert at trial. <u>1836 Callowhill St. v. Johnson Controls</u>, 819 F.Supp. 460, 462 (E.D. Pa. 1993). This is not the case.

Setting aside for the moment Plaintiffs' blatant attempt to circumvent this Court's Orders, and Plaintiffs' past behavior, Moore would not be permitted to testify regarding these brand new conclusions at trial. No report dealing with such a conclusion was ever received by the moving Defendant in discovery. In fact, even though Tom Moore's reports have been produced for years, the first mention of these new conclusions regarding causation ironically appear after a motion for summary judgment points out flaws in Plaintiffs' case. Since these conclusions are outside of the scope of the conclusions noted in Moore's original report, and the affidavit is procedurally improper as a supplemental expert report, it should be stricken from Plaintiffs' response.

---

[1] When Defendant Edleman's original motion for summary judgment was filed Plaintiffs attempted to cure the deficiencies pointed out in the motion with "expert affidavits" by Dr. Johanning, who was to that point non-existent in this case. In fact, it is this <u>exact same</u> affidavit that Plaintiffs seek to submit now.

B.    **Affidavit Of Dr. Eckardt Johanning**

As with the "affidavit" of Tom Moore, Plaintiffs seek to fill holes in their expert case by having their medical expert file an improper affidavit, to which Plaintiffs would like this Court to give expert weight. Again, this is completely improper.

Defendant Edleman would note that Dr. Johanning's reports were the subject of the numerous motions filed before this Court in the Fall of 2002. Plaintiffs were permitted to file expert reports even <u>after</u> the affidavit which Plaintiffs seek to have this Court consider was drafted. Yet, the expert report filed for Plaintiff Matthew Marrone does not reach a conclusion. Now, Plaintiffs seek yet <u>another</u> bite at the apple after numerous chances have been graciously given by this Honorable Court to further file expert reports for Dr. Johanning. This cannot be allowed to continue.

In addition to the arguments noted above with regard to the circumvention of this Court's Orders, Dr. Johanning would not, like Tom Moore, be able to testify regarding these conclusions at trial. Thus, they should not be considered by this Court.

Additionally, the affidavit of Dr. Johanning is fatally flawed. The Affidavit is an unsworn memorandum which was not made under oath or affirmation and as such, should be stricken from Plaintiffs' response as violative of the rules of civil procedure.

Federal Rule of Civil Procedure 56(e) requires that affidavits and other materials submitted in support or opposition to a motion for summary judgment be sworn or certified. Fed.R.Civ.Pro. 56(e); <u>Tukesbrey v. Midwest Transit, Inc.</u>, 822 F.Supp. 1192, 1198 (W.D. Pa. 1993). Matters which are not sworn or certified should be stricken. <u>Tukesbrey</u>, 822 F.Supp. at 1198; <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 n.16 (1970) (noting that if a statement in an affidavit is unsworn and not in the record from

the proceedings, it cannot be considered by the trial court).  Nonetheless, 28 U.S.C. § 1746 provides that unsworn written declarations which substantially conform to a statutorily prescribed form and are dated and signed by the maker can have the same force and effect as sworn declarations.  28 U.S.C. § 1746; Tukesbrey v. Midwest Transit, Inc., 822 F.Supp. 1192, 1198 (W.D. Pa. 1993).  The form provided by the statute is: "I declare (certify, verify or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date)."  See id.  Matters which are unsworn or which do not possess such certification should be stricken.  Tukesbrey, 822 F.Supp. at 1198.

Not only is the Affidavit of Eckhardt Johanning unsworn which violates Rule 56(e), but it possesses no such certification as permitted by 28 U.S.C. § 1746.  The Affidavit first swears that Johanning personally appeared before the Notary, written from the perspective of the Notary.  However, there is no Notary Public attestation, signature, seal, commission stamp, or any evidence whatsoever that a Notary was even present in the room with Johanning.  In fact, there is nothing from a Notary at all, merely blank lines where presumably a Notary could have sworn Johanning.

Moreover, the Affidavit does not have Johanning swear to anything at all.  It merely states that the Notary swears Johanning was there, but there was no Notary Public and no oath administered.  Paragraph 3 states that the facts and opinions in the report are based on personal knowledge and experience, but the Affidavit contains no oath, no certification, no recognition of perjury charges, no swearing to the truth of its contents or anything that could be construed as satisfying either Rule 56(e) or 28 U.S.C. § 1746.  For this reason, the Affidavit of Eckhardt Johanning and all references and reliance upon the same should be stricken from Plaintiffs' Brief.

II. **Plaintiffs Have Failed To Set Forth A Case For Misrepresentation**

Plaintiffs make bold, boilerplate conclusions of law and stretch the facts of this case. Defendant Edleman submits that regardless, Plaintiffs have failed to set forth a cause of action under Counts III, IV or V.

As noted by Plaintiffs in their brief in opposition, the basis for the claims of misrepresentation is that there was a water/dampness problem that Defendant Edleman concealed with remedial work of which Plaintiffs had no knowledge. In fact, this did not occur in the present case.

A. **Causation**

Plaintiffs are still unable to prove causation in the present case. There is no clear and convincing proof that even had a misrepresentation been made as to the dampness/water problem in the basement which allegedly existed at the time of the sale, it was this that caused the "mold explosion" eleven months later. In fact, Plaintiffs' own expert notes that it was a <u>recent</u> coming together of numerous factors that likely caused the mold growth. Exhibit D, p. 4 (attached to the motion for summary judgment). Moreover, Plaintiffs' brief in opposition fails to deal with the causation issue at all, simply spending numerous pages arguing about how a misrepresentation was allegedly made.

Regardless, Plaintiffs must prove that any misrepresentation <u>caused</u> the injuries they allege. In this case, Plaintiffs' alleged injuries were caused by the growth of mold which occurred eleven months after the sale of the home. There is no proof, expert or otherwise, that any condition existing at the time of the sale could have caused such a growth eleven months later and given the distance in time, expert testimony is required

as there is no obvious causal relationship. Niklaus v. Vivadent, Inc., 767 F.Supp. 94, 96 (M.D. 1991). Plaintiffs fail to set forth any such proof and as such, Defendant Edleman is entitled to judgment as a matter of law.

### B.      Misrepresentation, Knowledge and Reliance

Second, the exact water/dampness problem of which Plaintiffs claim they had no knowledge was pointed out and described in the Housemasters home inspection report. Plaintiffs contend that there were limitations placed on the inspection which prevented the water problem from being seen, such as the inability to take down paneling. See Brief in opposition, p. 4-5. There is no merit to Plaintiffs' contention.

Even with such limitations, Housemasters' report noted the problem during its home inspection during which the Plaintiffs were present. In other words, Plaintiffs had knowledge of this exact condition from the report and being present during the inspection. Plaintiffs now claim that even though their home inspector showed and notified Plaintiffs of the water/dampness problem in the basement, they were unaware of such a problem and relied upon Defendant Edleman's alleged representations. This is simply meritless. Plaintiffs were aware of the condition from a home inspector well before the sale took place, and still opted to purchase the home. Thus, Plaintiffs cannot show reliance and therefore, Defendant Edleman is entitled to judgment as a matter of law.

Additionally, Plaintiffs cite the case of Myers v. McHenry, 580 A.2d 860 (Pa.Super. 1990), for the proposition that the question of whether reliance is justified is a question for the jury. Brief in opposition, p. 12-13. Plaintiffs have incorrectly cited this case, and overstate that court's position.

In <u>Myers</u>, the court specifically stated that under the facts of that case "[w]e cannot conclude that as a matter of law, the Myerses' reliance was unjustifiable." <u>Myers</u>, 580 A.2d at 865. The court then went on to say that the question should then be one decided by a jury. <u>Id</u>. To the extent that Plaintiffs here cite <u>Myers</u> for the proposition that the question of whether a claim of reliance on statements was justified is for a jury, is wholly incorrect.

In the present case, Plaintiffs claim to have relied upon alleged statements made by Defendant Edleman when they <u>knew</u> the opposite to be true. Given these facts, summary judgment is appropriate.

### C. Abrogation Of Duty

Further, Plaintiffs contend that regardless of whether the Real Estate Sellers Disclosure Act ("RESDA") abrogated Defendant's duty to disclose, Plaintiffs raise a common law claim for misrepresentation which would not be abrogated. Defendant Edleman submits that the provision in RESDA mimics the common law and therefore, regardless of whether under common law or RESDA, Defendant Edleman's duty to disclose was abrogated. The fact remains that sellers have a duty to disclose dangerous <u>latent</u> defects, not knowable ones.

Plaintiffs only partially quote the case of <u>Quashnock v. Frost</u>, 445 A.2d 121 (Pa.Super. 1982). As that court went on to say when discussing a condition which would have to be pointed out to the prospective buyers, "[t]hus, if the condition is readily ascertainable upon a reasonable examination, then the seller is not under a duty to disclose." <u>Id</u>. at 126. When there is a serious and dangerous latent defect known to the seller, then he must disclose such defect to the <u>unknowing</u> buyer or suffer liability for his

failure to do so. <u>Gozon v. Henderson-Dewey & Assoc., Inc.</u>, 458 A.2d 605, 607 (Pa.Super. 1983) (emphasis added).

In the present case, Plaintiffs were made aware of the exact condition of which they complain, by their own home inspector. Plaintiffs received a copy of the report noticing such water damage, as well as suggestions regarding how such water infiltration could be stopped. Plaintiffs were even present during the home inspection when the evidence of a water/dampness problem were found. Plaintiffs were far from an "unknowing buyer." Whether under the RESDA or under common law, Plaintiffs were well-aware of any water/dampness problem of which they complain and thus Defendant Edleman's duty to disclose such a condition was abrogated.

Plaintiffs cite to <u>Gozon v. Henderson-Dewey & Associates, Inc.</u>, 458 A.2d 605 (Pa.Super. 1983), in their brief for the proposition that an unknowing buyer must be told of any dangerous latent defects. Brief in opposition, p. 9. The facts of <u>Gozon</u>, however, shed light on Defendant Edleman's position in this case.

In <u>Gozon</u>, the buyers of a home sued the seller for losses they allegedly suffered because of defects in the house which they had purchased a few years before. <u>Gozon</u>, 458 A.2d at 606. The complaint alleged that the seller had misrepresented the condition of the house and an adjacent pool. <u>Id</u>. The court took the claims one defect at a time.

As for the pool, discovery revealed that it was visible that the pool needed work, although it turned out that the pool need much more work than what was thought. . Discovery revealed that it was visible that the pool needed work, although it turned out that the $1,600 estimate given by the sellers was incorrect and the pool needed close to

8

$12,000 in work. Id. There were no personal guarantees by the seller that the pool needed only $1,600 in work. Id. The court found that regardless of the amount of work which ended up being necessary, the buyers were put on notice of the problem. Id. If the costs to repair the pool were a concern, it was incumbent upon the sellers to thoroughly investigate the cost as they were certainly on notice of the defect. Id.

Next, the sellers complained of leakage in the house. Id. at 607. During the purchasing process, the sellers were told that any leakage problem had been fixed. Id. The court found that although the problem recurred, and perhaps the seller had not adequately dealt with the problem to begin with, the problem was evident during the inspection of the home and thus, the buyers were on notice of the problem. As such, the problem cannot be latent when the buyer had notice of the defect. Id.

Finally, the buyers complained that there was a vibration which could be detected when people walked on the first floor of the house. Id. When the problem was noted shortly after moving in, the buyers went into the basement and saw a cut in the joist beneath the living room. Id. Further inspection indicated that the beams were very defective and such defects caused the vibration and a "hump" which was visible in the first floor. Id. The court noted that while buyers of a home which turns out to be imperfect may be dissatisfied with their purchase, liability cannot be imposed on the sellers in this case. Id. The condition of the joist was no concealed and the basement was inspected before the purchase of the home and could have been found. Id. As such, regardless of whether this was a "dangerous" defect, it was not latent and the sellers were under no duty to disclose the condition. Id.

The present case is much the same as Gozon. Here, Plaintiffs inspected the basement with their own home inspector. Once there, it was found that there was a water/dampness leakage problem. These findings are noted in the inspector's report, and Plaintiffs were present and must have been very well aware of them. Moreover, remedial work was found to be present downstairs. Again, Plaintiffs were very much aware of these findings as they were present during the inspection. In fact, Plaintiffs were told how they could remedy the problem.

Even assuming that the remedial work did not remedy the problem, as in Gozon, Plaintiffs were well-aware of the water condition. It was evidenced upon inspection. Defendant Edleman cannot be held responsible for the problem recurring or getting worse. The fact remains that Plaintiffs were aware of the problem, and therefore it is not a latent defect. As such, Defendant Edleman's duty to disclose such a condition was abrogated, both under the RESDA and common law, and she is entitled to judgment as a matter of law.

### III. Partial Summary Judgment As To Plaintiff Matthew Marrone Is Proper

Plaintiffs have argued nothing that changes the allegations made in Defendant Edleman's motion for summary judgment and therefore, judgment as a matter of law is appropriate.

Plaintiffs first claim that, "in effect" Dr. Johanning stated within a reasonable degree of medical certainty an opinion regarding Matthew Marrone's alleged injuries. A review of his expert report, however, clearly reveals that this is not the case.

Further, Plaintiffs repeatedly cite to Fidelity Bank v. Tiernan, 375 A.2d 1320, 1330 (Pa.Super. 1977), for the proposition that determinations such as the adequacy of

an expert's report is a question of fact. Not only does this completely misconstrue the law, but Plaintiffs citation is fatally flawed.

A jury cannot consider fatally flawed expert opinions, such as those which do not reach opinions to a degree of medical certainty. Shultz v. Celotex Corp., 942 F.2d 204, 209 (3rd Cir. 1991). Thus, the court first considers the adequacy of such opinions. Id. at 208-209. Thus, Plaintiffs argument is meritless.

Additionally, the citation upon which Plaintiffs rely, Fidelity Bank v. Tiernan, 375 A.2d 1320, 1330 (Pa.Super. 1977), cites to the concurring opinion of a vacated Pennsylvania Superior Court case. Thus, there is no authority to support Plaintiffs' position. As such, partial summary judgment as to Plaintiffs Matthew Marrone is proper.

### IV.   Conclusion

For the reasons set forth at length above, Defendant Edleman respectfully requests that this Honorable Court grant her Motion for Summary Judgment as to Counts III, IV and V. In the alternative, Defendant Eldeman submits that partial summary judgment should be granted as to any claims made by Plaintiff Matthew Marrone.

Respectfully submitted,

**THOMAS, THOMAS & HAFER, LLP**

By:   s/John Flounlacker
        John Flounlacker, Esquire
        Shawn E. Smith, Esquire
        P.O. Box 999
        Harrisburg, PA  17108-0999

Date:  June 11, 2003        (717)237-7134

CERTIFICATE OF SERVICE

I, John Flounlacker, Esquire, of the law firm Thomas, Thomas & Hafer, LLP, hereby state that a true and correct copy of the foregoing document(s) was served upon all counsel of record by first class United States mail, postage prepaid, addressed as follows, on the date set forth below:

By First Class U.S. Mail:

Gianni Floro, Esquire
Tarasi, Tarasi & Fishman, P.C.
510 Third Avenue
Pittsburgh, PA  15219

James G. Nealon, III, Esquire
2411 North Front Street
Harrisburg, PA  17110

Edward A. Monsky, Esquire
Fine, Wyatt & Carey, P.C.
P.O. Box 590
Scranton, PA  18501-0590

Jennifer L. Murphy, Esquire
Duane Morris & Heckscher
305 N. Front Street
P.O. Box 1003
Harrisburg, PA 17108

Joel D. Gusky, Esquire
Harvey, Pennington, et al.
Eleven Penn Center, 29th Floor
1835 Market Street
Philadelphia, PA  19103-2989

                                       THOMAS, THOMAS & HAFER, LLP

                                       s/ John Flounlacker
Dated:  June 11, 2003                    John Flounlacker