IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACK MARRONE, KAREN MARRONE, both individually and in the capacity as parents and guardians for VIDA MARRONE, a minor, and MATTHEW MARRONE,　　Plaintiffs | : : : : CIVIL ACTION - LAW : : : : |
| v. | : CASE NO.: 1:CV-01-0773 : |
| ALLSTATE INSURANCE COMPANY, LINDA M. EDELMAN, FRED SCHAFER, MT. GRETNA REALTY, and HOUSEMASTER,　　Defendants | : JURY TRIAL DEMANDED : : (JUDGE KANE) : : : |

**DEFENDANT HOUSEMASTER'S REPLY BRIEF IN SUPPORT
OF MOTION TO PRECLUDE EXPERT REPORTS AND TESTIMONY OF
ECKARDT JOHANNING, M.D.**

**I.   INTRODUCTION**

Defendant HouseMaster respectfully submits this Reply Brief in support of its Motion To Preclude Expert Reports and Testimony of Eckardt Johanning, M.D. Plaintiffs here have failed to demonstrate that Dr. Johanning's proffered reports and testimony are both reliable and relevant to assist the trier of fact with regard to the issue of general and specific medical causation. Accordingly, such reports and testimony must be precluded from trial at this matter and Plaintiffs' claims for bodily injury damages stricken.

II. **REPLY TO PLAINTIFFS' ARGUMENT**

    A. **THE EXPERT REPORTS AND TESTIMONY OF ECKARDT JOHANNING, M.D., SHOULD BE PRECLUDED FROM EVIDENCE IN THIS MATTER**

It is well established that the test of admissibility of an expert opinion is whether the "particular opinion is based on valid reasoning and reliable methodology." Kannankeril v. Terminex International Inc., 128 F.3d 802, 806 (3d Cir. 1997). Here, contrary to Plaintiffs' bald and conclusory contentions otherwise, Dr. Johanning's expert reports and testimony do not meet these conditions precedent to admissibility and, therefore, must be precluded from evidence at trial.

        1. **Plaintiffs Have Not And Cannot Prove General Causation**

Dr. Johanning's conclusions with respect to general causation of Plaintiffs' injuries are not supported by reliable methodology. Plaintiffs, in their Opposition Brief, do not even appear to address the majority of HouseMaster's arguments concerning general causation, including the failure to meet the *Bradford-Hill* criteria and the lack of temporal proximity. HouseMaster has fully briefed this arguments in its original Brief and will not repeat the entirety of the arguments here. Simply stated, although case law does not require that Dr. Johanning's causation opinion be based upon published scientific evidence or studies, this Court may take into consideration the fact that he relied on few, if any studies

linking mold exposure to certain symptoms/illnesses.[1]  Heller, 167 F.3d at 158-159.  This, coupled with the weak temporal relationship between the exposure and alleged injuries and the unreliable differential diagnosis (as discussed more fully *infra*), compels the conclusion that Dr. Johanning had no valid means for concluding that the exposure to mold at the subject home was the cause of Plaintiffs' alleged bodily injuries.  "Dr. [Johanning's] conclusion had to 'fit' with the data and methodology that precedes it."  Id. at 159 (citing In re Paoli Railroad PCB Litigation, 35 F.3d 717, 746 (3d Cir. 1994)("Paoli II")).  It does not and, consequently, Dr. Johanning's opinions and reports must be excluded from evidence.

### 2. Plaintiffs Have Not And Cannot Prove Specific Causation

As noted in HouseMaster's original Brief, Dr. Johanning's expert reports and testimony should be excluded from evidence at trial because his "differential diagnosis" fails to adequately rule out alternative possible causes for Plaintiffs' alleged personal injuries.

Plaintiffs argue in their Opposition Brief that Dr. Johanning's use of differential diagnosis constituted a sufficient diagnostic technique and, thus, "good grounds" for his conclusions that mold exposure in the subject property

---

[1] In fact, to date, the only published evidence linking mold exposure to adverse reactions that Plaintiffs and Dr. Johanning appear to have relied upon is the Bible, Leviticus Chapter 14.  See Opposition Brief, p. 7.

specifically caused Plaintiffs' bodily injuries.  "Differential diagnosis" is defined as "a standard scientific technique which identifies the cause of a medical problem by eliminating the likely causes until the most probable one is isolated." Magistrini v. One Hour Martinizing Dry Cleaning, 180 F. Supp. 2d 584, 609 (D.N.J. 2002)(citing Baker v. Dalkon Shield Claimants Trust, 156 F.3d 248, 252-53 (1st Cir.1998)); see also Kannankeril, 128 F.3d at 807 ("differential diagnosis is defined for physicians as the determination of which of two or more diseases with similar symptoms is the one from which the patient is suffering, by a systematic comparison and contrasting of the clinical findings.'"); Paoli II, 35 F.3d 717, 758 ("Differential diagnosis can be considered to involve the testing of a falsifiable hypothesis . . . through an attempt to rule out alternative possible causes . . .."). And differential diagnosis has been found to be a reliable technique to establish causation, **when it is properly performed**.  Id. at 758-759 (observing that a differential diagnosis, when properly performed, exhibits many of the indicia of reliability identified in *Daubert* and *Paoli II,* in that it generally involves the "testing of a falsifiable hypothesis," enjoys "widespread acceptance in the medical community," has been "subject to peer review," and, when properly applied, "does not frequently lead to incorrect results.").  A reliable differential diagnosis is typically "performed after 'physical examinations, the taking of medical histories, and the review of clinical tests,' and generally is accomplished by determining the

4

possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching the one that cannot be ruled out, or determining which of those that cannot be excluded is the most likely." Magistrini, 180 F. Supp. 2d at 609.

In the instant case, however, Dr. Johanning failed to properly perform the technique, thereby rendering his methodology unreliable. In particular, Dr. Johanning failed to specifically negate other alternative possible causes for Plaintiffs' alleged personal injuries. Yarchak v. Trek Bicycle Corp., 208 F.Supp.2d 470, 497 (D.N.J. 2002)(citing Turbe v. Robert A. Lynch Trucking, Inc., 41 V.I. 146, 155 (Terr. Ct. 1999)("At the core of a differential diagnosis is a requirement that experts rule out obvious alternative causes")). Although an expert is not required to rule out every possible cause of a plaintiff's illness for purposes of establishing medical causation, "[o]bvious alternative causes need to be ruled out." Daniel J. Capra, The *Daubert* Puzzle, 32 Ga.L.Rev. 699, 728 (1998) (quoted in Heller v. Shaw, 167 F.3d 146, 156 (3d Cir. 1999)).[2]

---

[2] In their Opposition Brief, Plaintiffs cite to Heller v. Shaw, supra, for the proposition that a medical expert is not required to rule out alternate possible causes when employing the technique of differential diagnosis. Opposition Brief, pp. 5, 8. This, however, is a misstatement of the law. To the contrary, the Court in Heller specifically held that "obvious alternative causes need to be ruled out." Heller, 167 F.3d at 156.

5

In response, Plaintiffs argue only that "Dr. Johanning properly considered the possible alternative causes of the Plaintiffs' symptoms, and concluded that within a reasonable degree of medical certainty that 'this was a result of the exposure in the described contaminated house.'" Opposition Brief, p. 4. However, a review of Dr. Johanning's expert reports reveal that they are completely devoid of explanation or analysis, reasonable or otherwise, regarding any possible alternate causes of Plaintiffs' alleged injuries. Differential diagnosis is particularly significant in this action due to the substantial evidence regarding Plaintiffs' prior histories of post traumatic stress disorder, depression, COPD, multiple sclerosis, fatigue, rhinosinusitis, blurry vision, eye and skin irritation, smoking and exposure to second-hand smoke. Despite this, Plaintiffs have failed to offer any discussion for dismissing or discounting these factors as causes of Plaintiffs' bodily damages.

It is well-settled that "[w]here the defendants pointed to some likely cause of the plaintiff's illness other than the defendants' actions and [the doctor] offered no reasonable explanation as to why he or she still believed that the defendants' actions were a substantial factor in bringing about that illness," that doctor's methodology is unreliable. Paoli II, 35 F.3d at 759 n. 27, 760; see also Diaz v. Johnson Matthey, Inc., 893 F. Supp. 358, 376 (D.N.J. 1995)(excluding expert medical testimony on issue of specific causation where physician "did little, if anything, to rule out alternative causes" and either "ignored" or offered "no

6

satisfactory reason" for discounting "several alternative possible causes" for plaintiff's asthma identified by defendant).  Since Dr. Johanning has failed to rule out the above-referenced obvious alternate causes for Plaintiffs' alleged injuries, his methodology is not sufficiently reliable to satisfy Rule 702's standard of admissibility.  Dr. Johanning's reports and opinions should, therefore, be precluded from passing through this Court's "gate" to the jury.

### III.  **CONCLUSION**

In sum, the opinions and proffered testimony of Dr. Johanning are not the product of reliable principles and methods. For this reason, the Court must conclude that the proposed expert reports and testimony of Dr. Johanning does not meet the standards imposed under *Daubert* and its progeny and Dr. Johanning must be precluded from testifying at the trial of this matter.

For the foregoing reasons, Defendant HouseMaster respectfully requests this Court to preclude the expert reports and testimony of Eckardt Johanning, M.D. at trial in this matter and to dismiss Plaintiffs' claims for personal injury damages.

DUANE MORRIS LLP

                                                                         By: s/ Jennifer L. Murphy
                                                                             James J. Kutz, Esq.
Attorney ID. No. 21589
Jennifer L. Murphy, Esq.
Attorney ID. No. 76432
305 North Front St., 5th Floor
P.O. Box 1003
Harrisburg, PA 17108-1003
(717) 237-550

Date: June 20, 2003

## **CERTIFICATE OF SERVICE**

AND NOW, this 20t$^h$ day of June, 2003, I hereby certify that I, Jennifer L. Murphy, caused to be served a copy of the Defendant HouseMaster's Reply Brief in Support of Motion to Preclude Expert Reports and Testimony of Eckardt Johanning, M.D. on the following by depositing a true and correct copy of the same in the U.S. Mail at Harrisburg, Pennsylvania, postage prepaid, addressed to:

James G. Nealon, III, Esquire
Nealon & Gover, P.C.
2411 North Front Street
Harrisburg, PA  17110

John Flounlacker, Esquire
Thomas, Thomas & Hafer, LLP
305 North Front Street
Harrisburg, PA 17108

Edward A. Monsky, Esquire
Fine, Wyatt & Carey, P.C.
425 Spruce Street
Scranton, PA  18501-0590

Gianni Floro, Esquire
Tarasi, Tarasi & Fishman, P.C.
510 Third Avenue
Pittsburgh, PA  15219

Joel D. Gusky, Esquire
Harvey, Pennington, Cabot, Griffith & Renneisen, Ltd.
Eleven Penn Center
1835 Market Street, 29th Floor
Philadelphia, PA  19103

By:  s/ Jennifer L. Murphy
Jennifer L. Murphy