**THOMAS, THOMAS & HAFER, LLP**
305 North Front Street
P.O. Box 999
Harrisburg, PA 17108

**John Flounlacker, Esquire**
Attorney I.D. 73112
(717)237-7134
Attorneys for Defendant Edleman

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACK MARRONE, husband, KAREN
MARRONE, wife, both individually and
in their capacity as parents and guardians
for VIDA MARRONE, a minor, and
MATTHEW ADAM MARRONE
Plaintiffs

v.

ALLSTATE INSURANCE COMPANY,
LINDA M. EDLEMAN, FRED SCHAFER,
MT. GRETNA REALTY, and
HOUSEMASTERS
Defendants

:  NO.: 1:CV-01-0773
:
:
: Electronically Filed
:
:
:  JUDGE KANE
:
:  Civil Action Law
:
:
:  Jury Trial Demanded
:

## APPENDIX IN SUPPORT OF DEFENDANT LINDA M. EDLEMAN'S MOTION *IN LIMINE*

   s/John Flounlacker
John Flounlacker, Esquire
Attorney I.D. No. 73112
Shawn E. Smith, Esquire
Attorney I.D. No. 86121
THOMAS, THOMAS & HAFER, LLP
P.O. Box 999
Harrisburg, PA 17108-0999
(717)237-7134
Attorneys for Linda M. Edleman

## TABLE OF CONTENTS

| Description of Documents | Exhibit |
|---|---|
| Plaintiffs' Amended Complaint | A |
| Memorandum and Order of Court, Dated January 14, 2003 | B |
| Amended Case Management Order, Dated April 29, 2003 | C |
| Reports of Dr. Johanning | D |

# **<u>EXHIBIT A</u>**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JACK MARRONE, husband, KAREN          :
MARRONE, wife, both individually and  :
in their capacity as parents and guardians  :     Civil Action No.    1: CV-01-0773
for VIDA  MARRONE, a minor, and       :
MATTHEW ADAM MARRONE,                 :
                          Plaintiffs   :
                                       :
        vs.                            :
                                       :
                                       :
ALLSTATE INSURANCE COMPANY,           :
LINDA M.  EDLEMAN, FRED SCHAFER,      :
MT.  GRETNA REALTY, and               :     JURY TRIAL DEMANDED
HOUSE MASTERS                         :
                          Defendants   :

RECEIVED
SCRANTON
NOV - 2 2001
PER_____
DEPUTY CLERK

## AMENDED COMPLAINT

        AND NOW COMES, the Plaintiffs, by and through their counsel, Stevens & Johnson, and

for their Complaint states and alleges the following:

## JURISDICTION

        1.      Plaintiffs seek jurisdiction of this Court under Diversity of Citizenship pursuant to

28 U.S.C. § 1332.  Plaintiffs are citizens of the State of Missouri.  Defendant Allstate Insurance

Company, is duly incorporated in the State of Delaware, with its corporate headquarters located in

Illinois. Defendant Linda M. Edleman is a citizen of Pennsylvania, Defendant, Mt. Gretna Realty is located in Pennsylvania, Defendant Housemasters is an independently owned franchise located in Pennsylvania. The matter in controversy exceeds, exclusive of interests and costs, the sum specified by 28 U.S.C. § 1332.

## PARTIES

2.     Plaintiffs, Jack Marrone and Karen Marrone, are both adults, who are husband and wife, and reside at 11673 Highway PP, Dixon, Missouri. They are the natural guardians of Vida Marrone, their daughter.

3.     Plaintiff, Vida Marrone, is a sixteen (16) year old minor, and daughter of Jack and Karen Marrone and resides with her parents at 11673 Highway PP, Dixon, Missouri.

4.     Plaintiff, Matthew Adam Marrone, is an adult residing at 308 Sherman Avenue, Lebanon, Missouri.

5.     Defendant, Allstate Insurance Company is a corporation, duly incorporated in the State of Delaware, with its corporate headquarters located at Allstate Plaza, 2775 Sanders Road, Northbrook, Illinois.

6.     Defendant, Linda M. Edleman, is an adult woman residing at 82 Norway Lane, Lebanon, Lebanon County, Pennsylvania.

7.     Defendant, Fred Schafer, was Defendant Edleman's real estate agent and is located at 83 Columbia Avenue, Mt. Gretna, Lebanon County, Pennsylvania.

8.     Defendant, Mt. Gretna Realty, is located at 83 Columbia Avenue, Mt. Gretna, Lebanon County, Pennsylvania.

2

9.    Defendant, HouseMasters, is an independently owned franchise, located at 203, West Caracas Avenue, Hershey, Dauphin County, Pennsylvania.

10.    At all relative times hereto, Defendants Allstate, Mt. Gretna Realty, and HouseMasters, were acting through their respective agents, servants, employees, and ostensible agents who were acting within the course and scope of their employment with the above listed Defendants and under the exclusive control of said Defendants.

## BACKGROUND

11.    On or about June of 1999, the Plaintiffs came to Pennsylvania to look for a home.

12.    On or about July of 1999, the Plaintiffs found the home at issue, located at 354 Kimber Road, Mt. Gretna, Lebanon County, Pennsylvania, owned at that time by Defendant Linda M. Edleman.

13.    Mt. Gretna Realty, at all relevant times, acted as the agent of the seller, Linda M. Edleman, in the sale of the property at issue, and as such knew, or should have known, due to previous experience in the sale of homes in the neighborhood, of the potential for water/dampness and mold problems with the house at issue.

14.    On or about July 30, 1999, the Plaintiffs hired Defendant HouseMasters, to inspect said home, who did so through their agent, servant, employee, or ostensible agent.

15.    Said inspection was for any problems associated with the purchase of a dwelling.

16.    Said inspection noted water stains in the basement and without further inspection HouseMasters recommended to "slope soil away from house; keep down spouts clean and flowing, or consider extending spouts onto surface."

3

17.    Plaintiffs, relying on said report, complied fully with said recommendation.

18.    Defendant Allstate issued an insurance policy covering the property at issue which became effective August 25, 1999.

19.    Prior to completing the purchase, Defendant Edleman, pursuant to 68 P.S. §1024, provided a Seller's Property Disclosure Statement specifically denying any basement dampness/water problems or leakage problems.

20.    On or about August 31, 1999, Plaintiffs completed the purchase of said home and the Plaintiffs immediately took possession and occupied said property relying on the representations of all of the Defendants except Defendant Allstate.

21.    All of the contracts referred to in this suit have in addition to the other terms, the implied covenant of "good faith."

22.    On or about July of 2000, the Plaintiffs went away on vacation, and returned one (1) week later to find the basement covered in mold. Said mold covered the walls, ceiling, floor, and furniture. This was the first time that the Plaintiffs had any notice of this problem.

23.    Plaintiffs immediately contacted Defendant Allstate and filed an insurance claim.

24.    Defendant Allstate's agent, servant, employee, or ostensible agent, at all times acting in the course and scope of his employment, performed only a cursory and superficial inspection, and in a letter dated August 10, 2000, denied coverage claiming said damage was the result of a "preexisting condition" and therefore not covered by Plaintiffs' policy.

25.    The cause of the "so called" preexisting condition was not stated.

26.    There was also no statement that Plaintiffs should have somehow been aware of the

4

condition.

27.    Despite Defendant Allstate's involvement in similar litigation concerning the health hazards posed by mold, at no time did Defendant Allstate, or its agents, servants, employees, or ostensible agents, who now had actual knowledge of the mold problem, inform or otherwise make known to the Plaintiffs the possibility of potential health problems related to the growth of mold, or other organic toxins.

28.    Plaintiffs, being unaware of the potential catastrophic dangers created by mold remained in the home.

29.    As between Plaintiffs and Defendant Allstate, an unknown condition, does not meet the test of a preexisting condition; or in the alternative, the test for preexisting condition in this policy is either ambiguous or unenforceable.

30.    On or about August 28, 2000, the Plaintiffs had their home inspected by Advanced Applied Sciences, Inc., whose corporate headquarters is located at 4400 Linglestown Road, Harrisburg, Pennsylvania.

31.    Said inspection consisted of a bioaerosol survey.

32.    On or about September 29, 2000, as a result of a telephone conversation with Advanced Applied Sciences, Inc., the Plaintiffs learned the results of the aforementioned testing.

33.    Plaintiffs learned that there was a finding of "fungal contaminations in the house" consisting of, but not limited to, Aspergillus, Stachybotrys, Penicillium, Alternaria, Chrysosporium, Epicoccum, and Cladosporium, said inspection also revealed a relative humidity level in    the basement 21% higher than that found outside the house.

34.    Having learned that the toxic levels in the house were unsafe, the Plaintiffs, as a result, were forced to vacate the premises.

35.    As a direct and proximate result of exposure to said fungal toxins, Plaintiff, Jack Marrone has suffered and will continue to suffer from among other things:

(a)    memory loss

(b)    mood swings

(c)    depression

(d)    severe fatigue

(e)    sexual dysfunction

36.    As a direct and proximate result of exposure to said fungal toxins, Plaintiff, Karen Marrone has suffered and will continue to suffer from among other things:

(a)    hair loss

(b)    abdominal cramping

(c)    diarrhea

(d)    sinusitis

(e)    phlegm and coughing

(f)    fever

(g)    dry and itching skin

(h)    loss of concentration

(i)    loss of cognitive functions

(j)    severe fatigue

6

(k)    severe loss of voice

37.    As a direct and proximate result of exposure to said fungal toxins, Plaintiff, Vida Marrone has suffered and will continue to suffer from among other things:

(a)    hair loss

(b)    sinusitis

(c)    continuous headaches

(d)    diarrhea

(e)    cramping

(f)    severe fatigue

38.    As a direct and proximate result of exposure to said fungal toxins, Plaintiff, Matthew Adam Marrone has suffered and may continue to suffer from among other things:

(a)    severe fatigue

(b)    loss of concentration

(c)    memory loss

39.    As a direct and proximate result of exposure to said fungal toxins, the Plaintiffs have suffered and will continue to suffer embarrassment, humiliation, and psychological trauma.

40.    As a direct and proximate result of said fungal toxins, the Plaintiffs have suffered financial damages, including but not limited to, the economic loss of their home.

41.    To this date, the house at 354 Kimber Road is still standing, vacant and unsalable.

42.    At all times material hereto, the Plaintiffs have met all of their obligations acquired under all contracts mentioned below.

43.    Plaintiffs now bring this action for damages caused by the Defendants bad faith, breach of contract, misrepresentations, negligence, and violations of statutes.

## COUNT I

### PLAINTIFFS v. ALLSTATE INSURANCE COMPANY
### BAD FAITH

44.    The Plaintiffs hereby incorporate paragraphs 1 through 43 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

45.    Defendant Allstate Insurance Company failed to handle the Plaintiffs' claims in a reasonable manner by failing to perform a complete and detailed investigation as to the cause of said fungal toxins.

46.    Defendant Allstate Insurance Company violated the provisions of 42 Pa. C.S.A. §8371; the Unfair Insurance Practices Act, 40 P.S. § 1171.1 et al., and the Unfair Claims Settlement Practices, Title 31, Subsection 146.1 et al.

47.    An action for bad faith may arise from an insurer's inadequate investigations. *O'Donnell v. Allstate Insurance Co.*, 734 A.2d 901 (Pa. Super. 1999).

48.    Defendant Allstate Insurance Company also acted in bad faith by failing to inform the Plaintiffs of possible health risks associated with exposure to fungal toxins, which the Defendant was or should have been aware of from such claims which were known to Defendant Allstate previously.

49.    In addition to all other monetary demands heretofore made, in order to punish Defendant Allstate Insurance Company for their bad faith and to deter other insurers from engaging

in similar activities, and to compensate Plaintiffs for the complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars together with attorneys' fees, interests, costs, and punitive damages in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant Allstate Insurance Company for payment in excess of One Hundred Thousand ($100,000.00) Dollars, plus attorneys' fees, costs, and punitive damages in excess of One Hundred Thousand ($100,000.00) Dollars.

## COUNT II

**THE PLAINTIFFS v. ALLSTATE INSURANCE COMPANY**
**BREACH OF CONTRACT**

50.    The Plaintiffs hereby incorporate paragraphs 1 through 49 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

51.    The Plaintiffs, Jack and Karen Marrone, contracted with Defendant Allstate Insurance Company to provide homeowners insurance coverage for the Plaintiffs' property which included an express or implied requirement for Defendant Allstate to fairly, in good faith, and with the exercise of reasonable care, without bad faith, to adjust covered claims by Plaintiffs.

52.    Defendant Allstate, through its agents, representatives, and employees breached the contract by performing the most simple of inspections, then coming to the immediate determination

9

that the mold infestation of the house at issue was a pre-existing condition, despite the fact that there was nothing which would indicate that Plaintiffs were aware of any alleged preexisting problem.

53.    Defendant Allstate failed to properly evaluate and pay Plaintiffs' claim within a reasonable period of time, which constituted a breach of its contract with the Plaintiffs, to properly adjust claims by the Plaintiffs.

54.    Defendant Allstate also failed to warn the Plaintiffs of the potential danger associated with mold.

55.    Defendant Allstate failed to properly apply the terms and conditions of the policy.

56.    As a direct and proximate result of Defendant Allstate's breach of contract, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant Allstate Insurance Company for payment in excess of One Hundred Thousand ($100,000.00) Dollars.

### COUNT III

### PLAINTIFFS v. LINDA M. EDLEMAN
### MISREPRESENTATION

57.    The Plaintiffs hereby incorporate paragraphs 1 through 43 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

10

58.    Defendant Edleman had a duty to disclose all material defects relating to the property at issue, pursuant to the Real Estate Seller Disclosure Act (68 P.S. § 1021 et seq.).

59.    In the Seller's Property Disclosure Statement, required pursuant to 68 P.S. § 1024, Defendant Edleman intentionally misrepresented the conditions associated with the property at issue when she indicated that there was no basement dampness/water problems or leakage problems.

60.    Defendant Edleman knew, or should have known, that said basement was prone to dampness and water problems and disclosed same as required by law.

61.    At all times material hereto, the Plaintiffs relied upon the misrepresentations of Defendant Edleman.

62.    These undisclosed problems lead to the formation of the mold in July of 2000.

63.    As a direct and proximate result of Defendant Edleman's failure to disclose said information, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, as set forth supra., and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant Edleman  for payment in excess of One Hundred  Thousand ($100,000.00) Dollars, Plaintiffs also request Rescission of the subject transaction for the sale of the property at issue and complete restitution together with a judgment ordering other incidental and consequential costs, prejudgment interest, attorneys' fees, and cost of suit.

11

## COUNT IV

### PLAINTIFFS v LINDA M. EDLEMAN
### NEGLIGENCE

64.    The Plaintiffs incorporate paragraphs 1 through 41 and 57 through 63 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

65.    Defendant Edleman had a legally imposed duty to disclose all known defects to the property at issue prior to settlement.

66.    Defendant Edleman knew or should have known of said defects to the property, in the form of dampness/water leakage in the basement.

67.    Defendant Edleman negligently breached this duty when she failed to disclose said information as was required by law.

68.    These undisclosed problems lead to the formation of the mold in July of 2000.

69.    As a direct and proximate result of Defendant Edleman's failure to disclose said information, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant Edleman for payment in excess of One Hundred Thousand ($100,000.00) Dollars, Plaintiffs also request Recision of the subject transaction for the sale of the property at issue and

complete restitution together with a judgment ordering other incidental and consequential costs,

prejudgment interest, attorneys' fees, and cost of suit.

## COUNT V

## PLAINTIFFS v. LINDA M. EDLEMAN
## BREACH OF CONTRACT

70.    The Plaintiffs hereby incorporate paragraphs 1 through 43 and 57 through 69 of their

Amended Complaint, inclusive, as though the same were set forth herein at length.

71.    The Plaintiffs, Jack and Karen Marrone, contracted with Defendant Edleman for the

purchase of her house.

72.    When Defendant Edleman agreed to said contract, she made express or implied

warranties concerning the condition of said house.

73.    Defendant Edleman breached her contract with the Plaintiffs by failing to disclose

relevant information concerning the condition of the basement prior to the sales transaction.

74.    These undisclosed problems lead to the formation of the mold in July of 2000.

75.    As a direct and proximate result of Defendant Edleman's breach of contract, the

Plaintiffs, Jack and Karen Marrone, have suffered a complete disruption of their lives, physical and

emotional damage and distress, and loss of their home and personal possessions, and therefore the

Plaintiffs, individually, demand damages in an amount in excess of One Hundred  Thousand

($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone and Karen Marrone, respectfully requests that

this Honorable Court enter judgment in their favor and against Defendant Edleman  for payment in

13

excess of One Hundred Thousand ($100,000.00) Dollars, Plaintiffs also request Recision of the subject transaction for the sale of the property at issue and complete restitution together with a judgment ordering other incidental and consequential costs, prejudgment interest, attorneys' fees, and cost of suit.

## COUNT VI

### PLAINTIFFS v. FRED SCHAFER AND MT. GRETNA REALTY MISREPRESENTATION

76.     The Plaintiffs incorporate paragraphs 1 through 43 of their Amended Complaint, inclusive. as though the same were set forth herein at length.

77.     Defendants Fred Schafer and Mt. Gretna Realty were at all relevant times the agent, servant, employee, or ostensible agent of Defendant Linda M. Edleman, and acted through its agents, servants, employees, and ostensible agents.

78.     Defendants Fred Schafer and Mt. Gretna Realty were, and have been an agent for, other homes in the area and as such, due to their experience and expertise, knew or should have know that the property in question, and the area was prone to said dampness/water problems.

79.     Defendants Fred Schafer and Mt. Gretna Realty had a duty to disclose, as well as a duty to make sure that the seller, their principle, disclosed all known defects in the property at issue prior to sale.

80.     Defendants Fred Schafer and Mt. Gretna Realty breached that duty by failing to disclose, and acted in concert with Defendant Edleman to not reveal said known defects relating to dampness/water.

14

81.    These undisclosed problems lead to the formation of the mold in July of 2000.

82.    As a direct and proximate result of Defendants Fred Schafer and Mt. Gretna Realtys' failure to disclose said information, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendants Fred Schafer and Mt. Gretna Realty for payment in excess of One Hundred Thousand ($100,000.00) Dollars, Plaintiffs, Jack and Karen Marrone, also request Recision of the subject transaction for the sale of the property at issue and complete restitution together with a judgment ordering other incidental and consequential costs, prejudgment interest, attorneys' fees, and cost of suit.

## COUNT VII

### PLAINTIFFS v. FRED SCHAFER AND MT. GRETNA REALTY
### UNFAIR TRADE PRACTICE AND CONSUMER PROTECTION LAW (UTPCPL)

83.    Plaintiffs incorporate paragraphs 1 through 43 and 76 through 82 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

84.    In view of the foregoing, the Plaintiffs believe and therefore aver that the Defendants, Fred Schafer and Mt. Gretna Realty, have engaged in unfair and/or deceptive acts or practices as contemplated by the Pennsylvania Unfair Trade Practice and Consumer Protection Law (hereinafter

sometimes referred to as "UTPCPL") which include but are not limited to the following:

(a)    Using deceptive representations in connection of the condition of the aforesaid sale of subject property;

(b)    In representing that said property was not defective when they knew, or should have known, it was not;

(c)    Engaging in fraudulent conduct which created a likelihood of confusion and/or misunderstanding in the Plaintiffs' purchase, ownership, and maintenance of the subject property;

(d)    Defendants engaged in the foregoing conduct for the sole purpose of concealing the seriousness and gravity of the defective conditions of said property and thus preventing any further action to rectify the serious and defective condition of the subject property which was reckless, malicious, and in gross disregard of the Plaintiffs' rights.

85.    As a direct and proximate cause of the Defendants' violation of the UTPCPL, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars, and are entitled to treble damages and attorneys' fees.

WHEREFORE, Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against the Defendants Fred Schafer and Mt. Gretna Realty, in excess of One Hundred Thousand ($100,000.00) Dollars, costs, treble damages, and punitive damages.

<u>**COUNT VIII**</u>

16

## PLAINTIFFS v. HOUSEMASTERS
### NEGLIGENCE

86.    The Plaintiffs hereby incorporate paragraphs 1 through 43 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

87.    At all relative times hereto, Defendant HouseMasters acted through its agents, employees, servants, and ostensible agents, including but not limited to, Chuck Berthound, the HouseMasters inspector who inspected the Plaintiffs home.

88.    Due to concerns of the Plaintiffs regarding water spots in the basement, they contracted with and hired HouseMasters to perform an inspection of what became the fungal toxin infested house prior to their purchasing the same.

89.    On or about July 30, 1999, Defendant HouseMasters performed an inspection of the home.

90.    The HouseMasters report noted water stains in the basement, and recommended sloping the soil away from the house, keeping the down spouts clean, or to consider extending the spouts onto the surface.

91.    Defendant, HouseMasters, through its agent Mr. Berthound, was and is a professional house inspection company and therefore holds itself out as expert in said field.

92.    Defendant, HouseMasters, while noting the water stains, did not identify the source of said stains, nor did they recommend further investigation, nor did they refer the Plaintiffs to other professionals who may have been of assistance.

93.    In reliance of the HouseMasters report, which was void of any warnings of potential

17

problems, the Plaintiffs purchased the house at issue.

94.     Defendant HouseMasters had a duty to inspect said home for defects and to then notify the potential purchasers of said defects.

95.     As a direct and proximate result of Defendant HouseMasters's failure to disclose said information, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant HouseMasters for payment in excess of One Hundred Thousand ($100,000.00) Dollars, interest, and costs of this suit.

## COUNT IX

### PLAINTIFFS v. HOUSEMASTERS
### MISREPRESENTATION

96.     The Plaintiffs hereby incorporate Paragraphs 1 through 43 and 86 through 95 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

97.     Defendant HouseMasters misrepresented the conditions of the house at issue to the Plaintiffs when it failed to inform them of the source of the water damage and/or of any current or potential problems related to water damage.

98.     The Plaintiffs' justifiably relying on said information purchased the house at issue.

18

99.    As a direct and proximate result of Defendant HouseMasters's failure to disclose said information, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against Defendant HouseMasters for payment in excess of One Hundred Thousand ($100,000.00) Dollars.

**COUNT X**

**PLAINTIFFS v. HOUSEMASTERS**
**BREACH OF CONTRACT**

100.    The Plaintiffs hereby incorporate paragraphs 1 through 43 and 86 through 99 of their Complaint, inclusive, as though the same were set forth herein at length.

101.    Plaintiffs, Jack and Karen Marrone, contracted with HouseMasters to perform an inspection of the property at issue, in order to determine any defects or potentially hazardous conditions on the property prior to the Plaintiffs purchasing the same.

102.    The Plaintiffs specifically contracted with HouseMasters regarding potential water/dampness problems with the house.

103.    Defendant, HouseMasters, while noting water damage, failed to identify the source of said damage, the severity of said source, nor did they identify or notify the Plaintiffs regarding any potential health problems pertaining to said water/dampness prior to the purchase of what became

19

the fungal toxin infested home.

104.    As experts in the field of home inspection, Defendant HouseMasters knew, or should have known, that fungal growth was a potential result of said water/dampness.

105.    As experts in the field of home inspection, Defendant HouseMasters knew, or should have known, that said fungal growth was potentially toxic and harmful to human health.

106.    Despite their contractual arrangement with the Plaintiffs to inform them of potential hazards associated with their prospective home, Defendant HouseMasters at no time informed them of any potential fungus or potential harm which could result therefrom.

107.    As a direct and proximate result of Defendant HouseMasters breach of contract with the Plaintiffs, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars.

WHEREFORE, the Plaintiffs, Jack Marrone and Karen Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against the Defendant HouseMasters in excess of One Hundred Thousand ($100,000.00) Dollars.

### COUNT XI

**PLAINTIFFS v. HOUSEMASTERS**
**UNFAIR TRADE PRACTICE AND CONSUMER PROTECTION LAW (UTPCPL)**

108.    The Plaintiffs incorporate paragraphs 1 through 43 and 86 through 107 of their Amended Complaint, inclusive, as though the same were set forth herein at length.

20

109.    In view of the foregoing, the Plaintiffs believe and therefore aver that the Defendant, HouseMasters, has engaged in unfair and/or deceptive acts or practices as contemplated by the Pennsylvania Unfair Trade Practice and Consumer Protection Law (hereinafter sometimes referred to as "UTPCPL") which include but are not limited to the following:

(a)    Using deceptive representations in connection of the condition of the aforesaid sale of subject property;

(b)    In representing that said property was not defective when they knew, or should have known, it was not;

(c)    Engaging in fraudulent conduct which created a likelihood of confusion and/or misunderstanding in the Plaintiffs' purchase, ownership, and maintenance of the subject property;

(d)    Fraudulently representing to Plaintiffs that suggested repairs regarding property at issue would mitigate and/or prevent said leakage and/or other defects or damage which occurred.

(e)    Defendant engaged in the foregoing conduct for the sole purpose of concealing the seriousness and gravity of the defective conditions of said property and thus preventing any further action to rectify the serious and defective condition of the subject property which was reckless, malicious, and in gross disregard of the Plaintiffs' rights.

110.    As a direct and proximate cause of the Defendant's violation of the UTPCPL, the Plaintiffs have suffered a complete disruption of their lives, physical and emotional damage and distress, and loss of their home and personal possessions, and therefore the Plaintiffs, individually, demand damages in an amount in excess of One Hundred Thousand ($100,000.00) Dollars, and are entitled to treble damages and attorneys' fees.

WHEREFORE, Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida

WHEREFORE, Plaintiffs, Jack Marrone, Karen Marrone, Matthew Marrone, and Vida Marrone, respectfully requests that this Honorable Court enter judgment in their favor and against the Defendant HouseMasters, in excess of One Hundred Thousand ($100,000.00) Dollars, costs, treble damages, punitive damages, and attorneys' fees.

STEVENS & JOHNSON

By: _____

Richard F. Stevens, Esquire
I.D. No: 08073
Attorneys for the Plaintiffs,
Jack Marrone,
Karen Marrone,
Matthew Marrone, and
Vida Marrone

740 Hamilton Mall
Allentown, Pennsylvania 18101
(610) 439-1451

22

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a true and correct copy of the attached Amended

Complaint, will be served upon all parties, by placing the same in the United States Postal Service,

first class, postage prepaid, and mailed to the following upon return receipt from the U.S. District

Court for the Middle District of Pennsylvania:


James G. Nealon, III, Esquire
Nealon & Grover
2411 North Front Street
Harrisburg, PA 17110

John Flounlacker, Esquire
Thomas, Thomas & Hafer, LLP
305 North Front Street
P.O. Box 999
Harrisburg, PA 17108

Edward A. Monsky, Esquire
Fine, Wyatt & Carey, PC
425 Spruce St.
P.O. Box 590
Scranton, PA 18501-0590

Robert E. Kelly, Jr., Esquire
Duane, Morris & Heckscher, LLP
305 North Front Street, 5th Floor,
P.O. Box 1003
Harrisburg, PA 17108-1003


Date: 11/01/01

By: _Richard F. Stevens_
Richard F. Stevens, Esquire
I.D. No: 08073
Attorneys for the Plaintiffs
Jack Marrone, Karen Marrone,
Matthew Marrone and Vida Marrone

740 Hamilton Mall
Allentown, Pennsylvania 18101
(610) 439-1451

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**FILED**
HARRISBURG

JAN 1 4 2003

MARY E. D'ANDREA, CLERK
Per:_____
DEPUTY CLERK

| | |
|---|---|
| JACK MARRONE, husband, KAREN MARRONE, wife, both individually and in their capacity as parents and guardians for VIDA MARRONE, a minor, and MATTHEW ADAM MARRONE, **Plaintiffs** | : : : : : : : |
| v. | : : |
| ALLSTATE INSURANCE CO., et al. **Defendants** | : : |

CIVIL ACTION NO. 1:CV-01-0773
(Judge Kane)

### MEMORANDUM AND ORDER

Before the Court is Plaintiffs' Motion to Permit the Filing of Plaintiffs' Medical Expert Reports <u>Nunc Pro Tunc</u>. (Doc. No. 101). The matter has been briefed and is ripe for disposition.

Plaintiffs bring this action against various Defendants for damages suffered as a result of alleged toxic mold that infested their home in Mt. Gretna, Pennsylvania. Plaintiffs commenced this action on May 3, 2001. The progress of the action has been delayed several times on motion of Plaintiffs. The most recent Case Management Order is a result of Plaintiffs' request for extension of all deadlines, including the deadline for the presentation of expert reports. By Order of this Court, those reports were due on September 13, 2002 and the deadline for filing dispositive motions was October 18, 2002. Both deadlines passed with no filings by Plaintiffs and no motion to extend these deadlines.

Defendants filed Motions for Summary Judgment on October 18, 2002, arguing, <u>inter alia</u>, that Plaintiffs' action is unsupported by medical testimony. Apparently on receipt of these motions, on that same day, Plaintiffs' counsel faxed to defense counsel a motion to extend all deadlines in the case by sixty days and filed the motion with the Court. When this Court denied

the motion, Plaintiffs filed the present motion to permit the filing of their medical expert reports nunc pro tunc. In support of this request, Plaintiffs' counsel asserts that his retained expert was absent from the country from the middle of August to the middle of October. Counsel offers no explanation for his failure to request an extension of time before the expiration of the deadline, nor does he explain why his request for an extension came over one month late and then only on receipt of Defendants' summary judgment motions. It would appear that Counsel forgot the deadline or chose to disregard it until it was brought to his attention by the filing of Defendants' motions.

The Federal Rules of Civil Procedure and the scheduling orders that govern this case are designed to ensure fairness, respect for the court, and the expeditious movement of cases through this Court. They are effective to accomplish these goals only if they are evenly and fairly enforced. Defendants have abided by all orders of this Court and with the Federal Rules of Civil Procedure. Plaintiffs have not, and Counsel has offered no reasonable explanations for his failure to comply. Were these considerations the only ones for this Court, fairness would seem to dictate that the evidence in question be excluded from the case as untimely and in violation of the Court's scheduling order. If Defendants are correct that this case cannot be prosecuted without a medical expert, Plaintiffs would ultimately suffer dismissal of their case as a consequence of this missed deadline.

Fortunately for Plaintiffs, Third Circuit case law requires that this Court look beyond a party's noncompliance with court orders and with the Federal Rules of this Civil Procedure. The Third Circuit has held that excluding critical testimony as a discovery sanction is a drastic measure that should be imposed only in extreme situations. Meyers v. Pennyback Woods Home Ownership Ass'n, 559 F.2d 894, 905 (3d Cir. 1977). The Court has further held that the exclusion

2

of critical evidence should not occur absent a showing of willful deception or "flagrant disregard" of a court order by the proponent of the evidence. Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir.1997). Therefore, before exercising its authority to exclude evidence to sanction discovery misconduct, a trial court must first consider whether the failure is willful or flagrant.

However careless the conduct of Plaintiffs' counsel, this Court cannot say that the failure to disclose the report of Plaintiffs' expert is willful or flagrant. Defendants were made aware of Plaintiffs' intention to offer expert testimony, and Plaintiffs were made available for examination by Defense medical experts. There are no facts to support a finding that Counsel's failure to comply with scheduling deadlines was in any way a tactical move. However, Counsel has to this day failed to offer to this Court any excuse for his failure to notify the Court of scheduling problems and request an extension before the deadline expired. As Counsel is without explanation or apology, it might reasonably be concluded that Counsel's conduct is flagrant within the meaning of Konstantopoulos. 112 F.3d at 719. However, because of the grave importance of this evidence to Plaintiffs, who presumably share no blame for Counsel's lapses, and because this is the first instance of noncompliance, this Court will resolve the doubt over this issue in Plaintiffs' favor, and find that Counsel's conduct was neither willful nor flagrant.

The Third Circuit has elucidated four factors to consider in addition to the importance of the testimony to be excluded in determining whether or not expert testimony should be excluded: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) bad faith or willfulness in failing to comply with the district

3

court's order. Quinn v. Consolidated Freightways Corp., 283 F.3d 572, 577 (3d Cir. 2002);

Konstantopoulos, 112 F.3d at 719; Meyers, 559 F.2d at 904-905.

These factors weigh against the exclusion of the evidence. Defendants are

inconvenienced, but not surprised. Defendants were aware of the potential medical testimony in

the case and how it bears on the ultimate issues before the Court. The prejudice created by the

late disclosure of evidence can be minimized by postponing the trial date and all remaining case

deadlines. A trial delay will disrupt the Court's calendar and necessitate the rescheduling of

other cases, but no serious harm will come to Defendants as a result. With the addition of new

evidence, Defendants' dispositive motions may need to be revised or resubmitted. These costs

can be shifted to Plaintiffs, and do not necessitate the more drastic remedy of exclusion of the

evidence.

In light of all of the circumstances now appearing of record, Plaintiffs' Motion to Permit

the Filing of Plaintiffs' Medical Expert Reports Nunc Pro Tunc will be granted. This Court does

not find that it is empowered to exclude Plaintiffs' proffered expert as a sanction for violation of

the scheduling order in this case. Pursuant to a separate order issued this date, Counsel for

Plaintiffs shall show cause why he should not be sanctioned with a monetary fine and/or costs for

failure to comply with orders of this Court.

Accordingly, **IT IS ORDERED THAT:**

1.      Plaintiffs' Motion to Permit the Filing of Plaintiffs' Medical Expert Reports Nunc

        Pro Tunc (Doc. No. 101) is **GRANTED**.

2.      Plaintiffs may disclose the expert reports of Dr. Eckardt Johanning to Defendants

        on or before January 17, 2003.

3.      Defendant Edelman's Motion to Strike the Affidavit of Eckardt Johanning (Doc.

4

No. 119) is **DENIED AS MOOT**.

4.   In light of this decision, Defendant Edelman's Motion in Limine (Doc. No. 123)

and Defendants Schaeffer and Mt. Gretna Realty's Motion in Limine (Doc. No.

124) are **DENIED** without prejudice to re-file more appropriate motions in limine

in accordance with the new scheduling order.

5.   All Defendants' Motions for Summary Judgment (Doc. Nos. 53, 58, 64, and 67)

are **DENIED** without prejudice to re-file in accordance with the new scheduling

order.

6.   A new scheduling order shall issue.


_____

Yvette Kane
United States District Judge

Date:  _14 JAN_, 2003

5

# **<u>EXHIBIT C</u>**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACK MARRONE, husband, KAREN MARRONE, wife, both individually and in their capacity as parents and guardians for VIDA MARRONE, a minor, and MATTHEW ADAM MARRONE, Plaintiffs | : : : : : : | CIVIL ACTION NO. 1:CV-01-773 |
| v. | : : : | Judge Kane |
| ALLSTATE INSURANCE CO., et al., Defendants | : : | |

**O R D E R**

**AND NOW** this __29th__ day of April, 2003, **IT IS HEREBY ORDERED**

**THAT** the Case Management Order dated January 14, 2003 is **AMENDED** as follows:

| | |
|---|---|
| Dispositive Motions and Supporting Briefs due: | May 16, 2003 |
| Daubert Motions and Supporting Briefs due: | May 16, 2003 |
| Briefs in Opposition to Dispositive Motions due: | May 30, 2003 |
| Reply Briefs to Dispositive Motions due: | June 11, 2003 |
| Local Rule 16.3 - Attorney Conference and Exchange of Proposed Jury Instructions: On or before: | August 1, 2003 |
| Motions In Limine due: | August 8, 2003 |
| Pretrial Memoranda due: | August 22, 2003 |
| Pretrial and Settlement Conference: | August 26, 2003 - 3:00 p.m. |
| Proposed Jury Instructions with Objections and Proposed Voir Dire Questions Due: | September 3, 2003 |
| Jury Selection and Trial: | September 8, 2003 - 9:30 a.m. |

s/ Yvette Kane
Yvette Kane
United States District Judge

**<u>EXHIBIT D</u>**

# Eckardt Johanning, M.D., M.Sc.

## Occupational and Environmental Life Science - Fungal Research Group, Inc. (FRG)

650 Warren Street - Medical Arts Building
Albany, N.Y. 12208 U.S.A.
518-459-3336 • fax - 4646
www.fungalresearchgroup.com

Offices:
Albany,
New York City
Frankfurt/Main, FRG

October 21, 2002

RE:                       Jack P. Marrone
                          11673 Highway PT
                          Dixon, MO 65459
**Date of Birth**         2/22/46

I reviewed again the visit of Jack Marrone from January 17, 2002. This is a summary of the findings. I reviewed all provided outside medical reports and environmental findings, including the Advanced Applied Science report from October, 15, 2000.

Mr. Marrone, age 55, is a VA vet, with 100% disability since 1993 secondary to a gunshot wound, posttraumatic stress syndrome, and chloracne problems. He reported that after moving into and after doing some clean-up work inside the house on 354 Timber Rd, Mount Gretna, Pa, he developed a variety of problems including shortness of breath, eye irritation, chest tightness, wheezing, coughing, excessive fatigue, and nasal problems. He has been sneezing as well. He also developed an increased sensitivity and intolerance to gases, fumes, and a variety of air contaminants. He reports that his chloracne problem had been getting worse, and that he generally would look different. He reported that the special acne soap has not been helpful for him as in the past. He reported that he had not been seen at the time by his VA doctor and he had no special breathing test or chest x-ray test done. He left his home secondary to health concerns and findings of mold and moisture problems in his previous house. Since leaving this house, he felt much better. He stated that his breathing and fatigue had improved. He has less headaches.

## Medications:

Trazodone.

## Past Medical History:

Benign prostrate hypertrophy, exposure to Agent Orange resulting in chloracne development, posttraumatic stress syndrome, and gunshot wound. He had episodes of stomach cramps in the past. He denied any other significant abnormalities.

## Past Surgical History:

"is a member of"     AMERICAN COLLEGE OF OCCUPATIONAL AND ENVIRONMENTAL MEDICINE

Scrotal cyst surgery in 1976.

<u>Social History:</u>

He is a smoker starting at age 16, 1-1½ pack per day. He denied any alcohol or significant drug history.

He reported that he now has been living in Missouri, and that he feels much better there. In his current home there are no known environmental problems.

<u>Physical Examination:</u>

Blood pressure: 120/90 mmHg. Respiratory rate 12/min. Temperature 97 T. Height: 5'9". Weight: 201 pounds. His peak flow was found at 440.

Examination of head, ears, nose, throat, chest, abdomen, lungs, and extremities was overall unremarkable. The nasal passage showed increased erythema and were narrow.

<u>Laboratory Tests:</u>

On laboratory examination, he showed no reaction to specific IgE allergens; however, he had a marked reaction indicating significant organic dust exposure including to a variety of tested fungi, i.e., *Micropolyspora faeni, Aspergillus fumigatus, Aureobasidium pullulans, Penicillium notatum, and Trichoderma viride*. He also had elevated IgG and IgA response to *Stachybotrys chartarum*. These tests are used as exposure markers and do not necessarily correspond with disease activity.

Pulmonary function test from September 12, 2002 showed that he had overall normal lung function. Chest x-ray was negative.

Immunological test which included IgG subclasses and lymphocyte enumeration test and function test showed a slightly lower than normal absolute CD3 or matured T-lymphocyte cell count with 1462, normal 1507-1953. The remainder of the testing was normal. These findings are non-specific, but typical after intense fungal exposure.

I reviewed medical records provided to me by various providers. These records did not produce any additional information. He has been diagnosed in the past with prostatitis, hemorrhoids, stable COPD, and prostatitis problems.

The environmental investigation and report by Mr. R. Pfromm indicated the presence of moisture related fungi and defects inside the house, in particular in the basement. Fungi included species of *Aspergillus, Penicillium and Stachybotrys*, that were higher inside the house than outside (control). Photos were also provided confirming visible contamination.

Jack P. Marrone                                    October 21, 2002
                                    3

## Conclusion:

Based on recent findings, I conclude that Mr. Marrone had a respiratory reaction after intense exposure to mold and mildew in his home, which was probably also aggravated by doing some repair and clean-up work in the moldy house. He has been diagnosed in addition to his previous medical conditions with upper and lower airway inflammation and irritation effects (Rhinosinusitis, bronchitis) and mold allergy. With a reasonable degree of medical certainty I believe this was the result of the exposure in the described contaminated house. He has been advised that in the future he should avoid any of these problems since he has clearly been sensitized. Provided that he has no further exposure to the fungi, he should be reasonably well.


Sincerely,


Eckardt Johanning, M.D., MSc.
Diplomate of American Board of Preventive Medicine
(Occupational and Environmental Medicine)
Diplomate of American Board of Family Medicine

# Eckardt Johanning, M.D., M.Sc.

## Occupational and Environmental Life Science - Fungal Research Group, Inc. (FRG)

650 Warren Street - Medical Arts Building
Albany, N.Y. 12208 U.S.A.
518-459-3336 • fax - 4646
www.fungalresearchgroup.com

Offices:
Albany,
New York City
Frankfurt/Main, FRG

October 21, 2002

RE:          Karen A. Marrone
             11673 Highway PT
             Dixon, MO 65459
Date of Birth    12/22/56

I reviewed again the visit of Karen Marrone from January 17, 2002. She came accompanied by her husband and daughter Vida, who also were examined that day. This is a summary of the findings. I reviewed all provided outside medical reports and environmental findings, including the Advanced Applied Science report from October, 15, 2000.

Mrs. Marrone, age 45 years, has a known service related disability since 1976. She has been previously diagnosed with multiple sclerosis in 1977. She reported that after moving into the house on 354 Timber Rd, Mount Gretna, Pa, she developed a variety of problems including shortness of breath, chest tightness, coughing, excessive fatigue, and nasal problems, stomach cramps. She had been diagnosed by her VA physician Dr. DaCosta with sinusitis and bronchitis. She also consulted an ENT specialist who reportedly recommended surgery.

She and the rest of the family left this home October 14, 2001 secondary to health concerns and findings of mold and moisture problems in this house. Since leaving this house, she also felt much better.

## Medications:

Albuterol, Ibuprofen, Baclofen, Clonazepam

## Past Medical History:

Rubella 1972, MS 1977, PUD, reflux, esophagitis, rhinosinusitis since early 70s, PTSD in 80s. Allergy to penicillin.

"is a member of"   AMERICAN COLLEGE OF OCCUPATIONAL AND ENVIRONMENTAL MEDICINE

## Past Surgical History:

Gallbladder surgery 5/2000, hernia repair, cyst removal, laparoscopy.

## Social History:

She is a smoker starting at age 15, 1-2 packs per day. She denied any alcohol or significant drug history.

She reported that she now living with her family in Missouri, and that she feels much better there. In this current home there are no known environmental problems.

## Physical Examination:

Blood pressure: 120/90 mmHg. Respiratory rate 12/min. Temperature 99.8 T. Height: 5'5". Weight: 131 pounds. Her peak flow was 400 ml. She was coughing during the exam.

Examination of head, ears, nose, throat, chest, abdomen, lungs, and extremities was overall unremarkable. She had problems with line walking and imbalance.

## Laboratory Tests:

No reaction to specific IgE and IgG fungal allergens.

Pulmonary function test was not done. Chest x-ray was negative.

Immunological test which included IgG subclasses and lymphocyte enumeration test and function test showed a higher than normal CD4/CD8 ratio and B-lymphocyte cell counts/percentage. The remainder of the testing was normal. These findings are non-specific, but typical after intense fungal exposure.

I reviewed medical records provided to me by various providers. These records did not produce any additional information.

The environmental investigation and report by Mr. R. Pfromm indicated the presence of moisture related fungi and defects inside the house, in particular in the basement. Fungi included species of *Aspergillus, Penicillium and Stachybotrys*, that were higher inside the house than outside (control). Photos were also provided confirming visible contamination.

## Conclusion:

Based on recent findings, I conclude that Mrs. Marrone had an respiratory reaction after intense exposure to mold and mildew in her previous home. She has been diagnosed in addition to her previous medical conditions with upper and lower airway inflammation and irritation effects (Rhinosinusitis, bronchitis). With a reasonable degree of medical

Karen A. Marrone                                                    October 21, 2002
                              3

certainty I believe these were the results of the exposure in the described contaminated house. She has been advised that in the future she should avoid any of these moldy indoor exposures and stop smoking. Provided that she has no further exposure to the fungi, she should be reasonably well related to this condition.


Sincerely,



Eckardt Johanning, M.D., MSc.
Diplomate of American Board of Preventive Medicine
(Occupational and Environmental Medicine)
Diplomate of American Board of Family Medicine

# Eckardt Johanning, M.D., M.Sc.

## Occupational and Environmental Life Science -
## Fungal Research Group, Inc. (FRG)

650 Warren Street - Medical Arts Building
Albany, N.Y. 12208 U.S.A.
518-459-3336 • fax - 4646
www.fungalresearchgroup.com

Offices:
Albany,
New York City
Frankfurt/Main, FRG

October 21, 2002

RE:                     Matthew Marrone
                        11673 Highway PT
                        Dixon, MO 65459
Date of Birth           7/29/82

I reviewed again the visit of Matthew Marrone from January 17, 2002. This is a summary of the findings. I reviewed also the environmental findings, including the Advanced Applied Science report from October, 15, 2000.

Matthew Marrone, age 19, is a biology undergraduate student with no prior significant medical history. He reported that after moving into the house on 354 Timber Rd, Mount Gretna, Pa, in August of 1999 he developed shortness of breath, chest tightness, eye irritation, skin lesions under his axillae, excessive fatigue, nasal problems and significant memory loss. After leaving the house he had some improvement. At the time of the visit he was particularly bothered by joint pain in knees, memory problems and fatigue.

## Medications:

None.

## Past Medical History:

Benign. He denied any other significant abnormalities.

## Past Surgical History:



"is a member of"   AMERICAN COLLEGE OF
OCCUPATIONAL AND
ENVIRONMENTAL MEDICINE

## Social History:

He denied any smoking, alcohol or drug abuse history.

## Physical Examination:

Blood pressure: 110/70 mmHg. Respiratory rate 12/min. Temperature normal Height: 5'10". Weight: 163 pounds. His peak flow was found at 450ml.

Examination of head, ears, nose, throat, chest, abdomen, lungs, and extremities was overall unremarkable.

## Environmental Exposure:

The environmental investigation and report by Mr. R. Pfromm indicated the presence of moisture related fungi and defects inside the house, in particular in the basement. Fungi included species of *Aspergillus, Penicillium and Stachybotrys*, that were higher inside the house than outside (control). Photos were also provided confirming visible contamination.

## Conclusion:

Mr. Matthew Marrone had a variety of health complaints including respiratory reactions that are in time and place associated with exposure to mold and mildew in his previous home. He has been advised that in the future he should avoid any of these fungal indoor exposures and related problems. He has been discharged for care and follow up by his local physicians. Provided that he has no further exposure to the fungi, he should be reasonably well.

Sincerely,

Eckardt Johanning, M.D., MSc.
Diplomate of American Board of Preventive Medicine
(Occupational and Environmental Medicine)
Diplomate of American Board of Family Medicine

# Eckardt Johanning, M.D., M.Sc.

## Occupational and Environmental Life Science - Fungal Research Group, Inc. (FRG)

650 Warren Street - Medical Arts Building
Albany, N.Y. 12208 U.S.A.
518-459-3336 • fax - 4646
www.fungalresearchgroup.com

Offices:
Albany,
New York City
Frankfurt/Main, FRG

October 21, 2002

RE:     Vida A. Marrone
       11673 Highway PT
       Dixon, MO 65459
Date of Birth   5/5/84

I reviewed again the visit of Ms. Vida A. Marrone from January 17, 2002. She came accompanied by her parents, who also were examined that day. This is a summary of the findings. I reviewed all provided outside medical reports and environmental findings, including the Advanced Applied Science report from October, 15, 2000.

Ms. Vida Marrone, age 17 years, is a student who works part time as a waitress. She reported that after moving into the house on 354 Timber Rd, Mount Gretna, Pa, she developed a variety of problems including coughing, sore throat, fatigue, skin irritation, headaches and nasal problems. Away from the house (such as her friends' houses) she generally would feel much better. She had been diagnosed by an emergency room doctor with sinusitis and bronchitis.

She left with her family the house on October 14, 2001 secondary to health concerns and findings of mold and moisture problems. Since leaving this house, she also felt much better.

## Medications:

None.

## Past Medical History:

MVA 2/01 related low back pain.

## Past Surgical History:

None

 

*"is a member of"* AMERICAN COLLEGE OF OCCUPATIONAL AND ENVIRONMENTAL MEDICINE

## Social History:

She is a "very light" smoker (1-5 cigg./day). She denied any alcohol or significant drug history.

She reported that she is now living with her parents in Missouri, and that she feels much better there. In this current home there are no known environmental problems.

## Physical Examination:

Blood pressure: 100/60 mmHg. Respiratory rate 12/min. Temperature 98 T. Height: 5'5". Weight: 138 pounds. Her peak flow was 550 ml.

Examination of head, ears, nose, throat, chest, abdomen, lungs, and extremities was overall unremarkable.

## Laboratory Tests:

No reaction to specific IgE and IgG fungal allergens. There was a very minimal IgA elevation to *Stachybotrys* specific IgA.

Pulmonary function test and Chest x-ray were not done.

Immunological test which included IgG subclasses and lymphocyte enumeration test and function test showed a higher than normal T and B-lymphocyte cell counts/percentage. The remainder of the testing was normal. These findings are non-specific, but typical after intense fungal exposure and some immune reactivity. Follow up repeat evaluation have been recommended.

I reviewed medical records provided to me by various providers. These records did not produce any additional information.

The environmental investigation and report by Mr. R. Pfromm indicated the presence of moisture related fungi and defects inside the house, in particular in the basement. Fungi included species of *Aspergillus, Penicillium and Stachybotrys*, that were higher inside the house than outside (control). Photos were also provided confirming visible contamination.

## Conclusion:

Based on recent findings, I conclude that Ms. Vida Marrone had also a typical acute respiratory reaction after intense exposure to mold and mildew in her previous home. She has been diagnosed with upper and lower acute airway inflammation and irritation effects (Rhinosinusitis, bronchitis). With a reasonable degree of medical certainty I believe these were the results of the exposure in the described contaminated house. She has been advised that in the future she should avoid any of these moldy indoor exposures and stop

smoking. Provided that she has no further exposure to the fungi, she should be reasonably well related to this condition.


Sincerely,


Eckardt Johanning, M.D., MSc.
Diplomate of American Board of Preventive Medicine
(Occupational and Environmental Medicine)
Diplomate of American Board of Family Medicine

## CERTIFICATE OF SERVICE

I, John Flounlacker, Esquire, of the law firm Thomas, Thomas & Hafer, LLP, hereby state that a true and correct copy of the foregoing document(s) was served upon all counsel of record by first class United States mail, postage prepaid, addressed as follows, on the date set forth below:

By First Class U.S. Mail:

Gianni Floro,Esquire
Louis M. Tarasi, Esquire
Tarasi, Tarasi & Fishman, P.C.
510 Third Avenue
Pittsburgh, PA  15219

James G. Nealon, III, Esquire
Nealon & Gover
2411 North Front Street
Harrisburg, PA  17110

Edward A. Monsky, Esquire
Fine, Wyatt & Carey, P.C.
425 Spruce Street
P.O. Box 590
Scranton, PA  18501-0590

James J. Kutz, Esquire
Jennifer L. Murphy, Esquire
Duane Morris & Heckscher, LLP
305 N. Front Street
P.O. Box 1003
Harrisburg, PA 17108

Joel D. Gusky, Esquire
Harvey, Pennington, et al.
Eleven Penn Center, 29th Floor
1835 Market Street
Philadelphia, PA  19103-2989

THOMAS, THOMAS & HAFER, LLP


 s/ John Flounlacker
John Flounlacker

Dated:  August 7, 2003

8