

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

JACK MARRONE, husband, KAREN :
MARRONE, wife, both individually and :     Civil Action No.: 1:CV-01-0773
in their capacity as parents and guardians :     FILED
for VIDA MARRONE, a minor, and :     HARRISBURG, PA
MATTHEW ADAM MARRONE, :
:     AUG 2 2 2003
:
Plaintiffs, :
:     MARY E. D'ANDREA, CLERK
:     Per _____
vs. :     Deputy Clerk
:     (U.S. District Judge Yvette Kane)
:
ALLSTATE INSURANCE COMPANY, :
LINDA M. EDLEMAN, FRED SCHAFER, :
MT. GRETNA REALTY, and HOUSE :     **JURY TRIAL DEMANDED**
MASTERS, :
:
Defendants. :

---

### PLAINTIFFS' PRE-TRIAL MEMORANDUM

AND Now come the Plaintiffs, by and through their counsel of record,

Tarasi, Tarasi & Fishman, P.C., Louis M. Tarasi, Jr., Esquire, and Gianni Floro,

Esquire, and hereby file this Plaintiffs' Pre-Trial Memorandum, pursuant to LR 16.6,

and in support thereof set forth the following:

Date conference was held by counsel:        January 13, 2003[1]

---

[1]     Pursuant to the District Court's April 29, 2003 Order, and LR 16.3(b), on July 17, 2003, counsel for the Plaintiffs, by telefax and U.S. Mail First Class, initiated a request to all counsel of record for a LR 16 conference; however, no counsel for any of the Defendants responded to Plaintiffs' request. Since the January 13, 2003 conference by counsel the Plaintiffs have settled their claims against Linda M. Edleman, Fred Schafer, Mt. Gretna Realty and Housemaster. The remaining Defendant is Allstate Insurance Company.

### A.    JURISDICTION:

Jurisdiction is properly before this District Court based upon, 28 U.S.C. § 1332, diversity of citizenship.  Plaintiffs are citizens of the State of Missouri and the Defendant Allstate Insurance Company (hereinafter, "Allstate") is a corporation of the State of Delaware with its principal place of business in Illinois.  The matter in controversy exceeds seventy-five-thousand dollars ($75,000.00), exclusive of interest and costs.

### B.    SUMMARY OF FACTS AND LIABILITY CONTENTIONS:

Plaintiffs, Jack Marrone and Karen Marrone, who are husband and wife, at all relevant times hereto, resided at a home located in Pennsylvania and they now have moved back to Missouri.  They are the parents of Vida and Matthew Adam Marrone.  In June of 1999, the Plaintiffs came to Pennsylvania to look for a home, and in July of 1999, they found their "dream home," located in Mt. Gretna.

Prior to closing on their "dream home," the Plaintiff, Karen Marrone, contacted Allstate, her previous auto insurer, and an Allstate agent conducted an inspection of the home, and this took place before it issued an insurance policy to the Plaintiffs.  During the inspection the Plaintiffs were never advised that the home had mold in it, or that Allstate would assert a so-called "mold exclusion," in the insurance policy they would issue to the Plaintiffs.  After conducting the inspection of the Plaintiffs home, Allstate issued an insurance policy binder covering the

2

property at issue which became effective August 25, 1999.  The insurance binder
was silent on the so-called "mold exclusion," that Allstate would later assert.

On August 31, 1999, Plaintiffs completed the purchase of the home and they
took possession relying on the insurance policy binder issued by Allstate to protect
them and their family's property and possessions should the need arise.  All of the
contracts referred to in this suit have in addition to the other terms, the implied
covenant of "good faith and fair dealing."

In July of 2000, the Plaintiffs went away on vacation, and returned a
week later to find their basement covered in mold.  The mold covered the walls,
ceiling, floor, and furniture, and this was the first time that the Plaintiffs had any
notice of this problem.  They immediately contacted their insurer, Allstate, and filed
an insurance claim.  Allstate's inspector performed only a <u>cursory and superficial</u>
inspection, and in a letter dated August 10, 2000, denied coverage claiming the
damage was the result of a "preexisting condition" and therefore not covered by their
policy.  The cause of the "so-called" preexisting condition was not stated.  There was
also no statement that Plaintiffs should have somehow been aware of the condition.
Despite Allstate's involvement in similar litigation concerning the potential and
perceived health hazards posed by mold, at no time did Allstate, or its people, who
had actual knowledge of mold problems, inform or otherwise make known to the
Plaintiffs the possibility of a mold problem or the potential health problems

3

related to the growth of mold, or other organic toxins.  (*See*, <u>Anderson v. Allstate</u>

<u>Insurance Company</u>, 45 Fed. Appx. 745, 2002 U.S. App. LEXIS 18379 (9th Cir.

2002))  Plaintiffs, being unaware of any mold and the problems of the potential

catastrophic dangers created by mold remained in the home.  As between Plaintiffs

and Allstate, an unknown condition, does not meet the test of a preexisting

condition; or in the alternative, the test for preexisting condition in this policy is

either ambiguous or unenforceable.  Furthermore, it is clear from the evidence the

dangerous mold condition was a sudden occurrence.

On August 28, 2000, the Plaintiffs had their home inspected by

Advanced Applied Sciences, Inc.  The inspection consisted of a bioaerosol survey,

and on September 29, 2000, as a result of a telephone conversation with Advanced

Applied Sciences, Inc., the Plaintiffs learned the results of the testing, and it was not

good.  There was found "fungal contamination in the house," Aspergillus,

<u>Stachybotrys</u>, Penicillium, Alternaria, Chrysosporium, Epicoccum, and

Cladosporium. The inspection also revealed a relative humidity level in the basement

of 41% higher than that found outside the house.  Upon learning of the toxic levels

of mold in their home, and its danger, they vacated the premises.  They have suffered

and will continue to suffer embarrassment, humiliation, and psychological trauma;

financial damages, including the loss of their home that is still standing vacant and

unsalable as of this date.  The Plaintiffs have met all of their obligations required

under the insurance contracts mentioned below. The Plaintiffs maintain this action for damages caused by Allstate's breach of contract and bad faith, for their failure to properly inspect the premises before issuing a binder and after notice of the Plaintiffs' claim, and for their failure to cover the losses.

**C.    COMPREHENSIVE STATEMENT OF UNDISPUTED FACTS:**

1.    The house that is the subject matter of this litigation is a one-story residence located at 354 Timber Road, Mt. Gretna, Pennsylvania.

2.    Ms. Edleman hired Mt. Gretna Realty to act as her real estate agent to assist her in selling 354 Timber Road, Mt. Gretna, Pennsylvania.

3.    Fred Schaeffer was the real estate agent for Mt. Gretna Realty that assisted Ms. Edleman in selling her property.

4.    Fred Schaeffer did a walk through of Ms. Edleman's home which included the basement of 354 Timber Road, Mt. Gretna, Pennsylvania prior to its sale to the Plaintiffs.

5.    Prior to the sale Ms. Edleman filled out a seller's disclosure statement which was provided to the Plaintiffs prior to buying Ms. Edleman's home.

6.    Prior to the closing of the sale of this property Plaintiffs hired Defendant Housemaster to inspect 453 Timber Road, Mt. Gretna, Pennsylvania.

7.    Prior to the closing of the sale of this property Defendant Housemaster conducted an inspection of 354 Timber Road, Mt. Gretna,

Pennsylvania on behalf of the Plaintiffs.

8.     Following the above-referenced inspection Defendant Housemaster provided the Plaintiffs with a written report regarding Housemaster's inspection of Ms. Edleman's home.

9.     The above-referenced report from Housemaster was provided to the Plaintiffs prior to the sale of 354 Timber Road, Mt. Gretna, Pennsylvania.

10.     When Plaintiffs purchased the home from Ms. Edleman there was a hot tub in the basement.

11.     On or about August 25, 1999, Karen and Jack Marrone applied for a home owners policy with Allstate Insurance Company.

12.     On August 25, 1999, Allstate issued a homeowners policy binder numbered 001657755 to the Marrones.

13.     Coverage was in effect under the policy as of June/July 2000.

14.     On or about August 31, 1999, Jack Marrone and Karen Marrone (hereinafter, "the Marrones") purchased a home located at 354 Timber Road, Mt. Gretna, Pennsylvania from Linda Edleman.

15.     In connection with the Marrones purchase of the aforesaid property, they executed a note and a mortgage in the amount of $165,000.00 in favor of Equity One.

16.     On or about August 31, 1999, the note and mortgage were duly

assigned to HomeSide, the mortgage was at a 7.5 fixed rate for thirty (30) years

beginning October 1, 1999 and ending on September 1, 2029.

      17.    The last mortgage payment on the aforesaid property was made

on October 1, 2000.

### D.    PLAINTIFFS' DAMAGES:

(1)    Principal Injuries:

    a.    Bodily injury claims have been settled.

    b.    Economic Damages:

| | | |
|---|---|---|
| 1) | Value of the House: | $165,000.00 |
| 2) | Moving Expenses: | $6,320.00 |
| 3) | Animals: | $112.98 |
| 4) | Household Expenses: | $23,820.94 |
| 5) | Some Clean-up Expenses: | $708.00 |
| 6) | Outdoor Expenses: | $336.00 |
| 7) | Basement Expenses: | $7,970.00 |
| 8) | Clean-up Expenses: | $1,8270.00 |
| 9) | Memorabilia: | $11,855.00 |
| 10) | Comics: | $3,000.00 |
| 11) | Autographed items: | $3,615.00 |
| 12) | Lost income due to the Plaintiffs being | |

required to evacuate their home in Mt. Gretna
and having to move back to Missouri into their
previous home they were renting out.  Rental
Income of ~$725.00/month for approximately
one (1) year:

$8,700.00

---

TOTAL:                              $230,264.92

c.    The Plaintiffs were forced to evacuate their home.

d.    The Plaintiffs have been inconvenienced.

e.    The Plaintiffs have suffered embarrassment, humiliation

and mental anguish.

(2)    Hospitalization and convalescence:    N/A

(3)    Present disability:                         N/A

(4)    Special monetary damages, loss of past earnings, medical

expenses, property damages, etc.:    Value of 354 Timber Road;

Cost of getting a new home;

Lost because of forced to

default on mortgage and new

home;

(5)    Estimated value of pain and suffering:

N/A

(6)    Special damage claim:                    *See above.*

8

**E.    NAMES AND ADDRESSES OF WITNESSES, ALONG WITH THE SPECIALTIES AND QUALIFICATIONS OF EXPERTS TO BE CALLED:**

1.    Karen Marrone
      11673 Highway PP
      Dixon, MO 65459

2.    Matthew Marrone
      320 Bland Street
      Lebanon, MO 65536

3.    Vida Marrone
      11673 Highway PP
      Dixon, MO 65459

4.    Jack Marrone
      11673 Highway PP
      Dixon, MO 65459

5.    Lisa Bernieri
      Lisa Bernieri Agency                c/o James G. Nealon, III, Esq.
      100 Highlands Drive, No. 208        2411 North Front Street
      Lititz, PA  17543                   Harrisburg, PA  17110

6.    Ellen Zern
      Lisa Bernieri Agency                c/o James G. Nealon, III, Esq.
      100 Highlands Drive, No. 208        2411 North Front Street
      Lititz, PA  17543                   Harrisburg, PA  17110

7.    Larry Miller, Allstate Ins. Co.
      Senior Claims Representative        c/o James G. Nealon, III, Esq.
      P.O. Box 172                        2411 North Front Street
      Millersville, PA  17551            Harrisburg, PA  17110

8.    Dennis Andrew and/or Jay Andrew
      FireTech Services, Inc.
      315 East Walnut Street
      Lancaster, PA  17602-2403

9.    Lauren Hittle, Allstate Ins. Co.
      address unknown                     c/o James G. Nealon, III, Esq.
                                          2411 North Front Street
                                          Harrisburg, PA  17110

10.   Chip Stanilla
      Re/Max Realty
      209 West Penn Avenue
      Cleona, PA  17042

11.   Linda M. Edleman
      82 Norway Lane                      c/o John Flounlacker, Esq.
      Lebanon, PA                         305 North Front Street, 6th Fl.
                                          Harrisburg, PA  17108-0999

12.   Frederick W. Schaffer, Jr.
      P.O. Box 338                        c/o EdwardA. Monsky, Esq.
      202 Columbia Avenue                 425 Spruce Street
      Mt. Gretna, PA  17064               Scranton, PA  18501-0590

13.   Charles E. Bertoud, Jr.
      47 Brookside Avenue                 c/o James J. Kutz, Esq.
      Hershey, PA  17033                  305 North Front Street, 5th Fl.
                                          Harrisburg, PA  17108-1003

14.   Robert A. Pfromm, CIH
      4400 Linglestown Road
      Harrisburg, PA  17112

      Mr. Pfromm is a Certified Industrial Hygienist.
      (*Please see* the Affidavit of Robert A. Pfromm, CIH at Ex. 1,
      "curriculum vitae," for a detailed description of his qualifications.)

15.   Tom Moore
      421 Redgate Road
      Sewickley, PA  15143

      Mr. Moore is a Home Inspector.
      (*Please see* the Affidavit of Tom Moore at Ex. 1, "curriculum vitae,"
      for a detailed description of his qualifications.)

**F.    SUMMARY OF TESTIMONY OF EACH
        EXPERT WITNESS:**

1.    Robert A. Pfromm, CIH

Mr. Pfromm will testify about the mold that grew in the Plaintiffs

basement and that a high level of moisture contributed to the growth of said mold.

(*Please see* the Affidavit of Robert A. Pfromm, CIH, at Ex. 2, "Reports of Robert A.

Pfromm, CIH.")

2.    Tom Moore

Mr. Moore will testify as to his inspection, and that leakage of the

pipe in the basement of the ceiling contributed to the mold growth.  He will further

testify that even a casual inspection would have revealed the leakage from a broken pipe

in the basement ceiling.  (*Please see* the Affidavit of Tom Moore at Ex. 2, "Report of

Tom Moore.")

**G.    SPECIAL COMMENT ABOUT
        PLEADINGS AND DISCOVERY:**

Video tapes of the Depositions of Linda M. Edleman, Frederick W.

Schaffer, Jr., Charles E. Bertoud, Jr. and Larry Miller are available, and may be utilized

during the course of the trial.

**H.    SUMMARY OF THE LEGAL
        ISSUES INVOLVED:**

The main legal issue (breach of contract) is whether there was coverage

under the insurance policy issued by Allstate for the loss suffered by the Plaintiffs. The

other legal issue ("Bad Faith") is whether Allstate breached its contract with the

Plaintiffs in "Bad Faith."

 An action for bad faith may arise from an insurer's inadequate

investigations. O'Donnell v. Allstate Insurance Co., 734 A.2d 901 (Pa. Super. 1999)

Plaintiffs submit this is a similar situation that was at issue in Paris Foods Corp. v.

American Casualty Co. of Reading, Pa., wherein the Court of Common Pleas of

Philadelphia found that the only coverage that would inure to the plaintiff under the

defendant's interpretation would be that:

> [T]he policy purchased by plaintiff confers coverage under such
> narrow and mysterious circumstance as to be phantasmal.

(72 D. & C.2d 673, 675 (1975).

 The Plaintiff has pointed-out and indicated in the record, also from which it

can be inferred, that the behavior of Allstate comports with that conduct found to be

"bad faith" pursuant to 42 Pa.C.S.A. § 8371. In Dercoli v. Pennsylvania National

Mutual Insurance Company, the Supreme Court of Pennsylvania held that:

> The duty of an insurance company to deal with the insured fairly and
> in good faith includes the duty of full and complete disclosure as to
> all the benefits and every coverage that is provided by the applicable
> policy or policies along with all requirements, including any time
> limitations for making a claim.

520 Pa. 471, 478, 554 A.2d 906, 909 (1989), *citing*, Gatlin v. Tennessee Farmers

Mutual Insurance Co., 741 S.W.2d 324 (Tenn. 1987); Sarchett v. Blue Shield of California, 43 Cal.3d 1, 233 Cal.Rptr. 76, 729 P.2d 267 (1987). Moreover, in that case the Supreme Court of Pennsylvania earlier had recognized its own long standing rule that:

> [T]he utmost fair dealing should characterize the transactions between an insurance company and the insured.

520 Pa. 471, 477, 554 A.2d 906, 909 (1989), *quoting*, Fedas v. Insurance Company of the State of Pennsylvania, 300 Pa. 555, 151 A. 285 (1930).

The Supreme Court of Pennsylvania's pronouncement in Dercoli regarding an insurer's duty toward its insured was followed by this statement:

> This is especially true where the insurer undertakes to advise and counsel the insured in the insured's claim for benefits.

520 Pa. 471, 478, 554 A.2d 906, 909 (1989). The insurer still is duty bound "to deal with the insured fairly and in good faith includes the duty of full and complete disclosure as to all the benefits and every coverage that is provided by the applicable policy or policies along with all requirements, including any time limitations for making a claim." 520 Pa. 471, 478, 554 A.2d 906, 909 (1989), *citing*, Gatlin v. Tennessee Farmers Mutual Insurance Co., 741 S.W.2d 324 (Tenn. 1987); Sarchett v. Blue Shield of California, 43 Cal.3d 1, 233 Cal.Rptr. 76, 729 P.2d 267 (1987).

In Tonkovic v. State Farm Mutual Automobile Insurance Company, the Supreme Court of Pennsylvania set forth clearly when dealing with its insured, if there

is any question of fairness the insurance company must explain the policy to the insured clearly and fairly.  513 Pa. 445, 452-453, 521 A.2d 920, 924 (1987) (*See also*, Worldwide Underwriters Insurance Company v. Brady, 973 F.2d 192, 194-195 (3d. Cir. 1992)  Here as in Worldwide there is ambiguity in the policy.

To determine whether a claim potentially comes within coverage of the policy, the scope of the coverage must first be ascertained.  Sclabassi v. Nationwide Mutual Fire. Ins. Co., 789 A.2d 699, 702 (Pa. Super. 2001).  Any ambiguity in an insurance policy should be construed in favor of the insured and against the insurer. Redevelopment Authority of Cambria County v. International Ins. Co., 454 Pa. Super. 374, 388, 685 A.2d 581, 588 (1996); Tonkovic, 513 Pa. at 452-453, 521 A.2d at 924 (As there is a manifest inequality of bargaining power between an insured and insurer, a court may deviate from the plain language of an insurance contract).

Determinations of fact are questions for the jury.  Fidelity Bank and Tiernan, 249 Pa. Super. 216, 375 A.2d 1320 (1977).

In Pressley v. Travelers Property Casualty Corporation, 817 A.2d 1131 (Pa. Super. 2003), the Superior Court of Pennsylvania noted that:

> The Supreme Court in *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595, 735 A.2d 100, 109 n. 8 (1999) noted that the reasonable expectation doctrine applied in *Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A.2d 1346 (1978) "to protect non-commercial insured from policy terms not readily apparent" and *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 513 Pa. 445, 521 A.2d 920 (1987) "to protect non commercial insured from deception".

Here, too, we are concerned with a non-commercial insured. Hence, the reasonable expectation doctrine applies.

In <u>Remple v. Nationwide Life Insurance Co., Inc.</u>, 370 A.2d 366 (1977) the Supreme Court of Pennsylvania explained the policy holder has no duty to read the policy unless under the circumstances it is unreasonable not to read it.

| | | |
|---|---|---|
| **I.** | **STIPULATIONS DESIRED:** | **N/A** |
| **J.** | **ESTIMATED NUMBER OF TRIAL DAYS:** | **5 TOTAL (3 for Plaintiffs)** |
| **K.** | **ANY OTHER MATTER PERTINENT TO THE CASE TO BE TRIED:** | **N/A** |
| **L.** | **LOCAL RULE 16.3 EXHIBIT LIST:** | **APPENDED** |
| **M.** | **SPECIAL VERDICT QUESTIONS:** | |

1.    Where the Plaintiffs insured under the Allstate policy?

2.    What is the amount of damages due to the Plaintiffs due to Allstate's failure to honor the insurance policy it issued to the Plaintiffs?

3.    Did Allstate act in "bad faith" in failing to honor its insurance policy with the Plaintiffs?

4.    The amount of punitive damages that you award may be as high as nine times the compensatory damages that you award, what amount of punitive damages due you award to the Plaintiffs and against Allstate, if you find there is "bad faith?"

**N.    DEFENSE COUNSEL SETTLEMENT**
**AUTHORITY STATEMENT:**                    **N/A**

**O.    CERTIFICATE REGARDING DEPOSITIONS:**

Pursuant to the District Court's April 29, 2003 Order, and LR 16.3(b), on July 17, 2003, counsel for the Plaintiffs, by telefax and U.S. Mail First Class, initiated a request to all counsel of record for a LR 16 conference; however, no counsel for any of the Defendants responded to Plaintiffs' request. Since the January 13, 2003 conference by counsel the Plaintiffs have settled their claims against Linda M. Edleman, Fred Schafer, Mt. Gretna Realty and Housemaster. The remaining Defendant is Allstate Insurance Company.

Wherefore, the Plaintiffs respectfully represent that the foregoing are the issues, facts and arguments to be set forth at trial against the Defendant Allstate Insurance Company.

Respectfully submitted,

TARASI, TARASI & FISHMAN, P.C.

By: _Louis M. Tarasi_

Louis M. Tarasi, Jr., Esquire
PA ID No. 01042
Gianni Floro, Esquire
PA ID No. 85837
Attorney for the Plaintiffs

16

CASE CAPTION: Marrone v Allstate

MIDDLE DISTRICT OF PENNSYLVANIA

LIST OF EXHIBITS

CASE NUMBER: 1: CV-01-0773

JUDGE: Yvette Kane

| PTF | DFT | DESCRIPTION OF OBJECT OR ITEM | IDENTIFIED | EVIDENCE | RULING | WITNESS ON STAND |
|---|---|---|---|---|---|---|
| | | Seller's Property Disclosure Statement | | | | |
| | | Allstate Insurance Binder | | | | |
| | | Allstate Insurance Company Deluxe Plus Homeowners Policy | | | | |
| | | Allstate Policy Endorsement 8-25-99 | | | | |
| | | Allstate Policy Declaration | | | | |
| | | Allstate Policy Declaration Renewal | | | | |
| | | Allstate Letter dated September 1999 | | | | |
| | | Allstate Letter dated June 2000 | | | | |
| | | Allstate Letter dated July 2000 Renewal | | | | |
| | | Allstate Letter dated August 2000 Claim Denial | | | | |
| | | Fire Tech Services Report dated 8-18-00 | | | | |
| | | Fire Tech Services estimate for mold removal & re-building the basement | | | | |
| | | House Master Express Report | | | | |
| | | Floor plan | | | | |
| | | Buyer Agency/Dual Agency Consent/ Disclosure | | | | |
| | | Mini-List Input Form | | | | |
| | | Multi-List Photo and Information | | | | |

| Item | | | | | | |
|---|---|---|---|---|---|---|
| Uniform Residential Appraisal Report of R. Jones | | | | | | |
| Lender's Notice of Reasonable Value | | | | | | |
| Fax dated 8-19-99 from Loan Processors | | | | | | |
| Loan Commitment of Equity One | | | | | | |
| Qualifications of Appraiser | | | | | | |
| Property Loss Notice | | | | | | |
| Casualty Captioned Report | | | | | | |
| Statement of Qualifications of AES cover page | | | | | | |
| Ltr. From Old Guard Ins. To Ms. Eldeman dated 5-24-01 | | | | | | |
| Allstate Insurance Company Loss Report | | | | | | |
| Evidence of Insurance | | | | | | |
| Affidavit of Tom Moore | | | | | | |
| Affidavit of Robert Pfromm, CIH | | | | | | |
| Photographs taken immediately after Mold | | | | | | |
| Photographs of August 12, 2002 | | | | | | |
| Deposition of Jack Marrone | | | | | | |
| Deposition of Karen Marrone | | | | | | |
| Deposition of Matthew Marrone | | | | | | |
| Deposition of Vida Marrone | | | | | | |
| Deposition of Linda M. Edleman & Video | | | | | | |
| Deposition of Fred Schafer & Video | | | | | | |
| Deposition of Chuck Bertoud & Video | | | | | | |
| Deposition of Larry E. Miller & Video | | | | | | |

| Item | | | | | |
|---|---|---|---|---|---|
| DBV 0354 pp. 590-592 | | | | | |
| Mortgage Documents | | | | | |
| Letter from CZimmer | | | | | |
| JES Basement System Proposal | | | | | |
| Blaster Rental Receipt | | | | | |
| Solatube Receipt | | | | | |
| Chimney Repairs | | | | | |
| Photos from Miller Deposition | | | | | |
| Allstate Response to Discovery Requests | | | | | |
| Marrone Response to Ints and RPD to Housemaster | | | | | |
| Marrone Response to Ints and RPD to Edleman | | | | | |
| Marrone Check Receipts | | | | | |
| A-1 Moving and Storage | | | | | |
| Future Kitchen Plans | | | | | |
| Pleadings, Motions, Briefs, etc. | | | | | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiffs' Pre-

Trial Memorandum, was served on counsel for the Defendants on this __21th__ day

of August, 2003, by the United States Mail, First Class, Postage prepaid

addressed as follows:

James G. Nealon, III, Esquire
2411 North Front Street
Harrisburg, PA  17110

John Flounlacker, Esquire
305 North Front Street
Harrisburg, PA  17108

Edward A. Monsky, Esquire
425 Spruce Street
Scranton, PA  18501-0590

Jennifer L. Murphy, Esquire
305 North Front Street, 5th Floor
Harrisburg, PA  17108-1003

Joel D. Gusky, Esquire
1835 Market Street, 29th Floor
Philadelphia, PA  19103

TARASI, TARASI & FISHMAN, P.C.

Date: __8·21·03__

By: _____
Gianni Floro, Esquire
PA ID No. 85837
Attorney for the Plaintiffs
510 Third Avenue
Pittsburgh, PA  15219
P:  (412) 391-7135
F:  (412) 471-2673